Benedict Y. Hur (SBN 224018)
Simona Agnolucci (SBN 246943)
Eduardo E. Santacana (SBN 28168)
Tiffany Lin (SBN 321472)
**WILLKIE FARR & GALLAGHER LLP**
*Counsel For Defendant Google LLC*

Ashley Rogers (SBN 286252)
Lauren Blas (SBN 296823)
Joseph R. Rose (SBN 279092)
Cristina Stella Cernak (*PRO HAC VICE*)
**GIBSON, DUNN & CRUTCHER LLP**
*Counsel For Defendant Facebook, Inc.*

Melanie M. Blunschi (SBN 214636)
Michael H. Rubin (SBN 214636)
Joseph C. Hansen (SBN 275147)
**LATHAN & WATKINS, LLP**
*Counsel For Defendant Appsflyer, Inc.*

Ann Marie Mortimer (SBN 169077)
Samuel A. Danon (*pro hac vice*)
John J. Delionado (*pro hac vice*)
Jason J. Kim (SBN 221476)
**HUNTON ANDREWS KURTH LLP**
*Counsel For Defendant Flurry, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ERICA FRASCO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FLO HEALTH, INC., GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., and FLURRY INC., <br><br> Defendants. | CASE NO. 3:21-cv-00757-JD  (consolidated) <br><br> **ANALYTICS DEFENDANTS' (GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.) NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)** <br><br> Judge:  Hon. James Donato <br> Court:  Courtroom 11 – 19th Floor <br> Date:  February 10, 2022 <br> Time:  10:00 a.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on February 10, 2022 at 10:00 a.m., the undersigned will appear before the Honorable James Donato of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and shall then and there present this Motion to Dismiss the Consolidated Complaint on behalf of Defendants Google LLC, Facebook Inc., AppsFlyer Inc., and Flurry Inc. (together, "Analytics Defendants").

Analytics Defendants bring this Motion under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Analytics Defendants will, and hereby do, move for an order dismissing the claims against them with prejudice because any amendment of the claims would be futile. The Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the pleadings and other papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this Motion.

**ISSUES PRESENTED**

Whether Plaintiffs' claims against Analytics Defendants should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and whether the claims should be dismissed with prejudice where amendment would be futile.

Date: November 1, 2021

By: */s/ Benedict Y. Hur*
**WILKIE FARR & GALLAGHER LLP**
Benedict Y. Hur (SBN 224018)
BHur@wilkie.com
Simona Agnolucci (SBN 246943)
SAgnolucci@wilkie.com
Eduardo E. Santacana (SBN 281668)
ESantacana@wilkie.com
Tiffany Lin (SBN 321472)
TLin@wilkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.858.7400
Facsimile: 415.858.7599

*Counsel for Defendant Google LLC*

1

2

*/s/ Ashley Rogers*
**GIBSON, DUNN & CRUTCHER LLP**
Ashley Rogers (SBN 286252)

3

ARogers@gibsondunn.com
2001 Ross Avenue, Suite 2100

4

Dallas, TX 75201
Telephone: 214.698.3100

5

Facsimile: 214.571.2900

6

Lauren Blas (SBN 296823)

7

LBlas@gibsondunn.com
333 South Grand Avenue

8

Los Angeles, CA 90071-3197
Telephone: 213.229.7503

9

Facsimile: 213.229.6503

10

Joseph R. Rose (SBN 279092)
JRose@gibsondunn.com

11

555 Mission Street, Suite 3000
San Francisco, CA 94105-0921

12

Telephone: 415.393.8200
Facsimile: 415.393.8306

13

Christina Stella Cernak (*pro hac vice*)

14

SCernak@gibsondunn.com
200 Park Avenue, Fl. 47

15

New York, NY 10166
Telephone: 212.351.4000

16

Facsimile: 212.716.0898

17

*Counsel for Defendant Facebook, Inc.*

18

*/s/ Melanie M. Blunschi*
**LATHAM & WATKINS LLP**
Michael H. Rubin (SBN 214636)

19

Michael.Rubin@lw.com
Melanie M. Blunschi (SBN 234264)

20

Melanie.Blunschi@lw.com
Joseph C. Hansen (SBN 275147)

21

Joseph.Hansen@lw.com
505 Montgomery Street, Suite 2000

22

San Francisco, California 94111-6538
Telephone: 415.391.0600

23

Facsimile: 415.395.8095

24

*Counsel for Defendant AppsFlyer, Inc.*

25

26

27

28

DEFENDANTS GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:21-CV-00757-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Ann Marie Mortimer*
**HUNTON ANDREWS KURTH LLP**
Ann Marie Mortimer (SBN 169077)
AMortimer@HuntonAK.com
Samuel A. Danon (*pro hac vice*)
sdanon@HuntonAK.com
John J. Delionado  (*pro hac vice*)
jdelionado@HuntonAK.com
Jason J. Kim (SBN 221476)
KimJ@HuntonAK.com
550 S. Hope St., Suite  2000
Los Angeles, California  90071
Telephone:  213.532.2000
Facsimile:  213.532.2020

*Counsel for Defendant Flurry, Inc.*

DEFENDANTS GOOGLE  LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:21-CV-00757-JD

1

2

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................1

II.   SUMMARY OF ALLEGED FACTS AND PROCEDURAL BACKGROUND ...................3

    A.    The Parties ...............................................................................................3

    B.    Named Plaintiffs' Allegations Against Analytics Defendants ....................................4

    C.    Relevant Procedural History ................................................................5

III.  LEGAL STANDARDS.........................................................................................5

IV.   ARGUMENT ......................................................................................................6

    A.    Plaintiffs Lack Article III Standing...........................................................6

    B.    The Limitations Period in Flo's User Terms Bar Plaintiffs' Claims ..........................8

    C.    The Statute of Limitations  Bars Plaintiffs' Common Law, Wiretap, and CIPA Claims ....................................................................................................9

    D.    Plaintiffs' Equitable Claims Fail Because They Allege an Adequate Remedy at Law ........................................................................................11

    E.    Plaintiffs Fail to Plead Analytics Defendants Aided and Abetted Unlawful Conduct .................................................................................12

    F.    Plaintiffs' Claims Fail Because They Were Not a Party to the Relevant Communications (Counts 9, 12, 13, & 14) ....................................................13

    G.    Each of Plaintiffs' Claims Against Analytics Defendants Suffers from Additional Individual Deficiencies That Require Their Dismissal..........................15

        1.    Plaintiffs Plead No Plausible Unjust Enrichment Claim (Count 5) ...............15

        2.    Plaintiffs Plead No Plausible Aiding and Abetting Invasion of Privacy Claim (Count 11) ................................................................16

        3.    Plaintiffs Plead No Plausible Wiretap Act Claim (Count 12) ........................16

        4.    Plaintiffs Plead No Plausible CIPA Claim (Count 13) .................................17

        5.    Plaintiffs Plead No Plausible CDAFA Claim (Count 14)..............................19

        6.    Plaintiffs Pleads No Plausible UCL Claim (Count 9) ...................................22

        7.    Plaintiffs Plead No Plausible UCL Aiding and Abetting Claim (Count 10)..........................................................................................24

V.    CONCLUSION ................................................................................................25

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004) ............................................. 6

*Archer v. United Rentals, Inc.,*
    195 Cal. App. 4th 807 (2011) ............................................ 22

*Arellano v. T-Mobile USA, Inc.,*
    2011 WL 1362165 (N.D. Cal. Apr. 11, 2011) ........................... 8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................... 6

*AtPac, Inc. v. Aptitude Sols., Inc.,*
    730 F. Supp. 2d 1174 (E.D. Cal. 2010) ................................ 20

*Austin B. v. Escondido Union Sch. Dist.,*
    149 Cal. App. 4th 860 (2007) ........................................... 13

*Barker v. Am. Mobil Power Corp.,*
    64 F.3d 1397 (9th Cir. 1995) ........................................... 10

*Barrett v. Apple Inc.,*
    2021 WL 827235 (N.D. Cal. Mar. 4, 2021) ............................. 13

*Bass v. Facebook, Inc.,*
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) ................................ 22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................5, 6, 12

*Belluomini v. Citigroup, Inc.,*
    2013 WL 3855589 (N.D. Cal. July 24, 2013) ........................... 16

*Berryman v. Merit Prop. Mgmt., Inc.,*
    152 Cal. App. 4th 1544 (2007) ......................................... 24

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir. 2009) ........................................... 22

*Block v. eBay, Inc.,*
    747 F.3d 1135 (9th Cir. 2014) .......................................23, 24

*Brill v. Chevron Corp.,*
    2018 WL 3861659 (N.D. Cal. Aug. 14, 2018), *aff'd,*
    804 F. App'x 630 (9th Cir. 2020) ...................................... 12

1

### TABLE OF AUTHORITIES

2
Page(s)

3
*Brodsky v. Apple Inc.*,
4      445 F. Supp. 3d 110 (N.D. Cal. 2020) ...............................................................9, 21

5
*Cal. Physicians Serv., Inc. v. Healthplan Servs., Inc.*,
       2021 WL 879797 (N.D. Cal. Mar. 9, 2021) ............................................................ 2

6
*Campbell v. Facebook Inc.*,
7      77 F. Supp. 3d 836 (N.D. Cal. 2014) ...............................................................18, 22

8
*Casey v. U.S. Bank Nat. Ass'n*,
9      127 Cal. App. 4th 1138 (2005) ............................................................................. 12

10
*Chetal v. Am. Home Mortg.*,
       2009 WL 2612312 (N.D. Cal. Aug. 24, 2009) ..................................................... 12

11
*Claridge v. RockYou, Inc.*,
12     785 F. Supp. 2d 855 (N.D. Cal. 2011) ............................................................20, 22

13
*Cline v. Reetz-Laiolo*,
14     329 F. Supp. 3d 1000 (N.D. Cal. 2018) ............................................................... 18

15
*Cottle v. Plaid Inc.*,
       2021 WL 1721177 (N.D. Cal. Apr. 30, 2021) ...................................................... 20

16
*Crandon v. United States*,
17     494 U.S. 152 (1990) ............................................................................................. 19

18
*Crowley v. CyberSource Corp.*,
19     166 F. Supp. 2d 1263 (N.D. Cal. 2001) ............................................................... 17

20
*Custom Packaging Supply, Inc. v. Phillips*,
       2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ....................................................... 19

21
*DaimlerChrysler Corp. v. Cuno*,
22     547 U.S. 332 (2006) ............................................................................................... 6

23
*Decarlo v. Costco Wholesale Corp.*,
       2020 WL 1332539 (S.D. Cal. Mar. 23, 2020) ..................................................... 13

24
*Diaz v. Safeway Inc.*,
25     2007 WL 2793367 (N.D. Cal. Sept. 26, 2007) ..................................................... 10

26
*Durkee v. Ford Motor Co.*,
27     2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) ....................................................... 11

28

# TABLE OF AUTHORITIES

Page(s)

*Eisenberg v. Citibank N.A.*,
  2017 WL 532936 (C.D. Cal. Feb. 8, 2017), *aff'd*,
  787 F. App'x 929 (9th Cir. 2019) ............................................................ 10

*Emery v. Visa Int'l Serv. Ass'n*,
  95 Cal. App. 4th 952 (2002) .................................................................. 24

*Facebook Inc. v. Power Ventures, Inc.*,
  844 F. Supp. 2d 1025 (N.D. Cal. 2012) ................................................... 21

*In re Facebook Priv. Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*,
  572 F. App'x 494 (9th Cir. 2014) ................................................. 19, 21, 22

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................... 22

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ......................................................... 16, 17, 18

*Facebook, Inc. v. Power Ventures, Inc.*,
  2010 WL 3291750 (N.D. Cal. July 20, 2010) .......................................... 19

*Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*,
  810 F.3d 1075 (7th Cir. 2016) .............................................................. 22

*Fiol v. Doellstedt*,
  50 Cal. App. 4th 1318 (1996) ............................................................ 12, 13

*In re First All. Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ................................................................ 12

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ........................................................................ 10

*Franklin v. Gwinnett Cnty. Pub. Sch.*,
  503 U.S. 60 (1992) .............................................................................. 11

*Freedline v. O Organics LLC*,
  445 F. Supp. 3d 85 (N.D. Cal. 2020) ..................................................... 15

*Gardiner v. Walmart Inc.*,
  2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ........................................ 11, 22

*Garrison v. Oracle Corp.*,
  159 F. Supp. 3d 1044 (N.D. Cal. 2016) .................................................. 10

# TABLE OF AUTHORITIES

Page(s)

*Gonzales v. Uber Techs., Inc.,*
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ................................................................ 17, 19, 20

*In re Google Android Consumer Priv. Litig.,*
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) .............................................................20, 22

*In re Google Assistant Priv. Litig.,*
457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................................ 22

*In re Google Inc.,*
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ................................................................... 18

*In re Google, Inc. Priv. Pol'y Litig.,*
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...................................................................... 17

*In re Google, Inc. Priv. Pol'y Litig.,*
2015 WL 4317479 (N.D. Cal. July 15, 2015) ...................................................................... 7

*Graham v. Noom, Inc.,*
2021 WL 1312765 (N.D. Cal. Apr. 8, 2021) ...................................................................... 19

*Guillen v. Bank of Am. Corp.,*
2011 WL 4071996 (N.D. Cal. Aug. 31, 2011) ..................................................................... 9

*Hakimi v. Societe Air France, S.A.,*
2018 WL 4826487 (N.D. Cal. Oct. 4, 2018) .................................................................... 2, 9

*Hancock v. Urban Outfitters, Inc.,*
830 F.3d 511 (D.C. Cir. 2016) ............................................................................................. 6

*Heeger v. Facebook, Inc.,*
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........................................................................15, 23

*Hill v. NCAA,*
7 Cal. 4th 1 (1994) ............................................................................................................. 16

*In re iPhone Application Litig.,*
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .............................................................21, 22

*In re Jamster Mktg. Litig.,*
2009 WL 1456632 (S.D. Cal. May 22, 2009) .................................................................... 24

*Karo v. San Diego Symphony Orchestra Ass'n,*
762 F.2d 819 (9th Cir. 1985) ............................................................................................... 8

*Kight v. CashCall, Inc.,*
200 Cal. App. 4th 1377 (2011) .......................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

*Kingman Reef Atoll Inv., LLC v. United States*,
  541 F.3d 1189 (9th Cir. 2008) ................................................................. 5

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ................................................................. 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ....................................................................... 11

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ......................................................................... 22

*Lauter v. Anoufrieva*,
  642 F. Supp. 2d 1060 (C.D. Cal. 2009) ................................................. 10

*Lewis v. Casey*,
  518 U.S. 343 (1996) ........................................................................ 6, 12

*Loeffler v. Target Corp.*,
  58 Cal. 4th 1081 (2014) ....................................................................... 23

*Loo v. Toyota Motor Sales, USA, Inc.*,
  2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) ....................................... 11

*Lopez v. Apple, Inc.*,
  519 F. Supp. 3d 672 (N.D. Cal. 2021) ............................................... 7, 17

*In re Macbook Keyboard Litig.*,
  2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ....................................... 11

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005) ............................................................... 11

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .................................................................. 9

*Melendez v. Vaiana*,
  2017 WL 8183139 (C.D. Cal. Oct. 19, 2017) ......................................... 9

*Moretti v. Hertz Corp.*,
  2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ......................................... 8

*Namar v. Bank of Am., N.A.*,
  2017 WL 1180193 (S.D. Cal. Mar. 30, 2017) ....................................... 12

*Naruto v. Slater*,
  888 F.3d 418 (9th Cir. 2018) .................................................................. 5

1

# TABLE OF AUTHORITIES

2

Page(s)

3
*Nowak v. Xapo, Inc.*,
    2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ...........................................19, 20

4

5
*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..................................................................... 5

6
*Olson v. Cohen*,

7
    106 Cal. App. 4th 1209 (2003) ........................................................ 23

8
*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..............................................21, 22

9
*Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,

10
    860 F.3d 1228 (9th Cir. 2017) ........................................................ 7

11
*Oracle USA, Inc. v. Rimini Street, Inc.*,

12
    879 F.3d 948 (9th Cir. 2018)...................................................2, 14, 21

13
*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ........................................................ 16

14

15
*People v. Nakai*,
    183 Cal. App. 4th 499 (2010) ........................................................ 18

16
*People v. Ratekin*,

17
    261 Cal. Rptr. 143 (Cal. Ct. App. 1989) ............................................... 18

18
*People v. Soles*,
    68 Cal. App. 3d 418 (1977)........................................................... 18

19

20
*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007)...................................................2, 13, 24

21
*Perkins v. LinkedIn Corp.*,

22
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................. 20

23
*Peterson v. Aaron's, Inc.*,
    2017 WL 4390260 (N.D. Ga. Oct. 3, 2017) ............................................. 13

24

25
*Philips v. Ford Motor Co.*,
    726 F. App'x 608 (9th Cir. 2018) ..................................................... 11

26
*Plumlee v. Pfizer, Inc.*,

27
    2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ............................................ 10

28
*Pratt v. Whole Food Mkt. California, Inc.*,
    2015 WL 5770799 (N.D. Cal. Sept. 30, 2015) ......................................23, 24

vii

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

*Quigley v. Yelp, Inc.*,
   2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ................................................ 18, 19, 21

4

5

*Rhynes v. Stryker Corp.*,
   2011 WL 2149095 (N.D. Cal. May 31, 2011) ................................................. 11

6

*Rodriguez v. Google LLC*,
   2021 WL 2026726 (N.D. Cal. May 21, 2021) ................................. 14, 16, 22, 23

7

8

*Rogers v. Cal State Mortg. Co. Inc.*,
   2010 WL 144861 (E.D. Cal. Jan. 11, 2010) ...................................................... 24

9

10

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) ................................................................................ 17

11

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016) ............................................................ 15

12

13

*Sharpe v. Puritan's Pride, Inc.*,
   2019 WL 188658 (N.D. Cal. Jan. 14, 2019) ..................................................... 15

14

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................... 1, 2, 11

15

16

*Spokeo, Inc. v. Robins*,
   578 U.S. 337 (2016) ...................................................................................... 6, 7, 8

17

18

*Spy Dialer, Inc. v. Reya LLC*,
   2018 WL 3689554 (C.D. Cal. July 26, 2018) ................................................... 20

19

*Stathakos v. Columbia Sportswear Co.*,
   2017 WL 1957063 (N.D. Cal. May 11, 2017) .................................................. 23

20

21

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ................................................................................................ 8

22

23

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .............................................................................. 10

24

*Thakur v. Betzig*,
   2019 WL 2211323 (N.D. Cal. May 22, 2019) .................................................. 15

25

26

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ....................................................... 19, 21

27

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ....................................................................................... 24

28

1

# TABLE OF AUTHORITIES

2

Page(s)

3

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ................................................................................... 8

4

5

*TopDevz, LLC v. LinkedIn Corp.*,
   2021 WL 3373914 (N.D. Cal. Aug. 3, 2021) ........................................................... 11

6

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ......................................................................................... 1, 6

7

8

*Tromble v. W. Digital Corp.*,
   2021 WL 2165796 (N.D. Cal. May 27, 2021) ........................................................... 9

9

*UCAR Tech. (USA) Inc. v. Yan Li*,
   2018 WL 2555429 (N.D. Cal. June 4, 2018) ........................................................... 22

10

11

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) ................................................................................... 17

12

13

*Warden v. Kahn*,
   99 Cal. App. 3d 805 (1979) ...................................................................................... 14

14

*Wesch v. Yodlee, Inc.*,
   2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ......................................................... 23

15

16

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ................................................................................................... 6

17

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................................... 14

18

19

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .................................................... 17, 22

20

21

*Zapata Fonseca v. Goya Foods Inc.*,
   2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ........................................................... 11

22

**Statutes**

23

18 U.S.C. § 2510(5)(a)(ii) ................................................................................................ 17

24

18 U.S.C. § 2511(2)(c), (d) ............................................................................................. 14

25

18 U.S.C. § 2520(e) ........................................................................................................... 9

26

Cal. Bus. & Prof. Code § 17203 ...................................................................................... 11

27

Cal. Bus. & Prof. Code § 17204 ...................................................................................... 22

28

ix

DEFENDANTS GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS – CASE NO. 3:21-CV-00757-JD

# TABLE OF AUTHORITIES

Page(s)

Cal. Penal Code § 502(b)(12) ................................................................. 21

Cal. Penal Code § 502(c)(8) ................................................................... 21

Cal. Penal Code § 502(e)(1) ................................................................... 20

Cal. Penal Code § 630 ............................................................................ 18

Cal. Penal Code § 631(a) ..................................................................14, 18

Cal. Penal Code § 632 ............................................................................ 14

x

DEFENDANTS GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS – CASE NO. 3:21-CV-00757-JD

## I.    INTRODUCTION

The gravamen of Plaintiffs' claims is that Defendant Flo Health, Inc. ("Flo") allegedly improperly disclosed their health data to four companies that provided analytics services to Flo for its mobile application ("Flo App")—Google, Facebook, AppsFlyer, and Flurry (collectively, "Analytics Defendants"). But Analytics Defendants do not belong in this case: Plaintiffs admit that Analytics Defendants' contracts with Flo expressly *prohibited* Flo from sending them users' personally identifiable health data, and do not plead *any* specific facts indicating that any Analytics Defendant acted unlawfully by receiving the data that Flo supposedly created and sent to them, or even used (let alone misused) any data it may have received. Plaintiffs' efforts to manufacture claims fail many times over: they cannot establish Article III standing; all (or most) claims are time-barred; their equitable claims are barred under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020); and they fail to plausibly allege required elements for every other claim.

*First*, Plaintiffs' speculative theories come nowhere near pleading that Analytics Defendants caused them the sort of "concrete, particularized" injury necessary to establish Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). At most, Plaintiffs posit that they or others *could have been* targeted with ads they "may find overwhelming or disturbing" based on data Flo supposedly sent to Analytics Defendants. Consolidated Amended Complaint ("CAC") ¶ 19. Even if that was a cognizable harm, no Plaintiff alleges that *actually* happened to them—nor could they. The "mere risk" of future harm is insufficient. *TransUnion*, 141 S. Ct. at 2211.

*Second*, Plaintiffs' claims are all barred by the one-year limitations period in their contracts with Flo, to which Analytics Defendants are express third-party beneficiaries. And, at minimum, Plaintiffs' intrusion upon seclusion, Wiretap Act, and CIPA claims (Claims 11, 12, & 13) are barred by applicable one- and two-year statutes of limitations. The *Wall Street Journal* ("*WSJ*") article that Plaintiffs tout as "exposing" Flo's data disclosures at issue (at the latest) and resulting in "several hundred [user] complaints" was published in February 2019 (CAC ¶¶ 21, 184), yet Plaintiffs waited until June 2021—and the *seventh* complaint filed in the consolidated actions—to sue Analytics Defendants. These claims must be dismissed with prejudice because the expiration of this statute-of-

limitations period is apparent on the face of the complaint. *Hakimi v. Societe Air France, S.A.*, 2018 WL 4826487, at *3 (N.D. Cal. Oct. 4, 2018).

**Third**, Plaintiffs' requests for equitable relief are barred. Plaintiffs themselves allege they have an adequate remedy at law, so equitable relief is unavailable under *Sonner*, 971 F.3d at 844. And even if Plaintiffs could bring equitable claims, there is no basis to request injunctive relief: Plaintiffs cannot show the possibility of "imminent and irreparable harm if relief is not granted," given their admissions that Flo stopped sending the data at issue to Analytics Defendants over two years ago (CAC ¶ 143), and that Flo entered into a Consent Order with the FTC to implement changes to its data disclosures and practices (*id.* ¶¶ 221–23). *See Cal. Physicians Serv., Inc. v. Healthplan Servs., Inc.*, 2021 WL 879797, at *3 (N.D. Cal. Mar. 9, 2021) (Donato, J.).

**Fourth**, Plaintiffs' claims against Analytics Defendants fail for independent, claim-specific reasons. Many of the deficiencies flow from the basic fact that the law does not impose liability on a party *receiving* data intentionally sent to them—to do so would create a strict liability framework with due process concerns because a receiving party cannot control what a transmitting party sends. For instance, Plaintiffs' UCL and aiding and abetting claims (Counts 9, 10, & 11) reflect an impermissible attempt to impose vicarious liability on Analytics Defendants for practices not under Analytics Defendants' "unbridled control." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007). Similarly, Plaintiffs' wiretapping and eavesdropping claims (Claims 12 & 13) fail because Plaintiffs do not allege any Analytics Defendant *intercepted* their data, but allege that Flo first created and *subsequently* "transmitted" and "sent" Flo App data to them that *may have* revealed Plaintiffs' personally identifiable health information. *E.g.*, CAC ¶¶ 146–47. Nor can it possibly be computer hacking (Claim 14) to receive information purposefully sent by a third party. *E.g.*, *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 962 (9th Cir. 2018). And even if Plaintiffs' quasi-contract theory for unjust enrichment (Count 5) could be pled in the face of Flo's express contracts with Google, Facebook, and Flurry (and it cannot), it lacks any plausible foundation, given those contracts expressly forbid Flo from sending users' personally identifiable health information and strictly limit the ways information sent by Flo would be used.

## II.    SUMMARY OF ALLEGED FACTS AND PROCEDURAL BACKGROUND

### A.    The Parties

Plaintiffs are eight individuals who allege that Flo, the developer of the Flo App for women's health, improperly shared their "intimate health data" between 2016 and 2019. CAC ¶¶ 35–90. The CAC focuses on Flo's representations to its users, but also names Analytics Defendants—separate companies that provide neutral analytics tools and services to app developers like Flo. Specifically, developers like Flo that wish to use these analytics services integrate Analytics Defendants' Software Development Kits ("SDKs") into their apps, create their own "App Events" to measure certain actions users take on their app, and use SDKs to subsequently transmit their developer-created App Events to Analytics Defendants in a *separate* communication between the developer and Analytics Defendants. *Id.* ¶¶ 13–14. Developers can create and send via SDKs pre-defined and named "Standard App Events" that measure common actions (like an app's launch), and/or developer-defined and named "Custom App Events" that measure "user-app interactions unique to the app." *Id.* ¶ 137. Based upon the developer's instructions, Analytics Defendants then process that data to provide reports and analytics to that developer. *Id.* ¶¶ 93–96, 100–08, 111–13.

Before developers can use Analytics Defendants' SDKs, they must accept Analytics Defendants' terms of service, which are binding contracts. *Id.* ¶¶ 97, 103, 108, 113. As Plaintiffs allege, *all* Analytics Defendants' terms, *inter alia*, (1) require developers to disclose to users Analytics Defendants' receipt and processing of their data; and (2) expressly instruct developers to refrain from using their SDKs to transmit users' personally identifiable health data. *Id.* ¶¶ 98, 104, 109. For instance, Google's Fabric Answers Agreement requires developers to "maintain and comply with a privacy policy that . . . fully and accurately disclose[] to End Users that third parties such as Google may collect and use End User Data . . . for analytics purposes" and to warrant "Developer Data does not contain or reveal any personally identifiable information."[1]

---

[1] Analytics Defendants' Request for Judicial Notice ("RJN"), Ex. 1 (Fabric Answers Agreement); *see also* Ex. 2 (Google Analytics Terms of Service) ("You will not and will not assist or permit any third party to, pass information to Google that Google could use or recognize as personally identifiable information. . . . You must disclose the use of Google Analytics."); Exs. 7–8 (Facebook Business Tools Terms) (prohibiting developers from sending Facebook "sensitive information," expressly including users' "health information," and requiring developers to "represent and warrant" they have all

3

DEFENDANTS GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:21-CV-00757-JD

**B.    Named Plaintiffs' Allegations Against Analytics Defendants**

The eight named plaintiffs acknowledge that Flo was permitted to share their personal data with Analytics Defendants "if it is required to provide the service." *Id.* ¶¶ 12, 123.[2] But they assert that Flo violated a commitment not to share their health data in using Analytics Defendants' SDKs because Flo chose purportedly descriptive titles for certain Custom App Events sent to Analytics Defendants between June 2016 and February 2019. *Id.* ¶¶ 12, 37–41, 123, 141, 143. Specifically, Plaintiffs allege that *Flo* "purposefully" named some Custom App Events with "descriptive title[s]" like "P_ACCEPT_PUSHES_PERIOD" and thereby somehow "convey[ed]" its users' "health details" when Flo separately sent those events to Analytics Defendants. *Id.* ¶¶ 139, 141.

Plaintiffs also allege that Analytics Defendants ***could have*** used information in the Custom App Event titles sent by Flo "in any manner whatsoever," including to serve targeted ads, develop user profiles, or share with or sell to third parties. *Id.* ¶¶ 143, 149, 152, 158, 160. But this is baseless speculation: Plaintiffs admit this allegation is based only on conclusory "inference[s]" about the services Analytics Defendants provide, including cherry-picked excerpts of Analytics Defendants' terms. *See id.* ¶ 128 n.19 (purporting allegations based "on reasonable inference"); *id.* ¶ 180 (citing portions of terms). Critically, Plaintiffs do not cite a *single* ad any Analytics Defendant served to them—or anyone else—based on the information Flo allegedly sent. *Id.* ¶¶ 61, 89, 149, 182, 220(c). Plaintiffs also do not allege that AppsFlyer engaged in *any* targeted advertising or had any "marketing and advertising practice"—nor could they, because it does not. *Cf. id.* ¶ 149. And Google's, Facebook's, and Flurry's terms specifically prohibit app developers from using personally identifiable health data for personalized advertising purposes.[3]

---

"necessary rights and permissions and a lawful basis" for disclosures and to provide their users "robust and sufficiently prominent notice regarding the Business Tool Data collection, sharing and usage"); Exs. 10–11 (AppsFlyer Terms of Use) (prohibiting "using the Services to collect or otherwise enable the collection of any Restricted Data," which expressly includes "any health information"); Exs. 16–17 (Flurry Analytics Terms of Service) (prohibiting "us[ing] the Services to track or collect personally identifiable information of end users" or "associat[ing] any data gathered from your application(s) with any personally identifying information," and requiring Flo to "obtain all end-user consents").

[2] As detailed in Flo's Motion to Dismiss ("Flo MTD") Sec. III, the Flo App's terms explicitly disclosed Flo's sharing of app usage data with third parties, including Analytics Defendants.

[3] Analytics Defendants' RJN Ex. 3 (Google's Personalized advertising, Advertising Policies Help Page); *id.* Exs. 7–9 (Facebook Business Tools Terms & Facebook Advertising Policies); *id.* Exs. 16–17 (Flurry Analytics Terms of Service).

4

Plaintiffs also claim that had they "known that Flo Health would share their intimate health data . . . they would not have used the Flo App." *Id.* ¶ 27. But Plaintiffs also allege the "truth" about the alleged conduct was "expos[ed]" by the *WSJ* in February 2019, leading to "public outrage," hundreds of Flo user complaints, and the purported conduct to cease. *Id.* ¶¶ 21, 124, 143, 183–86, 267. Nevertheless, some Plaintiffs admit they did not even download the Flo App until *after* this "bombshell" publicity. *See id.* ¶ 50. Further, *no* Plaintiff stopped using the Flo App following the *WSJ*'s coverage—they all admit they still use it or did so recently. *Id.* ¶¶ 36, 57, 64, 71, 85. And despite being on notice of the complained-of conduct since *at least* February 2019, only *one* Plaintiff filed suit against Analytics Defendants prior to the consolidation of these cases more than *two* years later on June 7, 2021. *Kiss v. Flo Health, Inc.*, Case No. 3:21-CV-04333-JD, ECF 1.

## C.    Relevant Procedural History

On August 12, 2021, this Court consolidated eight cases against Flo, including the single action filed against Analytics Defendants. *Frasco v. Flo Health*, Case No. 3:21-cv-00757, ECF 59. Plaintiffs' CAC was filed on September 2, 2021, asserting the following claims against Analytics Defendants[4]: (1) unjust enrichment against Google, Facebook, and Flurry (and Flo) (Count 5); (2) violation of the UCL against Google, Facebook, and Flurry (Count 9); (3) aiding and abetting UCL violations against all Analytics Defendants (Count 10); (4) aiding and abetting common law invasion of privacy— intrusion upon seclusion against all Analytics Defendants (Count 11); (5) violation of the Federal Wiretap Act against Google, Facebook, and Flurry (Count 12); (6) violation of the CIPA against Google, Facebook, and Flurry (Count 13); and (7) violation of the CDAFA against Google, Facebook, and Flurry (and Flo) (Count 14). ECF 64.

## III.    LEGAL STANDARDS

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Naruto v. Slater*, 888 F.3d 418, 425 n.7 (9th Cir. 2018). It is the plaintiff's burden to establish each element of Article III standing in response to a Rule 12(b)(1) motion. *See Kingman Reef Atoll Inv., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

---

[4] The only claims alleged against AppsFlyer are the two aiding and abetting claims (Claims 10 & 11) based on Flo's purported violation of the UCL and invasion of privacy.

Moreover, a named plaintiff purporting to represent a class must establish their own Article III standing to pursue each claim alleged. *O'Shea v. Littleton*, 414 U.S. 488, 494–95 (1974).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV.    ARGUMENT

### A.    Plaintiffs Lack Article III Standing

To establish Article III standing, Plaintiffs must plead facts showing that they personally "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 337, 338 (2016); *see Lewis v. Casey*, 518 U.S. 343, 357 (1996) (putative class representatives must establish their own standing). All of these elements must be demonstrated "for each claim plaintiff[s] seek[] to press" and "for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Plaintiffs' allegations fail every element.

*First*, to plead an injury-in-fact, Plaintiffs must allege an injury that is "concrete in both a qualitative and temporal sense" and "actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). A "bare procedural violation, divorced from any concrete harm" is insufficient. *Spokeo*, 578 U.S. at 341; *TransUnion LLC*, 141 S. Ct. at 2190, 2213. Here, Plaintiffs never allege they were *personally* injured by Flo's purported sending of Custom App Events with so-called "descriptive" titles to Analytics Defendants. They merely parrot the standing requirement, summarily contending that they have "suffered harm and injury, including but not limited to an invasion of their privacy rights." CAC ¶ 270. But the sharing of descriptive titles that supposedly reveal personal health information "without any concrete consequence" does not give rise to an Article III injury. *See Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016). Nor do Plaintiffs plausibly

6

allege any actual privacy invasion. Despite their rhetoric, they never allege *how* Analytics Defendants could use the Custom App Event titles that Flo sent to them—much less that Analytics Defendants actually did so. *TransUnion*, 141 S. Ct. at 2205, 2209 ("an injury in law is not an injury in fact," and "the mere existence of inaccurate information in a database is insufficient"). Instead, Plaintiffs speculate that the titles "*could*" have been used by Analytics Defendants to serve Plaintiffs or others intrusive ads because they were not "contractually limit[ed]" from doing so. CAC ¶¶ 127, 136. This allegation of *possible* injury is far too speculative. *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 682 (N.D. Cal. 2021) (holding mere potential for privacy invasion based on "attenuated chain of possibilities" insufficient); *Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1235 (9th Cir. 2017) ("possible future injury" insufficient). AppsFlyer does not even maintain an "advertising practice" in the first place, CAC ¶ 149, and Google's, Facebook's, and Flurry's policies prohibit app developers from using personally identifiable health data for advertising purposes.[5]

Nor do Plaintiffs allege any economic injury sufficient for an injury-in-fact. Even if they had plausibly pleaded that Analytics Defendants "used" their personal data (they have not), Plaintiffs still would need to allege how this "use of the information deprived [them] of the information's economic value." *In re Google, Inc. Priv. Pol'y Litig.*, 2015 WL 4317479, at *5 n.63 (N.D. Cal. July 15, 2015) ("[M]ere misappropriation of personal information, without a resultant economic harm . . . is neither damage nor injury-in-fact."). But nowhere do Plaintiffs identify what economic value their purported health information in the Custom App Event titles might have had to them, nor can they plausibly claim to have lost any economic value, given their allegation that they would never have sold such information in the first place. *E.g.*, CAC ¶¶ 83, 90;[6] *In re Google, Inc. Priv. Pol'y Litig.*, 2015 WL 4317479, at *5 ("Plaintiffs plead neither the existence of a market for their [information] nor any impairment of their ability to participate in that market.").

*Second*, Plaintiffs do not allege that Analytics Defendants' receipt of Flo's Custom App Events *was the cause of* their alleged injury. *Spokeo*, 578 U.S. at 338. Plaintiffs fail to plead *any* facts indicating

---

[5] *See supra* n.3.

[6] Plaintiffs unsuccessfully attempt to fill this hole by alleging generally that this "type of data" is monetarily valuable. CAC ¶¶ 201–16. Notably, Plaintiffs do not allege that Analytics Defendants earned profits from Plaintiffs' data or even from any data they received from Flo. *See id.*

7

that Analytics Defendants knew of Flo's allegedly improper disclosures, let alone *caused* them—and while Plaintiffs speculate that ads *could* have been directed at them or others based on Analytics Defendants' receipt of Flo's Custom App Events with allegedly descriptive titles, no Plaintiff alleges any specific harm from any specific ads or any loss of privacy—and certainly merely not on the basis of Analytics Defendants' conduct in *receiving* Flo's Custom App Events. To the contrary, Plaintiffs admit that Analytics Defendants' terms prohibited Flo from sending them *any* personally identifiable health data. *E.g.*, CAC ¶¶ 98, 104, 234.

*Third*, equally absent from the CAC are any allegations as to how Plaintiffs' hypothetical injuries are "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Plaintiffs do not allege that Flo's allegedly improper data transmissions are ongoing. Accordingly, any "relief" here would provide only "psychic satisfaction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

**B.    The Limitations Period in Flo's User Terms Bar Plaintiffs' Claims**

Analytics Defendants join Flo's argument that Plaintiffs are bound by the one-year statute of limitations for claims arising from their use of the Flo App. Flo MTD Sec. II; *see also Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1032 (9th Cir. 2016) (contractual limitations periods are enforceable and one-year contractual limitations period was not unconscionable). Because Analytics Defendants are expressly contemplated as third-party beneficiaries to Flo's Terms of Use, Plaintiffs' claims against Analytics Defendants arising from Plaintiffs' use of the Flo App are equally barred under California law. *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985).

While third parties need not be named so long as they are "member[s] of a class referred to and identified in" the contract (*id.*), here, Analytics Defendants are "data providers" and are actually named in Flo's terms. Flo MTD Sec. III. Flo's terms also include a "Limitation of Liability" providing that—like Flo—"data providers" (such as Analytics Defendants) will not be liable for any indirect or other damages "including but not limited to . . . loss of data[] . . . arising out of or in any way connected with the use of this app." *Id.* Analytics Defendants are thus expressly contemplated as third-party beneficiaries of Flo's terms and its liability limits. *See Moretti v. Hertz Corp.*, 2014 WL 1410432, at *3–4 (N.D. Cal. Apr. 11, 2014) (holding Hertz and Dollar were "Providers" identified in Hotwire's

8

DEFENDANTS GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:21-CV-00757-JD

terms and third-party beneficiaries entitled to enforce Hotwire's forum-selection clause); *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1362165, at *6 (N.D. Cal. Apr. 11, 2011).

Because Analytics Defendants are third-party beneficiaries "expressly contemplated and intended by the contracting parties," *Melendez v. Vaiana*, 2017 WL 8183139, at *4–5 (C.D. Cal. Oct. 19, 2017), a one-year limitations period forecloses Plaintiffs' claims against Analytics Defendants since, as explained further below, Plaintiffs inexcusably waited more than two years to bring all their claims and impermissibly attempt to do so as class claims.

**C.    The Statute of Limitations Bars Plaintiffs' Common Law, Wiretap, and CIPA Claims**

Plaintiffs' common law invasion of privacy and CIPA[7] claims (brought against Google, Facebook, and Flurry) are subject to a one-year statute of limitations. *Guillen v. Bank of Am. Corp.*, 2011 WL 4071996, at *10 (N.D. Cal. Aug. 31, 2011) (invasion of privacy); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (CIPA). Their Wiretap Act claim has a two-year limitations period. 18 U.S.C. § 2520(e).

All three claims (Counts 11, 12, & 13) must be dismissed because it "is apparent on the face of the complaint" they are time-barred. *Hakimi v. Societe Air France, S.A.*, 2018 WL 4826487, at *3 (N.D. Cal. Oct. 4, 2018). Plaintiffs claim that Flo's allegedly unlawful transmissions to Analytics Defendants ceased in February 2019—the same month they allege a "bombshell" *WSJ* article "expose[d]" the conduct. CAC ¶¶ 21, 124, 184. Plaintiffs admit this publicity led to hundreds of complaints to Flo, and they allegedly confirmed Flo's data transmissions to Analytics Defendants using a September 2018 version of the Flo App. CAC ¶¶ 143–48, 183–86, 217. Because Plaintiffs were on notice of the alleged practices by February 2019 *at the latest*, their CIPA and invasion of privacy claims had to be brought by February 2020, and their Wiretap Act claim by February 2021. Yet no Plaintiff filed claims against Analytics Defendants until June 7, 2021. *See* ECF 59.

Plaintiffs' three boilerplate justifications for this delay cannot save their claims. CAC ¶¶ 241–44. *First*, Plaintiffs allege "[t]he statute of limitations have been tolled as a result of *Flo Health's*

---

[7] Defendants reserve all arguments related to Plaintiffs' claim that California law applies to a nationwide class, and do not concede that named Plaintiffs and the putative nationwide class can invoke California law. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–94 (9th Cir. 2012); *Tromble v. W. Digital Corp.*, 2021 WL 2165796, at *2 (N.D. Cal. May 27, 2021).

knowing and active concealment and denial of facts." *Id.* ¶¶ 241–42 (emphasis added). But Plaintiffs cannot rely on *Flo's* purportedly unlawful conduct to toll the statute of limitations as to *Analytics Defendants*. Plaintiffs bear the burden of pleading concealment with particularity against *each* Defendant, including "that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1073 (N.D. Cal. 2016). Plaintiffs make no effort to plead *any* of these elements as to Analytics Defendants. *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) (plaintiffs "may not generally use the [alleged] fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants"); *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (similar for fraud allegations). They allege no "affirmative" effort by Analytics Defendants to conceal anything. *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1100 (C.D. Cal. 2009).

  *Second*, although Plaintiffs recite the delayed-discovery rule (CAC ¶ 243), they do not plead the necessary "specific[ ] facts to show . . . the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) ("[B]urden is on the plaintiff to show diligence, and conclusory allegations will not withstand a motion to dismiss."). Nor could they. To the contrary, although Plaintiffs claim that "hundreds" contacted Flo about its practices after the publication of the *WSJ* article, they never took steps to bring suit, and admit they discovered the complained-of conduct with a 2018 version of the Flo App. *Plumlee*, 2014 WL 695024, at *9 (dismissing claims where plaintiff failed to allege she was unaware of publications of misconduct).

  *Third*, Plaintiffs allege that *Flo* had a duty to disclose its data privacy practices and summarily state that "Defendants are therefore estopped from relying on any statute of limitations." CAC ¶ 243. But courts apply equitable estoppel only where a "defendant has affirmatively sought to mislead the charging party," and actually and reasonably induced the plaintiffs into waiting to sue. *Diaz v. Safeway Inc.*, 2007 WL 2793367, at *5 (N.D. Cal. Sept. 26, 2007); *see also Eisenberg v. Citibank N.A.*, 2017 WL 532936, at *6 (C.D. Cal. Feb. 8, 2017), *aff'd*, 787 F. App'x 929 (9th Cir. 2019). There are no such

10

specific allegations against Analytics Defendants. Because no tolling doctrine applies, Plaintiffs' invasion of privacy, Wiretap Act, and CIPA claims must be dismissed.

**D.    Plaintiffs' Equitable Claims Fail Because They Allege an Adequate Remedy at Law**

A claim for equitable relief is proper only where a plaintiff lacks an adequate legal remedy. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992); *Sonner*, 971 F.3d at 844. Here, Plaintiffs plead that a legal remedy—monetary damages—is available if they prevail. CAC (Prayer for Relief). This requires dismissal of Plaintiffs' equitable claims under the UCL and for unjust enrichment, as well as any equitable remedies, including disgorgement, restitution, injunctive and declaratory relief (Counts 5, 9, & 10). *Sonner*, 971 F.3d at 844 (plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL"); *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) (rejecting argument that plaintiffs would have "no adequate remedy at law if their other claims fail" because "equitable relief is unavailable" where the claims pleaded *may* entitle them to a legal remedy).[8]

Further, because Plaintiffs' "legal and equitable claims [are] based on the same factual predicates," the problem with their equitable claims is incurable, and the claims should be dismissed with prejudice. *Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, at *13–14 (C.D. Cal. Dec. 20, 2019); *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *7 (N.D. Cal. Mar. 5, 2021); *In re Macbook Keyboard Litig.*, 2020 WL 6047253, at *3–4 (N.D. Cal. Oct. 13, 2020).

---

[8] *See also Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018) (affirming dismissal of UCL injunctive relief because plaintiffs "were required to plead the inadequacy of their legal remedies"); *Durkee v. Ford Motor Co.*, 2014 WL 4352184, at *2–3 (N.D. Cal. Sept. 2, 2014). (dismissing injunctive relief because "[a] plaintiff seeking equitable relief must establish there is no adequate remedy at law available"); *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing UCL, unjust enrichment, and other equitable claims); *TopDevz, LLC v. LinkedIn Corp.*, 2021 WL 3373914, at *5 (N.D. Cal. Aug. 3, 2021) (same). Plaintiffs also cannot obtain restitution or disgorgement. A court may only order UCL restitution "as may be necessary to restore to any person in interest any money or property . . . acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. Non-restitutionary disgorgement is not permitted. *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 460 (2005). Plaintiffs fail to allege that Analytics Defendants received any property or money from Plaintiffs to return. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1140 (2003).

DEFENDANTS GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:21-CV-00757-JD

**E.     Plaintiffs Fail to Plead Analytics Defendants Aided and Abetted Unlawful Conduct**

To sustain a claim that Analytics Defendants aided and abetted Flo's alleged intrusion upon seclusion and UCL violations (Counts 10 & 11), Plaintiffs must plausibly allege that Analytics Defendants *knew* of Flo's *specific* alleged wrongdoing *and* substantially assisted or encouraged it. *Chetal v. Am. Home Mortg.*, 2009 WL 2612312, at *4 (N.D. Cal. Aug. 24, 2009).[9] Not only do Plaintiffs fail to plead *any* facts indicating that Analytics Defendants knew of Flo's allegedly improper disclosures, much less encouraged them, the CAC demonstrates the opposite: Plaintiffs acknowledge that Analytics Defendants contractually *prohibit* app developers—including Flo—from sending them users' personally identifiable health information. *E.g.*, CAC ¶¶ 98, 104, 109.

*First*, Plaintiffs do not plead any facts supporting their claim that Analytics Defendants *knew* of the *specific* alleged invasion of their privacy here—i.e., Flo's purportedly descriptive Custom App Event titles. *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006). To satisfy the knowledge prong, "the defendant must have actual knowledge of the specific primary wrong." *Id.* at 993 & n.4; *see Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005) (a "general allegation" that defendants knew of "wrongful or illegal conduct does not constitute sufficient pleading that the [defendants] had actual knowledge" of specific injury alleged). Indeed, the facts alleged must show "actual knowledge of the primary violation in which [the aiders and abettors] purportedly participated"—and general allegations of even related or similar misconduct will not suffice. *Casey*, 127 Cal. App. 4th at 1148–49 (dismissing aiding and abetting claims against banks for theft of officers where all that was alleged was that banks knew "something fishy" was occurring). Here, the facts alleged show the opposite: Analytics Defendants contractually *prohibited* Flo from sharing users' personally identifiable health data through their SDKs. *Supra* Sect. II.A. Plaintiffs' "formulaic recitation" that Analytics Defendants nonetheless "knew" Flo was violating their privacy because they merely received Flo's Custom App Events is insufficient. *Twombly*, 550 U.S. at 555; *Brill v. Chevron Corp.*, 2018 WL 3861659, at *3 (N.D. Cal. Aug. 14, 2018), *aff'd*, 804 F. App'x 630 (9th Cir. 2020) (dismissing aiding and abetting claim based on general allegations of knowledge); *Namar v. Bank of Am., N.A.*, 2017 WL 1180193, at *5 (S.D. Cal. Mar. 30, 2017) (dismissing aiding and abetting claim

---

[9] *See Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996).

where "conclusory" allegations "fail[ed] to plausibly establish [defendant] had actual knowledge" of violation); *Peterson v. Aaron's, Inc.*, 2017 WL 4390260, at *7 (N.D. Ga. Oct. 3, 2017) (failure to monitor or investigate insufficient).

*Second*, Plaintiffs do not adequately allege that Analytics Defendants provided "substantial assistance or encouragement" to Flo. *Fiol*, 50 Cal. App. 4th at 1326. Even *if* Analytics Defendants knew of Flo's alleged misconduct, "[m]ere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Id.*; *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007). Instead, Plaintiffs must identify facts showing that Analytics Defendants had "control, influence or involvement" in the *unlawful* conduct—i.e., the supposed invasion of privacy. *Decarlo v. Costco Wholesale Corp.*, 2020 WL 1332539, at *5–6 (S.D. Cal. Mar. 23, 2020). But Plaintiffs do not allege Analytics Defendants did *anything* other than enter into agreements with Flo that instructed Flo to refrain from sending users' personally identifiable health data to them and required Flo to disclose its use of their SDKs to users. *Supra* n.1. And Plaintiffs do not allege that Analytics Defendants participated in, directed, controlled, or incentivized the data Flo chose to send them, or had any part in drafting Flo's user disclosures.

At most, Plaintiffs allege that Analytics Defendants provided neutral analytics tools to Flo for circumscribed, lawful purposes. *Perfect 10, Inc.*, 494 F.3d at 809 (dismissing claim where defendants "merely process [] payments" and "lack sufficient control or personal involvement in the infringing activities"); *see Decarlo*, 2020 WL 1332539, at *5–6 (dismissing aiding and abetting UCL claims where "[t]here are no allegations [] of [alleged abettors] having any control, influence or involvement in Costco's advertising"). There is no allegation—nor could there be one—that Analytics Defendants "gave any specific authorization" for Flo to send them users' personally identifiable health data, and the allegations and contractual record here show the exact opposite. *Barrett v. Apple Inc.*, 2021 WL 827235, at *9 (N.D. Cal. Mar. 4, 2021) (dismissing with prejudice aiding and abetting claims where allegations did not show Apple "gave any specific authorization" to "unlawful activity").

**F.    Plaintiffs' Claims Fail Because They Were Not a Party to the Relevant Communications (Counts 9, 12, 13, & 14)**

Plaintiffs' consent to Flo's data disclosures is irrelevant to their wiretapping, eavesdropping,

---

13

and hacking claims against *Analytics Defendants*—because Plaintiffs were not a party to the communications on which they base their claims.[10] Because Flo separately communicated the Custom App Events with purportedly descriptive titles at issue to Analytics Defendants, Analytics Defendants were the *actual and intended* recipients of Flo's Custom App Events. 18 U.S.C. § 2511(2)(c), (d) (party to communication exempt from Wiretap Act claim); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (same for CIPA).

Here, as Plaintiffs allege, there were two *separate* transmissions: *First*, Plaintiffs entered information into the Flo App in a communication with Flo. *E.g.*, CAC ¶ 133. *Second*, "in response to these user actions, the Flo App transmitted data to [certain] Non-Flo Defendants" in the form of Custom App Events that Flo itself created and named. CAC ¶ 146. In other words, Plaintiffs expressly allege that *Flo* **first** received *Plaintiffs'* data transmissions to the Flo App, and **then** *Flo* created and named Custom App Events based on those data transmissions it "purposefully" sent as a separate, distinct transmission to *Analytics Defendants*. CAC ¶¶ 13, 17, 139, 331 ("Flo Health knowingly divulged the contents of Plaintiffs' and Class members' communications *while they were in electronic storage* to third parties, including the Non-Flo Defendants[.]" (emphasis added)). The CAC never alleges that *Plaintiffs* were parties to Flo's separate communications of Custom App Events to Analytics Defendants that they complain should not have occurred. *Cf. Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021).

Accordingly, Plaintiffs' Wiretap Act, CIPA, CDAFA, and derivative UCL claims against Facebook, Google, and Flurry thus must be dismissed. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028–31 (N.D. Cal. 2014) (consent to transmission defeats Wiretap claim); *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 962 (9th Cir. 2018) (same for CDAFA claim); Cal. Penal Code §§ 631(a), 632 (CIPA violation must be "without consent" or in "unauthorized manner").

---

[10] Analytics Defendants join Flo's argument that, to the extent that Plaintiffs allege that information they conveyed to Flo is at issue, Flo expressly disclosed that such information would be shared with Analytics Defendants, barring all claims. Flo MTD Sec. III.

**G.    Each of Plaintiffs' Claims Against Analytics Defendants Suffers from Additional Individual Deficiencies That Require Their Dismissal**

**1.    Plaintiffs Plead No Plausible Unjust Enrichment Claim (Count 5)**

There is not a standalone cause of action for "unjust enrichment" in California, and this Court has previously dismissed such claims. *E.g.*, *Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 92 (N.D. Cal. 2020) (Donato, J.) ("California treats unjust enrichment as a remedy and not an independent claim."); *Thakur v. Betzig*, 2019 WL 2211323, at *2 (N.D. Cal. May 22, 2019) (Donato, J.) (unjust enrichment is "better viewed as a remedy and not a freestanding cause of action"); *Sharpe v. Puritan's Pride, Inc.*, 2019 WL 188658, at *5 (N.D. Cal. Jan. 14, 2019) (Donato, J.) (same).

But even construing unjust enrichment as a remedy, Plaintiffs' allegations still fail for three more reasons. *First*, not only is such a remedy precluded by their request for legal remedies (*supra* pp. 11), Plaintiffs also do not plead, as required, that Facebook, Google, or Flurry (or Flo) earned or retained *any* profits from Plaintiffs through their alleged receipt of data from Flo, much less that it did so unjustly. *See Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1191–92 (N.D. Cal. 2020) (no standing for unjust enrichment where plaintiffs "failed to make any allegation that 'they retain a stake in the profits garnered from' the collection" of their data). And any benefit Analytics Defendants hypothetically *could* have received would have been incidental to their contractual relationship with Flo—not conferred by Plaintiffs.

*Second*, while "[r]estitution may be available where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct . . . when [as here] a plaintiff fails to sufficiently plead an actionable misrepresentation or omission, his or her restitution claim must be dismissed." *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016). Plaintiffs plead no omission or misrepresentation by Facebook, Google, or Flurry—in fact, they never allege relying on any statement, document, or communication from them in deciding to use the Flo App, and thus cannot plead a claim for restitution. *See id.* Because Plaintiffs provide no factual allegations to establish that any Analytics Defendant profited *at all* from the mere receipt of their purported individually identifiable health data, much less that they did so unjustly, their claims and remedy related to any purported "unjust enrichment" against Analytics Defendants must be dismissed.

*Third*, Plaintiffs allege that their rights with respect to their use of the Flo App are governed by the terms of their contract with Flo. CAC ¶¶ 289–97. Under California law, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the right of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Because Plaintiffs rest their claims on the promises in a binding agreement, they cannot also pursue quasi-contractual remedies, and this claim must be dismissed.

### 2. Plaintiffs Plead No Plausible Aiding and Abetting Invasion of Privacy Claim (Count 11)

California common law "set[s] a high bar for an invasion of privacy claim." *Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). Plaintiffs must demonstrate (1) a legally protected privacy interest, reasonable under the circumstances, and (2) that any invasion of privacy was "sufficiently serious . . . to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. NCAA*, 7 Cal. 4th 1, 35–37, 39–40 (1994). Analytics Defendants join in full Flo's argument that Plaintiffs fail to adequately plead these elements of their underlying invasion of privacy claim against Flo (Flo MTD Sec. IV.A.), and thus their claims that Analytics Defendants aided and abetted that violation also fail for this additional reason.

### 3. Plaintiffs Plead No Plausible Wiretap Act Claim (Count 12)

To state a Wiretap Act claim, Plaintiffs must allege Facebook, Google, and Flurry (1) intentionally (2) intercepted (3) the contents of (4) an electronic communication (5) using a device. *Rodriguez*, 2021 WL 2026726, at *6. Plaintiffs fail to plead *at least* the first two elements.

*First*, as explained *supra* Sec. IV.F, Facebook, Google, and Flurry did not "intercept" any communication between Plaintiffs and Flo. Such interception requires "*simultaneous*, unknown duplication and communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 & n.9 (9th Cir. 2020) (emphasis added); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("Intercept requires acquisition contemporaneous with transmission."). Here, Analytics Defendants are not alleged to have received a simultaneous duplication of data in transmission from Plaintiffs to Flo, but to have received a *distinct* Custom App Event communication created by Flo

intended for Analytics Defendants. CAC ¶ 146.[11] There is no "interception" when, as Plaintiffs allege (CAC ¶ 331), one party "stores" a record of an event and then later separately transmits a separate record of that event to an intended third-party recipient. *Id.* (alleging Flo "knowingly divulged the contents of Plaintiffs' and Class members' communications *while they were in electronic storage*" to "Analytics Defendants") (emphasis added); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (1975) (dismissing Wiretap claim); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (allegations insufficient to constitute contemporaneous interception where information was first sent to Lyft's servers and then to Uber). Nor is there "interception" when a third party receives a communication intended for it. *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (dismissing Wiretap claim where defendant was the intended recipient); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *7 (N.D. Cal. Mar. 26, 2013) (same).

Second, even if Plaintiffs did allege an "interception" of Flo's Custom App Events, they cannot plausibly allege that Facebook, Google, or Flurry *intended* to receive health-related information purportedly in the descriptive titles created by Flo. The Wiretap Act requires a defendant to act "purposefully and deliberately and not as a result of accident or mistake." *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015). At minimum, even at the pleadings stage, Plaintiffs must allege Analytics Defendants were "aware of the defect causing the interception but t[ook] no remedial action." *Lopez*, 519 F. Supp. 3d at 684. But Analytics Defendants contractually *instructed* Flo to refrain from sending sensitive data and could not have *intended* to intercept the communications.[12]

Both reasons require dismissal.

### 4. Plaintiffs Plead No Plausible CIPA Claim (Count 13)

CIPA is intended to address "the development of new devices and techniques for the purpose

---

[11] Plaintiffs' allegations distinguish this case from the holding in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), that "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception" for Wiretap Act and CIPA claims. *Id.* at 608. Plaintiffs allege that Flo "purposefully designed" the communications "transmitted" to Analytics Defendants and the challenged content communicated—the Custom App Event titles. CAC ¶ 139. Plaintiffs do not allege that Analytics Defendants received a forwarded, simultaneous "duplication" of communications by users to Flo.

[12] Even if Plaintiffs had plead a claim, their allegations place Flo's measuring of Custom App Events within the Wiretap Act's ordinary course of business exception, 18 U.S.C. § 2510(5)(a)(ii), because Flo's conduct "is furthering its 'legitimate business purposes.'" *In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL 6248499, at *11 (N.D. Cal. Dec. 3, 2013).

of eavesdropping." Cal. Penal Code § 630. CIPA claims mirror Wiretap Act claims, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 589, 607, and thus Plaintiffs' CIPA claim fails for the same reasons their Wiretap Act claim does (among others, *supra* Sec. IV.G.3. But Plaintiffs' CIPA claim also fails for three additional reasons:

*First*, as a preliminary matter, Plaintiffs do not properly allege any CIPA violation. Although the statute includes both "wiretapping" (Section 631(a)) and "eavesdropping" provisions (Section 632), those provisions are distinct and have different statutory requirements and case law. Here, Plaintiffs allege inconsistently that Facebook, Google, and Flurry committed "wiretapping" (Section 631(a)) by "eavesdrop[ing] and/or record[ing] confidential communications through an electronic amplifying or recording device." CAC ¶ 410. But that "eavesdropping" allegation invokes the requirements of Section 632, and the CAC does not plead facts to support any violation of that section. By conflating these provisions, Plaintiffs have failed to state a plausible claim under either provision of CIPA.

*Second*, Section 632 only prohibits eavesdropping on a "*confidential* communication," *People v. Soles*, 68 Cal. App. 3d 418, 419 (1977), and Plaintiffs fail to allege their interactions with the Flo App were "confidential." As Judge Hamilton concluded in another case involving CIPA, "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (collecting cases); *People v. Nakai*, 183 Cal. App. 4th 499, 518–19 (2010) (holding internet chats not "confidential" within meaning of CIPA); *In re Google Inc.*, 2013 WL 5423918, at *22–23 (N.D. Cal. Sept. 26, 2013) (holding even internet emails are not "confidential" within meaning of CIPA and not analogous to phone calls as easily shared); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018). Plaintiffs cannot plead a CIPA "surveillance claim" where it "concern[s] the alleged monitoring of [their] electronic, Internet-based communications." *Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018). Here, Plaintiffs admit the Flo App was an internet-based health "tracker," CAC ¶ 1, and thus Flo might transmit their "electronic, Internet-based" actions to another recipient—especially because Analytics Defendants *required* Flo to notify users of this fact. *Quigley*, 2018 WL 7204066, at *4. "[B]ecause Section 632 is a statute designed to combat illicit

18

recording of *telephonic* communications, which are not at issue here, the facts as pled do not reflect a claim for relief under Section 632." *Id.*

*Third*, Section 631 only applies to intercepting a communication while it is in "transit." Cal. Penal Code § 631(a); *People v. Ratekin*, 261 Cal. Rptr. 143, 145 (Cal. Ct. App. 1989). As under the Wiretap Act, this interception must occur at the same time as the conversation. *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1393 (2011) (CIPA "protects only the speaker's right to know and control the firsthand dissemination of the conversation *as it is occurring*" (emphasis added)); *Quigley*, 2018 WL 7204066, at *4 (dismissing CIPA claim for failure to allege communication "intercepted while 'in transit'"). But, as explained above, Analytics Defendants received a separate communication from Flo. There is no capture of a communication "in transit" where a "vendor that provides a software service that captures [its] clients' data, hosts it on [the vendor's] servers, and allows the clients to analyze their data." *Graham v. Noom, Inc.*, 2021 WL 1312765, at *5 (N.D. Cal. Apr. 8, 2021); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) (dismissing Wiretap Act claim on similar grounds).

### 5. Plaintiffs Plead No Plausible CDAFA Claim (Count 14)

The CDAFA "is an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015). Plaintiffs allege that Facebook, Google, and Flurry violated seven subsections of the CDAFA: Section 502 (c)(1)–(3), (c)(6)–(8), and (c)(13). But Plaintiffs do not allege any hacking or facts suggestive of hacking by these Defendants. To the contrary, Plaintiffs aver only that Facebook, Google, and Flurry received Custom App Events *from* Flo that Flo "purposefully designed" and "intended" to be "transmitted" or "conveyed" to them. The CDAFA thus does not apply here—and Plaintiffs' claim fails for numerous additional reasons.

*First*, because a CDAFA claim "sounds in fraud," it is subject to Rule 9(b)'s heightened pleading standards. *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020). Here, Plaintiffs merely "parrot[] the language" of CDAFA, which is insufficient under Rule 9. *Gonzales*, 305 F. Supp. 3d at 1090 (dismissing "boilerplate" CDAFA claims); *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018) (CDAFA claim cannot "merely track[] the

language of the statute itself, without providing facts to substantiate the claimed legal conclusions"). [13] For instance, Plaintiffs fail to plead facts to show that Analytics Defendants "had the requisite knowledge to impose [CDAFA] liability." *Nowak*, 2020 WL 6822888, at *5; *see also Spy Dialer, Inc. v. Reya LLC*, 2018 WL 3689554, at *1 (C.D. Cal. July 26, 2018) (dismissing for failure to show that defendant *intentionally* accessed plaintiff's computers). Plaintiffs allege only generically that Analytics Defendants "knew" Flo was sending health-related Custom App Event titles, and that sending such data was forbidden by Analytics Defendants. *E.g.*, CAC ¶¶ 98–99.

*Second*, Plaintiffs lack statutory standing to bring a civil CDAFA claim. Plaintiffs must plead facts to show "damage or loss by reason of a violation" of the statute. Cal. Penal Code § 502(e)(1); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014) (dismissing CDAFA claim where plaintiffs failed to allege "any tangible harm"); *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *6 (N.D. Cal. Mar. 26, 2013) ("damage or loss" must be "beyond the mere invasion of statutory rights"). Here, while Plaintiffs allege summarily that they lost "control over their . . . sensitive personal data" (CAC ¶ 422), they "offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data . . . is 'damage or loss' within the meaning of the CDAFA." *Cottle v. Plaid Inc.*, 2021 WL 1721177, at *17 (N.D. Cal. Apr. 30, 2021) (dismissing CDAFA claims); *Nowak*, 2020 WL 6822888, at *4–5 (similar); *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1185 (E.D. Cal. 2010). Moreover, civil standing under the CDAFA Section 502(c)(3), (6) and (7) exists only for the owner of the computer services or computer attacked and damaged. Cal. Penal Code § 502(e)(1); *Gonzales*, 305 F. Supp. 3d at 1090–91 (dismissing claim for failure to allege access to "*Plaintiff's* computer, computer system, etc."). Plaintiffs fail to allege any facts suggesting that Analytics Defendants functionally "attacked" the Flo App, which is not a "computer service" or a "computer," much less one owned by Plaintiffs. And any characterization of SDKs intentionally incorporated by Flo as an "attack" on the Flo App is nonsensical.

---

[13] The CDAFA's plain language bars Plaintiffs' claims. But to the extent the Court finds ambiguity in the text, the rule of lenity requires the statute be interpreted in Analytics Defendants' favor. *Crandon v. United States*, 494 U.S. 152, 158 (1990) (lenity applies in civil contexts where "the governing standard is set forth in a criminal statute"); *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *11–12 (N.D. Cal. July 20, 2010) (applying lenity to CDAFA claims).

*Third*, the CDAFA cannot be applied to third parties that "took no *active* role in tampering with, or in gaining unauthorized access to computer systems." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011) (emphasis added). But Plaintiffs allege only that *Flo* "purposefully designed" health-related Custom App Event titles and transmitted them to Analytics Defendants, despite Analytics Defendants specifically instructing Flo not to do so. CAC ¶¶ 136–42. Plaintiffs fail to allege (as they must) that Analytics Defendants took any "active" affirmative steps to direct Flo to create or name these Custom App Events or share any purported health data.

*Fourth*, and as described above, Plaintiffs fail to plead facts to show that Analytics Defendants accessed any computer or data "without permission" under CDAFA Section 502(c)(1)–(3) and (6)–(8). Instead, Plaintiffs allege that Flo "purposefully designed" its Custom App Events for transmission to Analytics Defendants. CAC ¶ 139; *see Oracle*, 879 F.3d at 962 (no CDAFA claim where defendant had permission to take and use data); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d at 716 (similar); *Brodsky*, 445 F. Supp. 3d at 131–32 (same). Nor is it plausible that Facebook, Google, and Flurry "circumvented" technical or code-based barriers in place to restrict or bar their access because, as explained, Flo authorized them to receive the transmitted information via their respective SDKs, which are tools developers intentionally integrate for that very purpose. *Facebook Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1036 (N.D. Cal. 2012); *Quigley*, 2018 WL 7204066, at *5. To the contrary, Plaintiffs admit Flo purposefully integrated the SDKs. *E.g.*, CAC ¶ 14. Plaintiffs also voluntarily downloaded the Flo App, and they allege no "hacking" into it by Analytics Defendants. *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1054 (N.D. Cal. 2014) (rejecting CDAFA claim where plaintiffs alleged they voluntarily installed an app that contained allegedly "surreptitious code"). Moreover, the mere alleged violation of a term of use does not fall within the definition of "without permission" under the CDAFA. *See In re iPhone Application Litig.*, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011).

*Fifth*, Plaintiffs do not sufficiently plead that Analytics Defendants "alter[ed], damage[d], delete[d], destroy[ed], or otherwise use[d] any data, computer, computer system, or computer network" as required by Section 502(c)(1). *See Ticketmaster*, 315 F. Supp. 3d at 1175 & n.5 (dismissing claim for failure to allege damage and "narrowly constru[ing] 'otherwise uses' . . . to refer to uses that involve data alteration, damage, deletion, and destruction"). Plaintiffs never allege any Analytics Defendant's

SDK caused damage to, or altered, the Flo App, much less their devices.

*Sixth*, Plaintiffs do not allege any viable "contaminant" sufficient for a claim under Section 502(c)(8). Cal. Penal Code § 502(c)(8), (b)(12) (prohibiting introduction of a "contaminant" like "viruses or worms"). These subsections of the CDAFA are only "aimed at 'viruses or worms,' and other malware that usurps the normal operation of the computer or computer system." *In re iPhone Application Litig.*, 2011 WL 4403963, at *13. Plaintiffs allege nothing of the kind. *See Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*, 810 F.3d 1075, 1084 (7th Cir. 2016).

### 6.    Plaintiffs Pleads No Plausible UCL Claim (Count 9)

Plaintiffs' UCL claim fails for the reasons described above (*supra* Sec. IV.D–F), but it should be dismissed for several additional reasons: *First*, the UCL limits statutory standing to those who have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322–24 (2011). "Courts have widely held that personal information does not constitute [such lost] money or property under the UCL." *Gardiner*, 2021 WL 2520103, at *8; *Rodriguez*, 2021 WL 2026726, at *8 (individual digital data is not considered "money or property"); *Campbell*, 77 F. Supp. 3d at 849 (misappropriation of private messages not lost "money or property"); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (same); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) (same).[14] While Plaintiffs allege consumers "value their health data" in the abstract (CAC ¶¶ 363, 374), they "do not plausibly allege that they intended to sell their . . . personal information . . . nor . . . that someone else would have bought it." *Facebook Consumer Priv. Litig.*, 402 F. Supp. 3d at 784.[15] Thus, Plaintiffs' sole

---

[14] Plaintiffs never allege they paid for the Flo App, that they made any in-app purchases, or that any such transactions were taken "because of [their] understanding of the [Flo App's] data practices vis-a-vis [Facebook, Google, and Flurry]," and thus do not contend they suffered any actual economic injury or that such injury was caused by the "unfair business practice." *See Rodriguez*, 2021 WL 2026726, at *8 (no UCL standing related to SDK operation with free apps); *Facebook Consumer Priv. Litig.*, 402 F. Supp. 3d at 804 (similar).

[15] *See also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 839–40 (N.D. Cal. 2020) (no UCL standing on theory that plaintiffs lost money or property when defendant used their personal data); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (same); *see also Opperman*, 87 F. Supp. 3d at 1056–58; *UCAR Tech. (USA) Inc. v. Yan Li*, 2018 WL 2555429, at *7 (N.D. Cal. June 4, 2018); *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *6; *In re Facebook Priv. Litig.*, 791 F. Supp. 2d at 714–15; *Yunker*, 2013 WL 1282980, at *11; *Claridge*, 785 F. Supp. 2d at 863.

and conclusory theory of economic loss to support their UCL claims is "purely hypothetical" and cannot supply statutory standing under the UCL. *Id.* at 804.

*Second*, Plaintiffs do not plead sufficient facts to show that any alleged property loss was "caused by[] the unfair business practice . . . that is the gravamen of the claim." *Kwikset*, 51 Cal. 4th at 323. At most, Plaintiffs allege that Facebook, Google, and Flurry were recipients of information these Defendants expressly told Flo *not* to send. *See, e.g.*, CAC ¶¶ 126, 137; *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (plaintiff must "allege actual reliance: that the defendant's misrepresentation or nondisclosure was an immediate cause . . . such that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct"); *Rodriguez*, 2021 WL 2026726, at *8 (dismissing UCL claim for lack of standing where plaintiffs did not allege their use of relevant service was caused by defendant's alleged misrepresentations). They allege no misrepresentation or false promise made to them by *Analytics Defendants* at all. Quite the opposite, Plaintiffs allege only that *Flo's* representations misled them. CAC ¶¶ 123, 126. That is not sufficient to establish causation as to *Analytics Defendants* for a direct UCL claim against them. *See Pratt v. Whole Food Mkt. California, Inc.*, 2015 WL 5770799, at *5 (N.D. Cal. Sept. 30, 2015) (collecting cases); *Stathakos v. Columbia Sportswear Co.*, 2017 WL 1957063, at *9 (N.D. Cal. May 11, 2017) (similar); *Olson v. Cohen*, 106 Cal. App. 4th 1209, 1214–16 (2003) (dismissing UCL claims without leave to amend because plaintiffs did not allege reliance upon the purported wrongdoing of the particular defendant).[16]

*Third*, Plaintiffs fail to plead any "unlawful," "unfair," or "fraudulent" practice by Facebook, Google, or Flurry. *Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1124–25 (2014). As described above, Plaintiffs have not adequately pleaded that Analytics Defendants "violated the California common law and the other statutes and causes of action described" in the CAC. CAC ¶ 367. Nor can Plaintiffs make out an unfairness claim when they acknowledge that Analytics Defendants forbade Flo from sending the information at issue and required Flo to fully disclose to users any information that would be sent via the SDKs. *E.g.*, CAC ¶ 369 (alleging only that Analytics Defendants "secretly receiv[ed]" data).

---

[16] Plaintiffs' continued use of the Flo App after widespread publicity about its allegedly improper use of SDKs belies their reliance even on *Flo's* representations. CAC ¶ 124. *Heeger*, 509 F. Supp. 3d at 1194 (continued use after discovery of wrongdoing presumptively defeats reliance).

DEFENDANTS GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:21-CV-00757-JD

None of them even allege an express relationship with Facebook, Google, or Flurry. *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021) (dismissing UCL claim based on alleged improper receipt of personal data where plaintiffs did not allege a transaction or contract with recipient). Indeed, Flo's Privacy Policy informed Plaintiffs that it could send data to Analytics Defendants, as required by Analytics Defendants. Flo MTD Sec. III.

Moreover, the CAC fails to meet the Rule 9(b) requirements for pleading "fraudulent" conduct with particularity. UCL fraud claims require allegations that "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Pratt*, 2015 WL 5770799, at *2. Plaintiffs assert that Analytics Defendants "have amassed a large collection of sensitive personal data without disclosing this practice" (CAC ¶ 370), but Plaintiffs do not identify *any* inadequate disclosures *by Analytics Defendants* and Analytics Defendants in fact disclose their SDK practices broadly and publicly. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) ("[a]bsent a duty to disclose, the failure to do so does not support" a UCL claim); Analytics Defendants' RJN, Exs. 1-17. Plaintiffs cannot plausibly state a UCL unfairness claim without *any* specific reference to Analytics Defendants' disclosures. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (no UCL standing without plausible allegation of reliance). Nor do they allege any facts to support an inference that they relied on any representations by Analytics Defendants—in fact, they cite no misrepresentations by Analytics Defendants *at all*. *Block*, 747 F.3d at 1140. In short, the CAC contains no allegations to support a UCL claim directly against any Analytics Defendant based on the unwanted and contractually prohibited receipt of Flo's purportedly "descriptive" Custom App Events.

### 7. Plaintiffs Plead No Plausible UCL Aiding and Abetting Claim (Count 10)

In addition to their failure to plead aiding and abetting liability (*supra* Sec. IV.G.2), Plaintiffs' aiding and abetting UCL claim fails because they cannot predicate this claim on the purported vicarious liability of Analytics Defendants for the actions or representations of Flo. *Rogers v. Cal State Mortg. Co. Inc.*, 2010 WL 144861, at *13 (E.D. Cal. Jan. 11, 2010) ("[t]he concept of vicarious liability has no application to actions brought under the" UCL); *see also Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (same). Instead, a "defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the [alleged] practices." *Perfect 10*,

494 F.3d at 808; *see In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *8 (S.D. Cal. May 22, 2009) (dismissing UCL claim alleging "in conclusory fashion without adequate particularity, that T-Mobile knew of complaints concerning deceptive marketing" related to others' practices). Plaintiffs fail to allege Analytics Defendants exercised any, let alone "unbridled," control over Flo.

## V.    CONCLUSION

For the reasons above, the claims against Analytics Defendants should be dismissed without leave to amend. Analytics Defendants have no place in this dispute between Flo and its users. Plaintiffs fail entirely to plead any misconduct at all by Analytics Defendants, and their CAC concedes that any alleged claim is long since time-barred.

Date: November 1, 2021

By: */s/ Benedict Y. Hur*
**WILKIE FARR & GALLAGHER LLP**
Benedict Y. Hur (SBN 224018)
BHur@wilkie.com
Simona Agnolucci (SBN 246943)
SAgnolucci@wilkie.com
Eduardo E. Santacana (SBN 281668)
ESantacana@wilkie.com
Tiffany Lin (SBN 321472)
TLin@wilkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.858.7400
Facsimile: 415.858.7599

*Counsel for Defendant Google LLC*

*/s/ Ashley Rogers*
**GIBSON, DUNN & CRUTCHER LLP**
Ashley Rogers (SBN 286252)
ARogers@gibsondunn.com
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

Lauren Blas (SBN 296823)
LBlas@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7503
Facsimile: 213.229.6503

DEFENDANTS GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:21-CV-00757-JD

1
2
3
4

Joseph R. Rose (SBN 279092)
JRose@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

5
6
7

Christina Stella Cernak (*pro hac vice*)
SCernak@gibsondunn.com
200 Park Avenue, Fl. 47
New York, NY 10166
Telephone: 212.351.4000
Facsimile: 212.716.0898

8

*Counsel for Defendant Facebook, Inc.*

9
10
11
12
13
14

*/s/ Melanie M. Blunschi*
**LATHAM & WATKINS LLP**
Michael H. Rubin (SBN 214636)
Michael.Rubin@lw.com
Melanie M. Blunschi (SBN 234264)
Melanie.Blunschi@lw.com
Joseph C. Hansen (SBN 275147)
Joseph.Hansen@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095

15

*Counsel for Defendant AppsFlyer, Inc.*

16
17
18
19
20
21
22
23

*/s/ Ann Marie Mortimer*
**HUNTON ANDREWS KURTH LLP**
Ann Marie Mortimer (SBN 169077)
AMortimer@HuntonAK.com
Samuel A. Danon (*pro hac vice*)
sdanon@HuntonAK.com
John J. Delionado (*pro hac vice*)
jdelionado@HuntonAK.com
Jason J. Kim (SBN 221476)
KimJ@HuntonAK.com
550 S. Hope St., Suite 2000
Los Angeles, California 90071
Telephone: 213.532.2000
Facsimile: 213.532.2020

24

*Counsel for Defendant Flurry, Inc.*

25
26
27
28

DEFENDANTS GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:21-CV-00757-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 1, 2021

WILLKIE FARR & GALLAGHER LLP

By: _____/s/ Benedict Y. Hur___ _____
Benedict Y. Hur

Attorney for Defendant
Google, LLC

DEFENDANTS GOOGLE LLC, FACEBOOK INC., APPSFLYER INC., AND FLURRY INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:21-CV-00757-JD