Brenda Sharton (*Admitted Pro Hac Vice*)
DECHERT LLP
One International Place, 40th Floor
100 Oliver Street
Boston, MA  02110-2605
Telephone:  (617) 728-7100
Facsimile:  (617) 275-8374
brenda.sharton@dechert.com

Jonathan S. Tam (Bar No. 304143)
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, CA  94104-4446
Telephone:  (415) 262-4518
Facsimile:  (415) 262-4555
jonathan.tam@dechert.com

Benjamin M. Sadun (Bar No. 287533)
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA  90071-2032
Telephone:  (213) 808-5700
Facsimile:  (213) 808-5760
benjamin.sadun@dechert.com

*Attorneys for Defendant Flo Health, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ERICA FRASCO, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>      v.<br><br>FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,<br><br>                              Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**FLO HEALTH, INC.'S MOTION TO DISMISS**<br><br>CONSOLIDATED COMPLAINT FILED: September 2, 2021<br><br>Date:          February 10, 2022<br>Time:         10:00 A.M.<br>Dept.:         Courtroom 11 – 19th Floor<br>Judge:        Honorable James Donato |

1

2

SARAH WELLMAN, individually and on behalf
of all others similarly situated,

3
                             Plaintiff,

          v.

4

5

FLO HEALTH, INC., GOOGLE, LLC,
FACEBOOK, INC., APPSFLYER, INC., and
FLURRY, INC.,

6
                             Defendants.

7

8

JUSTINE PIETRZYK, individually and on
behalf of all others similarly situated,

9

10
                             Plaintiff,

          v.

11

12

FLO HEALTH, INC., GOOGLE, LLC,
FACEBOOK, INC., APPSFLYER, INC., and
FLURRY, INC.,

13
                             Defendants.

14

15

JENNIFER CHEN, individually and on
behalf of all others similarly situated,

16

17
                             Plaintiff,

          v.

18

19

FLO HEALTH, INC., GOOGLE, LLC,
FACEBOOK, INC., APPSFLYER, INC., and
FLURRY, INC.,

20
                             Defendants.

21

22

TESHA GAMINO, individually and on
behalf of all others similarly situated,

23

24
                             Plaintiff,

          v.

25

26

FLO HEALTH, INC., GOOGLE, LLC,
FACEBOOK, INC., APPSFLYER, INC., and
FLURRY, INC.,

27
                             Defendants.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAH RIDGWAY and AUTUM N. MEIGS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,

Defendants.

MADELINE KISS, individually and on behalf of all other similarly situated,

Plaintiff,

v.

FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,

Defendants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND AND DISCLOSURES................................................................................ 2

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.     ALL OF PLAINTIFFS' CLAIMS FAIL FOR LACK OF INJURY-IN-FACT............................. 4

II.    ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED. ............................................... 5

III.   PLAINTIFFS AFFIRMATIVELY CONSENTED TO FLO'S DATA SHARING....................... 8

IV.  ALL OF PLAINTIFFS' CLAIMS AGAINST FLO FAIL FOR ADDITIONAL INDEPENDENT REASONS. ........................................................................................ 10

      A.    Invasion of Privacy (Counts I & II) ................................................................... 10

      B.    Breach of Contract (Counts III & IV)................................................................. 11

      C.    Unjust Enrichment (Count V).......................................................................... 12

      D.    Stored Communications Act ("SCA") (Count VI) .......................................... 13

      E.    California Confidentiality of Medical Information Act ("CMIA") (Count VII)............... 14

      F.    Unfair Competition Law ("UCL") (Count VIII) ............................................. 15

      G.   Comprehensive Computer Data Access and Fraud Act ("CDAFA") (Count XIV) ........... 15

CONCLUSION.................................................................................................................. 15

                                        

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
     223 F.3d 1010 (9th Cir. 2000) .................................................................................... 12

*Amusement Indus. Inc. v. Oganesyan*,
     2006 WL 2665991 (Cal. Ct. App. 2006) ....................................................................... 5

*Aryeh v. Canon Bus. Sols., Inc.*,
     292 P.3d 871 (Cal. 2013) .............................................................................................. 6

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ...................................................................................................... 3

*Avakian v. Wells Fargo Bank, N.A.*,
     2019 WL 3064426 (C.D. Cal. 2019) ........................................................................... 12

*Belluomini v. Citigroup, Inc.*,
     2013 WL 3855589 (N.D. Cal. 2013) ........................................................................... 11

*Brokaw v. Qualcomm Inc.*,
     122 F. App'x 305 (9th Cir. 2004) ................................................................................ 12

*Cottle v. Plaid Inc.*,
     2021 WL 1721177 (N.D. Cal. 2021) ........................................................................... 13

*Crossley v. California*,
     479 F. Supp. 3d 901 (S.D. Cal. 2020) ......................................................................... 10

*Custom Packaging Supply, Inc. v. Phillips*,
     2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) .............................................................. 15

*Darnaa, LLC v. Google, Inc.*,
     2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) ................................................................ 5

*Dohrmann v. Intuit, Inc.*,
     823 F. App'x 482 (9th Cir. 2020) .................................................................................. 8

*In re DoubleClick, Inc. Privacy Litig.*,
     154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........................................................................ 15

*Erhart v. BofI Holding, Inc.*,
     269 F. Supp. 3d 1059 (S.D. Cal. 2017) ....................................................................... 14

*In re Facebook Internet Tracking Litig.*,
     263 F. Supp. 3d 836 (N.D. Cal. 2017) ................................................................. 11, 13

*In re Facebook Priv. Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011) ............................................................................ 15

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................................ 12

*Folgelstrom v. Lamps Plus, Inc.*,
  125 Cal. Rptr. 3d 260 (Ct. App. 2011) ........................................................................... 11

*G & G Prods. LLC v. Rusic*,
  902 F.3d 940 (9th Cir. 2018) ............................................................................................ 6

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......................................................................... 11

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021) ............................................................................................... 3

*In re Google*,
  2013 WL 1283236 (N.D. Cal. 2013) ........................................................................ 11, 15

*In re Google, Inc. Privacy Pol'y Litig.*,
  2015 WL 4317479 (N.D. Cal. 2015) ................................................................................ 4

*Hambrecht & Quist Venture Partners v. Am. Med. Int'l., Inc.*,
  46 Cal. Rptr. 2d 33 (Ct. App. 1995) ................................................................................ 5

*Hamilton Materials, Inc. v. Dow Chem. Corp.*,
  494 F.3d 1203 (9th Cir. 2007) .......................................................................................... 6

*Hancock v. Urban Outfitters, Inc.*,
  830 F.3d 511 (D.C. Cir. 2016) ......................................................................................... 4

*In re Holl*,
  925 F.3d 1076 (9th Cir. 2019) .......................................................................................... 8

*In re iPhone App. Litig.*,
  2011 WL 4403963 (N.D. Cal. 2011) .................................................................... 4, 12, 15

*In re iPhone App. Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................... 11, 13

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ............................................................................................ 3

*Janda v. T-Mobile USA, Inc.*,
  378 F. App'x 705 (9th Cir. 2010) ..................................................................................... 5

*In re JetBlue Airways Corp., Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ........................................................................... 15

*Kent v. Microsoft Corp.*,
    2013 WL 3353875 (C.D. Cal. 2013) ............................................................................ 8

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ..................................................................................... 1

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................ 11, 12

*Maureen K. v. Tuschka*,
    155 Cal. Rptr. 3d 620 (Ct. App. 2013) ...................................................................... 15

*McGowan v. Weinstein*,
    505 F. Supp. 3d 1000 (C.D. Cal. 2020) ....................................................................... 6

*McKelvey v. Boeing N. Am., Inc.*
    86 Cal. Rptr. 2d 645 (Ct. App. 1999) ..................................................................... 7, 8

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ....................................................................... 15

*Oracle USA, Inc. v. Rimini St., Inc.*,
    879 F.3d 948 (9th Cir. 2018) ..................................................................................... 15

*Orkin v. Taylor*,
    487 F.3d 734 (9th Cir. 2007) ................................................................................... 6, 7

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ..................................................................................... 13

*Parra v. ADT Sec. Servs.*,
    2014 WL 4926277 (E.D. Cal. 2014) ............................................................................. 6

*Plumlee v. Pfizer, Inc.*,
    664 F. App'x 651 (9th Cir. 2016) ............................................................................. 6, 7

*In re Redback Networks, Inc. Sec. Litig.*,
    329 F. App'x 715 (9th Cir. 2009) ................................................................................. 3

*Rogers v. Am. President Lines, Ltd.*,
    291 F.2d 740 (9th Cir. 1961) ..................................................................................... 12

*San Mateo Union High Sch. Dist. v. Cnty. of San Mateo*,
    152 Cal. Rptr. 3d 530 (Ct. App. 2013) ...................................................................... 12

*Sanchez v. Compania Mexicana de Aviacion S.A.*,
    361 F. App'x 751 (9th Cir. 2010) ................................................................................. 8

*Schramm v. JPMorgan Chase Bank, N.A.*,
    2010 WL 11483804 (C.D. Cal. 2010) ........................................................................... 8

-iv-

*Shah v. Meeker*,
    435 F.3d 244 (2d Cir. 2006) .................................................................................... 7

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017) ...................................................................... 8

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) ...................................................................... 12

*TBG Ins. Servs. Corp. v. Superior Ct.*,
    117 Cal. Rptr. 2d 163 (Ct. App. 2002) .................................................................... 11

*Thakur v. Betzig*,
    2019 WL 2211323 (N.D. Cal. 2019) ....................................................................... 13

*TransUnion LLC v Ramirez*,
    141 S. Ct. 2190 (2021).............................................................................................. 4

*Tsao v. Captiva MVP Rest. Partners, LLC*,
    986 F.3d 1332 (11th Cir. 2021) ................................................................................. 5

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) ................................................................................... 10

*Unruh-Haxton v. Regents of Univ. of Cal.*,
    76 Cal. Rptr. 3d 146 (Ct. App. 2008) ........................................................................ 7

*Van Patten v. Vertical Fitness Group, LLC*,
    847 F.3d 1037 (9th Cir. 2017) ................................................................................. 15

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................................ 8

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1134 (C.D. Cal. 2010) ..................................................................... 8

*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. 2013) ................................................................. 12, 13

*In re Zappos.com, Inc.*,
    108 F. Supp. 3d 949 (D. Nev. 2015)........................................................................... 5

*In re Zynga Privacy Litigation.*
    750 F.3d 1098 (9th Cir. 2014) ........................................................................... 10, 13

**Statutes**

18 U.S.C.A. § 2510.................................................................................................... 13

18 U.S.C.A. § 2702.................................................................................................... 13

18 U.S.C. § 2707 ............................................................................................................... 6

Cal. Bus. & Prof. Code § 17200 *et seq.* .......................................................................... 15

Cal. Civ. Code § 56.05 ............................................................................................... 14, 15

Cal. Civ. Code § 56.06 ................................................................................................... 14

Cal. Civ. Code § 3515 .................................................................................................... 2, 8

Cal. Civ. P. Code § 335.1 ................................................................................................ 6

Cal. Civ. P. Code § 338 ................................................................................................... 6

Cal. Civ. P. Code § 339 ................................................................................................... 6

Cal. Civ. P. Code § 340 ................................................................................................... 6

Cal. Civ. P. Code § 340.8 ............................................................................................... 7

**Court Rules**

Rule 12(b)(6) .................................................................................................................... 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLEASE TAKE NOTICE that on February 10, 2022, at 10:00 A.M., or as soon thereafter as this matter may be heard, Defendant Flo Health, Inc. will and hereby respectfully moves for an order dismissing Plaintiffs' Consolidated Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12. This Motion will be heard in the Courtroom of the Honorable James Donato for the United States District Court in the Northern District of California. The Court is located at the San Francisco Courthouse, Courtroom 11, 19th Floor 450 Golden Gate Avenue, San Francisco, CA 94102.

This Motion is based on the Memorandum of Points and Authorities set forth below, the accompanying declaration of Benjamin M. Sadun and the exhibits attached thereto, the accompanying Request for Judicial Notice, the pleadings on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

## ISSUES PRESENTED

Whether Plaintiffs' claims against Flo should be dismissed for lack of standing and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and whether the claims should be dismissed with prejudice where amendment would be futile.

Dated: November 1, 2021

DECHERT LLP

By:  */s/ Brenda R. Sharton*
Brenda R. Sharton (*Admitted Pro Hac Vice*)
Jonathan S. Tam (Bar No. 304143)
Benjamin M. Sadun (Bar No. 287533)

*Attorneys for Defendant Flo Health, Inc.*

FLO HEALTH, INC.'S MOTION TO DISMISS                    21-cv-00757-JD

1

2

## MEMORANDUM AND POINTS OF AUTHORITIES

### INTRODUCTION

3

4

5

6

7

This is a motion to dismiss all of Plaintiffs' claims against Flo Health, Inc. ("Flo"). Flo is a technology startup that provides reproductive and fertility information to millions of women worldwide through the Flo App (the "App"), a mobile application. As disclosed in the App's Terms of Use ("TOU") and Privacy Policy ("PP")—which Plaintiffs affirmatively consented to—the App collects user data to operate the App, analyze user trends, and improve the user experience.[1] Specifically, as Flo disclosed in its PP, the App used third-party tools provided by analytics divisions of larger tech companies "to monitor and analyze trends, usage and activities" based on certain aggregated, de-identified user data. PP § 2.9. Flo specifically named these third parties in the PP, including AppsFlyer, Google, Facebook, and Flurry (collectively, the "Analytics Defendants"). PP § 4.1. Even Plaintiffs admit that the use of such third-party analytics is routine. Compl. ¶¶ 14-16, 152. Nevertheless, Plaintiffs now seek to hold Flo liable for operating precisely as it said it would and in line with industry norms.

8

9

10

11

12

13

14

15

16

17

18

Plaintiffs no longer allege that Flo sold user information, as they did in prior complaints. Instead, they now allege only that Flo shared this information with third parties for advertising purposes. This is completely untrue. ***Flo never sold user data. Nor did Flo share user data for advertising purposes.*** Even accepting all of Plaintiffs' factual allegations as true, however, the Consolidated Complaint ("Complaint") suffers from numerous independent, fatal, and incurable deficiencies and should be dismissed in its entirety.

19

20

21

First, no Plaintiff alleges ***any*** injury, much less the particularized injury required for standing—not a single cost incurred, reputational harm suffered, or unwanted advertisement seen on account of Flo's alleged use of their data. For this reason alone, Plaintiffs lack Article III standing with respect to all claims.

22

23

24

25

Second, Plaintiffs' claims are all hopelessly time-barred, especially under the one-year limitations period Plaintiffs agreed to in the TOU. TOU § 22. Plaintiffs do not dispute the enforceability of the TOU; to the contrary they explicitly rely on it. Nevertheless, Plaintiffs filed suit in 2021 for injuries sustained as far back as 2016 and ending in early 2019. Compl. ¶ 143. Moreover, Flo's alleged data-sharing—and the

26

27

28

---

[1] Flo's Exhibits are attached to the accompanying declaration of Benjamin M. Sadun. Copies of the TOU and PP with relevant passages highlighted are Exhibits A and B, respectively. The TOU and PP are cited repeatedly in the Complaint, *e.g.*, Compl. ¶¶ 31, 242, and are integral to it. As explained in Flo's Request for Judicial Notice ("RJN"), the Court may consider documents referenced in the Complaint. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

false notion that Flo sold data—became (in Plaintiffs' words) "bombshell" headline news in February 2019, two years before Plaintiffs filed suit. Compl. ¶ 124. Thus, by any measure, their claims are untimely.

Third, each of the activities that Plaintiffs complain about was ***expressly permitted*** by the TOU and PP that Plaintiffs affirmatively accepted. Specifically, the PP disclosed that Flo would share "Personal Data," including where a user "navigate[s] through the App," "what features [the user] prefer[s] the most," and the user's "device identifier[]." PP § 4. Consistent with these disclosures, the contents of user inputs were not shared. And any data that was shared was de-identified. It is a bedrock principle that "[sh]e who consents to an act is not wronged by it." Cal. Civ. Code § 3515. For all these reasons, and additional claim-specific defects set forth below, the Complaint should be dismissed in its entirety with prejudice.

## BACKGROUND AND DISCLOSURES

Flo is the creator of the world's leading mobile application for women's health. The Flo App, launched in 2016, provides access to information about women's reproductive health and allows its users to track information related to all phases of the reproductive cycle. Flo plays an important role in advancing women's health across the globe. The App is available in more than thirty countries, including in many places where information regarding women's reproductive health is not otherwise available. Indeed, Flo has partnered with the United Nations to spread worldwide awareness about women's reproductive and sexual health issues. Although Flo has grown considerably, it is still a relatively small company. Unlike the other Defendants, Flo is a start-up that had approximately 100 employees worldwide during the relevant time period and has grown to over 350 employees today.

Flo does not sell any user data and never has. Nor has Flo ever shared data with anyone else for advertising purposes. What Plaintiffs now allege is that Flo disclosed user data "to the Non-Flo Defendants and other third parties through 'software development kits' ('SDKs') that it incorporated into the Flo App." Compl. ¶ 14. But Plaintiffs affirmatively consented to this. The contract between Flo and App users consists of the TOU and the PP. Compl. ¶¶ 289-30. After downloading the Flo App, ***before a user can even open it***, users must affirmatively assent to the TOU and PP. *See* Compl. at 36. Plaintiffs admit these documents constitute a binding agreement between them and Flo—indeed, they predicate their jurisdictional statement and several claims on them. *See, e.g.*, Compl. ¶¶ 31, 289-311.

The TOU and PP repeatedly disclose in conspicuous and bolded language that the App will collect

and share user data to operate and improve the App, among other purposes. Key provisions include:

> BY USING THE APP, YOU CONSENT THAT WE MAY USE COOKIES AND THIRD-PARTY SERVICES, AND COLLECT YOUR USAGE DATA UNDER A UNIQUE IDENTIFIER, FOR THE PURPOSES OF TRACKING, ANALYSIS, AND IMPROVEMENT OF THE APP.

> If the information covered by this Section is aggregated or de-identified so it is no longer reasonably associated with an identified or identifiable natural person, we may use it for any business purpose.

## 2. How we use your personal data and information

We may use your information, including your Personal Data, for the following purposes:

1. to analyze, operate, maintain and improve the App, to add new features and services to the App;
2. to customize content you see when you use the App;
9. to monitor and analyze trends, usage and activities in connection with our App;

PP §§ 2, 4.1, 4.2. The TOU also expressly provides that "*[a]ny cause of action you may have with respect to your use of the App must be commenced within one (1) year after the claim or cause of action arises.*" *Id.* § 22.[2] This language appears immediately under an all caps, bolded jurisdiction provision that Plaintiffs cite in the Complaint. *See* Compl. ¶ 31.

### LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Only specific factual allegations are accepted as true, not legal assertions, "[t]hreadbare recitals of the elements," or "conclusory statements." *Id.* In addition, "the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Redback Networks, Inc. Sec. Litig.*, 329 F. App'x 715, 717 (9th Cir. 2009) (citation omitted). A claim must also be dismissed if an affirmative defense, such as "the running of the statute [of limitations,] is apparent on the face of the complaint." *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also Gonzalez v. Google LLC*, 2 F.4th 871, 890 n.8 (9th Cir. 2021).

---

[2] Except where otherwise noted, all emphasis in quotations is added.

1

**ARGUMENT**

2

**I.    All of Plaintiffs' Claims Fail for Lack of Injury-In-Fact.**

3

As explained in Analytics Defendants' Motion to Dismiss (Part IV.A, incorporated herein by

4

reference), Plaintiffs fail to allege a concrete injury. The crux of Plaintiffs' claims against Flo is that Flo

5

"disclosed [their] intimate health data without [their] knowledge or consent to third parties." *E.g.*, Compl.

6

¶ 39. As explained below, this is misleading. Flo disclosed only where users went on the App, not their

7

health data, and did so with Plaintiffs' consent, and for the purposes disclosed. *Infra* Part III. But in any

8

event, Plaintiffs do not allege how this purported disclosure **harmed** them. *E.g.*, Compl. ¶¶ 38, 41. "The

9

mere misappropriation of personal information, without a resultant economic harm … is neither damage

10

nor injury-in-fact." *In re Google, Inc. Privacy Pol'y Litig.*, 2015 WL 4317479, at \*5 n.63 (N.D. Cal. 2015).

11

Nor can uninjured Plaintiffs plead around this problem by relying on statutory violations. As the

12

Supreme Court reaffirmed earlier this year, "Article III standing requires a concrete injury even in the

13

context of a statutory violation." *TransUnion LLC v Ramirez*, 141 S. Ct. 2190, 2205 (2021). Thus, even

14

where a statute creates a cause of action, Plaintiffs lack standing unless they allege an injury analogous to

15

"harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 2204.

16

*TransUnion* is instructive. There, the plaintiffs alleged that TransUnion violated the Fair Credit Reporting

17

Act ("FCRA") by flagging them as potential terrorists without taking sufficient measures to ensure that

18

flagging was accurate. *Id.* at 2201-02. The Supreme Court held that only class members whose credit reports

19

had been transmitted to third parties had standing because the disclosure of an inaccurate credit report is

20

closely analogous to the common law injury of defamation. *Id.* at 2208-09. The Court reversed the Ninth

21

Circuit's holding that class members whose files had never been disclosed to potential lenders had standing.

22

As the Supreme Court explained: "the mere existence of inaccurate information in a database is insufficient

23

to confer Article III standing," even though the FCRA provided for nominal damages. *Id.* at 2201, 2209.

24

So too here. Even taking Plaintiffs' unsupported characterization as true, the mere sharing of

25

personal information "without any concrete consequences" is not a cognizable harm. *Hancock v. Urban*

26

*Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016); *accord In re iPhone App. Litig.* (*iPhone I*), 2011 WL

27

4403963, at \*14 (N.D. Cal. 2011) (allegations of "privacy violations" by apps did not allege injury in fact).

28

For example, courts have held that the mere theft of a plaintiff's information in a data breach, without more,

-4-

does not constitute a concrete injury. *E.g.*, *Tsao v. Captiva MVP Rest. Partners*, LLC, 986 F.3d 1332, 1345 (11th Cir. 2021); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 (D. Nev. 2015). Yet Plaintiffs allege only that the Analytics Defendants "receive[d], analyze[d], and use[d]" user data "for [their] own purposes including marketing and data analytics." *E.g.*, Compl. ¶ 99. They do not allege anything was done with that data that injured them. Therefore, both their common law and statutory claims fail for lack of standing.

## II.    All of Plaintiffs' Claims Are Time-Barred.

The limitations period for all of Plaintiffs' claims against Flo is one year because that is what the parties agreed to in the App's TOU. This agreement, which Plaintiffs affirmatively accepted and now seek to enforce, expressly provides that "*[a]ny cause of action you may have with respect to your use of the App must be commenced within one (1) year after the claim or cause of action arises.*" TOU § 22. Plaintiffs' causes of action accrued when they began using the App, well over one year before they filed suit. Their conclusory accusations of delayed discovery or fraudulent concealment are insufficient as a matter of law. *See* Compl. ¶¶ 241-43. But even if they were not, Plaintiffs' claims would still be time-barred because by Plaintiffs' own admission they had inquiry notice once Flo's alleged data sharing became "bombshell" news in early 2019. Compl. ¶ 124. Indeed, Plaintiffs say hundreds of users submitted complaints in 2019, Compl. ¶¶ 184, 186, *yet Plaintiffs waited two years or more*—until 2021—to file suit.

Where, as here, parties agree to shorten a limitations period by contract, "courts will enforce the parties' agreement provided it is reasonable." *Hambrecht & Quist Venture Partners v. Am. Med. Int'l., Inc.*, 46 Cal. Rptr. 2d 33, 43 (Ct. App. 1995); *see also Amusement Indus. Inc. v. Oganesyan*, 2006 WL 2665991, at *3 (Cal. Ct. App. 2006) (collecting cases). This is so even where the contract is one of adhesion. *Janda v. T-Mobile USA, Inc.*, 378 F. App'x 705, 709 (9th Cir. 2010); *Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *3-4 (N.D. Cal. Dec. 2, 2015) (dismissing claims based on one year limitations provision in website's terms of service) (subsequent history omitted). Courts have repeatedly found shorter contractual limitations periods—as short as three or six months—to be reasonable. *Darnaa*, 2015 WL 7753406, at *3 (collecting cases). Here, Plaintiffs have not alleged any facts that would make a one-year limitations period unreasonable and, therefore, the contractual one-year limitations period applies.

It is indisputable that the one-year limitations period has run. In California, the default rule is that statutes of limitations "begin to run … when the cause of action is complete with all of its elements."

1  *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). "[E]ven at the pleading

2  stage," Plaintiffs bear the burden to prove "nonstatutory exceptions to the basic limitations period." *Aryeh*

3  *v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 879 (Cal. 2013). Plaintiffs all began using the App over a year

4  before filing suit,[3] and admit Flo stopped sharing the relevant data in early 2019. Compl. ¶ 143. Thus, their

5  claims must be dismissed with prejudice as untimely because the alleged data sharing occurred two or more

6  years before Plaintiffs filed suit. *See Parra v. ADT Sec. Servs.*, 2014 WL 4926277, at *4 (E.D. Cal. 2014).[4]

7        Plaintiffs assert that the limitations period should be tolled. Compl. ¶¶ 241-44. But tolling "delays

8  accrual of claims only when a plaintiff has no reason to suspect wrongdoing and can[]not discover his or

9  her claims with reasonable diligence." *Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 652-53 (9th Cir. 2016).

10  Thus, the Ninth Circuit has held that where plaintiffs "could have discovered … their claim" based on

11  "highly publicized" information and media reports, they have "constructive notice" of their claims and

12  cannot toll the statute of limitations. *Orkin v. Taylor*, 487 F.3d 734, 741-42 (9th Cir. 2007); *see also G &*

13  *G Prods. LLC v. Rusic*, 902 F.3d 940, 947-48 (9th Cir. 2018) (similar); *id.* at 955 (Donato, J., concurring).

14  Here, Plaintiffs admit that "[t]he [supposed] truth about Flo Health's and the Non-Flo Defendants' conduct

15  was discussed in a report published by the *Wall Street Journal* [("*WSJ*")] in February 2019." Compl. ¶ 21.

16  The Complaint cites this article repeatedly, *e.g.*, Compl. ¶¶ 21, 269, and describes it as a "bombshell" that

17  triggered public concern, "outrage" by members of Congress, and investigations by the FTC and New York

18  state. Compl. ¶¶ 24, 124, 184-86, 217, 233.[5] And the *WSJ* article was but one of a blizzard of similar stories.

19  At least 100 articles repeating the *WSJ*'s allegations were published across the country in February and

---

[3] Plaintiffs Frasco, Wellman, Chen, Gamino, Ridgawy, Meigs, and Kiss began using the App between 2016 and 2018, Compl. ¶¶ 36, 43, 50, 57, 64, 71, 78, 85, and did not file suit until 2021. Plaintiff Pietrzyk downloaded the app in January 2020, Compl. ¶ 50, and filed suit in February 2021.

[4] Even without the contractual limitations period, most of Plaintiffs' claims are still time-barred. Seven of the eight Plaintiffs downloaded the App in or before 2018. *See* Compl. ¶¶ 36, 43, 50, 57, 64, 71, 78, 85. Most of their claims are subject to a statutory limitations period of three years or less. *See* 18 U.S.C. § 2707(f) (Stored Communications Act – 2 years); Cal. Civ. P. Code § 335.1 (invasion of privacy – 2 years); *id.* § 338(a) (statutory damages – 3 years); *id.* § 338(d) (unjust enrichment – 3 years); *id.* § 339 (implied contract – 2 years); *id.* § 340 (statutory penalties – 1 year); *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1018 (C.D. Cal. 2020) (constitutional invasion of privacy – 1 year).

[5] The FTC settlement was just that—a ***settlement***—and involved no admission of wrongdoing. *See* Ex. C. In 2019, New York DFS requested information and documents from Flo (which Flo voluntarily provided), but DFS took no further action. Nor has any other state taken action against Flo.

1 March 2019. Still more articles repeating these allegations were published later the same year.[6]

2       At the very latest, therefore, Plaintiffs had "reason to suspect" wrongdoing and could have

3 discovered their alleged injuries "with reasonable diligence" after this 2019 media storm. *Plumlee*, 664 F.

4 App'x at 652-53. Indeed, Plaintiffs concede that "[f]ollowing publication of the *Wall Street Journal* report

5 … Flo Health received several hundred complaints from Flo App users about the unauthorized disclosures

6 of health information" and "more than 100 Flo App users asked Flo Health to delete their accounts and/or

7 data or told Flo Health they were deleting, or would be deleting, the Flo App." Compl. ¶¶ 184, 186. This

8 shows not only that Plaintiffs had constructive notice of their claims in 2019 but that ***at least several***

9 ***hundred class members had actual knowledge*** of the allegations against Flo in 2019, yet not one filed suit

10 until ***two years*** later with no explanation for this delay.

11       This case is closely analogous to *McKelvey v. Boeing North America, Inc.* 86 Cal. Rptr. 2d 645 (Ct.

12 App. 1999). There, plaintiffs sued Boeing based on alleged environmental contamination and argued that

13 the statute of limitations should be tolled by the discovery rule. *Id.* at 647. The Court of Appeal disagreed

14 and affirmed dismissal of most of the claims. *Id.* at 653. The court held that the plaintiffs' references in

15 their complaints to "public notices and newspaper articles … about Boeing's intentional, reckless and/or

16 negligent conduct" demonstrated that the plaintiffs had inquiry notice of their injuries at the time of those

17 reports. *Id.* at 652.[7] Here, as in *McKelvey*, "the bottom line is that [P]laintiffs' … acknowledge the publicity

18 surrounding [the alleged wrongdoing], yet nevertheless fail to explain how they managed to ignore those

19 newspaper articles." *Id.* at 647. Thus, at the latest, the one-year limitations period ended in February 2020,

20 meaning Plaintiffs' claims are untimely even if the discovery rule applied. *See Orkin* 487 F.3d at 741-42.

21       But all this is academic because Plaintiffs fail to properly invoke the discovery rule. The Complaint

22 asserts only conclusory allegations that Plaintiffs could not have discovered their alleged injuries sooner

23 and that Flo "conceal[ed] and deni[ed] the facts alleged herein." Compl. ¶¶ 241-43. But "[a] plaintiff whose

24 complaint shows on its face that his claim would be barred without the benefit of the discovery rule must

---

25

26 [6] An index of these articles and three examples are attached as Exhibits E, F, G, and H, respectively. As explained in Flo's RJN, the Court can take judicial notice of this widespread news coverage.

27 [7] *See also Shah v. Meeker*, 435 F.3d 244, 249 (2d Cir. 2006) (applying the same principle under federal law), *abrogated on another point by Merck & Co. v. Reynolds*, 559 U.S. 633 (2010). *But cf.* Cal. Civ. P. Code § 340.8 (creating an exception to *McKelvey* in the toxic torts context); *Unruh-Haxton v. Regents of Univ. of Cal.*, 76 Cal. Rptr. 3d 146, 163 (Ct. App. 2008) (distinguishing *McKelvey*).

28

1    specifically plead facts to show: (1) the time and manner of discovery; and (2) the inability to have made
2    earlier discovery despite reasonable diligence. ***The burden is on the plaintiff to show diligence, and***
3    ***conclusory allegations will not withstand demurrer***." *Id.* at 651. The same rule applies to claims of
4    equitable tolling. *Schramm v. JPMorgan Chase Bank, N.A.*, 2010 WL 11483804, at *2 (C.D. Cal. 2010).
5    Here, the Complaint does not plead when or how Plaintiffs supposedly discovered their alleged injuries,
6    Plaintiffs' diligence, or why the injury would not have been discovered with adequate diligence.[8]

7    **III.    Plaintiffs Affirmatively Consented to Flo's Data Sharing.**

8           "[Sh]e who consents to an act is not wronged by it." Cal. Civ. Code § 3515; *see also Kent v.*
9    *Microsoft Corp.*, 2013 WL 3353875, at *6 (C.D. Cal. 2013). That well-established maxim encapsulates
10   another common flaw in Plaintiffs' claims: Plaintiffs consented to the very policies and practices they
11   attack, and the absence of consent is a necessary component of each of their claims. Courts consistently
12   dismiss similar claims for data collection or data sharing where users have consented to conduct disclosed
13   in the defendant's terms of service. *E.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal.
14   2017); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028-32 (N.D. Cal. 2014).

15          Here, Plaintiffs affirmatively consented to the App's TOU and PP; they admit they couldn't use the
16   App without doing so. *See* Compl. at 36. Federal and California "courts have recognized the general
17   enforceability of similar online agreements that require affirmative user assent." *In re Holl*, 925 F.3d 1076,
18   1085 (9th Cir. 2019); *accord Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020). In the TOU
19   and PP, again both cited and relied on by the Complaint, the Parties agreed that: (1) personal identifying
20   information ("PII") and device identifiers would be shared with third-parties as part of the App's operation,
21   Compl. ¶ 294; PP §§ 2, 4.1, 13; (2) de-identified information and some Personal Data would be shared with
22   marketing and analytics platforms, PP § 4.1; and (3) ***all data***, including "personal data," "account data,"
23   PII, and "health data" could be shared or used for "any business purpose" if it was de-identified,
24   anonymized, or aggregated. PP §§ 1, 4.2. Indeed, Section 4.1 of the PP not only disclosed that users'
25   "Personal Data" would be shared with third parties for analytics and other purposes, but specifically
26   ***identified the Analytics Defendants by name as the recipients*** and linked to their privacy policies:

27
28   [8] The discovery rule also does not apply to breach of contract or UCL claims. *Sanchez v. Compania*
     *Mexicana de Aviacion S.A.*, 361 F. App'x 751, 752 (9th Cir. 2010) (breach of contract); *Yumul v. Smart*
     *Balance, Inc.*, 733 F. Supp. 2d 1134, 1141 (C.D. Cal. 2010) (UCL).

Among others we may share your Personal Data with the following third-party services:

1.   Fabric. We use Fabric, an analytics company and a Google subsidiary, to better understand your use of the App. For example, Fabric may use device identifiers that are stored on your mobile device and allow us to analyze your use of the App in order to improve our app feature. Read more about **Fabric**. Read about Fabric privacy approach **here**.

2.   AppsFlyer. AppsFlyer is a mobile marketing platform. We may share certain non-identifiable information about you and some Personal Data (but never any data related to health) in order to carry out marketing activities and provide you better and more targeted, tailor-made service. Learn more about **AppsFlyer**. You can find AppsFlyer privacy policy **here**.

3.   Facebook and Google. We use Facebook Analytics and Google Analytics tools to track installs of our App. Normally, Facebook and Google collect only non-personally identifiable information, though some Personal Data like device identifiers may be transferred to Facebook and Google. Read more about analytical services provided by Facebook **here**. And by Google **here**. You can find their data practices in 'Privacy' sections.

4.   Amplitude. Amplitude is a behavioral analytics product that is enabling us to see and analyze how you navigate through the App, what features you prefer the most, and how to improve your experience with the App. See more **here** about Amplitude's approach to privacy.

5.   Flurry. Flurry is a Yahoo! Subsidiary and analytical platform we use in order to analyze different use trends in our App. We may share certain non-identifiable information about you and some Personal Data (but never any data related to health) with Flurry. **See more**

   Plaintiffs attempt to plead around this transparency by arguing that Flo went too far by sharing users' "intimate health data," which Flo said it would not do. Compl. ¶ 292. But this ignores the critical distinction between the ***contents*** of what users told the App and data about ***how they used the App***. Plaintiffs do not allege that Flo shared information users put into the App with ***anyone***, nor can they. Instead, Plaintiffs allege that Flo shared "App Events" with third parties. Compl. ¶ 137. These "App Events" are nothing more than "records of user-app interactions." Compl. ¶ 137. The vast majority of App Events are innocuous and relate to things like installing, opening, and closing the App. *See* Compl. ¶ 137. And none of the Custom App Events reveal the user's ***actual inputs***. For example, Flo never told any third party that a particular user was menstruating. Instead, Plaintiffs say that "[w]hen a user selects a feature to receive menstruation reminders … the Flo App records the Custom App Event [titled] 'P_ACCEPT_PUSHES_PERIOD.'" Compl. ¶ 139. But this does not disclose when a user is menstruating or anything about the user's menstruation. All the words "P_ACCEPT_PUSHES_PERIOD" directly reveal is that the user asked the App to send her menstruation reminders—nothing more. *See* Compl ¶ 139. And Plaintiffs do not claim

otherwise. The PP disclosed that Flo would use third parties to "analyze *how you navigate through the App*, what features you prefer the most, and how to improve your experience with the App." PP § 4.1.4.

The Ninth Circuit drew exactly this distinction between user inputs and data about user interactions in *In re Zynga Privacy Litigation*. 750 F.3d 1098, 1104 (9th Cir. 2014). *Zynga* involved Facebook's use of "referer headers" that told advertisers a user's Facebook ID and what page the user was looking at when he clicked on an ad. *Id.* at 1101-02. The Ninth Circuit affirmed dismissal of the case, holding that disclosing what website the user had visited did not reveal the *contents* of the user's communications with Facebook and, therefore, could not sustain a claim under the Stored Communications Act ("SCA"). *Id.* at 1107. This was so even though "an enterprising advertiser" could draw inferences and identify the user. *Id.* The "App Events" in this case are exactly the same: they do not reveal any information users entered into the App, merely what features of the App they used. At most, as in *Zynga*, recipients would need to make speculative assumptions to draw any "inferences" from the de-identified App Events. This distinction is certainly fatal to Plaintiffs' SCA claim. But it also illustrates more generally that even if the user inputs could be considered health information (which they are not), the alleged disclosure of App Events—mere "records of user-app interactions," Compl. ¶137—is not a disclosure of health data. *See, e.g.*, *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (applying same distinction to constitutional privacy rights).

Finally, App Events were only shared on a de-identified basis. Plaintiffs do not dispute this. Nowhere does the Complaint allege that the "App Event" disclosed the user's identity, either through PII or otherwise. It simply alleges that when users accessed a feature, the SDK would report the feature had been accessed for analytics purposes. *See* Compl. ¶ 139. As set forth in the PP provisions above, Plaintiffs expressly agreed that Flo could use and share such de-identified data without restriction. PP §§ 1, 4.2.

**IV.    All of Plaintiffs' Claims against Flo Fail for Additional, Independent Reasons.**

Each of Plaintiffs' claims must be dismissed for lack of standing, as untimely, and given Plaintiffs' consent, as set out above. But each claim also fails for additional, independent reasons.

**A.    Invasion of Privacy (Counts I & II)**

As a threshold matter, the constitutional right to privacy does not create a civil cause of action for damages. *See Crossley v. California*, 479 F. Supp. 3d 901, 918 (S.D. Cal. 2020). That alone is dispositive of Counts I and II. But Plaintiffs' claims also fail on the merits. "The California Constitution and the

common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Where, as here, constitutional and common-law claims are brought together, "courts conduct a combined inquiry that considers (1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) (cleaned up). Here, Plaintiffs had no reasonable expectation of privacy with respect to Flo's collecting PII and sharing of App Events because Plaintiffs affirmatively consented to the PP. *See supra* Part III. Notice and an opportunity to opt out "defeat[] [Plaintiffs'] claim[s] that [they] had a reasonable expectation of privacy." *TBG Ins. Servs. Corp. v. Superior Ct.*, 117 Cal. Rptr. 2d 163 (Ct. App. 2002). Moreover, Plaintiffs cannot claim an invasion of privacy where they have not acted "consistent[ly] with an actual expectation of privacy." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1091 (N.D. Cal. 2018). Yet ***Plaintiffs still use the App to this day***. *E.g.*, Compl. ¶¶ 36, 43.

Nor do Plaintiffs adequately plead a serious intrusion. Courts have repeatedly held that "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim" under California law. *Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. 2013).[9] Indeed, in *In re iPhone Application Litigation* (*iPhone II*), a N.D. Cal. court dismissed invasion of privacy claims on similar allegations that the defendants had "disclosed to third parties … the unique device identifier number, personal data, and geolocation information from Plaintiffs' [d]evices" because even if those disclosures were not consented to, "such disclosure does not constitute an egregious breach of social norms." 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). This is especially true here given that, as Plaintiffs acknowledge, the use of SDKs, App Events, and persistent identifiers are routine in the App industry. Compl. ¶¶ 14-16, 152. Such "routine commercial behavior" does not constitute an "egregious breach of social norms." *Folgelstrom v. Lamps Plus, Inc.*, 125 Cal. Rptr. 3d 260, 265 (Ct. App. 2011). Thus, Plaintiffs fail to state a California breach of privacy claim.

## B.    Breach of Contract (Counts III & IV)

Plaintiffs allege that Flo's sharing of de-identified App Events through the SDKs violated the PP.

---

[9] *See also In re Google*, 2013 WL 1283236, at *11 (N.D. Cal. 2013) (dismissing invasion of privacy claim where defendant allowed third parties to obtain plaintiffs' PII, transmit it without encryption, and track PII); *Low*, 900 F. Supp. 2d at 1025 (dismissing claim where LinkedIn disclosed to third parties users' numeric LinkedIn ID and LinkedIn browsing histories that could be de-anonymized by recipients).

Compl. ¶¶ 291-94. "Under California law, to state a claim for breach of contract a plaintiff must plead the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom." *Low*, 900 F. Supp. 2d at 1028. The elements are the same for an implied contract. *San Mateo Union High Sch. Dist. v. Cnty. of San Mateo*, 152 Cal. Rptr. 3d 530, 548 (Ct. App. 2013).

As explained above (Part III), Plaintiffs consented to Flo's collection and sharing of the data at issue, which means there could not have been a breach. Plaintiffs also fail to plead damages, alleging only that "[a]s a result of Flo Health's breach of contract, Plaintiffs … have suffered damages in an amount to be determined at trial." Compl. ¶ 297. Contract damages must be "appreciable and actual." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000). "Nominal damages, speculative harm, or threat of future harm do not suffice…." *Low*, 900 F. Supp. 2d at 1028. Thus, "Plaintiff[s'] conclusory allegation that [they] and the Class 'are damaged' is insufficient to plead this element of [their] contract claim." *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 723 (N.D. Cal. 2014). Indeed, the law is clear that the collection or sharing of data, without more, does ***not*** constitute actual damage. *E.g.*, *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *13 (N.D. Cal. 2013) ("[A]llegations of collection of personal information are insufficient to state a claim for breach of contract."); *iPhone I*, 2011 WL 4403963, at *14 (similar).

Plaintiffs cannot cure this defect by alleging that unrelated entities buy and sell data for "real-world dollars," Compl. ¶¶ 195, 202, because "[P]laintiffs do not plausibly allege that ***they*** intended to sell their … personal information to someone else. Nor, in any event, do they plausibly allege that someone else would have bought it as a stand-alone product." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). Nor do Plaintiffs allege that they are "foreclosed from entering into a value for value transaction relating to his PII, as a result of [Defendants'] conduct." *Yunker*, 2013 WL 1282980, at *4. Without a breach or actual damages, Plaintiffs' contract claim fails as a matter of law.[10]

## C.   Unjust Enrichment (Count V)

Plaintiffs' unjust enrichment claim fails because "in California, there is not a standalone cause of action for 'unjust enrichment.'" *Avakian v. Wells Fargo Bank, N.A.*, 2019 WL 3064426, at *7 (C.D. Cal. 2019) (citation omitted), *aff'd*, 827 F. App'x 765, 766 (9th Cir. 2020). Nor can Plaintiffs' unjust enrichment

---

[10] The implied contract claim also fails because "there exists … a valid express contract which covers the same subject matter." *Rogers v. Am. President Lines, Ltd.*, 291 F.2d 740, 742 (9th Cir. 1961); *accord, e.g.*, *Brokaw v. Qualcomm Inc.*, 122 F. App'x 305, 306-07 (9th Cir. 2004).

claim be salvaged as a "quasi-contract claim for restitution," *Thakur v. Betzig*, 2019 WL 2211323, at *2 (N.D. Cal. 2019) (Donato, J.), because a claim in quasi-contract "does not lie when," as here, "an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

### D.      Stored Communications Act ("SCA") (Count VI)

The SCA provides that **"**a person or entity providing an electronic communication service ["ECS"] to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). Plaintiffs' SCA claim fails as a matter of law for three reasons. First, Flo does not provide an ECS. An ECS is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C.A. § 2510(15). Plaintiffs do not plead that the Flo App is a communications platform. The only "communications" they allege are the data sent to or from Flo, not between users. Compl. ¶¶ 140, 179, 329. "The fact that an entity communicates electronically with its customers does not mean that it 'provides an electronic communication service.'" *E.g.*, *Cottle v. Plaid Inc.*, 2021 WL 1721177, at *19 (N.D. Cal. 2021).

Second, Plaintiffs' data was not in "electric storage" for purposes of the SCA. "[E]lectronic storage" means "temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17)(A). Plaintiffs' alleged data was not stored temporarily and was not stored for purposes of transmission. *See* Compl. ¶¶ 138, 187, 330. Thus, the SCA does not apply. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d at 845; *iPhone II*, 844 F. Supp. 2d at 1058-59. Plaintiffs' claim is strikingly similar to the one dismissed in *Yunker*, where another court in this District found that the SCA did not prohibit the transmission of PII and device identifiers to third parties via "advertising libraries" built into the app because that information was not being stored temporarily for transmission purposes. 2013 WL 1282980, at *1, 8.

Third, the SCA only prohibits ECSs from divulging the ***contents*** of communications; an ECS can "divulge a record or other information pertaining to a subscriber … to any person other than a governmental entity." 18 U.S.C.A. § 2702(c)(6). This is so even where the record data is personally identifiable. *Zynga*, 750 F.3d at 1107. As explained above (Part III), the App Events divulged only where Plaintiffs went on the App, not the actual information users put into the App. Indeed, there is no allegation that Flo shared a single

-13-

1    Plaintiff keystroke. Thus, just as the SCA does not prohibit sharing a user's internet browsing history, *id.*,

2    it also does not apply to App Events, and Plaintiffs' SCA claim fails as a matter of law.

3        **E.    California Confidentiality of Medical Information Act ("CMIA") (Count VII)**

4        The CMIA does not apply to Flo because Flo is not a "provider of healthcare" and because users'

5    inputs into the App, let alone App Events that do not directly reveal those inputs, are not "medical

6    information" as defined by the statute. Even if that were not so, however, the sharing of de-identified App

7    Events would not violate the CMIA. The CMIA applies only to "medical information … in possession of

8    or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor."

9    Cal. Civ. Code § 56.05(j). It does not extend to statements about a person's health from other sources.

10   *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017). The App did not collect medical

11   information from health care providers; to the contrary, each Plaintiff explicitly alleges that that ***she herself***

12   "provided Flo Health with her intimate health data." *E.g.,* Compl. ¶ 37. Because these user inputs do not

13   consist of "medical records, a medical certification, or other information … derived from a provider of

14   health care," they are not "medical information" to which the CMIA applies at all. *Erhart*, 269 F. Supp. 3d

15   at 1078. Nor was the information "derived from" a health care provider. For example, Plaintiffs did not rely

16   on doctors to tell them when they were menstruating. The App Events are even further removed from the

17   statute: there is simply no way that records of how users interacted with the App could be considered

18   "medical information … in possession of or derived from a provider of health care."

19       Nor can Plaintiffs shoehorn the App itself into the definition of "health care provider" under section

20   56.06(b). *See* Compl. ¶ 336. As Plaintiffs state, that provision applies only to apps "designed to maintain

21   medical information." Compl. ¶ 336. But Plaintiffs omit that the app must be "designed to maintain medical

22   information, ***as defined in subdivision (j) of Section 56.05***." Cal. Civ. Code § 56.06(b). As just explained,

23   the App collects only self-reported user inputs, not medical information from or derived from providers of

24   healthcare. Therefore, the App cannot be considered a "health care provider."

25       Even assuming, *arguendo*, that the CMIA did apply to the App (it does not), the alleged data sharing

26   does not state a *prima facie* violation. The CMIA prohibits only disclosure of information that is

27   "individually identifiable," meaning it "includes or contains any element of personal identifying

28   information sufficient to allow identification of the individual, such as the patient's name, address,

1    electronic mail address, telephone number, or social security number." *Id.* § 56.05(j). The App Events were

2    de-identified, and Plaintiffs do not allege they contained the user's "full name, or disclose[d] any of the

3    other identifying information listed in the statute." *Maureen K. v. Tuschka*, 155 Cal. Rptr. 3d 620, 631 (Ct.

4    App. 2013) (affirming dismissal of CMIA claim).

5    ### F.    Unfair Competition Law ("UCL") (Count VIII)

6    Plaintiffs' UCL claim fails for lack of economic injury. To state a claim, the UCL requires that the

7    plaintiff "***has lost money or property*** as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204;

8    *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017). Plaintiffs fail to plead

9    they were injured by the alleged sharing of their data. *See supra* Part I. Indeed, courts consistently hold that

10   "personal information does not constitute property for purposes of a UCL claim." *In re Facebook Priv.*

11   *Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd,* 572 F. App'x 494 (9th Cir. 2014).[11] In addition,

12   Plaintiffs have no economic injuries because the App is free. *E.g.*, *id.*; *iPhone I*, 2011 WL 4403963, at *14.

13   ### G.    Comprehensive Computer Data Access and Fraud Act ("CDAFA") (Count XIV)

14   Flo joins Analytics Defendants argument that Plaintiffs fail to state a claim under any provision of

15   CDAFA. Analytics Defs. MTD Part IV.G.5. Most importantly, CDAFA "is an anti-hacking statute,"

16   *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015), and does not

17   apply where, as here, Plaintiffs consented to the alleged data collection and sharing. *Oracle USA, Inc. v.*

18   *Rimini St., Inc.*, 879 F.3d 948, 962 (9th Cir. 2018), *rev'd on another point*, 139 S. Ct. 873 (2019). Indeed,

19   subsections (c)(1), (2), (6), and (13) do not apply where the plaintiff voluntarily downloads the defendant's

20   program, even if the program "surreptitiously" gathered data without permission. *See Opperman v. Path,*

21   *Inc.*, 87 F. Supp. 3d 1018, 1054 (N.D. Cal. 2014). In addition, like Plaintiffs' contract and UCL claims,

22   CDAFA requires "some showing of damage or loss, beyond the mere invasion of statutory rights," which

23   Plaintiffs utterly fail to allege. *In re Google*, 2013 WL 1283236, at *6.

24   ### CONCLUSION

25   For the foregoing reasons, the Court should dismiss the Complaint in full with prejudice.

26

27   [11] *See also, e.g.*, *In re JetBlue Airways Corp., Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005)
(airline's disclosure of passenger data to third party in violation of privacy policy had no compensable

28   value); *In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (unauthorized
collection of personal information is not economic loss).

Dated: November 1, 2021

DECHERT LLP

By:  */s/ Brenda R. Sharton*
Brenda R. Sharton (*Admitted Pro Hac Vice*)
Jonathan S. Tam (Bar No. 304143)
Benjamin M. Sadun (Bar No. 287533)

*Attorneys for Defendant Flo Health, Inc.*

FLO HEALTH, INC.'S MOTION TO DISMISS                    21-cv-00757-JD