James M. Wagstaffe (95535)
Frank Busch (258288)
**WAGSTAFFE, VON LOEWENFELDT,
BUSCH & RADWICK LLP**
100 Pine Street, Suite 725
San Francisco, CA 94111
Tel: (415) 357-8900
Fax: (415) 357-8910
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Counsel for Plaintiffs Erica Frasco
and Sarah Wellman*

Carol C. Villegas (*pro hac vice*)
Michael Canty (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com

*Interim Co-Lead Counsel for
Plaintiffs and the Proposed Class*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class*

Diana J. Zinser (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@srkattorneys.com

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA FRASCO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,<br><br>Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**PLAINTIFFS' OPPOSITION TO NON-FLO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**<br><br>Judge:    Hon. James Donato<br>Hearing:   February 10, 2022<br>Time:    10:00 a.m.<br>Place:    Courtroom 11, 19th Floor<br>       450 Golden Gate Ave<br>       San Francisco, CA 94102<br>Date Filed:  December 16, 2021 |

SARAH WELLMAN, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,

        Defendants.

---

JUSTINE PIETRZYK, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC. APPSFLYER, INC., and FLURRY, INC.,

        Defendants.

---

JENNIFER CHEN, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,

        Defendants.

TESHA GAMINO, individually and on behalf of all others similarly situated,

               Plaintiff,

v.

FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,

               Defendants.

---

LEAH RIDGWAY and AUTUMN MEIGS, individually and on behalf of all others similarly situated,

               Plaintiff,

v.

FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,

               Defendants.

---

MADELINE KISS, individually and on behalf of all others similarly situated,

               Plaintiff,

v.

FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,

               Defendants.

1

## **TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ...................................................................................................ii

3    INTRODUCTION AND FACTUAL BACKGROUND ...................................................... 1

4    STATEMENT OF ISSUES .................................................................................................. 2

5    LEGAL STANDARD ........................................................................................................... 3

6    ARGUMENT ......................................................................................................................... 3

7    I.      PLAINTIFFS HAVE ARTICLE III STANDING ..................................................... 3

8    II.     PLAINTIFFS' CLAIMS ARE TIMELY .................................................................... 4

9           A.     The Purported Contractual Limitations Period Is Unenforceable ............................. 4

10          B.     The Statute of Limitations Do Not Bar Any of Plaintiffs' Claims ............................ 5

11   III.    PLAINTIFFS ADEQUATELY PLEAD THEIR WIRETAPPING CLAIMS ........................ 7

12          A.     The Federal Wiretap Act ("FWA") Claim ................................................................. 7

13          B.     The California Invasion of Privacy ("CIPA") Claim ................................................ 11

14   IV.     PLAINTIFFS ADEQUATELY PLEAD THEIR AIDING AND ABETTING
         CLAIMS.................................................................................................................... 13

15   V.      PLAINTIFFS ADEQUATELY PLEAD THEIR UCL CLAIM ............................................ 15

16          A.     Plaintiffs Have Plead Economic Injury Caused by the Non-Flo Defendants ............ 15

17          B.     Plaintiffs' Adequately Plead Unlawful, Unfair, and Fraudulent Acts ....................... 16

18   VI.     PLAINTIFFS ADEQUATELY PLEAD THEIR EQUITABLE CLAIMS ........................... 18

19          A.     Plaintiffs' Equitable Claims Are Not Barred by Remedies at Law .......................... 18

20          B.     Plaintiffs Adequately Plead Their Unjust Enrichment Claim .................................. 18

21   VII.    PLAINTIFFS ADEQUATELY PLEAD THEIR CDAFA CLAIM ..................................... 19

22   VIII.   CONCLUSION .......................................................................................................... 21

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Facebook, Inc.*,
2019 WL 3767455 (N.D. Cal. Aug. 9, 2019)............................................................ 5

*Andino v. Apple, Inc.*,
2021 WL 1549667 (E.D. Cal. Apr. 20, 2021)......................................................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................... 3

*Attebury Grain Ltd. Liab. Co. v. Grayn Co.*,
721 F. App'x 669 (9th Cir. 2018) ........................................................................... 19

*Austin B v. Escondido Union Sch. Dist.*,
149 Cal. App. 4th 860 (2007) ................................................................................. 14

*Barrett v. Apple Inc.*,
523 F. Supp. 3d 1132 (N.D. Cal. 2021) .................................................................. 14

*Becerra v. Gen. Motors LLC*,
241 F. Supp. 3d 1094 (S.D. Cal. 2017) ................................................................... 17

*Brooks v. Thomson Reuters Corp.*,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021).......................................................... 18

*Brown v. Google, Inc.*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................................................... 5, 11, 12, 20

*Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011)................................................................................ 17

*Calhoun v. Google LLC*,
2021 WL 1056532 (N.D. Cal. March 17, 2021) ..................................................... 16

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........................................................... 9, 11, 12

*Card Tech Int'l, LLLP v. Provenzano*,
2012 WL 2135357 (C.D. Cal. June 7, 2012) .......................................................... 17

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................................... 7, 10, 11

*Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*,
973 P.2d 527  (1999)............................................................................................. 16, 17

ii

*Cepelak, et al. v. HP, Inc.*,
  2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) ...................................................... 18

*Cottle v. Plaid*,
  2021 WL 1721177 (N.D. Cal. Apr. 30, 2021) ...................................................... 18

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ................................................................................................. 3

*ESG Cap. Partners, Ld. P'ship v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ............................................................................. 18

*In re Facebook Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) .......................................................... 3, 4, 10, 19

*In re Facebook Priv. Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011) ................................................................. 13

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................. 3, 4

*Federated Univ. Police Officers' Assoc. v. Regents of Univ. of Cal..*,
  2015 WL 13273308 (C.D. Cal. July 29, 2015) .................................................... 12

*Fiol v. Doellstedt*,
  50 Cal. App. 4th 1318 (1996) .............................................................................. 14

*In re First All. Mortg. Co.*,
  471 F. 3d 977 (9th Cir. 2006) ........................................................................ *passim*

*Fox v. Ethicon Endo-Surgery, Inc.*,
  110 P.3d 914 (2005) ............................................................................................... 5

*Gonzales v. Uber Technologies, Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........................................................ 9, 10

*In re Google Android Consumer Priv. Litig.*,
  2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ..................................................... 20

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................. 8

*In re Google Assistant Priv. Litig.*,
  2021 WL 2711747 (N.D. Cal. July 1, 2021) ......................................................... 17

*In re Google Inc. Priv. Pol'y Litig.*,
  2015 WL 4317479 (N.D. Cal. July 15, 2015) ........................................................ 4

*In re Google Inc. St. View Elec. Commc'ns. Litig.*,
  794 F. Supp. 2d 1067 (N.D. Cal. 2011) ................................................................. 7

iii

*Graham v. Noom,*
    533 F. Supp. 823 (N.D. Cal. 2021) ........................................................................ 13

*Grisham v. Philip Morris, Inc.,*
    670 F. Supp. 2d 1014 (C.D. Cal. 2009) .................................................................... 5

*Health Net of Cal. Inc. v. Dep't of Health Servs.,*
    113 Cal. App. 4th 224 (2003) .................................................................................. 5

*Heeger v. Facebook, Inc.,*
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ............................................................ 18, 19

*Hill v. NCAA,*
    865 P.2d 633 (1994) ............................................................................................... 15

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC,*
    270 Fed. App'x 570 (9th Cir. 2008) ....................................................................... 14

*In re Iphone Application Litig.,*
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................. 16

*Jewel v. Nat'l Sec. Agency,*
    673 F.3d 902 (9th Cir. 2011) ................................................................................... 4

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ............................................................................... 20

*Konop v. Hawaiian Airlines, Inc.,*
    302 F.3d 868 (9th Cir. 2002) ................................................................................. 11

*Kwikset Corp. v. Sup. Ct.,*
    246 P.3d 877 (2011) ............................................................................................... 16

*Lopez v. Apple, Inc.,*
    519 F. Supp. 3d 672 (N.D. Cal. 2021) ..................................................................... 8

*Luong v. Subaru of Am., Inc.,*
    2018 WL 2047646 (N.D. Cal. May 2, 2018) ......................................................... 18

*Mastel v. Miniclip SA,*
    2021 WL 2983198 (E.D. Cal. July 15, 2021) .......................................................... 3

*McDonald v. Kiloo ApS,*
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) (Donato, J.) ...................................... 8-9, 15

*Moreno v. Sanchez,*
    106 Cal. App. 4th 1415 (2003) ................................................................................ 6

*Nielson v. Union Bank of Cal.,*
    290 F. Supp. 2d 1101, 1121 (C.D. Cal. 2003) ...................................................... 13

iv

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) ...................................................................... 13, 15

*Ovando v. Cty. of Los Angeles*,
    159 Cal. App. 4th 42 (2008) ........................................................................................ 6

*Reniger v. Hyundai Motor America*,
    122 F. Supp. 3d 888 (N.D. Cal. 2015) .......................................................................... 7

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ............................................................. 13

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) .................................................. 10, 19, 20

*S.D. v. Hytto Ltd.*,
    2019 WL 8333519 (N.D. Cal. May 15, 2019) ............................................................... 9

*Schulz v. Neovi Data Corp.*,
    152 Cal. App. 4th 86 (2007) ...................................................................................... 14

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ..................................................................................... 3

*Sihler v. Fulfillment Lab, Inc.*
    2021 WL 1293839 (S.D. Cal. Apr. 7, 2021) ............................................................... 13

*Simi Mgmt. Corp. v. Bank of Am., N.A.*,
    930 F. Supp. 2d 1082 (N.D. Cal. 2013) ..................................................................... 13

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..................................................................................... 18

*Spokeo, Inc. v. Robins*,
    578 U.S. 337 (2016) ................................................................................................... 18

*Tan v. Quick Box, LLC*,
    2021 WL 1293862 (S.D. Cal. Apr. 7, 2021) ............................................................... 15

*Ticketmaster L.L.C. v. Prestige Ent. West, Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) ...................................................................... 20

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................................................. 3

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ..................................................................................... 19

*United States v. Councilman*,
    418 F.3d 67 (1st Cir. 2005) .................................................................................... 10-11

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ................................................................ 15

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ................................................................... 6

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................... 11

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ................................................................ 9


**Statutes & Rules**

18 U.S.C. § 2510 ............................................................................................ 9

18 U.S.C. § 2511 ............................................................................................ 8

CDAFA § 502 ...................................................................................... 19, 20

Cal. Civ. Code § 1668 ................................................................................... 5

Cal. Civ. Code § 1798.125(a)(2) ................................................................ 16

**INTRODUCTION AND FACTUAL BACKGROUND**

This case is about the Flo Health ("Flo") App, which requires women to input sensitive medical information concerning their gynecological health in order to use the App. CC ¶¶131-135. Despite promising its users that this sensitive information would be kept private, Flo shared this information with the Non-Flo Defendants ("Non-Flo Defs")[1] who are some of the world's largest data companies. CC ¶¶126, 136-137, 201. There is no dispute that this information was shared, and that the Non-Flo Defs received the information – indeed, Flo admitted to its users on July 2021 that Flo "sent an identifying number related to you and information about your period and pregnancy to [Facebook, Flurry, and Google]." CC ¶232. Users of the Flo App were surprised and disgusted to learn that their most intimate health information had been shared in this way. CC ¶184. While Non-Flo Defs claim that they just "provided analytics services to Flo," this downplays what they did. Non-Flo Defs intentionally acquired Plaintiffs' private health information by developing software development kits ("SDK"), which are tools created by Non-Flo Defs to add functionality or features to an app created by a developer. CC ¶¶96, 101, 107, 112, 140. ***In exchange*** for this service, CC ¶17, Non-Flo Defs' designed their SDKs to transmit Flo user app data directly to the Non-Flo Defs, and thereby acquired Plaintiffs' valuable health information. CC ¶140. In doing so, Non-Flo Defs aided and abetted Flo's invasion of privacy, unjustly retained the economic benefit of Plaintiffs' data (which they expressly reserved the rights to use, and at least as it related to Facebook, *did* use), and violated federal and California statutes. Non-Flo Defs' Motion to Dismiss ("MTD") seeks to skirt liability by recycling several of Flo's motion to dismiss arguments (ECF No. 93), including that Plaintiffs fail to establish Article III standing and that Plaintiffs' claims are time-barred. But an invasion of privacy can constitute concrete harm for Article III standing (as it does here), and Plaintiffs' claims are timely because the contractual limitations period is unenforceable. Moreover, the statute of limitations ("SOL") begins to run at each separate interception of Plaintiffs' data. Additionally, Non-Flo Defs' other purported bases for dismissal fail. *First*, as to the wiretapping claims, Non-Flo Defs

---

[1] Non-Flo Defs refer to Facebook, Google, AppsFlyer, and Flurry. Plaintiffs note that they do not assert wiretapping, unjust enrichment, UCL, or CDAFA claims against AppsFlyer. Citations to the Consolidated Complaint, ECF No. 64, ("Complaint") are referenced as CC ___. Plaintiffs incorporate all their arguments from their Opposition to Flo Health's motion to dismiss ("Flo Opp.").

mischaracterize the facts and allegations by claiming that the transmission of data was not simultaneous. But Plaintiffs conducted an independent technical analysis demonstrating that Plaintiffs' health data was transmitted directly to the Non-Flo Defs at the same time the Plaintiffs communicated with the Flo App. CC ¶146. *Second*, with respect to their aiding and abetting claims, Plaintiffs adequately plead knowledge of Flo's underlying misconduct and substantial assistance, because Non-Flo Defs designed the SDKs in a manner that led to them acquiring the private health information. *Third*, Plaintiffs' direct UCL claim against Non-Flo Defs is adequately plead because Non-Flo Defs' conduct produced an economic loss of property. *Fourth*, Plaintiffs' equitable claims stand because courts routinely find that an invasion of privacy cannot be remedied by monetary damages alone. *Fifth*, Plaintiffs' unjust enrichment claim can and must be pursued here because there is no contract between Plaintiffs and Non-Flo Defs. *Sixth*¸ Plaintiffs adequately plead a CDAFA claim because the Non-Flo Defs accessed Flo App users' data without permission.  Non-Flo Defs' repeated (and only) response is to point the finger at Flo, and blame them for sending Flo users' personal data. But this excuse runs hollow. The SDKs created by the Non-Flo Defs were precisely designed to obtain the personal information they claim they didn't want – through acquiring Flo user "Custom App Events" containing personally revealing descriptive titles. CC ¶¶140-41. Moreover, the Federal Trade Commission ("FTC") found that Defendant Facebook actually *used* Plaintiffs' private health information for their own "research and development purposes," which occurred *despite* any purported agreements to the contrary. CC ¶¶220. Further, the New York State Department of Financial Services ("NYSDFS") found that Facebook "provide[s] the analytics services free of charge as a way to drive ad revenue on their own related platforms." [2] These damming facts are nowhere addressed or even acknowledged in Non-Flo Defs' MTD. Non-Flo Defs clearly belong in this case.

## STATEMENT OF ISSUES

Whether, drawing all reasonable inferences in the light most favorable to Plaintiffs and taking as true all material allegations in the CC, Plaintiffs have: (1) adequately alleged an Article III injury-in-fact; (2) pled timely claims; and (3) stated a claim for which relief can be granted.

---

[2] Plaintiffs have attached as exhibits the FTC Complaint and the NYSDFS Report, as they were referenced extensively in the Complaint. *See* Declaration of Carol C. Villegas, Exs. A and B.

**LEGAL STANDARD**

On a Rule 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A complaint may be dismissed only for failure to plead sufficient facts to "state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010). A claim is facially plausible when the facts alleged allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**ARGUMENT**

## I.    PLAINTIFFS HAVE ARTICLE III STANDING

Article III standing is met when plaintiffs "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 337, 338 (2016).

***First***, Plaintiffs meet the "injury in fact" requirement because their invasion of privacy is a "concrete and particularized" injury. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("Various intangible harms can also be concrete [including] . . . disclosure of private information"); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (holding that Facebook's tracking of browsing histories that were sold to advertisers was an "invasion of [a] legally protected interest that is concrete and particularized."). Here, Plaintiffs allege that they each were personally injured when the Non-Flo Defs impermissibly obtained Plaintiffs' health information that revealed Plaintiffs' sexual activity, sex drive, mood, premenstrual systems, and pregnancy. CC ¶¶133; 139-40. It is black-letter law that such allegations are sufficient to confer Article III standing. *See, e.g.*, *Mastel v. Miniclip SA,* 2021 WL 2983198, at *6 (E.D. Cal. July 15, 2021) (collection of "personal information without the plaintiff's consent involve a sufficiently 'concrete' injury"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (dissemination to third parties of plaintiffs' sensitive information is "sufficient to confer [Article III] standing.").[3]

---

[3] Separate from an invasion-of-privacy harm, Plaintiffs also allege economic harm sufficient for Article III standing. *See* CC ¶195; ¶¶201-16 (Flo user data carries financial value); CC ¶¶206-08, 210 (citing a study that values user data at a quantifiable number); CC ¶¶10; 128; 149; 182; 195; 201-16; 316-18 (allegations that Non-Flo Defs profited from the data.). The Ninth Circuit has found

Footnote continued on next page

3

1    ***Second***, Plaintiffs' injury is "fairly traceable" to the Non-Flo Defs' challenged conduct,

2    *Spokeo*, 578 U.S. at 338, because Plaintiffs' private health information was acquired by the Non-Flo

3    Defs' through the use of SDK codes that the Non-Flo Defs created and provided to Flo. CC ¶140.

4    Non-Flo Defs seem to conflate the "fairly traceable" requirement with a requirement that Plaintiffs

5    need to additionally show that they received ads that were directed at them. This is incorrect. The

6    Court in *Facebook Consumer Privacy* rejected this same argument that "a 'bare' privacy violation,

7    without 'credible risk of real world harm' such as identify theft or other economic consequences [like

8    advertising], cannot rise to the level of an Article III injury," because to "say that a 'mere' privacy

9    invasion is not capable of inflicting an 'actual injury' serious enough  . . . is to disregard the

10   importance of privacy in our society." 402 F. Supp. 3d at 787 (collecting cases). Plaintiffs' injury thus

11   occurred at the moment the information was improperly acquired by the Non-Flo Defs – not when

12   users may have received unwanted advertisements afterwards. *See id.*

13   ***Third***, Plaintiffs meet the redressability element because courts have consistently recognized

14   that violation of privacy rights can be redressed by an award of damages or injunctive relief. *See*

15   *Facebook Privacy*, 402 F. Supp. 3d at 784 ("[T]he Ninth Circuit has repeatedly explained that

16   intangible privacy injuries can be redressed in the federal courts."); *Jewel v. Nat'l Sec. Agency*, 673

17   F.3d 902, 912 (9th Cir. 2011) (similar).[4]

18   ## II.    PLAINTIFFS' CLAIMS ARE TIMELY

19   ### A.    The Purported Contractual Limitations Period Is Unenforceable

20   Non-Flo Defs argue that Plaintiffs' claims are untimely by piggybacking off of Flo's Terms

21   of Use ("TOU"). They are wrong. As asserted in Plaintiffs Flo Opp. at fn. 5, the one-year limitations

22   provision buried within the TOU is unconscionable and unenforceable under California law. Thus,

23   even assuming that the Non-Flo Defs are third-party beneficiaries of the TOU (they are not), they

24   _____

25   that such allegations are sufficient to establish Article III standing under a theory of economic harm.
     *See Facebook Tracking*, 956 F.3d at 600. Non-Flo Defs cite to *In re Google, Inc. Priv. Pol'y Litig.*,
26   but in that case, unlike here, the above allegations were "not reflected anywhere in the [complaint]."
     2015 WL 4317479, at *5 (N.D. Cal. July 15, 2015). Further, "[u]nder California law, this stake in
27   unjustly earned profits exists regardless of whether an individual planned to sell his or her data or
     whether the individual's data is made less valuable." *Facebook Tracking*, 956 F.3d at 600.
28   [4] The injunctive relief Plaintiffs seek includes terminating all downstream distributions of personal
     data illegally collected, which would redress future harms suffered by Plaintiffs and the Class.

4

cannot benefit from an unenforceable provision. In addition, Non-Flo Defs argue that the Flo TOU includes a "Limitation of Liability" provision which purports to limit liability against "data providers," and therefore, they are not liable. However, this provision is also unenforceable because "California Civil Code Section 1668 further invalidates limitations on liability per public policy for three categories of claims: fraud, willful injury, and violations of a statute." *Adkins v. Facebook, Inc.*, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9, 2019). Here, all of the claims asserted against Non-Flo Defs arise out of violations of statute (*e.g.*, FWA, CIPA, UCL, CDAFA), or out of willful injury to Plaintiffs (*e.g.*, aiding and abetting invasion of privacy, unjust enrichment as a result). Cal. Civ. Code. § 1668 thus defeats Non-Flo Defs' argument. *See Health Net of California Inc. v. Dep't of Health Servs.*, 113 Cal. App. 4th 224, 235 (2003) (§ 1668 invalidating limitation of liability provision).

**B.    The Statute of Limitations Do Not Bar Any of Plaintiffs' Claims**

Even without the benefit of the delayed discovery rule, Plaintiffs' claims are timely.  The "defendant has the burden of proving the action is time-barred," *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009) (citations omitted), and "[r]esolution of the statute of limitations issue is normally a question of fact." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 922 (2005).[5]  In *Brown v. Google LLC¸* the Court found:

> The Ninth Circuit has held that, for Wiretap Act claims, "each interception is a discrete violation" with its own statute of limitations. *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020). . . . The Ninth Circuit's reasoning applies to Plaintiffs' other claims [invasion of privacy and CIPA claims] . . . Furthermore, the California Supreme Court "ha[s] long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations." *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185, 151 Cal.Rptr.3d 827, 292 P.3d 871, 880 (2013).

525 F. Supp. 3d 1049, 1069-70 (N.D. Cal. 2021). Here, Plaintiffs argue that the interception of Plaintiffs' personal information continuously occurred until Flo reached a settlement with the FTC on January 2021. CC ¶221. Plaintiffs thereafter conducted an independent technical investigation— in consultation with experts—using a version of the Flo App from September 2018, and a version from April 2021. CC ¶¶144-50. Analysis of the September 2018 version demonstrated transmission of data from the App to the Non-Flo Defs' servers. CC ¶145. Analysis of the April 2021 version, (i.e.

---

[5] Notably, Plaintiffs dispute the assertion that Count 11 has a one-year SOL. It does not. Count 11 has a two-year SOL. *See Brown*, 525 F. Supp. 3d at 1069 (citing Cal. Civ. Proc. Code §335.1).

after the FTC settlement), did not appear to establish a connection with a Facebook or Flurry server, however, "it still maintained connections to servers operated by Non-Flo Defendants Google, AppsFlyer, [and Fabric]." CC ¶150. Thus, at minimum, January 2021 should be the appropriate benchmark for SOL measurement, and Plaintiffs' claims are therefore timely. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").[6]

However, assuming otherwise, the delayed discovery rule serves to toll the SOL. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 110 P.3d at 920. The delayed discovery rule has full force and effect in contractual limitations provisions. *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1432 (2003). "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008). Plaintiffs assert that they acted diligently in uncovering the facts giving rise to their claim, including by conducting an independent technical analysis of the Flo App, and analysis of the FTC and NYSDFS documents—which were only published in January and February 2021—that detailed the alleged conduct. CC ¶¶217-32, 233-40. Further, Flo did not reach a settlement with the FTC until January 2021, when Flo was required to notify affected users about the disclosure of users' information. CC ¶¶232. Plaintiffs were thereby notified of the alleged conduct on or about July 2021. *Id.* Thus, Plaintiffs' claims are timely, since accrual of the action was postponed until 2021. In contrast, Non-Flo Defs assert that the Plaintiffs were on notice of the alleged conduct by February 2019, since that is when the *Wall Street Journal* published the article concerning Flo. However, as asserted in Flo Opp. at 4-5, this argument is completely meritless.

---

[6] The Complaint also alleges that the FTC found that Flo impermissibly transferred data to Non-Flo Defs until "***at least***" February 2019. CC ¶143 (emphasis added). Further discovery will reveal when the transmission of data actually stopped, and also reveal any downstream use of data received.

## III.    PLAINTIFFS ADEQUATELY PLEAD THEIR WIRETAPPING CLAIMS

### A.    The Federal Wiretap Act ("FWA") Claim

The CC adequately alleges a violation of the Wiretap Act, which occurs when a party (1) intentionally (2) intercepted (3) the contents of (4) an electronic communication (5) using a device. *See* MTD at 16:17-19 (citing case law). Non-Flo Defs challenge only (1) intent, and (2) interception, *see id.*, and thus waive any argument on the other elements of the claim. *See Reniger v. Hyundai Motor America*, 122 F. Supp. 3d 888, 905 n.15 (N.D. Cal. 2015).

Plaintiffs adequately allege that the Non-Flo Defs' interception was intentional. ***First***, Plaintiffs allege that the Non-Flo Defs ***created and provided*** the SDKs to Flo, which were designed to, and did, obtain Plaintiffs' sensitive health information. CC ¶¶ 96,101,107,112,140. This—in and of itself—is sufficient to make out a finding of intent to intercept. *See In re Google Inc. St. View Elec. Commc'ns. Litig.*, 794 F. Supp. 2d 1067, 1082 (N.D. Cal. 2011) ("Plaintiffs plead facts sufficient to state a [Wiretap Act claim where] Defendant intentionally created, approved of, and installed specially-designed software and technology . . . and used this technology to intercept Plaintiffs' . . . communications."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1059 (N.D. Cal. 2015) (wiretapping found where third-party "designed" the "software" that was then embedded into mobile device, which led software to transmit data). ***Second***, the FTC specifically found that the Non-Flo Defs entered into contracts with Flo that permitted those Non-Flo Defs to use Flo's personal information for their own purposes, including for advertising and product improvement. CC ¶180. Indeed, Non-Flo Defs' own submission here demonstrates that Facebook asserted to Flo that: "We use Event Data to personalize the features and content (including ***ads*** and recommendations) that we show people on and off our Facebook Company Products. . . . We may also use Event Data . . . for research and development purposes." Non-Flo RJN, Ex. 7.  "Event Data" was defined to include "the actions that [users] take on [Flo's] websites and apps." *Id.* Separately, Google contracted that: "[Flo] consents to the collection, transfer, manipulation, storage, disclosure and other uses of information, including without limitation Developer Data[.]" Non-Flo Defs' RJN, Ex 1. Developer Data was a defined term which included "***custom application events defined by [Flo]***." *Id.*  It is illogical for a large data company like Google or Facebook, who knowingly contracted with an app developer that deals with sensitive

1   medical information—and knowingly contracted for provisions that allowed them to use such data
2   for their own purposes—to now claim they did not intend to acquire such data. ***Third***, the FTC found
3   that Facebook actually ***did in fact*** utilize Flo users' private health information for their own "research
4   and development" purposes, CC ¶220, and the NYSDFS independently found Facebook "provide[s]
5   the analytic services free of charge to drive ad revenue on their own related platforms." Dec. of Carol
6   Villegas, Ex. B, at 4. These facts establish intent to intercept because it demonstrates Facebook's
7   awareness of receiving Flo user information, but no remediation on the part of Facebook – instead
8   Facebook utilized the data. *See Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021)
9   ("interception may be considered intentional 'where a defendant is aware of a defect causing the
10  interception but takes no remedial action.'") (quoting *In re Google Assistant Priv. Litig.*, 457 F. Supp.
11  3d 797, 815 (N.D. Cal. 2020)).

12      Non-Flo Defs' only response is that the contracts above also contained provisions that app
13  developers should refrain from sending sensitive matter. MTD at 17:18. But this does not mean that
14  Non-Flo Defs' interception was not intentional, especially given that (1) the FTC found that other
15  provisions in the very same contracts contemplated using Flo users' information for Non-Flo Defs'
16  own purposes, CC ¶180 and (2) that the FTC also found that Facebook was actually using Flo users'
17  personal information for "research and development" purposes,"[7] CC ¶220 - ***despite*** these purported
18  restrictions in the contracts. Further, the NYSDFS separately found that "Facebook's internal controls
19  on this issue have been very limited and were not effective at enforcing Facebook's policy or
20  preventing the receipt of sensitive data" and that Facebook "does little to ensure that developers [like
21  Flo] are actually aware of this prohibition or to make particular note of it when the developers create
22  Customer Events that result in the transmission of sensitive data." CC ¶235.  Indeed, it does not appear
23  (and Non-Flo Defs have cited nothing to support) that any of the Non-Flo Defs had any internal
24  controls that were effective at enforcing a policy to prevent the receipt of sensitive data; and,
25  notwithstanding that the Flo App was specifically designed to obtain private medical information,

26  _____
27  [7] The FWA can also be violated if a party "intentionally uses or endeavors to use" any unlawfully
    intercepted communications. 18 U.S.C. §§ 2511(1)(a)-(d). Because Facebook knowingly utilized
    Plaintiffs' intercepted communications for their own purposes, *see* CC ¶220, they also violate the
28  FWA because of their "use" of such communications.

that any Non-Flo Def made any attempt to ensure that Flo was aware of this prohibition. Further, this Court in *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1037 (N.D. Cal. 2019) (Donato, J.) found that whether SDK defendants and app developer defendants actually "complied with their [internal] contracts [between the two] as written . . . are disputed issues that need further factual development."

Plaintiffs also adequately allege that that there was an "interception" by Non-Flo Defs. The FWA defines "intercept" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4)-(8). To acquire the "contents" of a communication means that the third-party acquires any "information concerning the substance, purport, or meaning of that communication." *Id.* As explained in Flo Opp. at 6, Plaintiffs in no way could have consented to a practice that Flo expressly promised not to engage in. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (no consent to wiretapping where privacy policy was not "specific enough" to disclose third-party acquisition of information). Thus, the Non-Flo Defs were ***not*** the intended parties of the private health information the Plaintiffs inputted into the Flo App. While Plaintiffs at this pre-discovery stage do not know all of the ways and mechanisms in which Plaintiffs' information was intercepted, the Complaint alleges that *one* of those methods was through a "Custom App Event" containing a "descriptive title," CC ¶139, such as a Custom App Event that reads "R_PREGNANCY_WEEK_CHOSEN." *Id.* Non-Flo Defs ignore that the Non-Flo Defs themselves acquired these descriptive titles—and did so purposefully through the SDKs that the Non-Flo Defs designed. CC ¶¶140-41. These descriptive titles in the App Event provided the Non-Flo Defs with the "substance" of the communication: *e.g.* that the user told the App that she is pregnant, and her pregnancy week. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (third party acquiring URL containing user's search term can amount to interception); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *7 (N.D. Cal. May 15, 2019) (user touching app, resulting in app sending "vibration intensity data" to third party, communicates content and is interception by third party). [8]

---

[8] While the transmission of mere "record information" does not violate the FWA, *see Gonzales v. Uber Technologies, Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018), the Custom App Event at issue here was not just a mere "record" of an event, but additionally, communicated substantive content that gave highly descriptive titles, revealing personal information.

Non-Flo Defs argue that there is no interception because there were "two separate" communications. *See* MTD at 14, 16. But this mischaracterizes the facts pled. Plaintiffs conducted a technical investigation that revealed that ***while*** users communicated with the App, the App "transmitted data" ***directly*** to Facebook's, AppsFlyer's, and Flurry's servers through Non-Flo Defs' SDK. CC ¶¶140;146. This preliminary analysis did not reveal that the information was first sent to Flo's servers, and *then* sent to Non-Flo Defs' servers.[9]  Courts routinely find that a user entering information into an App or browser, which then gets transmitted to a third-party (through a different technical "language"), can constitute interception of the information inputted into that App or browser. *See Facebook Tracking*, 956 F.3d at 605-607 (FWA wiretapping found where individual enters search terms on a website, and Facebook's code directs the website browser to copy and forward to Facebook's own servers the "GET requests" that contains the individual's "personally-identifiable" URL and search terms); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6, 8 (N.D. Cal. May 21, 2021) (CIPA wiretapping found where third-party Google acquired App user's data through SDK code and finding that "[b]y any assessment, there is, at this early juncture, scant daylight between the allegations of [*Facebook Tracking*] and those lodged by plaintiffs here.")[10]; *Carrier*, 78 F. Supp. 3d at 1081-82 (FWA wiretapping found where user's internet search terms entered into mobile device were sent to defendant through defendant's software "calls" on the device). Further, the Ninth Circuit has already rejected Non-Flo Defs' argument that they are "parties" to the wiretapping that occurred. *See Facebook Tracking*, 956 F.3d at 608 ("Permitting entities to engage in the unauthorized . . . forwarding of unknowing user's information would render permissible the most common methods of intrusion, allowing the [FWA party] exception to swallow the rule.").

Relatedly, Non-Flo Defs assert that there was no interception because the App may have "divulged" the communication while in "electronic storage." *See* MTD at 14; 17 (citing CC ¶330).

---

[9] Defendants' citation to *Uber*, 305 F. Supp. 3d at 1086 (*see* MTD at 17:6) is therefore inapposite.
[10] Non-Flo Defs seem to argue in MTD fn. 11 that Plaintiffs cannot benefit from the Ninth Circuit's holding in *Facebook Tracking*. Not so. In *Rodriguez*, 2021 WL 2026726, at *8, the court found *Facebook Tracking* directly applicable to allegations that an app developer was sharing plaintiff-consumers' data to Google through Google's SDK.  Indeed, *Facebook Tracking* stands for the Ninth Circuit's clear affirmation that, as applicable here, the "the Wiretap Act's legislative history evidences Congress's intent to ***prevent*** the acquisition of the contents of a message by an unauthorized third-party." *Facebook Tracking*, 956 F.3d at 608 (emphasis added).

However, Plaintiffs never asserted factual allegations that the communications were intercepted during permanent electronic storage – as opposed to during temporary "en-route" storage, which can support a finding of wiretapping. *Carrier*, 78 F. Supp. 3d at 1081-82 (N.D. Cal. 2015) (distinguishing *Konop*[11] on this basis); *see also United States v. Councilman*, 418 F.3d 67, 85 (1st Cir. 2005) (wiretapping includes acquisition of communications in temporary electronic storage). In any event, this same "electronic storage" issue in the wiretapping context was discussed in *Campbell*, and the Court there found that this "issue is premature at this stage of the case, and would be better addressed as part of a motion for summary judgment with a more developed factual record." 77 F. Supp. 3d at 841; *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) ("[U]ntil the Court can determine when and how Yahoo intercepted users' emails, the Court must accept as true Plaintiffs' allegation that they were accessed while 'in transit.'").[12]

**B.    The California Invasion of Privacy ("CIPA") Claim**

Plaintiffs plead violations of both CIPA Section 631 and Section 632. CC ¶¶407-13. Section 631 prohibits the unauthorized interception of communications, and because "Section 631 of CIPA is the state-law corollary to the [Federal] Wiretap Act," *Campbell*, 77 F. Supp. at 847, Plaintiffs adequately establish a Section 631 violation for the same reasons they establish a FWA violation.[13]

Separately, "Section 632 prohibits the interception of any 'confidential communications.'" *Brown*, 525 F. Supp. 3d at 1073 (citing the statute). Non-Flo Defs argue Section 632 was not violated because "Plaintiffs fail to allege their interactions with the Flo App were 'confidential.'" MTD at 18:15. However, "[t]he California Supreme Court has held that a conversation is 'confidential' under

---

[11] *See* MTD at 16 (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)).
[12] The conduct alleged against Non-Flo Defs does not fall within the "ordinary business exception," *see* MTD at n.12, because sharing Flo users' private information with third-party data brokers—without Flo users' consent—does not serve any "legitimate" business purpose. *See Carrier*, 78 F. Supp. 3d at 1086 (third-party intercepting phone users' text messages and URLs does not further mobile carriers "legitimate" and ordinary business purpose under the FWA).
[13] CIPA requires all parties to the conversation to consent to the interception. *See Rodriguez*, 2021 WL 202726, at *6. Thus, even if the Court does not find a FWA violation because of the party exception that Non-Flo Defs assert—***wrongfully***, since Plaintiffs allege that Non-Flo Defs were not a party to the communication between a Flo user and the Flo App—it should nevertheless find a Section 631 CIPA violation, as the court did in *Rodriguez*. *See id.* Additionally, addressing Non-Flo Defs' argument at MTD 18:5-12, should this Court find that the right words were not used in pleading their Section 631 or Section 632 claim, Plaintiffs respectfully submit that the proper remedy is leave to amend to remedy the pleading.

11

section 632 'if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *Campbell*, 77 F. Supp. 3d at 848 (citations omitted). Plaintiffs plead that the information communicated to the App includes information about a user's sexual and fertility history, and courts routinely find that communication of such personal information leads to the reasonable expectation that a communication is "confidential." *E.g.*, *Federated Univ. Police Officers' Assoc. v. Regents of Univ. of Cal..*, 2015 WL 13273308, at *12 (C.D. Cal. July 29, 2015) (conversations about medical treatment and history giving rise to expectation of confidentiality in CIPA). Further, Flo publicly stated that "Flo provides a ***secure platform*** for millions of women globally," CC ¶11; and crucially, Flo ***promised*** its users that it will under no circumstances share users' private health information or "information regarding your marked cycles, pregnancy, symptoms, notes and other information entered by [users]." CC ¶123.[14] *See Brown*, 525 F. Supp. 3d at 1074 (communications confidential under CIPA because Google's privacy policies did not adequately disclose that data would be shared). The shocked and disgusted reactions of Flo users further supports that the communications were meant to be confidential and not shared. CC ¶184.

Non-Flo Defs' cited cases are not to the contrary. *See* MTD at 18:13-28. Those cases all dealt with communications over email or internet chat messaging, which courts found do not lead to an expectation of confidentiality because users understand that "such communications can be easily shared by, for instance, the recipient(s) of the communications [like forwarding an email]." *Campbell*, 77 F. Supp. at 849. In contrast, the Flo App functions less like email, and more like a private session where the Flo user inputs information to the App for personal fertility-related use – no user believed their information may then get "forwarded" along to a third-party, especially in light of Flo's own assertion to users that it was a "secure platform" and that it would ***not*** do such a thing. *See Brown*, 525 F. Supp. 3d at 1074 (internet-based communication where there is reasonable expectation of confidentiality because it "involves a user's own private browsing session").[15]

---

[14] Moreover, just because Plaintiffs allege that Flo Health was an ovulation tracker, CC ¶1, does not mean that Plaintiffs now believe that "Flo might transmit their 'electronic-Internet-based' actions to another recipient," MTD at 18, especially in light of Flo's specific assertion to Plaintiffs that their information would ***not*** be shared.

[15] In arguing against the Section 631 claim, Non-Flo Defs reassert that the interception did not occur while in "transit" – an argument Plaintiffs disposed of *supra* at 9-10. Further Non-Flo Defs argue

Footnote continued on next page

PLAINTIFFS' OPPOSITION TO NON-FLO DEFENDANTS' MOTION TO DISMISS [Case No. 3:21-cv-00757-JD]

## IV.    PLAINTIFFS ADEQUATELY PLEAD THEIR AIDING AND ABETTING CLAIMS

Plaintiffs assert that Non-Flo Defs aided and abetted Flo's violations of the UCL and common law invasion of privacy (Claims 10 & 11). Non-Flo Defs mistakenly argue that there was no (1) "knowledge" of Flo's invasion of privacy, and no (2) "substantial assistance" to Flo's conduct. MTD at 12-13. Both arguments fail.

***First***, Plaintiffs adequately plead Non-Flo Defs' knowledge. A plaintiff may plead "actual knowledge" of the specific wrong "through inference or circumstantial evidence." *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082, 1099 (N.D. Cal. 2013). "For example, in the banking context, atypical banking procedures or transactions lacking business justification may help give rise to the conclusion that a bank had actual knowledge of the specific wrongdoing in question." *Id.*; *see also Neilson v. Union Bank of Cal.*, N.A., 290 F. Supp. 2d 1101, 1121 (C.D. Cal. 2003) ("net effect of allegations" in complaint can demonstrate knowledge).   Here, Non-Flo Defs knew of Flo's underlying invasion of privacy because the Non-Flo Defs were the ones who wrote and provided the SDK code to Flo – a company whose main purpose was to receive and collect Plaintiffs' private health information. CC ¶140. *See Sihler v. Fulfillment Lab, Inc.*, 2021 WL 1293839, at *6-7 (S.D. Cal. Apr. 7, 2021) (aider-and-abettor providing "custom software" to principal to integrate website gives rise to "knowledge of the content, representations, and general nature of the website"); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 986 (N.D. Cal. 2015) (inference of knowledge where pleading aider-and-abettor's "alleged development of APIs that permitted [App developer] to access address book data"). That the Non-Flo Defs did in fact receive Flo user sensitive health information—without Flo users' consent—but did not raise issue (or have controls in place to prevent this from happening), also raises

---

that they were mere "vendors who provide a software service that captures its clients' data, hosts it on [the vendor's] servers, and allows the client to analyze their data." MTD at 19. However, the Complaint demonstrates that third parties like Google and Facebook asserted to Flo that they would be using the data for their own purpose. For example, Facebook said it would use this data "to personalize the features and content (including ***ads*** and ***recommendations***) that we ***show people on and off our Facebook Company Products***," CC ¶180, leading those Non-Flo Defs to be more like "independent parties who mined information from other [Apps]," *Graham v. Noom*, 533 F. Supp. 823, 833 (N.D. Cal. 2021). The *Noom* court observed such allegations lead to wiretapping violations in *Facebook Tracking* and *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019). *Id.* at 832. Further, Non-Flo Defs' citation to *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) also fails, because there, the plaintiff directly sent a message to the defendant, such that the defendant became a party to that communication. Non-Flo Defs do not (and cannot) argue that this scenario applies here.

13

the plausible inference of knowledge of Flo's invasion of privacy, **especially** given that the FTC found that the Non-Flo Defs specifically contracted for provisions that would allow them to use app developer data for any reason whatsoever. CC ¶180. *See In re First All. Mortg. Co.*, 471 F. 3d 977, 999 (9th Cir. 2006) (noting that ignoring "red flags" can be sufficient for aiding-and-abetting knowledge). Further, the FTC's finding that Flo users' private health data was in fact, utilized by Facebook for research and development purposes, CC ¶180, as well as the NYSDFS's finding that Facebook's analytic services are used to "drive ad revenue on their own related platforms," *see* Dec. of Carol Villegas, Ex. B at 4, further supports a finding of knowledge of Flo's invasion of privacy. *See Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 94-96 (2007) ("direct stake" in obtaining revenue from business with principal gives rise to aiding and abetting knowledge of wrongdoing). The only basis Non-Flo Defs assert for negating knowledge is that they had restrictions in the contracts with app developers to not receive sensitive data. However, "these contrary factual allegations merely point to the need for further factual development of this issue," *Opperman*, 84. F. Supp. 3d at 986, and in any event, these supposed restrictive provisions are undermined by the current well-plead facts. *See supra* at 8.[16] And, as it pertains to sensitive medical information, these Non-Flo Defs cannot simply throw their hands up in the air, while turning a blind eye to the information flowing through, without any internal controls to enforce this supposed important provision.

**Second**, Plaintiffs have also adequately alleged substantial assistance, which requires a plaintiff to plead that the defendant's actions are a "substantial factor" in causing the plaintiff's injury. *Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC,* 270 Fed. App'x 570, 572 (9th Cir. 2008). As Non-Flo Defs note, "encouragement," "participat[ion]," or "involvement" in the unlawful conduct can meet the substantial-assistance requirement. *See* MTD at 13 (citing cases).[17]

[16] Further, Non-Flo Defs' cited cases, *see* MTD at 12:18-13:3, do not support their position because in all of those cases, plaintiffs there—unlike here—merely made conclusory allegations of general knowledge without factual support.

[17] *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132 (N.D. Cal. 2021) does not stand for the proposition that giving "specific authorization" is the only method to demonstrate substantial assistance (MTD at 13) when viewed in context. There, plaintiffs fail to show substantial assistance because they "only allege[d] that Apple failed to revoke previously granted authorizations." *Id.* at 1148. Further, *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318 (1996) and *Austin B v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860 (2007) contextually stand for the proposition that *without more*, "mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." Here, the Non-Flo Defs participated in the tort itself.

14

1   Here, Non-Flo Defs were a substantial factor in causing the underlying invasion of privacy because

2   Plaintiffs' injury ***could not have occurred*** without Non-Flo Defs' SDKs. CC ¶¶136-43. Indeed, the

3   only mechanism by which the private health information was revealed to third parties was through

4   the use of the SDK code that the Non-Flo Defs themselves created and provided to Flo. *See Tan v.*

5   *Quick Box, LLC*, 2021 WL 1293862, at *11 (S.D. Cal. Apr. 7, 2021) (substantial assistance where

6   defendant provided "software integration and other website-related service," provided "advice on

7   how to market the [principal's] products," and provided "advertising copy and product sheets");

8   *Opperman*, 84 F. Supp. 3d at 986 (substantial assistance by Apple to App defendants where Apple

9   controlled development and functions of Apps offered in App store). Further, Plaintiffs dispute Non-

10  Flo Defs' assertion that they merely "provided neutral analytics tools to Flo for circumscribed lawful

11  purposes," MTD at 13:16. Instead, the Complaint alleges that the Non-Flo Defs' SDKs were the

12  mechanism by which Non-Flo Defs acquired Plaintiffs' private health information without their

13  consent, which is unlawful. Indeed, this Court has already found that allegations that an entity who

14  has utilized an SDK to collect and harvest personal information from consumers is sufficiently an

15  invasion of privacy under the standard articulated in *Hill v. NCAA*, 865 P.2d 633 (1994). *See*

16  *McDonald*, 385 F. Supp. 3d at 1035.[18]

17  **V.    PLAINTIFFS ADEQUATELY PLEAD THEIR UCL CLAIM**

18      **A.    Plaintiffs Have Plead Economic Injury Caused by the Non-Flo Defendants**

19      To plead a UCL claim, a plaintiff must "(1) establish a loss or deprivation of money or

20  property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic

21  injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the

22  gravamen of the claim." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir.

23  2017) (citation omitted). Here, Plaintiffs advance two theories of economic injury that the Non-Flo

24  Defs directly caused. First, Plaintiffs sustained loss of their sensitive health information—which is

---

25  [18] Finally, Non-Flo Defs argue (as to Count 11) that (1) Plaintiffs fail to adequately plead the

26  underlying invasion of privacy claim against Flo, MTD at 16, and (as to Count 10) that (2) Plaintiffs cannot predicate an aiding and abetting UCL claim on "vicarious liability" of the Non-Flo Defs.

27  MTD at 24. On the first point, Plaintiffs reassert their argument from Flo Opp. at 7-9. On the second point, Plaintiffs assert that Non-Flo Defs' liability is based not on vicarious liability but on their numerous "actions undertaken by the [Non-Flo] Defendants in assistance of the [unlawful

28  practice]." *See Tan*, 2021 WL 1293862, at *13 (aiding and abetting UCL violation).

Plaintiffs' property—that resulted from Non-Flo Defs' surreptitious collection of such information, without paying Plaintiffs' consideration for such property. CC ¶216. The recently enacted California Consumer Privacy Act permits businesses to assess and appraise – i.e., to place a monetary value on – consumer data (Cal. Civ. Code § 1798.125(a)(2)). Plaintiffs also plead a myriad of facts indicating the economic value of Flo users' personal health information, including the market that exists for this highly valuable health information. CC ¶¶201-16. Notably, Non-Flo Defs Facebook and Google have ***themselves*** already paid real-world dollars to individuals to obtain their personal information, and derive the majority of their billions of dollars in annual revenues from advertising. CC ¶¶93; 100; 212-13. Here, Plaintiffs have not received a single penny from the Non-Flo Defs for Plaintiffs' valuable health information that the Non-Flo Defs intentionally acquired without their consent, and therefore Plaintiffs have adequately alleged a loss of money or property. *See Calhoun v. Google LLC*, 2021 WL 1056532, at *22 (N.D. Cal. March 17, 2021) (denying motion to dismiss UCL claim for this same reason and finding "the Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing.") (collecting cases).  Second, Plaintiffs also allege that they would not have downloaded the Flo App had they known that their personal and sensitive health data would be acquired by the Non-Flo Defs. CC ¶27. "Plaintiffs can establish UCL standing by alleging that the consumer 'would not have bought the product but for' the unfair business practice[.]" *In re Iphone Application Litig.*, 844 F. Supp. 2d 1040, 1072 (N.D. Cal. 2012) (citation omitted).[19]

## B.    Plaintiffs' Adequately Plead Unlawful, Unfair, and Fraudulent Acts

The UCL can be violated through three independent and disjunctive prongs. *Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 560 (1999) (unlawful, unfair, and fraudulent prongs). The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* Here, Plaintiffs predicate their unlawful UCL claim on Non-Flo Defs' violations of (1) FWA, (2) CIPA, (3)

---

[19] Non-Flo Defs attempt to insert a reliance-on-statement requirement, *see* MTD at 23. However, all their cited cases in support viewed the UCL violation under a case theory sounding in fraud, which is not the case here, because Non-Flo Defs' liability does not flow out of any fraudulent conduct relying on a misstatement, but because of their participation in the invasion of privacy that harmed Flo users. *See Kwikset Corp. v. Sup. Ct.*, 246 P.3d 877, 888-889 (2011) (discussing this principle).

1   CDAFA, and (4) aiding and abetting Flo's unlawful invasion of privacy. *See* CC ¶¶ 366-425.

2       Plaintiffs have also stated a claim against Non-Flo Defs under the "unfair" prong of the UCL.

3   Federal courts apply both (1) a balancing test under the UCL "unfair" prong and a (2) test that looks

4   at whether the alleged misconduct "is tethered to a constitutional or statutory provision or a regulation

5   carrying out statutory policy." *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1111-12 (S.D.

6   Cal. 2017) (citing *Cel-Tech,* 20 Cal. 4th at 184). Here, Plaintiffs satisfy both tests. Under the

7   "tethering test," Courts look to whether an alleged misconduct is "tethered to a constitutional or

8   statutory provision or a regulation carrying out statutory policy." *Card Tech Int'l, LLLP v.*

9   *Provenzano*, 2012 WL 2135357, at *29 (C.D. Cal. June 7, 2012) (citation omitted). Here, Non-Flo

10  Defs' conduct of collecting Plaintiffs' sensitive health information for their own purposes violated

11  the strong public policy of protecting consumer privacy that underlies CIPA, FWA, CDAFA, and

12  other California law. Under the balancing test, "courts consider the business practice's 'impact on its

13  alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer,'

14  and 'weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

15  victim.'" *Becerra*, 241 F. Supp. 3d at 1111 (citation omitted). Here, Non-Flo Defs' conduct of

16  acquiring consumer Plaintiffs' sensitive health information without consent harmed them by invading

17  consumers' privacy and there is no corresponding benefit to consumers. *See In re Google Assistant*

18  *Privacy Litigation*, 2021 WL 2711747, at *20 (N.D. Cal. July 1, 2021) (motion to dismiss on unfair

19  prong denied where defendant's unauthorized recordings invaded plaintiffs' privacy).

20      With respect to the fraudulent prong, Non-Flo Defs argue that Plaintiffs have not sufficiently

21  or plausibly alleged any misstatements or omissions by Non-Flo Defs. MTD at 23-24. The Complaint

22  alleges, however, an omission theory, because Non-Flo Defs "amassed a large collection of sensitive

23  personal data without disclosing this practice and therefore without consumers' knowledge or

24  consent. Facebook, Google, and Flurry designed their SDKs to blend seamlessly with apps like Flo

25  Health, so that users are unaware that Defendants collect their sensitive personal data. Through these

26  practices, Plaintiffs and Class members were deceived[.]" CC ¶370.  Non-Flo Defs' argument that

27  the Complaint fails to "plead fraud with particularity" under Rule 9 is incorrect. *See* MTD at 24. Here,

28  the Complaint alleges the "who [Non-Flo Defs], what [acquired data], when [from 2016 to the FTC

17

1   settlement], where [from Flo App users] and how [through their SDKs] of the misconduct charged."

2   *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

## VI.   PLAINTIFFS ADEQUATELY PLEAD THEIR EQUITABLE CLAIMS

### A.   Plaintiffs' Equitable Claims Are Not Barred by Remedies at Law

Plaintiffs seek equitable relief (including disgorgement, restitution, and injunctive relief) under their claims. Non-Flo Defs argue that Plaintiffs' equitable claims for relief fail because Plaintiffs already seek money damages that would compensate them. *See* MTD at 11. However, money damages alone are insufficient because "the injury here is an invasion of privacy that can never be fully remedied through damages." *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (distinguishing Non-Flo Defs' cited case *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)); *see also Andino v. Apple, Inc.*, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021) ("*Sonner* does not warrant dismissal of [the plaintiff's] request for injunctive relief. Money damages are an inadequate remedy for future harm, as they will not prevent Defendant from continuing the allegedly deceptive practice."). "Even if Plaintiffs could obtain damages [for] the unauthorized sale of their personal information to third parties, that amount will not compensate them adequately for their irreparable loss of their privacy." *Brooks*, 2021 WL 3621837, at *11.[20]

### B.   Plaintiffs Adequately Plead Their Unjust Enrichment Claim

Non-Flo Defs are wrong that California prohibits a standalone unjust enrichment cause of action. MTD at 15.  "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, Ld. P'ship v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016); *Brooks*, 2021 WL 3621837 at *11-12 ("[B]ecause . . . *ESG Capital Partners* [is] binding precedent . . . this Court concludes that Plaintiffs can raise a standalone unjust enrichment claim."). Plaintiffs have done that here, and Non-Flo Defs' arguments to the contrary are unavailing.

***First***, the contention that Plaintiffs fail to allege that Non-Flo Defs received any property or

---

[20] Furthermore, courts have rejected Non-Flo Defs' reading of *Sonner* as barring plaintiffs from pursuing claims for legal and equitable relief in the alternative at the pleading stage. *See, e.g., Cepelak, et al. v. HP, Inc.*, 2021 WL 5298022 (N.D. Cal. Nov. 15, 2021); *Cottle v. Plaid*, 2021 WL 1721177, at *13 (N.D. Cal. Apr. 30, 2021); *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at *7 n.6 (N.D. Cal. May 2, 2018).

money from Plaintiffs is simply false. This Court in *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) (Donato J.), which Non-Flo Defs cite to in their brief, found that plaintiffs adequately alleged that they retained a stake in the unjustly earned profits garnered from defendant's collection of their "location" data, because the complaint contained numerous allegations about the financial value of such location data. *Id*. at 1192 (citing *Facebook Tracking*). Likewise, Plaintiffs have clearly alleged that their private health information has economic value, that Non-Flo Defs profited off this data,[21] and that all Defendants acquired such data without paying proper consideration for it. *See supra* at fn. 2 (listing allegations in the CC). ***Second***, Plaintiffs adequately alleged that Non-Flo Defs unjustly retained a benefit at Plaintiffs' expense through "an actionable misrepresentation or omission." MTD at 15 (citing *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016)). The Complaint contains numerous allegations that Non-Flo Defs never disclosed their receipt of Plaintiffs' personal health information to Plaintiffs. *See, e.g.,* CC ¶¶ 20-26; 40; 47; 54; 61; 68; 75; 82; 89; 99; 105; 110; 113; 130; 180-83; 216; 237.  Non-Flo Defs' alleged omissions thereby led to their unjust benefit. ***Third***, Plaintiffs can and must pursue quasi-contractual remedies against Non-Flo Defs because there is no contract between Non-Flo Defs and Plaintiffs. Indeed, Plaintiffs' unjust enrichment claim *against Non-Flo Defs* is not based on Flo Health's TOU or any other contract, and should therefore be sustained. *See Attebury Grain Ltd. Liab. Co. v. Grayn Co.*, 721 F. App'x 669, 672 (9th Cir. 2018) ("Unjust enrichment is a valuable basis for a claim to 'fill in the cracks' where other causes of action fail to achieve justice . . .").

## VII.    PLAINTIFFS ADEQUATELY PLEAD THEIR CDAFA CLAIM

CDAFA applies not only to instances of hacking, but also to circumstances in which a party unlawfully "tak[es], cop[ies], or use[s] the information in the database improperly."  *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). For example, CDAFA § 502(c)(2) penalizes anyone who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer." Here, Plaintiffs assert that the Non-Flo Defs ***knowingly*** accessed Plaintiffs' personal health data from the Flo App and ***without permission*** took that personal data. CC ¶¶ 414-25. Courts

---

[21] *See, e.g.*, Dec. of Carol Villegas, Exs. A and B (discussing Facebook's ability to advertise and "drive ad revenue" based off analytics services they provide free of charge).

have routinely found that similar allegations regarding unpermitted acquisition of consumers' App data are sufficient to state a CDAFA claim. *See Rodriguez*, 2021 WL 2026726, at *7 ("Because plaintiffs have alleged Google's knowing access to, and unpermitted taking of, plaintiffs' app activity data, they adequately state a claim under CDAFA."); *Brown*, 525 F. Supp. 3d 1075 (Google violated CDAFA when they collected data while users where in private browsing mode online).  Plaintiffs herein address Non-Flo Defs' arguments for dismissal.[22]

*First*, "Plaintiffs must allege they suffered damage or loss by reason of a violation of Section 502(c)," *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236, at *11 (N.D. Cal. Mar. 26, 2013), and Plaintiffs have done so here, by alleging the property loss of their health information. *See supra* at fn. 2. **Second**, Non-Flo Defs claim that CDAFA does not apply to "third parties" that "took no active role in tampering with, or in gaining unauthorized access to computer systems." MTD at 21:1. However, plaintiffs here assert *direct* liability against Non-Flo Defs for gaining unauthorized access to Plaintiffs' Flo App data on the basis of the SDK codes they used. *See Rodriguez*, 2021 WL 2026726, at *7 (Google's SDK code which gathered user data from app developer and then sent to Google, led to CDAFA violation against Google).  **Third**, according to Non-Flo Defs, Plaintiffs' claims fail because they do not allege that Non-Flo Defs "circumvented technical or code-based barriers in place to restrict or bar a user's access," and thus do not show access "without permission." MTD at 21. But circumventing such technical barriers is not required where "a software system 'was designed in such a way to render ineffective any barriers that the plaintiffs must wish to use to prevent access to their information.'" *Brown*, 525 F. Supp. at 1075 (citation omitted). Here, Plaintiffs could not have reasonably erected any technological barriers that would have prevented access of their health data, because Non-Flo Defs retained control of the SDKs which produced the data transfer.[23]

---

[22] Not every CDAFA claim sounds in fraud, as Non-Flo Defs contend. The heightened pleading standard only applies if plaintiffs plead "unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Plaintiffs specific CDAFA claims are not based upon any misrepresentation or fraud, but rather Non-Flo Defs' participation in the invasion of privacy that harmed Plaintiffs.

[23] Further, Non-Flo Defs' citation to *Ticketmaster L.L.C. v. Prestige Entertainment West, Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018), fails because there the court found a CDAFA violation under subsections (c)(2),(c)(6), and (c)(7), which Plaintiffs also allege here. CC ¶418. Additionally, CDAFA's prohibition on a "contaminant" into a computer system is not "only aimed at viruses or worms," MTD at 22, but includes "any set of computer instructions that are designed to . . . *record*, or *transmit* information within a computer or computer system." Section 502(c)(8).

## VIII.   CONCLUSION

For these reasons, Non-Flo Defs' Motion to Dismiss should be denied.

Dated: December 16, 2021

/s/ *Frank Busch*
Frank Busch (258288)
James M. Wagstaffe (95535)
**WAGSTAFFE, VON LOEWENFELDT,**
**BUSCH & RADWICK LLP**
100 Pine Street, Suite 725
San Francisco, CA 94111
Tel: (415) 357-8900
Fax: (415) 357-8910
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Counsel for Plaintiffs Erica Frasco*
*and Sarah Wellman*

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Ross Kamhi (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
rkamhi@labaton.com
dsaldamando@labaton.com

*Interim Co-Lead Counsel*
*for Plaintiffs and the Proposed Class*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Interim Co-Lead Counsel*
*for Plaintiffs and the Proposed Class*

PLAINTIFFS' OPPOSITION TO NON-FLO DEFENDANTS' MOTION TO DISMISS [Case No. 3:21-cv-00757-JD]

1   Diana J. Zinser (*pro hac vice*)
2   John A. Macoretta (*pro hac vice*)
    Jeffrey L. Kodroff (*pro hac vice*)
3   **SPECTOR ROSEMAN & KODROFF, P.C.**
    2001 Market Street, Suite 3420
4   Philadelphia, PA 19103
    Tel: (215) 496-0300
5   Fax: (215) 496-6611
    dzinser@srkattorneys.com
6   jmacoretta@srkattorneys.com
    jkodroff@srkattorneys.com
7
    *Interim Co-Lead Counsel*
8   *for Plaintiffs and the Proposed Class*

9

10  Ronald A. Marron (CA Bar 175650)
    ron@consumersadvocates.com
11  Alexis M. Wood (CA Bar 270200)
    alexis@consumersadvocates.com
12  Kas L. Gallucci (CA Bar 288709)
    kas@consumersadvocates.com
13  **LAW OFFICES OF RONALD A. MARRON**
    651 Arroyo Drive
14  San Diego, CA 92103
    Tel: (619) 696-9006
15  Fax: (619) 564-6665
16
    *Counsel for Plaintiffs Jennifer Chen and Tesha*
17  *Gamino*

18
    Kent Morgan Williams (*pro hac vice*)
19  **WILLIAMS LAW FIRM**
    1632 Homestead Trail
20  Long Lake, MN 55356
    Tel: (612) 940-4452
21  williamslawmn@gmail.com

22
    Michael E. Jacobs (*pro hac vice*)
23  **HINKLE SHANOR LLP**
    P.O. Box 2068
24  Santa Fe, NM 87504
    Tel: (505) 982-4554
25  mjacobs@hinklelawfirm.com

26

27

28

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William Darryl Harris , II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
605 N High Street
Suite 146
Columbus, OH 43215
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*

PLAINTIFFS' OPPOSITION TO NON-FLO DEFENDANTS' MOTION TO DISMISS [Case No. 3:21-cv-00757-JD]