# Labaton Sucharow

Carol C. Villegas
Partner
212 907 0824 direct
212 907 0700 main
212 883 7524 fax
cvillegas@labaton.com

New York Office
140 Broadway
New York, NY 10005

October 12, 2022

Honorable James Donato
United States District Court
450 Golden Gate Avenue
San Francisco, California 94102

Re: *Frasco et al. v. Flo Health et al.*, 3:21-cv-00757-JD (N.D. Cal.)

Dear Judge Donato:

Plaintiffs respectfully submit this letter motion in order to compel Defendant Meta Platforms Inc. ("Meta") to permit Plaintiffs' expert to inspect Meta's source-code, pursuant to Rule 34.[1] Plaintiffs have telephonically met and conferred with Meta on this request (on September 19 and 23, 2022), and Meta has refused to permit such inspection.

Plaintiffs allege that Meta illicitly intercepted Plaintiffs' and Class Members' confidential health and personal information through Meta's software development kit ("SDK"), which was incorporated into the Flo Health App. The Court has sustained allegations that this conduct violated state and federal wiretapping laws, violated California's unfair competition law, and aided Flo Health's common law invasion of privacy and unfair competition law violations. ECF No. 158. Meta [REDACTED] and, therefore, even upon a conservative estimate, [REDACTED]. Given these claims, Meta's use of the Flo App Data and intent to collect and use this data are obviously issues that are relevant to Plaintiffs' claims and/or the defenses Meta may attempt to raise. *See Campbell v. Facebook, Inc.*, 310 F.R.D. 439, 444-45 (N.D. Cal. 2015) (ordering Facebook to produce requested source code where it supports "Plaintiff's affirmative claims").

In light of the obvious importance of Meta's collection, use, and storage of Flo App Data, Plaintiffs requested, pursuant to Rule 34, "access into Meta's premises and direct access to Meta's electronic information system in order to conduct inspection, testing, questioning through interviews, sampling, and auditing by Plaintiffs' expert."[2] The importance of this inspection is

---

[1] Additionally, Plaintiffs respectfully request an expedited process for obtaining access to this inspection given the fast-approaching close of fact discovery.

[2] *See* Meta's Responses & Objections to Plaintiffs' Request for Production of Documents, Set 5, No. 9 ("Request No. 9") attached hereto as Exhibit A. On September 6, 2022, [REDACTED]. The parties met and conferred twice with Defendant confirming on September 23, 2022, that it would stand on its prior objections.

**Labaton Sucharow**

Honorable James Donato
Page 2

highlighted by Defendants' slow movement on other discovery;[3] Meta has produced only about 2,300 documents to date and offered vague responses to interrogatories, which heightens Plaintiffs need to get answers by directly inspecting the code itself.

After over a year of discovery, Plaintiffs have still not gotten clear answers from Meta regarding its use of the Flo App Data. For example, after *twice* supplementing a directly on-point interrogatory response, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, even now, after those two revisions, Meta has still guarded this representation with cryptic language stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. While this is an improvement on prior responses, the ▮▮▮▮▮▮ is incredibly vague – is it referring to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And it fails to clarify whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

In addition to these and other specific responses to interrogatories, Plaintiffs have critical unanswered questions that an inspection could dramatically assist with, including: (1) was Meta's code designed to allow its machine learning systems to access or utilize data received through the SDK, including Flo App Data? (2) how was Flo App Data ingested by and accessible to Meta's systems, including its machine learning systems that controlled or influenced the targeting or provision of advertisements? (3) how did the machine learning systems utilized by Meta influence or control advertisement delivery? (4) what can be understood about how the machine learning system worked and processed Flo App Data? (5) what Flo App Data has been retained either directly or in an indirect form?

The nature of modern source code repositories, means that accessing Meta's relevant source code and the changes to that code over time, is a relatively simple process and imposes relatively little burden on Meta. While Plaintiffs might be able to piece together some of the answers to these questions through other discovery, doing so will require trusting Meta's representations, and exerting much effort in extracting meaning from Meta (whose discovery responses have been vague at best and misleading at worst), when direct evidence exists in the

---

[3] In Plaintiffs' Fourth Set of Requests for Production, No. 15, Plaintiffs previously requested "Documents and Communications Concerning [Meta's] use of App Events in [Meta's] Data Analytics services or Ad Targeting models or algorithms," but, despite several meet and confers, Meta has not produced any materials explaining the use of Flo App Data in its algorithms.

[4] *See* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Labaton Sucharow**

Honorable James Donato
Page 3

form of the source code.  Access to the primary source is more reliable, convenient, and of little burden.

      Plaintiffs' expert Dr. Jen Golbeck is experienced in code review involving assessment of machine learning systems, algorithms, data tables, schemas, and source code.  If the Court requests formal briefing on Plaintiffs' Motion to Compel Inspection, Plaintiffs would submit a declaration from Dr. Golbeck explaining the following: Dr. Golbeck is an experienced code reviewer and has reviewed Meta's code on three occasions.  Meta's code, including a log of changes over time, is easily accessible.  Dr. Golbeck will identify the way in which Flo App Data was collected and integrated into Meta's machine learning and storage systems.[5]

      Indeed, Plaintiffs are not seeking inspection as to **all** the code for **all** of Meta's systems, just those systems in place during the Class Period (*i.e.*, 2016 to present).  Even the code in its present form will be helpful to Plaintiffs to support their claims.

      Plaintiffs easily meet their burden under "liberally construed" Federal Rule 34.  *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 56 (9th Cir. 1961).  Further, Federal Rule 34 is subject to the broad view of relevance inherent to Federal Rule 26 (b).  *See King Tuna, Inc. v. Luen Thai Fishing Ventures, Ltd.*, 2009 WL 10670974, at *2 (C.D. Cal. Dec. 10, 2009).  Plaintiffs clearly establish the relevance of the site inspection, as required, therefore, it is Meta's "heavy burden of clarifying, explaining, and supporting its objections." *Engineered Floors, LLC v. Lakeshore Equip. Co.*, 2021 WL 5994543, at *1 (C.D. Cal. Sept. 28, 2021); *Fratus v. County of Contra Costa*, 2015 WL 4538076 (N.D. Cal. July 27, 2015).  Meta has not persuasively demonstrated a proper basis for objecting to the request, as it has the burden to demonstrate "annoyance, embarrassment, oppression, or undue burden or expense." *Lakeshore*, 2021 WL 5994543 at *1.

  Indeed, this is not a burdensome request and certainly not the first of its kind.  Meta allowed inspection of and even produced this type of information in similar data privacy class actions.[6]  Plaintiffs are more than willing to address any confidentiality concerns.  Thus, Plaintiffs respectfully request this Court to compel Meta to comply with Request No. 9.[7]

---

[5] This inspection is further necessary to allow Dr. Golbeck to prepare a fulsome expert report and explain Meta's systems to a jury.  This also prevents Defendants from raising Daubert challenges on the grounds that she does not have first-hand exposure to Meta's systems.

[6] *See In re Facebook Biometric Information Privacy Litig.,* No. 15-cv-03747 (N.D. Cal.) (J. Donato); *Campbell v. Facebook, Inc.,* No. C 13-05996 PJH (SK) (N.D. Cal.); *In re: Facebook, Inc. Consumer Privacy User Profile Litig.,* No. 18-MD-2843-VC (N.D. Cal.).

[7] Additionally, in the event Meta submits a responsive letter containing unaddressed arguments, Plaintiffs respectfully request the opportunity to reply.

Labaton Sucharow

Honorable James Donato
Page 4

Respectfully submitted,


*/s/ Carol C. Villegas*
Carol C. Villegas