James M. Wagstaffe (95535)
Frank Busch (258288)
**WAGSTAFFE, VON LOEWENFELDT,
BUSCH & RADWICK LLP**
100 Pine Street, Suite 725
San Francisco, CA 94111
Tel: (415) 357-8900
Fax: (415) 357-8910
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Counsel for Plaintiffs Erica Frasco
and Sarah Wellman*

Carol C. Villegas (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com

*Interim Co-Lead Counsel for
Plaintiffs and the Proposed Class*

Christian Levis (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class*

Diana J. Zinser (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@srkattorneys.com

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA FRASCO, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLO HEALTH, INC., META PLATFORMS, INC., GOOGLE, LLC, and FLURRY, INC.,<br><br>Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:  December 14, 2023<br>Time:  10:00 a.m.<br>Location:  Courtroom 11, 19th Floor<br>Judge:  Hon. James Donato |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 14, 2023 at 10:00 a.m., or another date and time to be determined by the Court, the undersigned will appear before the Honorable James Donato of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, and will move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order certifying the following Proposed Classes:

| Under Fed. R. Civ. P. 23(b)(3) | | |
|---|---|---|
| **Class** | **Representatives** | **Claims** |
| Nationwide Damages Class: All Flo App users who entered menstruation and/or pregnancy information into the Flo Health App between November 1, 2016 and February 28, 2019, inclusive. | Plaintiffs Erica Frasco, Sarah Wellman, Jennifer Chen, Tesha Gamino, and Autumn Meigs | Against Defendant Flo Health, Inc: (1) violation of the California Confidentiality of Medical Information Act ("CMIA"); (2) breach of contract (or in the alternative breach of an implied contract); (3) common law invasion of privacy (intrusion upon seclusion); and (4) violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA")<br><br>Against Defendants Meta, Inc., Google, Inc., Flurry, Inc: (1) violation of CDAFA; and (2) aiding and abetting a common law invasion of privacy violation (intrusion upon seclusion) |
| California Subclass: All Flo App users in California who entered menstruation and/or pregnancy information into the Flo Health App while residing in California between November 1, 2016 and February 28, 2019, inclusive. | Plaintiffs Sarah Wellman, Jennifer Chen, and Tesha Gamino | All claims asserted by the Nationwide Class, plus:<br><br>Against Defendant Flo Health, Inc: invasion of privacy in violation of Art. 1, Sec. 1 of the California Constitution<br><br>Against Defendants Meta, Inc., Google, Inc., Flurry, Inc: violation of the California Invasion of Privacy Act ("CIPA") |

| Under Fed. R. Civ. P. 23(b)(2) | | |
|---|---|---|
| **Class** | **Representatives** | **Claims** |
| <u>Injunctive Relief Class</u>: All Flo App users who entered menstruation and/or pregnancy information into the Flo Health App between November 1, 2016 and February 28, 2019, inclusive. | Plaintiffs Erica Frasco, Sarah Wellman, Jennifer Chen, Tesha Gamino, and Autumn Meigs | <u>Against All Defendants</u>: for injunctive relief in connection with their CDAFA, and common law invasion of privacy claims. |
| <u>California Subclass</u>: All Flo App users in California who entered menstruation and/or pregnancy information into the Flo Health App while residing in California between November 1, 2016 and February 28, 2019, inclusive | Plaintiffs Sarah Wellman, Jennifer Chen, and Tesha Gamino | <u>Against Defendants Meta, Inc., Google, Inc., Flurry, Inc</u>: in connection with their CIPA claims |

Plaintiffs seek the appointment of these Plaintiffs as Class Representatives. Plaintiffs also seek appointment of Carol Villegas (Labaton Sucharow), Christian Levis (Lowey Dannenberg), and Diana Zinser (Spector Roseman & Kodroff) as Class Counsel.

The Motion is based upon this Notice, the Memorandum of Law, the declaration of Diana Zinser (hereinafter "Zinser Decl."), the Plaintiffs' declarations, all exhibits to such documents, any papers filed in reply, and any argument as may be presented at the hearing.

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Whether Plaintiffs have shown by a preponderance of the evidence that: (1) the Proposed Classes satisfy Rule 23(a)'s requirements; (2) the Nationwide Class and California Subclass satisfy Rule 23(b)(3)'s predominance and superiority requirements; (3) whether the Injunctive Relief Class meets Rule 23(b)(2)'s requirements.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.  INTRODUCTION ....................................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................................... 2

III.  LEGAL STANDARD ................................................................................................ 12

IV.  ARGUMENT ............................................................................................................ 12

    A.  The Proposed Classes Meet Rule 23(a)'s Requirements. ......................................... 12

    B.  Common Questions of Law and Fact Predominate Over Individual Issues. ............. 13

        A.  The Claims of the Classes Satisfy Predominance ........................................... 14

            1.  California Law Applies to Each of the Class's Claims .................... 14

            2.  Claims Against Flo ........................................................................ 14

                a)  CMIA ................................................................................ 14

                b)  Breach of Contract .......................................................... 16

                c)  Intrusion Upon Seclusion ................................................ 16

                d)  CDAFA .............................................................................. 18

             3.  Claims against Ad Defendants ....................................................... 19

                  a)  CDAFA .............................................................................. 19

                  b)  Aiding and Abetting Intrusion Upon Seclusion .................. 19

        B.  The California Subclass ................................................................................. 20

            1.  Invasion of Privacy under the California Constitution against Flo ................................................................................................. 20

            2.  Violation of CIPA against the Ad Defendants ................................. 20

        C.  Common Issues Predominate Regarding the Relief Plaintiffs Seek ............. 21

            1.  Statutory Damages ......................................................................... 21

            2.  Punitive Damages........................................................................... 22

            3.  Nominal Damages........................................................................... 22

4.    Disgorgement ................................................................................ 23

C.    A Class Action is the Superior Method of Adjudicating this Dispute ...................... 23

D.    The Proposed Injunction Class Meets Rule 23(b)(2)'s Requirements ...................... 24

a.    The Court Should Appoint Class Counsel. ........................................ 25

V.    CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*,
    568 U.S. 455 (2013) ................................................................................................ 12

*Ash v. Bank of Am. N.A.*,
    No. 2:10-CV-02821-KJM, 2014 WL 301027 (E.D. Cal. Jan. 28, 2014) ............................... 17

*Bee, Denning, Inc. v. Capital All. Grp.*,
    310 F.R.D. 614 (S.D. Cal. 2015) ................................................................................. 13

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .................................................................................... 24

*Brown v. Google LLC*,
    525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................................................................... 17

*Brown v. Google, LLC*,
    No. 20-cv-3664-YGR, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ............................... 21

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ......................................................................... 17

*Comcast Corp. v Behrend*,
    569 U.S. 27 (2013) .................................................................................................. 21

*Coulter v. Bank of Am.*,
    28 Cal. App. 4th 923 (1994) ...................................................................................... 22

*CTI III, LLC v. Devine*,
    No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508 (E.D. Cal. May 26, 2022) ...................... 19

*Doe v. Regents of Univ. of California*,
    No. 23-CV-00598-WHO, 2023 WL 3316766 (N.D. Cal. May 8, 2023) .............................. 17

*Dulberg v. Uber Techs., Inc.*,
    No. C 17-00850 WHA, 2018 WL 932761 (N.D. Cal. Feb. 16, 2018) .................................. 16

*DZ Reserve v. Meta Platforms, Inc.*,
    No. 3:18-cv-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ........................... 23, 24

*Ellis v. Costco Corp.*,
    285 F.R.D. 492 (N.D. Cal. 2012) ................................................................................ 22

*In re Facebook, Inc. Internet Tracking*,
    956 F.3d 589 (9th Cir. 2020) ........................................................................ 16, 17, 20, 23

*In the Matter of Flo Health, Inc.*,
    FTC No. C-4747, Decision and Order (June 17, 2021) ......................................................... 12

*Forcellati v. Hyland's Inc.*,
    No CV 12-1983-GHK, 2014 WL 1410264 ............................................................................ 14

*Francies v. Kapla*,
    127 Cal. App. 4th 1381 (2005) ............................................................................................. 22

*In re Google Assistant Privacy Litig.*
    5:19-cv-04286 (N.D. Cal., Dec 16, 2022), ECF No. 360 ..................................................... 16

*In re Google Inc. Gmail Litig.*,
    No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ............................. 20

*Greenley v. Kochava, Inc.*,
    No. 22-CV-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July 27, 2023) ............... 18, 20

*Jackson v. First Nat'l Bank of Omaha*,
    No. CV 20-1295 DSF (JCX), 2022 WL 423440 (C.D. Cal. Jan. 18, 2022) ........................... 22

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ....................................................................................... 21, 24

*Liu v. Sec. & Exch. Comm'n*,
    140 S.Ct. 1936 (2020) ........................................................................................................... 23

*McCrary v Elations Co., LLC*,
    No. EDCV 13-00242 JGB OP, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ..................... 20

*Meister v. Mensinger*,
    230 Cal. App. 4th 381 (Ct. App. 2014) ............................................................................... 23

*In re Meta Pixel Healthcare Litig.*,
    No. 22-cv-03580-WHO, 2022 WL 7869218 (N.D. Cal. Dec. 22, 2022) ............................... 20

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016) ......................................................................................... 14

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 954 (N.D. Cal. 2014) ................................................................................. 18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ................................................................................... 12, 13, 14

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) ................................................................................... 19

*Opperman v. Path, Inc.*,
    No. 13-cv-0453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016) ................... 17, 19, 22, 23

iv

*Owino v. CoreCivic, Inc.*,
  60 F.4th 437 (9th Cir. 2022).................................................................................. 21

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008).................................................................................. 13

*Pulaski & Middleman*,
  802 F.3d 979 (9th Cir. 2015).................................................................................. 21

*Roley v. Google LLC*,
  Case No. 18-v-07537-BLF, 2020 WL 8675968 (N.D. Cal. July 20, 2020).......................... 16

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
  613 F. Supp. 3d 1284 (S.D. Cal. 2020)..................................................................... 23

*Stasi v. Inmediata Health Grp. Corp.*,
  501 F. Supp. 3d 898 (S.D. Cal. 2020)....................................................................... 23

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  264 F.R.D. 603 (N.D. Cal 2009)............................................................................. 12

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003).................................................................................. 13

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
  No. 2:13-CV-02468-CAS, 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) ............................ 21

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018)..................................................................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)............................................................................................ 14

*Varnado v. Midland Funding LLC*,
  43 F. Supp. 3d 985 (N.D. Cal. 2014) ....................................................................... 22

*Vigil v. Muir Med. Grp. IPA, Inc.*,
  84 Cal. App. 5th 197, 300 Cal. Rptr. 3d 32 (2022)...................................................... 15

*Ward v. United Airlines, Inc.*,
  9 Cal. 5th 732 (2020) ......................................................................................... 14

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010)................................................................................ 13

*In re Yahoo Mail Litig.*,
  308 F.R.D. 577 (N.D. Cal. 2015) ....................................................................... 13, 24

*Yokoyama v. Midland Nat. Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010)................................................................................ 21

v

**Statutes**

Cal. Civ. Code § 56.05(i) ................................................................................. 15

Cal. Civ. Cod § 56.06(b) .................................................................................. 15

Cal. Civ. Code §§ 56.10 .................................................................................... 15

Cal. Civ. Code § 3294 ...................................................................................... 22

Cal. Penal Code § 502(b)(1) ............................................................................ 19

Cal. Penal Code § 502(c)(2) ............................................................................ 18

Cal. Penal Code § 502(c)(6) ............................................................................ 18

Cal. Penal Code § 502(e)(1) ............................................................................ 18

Cal. Penal Code § 637.2(a) ............................................................................. 21

**Other Authorities**

California Confidentiality of Medical Information Act, § 56.11 ................................ 25

California Confidentiality of Medical Information Act, § 56.36(b)(1) ....................... 21

California Invasion of Privacy Act, § 631 ................................................... 20, 21

California Invasion of Privacy Act, § 631(a) ...................................................... 20

California Invasion of Privacy Act, § 632 .................................................. 20, 21

Fed. R. Civ. P.  23 ........................................................................................... 12

Fed. R. Civ. P. 23(a) ................................................................................. 12, 13

Fed. R. Civ. P. 23(a)(1) ................................................................................... 12

Fed. R. Civ. P. 23(a)(2) ................................................................................... 13

Fed. R. Civ. P. 23(a)(3) ................................................................................... 13

Fed. R. Civ. P. 23(b)(2)........................................................................... 12, 24, 25

Fed. R. Civ. P. 23(b)(3)........................................................ 12, 13, 14, 21, 22. 23

Fed. R. Civ. P. 23(b)(3)(A)-(D) ...................................................................... 24

Fed. R. Civ. P. 23(g) ...................................................................................... 25

Fed. R. Civ. P. 23(g)(4)................................................................................... 25

## I.    INTRODUCTION

This case concerns the systematic collection, disclosure, and commercial exploitation of millions of women's reproductive health information by Defendant Flo Health, Inc. ("Flo"), maker of the Flo Period & Ovulation Tracker mobile app (the "Flo App"), and three of the largest digital advertising and analytics companies: Defendants Google, Inc., Meta., Inc., and Flurry Inc. (collectively, the Ad Defendants or "ADs")

Marketed as a way for women to take control of their health, the Flo App promised to be a secure platform for privately tracking the intimate details of one's menstrual cycle, fertility, and pregnancy. In reality, it allowed the Ad Defendants to intercept billions of data points about the inner workings of women's bodies. Shockingly granular details, including whether an individual was pregnant, ovulating, and the dates and duration of their periods, were transmitted from the Flo App to each Ad Defendant through specialized Software Development Kits ("SDKs"), that Flo incorporated into its app between November 1, 2016 and February 28, 2019 (the "Class Period").

Flo *intended* this health information to be intercepted as it specifically programmed the app to execute Ad Defendants' SDK codes when users logged data about their period or pregnancy. Flo sought to use this information to acquire new app users by marketing to them based on their reproductive goals (e.g., getting pregnant or avoiding pregnancy). Meta, for its part, used health information it received from the Flo App for research and development, as well as to optimize the ads it displayed to Facebook users. Google utilized the data to improve its machine learning algorithms. And Flurry, which Yahoo acquired specifically to boost its mobile ad revenue, provided its parent company with a data feed containing Flo App's users' health information.

Plaintiffs, like millions of other women who used the Flo App, were injured when the health information they privately entered was collected and used without their consent. Each of their damages claims, like those of the Proposed Class's members, presents common questions that can be answered through common evidence, including relating to Defendants' collection and use of health information from the Flo App, and failure to obtain consent for such conduct. Injunctive relief is also necessary to stop the Ad Defendants' ongoing misuse of Class members' health information, as there is no indication this data has been removed from Defendants' machine learning algorithms or

1    processes. Likewise, Flo should be enjoined from continuing to violate Class members' privacy by

2    disclosing health information without first obtaining affirmative consent in compliance with

3    applicable laws.

4         The Court should grant Plaintiffs' motion and certify the Proposed Classes.

5    **II.    STATEMENT OF FACTS**

6         <u>The Flo App</u>. Flo, with more than ███████ monthly Flo App users in the U.S., and millions

7    in California, is the most popular period-tracking app in the United States. *See* ██████ Ex. 2.[1][2] The

8    Flo App claims to allow users to ██████████████████████ by tracking their menstrual cycle,

9    predicting ovulation, helping users get pregnant, tracking their baby development, and assisting with

10   postpartum recovery. Ex. 3; █████████████.

11        All Flo users must complete an onboarding survey the first time they use the app. ████████

12   ██████ The onboarding survey in effect during the Class Period required all Flo App users, including

13   Plaintiffs, to enter their age and select a "goal" from three options: █████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   █████████████ Once the onboarding survey is complete, Flo users log ████████████████

17   ████████████████████████████████████████████████████████

18   ████████████████████████

19        <u>Software Development Kits in the Flo App</u>. Over the Class Period, Flo released various

20   versions of its Flo App for both Android and iOS devices. ████████████ Each of these versions of the

21   Flo App incorporated pre-built libraries of code called Software Development Kits ("SDKs")

22   developed by the Ad Defendants. ██████████████████████ The Ad Defendants designed

23   their SDKs specifically to collect data about app users' activity. Ex. 9 at ¶ 5; *see, e.g.,* ████████

24   ████████████████████████████████████████████████████████

25

26   [1] All exhibits cited in this motion are attached to the Declaration of Diana Zinser, attached hereto.

27   [2] Flo has in its possession the actual number of California users and can identify the number of California users from its own records. Indeed, Flo maintains location data for each user, including Plaintiffs, as described in Section II, p. 7. *See also* Declarations of Jennifer Chen, Erica Frasco, Tesha

28   Gamino, Autumn Meigs, and Sarah Wellman ("Plaintiffs' Declarations"), attached hereto.

1  ███████████████████████████████████████ Ex. 11 at '788 ("Google Analytics

2  collects usage and behavior data for your app."); ████████████████████████

3  ████████████████████████████████████████████████████████████████████

4  ████████

5       The Ad Defendants' SDKs intercept and transmit an app user's communications with the

6  app's developer by capturing a users' actions within the app. ████████████ These actions are

7  called app "events." Each Ad Defendants' SDK pre-defines certain "Standard Events" to reflect

8  actions common to all apps (e.g., opening or closing the app). They also allow developers to create

9  "Custom Events" relevant to their specific app. Developers choose the user action that will trigger the

10 transmission of a Custom Event (such as clicking a particular button) and can name them accordingly.

11 *See* Ex. 13 at '973 (explaining there are "automatically logged" events" and "custom events"); Ex. 14

12 at '646 (explaining developer can create "up to 500 different Analytics Event[s]."); Ex. 15 at '102

13 ("You can use custom events to track specific actions users take within your app[.]"); Ex. 16 at '154;

14 ████████████████████████████████████████████████████████████████████

15 ███████████████████████████ Developers can also include "parameters"

16 or "values" in their Custom Events that provide even more detail about the activity the app user has

17 taken. *See* ██████████ Ex. 18 at '019; Ex. 19 at '046; Ex. 14 at '646 (describing event "parameter"

18 and "value"); ████████████████████████████████████████████████████

19 ████████████████████████

20      <u>Flo's Custom App Events Disclosed Health Information</u>. Of the Custom App Events Flo

21 created during the Class Period, ***at least*** ████████████ Figure 1 below, conveyed health information.

22 ████████████████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████████

26 ████████████████ Figure 1 indicates which Ad Defendant (with an "M" for Meta, "G" for

27 Google, and "F" for Flurry) received each of these events.

28

**FIGURE 1**



The Ad Defendants' SDKs contemporaneously intercepted these communications with the Flo App, transmitting the corresponding Custom Event (with parameters) to their servers, each time a user took one of the actions in the last column.

1

2

3

4

5

6

7

      The parameters transmitted with these events reveal the user's selection and convey even more health information than apparent from the Custom Events' name.

10

11

12

13

      This information was so valuable that Flo sold access to the data the Ad Defendants intercepted to *other third parties*,

16

17

18 [3]

      <u>Identifying Information Sent With Custom Events</u>. These Custom Events were accompanied by unique "Advertising IDs" corresponding to each Flo App user. *See* Ex. 32, Resp. to Rog. No. 3 at 38-39;

22

23

24

25

---

[3]

1 ████████████████████ ████████████████████████████████

2 ████████████████████████████████

3    ██████████████████████████████████████

4 ████████████████████████████████████████

5 ████████████████████████████████████████

6 ████████████████████████████████████████

7 ████████████████████████████████████████

8 ████████████████████████████████████████

9 ██████████████

10    This was not the only identifying information the Ad Defendants received. Meta also received

11 ████████████████████████████████████████

12 ████████████████████████████████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████████

15 ██████████ Google not only received Advertising IDs ████████████

16 ████████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 ████████████████████████████████████████

20 ████████████████████████████████████████

21 ██████████████████████████████████

22    Plaintiffs' Data Disclosed by Flo and Transmitted to ADs. All Flo App users—including

23 Plaintiffs—are required to select a "goal" during the Onboarding Survey, triggering the Custom App

24 ████████████████████████████████████████

25 ██████████████████████████████████████,[4] and thus each

26 ————————————————

27 [4] ████████████████████████████████████████

28 ████████████████████████████████████████

Footnote continued on next page

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    Case No. 3:21-cv-00757-JD

selected a "goal," triggering the Ad Defendants' interception of this Custom Event. Additionally, Plaintiffs would trigger (and the ADs would receive) at least the Custom Events ███████████ ███████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

Plaintiffs' testimony about tracking their cycle is confirmed by the data in Flo's system. Flo produced data associated with Plaintiffs' accounts reflecting menstrual cycle information they entered in the Flo App during the Class Period. ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████████ █████████████

**FIGURE 2**

███████████████████████████

Flo maintains nearly identical records for each Plaintiff, and likely all Class members.[5] Additionally, Flo maintains ████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████ *see also* Plaintiffs' Declarations.

_____

[5] Absent class member data is subject to a pending discovery dispute. *See* ECF Nos. 300, 306.

The Ad Defendants did nothing to prevent their receipt of this highly sensitive health information. ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ Despite knowing that sensitive data

could be transmitted through the Facebook SDK it was not until December 2019 that ███████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

There is no evidence Google or Flurry did the same.

Defendants Used the Custom App Events for their Own Purposes. Flo used Ad Defendants to generate "actionable insight[s]" from this data to monetize its app. *See* Ex. 19 at '049 (logging event data allows app developers to gain "actionable insight[s]' and "monetize better"); Ex. 71, Resp. to Rog. No. 1 at 6 (explaining Flo's use of the Flurry SDK allowed Flo to query the data for analytics "through a variety of dashboard reporting" provided by Flurry); ████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████ This included leveraging users' health data. Indeed, when Flo

sought to replace ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

9

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6      Ad Defendants each took advantage of Custom Event data from Flo for their own commercial

7 purposes. ██████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28

Flo Breaches its Promises to Flo Users. Flo consistently and repeatedly promised Flo App Users that it would only share Flo App users' personal information in accordance with its privacy policy. Flo never disclosed that it would share users' actual health information and, in fact, repeatedly promised it would not do so in its Privacy Policy. *See* Ex. 92 (June 15, 2016 Policy); Ex. 93 (Nov. 15, 2016 Policy); Ex. 94 (Dec. 24, 2016 PP); Ex. 95 (March 14, 2017 Policy); Ex. 96 (March 17, 2017 Policy); Ex. 97 (July 12, 2017 Policy); Ex. 98 (August 28, 2017 Policy); Ex. 99 (November 13, 2017 Policy); Ex. 100 (May 25, 2018 Policy); Ex. 101 (July 16, 2018 Policy); Ex. 102 (August 6, 2018 Policy); Ex. 103 (February 19, 2019 Policy); Ex. 104 (February 23, 2019 Policy); Ex. 105 (February 27, 2019 Policy); Ex. 106 (July 17, 2019 Policy).

Flo doubled down on these misrepresentations. When asked by a Flo App user ███████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ That was a lie, as the Flo App still operates today after it purportedly stopped sharing user data.

Defendants' Continuous Misconduct. On February 22, 2019, the *Wall Street Journal* published an article "You Give Apps Sensitive Personal Information. Then They Tell Facebook." The article discussed several apps, including Flo, sharing sensitive data with Facebook. ██████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████

3          The FTC finalized a settlement with Flo in June 2021. *In the Matter of Flo Health, Inc.*, FTC

4 No. C-4747, Decision and Order (June 17, 2021). As part of this deal, Flo agreed to obtain users'

5 affirmative consent before sharing personal health information, and to notify affected Flo App users

6 whose health information it disclosed to third parties. *Id.* at 4. Email notices alerting users that their

7 data had been shared were sent beginning on or around June 30, 2021. ████████████

8     **III.     LEGAL STANDARD**

9          "Before it can certify a class, a district court must be satisfied, after rigorous analysis, that the

10 prerequisites of both Rule 23(a) and 23(b)(3) have been satisfied." *Olean Wholesale Grocery Coop.,*

11 *Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (internal citations omitted). "Merits

12 questions may be considered to the extent—*but only to the extent*—that they are relevant to

13 determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v.*

14 *Conn. Retirement Plans and Trust Funds*,568 U.S. 455, 466 (2013).

15          Plaintiffs move to certify the Nationwide Class and California Subclass identified in the

16 Notice, under Rule 23(b)(3). They also seek certification of the Injunctive Relief Class and California

17 Subclass presented in the Notice under Rule 23(b)(2).

18     **IV.     ARGUMENT**

19          **A.     The Proposed Classes Meet Rule 23(a)'s Requirements.**

20          <u>Numerosity</u>. Rule 23(a)(1) is satisfied when the "class is so numerous the joinder of all

21 members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, each of the Proposed Classes consists of

22 millions of individuals.[6] *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D.

23 603, 608 (N.D. Cal 2009) (numerosity satisfied even when "exact size" was unknown because

24 "general knowledge and common sense indicate that the [class] is large.").

25 ───────────────────

26 [6] Plaintiffs have requested the exact number of Flo App Users and California Flo App Users who completed the Flo Onboarding Survey and entered menstrual information in the Flo App—along with other data related to Class members' Flo App usage—which Flo has refused to produce. This is the

27 subject of Plaintiffs' discovery motion to compel filed on May 4, 2023, ECF No. 300. However, as Flo has more than ████████ monthly Flo App users in the U.S., *see* ████ numerosity is easily

28 satisfied.

1      <u>Commonality</u>. Rule 23(a)(2) is satisfied when there are "questions of law or fact common to

2    the class." Fed. R. Civ. P. 23(a)(2). Even if there are "circumstances of each particular class member

3    [that] vary" so long as there are "common core of factual or legal issues with the rest of the class,

4    commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-78 (9th Cir. 2008); *Bee, Denning,*

5    *Inc. v. Capital All. Grp*., 310 F.R.D. 614, 626 (S.D. Cal. 2015) (explaining commonality is satisfied

6    when there is a "common nucleus of operative facts"). Here, Plaintiffs' and the Classes' claims arise

7    from the same core set of facts and give rise to multiple common questions. *See* Section IV-B.

8    Because the answers to these common questions "will determine the claims of the putative class

9    members[,]" commonality is satisfied. *Bee, Denning Inc.,* 310 F.R.D. at 625.

10      <u>Typicality</u>. Rule 23(a)(3) evaluates "whether other members have the same or similar injury,

11    whether the action is based on conduct which is not unique to the named plaintiffs, and whether other

12    class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N.*

13    *Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal citation omitted). As described above, each

14    Plaintiff—and all Class/Subclass members—used the Flo App, entered the same type of information,

15    and, as a result, had their menstruation and/or pregnancy information disclosed. Because Plaintiffs

16    and Class/Subclass members suffered the same injury (i.e., disclosure of their menstruation and/or

17    pregnancy information) as a result of the same course of conduct, typicality is satisfied.

18      <u>Adequacy</u>. The adequacy requirement of Rule 23(a) demands that class representatives and

19    their counsel have no conflicts of interest with other class members and will vigorously prosecute the

20    litigation on behalf of the entire class. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 595 (N.D. Cal. 2015)

21    (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). Plaintiffs' declarations establish that:

22    (1) there are no conflicts of interest among the class representatives or any members of the Class; and

23    (2) Plaintiffs and their counsel have vigorously prosecuted this litigation and will continue to do so.[7]

24              **B.  Common Questions of Law and Fact Predominate Over Individual Issues.**

25      Plaintiffs seeking to certify a Rule 23(b)(3) damages class must show that common questions

26    predominate over individual ones. *See Olean*, 31 F.4th at 664 (Rule 23(b)(3) "overlap[s]" with Rule

27

28    ---

     [7] *See* Plaintiffs' Declarations.

1    23(a)(2)). "An individual question is one where members of a proposed class will need to present

2    evidence that varies from member to member, while a common question is one where the same

3    evidence will suffice for each member[.]" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)

4    (internal citation omitted). This requirement is satisfied where "the common, aggregation-enabling

5    issues in the case are more prevalent or important than the non-common, aggregation-defeating,

6    individual issues." *Olean*, 31 F.4th at 664 (citing *Tyson Foods*, 577 U.S. at 453). "When one or more

7    of the central issues in the action are common to the class and can be said to predominate, the action

8    may be considered proper under Rule 23(b)(3) even though other important matters will have to be

9    tried separately[.]" *Id.* at 668 (citing *Tyson Foods*, 577 U.S. at 453). A district court's predominance

10   inquiry begins with the elements of each of Plaintiffs' claims. *Id.* at 665 (internal citation omitted);

11   *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 288 (N.D. Cal. 2016) (same).

12              **A.  The Claims of the Classes Satisfy Predominance**

13                   **1.  California Law Applies to Each of the Class's Claims**

14          California law applies to each of the Nationwide Class's claims. Flo's Terms of Use uniformly

15   provide that "[a]ny dispute arising . . . shall be governed by the laws of the State of [California]

16   without regard to its conflict of laws provisions." *See, e.g.*, Ex. 115 at '573; Ex. 116 at '584; Ex. 117

17   at '555. The application of California law is also appropriate against the Ad Defendants who, like

18   Flo, are based in California such that (1) California law presumptively governs their conduct (*see

19   Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 750 (2020) ("[C]ourts ordinarily interpret California

20   statutes to apply to conduct occurring anywhere within California's borders, absent evidence a more

21   limited scope was intended."); and (2) the "application of California law poses no constitutional

22   concerns." *Forcellati v. Hyland's Inc.*, No CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *2.

23                   **2.  Claims Against Flo**

24          Plaintiffs assert the following claims on behalf of the Nationwide Damages Class against Flo:

25   (1) CMIA; (2) breach of contract (or implied contract); (3) intrusion upon seclusion; and (4) CDAFA.

26                        **a)  CMIA**

27          The CMIA prohibits a "provider of health care" from sharing "any individually identifiable

28   information, in electronic or physical form, in position of or derived form a provider of health care .

14

1   . . regarding a patient's medical history, . . . physical condition, or treatment." Cal. Civ. Code §§

2   56.10; 56.05(i); 56.05(o). The term "provider of health care" under § 56.06(b) includes "[a]ny

3   business that offers software or hardware to consumers, *including a mobile application* or other

4   related device that is designed to maintain medical information in order to make the information

5   available to an individual . . ." (emphasis added). Information allegedly disclosed must be "viewed"

6   by an "unauthorized party" to establish injury. *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th

7   197, 213, 300 Cal. Rptr. 3d 32, 42 (2022).

8       These elements raise several common questions subject to common proof. Whether Flo is a

9   "provider of health care" under Cal. Civ. Code § 56.05(i) is a question answered by the Flo App itself,

10  which Flo claims allows individuals to ███████████████████████" by tracking their menstrual

11  cycles, pregnancies, and other aspects of reproductive health. ████████; Ex. 3 at '360-61; ████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18      Likewise, data reflecting Class members' use of the Flo app, along with the information

19  transmitted to and received by Ad Defendants will provide common proof of whether Flo shared

20  medical information in violation of Cal. Civ. Code § 56.05(i). Flo produced a data file containing

21  information associated with each Proposed Class Representative's Flo account. *See* Section II, p. 7.

22  Ad Defendants each received these events, as reflected in their interrogatories, documents, and

23  confirmed by Plaintiffs' expert, Dr. Egelman's testing. *See* Section II, pp. 4-8.

24      Whether Flo's disclosure of medical information to third parties was without authorization in

25  violation of Cal. Civ. Code § 56.10 is also subject to common proof. None of the Privacy Policies

26  incorporated into Flo's Terms of Use ever disclosed that Flo would share health information,

27  defeating any argument that Flo obtained clear and conspicuous authorization. *See* Section II, p. 11.

28  Similarly, common evidence shows that the data was "viewed," as Ad Defendants incorporated that

15

1  data into their ad delivery systems, products, and services, or otherwise used it for their own

2  commercial purposes. *See* Section II, pp. 8-10.

### b) Breach of Contract

4  Breach of contract has four elements: (1) existence of a contract; (2) performance under the

5  contract; (3) Defendants' breach; and (4) damages. *Roley v. Google LLC*, Case No. 18-v-07537-BLF,

6  2020 WL 8675968, at *10 (N.D. Cal. July 20, 2020). Courts in this district routinely find common

7  issues predominate and certify classes pursuing breach of contract claims where they turn on a

8  common set of policies. *See, e.g.*, *In re Google Assistant Privacy Litig.* 5:19-cv-04286 (N.D. Cal.,

9  Dec 16, 2022), ECF No. 360 (certifying class of Google device purchasers who alleged Google

10  disclosed recordings to third parties in violation of its privacy policy without consent); *Dulberg v.*

11  *Uber Techs., Inc.*, No. C 17-00850 WHA, 2018 WL 932761, at *4 (N.D. Cal. Feb. 16, 2018)

12  (certifying breach of contract class and holding that "[i]nterpretation of that agreement will, of course,

13  apply on a class-wide basis").

14  Like these cases, Plaintiffs' and Class members' use of the Flo App were governed by a

15  common set of Terms of Use and Privacy Policies throughout the Class Period. *See* Section II, p. 11.

16  Those policies made a common set of promises to all Class members, including about what specific

17  data Flo would not share with others. This presents several common questions that can be established

18  with common evidence. For instance, whether Flo made uniform representations to class members

19  about information it would share with Ad Defendants is a common question that can be answered

20  using the policies available during the Class Period. *See* Section II, p. 11. Similarly, whether Flo

21  breached those promises can be answered by an analysis of the data in Flo's possession as well as the

22  data the ADs acknowledge they received. *See* Section II, pp. 4-8.[8]

### c) Intrusion Upon Seclusion

24  Intrusion upon seclusion has two elements: "whether: (1) there exists a reasonable expectation

25  of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking*, 956

26  F.3d 589, 601 (9th Cir. 2020). These elements are evaluated under an objective standard. *See*

27

28  [8] To the extent the Court finds an express contract does not exist, Plaintiffs have pled a breach of an implied contract claim in the alternative and can prove that claim using the same common proof.

16

1  *Opperman v. Path, Inc.*, No. 13-cv-0453-JST, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016)

2  (rejecting argument that "an individual inquiry will be required into the subjective expectations of

3  each class member" and certifying class for intrusion upon seclusion claim); *Ash v. Bank of Am. N.A.*,

4  No. 2:10-CV-02821-KJM, 2014 WL 301027, at *11 (E.D. Cal. Jan. 28, 2014) ("The reasonableness

5  of the privacy expectation is determined by an objective standard."); *Brown v. Google LLC*, 525 F.

6  Supp. 3d 1049, 1076 (N.D. Cal. 2021) (same).

7        Whether Plaintiffs have a reasonable expectation of privacy can be answered with the same

8  common proof as their contract claim—polices showing that Flo "set an expectation" health

9  information would not be shared. *Facebook Tracking*, 956 F.3d at 602 (plaintiffs stated intrusion upon

10  seclusion claim based on Facebook's privacy policies); *Brown,* 525 F. Supp. 3d at 1066 (finding

11  reasonable expectation of privacy where "statements suggest that a user's activity in private browsing

12  mode is not saved or linked to the user."); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 621, 631

13  (N.D. Cal. 2021) (finding reasonable expectation of privacy where the privacy notice "makes specific

14  representations that could suggest to a reasonable user that [defendant] would not engage in the

15  alleged data collection").

16        Whether a reasonable person would find Flo's conduct highly offensive is also subject to

17  common proof. *See Facebook Tracking*, 956 F.3d at 606 (analyzing whether invasion is "highly

18  offensive to a reasonable person," with a "focus[] on the degree to which the intrusion is unacceptable

19  as a matter of public policy."). The unauthorized disclosure of pregnancy and menstruation

20  information is uniformly recognized as a highly offensive violation of privacy. *Doe v. Regents of*

21  *Univ. of California*, No. 23-CV-00598-WHO, 2023 WL 3316766, at *6 (N.D. Cal. May 8, 2023)

22  (finding collection of health information highly offensive because "[p]ersonal medical information is

23  understood to be among the most sensitive information that could be collected about a person"). Here,

24  internal documents show that Flo, along with other Ad Defendants, not only recognized that Flo was

25  sharing health information but assisted Flo in using that data for advertising. *See* Section II, pp. 8-10.

26  This is objectively highly offensive as shown by this common evidence.

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    Case No. 3:21-cv-00757-JD

### d) CDAFA

CDAFA requires proof that the Defendants: (a) "knowingly accessed and without permission . . . take, copies, or makes use of any data from a computer" (Cal. Penal Code § 502(c)(2)); or (b) "knowingly and without permission provides or assists in providing a means" of "accessing a computer, computer system, or computer network in violation of this section." *See* Cal. Penal Code § 502(c)(6); *see also Ticketmaster L.L.C. v. Prestige Ent. W., Inc.,* 315 F. Supp. 3d 1147, 1176 (C.D. Cal. 2018) (finding a defendant violated subsection (c)(6) by providing means for others to "commit violations of . . . other subsections of the CDAFA."). Plaintiffs also must show they "suffer[ed] damage or loss by reason of a violation." Cal. Penal Code § 502(e)(1).

Common evidence will prove each of these requirements. Documents as well as expert testing of the Flo App show that Flo provided the means and assistance for Ad Defendants to take and use pregnancy and menstruation information from Nationwide Class Members' mobile devices. The same documents show Flo acted knowingly, as it intended to use the data collected through Ad Defendants' SDKs for multiple purposes. *See* Section II, pp. 8-10. That Flo's conduct was "without permission" is established by Flo's Privacy Policies, none of which disclose that Flo would share or permit others to access and use Nationwide Class Members' health data. *See Greenley v. Kochava, Inc.,* No. 22-CV-01327-BAS-AHG, 2023 WL 4833466, at *13 (S.D. Cal. July 27, 2023) (finding the "without permission" requirement satisfied where plaintiff "did not 'consent' to Defendant's data collection.").

Lastly, all Flo Nationwide Class Members suffered a "loss" that can be established through common proof. ███████████████████████████████ ████████████████████████████████████████ ████████████████████████ Flo's misappropriation of that valuable data is common harm sufficient to support CDAFA claims. *NovelPoster v. Javitch Canfield Grp.,* 140 F. Supp. 3d 954, 964 (N.D. Cal. 2014) (explaining for the CDAFA "any amount of damage or loss caused by the defendant's CDAFA violation is enough to sustain the plaintiff's claims"). Plaintiffs need not measure the exact loss for each class member to determine that this misappropriation of information constitutes a "loss" under CDAFA.

1

2

### 3. Claims against Ad Defendants

#### a) CDAFA

Common evidence shows that Ad Defendants violated CDAFA by knowingly intercepting and using data intercepted from Flo Nationwide Class Members' devices through their SDKs. *See CTI III, LLC v. Devine*, No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508, at *4 (E.D. Cal. May 26, 2022) (explaining CDAFA "does not require *unauthorized* access . . . [but] merely requires *knowing* access."). Ad Defendants' implementation guides and marketing materials show that they knowingly "access" data from computer systems (i.e., mobile devices) through their SDKs. *See* Cal. Penal Code § 502(b)(1) (defining "access" as "to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communication with . . . resources of a computer"). Indeed, Ad Defendants acknowledge that this is the purpose of incorporating their SDKs into a mobile application. *See* ███ ████████████████████████████████████████████████████████████ Ex. 18 (explaining Meta SDK access event data); Ex. 11 (explaining Google SDK access event data); Ex. 19 (explaining Flurry SDK access event data). As described in Section II, the Ad Defendants' interception and use of data from Class members' devices through their SDKs provides common proof of their CDAFA claims.

#### b) Aiding and Abetting Intrusion Upon Seclusion

An adding and abetting claim requires showing the Ad Defendants: (1) knew Flo's conduct constituted an invasion of privacy and gave substantial assistance or encouragement to Flo, or (2) gave substantial assistance to Flo in accomplishing an invasion of privacy, and that their own conduct, separately constituted an invasion of privacy. *See Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 985 (N.D. Cal. 2015); *see also Opperman,* 2016 WL 3844326, at *3 (certifying class for aiding and abetting intrusion upon seclusion claim).

Plaintiffs' claim that the Ad Defendants aided and abetted Flo's intrusion upon their seclusion will be supported by the same common evidence described above: (1) showing that Flo violated their privacy rights and (2) that Ad Defendants, in designing their SDKs to intercept this data, and coordinating with Flo to facilitate the collection and use of this information, provided substantial assistance to Flo's violation. *See* Section II.

### B. The California Subclass

Plaintiffs seek certification of a California subclass asserting the same claims as their Nationwide Damages Class (*i.e.*, CMIA, Breach of Contract, Intrusion Upon Seclusion, and CDAFA), against the same Defendants, and two additional California-specific claims. California residents can be identified in Flo's data or through self-identifying individuals. *McCrary v Elations Co., LLC*, No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at *7 (C.D. Cal. Jan. 13, 2014) (finding class ascertainable where plaintiff "proposes that class members self-identify their inclusion [in the class] via affidavits" because "[t]he class definition is sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member.").

### 1. Invasion of Privacy under the California Constitution against Flo

"Because of the similarity of the tests [for constitutional invasion of privacy and common law intrusion claims], courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive. *Facebook Tracking*, 956 F.3d at 601. Given that both claims consider the same elements, Plaintiffs can establish their California Constitutional claim using the same evidence discussed in Section II.

### 2. Violation of CIPA against the Ad Defendants

Common evidence will show the Ad Defendants violated both CIPA's Section 631 and 632. Section 631 "prohibits any person from using electronic means to learn the contents or meaning of any communication without consent or in an unauthorized manner." *Facebook Tracking*, 956 F.3d at 607 (internal quotations omitted). Attempts to intercept and use of intercepted communications are equally forbidden under § 631(a). *Greenley*, 2023 WL 4833466, at *16 (explaining that this section also punishes "persons who attempt to learn in an unauthorized manner the contents of communications passing over any wires, lines, and cables."). Section 632 prohibits unauthorized recording or eavesdropping on confidential communications. *See In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013); *see also In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2022 WL 7869218, at *13 (N.D. Cal. Dec. 22, 2022) (delineating between § 631's "wiretapping provision" and § 632's "recording provision").

Plaintiffs' CIPA claims present common questions that can be answered with common proof. Discovery from Ad Defendants show that they intercepted (violating § 631) and recorded (violating § 632) the contents of Plaintiffs' communications with Flo by capturing Custom Events reflecting health information they entered into the Flo app. *See* Section II, pp. 3-8. Plaintiffs' communications with Flo were uniformly confidential in form and substance. *See* Section IV, p. 17. Common evidence also shows that each Ad Defendant used the health information it intercepted. *See* Section II, pp. 8-10. Each Ad Defendant's intent to capture such information is reflected in the design of the SDKs, whose purpose is to collect and transmit data. *See* Section II, pp. 2-3. Meta and Google further demonstrated intent by their efforts to discourage Flo from removing their SDKs, and eagerness to explore alternative means of acquiring the same health information. *See* Section II, pp. 11-12. Finally, lack of authorization is also a common question that can be answered by Flo's policies, which did not obtain consent to share health information and often expressly stated that health information would not be shared with any third parties. *See* Section II, p. 11.

### C. <u>Common Issues Predominate Regarding the Relief Plaintiffs Seek</u>

Plaintiffs pursuing damages under Rule 23(b)(3) must show the monetary relief they seek is "'capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast Corp. v Behrend*, 569 U.S. 27, 34-35 (2013)); *see also Owino v. CoreCivic, Inc.*, 60 F.4th 437, 447 (9th Cir. 2022) (same). These calculations "need not be exact," *Brown v. Google, LLC*, No. 20-cv-3664-YGR, 2022 WL 17961497, at *5 (N.D. Cal. Dec. 12, 2022) (citing *Comcast*), and "damage calculations alone cannot defeat certification." *Pulaski & Middleman*, 802 F.3d 979, 986 (9th Cir. 2015) (quoting *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). The remedies that Plaintiffs seek for their claims are articulated below.

#### 1. Statutory Damages

Plaintiffs seek statutory damages on behalf of the Classes in connection with their CIMA claims against Flo and CIPA claims against the Ad Defendants. The CMIA awards $1,000 per violation. *See* CMIA § 56.36(b)(1). CIPA provides for a statutory minimum judgment of $5,000 per violation. Cal. Penal Code § 637.2(a); *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No.

2:13-CV-02468-CAS, 2014 WL 4627271, at *14 (C.D. Cal. Sept. 8, 2014) (recognizing on class certification motion that "CIPA [] provides for statutory damages upon proof of a privacy violation, without evidence of actual damages" and holding that "issues of excessive damages are better addressed at a later stage of the litigation").

For each of these claims, damages can be calculated formulaically and on a classwide basis by multiplying the number of violations proven by the amount awarded by the relevant statute. *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923, 925 (1994) (affirming trial court's award of the "total of $132,000 in damages [under CIPA], $3,000 for each of 44 specific violations"); *Francies v. Kapla*, 127 Cal. App. 4th 1381, 1385 (2005) (affirming trial court's award of CMIA statutory damages).

### 2. Punitive Damages

Under California law, punitive damages are available when a defendant acts with oppression, fraud, or malice. *See* Cal. Civ. Code § 3294. Courts have permitted punitive damages where defendants have committed an invasion of privacy. *Jackson v. First Nat'l Bank of Omaha*, No. CV 20-1295 DSF (JCX), 2022 WL 423440, at *9 (C.D. Cal. Jan. 18, 2022) ("California courts and district courts in the Ninth Circuit have recognized punitive damages may be appropriate for common law invasion of privacy claims."); *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 994 (N.D. Cal. 2014) (holding invasion of privacy can support punitive damages)

This presents common questions related to Defendants' conduct that courts recognize are amenable to certification. *Ellis v. Costco Corp.*, 285 F.R.D. 492, 542-44 (N.D. Cal. 2012) (certifying Rule 23(b)(3) class including claim for punitive damages, explaining "the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, . . . the focus of a punitive damages claim is not on facts unique to each class member, but on the defendant's conduct toward the class as a whole."); *Opperman*, 2016 WL 3844326, at *16 (certifying 23(b)(3) class explaining "punitive damages . . . was best decided on a classwide basis"). This is true here, where the same evidence described above will prove Defendants acted with the requisite intent.

### 3. Nominal Damages

Plaintiffs seek nominal damages on behalf of the Classes in connection with their intrusion upon seclusion and violation of the CMIA claims. *Opperman,* 2016 WL 3844326, at *16 (certifying

22

invasion of privacy class premised on nominal damages); *Stasi v. Inmediata Health Grp. Corp.,* 501 F. Supp. 3d 898, 919 (S.D. Cal. 2020) (explaining the CMIA "provides for nominal damages even if Plaintiff did not suffer actual damages."); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1299 (S.D. Cal. 2020) (same).

Nominal damages are awarded for "the infraction of a legal right, where the extent of loss is not shown, or where the right is one not dependent upon loss or damage." *Opperman v. Path, Inc.*, 2016 WL 3844326, at *16. An award of nominal damages does not require individualized inquiries because nominal damages are not "intended to compensate a plaintiff for injuries." *Id.* at *16 (explaining "it is precisely 'where the amount of damages is uncertain' that nominal damages may . . . be awarded."). Given this, "several district courts in the Ninth Circuit have certified classes involving claims for nominal damages." *Id.* (collecting cases). Here, nominal damages are appropriate for Plaintiffs' claims for intrusion upon seclusion and violation of the CMIA.

### 4. Disgorgement

It is a foundational principle of California law and federal equitable principles that a defendant shall not benefit from their own wrongdoing. *See Liu v. Sec. & Exch. Comm'n*, 140 S.Ct. 1936, 1942 (2020) ("[e]quity courts have routinely deprived wrongdoers of their net profits from unlawful activity"); *Facebook Tracking*, 956 F.3d at 600 ("California law requires disgorgement of unjustly earned profits regardless of [plaintiffs' damages].") (emphasis added); *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (Ct. App. 2014) ("'[T]he public policy of this state does not permit one to "take advantage of his own wrong'" regardless of whether the other party suffers actual damage."). Documents showing the amount of money Flo: (1) ██████████████████ (2) profited from selling subscriptions to the Flo app while disclosing data in violation of its policies, provide common evidence of profits that should be disgorged. *See, e.g.,* Section II, p. 11.

### C.  A Class Action is the Superior Method of Adjudicating this Dispute

Rule 23(b)(3)'s superiority requirement asks "whether the ends of justice and efficiency are served by certification." *DZ Reserve v. Meta Platforms, Inc.*, No. 3:18-cv-04978-JD, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022). Courts must consider the following factors to determine superiority: (1) the interest of each class member in individually controlling the prosecution or

1   defense of separate actions; (2) the extent and nature of any litigation concerning the controversy

2   already commenced by or against the class; (3) the desirability of concentrating the litigation of the

3   claims in the particular forum; and (4) the difficulties likely to be encountered in the management of

4   a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

5        Considering the first factor, courts regularly find superiority where the "risks, small recover,

6   and relatively high costs of litigation make it unlikely that plaintiffs would individual pursue their

7   claims." *Just Film, Inc.,* 847 F.3d at 1123 (internal citation omitted); *see also DZ Reserve*, 2022 WL

8   912890 at *9 ("[I]t is not likely for class members to recover large amounts individually if they

9   prevailed. No reasonable person is likely to pursue these claims on his or her own"). Here, Class

10  members' individual damages would likely pale in comparison to the cost of litigation. The remaining

11  factors also weigh in favor of certification: there are no other cases, each Defendant is based in this

12  district, and a class action would be sufficiently manageable given the "variety of procedural tools

13  courts can use to manage the administrative burdens of class litigation" and the objective criteria

14  defining the Classes.[9] *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017).

15      **D.  The Proposed Injunction Class Meets Rule 23(b)(2)'s Requirements**

16       Plaintiffs also seek to certify a nationwide class and a California subclass under Rule 23(b)(2)

17  for injunctive relief in connection with their CIPA, CDAFA, and intrusion upon seclusion claims.

18  Membership in the California subclass can be determined using Flo's data or affidavits as described

19  in Section II, p. 2. Unlike a damages claim, a Rule 23(b)(2) class does not require a showing of

20  predominance or superiority. *In re Yahoo Mail,* 308 F.R.D. at 598. Rather, the class may be certified

21  so long as class members "complain of a pattern or practice that is generally applicable to the class

22  as a whole." *DZ Re*serve, 2022 WL 912890, at *10.

23       Here, Plaintiffs seek injunctive relief to stop Defendants' ongoing use and exploitation of

24  health information collected from Class members through the Ad Defendants' SDKs. Each Ad

25  Defendant received and used health information from Flo Custom Events during the Class Period.

26  *See* Section II, pp. 3-10. There is no evidence that this data has been removed from Ad Defendants'

27

28  ---
    [9] *See* Notice of Motion for the Class and Subclass definitions.

systems, or that their use of it (or data derived from it) has stopped. Ad Defendants should each be required to destroy any Custom Event data received from Flo and immediately stop its use for all purposes, including as part of algorithms, systems, and processes that may have incorporated those data.

Plaintiffs also seek an injunction that would require Flo to obtain separate, handwritten authorization to disclose Class members' medical information, as required by § 56.11 of CMIA that: (1) states the specific limitations and uses on the types of medical information disclosed (2) provides specific data when Flo is no longer authorized to disclose the information, and (3) advises the person of their right to receive a copy of the notification. Flo should also be required to delete all data relating to or derived from Plaintiffs' pregnancy and menstruation information, including any custom audiences for advertising created using this information. Finally, Flo should be ordered undergo routine, yearly audits to ensure this injunctive relief has (and remains) implemented. This is necessary given evidence that Flo sought to transmit health data through other means to circumvent detection after removing the Ad Defendants' SDKs from its App. Because the relief sought is applicable to the Injunctive Relief Class and Subclass as a whole, certification pursuant to Rule 23(b)(2) is proper.

### a.  The Court Should Appoint Class Counsel.

Rule 23(g) requires a court to appoint class counsel who will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4). As demonstrated by their work thus far in this case, Interim Class Counsel possess the necessary knowledge, experience, and resources to prosecute this matter fairly and effectively. *See* Order re Co-Lead Counsel, ECF No. 80 at 1.

### V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to certify the Class and Subclass, appoint Named Plaintiffs as Class representatives, and appoint Carol Villegas, Christian Levis, and Diana Zinser as Co-Lead Counsel.


Dated: September 21, 2023              /s/ *Diana J. Zinser*
                                       Diana J. Zinser (*pro hac vice*)
                                       John A. Macoretta (*pro hac vice*)
                                       Jeffrey L. Kodroff (*pro hac vice*)

1                                   Icee N. Etheridge (*pro hac vice*)

2                                   **SPECTOR ROSEMAN & KODROFF, P.C.**

3                                   2001 Market Street, Suite 3420
Philadelphia, PA 19103

4                                   Tel: (215) 496-0300
Fax: (215) 496-6611

5                                   dzinser@srkattorneys.com
jmacoretta@srkattorneys.com

6                                   jkodroff@srkattorneys.com

7                                   *Interim Co-Lead Counsel*

8                                   *for Plaintiffs and the Proposed Class*

9                                   Carol C. Villegas (*pro hac vice*)

10                                 David Saldamando (*pro hac vice*)
**LABATON SUCHAROW LLP**

11                               140 Broadway
New York, NY 10005

12                               Tel: (212) 907-0700
Fax: (212) 818-0477

13                               cvillegas@labaton.com
dsaldamando@labaton.com

14                               *Interim Co-Lead Counsel*

15                               *for Plaintiffs and the Proposed Class*

16                               Christian Levis (*pro hac vice*)

17                               Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**

18                               44 South Broadway, Suite 1100
White Plains, NY 10601

19                               Tel: (914) 997-0500
Fax: (914) 997-0035

20                               clevis@lowey.com
afiorilla@lowey.com

21                               *Interim Co-Lead Counsel*

22                               *for Plaintiffs and the Proposed Class*

23                               Ronald A. Marron (CA Bar 175650)
ron@consumersadvocates.com

24                               Alexis M. Wood (CA Bar 270200)
alexis@consumersadvocates.com

25                               Kas L. Gallucci (CA Bar 288709)
kas@consumersadvocates.com

26                               **LAW OFFICES OF RONALD A.**

27                               **MARRON** 651 Arroyo Drive
San Diego, CA 92103

28                               Tel: (619) 696-9006
Fax: (619) 564-6665

26

1

2

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

3

Kent Morgan Williams (*pro hac vice*)
**WILLIAMS LAW FIRM**

4

1632 Homestead Trail
Long Lake, MN 55356

5

Tel: (612) 940-4452
williamslawmn@gmail.com

6

7

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**

8

605 N High Street
Suite 146

9

Columbus, OH 43215
Tel: (614) 504-3350

10

Fax: (614) 340-1940
will@harrislegaladvisors.com

11

12

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    Case No. 3:21-cv-00757-JD