James M. Wagstaffe (95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: 805-543-0990
Fax: 805-543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Christian Levis (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

Carol C. Villegas (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

Diana J. Zinser (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@srkattorneys.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

ERICA FRASCO, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FLO HEALTH, INC., META PLATFORMS, INC., GOOGLE, LLC, and FLURRY, INC.,

Defendants.

Case No.: 3:21-cv-00757-JD

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Date: November 21, 2024
Time: 10:00 a.m.
Location: Courtroom 11, 19th Floor
Judge: Hon. James Donato

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on November 21, 2024 at 10:00 a.m., or another date and time to be determined by the Court, the undersigned will appear before the Honorable James Donato of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, and will move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order certifying the following Proposed Classes:

| **Under Fed. R. Civ. P. 23(b)(3)** | | |
|---|---|---|
| **Class** | **Representatives** | **Claims** |
| Nationwide Damages Class: All Flo App users who entered menstruation and/or pregnancy information into the Flo Health App between November 1, 2016 and February 28, 2019, inclusive. | Plaintiffs Erica Frasco, Sarah Wellman, Jennifer Chen, Tesha Gamino, and Autumn Meigs | Against Defendant Flo Health, Inc: (1) violation of the California Confidentiality of Medical Information Act ("CMIA"); (2) breach of contract (or in the alternative breach of an implied contract); (3) common law invasion of privacy (intrusion upon seclusion); and (4) violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA")<br><br>Against Defendants Meta, Inc., Google, Inc., Flurry, Inc: (1) violation of CDAFA; and (2) aiding and abetting a common law invasion of privacy violation (intrusion upon seclusion) |
| California Subclass: All Flo App users in California who entered menstruation and/or pregnancy information into the Flo Health App while residing in California between November 1, 2016 and February 28, 2019, inclusive. | Plaintiffs Sarah Wellman, Jennifer Chen, and Tesha Gamino | All claims asserted by the Nationwide Class, plus:<br><br>Against Defendant Flo Health, Inc: invasion of privacy in violation of Art. 1, Sec. 1 of the California Constitution<br><br>Against Defendants Meta, Inc., Google, Inc., Flurry, Inc: violation of the California Invasion of Privacy Act ("CIPA") |
| **Under Fed. R. Civ. P. 23(b)(2)** | | |
| **Class** | **Representatives** | **Claims** |
| Injunctive Relief Class: All Flo App users who entered menstruation and/or | Plaintiffs Erica Frasco, Sarah Wellman, Jennifer Chen, | Against All Defendants: for injunctive relief in connection |

| | | |
|---|---|---|
| pregnancy information into the Flo Health App between November 1, 2016 and February 28, 2019, inclusive. | Tesha Gamino, and Autumn Meigs | with their CDAFA, and common law invasion of privacy claims. |
| California Subclass: All Flo App users in California who entered menstruation and/or pregnancy information into the Flo Health App while residing in California between November 1, 2016 and February 28, 2019, inclusive. | Plaintiffs Sarah Wellman, Jennifer Chen, and Tesha Gamino | Against Defendants Meta, Inc., Google, Inc., Flurry, Inc: in connection with their CIPA claims |

Plaintiffs seek the appointment of these Plaintiffs as Class Representatives. Plaintiffs also seek appointment of Carol Villegas (Labaton Keller Sucharow), Christian Levis (Lowey Dannenberg), and Diana Zinser (Spector Roseman & Kodroff) as Class Counsel.

The Motion is based upon this Notice, the Memorandum of Law, the declaration of Carol C. Villegas (hereinafter "Villegas Decl."), the Plaintiffs' declarations, all exhibits to such documents, any papers filed in reply, and any argument as may be presented at the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Plaintiffs have shown by a preponderance of the evidence that: (1) the Proposed Classes satisfy Rule 23(a)'s requirements; (2) the Nationwide Damages Class and California Subclass satisfy Rule 23(b)(3)'s predominance and superiority requirements; (3) whether the Injunctive Relief Class meets Rule 23(b)(2)'s requirements.

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. LEGAL STANDARD ........ 12

IV. ARGUMENT ........ 12

A. The Proposed Classes Meet Rule 23(a)'s Requirements. ........ 12

B. Common Questions of Law and Fact Predominate Over Individual Issues. ........ 13

C. The Claims of the Classes Satisfy Predominance ........ 14

1. California Law Applies to Each of the Classes' Claims ........ 14

2. Claims Against Flo ........ 14

a. CMIA ........ 14

b. Breach of Contract ........ 16

c. Intrusion Upon Seclusion ........ 16

d. CDAFA ........ 18

3. Claims Against Ad Defendants ........ 19

a. CDAFA ........ 19

b. Aiding and Abetting Intrusion Upon Seclusion ........ 19

D. The California Subclass ........ 20

1. Invasion of Privacy Under the California Constitution Against Flo ........ 20

2. Violation of CIPA Against the Ad Defendants ........ 20

E. Common Issues Predominate Regarding the Relief Plaintiffs Seek ........ 21

1. Statutory Damages ........ 21

2. Punitive Damages ........ 22

3. Nominal Damages ........ 23

4. Disgorgement ........ 23

F. A Class Action Is the Superior Method of Adjudicating This Dispute ........ 24

G. The Proposed Injunction Class Meets Rule 23(b)(2)'s Requirements ........ 24

a. The Court Should Appoint Class Counsel. ........ 25

V. CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455 (2013) ... 12

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ... 24

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 16, 17

*Brown v. Google, LLC*, No. 20-cv-3664-YGR, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ... 21

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ... 17

*Coulter v. Bank of Am.*, 28 Cal. App. 4th 923 (1994) ... 22

*CTI III, LLC v. Devine*, No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508 (E.D. Cal. May 26, 2022) ... 19

*Doe v. Regents of Univ. of Cal.*, No. 23-CV-00598-WHO, 2023 WL 3316766 (N.D. Cal. May 8, 2023) ... 17

*Dulberg v. Uber Techs., Inc.*, No. C 17-00850 WHA, 2018 WL 932761 (N.D. Cal. Feb. 16, 2018) ... 16

*DZ Reserve v. Meta Platforms, Inc.*, No. 3:18-cv-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ... 23, 24

*Ellis v. Costco Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) ... 22

*In re Facebook, Inc. Internet Tracking*, 956 F.3d 589 (9th Cir. 2020) ... 16, 17, 20, 23

*In the Matter of Flo Health, Inc.*, FTC No. C-4747, Decision and Order (June 17, 2021) ... 12

*Francies v. Kapla*, 127 Cal. App. 4th 1381 (Cal. Ct. App. 2005) ... 22

*In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ... 20

*Greenley v. Kochava, Inc.*, No. 22-CV-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July 27, 2023) ... 18, 20

*Jackson v. First Nat'l Bank of Omaha*,
No. CV 20-1295 DSF (JCX), 2022 WL 423440 (C.D. Cal. Jan. 18, 2022)........................... 22

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017)........................................................................................ 21, 24

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) .................................................................................. 12

*Kellman v. Spokeo, Inc.*,
No. 21-CV-08976-WHO, 2024 WL 2788418 (N.D. Cal. May 29, 2024) ............................. 22

*Kumandan v. Google, LLC*,
No. 19-cv-04286-BLF, 2023 WL 8587625 (N.D. Cal. Dec. 11, 2023) ................................. 16

*Liu v. SEC*,
140 S.Ct. 1936 (2020) ........................................................................................................... 23

*McCrary v. Elations Co., LLC*,
No. EDCV 13-00242 JGB OP, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ...................... 20

*Meister v. Mensinger*,
230 Cal. App. 4th 381 (Cal. Ct. App. 2014) ......................................................................... 23

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-03580-WHO, 2022 WL 7869218 (N.D. Cal. Dec. 22, 2022)............................... 20

*Nitsch v. Dreamworks Animation SKG Inc.*,
315 F.R.D. 270 (N.D. Cal. 2016)........................................................................................... 14

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 954 (N.D. Cal. 2014) ...................................................................................18-19

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022)........................................................................................ 12, 13, 14

*Opperman v. Path, Inc.*,
84 F. Supp. 3d 962 (N.D. Cal. 2015) ..................................................................................... 19

*Opperman v. Path, Inc.*,
No. 13-cv-0453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016).................... 17, 19, 22, 23

*Owino v. CoreCivic, Inc.*,
60 F.4th 437 (9th Cir. 2022)................................................................................................... 21

*Parra v. Bashas', Inc.*,
536 F.3d 975 (9th Cir. 2008)................................................................................................... 12

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
No. 3:15-MD-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019) ....................................... 15

*Pulaski & Middleman*,
802 F.3d 979 (9th Cir. 2015)................................................................................................... 21

*In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948 (N.D. Cal. 2017) .......... 14

*Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) .......... 13, 16, 17, 18

*Roley v. Google LLC*, Case No. 18-v-07537-BLF, 2020 WL 8675968 (N.D. Cal. July 20, 2020) .......... 16

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284 (S.D. Cal. 2020) .......... 23

*Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 23

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal 2009) .......... 12

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13-CV-02468-CAS, 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) .......... 21-22

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018) .......... 18

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .......... 13

*Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985 (N.D. Cal. 2014) .......... 22

*Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197 (Cal. Ct. App. 2022) .......... 14-15

*Ward v. United Airlines, Inc.*, 9 Cal. 5th 732 (2020) .......... 14

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .......... 13

*In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) .......... 13, 24

**Statutes & Rules**

Cal. Civ. Code § 56.05(i) .......... 15

Cal. Civ. Code § 56.10 .......... 14, 15

Cal. Civ. Code § 3294 .......... 22

California Invasion of Privacy Act .......... *passim*

Cal. Penal Code § 502 .......... 18, 19

Cal. Penal Code § 637.2(a) .......... 21

California Confidentiality of Medical Information Act ........ *passim*

California Constitution ........ 20

Comprehensive Computer Data Access and Fraud Act ........ *passim*

Fed. R. Civ. P. 23 ........ *passim*

## I.    INTRODUCTION

This case concerns the systematic collection, disclosure, and commercial exploitation of millions of women's reproductive health information by Defendant Flo Health, Inc. ("Flo"), maker of the Flo Period & Ovulation Tracker mobile app (the "Flo App"), and three of the largest advertising and analytics companies: Defendants Google, LLC, Meta Platforms, Inc., and Flurry, Inc. (collectively, the Ad Defendants or "ADs").

Marketed as a way for women to take control of their health, the Flo App promised to be a secure platform for privately tracking the intimate details of one's reproductive health. In reality, it allowed the Ad Defendants to intercept billions of data points about the inner workings of women's bodies. Shockingly granular details, including whether an individual was pregnant or ovulating, and the dates and duration of their periods, were transmitted from the Flo App to each Ad Defendant through specialized Software Development Kits ("SDKs"), that Flo incorporated into its app between November 1, 2016 and February 28, 2019 (the "Class Period").

Flo *intended* this health information to be intercepted as it specifically programmed the app to execute Ad Defendants' SDK code when users logged data about their period or pregnancy. Flo used this information to acquire new app users by marketing to them based on their reproductive goals (e.g., getting pregnant). Ad Defendants separately used the data they intercepted for their own commercial purposes. Meta used health information it received from the Flo App for research and development, as well as to optimize the ads it displayed to Facebook users. Google utilized the data it received through its SDKs within its own advertising systems. And Flurry, which Yahoo acquired specifically to boost its mobile ad revenue, provided its parent company with a data feed containing Flo App's users' health information.

Plaintiffs, like millions of other women who used the Flo App, were injured when the health information they privately entered was intercepted and used without their consent. Each of their damages claims, like those of the Proposed Class's members, presents common questions that can be answered through common evidence, including documents and data relating to Defendants' collection and use of health information from the Flo App, and failure to obtain consent for such conduct. Injunctive relief is also necessary to stop the Ad Defendants' ongoing misuse of Class members'

health information, as there is no indication this data has been removed from Defendants' machine learning algorithms or processes. Likewise, Flo should be enjoined from continuing to violate Class members' privacy by disclosing health information without first obtaining affirmative consent in compliance with applicable laws. The Court should grant Plaintiffs' motion in its entirety.

## II. STATEMENT OF FACTS

The Flo App. With more than [redacted] users in [redacted] the Flo App is the most popular period-tracking app in the United States. *See* Ex. 1; Ex. 2.[1] [2] Flo claims the app [redacted] by tracking their menstrual cycle, predicting ovulation, helping users get pregnant, tracking their baby development, and assisting with postpartum recovery. Ex. 3; Ex. 4 at [redacted]

All Flo App users must complete [redacted] Ex. 5 [redacted] Ex. 6. The [redacted] in effect during the Class Period required all Flo App users, including Plaintiffs, to enter their [redacted] from three options: [redacted] Ex. 6 at [redacted] *Id.* [redacted] Ex. 7 at [redacted] Once the [redacted] is complete, Flo users [redacted] Ex. 6 at [redacted]

Software Development Kits ("SDKs") in the Flo App. Over the Class Period, Flo released various versions of its Flo App for Android and iOS devices. Ex. 5 [redacted] *see, e.g.,* Ex. 10 at [redacted] Ex. 11 at '788 ("Google Analytics collects usage and behavior data for your app."); Ex. 12 at [redacted]

[1] All exhibits cited in this motion are attached to the Villegas Decl., attached hereto.

[2] [redacted]

[redacted]

The Ad Defendants' SDKs intercept and transmit user's [redacted] *See* Ex. 5 [redacted] Each Ad Defendants' SDK pre-define certain "Standard Events" to reflect actions common to all apps (*e.g.*, closing the app). They also allow developers to create "Custom Events" relevant to their specific app. Developers choose the user action that will trigger the transmission of a Custom Event (such as clicking a particular button) and can name them accordingly. *See* Ex. 13 at '973 (explaining "automatically logged" events" and "custom events"); Ex. 14 at '646 (explaining developer can create "up to 500 different" events); Ex. 15 at '102 ("You can use custom events to track specific actions users take within your app[.]"); Ex. 16 at '154; Ex. 17 at [redacted] *See* Ex. 5 [redacted]; Ex. 18 at '019; Ex. 19 at '046; Ex. 14 at '646 (describing "parameter" and "value"); Ex. 20 at [redacted]

Flo's Custom Events Disclosed Health Information. The Custom Event data Ad Defendants [redacted]. Ex. 5 [redacted] Figure 1 below identifies [redacted] hat conveyed reproductive health information to the [redacted] *Id.*; Ex. 21 at [redacted]; Ex. 22 at [redacted]

*Figure* 1 indicates which Ad Defendant (with an "M" for Meta, "G" for Google, and "F" for Flurry) received each of these events.

**FIGURE 1**

The Ad Defendants' SDKs contemporaneously each time a user took one of the actions in the last column. Ex. 9 Ex. 7 Ex. 23 at

4

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION Case No. 3:21-cv-00757-JD

Indeed, Google *See* Ex. 24 at along with likewise confirm that it Ex. 25 ; Ex. 26 Meta's documents do the same. Ex. 27 Ex. 23 at For example, the Ex. 5

This information was so valuable that Flo *See* Ex. 28 Ex. 29 (same); Ex. 30 (same); Ex. 31 [4]

Identifying Information Sent With Custom Events. These Custom Events *See* Ex. 32, Ex. 33 at Ex. 34 at Ex. 35 at Ex. 36 at ; Ex. 37 at

[4] Ex. 37 at



Ad Defendants *See* Ex. 5 *see also* Ex. 38, Ex. 86 at [5] This was not the only Meta also *See* Ex. 38 *see also* Ex. 39 at Ex. 40 at Ex. 20 at Google Ex. 41 at Google Ex. 42 at ; Ex. 43 Ex. 122 at And Flurry *See* Ex. 44 at

Plaintiffs' Data Disclosed by Flo and Transmitted to ADs. All Flo App users—including Plaintiffs—are *See* Ex. 6 at Ex. 7 at Because Plaintiffs input *at least* their menstrual cycle information into the Flo App,[6] they ***must have*** each Additionally, Plaintiffs would

[5] Google's use of identifiers to track unique individuals are described more thoroughly in Plaintiffs' Opposition to Google's Motion for Summary Judgement. *See* ECF No. 351-3 at 17.

[6] Ex. 45 at & Ex. 46 at ; Ex. 47 at & Ex. 48 at Ex. 49 at & Ex. 50 at Ex. 51 at & Ex. 52 at Ex. 53 at 1 & Ex. 54 at



*See* Ex. 5 ; Ex. 24 at

*See* Ex. 55 at Ex. 56 at Ex. 57 at ; Ex. 58 at Ex. 59 at

**FIGURE 2**

*See, e.g.,* Ex. 60; Ex. 61; Ex. 62; Ex. 63; Ex. 64; Ex. 65; Ex. 66; *see also* Plaintiffs' Declarations.

The Ad Defendants did nothing to prevent . *See* Ex. 67 at Ex. 20 at Ex. 68 at



*See* Ex. 69

Ex. 70 at

Ex. 20 at

There is no evidence Google or Flurry ever did the same.[7]

Defendants Used the Custom Events for Their Own Purposes. Flo used Ad Defendants to generate "actionable insight[s]" from this data to monetize its app. *See* Ex. 19 at '046, '050 (logging event data allows app developers to gain "actionable insight[s]" and "monetize better"); Ex. 71,

Ex. 38,

Ex. 24,

When Flo sought to

Ex. 72

*See, e.g.*, Ex. 75 at

[7] While Google moved for summary judgment claiming that it had "features" that limited its ability to use data it received from the Flo App, this has been categorically debunked. *See* ECF No. 351-3.

Ex. 76 at

Ex. 77 at

Ex. 38,

*See, e.g.,* Ex. 73 at

Ex. 74 at

Ex. 123

Ex. 78 at

Ex. 79

Ex. 80 at

Ex. 82. Internally, Google employees

Ex. 83 at

Ex. 124 at

Meta, likewise,

*See* Ex. 125; *see also* Ex. 126; Ex. 111

*ee id.*

Ad Defendants

10

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION Case No. 3:21-cv-00757-JD



Flo Breaches its Promises to Flo Users. Flo repeatedly promised Flo App Users that it would only share their personal information in accordance with its privacy policy. Flo never disclosed that it would share users' actual health information and, in fact, repeatedly promised it would not do so. *See* Exs. 92-106 (Flo's Privacy Policies throughout the Class Period). Flo doubled down on these misrepresentations. When asked by a Flo App user

he Flo App still operates today after it purportedly stopped sharing user data.

Defendants' Continuous Misconduct. On February 22, 2019, the *Wall Street Journal* published an article "You Give Apps Sensitive Personal Information. Then They Tell Facebook." The article discussed several apps, including Flo, sharing sensitive data with Facebook.

[redacted] The FTC finalized a settlement with Flo in June 2021. *In the Matter of Flo Health, Inc.*, FTC No. C-4747, Decision and Order (June 17, 2021). Flo agreed to obtain users' affirmative consent before sharing personal health information, and to notify affected Flo App users whose health information it disclosed to third parties. *Id.* at 4. [redacted] Ex. 114 at [redacted]

## III. LEGAL STANDARD

"Before it can certify a class, a district court must be satisfied, after rigorous analysis, that the prerequisites of both Rule 23(a) and 23(b)(3) have been satisfied." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (internal quotation omitted). "Merits questions may be considered to the extent—*but only to the extent*—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013).

## IV. ARGUMENT

### A. The Proposed Classes Meet Rule 23(a)'s Requirements.

Numerosity. Rule 23(a)(1) is satisfied when the "class is so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, each of the Proposed Classes consists of millions of individuals.[8] *See* Ex. 1; *see also In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 608 (N.D. Cal 2009) (numerosity satisfied even when "exact size" was unknown because "general knowledge and common sense indicate that [the class] is large").

Commonality. Rule 23(a)(2) is satisfied when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even if there are "circumstances of each particular class member [that] vary," so long as there are "common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008). Only a single common question of law or fact is required. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 960 (N.D. Cal. 2022). Here, Plaintiffs' and the Classes' claims arise from the same core set of facts and give rise to multiple common questions of both law and fact

[8] Despite having it, Flo has refused to provide the [redacted]

regarding, among other things, the interception and use of Class members' health information without consent. *See* Section IV(B) *infra*. Because common evidence relating to these common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke," commonality is satisfied. *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2024 WL 38302, at *3 (N.D. Cal. Jan. 3, 2024) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Typicality. Rule 23(a)(3) evaluates "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal citation omitted). As described above, each Plaintiff—and all Class/Subclass members—used the Flo App, completed the onboarding survey, and, as a result, were injured when their sensitive health information was intercepted and used without their consent. Plaintiffs are therefore typical of all Class/Subclass members because they suffered the same injury as a result of the same course of conduct, by the same Defendants.

Adequacy. The adequacy requirement of Rule 23(a) demands that class representatives and their counsel have no conflicts of interest with other class members and will vigorously prosecute the litigation on behalf of the entire class. *See In re Yahoo Mail Litig.*, 308 F.R.D. 577, 595 (N.D. Cal. 2015) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). Plaintiffs' declarations establish that: (1) there are no conflicts of interest among the class representatives or any members of the Class; and (2) Plaintiffs and their counsel have vigorously prosecuted this litigation and will continue to do so.

**B. Common Questions of Law and Fact Predominate Over Individual Issues.**

Plaintiffs seeking to certify a Rule 23(b)(3) damages class must show that common questions predominate over individual ones. *See Olean*, 31 F.4th at 664 ("Rule 23(b)(3) overlap[s] with" Rule 23(a)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member[.]" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotations omitted). This requirement is satisfied where "the common, aggregation-enabling[] issues in the case are more prevalent or important than the non-common, aggregation-

defeating, individual issues." *Olean*, 31 F.4th at 664 (quoting *Tyson Foods*, 577 U.S. at 453). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately[.]" *Id.* at 668 (quoting *Tyson Foods*, 577 U.S. at 453). A district court's predominance inquiry begins with the elements of each of Plaintiffs' claims. *See id.* at 665 (internal citation omitted); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 288 (N.D. Cal. 2016) (same).

**C. The Claims of the Classes Satisfy Predominance**

**1. California Law Applies to Each of the Classes' Claims**

California law applies to each of the Nationwide Damages Class's claims. Flo's Terms of Use uniformly provide that "[a]ny dispute arising . . . shall be governed by the laws of the State of [California] without regard to its conflict of laws provisions." *See, e.g.*, Ex. 115 at '573; Ex. 116 at '584; Ex. 117 at '555. The application of California law is also appropriate against the Ad Defendants who, like Flo, are based in California such that (1) California law presumptively governs their conduct (*see Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 750 (2020) ("[C]ourts ordinarily interpret California statutes to apply to conduct occurring anywhere within California's borders, absent evidence a more limited scope was intended.")); and (2) the "application of California law here poses no constitutional concerns." *In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948, 978 (N.D. Cal. 2017).

**2. Claims Against Flo**

Plaintiffs assert the following claims on behalf of the Nationwide Damages Class against Flo: (1) CMIA; (2) breach of contract (or implied contract); (3) intrusion upon seclusion; and (4) CDAFA.

**a. CMIA**

The CMIA prohibits a "provider of health care" from sharing "any individually identifiable information, in electronic or physical form, in position of or derived form a provider of health care . . . regarding a patient's medical history, . . . physical condition, or treatment." Cal. Civ. Code §§ 56.10; 56.05(i); 56.05(o). The term "provider of health care" under § 56.06(b) includes "[a]ny business that offers software or hardware to consumers, *including a mobile application* or other related device that is designed to maintain medical information in order to make the information

available to an individual . . ." (emphasis added). Information allegedly disclosed must be "viewed" by an "unauthorized party" to establish injury. *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 213 (Cal. Ct. App. 2022).

These elements raise several common questions subject to common proof. *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2019 WL 3410382, at *20 (D. Or. July 29, 2019) (finding "common issues of law and fact predominate" in CMIA claim). Whether Flo is a "provider of health care" under Cal. Civ. Code § 56.05(i) is answered by the Flo App itself, Ex. 4 at Ex. 3 at '360-61; Ex. 118 at Ex. 119 at Flo reinforced the health focus of its app by Ex. 120 at Ex. 118 at

Likewise, data reflecting Class members' use of the Flo app, along with the information will provide common proof of whether Flo shared medical information in violation of Cal. Civ. Code § 56.05(i). For example, data[9] associated with each Named Plaintiffs' Flo account shows *See* Section II, pp. 7-8. That Ad *See* Section II, pp. 4-8.

Whether Flo's disclosure of medical information to third parties without authorization was in violation of Cal. Civ. Code § 56.10 is also subject to common proof. None of the Privacy Policies incorporated into Flo's Terms of Use ever disclosed that Flo would share health information. *See*

9 *See* Ex. 1.

Section II, p. 11, above. Similarly, common evidence shows [redacted] *See* Section II, pp. 8-10.

**b. Breach of Contract**

Breach of contract has four elements: (1) existence of a contract; (2) performance under the contract; (3) Defendants' breach; and (4) damages. *Roley v. Google LLC*, Case No. 18-v-07537-BLF, 2020 WL 8675968, at *10 (N.D. Cal. July 20, 2020). Courts in this district routinely find common issues predominate and certify classes pursuing breach of contract claims where they turn on a common set of policies. *See, e.g.*, *Kumandan v. Google, LLC*, No. 19-cv-04286-BLF, 2023 WL 8587625, at *12, *18 (N.D. Cal. Dec. 11, 2023) (certifying breach of contract class of purchasers alleging violation of privacy policies); *Dulberg v. Uber Techs., Inc.*, No. C 17-00850 WHA, 2018 WL 932761, at *4-5 (N.D. Cal. Feb. 16, 2018) (certifying breach of contract class and holding that "[i]nterpretation of that agreement will, of course, apply on a class-wide basis").

Like these cases, Plaintiffs' and Class members' use of the Flo App were governed by a common set of Terms of Use and Privacy Policies throughout the Class Period. *See* Section II, p. 11. Those policies made a common set of promises to all Class members, including about what specific data Flo would not share with others. *See* Section II p. 11 above. This presents numerous common questions that can be established with common evidence. For instance, whether Flo made uniform representations to class members about information it would share with Ad Defendants is a common question that can be answered using the policies available during the Class Period. *See* Section II, p. 11. Similarly, whether Flo breached those promises can be answered by [redacted] *See* Section II, pp. 4-8.[10]

**c. Intrusion Upon Seclusion**

Intrusion upon seclusion has two elements: "whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking*, 956 F.3d 589, 601 (9th Cir. 2020) (internal quotations omitted). These elements are evaluated under an

[10] To the extent the Court finds an express contract does not exist, Plaintiffs have pled a breach of an implied contract claim in the alternative and can prove that claim using the same common proof.

objective standard. *See Rodriguez*, 2024 WL 38302 at *4-5 (certifying intrusion upon seclusion class and stating "the question of whether a reasonable expectation of privacy exists is an objective one"); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (explaining standard is "objective[]"); *Opperman v. Path, Inc.*, No. 13-cv-0453-JST, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016) (rejecting argument that "an individual inquiry will be required into the subjective expectations of each class member" and certifying class for intrusion upon seclusion claim).

Whether Plaintiffs have a reasonable expectation of privacy can be answered objectively with the same common proof as their contract claim—polices showing that Flo "set an expectation" health information would not be shared. *Facebook Tracking*, 956 F.3d at 602 (plaintiffs' stated intrusion upon seclusion claim based on Facebook's privacy policies); *Brown,* 525 F. Supp. 3d at 1066 (finding reasonable expectation of privacy where "statements suggest that a user's activity in private browsing mode is not saved or linked to the user"); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 621, 631 (N.D. Cal. 2021) (finding reasonable expectation of privacy where the privacy notice "makes specific representations that could suggest to a reasonable user that [defendant] would not engage in the alleged data collection"); *Rodriguez,* 2024 WL 38302, at *5 (holding whether plaintiffs had an "objective, reasonable expectation of privacy . . . is a question capable of resolution class-wide").

Whether a reasonable person would find Flo's conduct highly offensive is also subject to common proof. *See id.* (rejecting argument that deciding whether the intrusion was highly offensive "requires consideration of all the circumstances of intrusion" and explaining that "the central inquiry [is] whether a *reasonable person* would find the intrusion by Google highly offensive") (internal citation omitted) (emphasis in original); *Facebook Tracking*, 956 F.3d at 606 (analyzing whether invasion is "highly offensive to a reasonable person," with a "focus[] on the degree to which the intrusion is unacceptable as a matter of public policy"). The unauthorized disclosure of sensitive health information is uniformly recognized as a highly offensive violation of privacy. *Doe v. Regents of Univ. of California*, No. 23-CV-00598-WHO, 2023 WL 3316766, at *6 (N.D. Cal. May 8, 2023) (finding collection of health information highly offensive because "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person").

[redacted] *See* Section II, pp. 8-10. This is objectively highly offensive, as shown by this common evidence.

**d. CDAFA**

CDAFA requires proof that the Defendants: (a) "knowingly accesses and without permission takes, copies, or makes use of any data from a computer" (Cal. Penal Code § 502(c)(2)); or (b) "knowingly and without permission provides or assists in providing a means" of "accessing a computer, computer system, or computer network in violation of this section." *See* Cal. Penal Code § 502(c)(6); *see also Ticketmaster L.L.C. v. Prestige Ent. W., Inc.,* 315 F. Supp. 3d 1147, 1176 (C.D. Cal. 2018) (finding a defendant violated subsection (c)(6) by providing means for others to "commit violations of . . . other subsections of the CDAFA"). Plaintiffs also must show they "suffer[ed] damage or loss by reason of a violation." Cal. Penal Code § 502(e)(1).

Common evidence will prove each of these requirements. Documents as well as expert testing of the Flo App show [redacted] *See* Section II, pp. 8-10. That Flo's conduct was "without permission" is established by Flo's Privacy Policies, none of which disclose that Flo would share or permit others to access and use Nationwide Damages Class Members' health data. *See Greenley v. Kochava, Inc.,* No. 22-CV-01327-BAS-AHG, 2023 WL 4833466, at *13 (S.D. Cal. July 27, 2023) (finding the "without permission" requirement satisfied where plaintiff "did not 'consent' to Defendant's data collection").

Lastly, all Nationwide Damages Class Members suffered a "loss" that can be established through common proof. *See Rodriguez*, 2024 WL 38302 at *6 (finding that questions of whether plaintiffs' data carried financial value and whether defendants profited from the data could be established "class-wide" and certifying CDAFA class). As Plaintiffs' expert Prof. David Hoffman explained, [redacted] *See* Ex. 121 at [redacted] Indeed [redacted] *Id.* at [redacted] Flo's misappropriation of that valuable data is common harm

sufficient to support CDAFA claims. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 964 (N.D. Cal. 2014) (explaining for the CDAFA "any amount of damage or loss caused by the defendant's CDAFA violation is enough to sustain the plaintiff's claims"). CDAFA does not require Plaintiffs measure the precise loss for each class member to meet this requirement.

**3. Claims Against Ad Defendants**

**a. CDAFA**

Common evidence shows that the Ad Defendants violated CDAFA by knowingly intercepting and using data intercepted from Flo Nationwide Damages Class Members' devices through their SDKs. *See CTI III, LLC v. Devine*, No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508, at *4 (E.D. Cal. May 26, 2022) (explaining CDAFA "does not require *unauthorized* access . . . [but] merely requires *knowing* access"). Ad Defendants' guides and marketing materials show that they knowingly "access" data from computer systems (i.e., mobile devices) through their SDKs. *See* Cal. Penal Code § 502(b)(1) (defining "access" as "to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communication with . . . resources of a computer"). [redacted] Ex. 18 (explaining Meta SDKs access event data); Ex. 11 (same); Ex. 19 (same). [redacted]

**b. Aiding and Abetting Intrusion Upon Seclusion**

An adding and abetting claim requires showing the Ad Defendants: (1) knew Flo's conduct constituted an invasion of privacy and gave substantial assistance or encouragement to Flo, or (2) gave substantial assistance to Flo in accomplishing an invasion of privacy, and that their own conduct, separately constituted an invasion of privacy. *See Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 985 (N.D. Cal. 2015); *see also Opperman,* 2016 WL 3844326, at *3 (certifying class for aiding and abetting intrusion upon seclusion claim). Plaintiffs' claim that the Ad Defendants aided and abetted Flo's intrusion upon their seclusion will be supported by the same common evidence described above: [redacted]

*See* Section II.

**D. The California Subclass**

Plaintiffs seek certification of a California Subclass asserting the same claims as their Nationwide Damages Class (*i.e.*, CMIA, Breach of Contract, Intrusion Upon Seclusion, and CDAFA), against the same Defendants, and two additional California-specific claims. California residents can be identified in Flo's data or through self-identifying individuals. *McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at *7 (C.D. Cal. Jan. 13, 2014) (finding class ascertainable where plaintiff "proposes that class members self-identify their inclusion [in the class] via affidavits" because "[t]he class definition is sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member").

**1. Invasion of Privacy Under the California Constitution Against Flo**

"Because of the similarity of the tests [for constitutional invasion of privacy and common law intrusion claims], courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive. *Facebook Tracking*, 956 F.3d at 601. Given that both claims consider the same elements, Plaintiffs can establish their California Constitution claim using the same evidence discussed in Section II.

**2. Violation of CIPA Against the Ad Defendants**

Common evidence will show the Ad Defendants violated both CIPA's Section 631 and 632. Section 631 "prohibits any person from using electronic means to learn the contents or meaning of any communication without consent or in an unauthorized manner." *Facebook Tracking*, 956 F.3d at 607 (internal quotations omitted). Attempts to intercept and use of intercepted communications are equally forbidden under § 631(a). *Greenley*, 2023 WL 4833466, at *16 (explaining that this section also punishes "persons who attempt to learn in an unauthorized manner the contents of communications passing over any wires, lines, and cables"). Section 632 prohibits unauthorized recording or eavesdropping on confidential communications. *See In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013); *see also In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2022 WL 7869218, at *13 (N.D. Cal. Dec. 22, 2022)

(delineating between § 631's "wiretapping provision" and § 632's "recording provision").

Plaintiffs' CIPA claims present common questions answerable by common proof. Ad Defendants' [redacted] *See* Section II, pp. 2-8. Common evidence also shows that [redacted] *See* Section II, pp. 11-12. Finally, lack of authorization is also a common question that can be answered by Flo's policies, which did not obtain consent to share health information and expressly stated that health information would not be shared with any third parties. *See* Section II, p. 11.

**E. Common Issues Predominate Regarding the Relief Plaintiffs Seek**

Plaintiffs pursuing damages under Rule 23(b)(3) must show the monetary relief they seek is "'capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast Corp. v Behrend*, 569 U.S. 27, 34-35 (2013)); *see also Owino v. CoreCivic, Inc.*, 60 F.4th 437, 447 (9th Cir. 2022) (same). These calculations "need not be exact," *Brown v. Google, LLC*, No. 20-cv-3664-YGR, 2022 WL 17961497, at *5 (N.D. Cal. Dec. 12, 2022) (citing *Comcast*), and "damage calculations alone cannot defeat certification." *Pulaski & Middleman*, 802 F.3d 979, 986 (9th Cir. 2015) (quoting *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). The remedies that Plaintiffs seek for their claims are articulated below.

**1. Statutory Damages**

Plaintiffs seek statutory damages on behalf of the Classes in connection with their CMIA claims against Flo and CIPA claims against the Ad Defendants. The CMIA awards $1,000 per violation. *See* CMIA § 56.36(b)(1). CIPA provides for a statutory minimum judgment of $5,000 per

violation. Cal. Penal Code § 637.2(a); *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13-CV-02468-CAS, 2014 WL 4627271, at *14 (C.D. Cal. Sept. 8, 2014) (explaining "CIPA [] provides for statutory damages upon proof of a privacy violation, without evidence of actual damages" and that "issues of excessive damages are better addressed at a later stage of the litigation").

For each of these claims, damages can be calculated formulaically and on a classwide basis by multiplying the number of violations proven by the amount awarded by the relevant statute. *Kellman v. Spokeo, Inc.*, No. 21-CV-08976-WHO, 2024 WL 2788418, at *11 (N.D. Cal. May 29, 2024) ("Statutory damages are calculated as prescribed by the statutes. What the statute provides is a common question of law, so common questions predominate for the damages analysis []."); *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923, 925 (1994) (affirming trial court's award of the "total of $132,000 in damages [under CIPA], $3,000 for each of 44 specific violations"); *Francies v. Kapla*, 127 Cal. App. 4th 1381, 1385 (Cal. Ct. App. 2005) (affirming trial court's award of CMIA statutory damages). Here, the number of violations can be established based on [redacted] *See, e.g.*, Ex. 27 [redacted]; Ex. 24 (same for Google).

**2. Punitive Damages**

Under California law, punitive damages are available when a defendant acts with oppression, fraud, or malice. *See* Cal. Civ. Code § 3294. Courts have permitted punitive damages where defendants have committed an invasion of privacy. *Jackson v. First Nat'l Bank of Omaha*, No. CV 20-1295 DSF (JCX), 2022 WL 423440, at *9 (C.D. Cal. Jan. 18, 2022) ("California courts and district courts in the Ninth Circuit have recognized punitive damages may be appropriate for common law invasion of privacy claims."); *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 994 (N.D. Cal. 2014) (holding invasion of privacy can support punitive damages).

This presents common questions related to Defendants' conduct that courts recognize are amenable to certification. *Ellis v. Costco Corp.*, 285 F.R.D. 492, 542-44 (N.D. Cal. 2012) (certifying Rule 23(b)(3) class including claim for punitive damages, explaining "the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, . . . the focus of a punitive damages claim is not on facts unique to each class member, but on the defendant's conduct

toward the class as a whole."); *Opperman*, 2016 WL 3844326, at *16 (certifying 23(b)(3) class explaining "punitive damages . . . was best decided on a classwide basis"). This is true here, where the same evidence described above will prove Defendants acted with the requisite intent.

**3. Nominal Damages**

Plaintiffs seek nominal damages for the Classes in connection with their intrusion claims. *Opperman,* 2016 WL 3844326, at *16 (certifying invasion of privacy class for nominal damages); *Stasi v. Inmediata Health Grp. Corp.,* 501 F. Supp. 3d 898, 919 (S.D. Cal. 2020) (explaining the CMIA "provides for nominal damages" without showing "actual damages"); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1299 (S.D. Cal. 2020) (same).

Nominal damages are awarded for "the infraction of a legal right, where the extent of loss is not shown, or where the right is one not dependent upon loss or damage." *Opperman v. Path, Inc.*, 2016 WL 3844326, at *16. An award of nominal damages does not require individualized inquiries because nominal damages are not "intended to compensate a plaintiff for injuries." *Id.* at *16 (explaining "it is precisely 'where the amount of damages is uncertain' that nominal damages may . . . be awarded."). Given this, "several district courts in the Ninth Circuit have certified classes involving claims for nominal damages." *Id.* (collecting cases).

**4. Disgorgement**

It is a foundational principle of California law and federal equitable principles that a defendant shall not benefit from their own wrongdoing. *See Liu v. SEC*, 140 S.Ct. 1936, 1942 (2020) ("[e]quity courts have routinely deprived wrongdoers of their net profits from unlawful activity"); *Facebook Tracking*, 956 F.3d at 600 ("California law requires disgorgement of unjustly earned profits regardless of [plaintiffs' damages].") (emphasis added); *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (Cal. Ct. App. 2014) ("'[T]he public policy of this state does not permit one to "take advantage of his own wrong"' regardless of whether the other party suffers actual damage."). Documents showing the amount of money Flo: (1) [REDACTED] and (2) profited from selling subscriptions to the Flo app while [REDACTED] in violation of its policies, provide common evidence of profits that should be disgorged. *See* Section II, p. 11.

**F. A Class Action Is the Superior Method of Adjudicating This Dispute**

Rule 23(b)(3)'s superiority requirement asks "whether the ends of justice and efficiency are served by certification." *DZ Reserve v. Meta Platforms, Inc.*, No. 3:18-cv-04978-JD, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022). Courts must consider the following factors to determine superiority: (1) the interest of each class member in controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Considering the first factor, courts regularly find superiority where the "risks, small recovery, and relatively high costs of litigation make it unlikely that plaintiffs would individually pursue their claims." *Just Film, Inc.*, 847 F.3d at 1123 (internal citation omitted); *see also DZ Reserve*, 2022 WL 912890 at *9 ("[I]t is not likely for class members to recover large amounts individually if they prevailed. No reasonable person is likely to pursue these claims on his or her own"). Here, Class members' individual damages would likely pale in comparison to the cost of litigation. The remaining factors also weigh in favor of certification: there are no other cases, each Defendant is based in this district, and a class action would be sufficiently manageable given the "variety of procedural tools courts can use to manage the administrative burdens of class litigation" and the objective criteria defining the Classes. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017).

**G. The Proposed Injunction Class Meets Rule 23(b)(2)'s Requirements**

Plaintiffs also seek to certify a nationwide class and a California subclass under Rule 23(b)(2) for injunctive relief in connection with their CIPA, CDAFA, and intrusion upon seclusion claims. Membership in the California subclass can be determined using Flo's data or affidavits as described in Section II, p. 2. Unlike a damages claim, a Rule 23(b)(2) class does not require a showing of predominance or superiority. *In re Yahoo Mail*, 308 F.R.D. at 598. Rather, the class may be certified so long as class members "complain of a pattern or practice that is generally applicable to the class as a whole." *DZ R*eserve, 2022 WL 912890, at *10.

Plaintiffs seek injunctive relief to stop Defendants' ongoing exploitation of health information collected from Class members through the [redacted]

[redacted]

Plaintiffs also seek an injunction that would require Flo to obtain separate, handwritten authorization to disclose Class members' medical information, as required by § 56.11 of CMIA that: (1) states the specific limitations and uses on the types of medical information disclosed (2) provides a specific date when Flo is no longer authorized to disclose the information, and (3) advises the person of their right to receive a copy of the notification. Flo should also be required to delete all data relating to or derived from Plaintiffs' sensitive health information, including any [redacted] Finally, Flo should be ordered to undergo routine, yearly audits to ensure this injunctive relief has been (and remains) implemented. This is necessary given [redacted] Because the relief sought is applicable to the Injunctive Relief Class and Subclass as a whole, certification pursuant to Rule 23(b)(2) is proper.

**a. The Court Should Appoint Class Counsel.**

As demonstrated by Counsel's work thus far in this case, Interim Class Counsel possess the necessary knowledge, experience, and resources to prosecute this matter fairly and effectively. *See* Fed. R. Civ. P. 23(g)(4); Order re Co-Lead Counsel, ECF No. 80 at 1.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted in its entirety.

Dated: August 29, 2024

*<u>/s/ Carol C. Villegas</u>*
Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
David Saldamando (*pro hac vice*)
Danielle Izzo (*pro hac vice*)
Gloria Medina (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**

140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com
dsaldamando@labaton.com
dizzo@labaton.com
gmedina@labaton.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

Diana J. Zinser (*pro hac vice*)
Jeffrey L. Kodroff (*pro hac vice*)
Icee N. Etheridge (*pro hac vice*)
Cary Zhang (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@srkattorneys.com
jkodroff@srkattorneys.com
ietheridge@srkattorneys.com
czhang@srkattorneys.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

Ronald A. Marron (CA Bar 175650)
Alexis M. Wood (CA Bar 270200)
Kas L. Gallucci (CA Bar 288709)
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006

Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**WILLIAMS LAW FIRM**
1632 Homestead Trail
Long Lake, MN 55356
Tel: (612) 940-4452
williamslawmn@gmail.com

William D. Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, OH 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*