LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Michele D. Johnson (Bar No. 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: +1.714.540.1235

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

[Additional Counsel Listed Below]

GIBSON, DUNN & CRUTCHER LLP
ELIZABETH K. MCCLOSKEY (SBN 268184)
*EMcCloskey@gibsondunn.com*
ABIGAIL A. BARRERA (SBN 301746)
*ABarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ERICA FRASCO et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>FLO HEALTH, INC., GOOGLE LLC, FACEBOOK, INC., and FLURRY, INC.,<br><br>                    Defendants. | CASE NO. 3:21-CV-00757-JD (consolidated)<br><br>**DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE WITNESSES FRED LEACH AND GOKSU NEBOL-PERLMAN FROM TESTIFYING AT TRIAL**<br><br>Judge:        Hon. James Donato<br>Court:        Courtroom 11 – 19th Floor<br>Date:         June 12, 2025<br>Time:         10:00 AM |

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND........................................................ 2

LEGAL STANDARD ....................................................................................................................... 4

ARGUMENT .................................................................................................................................... 4

    I.      Trial Will Be Streamlined, Rather Than Disrupted. ........................................................ 5

    II.     Plaintiffs Are Not Prejudiced By The Disclosure. ......................................................... 6

    III.    Plaintiffs Had The Opportunity To Cure Any Perceived Prejudice.............................. 9

    IV.    Meta Was Substantially Justified In Disclosing Mr. Leach And Ms. Nebol-Perlman And Did Not Act In Bad Faith.......................................................................... 10

    V.     Mr. Leach's And Ms. Nebol-Perlman's Testimony Is Important. .............................. 11

CONCLUSION ............................................................................................................................... 12

DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE FRED
LEACH AND GOKSU NEBOL-PERLMAN – Case No. 3:21-CV-00757-JD

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Capitol Recs., Inc. v. MP3tunes, LLC*,
   2014 WL 503959 (S.D.N.Y. Jan. 29, 2014)........................................................................10

*Davis v. Davison Hotel Co.*,
   2013 WL 3337669 (C.D. Cal. July 1, 2013) .........................................................................4

*Dey, L.P. v. Ivax Pharms., Inc.*,
   233 F.R.D. 567 (C.D. Cal. 2005) .......................................................................................10

*Fahmy v. Jay Z*,
   2015 WL 5680299 (C.D. Cal. Sept. 24, 2015)..................................................6, 8, 10, 11

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   2018 WL 6576041 (N.D. Cal. Dec. 13, 2018) .....................................................................9

*Federal Trade Commission v. Meta Platforms Inc.*,
   2022 WL 17553006 (N.D. Cal. Dec. 9, 2022) .....................................................................5

*Griego v. BMW of N. Am. LLC*,
   2024 WL 2021777 (D. Ariz. May 7, 2024) .......................................................................6, 8

*Hoffman v. Constr. Protective Servs., Inc.*,
   541 F.3d 1175 (9th Cir. 2008), *as amended* (Sept. 16, 2008)............................................6

*Innovative Health LLC v. Biosense Webster, Inc.*,
   2025 WL 1090957 (C.D. Cal. Mar. 10, 2025)................................................................6, 7, 9

*Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*,
   2014 WL 104902 (N.D. Cal. Jan. 9, 2014) ..........................................................................9

*Karma Auto. LLC v. Lordstown Motors Corp.*,
   2023 WL 2627756 (C.D. Cal. Feb. 27, 2023).................................................................5, 7, 9

*Lanard Toys Ltd. v. Novelty, Inc.*,
   375 F. App'x 705 (9th Cir. 2010) ................................................................................4, 5, 9

*Leone v. Desert Palace, Inc.*,
   2009 WL 10693584 (D. Nev. June 16, 2009) .......................................................................4

*Nuance Commc'ns, Inc. v. ABBYY Software House*,
   2012 WL 2838431 (N.D. Cal July 10, 2012)......................................................................10

*Ollier v. Sweetwater Union High Sch. Dist.*,
   267 F.R.D. 339 (S.D. Cal. 2010), *aff'd*, 768 F.3d 843 (9th Cir. 2014)..........................11

*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014)...........................................................................................6, 9

*Oskel v. Pardee*,
   2013 WL 1315736 (D. Nev. Mar. 28, 2013).........................................................................4

ii

**TABLE OF AUTHORITIES**
(*Cont'd.*)

Page(s)

*Sabo v. Fiskars Bands, Inc.*,
   2015 WL 12750276 (D. Idaho Dec. 4, 2015) ...............................................................5, 7

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*,
   791 F. Supp. 2d 719 (N.D. Cal. 2011) ......................................................................10, 11

*Vieste, LLC v. Hill Redwood Dev.*,
   2011 WL 2181200 (N.D. Cal. June 3, 2011) ...................................................................8

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
   2012 WL 5932733 (N.D. Cal. Nov. 27, 2012)............................................................4, 11

*Voyager Indem. Ins. Co. v. Miller*,
   674 F. Supp. 3d 765 (N.D. Cal. 2023) .............................................................................9

DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE FRED
LEACH AND GOKSU NEBOL-PERLMAN – Case No. 3:21-CV-00757-JD

**INTRODUCTION**

Nearly three months ago, Meta served its supplemental disclosures identifying two current employees as additional potential witnesses:  (1) Fred Leach, Vice President of Product Management; and (2) Goksu Nebol-Perlman, Vice President of Product Marketing, Monetization.  Meta added these two witnesses to help streamline—***not*** delay—the upcoming trial by minimizing the number of current and former employees that Meta will ultimately have to call as witnesses and to address the recent departure of Meta employees that were identified in Meta's initial disclosures.  Mr. Leach and Ms. Nebol-Perlman would be testifying on the same topics as Meta's previously disclosed witnesses, but Meta believes they can more efficiently cover those topics, thereby replacing 10 to 11 of those witnesses (most of whom Plaintiffs never even bothered to depose).  And even though they cover topics that plaintiffs are well-familiar with based on the discovery conducted in this case, to avoid any potential prejudice to plaintiffs, Meta repeatedly offered to produce Mr. Leach's and Ms. Nebol-Perlman's custodial files and then have them sit for depositions.  But plaintiffs have steadfastly refused those offers and instead waited for nearly three months to file this motion.

Under these circumstances, all of the factors that courts consider when determining whether to permit testimony from newly disclosed witnesses weigh in favor of permitting Meta to call Mr. Leach and Ms. Nebol-Perlman as witnesses at trial.  ***First***, trial will be more efficient, because Meta will be able to call significantly fewer witnesses to cover the same topics.  ***Second***, plaintiffs will not suffer any prejudice, because they have already taken extensive discovery on the topics that Mr. Leach and Ms. Nebol-Perlman are knowledgeable about, and because they never sought to depose any of Meta's previously disclosed employees with similar knowledge in the first place.  Nor can prejudice be established based on the timing of trial alone.  Indeed, courts have permitted testimony from witnesses that were first disclosed just one to two months prior to trial, and here, Mr. Leach and Ms. Nebol-Perlman were disclosed almost five months prior to trial.  ***Third***, if, after reviewing those witnesses' limited documents and taking their depositions, plaintiffs can identify any concrete prejudice (e.g., unfair surprise about some unforeseen testimony), Meta has agreed that plaintiffs can reserve their rights to raise such issues.  ***Fourth***, Meta was substantially justified in disclosing those witnesses to help simplify trial and address recent employee departures.  And ***fifth***, Mr. Leach's and Ms. Nebol-

Perlman's anticipated testimony about, for example, Meta's SDK and how the SDK is used is undoubtedly important. The Court should thus deny plaintiffs' motion to exclude.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

On September 24, 2021, Meta served its initial disclosures, identifying ten current and former Meta employees whom it believed were likely to have discoverable information pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i). *See* Declaration of Elizabeth K. McCloskey ("McCloskey Decl."), Ex. A. Fact discovery closed on April 17, 2023, and expert discovery closed on August 2, 2024. Dkt. 267; Dkt. 462. Plaintiffs never sought to depose any of the ten employees initially disclosed by Meta. McCloskey Decl. ¶ 3.

Between May 2023 and February 2025, half of those ten employees left Meta, with the majority having left between October 2024 and February 2025. McCloskey Decl. ¶ 4. Specifically:

1. Julia Onuchina, former Client Partner based in Dublin, Ireland, left Meta in May 2023;

2. Tatiana Frantsuzenko, former Account Manager for Global Gaming and Client Solutions Manager based in Dublin, Ireland, left Meta in August 2024;

3. Brianna Arroyo, former Client Solutions Manager for Global Marketing Solutions and Strategic Account Manager based in New York, New York, left Meta in October 2024;

4. Oleksii Bagdasarov, former Vertical Lead for Mobile App and Account Manager in Dublin, Ireland, left Meta in November 2024; and

5. Edward Dendievel, former Client Partner based in Warsaw, Poland, left Meta in February 2025.

McCloskey Decl. ¶ 4, Ex. B. Meta had previously disclosed these employees as potentially having information regarding "Flo Health's use of App Events via Facebook SDK, Facebook's Ads Manager, and[/or] Facebook's tools that allow advertisers to target their advertising campaigns." McCloskey Decl., Ex. A.

Meta supplemented its disclosures on February 25, 2025 to include four employees whom plaintiffs had already deposed, as well as Mr. Leach and Ms. Nebol-Perlman. McCloskey Decl., ¶ 6, Ex. B. Mr. Leach and Ms. Nebol-Perlman, were disclosed as potentially having information regarding "Meta's Business Tools (including the Facebook SDK), how advertisers utilize the Business Tools,

Meta's signals integrity systems, and[/or] Meta's policies applicable to advertisers and developers." McCloskey Decl., Ex. B.  When Meta served its supplemental disclosures, it represented it would "make available for deposition any witnesses who were not previously included on Meta's initial disclosures and who were not custodians or previously deposed, assuming plaintiffs agree to allow Meta to depose any witnesses plaintiffs add to their initial disclosures prior to trial." McCloskey Decl., Ex. C.

Plaintiffs first reached out to Meta about its supplemental disclosures on April 7, 2025, asking to meet and confer.  McCloskey Decl., Ex. D.  The parties met and conferred on April 18, 2025. McCloskey Decl. ¶ 10.  While plaintiffs claimed they were prejudiced by the disclosure of Mr. Leach and Ms. Nebol-Perlman given the July trial date, Meta explained they had been added to address topics similar to those for whom Meta had previously disclosed potential witnesses (including many of whom plaintiffs had never even deposed), and that some formerly disclosed witnesses had recently left the company.  *Id*.  Meta explained the challenges and uncertainties of compelling former employees to testify at trial, particularly given their locations.  *Id*.  And Meta reiterated its offer to have Mr. Leach and Ms. Nebol-Perlman sit for depositions and offered to produce any of their custodial documents that (1) hit upon the search terms that the parties had previously negotiated and agreed upon, and (2) were responsive to plaintiffs' document requests.  *Id*.  In response to plaintiffs' concerns about the pending class certification and summary judgment motions, Meta explained that Mr. Leach and Ms. Nebol-Perlman would not impact those motions because Meta would not use their information in connection with those motions—but Meta offered to allow *plaintiffs* to use information from those depositions if they believed they obtained any new information.  *Id*.  Meta encouraged plaintiffs to review Mr. Leach's and Ms. Nebol-Perlman's documents and take their depositions to assess whether any actual, concrete prejudice exists, rather than raise hypothetical concerns about prejudice.  *Id*.  Plaintiffs agreed to consider this proposal.  *Id*.

On April 22, 2025, plaintiffs emailed purporting to summarize the April 18 meet and confer and rejected Meta's proposals. McCloskey Decl., Ex. D.  On May 1, 2025, counsel for Meta responded, clarifying the parties' prior discussion; explaining the limited volume of Mr. Leach's and Ms. Nebol-Perlman's custodial document production and overlapping nature of that production with prior

3

document productions; reiterating its offer to have both individuals "promptly" sit for depositions; and representing it would not object in the unlikely scenario that plaintiffs sought to supplement the record on any pending motions following those depositions. McCloskey Decl., Ex. D. On May 2, 2025, plaintiffs responded by declaring an impasse, and they filed this motion on May 5, 2025. McCloskey Decl., Ex. D.

## LEGAL STANDARD

Recognizing that supplemental disclosures may be necessary as litigation develops, Federal Rule of Civil Procedure 26(e) does not require that a party supplement its disclosures by any particular deadline, only that disclosures must be made "in a timely manner." *Oskel v. Pardee*, 2013 WL 1315736, at *1 (D. Nev. Mar. 28, 2013) ("The rule does not limit the time for supplementation of prior disclosures to the discovery period." (internal citation omitted)). Federal Rule of Civil Procedure 37(c)(1) allows courts to admit testimony of previously undisclosed witnesses where the nondisclosure was "harmless." *Leone v. Desert Palace, Inc.*, 2009 WL 10693584, at *2 (D. Nev. June 16, 2009) ("[L]imiting the automatic sanctions to violations 'without substantial justification,' coupled with the exception for violations which are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations.").

In determining whether a party's nondisclosure is harmless, courts consider the following factors: "(1) prejudice or surprise to the party against whom evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the [witness]." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). Courts also consider "the importance of the evidence to be excluded" and "the validity of the reason offered for failing to timely disclose the evidence" as additional factors in determining whether to exclude the newly disclosed witnesses. *Volterra Semiconductor Corp. v. Primarion, Inc.*, 2012 WL 5932733, at *6 (N.D. Cal. Nov. 27, 2012).

## ARGUMENT

Because all of the relevant factors weigh in favor of finding that Meta's disclosure of Mr. Leach and Ms. Nebol-Perlman is harmless, the Court should deny plaintiffs' request to exclude those witnesses' testimony at trial. Meta does not object to plaintiffs' request that they be permitted to review

those employees' custodial documents that hit upon the parties' previously negotiated search terms and depose them. *See* Mot. at 8; *Davis v. Davison Hotel Co.*, 2013 WL 3337669, at \*3 (C.D. Cal. July 1, 2013) (declining to exclude newly disclosed witnesses given the absence of any showing of "surprise, prejudice, or other unfairness," and concluding "[t]he proper remedy for late disclosure would be to allow plaintiff to take the depositions of these witnesses, not to preclude their testimony entirely"). Indeed, Meta made that very offer to plaintiffs months ago. *See supra* at pp. 3–4.

## I.     Trial Will Be Streamlined, Rather Than Disrupted.

Permitting Mr. Leach and Ms. Nebol-Perlman to testify at trial will streamline the upcoming trial, not disrupt it. *See Lanard Toys Ltd.*, 375 F. App'x at 713 (courts consider "the likelihood of disruption of the trial" when determining whether a party's nondisclosure is harmless). As trial has approached, Meta has been working hard to try and streamline these proceedings. One important way to reduce the length of trial is by not calling all 16 former and current Meta employees identified in Meta's supplemental disclosures as witnesses at trial. Meta believes that it may be possible to instead proceed with calling a total of just five or six current employees, including Mr. Leach and Ms. Nebol-Perlman, which is what motivated the supplemental disclosure. *See* McCloskey Decl. ¶ 11. The efficiencies gained from permitting Meta to call Mr. Leach and Ms. Nebol-Perlman at trial distinguish these circumstances from *Federal Trade Commission v. Meta Platforms Inc.*, 2022 WL 17553006 (N.D. Cal. Dec. 9, 2022), a case cited by plaintiffs. There, the court concluded adding another witness to the "compressed timeline for the hearing on [the plaintiff's motion for] preliminary injunction" would "have a significant impact on the Court's hearing schedule." *Id.* at \*2. In contrast, here, denying plaintiffs' motion would result in fewer witnesses at trial, not more.

While plaintiffs breathlessly claim Meta's disclosure "will upend the entire schedule of this case and, at a minimum, will delay the current trial schedule for all parties" (Mot. at 7), they do not substantiate that assertion. Meta has zero interest in upending the schedule. The fact that Meta disclosed Mr. Leach and Ms. Nebol-Perlman almost five months before trial does not establish that trial will be disrupted—if anything, it demonstrates the *opposite*. *See, e.g.*, *Sabo v. Fiskars Bands, Inc.*, 2015 WL 12750276, at \*8 (D. Idaho Dec. 4, 2015) (no trial disruption when disclosure occurred one month prior to trial); *Karma Auto. LLC v. Lordstown Motors Corp.*, 2023 WL 2627756, at \*3 (C.D.

Cal. Feb. 27, 2023) (trial two months away); *Innovative Health LLC v. Biosense Webster, Inc.*, 2025 WL 1090957, at \*3 (C.D. Cal. Mar. 10, 2025) (same). This is particularly true given that there is no indication plaintiffs have been deprived of any "ability to develop their strategy" for fact or expert discovery. Mot. at 7. To the contrary, plaintiffs previously chose not to depose any of Meta's previously disclosed employees. *See supra* at p. 2. And none of the topics that Mr. Leach and Ms. Nebol-Perlman would testify about at trial are new to plaintiffs. *See supra* at p. 3. Plaintiffs' remaining cited cases are all distinguishable on this basis, because they all involve circumstances where earlier disclosure of the relevant information or witnesses would be expected to have materially impacted the case proceedings based on the very nature of the disclosures themselves. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) (concerning defendant's untimely disclosure of 38 "allegedly relevant and noncumulative" witnesses); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008), *as amended* (Sept. 16, 2008) (concerning plaintiffs' untimely disclosure of damage calculations, including for "multiple state law causes of action").

The Court should reject plaintiffs' attempt to manufacture disruptions to the trial schedule when there are none, particularly since they waited for over two months to bring this motion, during which Mr. Leach and Ms. Nebol-Perlman could have been deposed and their documents produced pursuant to Meta's proposals. *See supra* at pp. 2–4.

## II.    Plaintiffs Are Not Prejudiced By The Disclosure.

Plaintiffs will not be prejudiced if Mr. Leach and Ms. Nebol-Perlman are allowed to testify at trial, as they are addressing the same topics that Meta previously disclosed ***and*** Meta offered to produce their (few) additional documents and then allow plaintiffs to depose them. *See supra* at pp. 2–4. Courts have found a lack of prejudice where the "subject matter" of anticipated testimony from the new witnesses "has been disclosed" and "no new witnesses' testimony is outside the scope of previously noticed testimony." *Griego v. BMW of N. Am. LLC*, 2024 WL 2021777, at \*6 (D. Ariz. May 7, 2024). Courts have also found a lack of prejudice where a new witness is "selected as a substitute" for a formerly disclosed witness that the non-disclosing party never sought to depose. *Fahmy v. Jay Z*, 2015 WL 5680299, at \*9 (C.D. Cal. Sept. 24, 2015). Indeed, at a May 15, 2025 hearing, the Court recently directed Flo to designate a "person most knowledgeable" about the Flo app to testify on topics

6

previously covered by Flo's expert and directed the parties to set up a deposition in advance of trial. Dkt. 604 at 22:15–24:1. There is no reason the parties cannot arrange for Mr. Leach's and Ms. Nebol-Perlman's depositions ahead of trial as well. And far from imposing prejudice, these depositions would offer plaintiffs a leg up on trial preparations, given that plaintiffs chose not depose the other witnesses designated on the same important topics.

While plaintiffs seem to suggest prejudice can be presumed from a failure to disclose potential witnesses prior to the fact discovery deadline alone (*see, e.g.*, Mot. at 5), courts have found a lack of prejudice even when trial is one or two months away. *See, e.g.*, *Sabo*, 2015 WL 12750276, at *8; *Karma Auto. LLC*, 2023 WL 2627756, at *3; *Innovative Health LLC*, 2025 WL 1090957, at *3. For example, in *Sabo*, the plaintiff in a products liability case disclosed a new lay witness a month before trial. 2015 WL 12750276, at *8. The new witness' testimony was expected to consist of his "observations of [plaintiff's] physical condition." *Id.* The court declined to exclude his testimony: "Given the nature of the testimony and the fact that the witness was reve[a]led a month before trial, the Court finds the defense will not be unduly prejudiced and, therefore, the witness will not be excluded based on untimely disclosure." *Id.*

Here, Meta disclosed Mr. Leach and Ms. Nebol-Perlman nearly five months before trial, stating those potential witnesses may know about: (1) "Meta's Business Tools" like the SDK; (2) how advertisers use those tools; (3) "Meta's signals integrity systems"; and (4) "Meta's policies applicable to advertisers and developers." McCloskey Decl., Ex. B. As Meta explained to plaintiffs, these are topics similar to those for which other Meta witnesses were previously disclosed and are topics plaintiffs are well familiar with based on discovery in this case. *See supra* at p. 3; McCloskey Decl., Ex. D. For example, Meta initially disclosed the names of eight employees who may have information about "Facebook's tools that allow advertisers to target their advertising campaigns." McCloskey Decl., Ex. A. That topic includes how advertisers use those tools and the policies that governed that usage, among other things. Yet plaintiffs chose not to depose any of those individuals. *See supra* at p. 2. Instead, plaintiffs deposed Meta's corporate witness pursuant to Rule 30(b)(6), and Meta designated a corporate representative to testify about "the Meta SDK," "Meta's integrity systems," and Meta's "advertising relationship with Flo Health," i.e., topics substantially similar, if not identical, to those

7

that Mr. Leach and Ms. Nebol-Perlman are potentially knowledgeable about.  McCloskey Decl., Ex. E.  And as Meta also explained, Mr. Leach's and Ms. Nebol-Perlman's custodial productions yielded fewer than 50 documents that had not already been produced—most, if not all, of which are substantially similar to documents previously produced to plaintiffs in this case.  McCloskey Decl., Ex. D; *supra* at p. 3.  Because plaintiffs have taken extensive discovery on the topics that Mr. Leach and Ms. Nebol-Perlman may be knowledgeable about, and because plaintiffs never sought to depose Meta's previously disclosed employees with similar knowledge, plaintiffs will not suffer any prejudice if Mr. Leach and Ms. Nebol-Perlman are permitted to testify at trial.  *See Griego*, 2024 WL 2021777, at \*6; *Fahmy*, 2015 WL 5680299, at \*9.

In claiming prejudice nevertheless exists, plaintiffs resort to speculation and mischaracterizing the parties' discussions.  First, plaintiffs claim they "would *likely* have taken a different approach to identifying custodians, seeking documents, noticing depositions, and questioning deponents" had Meta disclosed both potential witnesses earlier.  Mot. at 5 (emphasis added).  But again, it is undisputed that plaintiffs never deposed *any* of the witnesses on Meta's original initial disclosures.  *See supra* at p. 2.  And although Meta offered to produce Mr. Leach's and Ms. Nebol-Perlman's custodial documents and have them sit for depositions, plaintiffs never took Meta up on that offer.  *See supra* at pp. 2–4.  Against this backdrop, plaintiffs' speculation that they may have taken a different approach to discovery falls flat.

Second, plaintiffs claim Meta has purportedly "repeatedly refused to disclose basic facts, like when it learned of the employees' alleged departure prompting this late supplementation."  Mot. at 6.  Not so.  While plaintiffs raised that question during the parties' April 18 meet and confer, plaintiffs rejected Meta's proposal four days later.  McCloskey Decl., Ex. D.  And when Meta responded by encouraging plaintiffs to reconsider their decision, plaintiffs declared an "impasse" and filed this motion shortly thereafter.  McCloskey Decl., Ex. D.  There was thus no "refusal" to provide plaintiffs with information, let alone "repeated[] refusals."

Plaintiffs' cited cases do not help them, either.  None of those cases involved a circumstance where the non-disclosing party was aware of and had taken discovery on the topics that the additional witnesses would testify about.  *See, e.g.*, *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at \*2

8

(N.D. Cal. June 3, 2011) (disclosing parties' "sole defense" was that "Plaintiffs had previously learned the identities of these individuals during discovery"); *Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, 2014 WL 104902, at \*4 (N.D. Cal. Jan. 9, 2014) (disclosing party "d[id] not dispute that the designation of [a new] fact witness on a host of topics after the close of discovery is a surprise"); *Voyager Indem. Ins. Co. v. Miller*, 674 F. Supp. 3d 765, 769 (N.D. Cal. 2023) (argument that non-disclosing party was already familiar with relevant information from new witnesses not raised); *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 6576041, at \*1 (N.D. Cal. Dec. 13, 2018) (similar). As plaintiffs' own cited case explains, "[t]he theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush." *Ollier*, 768 F.3d at 862. Neither surprise nor ambush is present here.

## III.    Plaintiffs Had The Opportunity To Cure Any Perceived Prejudice.

Even if there were any prejudice to plaintiffs, they had every opportunity to cure it (and still could) and chose not to. *See Lanard Toys Ltd.*, 375 F. App'x at 713. Meta made clear it would make Mr. Leach and Ms. Nebol-Perlman available for depositions when it served its supplemental disclosures. *See supra* at pp. 2–4. Meta also offered to complete custodial productions for those two witnesses, which would consist of fewer than 50 documents that were substantially similar to documents plaintiffs had already seen, and allow plaintiffs time to review those materials prior to deposing them. *See supra* at pp. 3–4. And Meta offered to let plaintiffs reserve their rights to raise any claims of concrete prejudice after reviewing the witnesses' documents and taking their depositions. *See supra* at pp. 3–4. Plaintiffs refused those proposals. *See supra* at pp. 3–4. Instead, they chose to sit on Meta's supplemental disclosures for over two months before filing the instant motion, claiming they would now purportedly be forced to "reopen[] discovery . . . in the few weeks remaining before trial." Mot. at 6.

Under these circumstances, plaintiffs' ability to cure any prejudice weighs in favor of denying their motion. *See Karma Auto. LLC*, 2023 WL 2627756, at \*3 ("Because [the newly disclosed witnesses'] testimonies appear limited in scope, and the Court is allowing [plaintiff] the opportunity to depose both individuals, the [ability of plaintiff to cure the surprise] weighs against excluding [the witnesses]."); *Innovative Health LLC*, 2025 WL 1090957, at \*2–3 (finding "the ability [to] cure any

9

prejudice is high" when parties agreed to produce "a limited set of new documents and produce each new witness for deposition," subject to court's ruling on plaintiff's motion to exclude).  The fact that plaintiffs waited for over a month before asking to meet and confer with Meta about its supplemental disclosures, and waited almost another month to file this motion, "indicates [plaintiffs] failed to act promptly in addressing any perceived prejudice or surprise from [Meta's] disclosures."  *Dey, L.P. v. Ivax Pharms., Inc.*, 233 F.R.D. 567, 572 (C.D. Cal. 2005) (declining to preclude plaintiff from introducing evidence where defendant failed to respond to plaintiff's letter describing the proposed evidence and did not ask for an extension of the discovery deadline).  At worst, this factor is neutral, because plaintiffs "ha[ve] not identified any prejudice it has suffered by the timing of the [disclosure]"; the topics of the newly disclosed potential witnesses "cannot be considered a surprise"; and plaintiffs "ha[ve] taken none of these witnesses' depositions," despite being able to do so.  *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 734 (N.D. Cal. 2011) (declining at summary judgment to exclude fact declarations from witnesses not included in plaintiff's disclosures; finding "ability of the proponent of sanctions to cure the surprise" to be "neutral").

**IV.    Meta Was Substantially Justified In Disclosing Mr. Leach And Ms. Nebol-Perlman And Did Not Act In Bad Faith.**

There is no evidence suggesting Meta acted in bad faith or willfully failed to disclose Mr. Leach and Ms. Nebol-Perlman.  Instead, Meta is trying to make trial more efficient by limiting the number of witnesses it will need to call and to address recent employee departures.  *See supra* at pp. 5–6.  Courts regularly find that disclosure of new witnesses after the fact discovery deadline is substantially justified when that disclosure is prompted by the unavailability of previously disclosed witnesses.  *See, e.g.*, *Fahmy*, 2015 WL 5680299, at *9 (finding defendants "were substantially justified in their late disclosure" of a witness that was "selected as a substitute for [a previously disclosed witness]"); *Nuance Commc'ns, Inc. v. ABBYY Software House*, 2012 WL 2838431, at *2 n.4 (N.D. Cal July 10, 2012) (finding "substantially justified" the late disclosures of witnesses intended as replacements for previously designated individuals who had "left the company"); *Capitol Recs., Inc. v. MP3tunes, LLC*, 2014 WL 503959, at *11 (S.D.N.Y. Jan. 29, 2014) (permitting testimony of "substitute corporate representative witnesses" because original corporate representative "left for employment with a

10

competitor"). Plaintiffs' one cited case does not hold otherwise. Rather, the court in that case found the defendants' representation that the 38 newly disclosed and "noncumulative" witnesses "represented changes in personnel . . . since discovery closed" was "clearly incorrect." *Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 339, 343 (S.D. Cal. 2010), *aff'd*, 768 F.3d 843 (9th Cir. 2014) (noting defendants recognized prior statement about personnel changes "was inaccurate"). In other words, contrary to plaintiffs' assertions otherwise, the *Ollier* court did not hold "mere employee departure alone is not a basis for allowing late disclosure." Mot. at 3–4.

Although plaintiffs claim Meta "prematurely" seeks to substitute Mr. Leach and Ms. Nebol-Perlman for those former employees because it has "not demonstrated any attempt to" subpoena them, they fail to cite any authority suggesting that showing is required and simultaneously (and inconsistently) claim Meta purportedly "delayed" seeking supplementation. Mot. at 3–4, 6. Moreover, courts have permitted substitution of witnesses after the close of fact discovery, even absent a showing that the former witnesses could not be subpoenaed. *See, e.g.*, *Fahmy*, 2015 WL 5680299, at *9.

## V.    Mr. Leach's And Ms. Nebol-Perlman's Testimony Is Important.

The importance of Mr. Leach's and Ms. Nebol-Perlman's testimony also weighs in favor of denying plaintiffs' motion. *See, e.g.*, *Volterra Semiconductor Corp.*, 2012 WL 5932733, at *6 (identifying "importance of the evidence to be excluded" as a factor to consider when determining whether to exclude such evidence); *San Francisco Baykeeper*, 791 F. Supp. 2d at 734 (finding at-issue evidence "important to Plaintiff's case," which "weigh[s] against preclusion"). There is no credible dispute that the topics Mr. Leach and Ms. Nebol-Perlman are knowledgeable about are core to this case. For example, Meta's SDK, how the SDK is used, and Meta's policies surrounding use of its SDK go to the heart of plaintiffs' claims and Meta's defenses. *See supra* at pp. 2–3 (identifying relevant topics); *see, e.g.*, Dkt. 64 ¶ 14 (plaintiffs alleging Flo "disclosed its users' highly sensitive health information to the Non-Flo Defendants and other third parties through 'software development kits'"); Dkt. 528 (Meta's summary-judgment motion repeatedly referencing Meta's Business Tools Terms that govern use of its SDK).

While plaintiffs argue Mr. Leach and Ms. Nebol-Perlman are unimportant because their anticipated testimony would not be "unique[]" (Mot. at 4), that is not the test, and plaintiffs cite no

11

authority suggesting it is. To the contrary, evidence can be important even when it "provide[s] *additional* support" for a key issue in the case. *San Francisco Baykeeper*, 791 F. Supp. 2d at 734 (emphasis added) (finding at-issue declarations "are important to Plaintiff's case" because they "provide additional support for Plaintiff's standing"). And plaintiffs provide no evidence suggesting Meta seeks to introduce cumulative testimony by calling Mr. Leach or Ms. Nebol-Perlman at trial. To the contrary, Meta would be able to streamline its presentation at trial by minimizing the number of witnesses it would need to call, not add to that number. As a result, this factor also weighs in favor of denying plaintiffs' motion.

## CONCLUSION

For the reasons discussed above, the Court should deny plaintiffs' request to exclude the testimony of Mr. Leach and Ms. Nebol-Perlman at trial. Alternatively, Meta does not object to plaintiffs' request that they be permitted to review those employees' custodial documents and depose them.

Dated: May 19, 2025

/s/ Andrew B. Clubok
LATHAM & WATKINS LLP
Andrew B. Clubok (*pro hac vice*)
andrew.clubok@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
melanie.blunschi@lw.com
Kristin Sheffield-Whitehead (Bar No. 304635)
kristin.whitehead@lw.com
Catherine A. Rizzoni (Bar No. 322267)
cat.rizzoni@lw.com
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Michele D. Johnson (Bar No. 198298)
michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: +1.714.540.1235

DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE FRED LEACH AND GOKSU NEBOL-PERLMAN – Case No. 3:21-CV-00757-JD

GIBSON, DUNN & CRUTCHER LLP
Elizabeth K. McCloskey (SBN 268184)
Abigail A. Barrera (SBN 301746)
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    415.393.8200
*EMcCloskey@gibsondunn.com*
*ABarrera@gibsondunn.com*

*Counsel for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE FRED LEACH AND GOKSU NEBOL-PERLMAN – Case No. 3:21-CV-00757-JD

## ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.


Dated: May 19, 2025                    GIBSON, DUNN & CRUTCHER LLP


                                       */s/   Elizabeth K. McCloskey*
                                           Elizabeth K. McCloskey

14