# EXHIBIT C
## Reply to Class Cert

1  James M. Wagstaffe (95535)
   **ADAMSKI MOROSKI MADDEN**
2  **CUMBERLAND & GREEN LP**
   P.O. Box 3835
3  San Louis Obispo, CA 93403
   Tel: (805) 543-0990
4  Fax: (805) 543-0980
   wagstaffe@ammcglaw.com
5
   *Counsel for Plaintiffs Erica Frasco*
6  *and Sarah Wellman*

7

8  Carol C. Villegas (*pro hac vice*)
   **LABATON KELLER SUCHAROW LLP**
9  140 Broadway
   New York, NY 10005
10 Tel: (212) 907-0700
   Fax: (212) 818-0477
11 cvillegas@labaton.com

12 *Interim Co-Lead Counsel for*
   *Plaintiffs and the Proposed Class*

   Christian Levis (*pro hac vice*)
   **LOWEY DANNENBERG, P.C.**
   44 South Broadway, Suite 1100
   White Plains, NY 10601
   Tel: (914) 997-0500
   Fax: (914) 997-0035
   clevis@lowey.com

   *Interim Co-Lead Counsel for Plaintiffs and the*
   *Proposed Class*

   Diana J. Zinser (*pro hac vice*)
   **SPECTOR ROSEMAN & KODROFF, P.C.**
   2001 Market Street, Suite 3420
   Philadelphia, PA 19103
   Tel: (215) 496-0300
   Fax: (215) 496-6611
   dzinser@srkattorneys.com

   *Interim Co-Lead Counsel for Plaintiffs and the*
   *Proposed Class*

13

14

15 **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

16

17 ERICA FRASCO, et al., individually and on
   behalf of all others similarly situated,

18

19                    Plaintiffs,

20 v.

21 FLO HEALTH, INC., META PLATFORMS,
   INC., GOOGLE, LLC, and FLURRY, INC.,

22
                      Defendants.
23

24

25    **DOCUMENT FILED UNDER SEAL PURSUANT TO LOCAL RULE 79-5**

26

Case No.: 3:21-cv-00757-JD

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

Date: November 21, 2024
Time: 10:00 a.m.
Location: Courtroom 11, 19th Floor
Judge: Hon. James Donato

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.    There Are No Individualized Issues that Bar Class Certification ............................... 2

        A.    The Statute of Limitations is Not an Individualized Issue .............................. 3

        B.    Defendants' Implied Consent Defense Does Not Create Individualized Issues ................................................................................. 6

        C.    The Sharing of Health Data is Not an Individualized Issue ............................ 7

        D.    Whether the Data is Private is Not an Individualized Issue ............................ 9

        E.    Whether Information Was Shared is Not An Individualized Issue ............... 10

        F.    The Location of CIPA Violations is Not an Individualized Issue ................ 12

        G.    Harm and Damages Are Not Individualized Issues. ..................................... 13

    II.    An Injunctive Class Under Rule 23(b)(2) is Appropriate. .......................................... 14

    III.    Flo's Purported Class Action Waiver is Unconscionable and Unenforceable........... 15

CONCLUSION .................................................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*A.D. v. Aspen Dental Mgmt., Inc.*,
5     No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)................................................ 8, 11

6

*Alba v. Papa John's USA, Inc.*,
    No. CV 05-7487 GAF (CTX), 2007 WL 953849 (C.D. Cal. Feb. 7, 2007) .......................... 13
7

*Baleja v. Northrop Grumman Space & Missions Sys. Corp.*,
8     No. EDCV17235, 2020 WL 3213708 (C.D. Cal. Mar. 26, 2020) ......................................... 3, 5

9

*Berman v. Freedom Fin. Network, LLC*,
10     30 F.4th 849 (9th Cir. 2022)...................................................................................................... 15

11

*In re Brazilian Blowout Litig.*,
    No. CV 10-8452, 2011 WL 10962891 (C.D. Cal. Apr. 12, 2011)........................................ 11
12

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
13     155 F.3d 331 (4th Cir. 1998)....................................................................................................... 3

14

*Brown v. Google, LLC*,
15     No. 20-CV-3664-YGR, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ................................. 6

16

*Brown v. Mortensen*,
    51 Cal. 4th 1052, 253 P.3d 522 (Cal. 2011)........................................................................... 7
17

*Byars v. Sterling Jewelers, Inc.*,
18     No. 5:22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........................................... 8

19

*Cahen v. Toyota Motor Corp.*,
20     717 F. App'x 720 (9th Cir. 2017) ..................................................................................... 8, 11

21

*Calhoun v. Google, LLC*,
    113 F.4th 1141 (9th Cir. 2024)................................................................................................... 6
22

*Campbell v. Facebook Inc.*,
23     315 F.R.D. 250 (N.D. Cal. 2016) ....................................................................................... 7, 10

24

*Civil Beat L. Ctr. for the Pub. Int., Inc. v. Maile*,
    113 F.4th 1168 (9th Cir. 2024), *amended and superseded*, 2024 WL 4295308
25     (9th Cir. Sept. 26, 2024)........................................................................................................ 10

26

*Cordoba v. DIRECTV, LLC*,
27     942 F.3d 1259 (11th Cir. 2019)................................................................................................ 8

28

*Davis v. Lab'y Corp. of Am. Holdings*,
  No. 22-55873, 2024 WL 489288 (9th Cir. Feb. 8, 2024) ........................ 12

*Dinerstein v. Google, LLC*,
  73 F.4th 502 (7th Cir. 2023)........................................................................ 11

*Doe v. FullStory, Inc.*,
  712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..................................................... 12

*Doe v. Mindgeek USA Inc.*,
  702 F. Supp. 3d 937 (C.D. Cal. 2023)........................................................ 14

*Elation Sys., Inc. v. Fenn Bridge LLC*,
  71 Cal. App. 5th 958, 286 Cal. Rptr. 3d 762 (2021)................................. 13

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) ......................................................... 9

*Freedman v. Louisiana-Pac. Corp.*,
  922 F. Supp. 377 (D. Or. 1996).................................................................... 4

*In re Google Inc. Gmail Litig.*,
  No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2024) ........................ 6, 7

*Griffith v. TikTok, Inc.*,
  No. 5:23-cv-00964, 2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ............... 8

*Hale v. Emerson Elec. Co.*,
  942 F.3d 401 (8th Cir. 2019)...................................................................... 12

*Hart v. TWC Prod. & Tech. LLC*,
  Case No. 20-cv-03842-JST, 2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ..................... 6, 10

*Heagney v. John Paul Mitchell Sys.*,
  No. 23-CV-00687-VC, 2023 WL 4947974 (N.D. Cal. Aug. 2, 2023)...................... 5

*Hill v. NCAA*,
  7 Cal. 4th 1 (1994) ...................................................................................... 9

*Huber v. Simon's Agency, Inc.*,
  84 F.4th 132 (3d Cir. 2023)........................................................................... 8

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) ..................................................... 10

*Javier v. Assurance IQ, LLC*,
  No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ......................... 7

*Katz v. U.S.*,
  389 U.S. 347 (1967) .................................................................................... 10

*In re Kia Hyundai Vehicle Theft Litig.*,
    No. 8:22-ml-03052, 2024 WL 2104571 (C.D. Cal. Apr. 22, 2024)......................................... 3

*Lightoller v. Jetblue Airways Corp.*,
    No. 23-cv-00361, 2023 WL 3963823 (S.D. Cal. June 12, 2023)............................................. 11

*Lyansky v. Coastal Carolina Univ.*,
    No. 4:21-CV-1879, 2024 WL 3892540 (D.S.C. May 21, 2024) ............................................. 10

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ................................................................................. 13

*Meyer v. Bebe Stores, Inc.*,
    No. 14-CV-00267-YGR, 2016 WL 8933624 (N.D. Cal. Aug. 22, 2016)................................. 6

*Mikulsky v. Noom, Inc.*,
    No. 2:23-cv-00285, 2024 WL 251171 (S.D. Cal. Jan. 22, 2024) ........................................... 11

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022)............................................................................................... 2, 12

*Opperman v. Path*,
    Case No. 13-cv-00453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016) ............................ 9

*Opperman v. Path, Inc.*,
    205 F. Supp. 3d 1064 (N.D. Cal. 2016) ................................................................................... 6

*Owino v. CoreCivic, Inc.*,
    60 F.4th 437 (9th Cir. 2022)..................................................................................................... 2

*Popa v. Harriet Carter Gifts, Inc.*,
    52 F.4th 121 (3d Cir. 2022).................................................................................................... 12

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015).................................................................................................... 8

*Rodriguez v. Google
LLC*, No. 20-CV-04688-RS, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ........................... 9, 14

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016)................................................................................................ 12

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    498 F.3d 976 (9th Cir. 2007).................................................................................................. 15

*Siqueiros v. Gen. Motors LLC*,
    676 F. Supp. 3d 776 (N.D. Cal. 2023) ............................................................................ 3, 4, 5

*Spence v. Glock*,
    227 F.3d 308 (5th Cir. 2000).................................................................................................. 12

*Stanfield v. Tawkify, Inc.*,
    517 F. Supp. 3d 1002 (N.D. Cal. 2021) ................................................................. 15

*Suski v. Marden-Kane, Inc.*,
    No. 21-cv-04539, 2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ........................... 15

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) .................................................................................... 3

*In re Toll Roads Litig.*,
    No. SACV 16-00262 AG, 2018 WL 4952594 (C.D. Cal. July 31, 2018) ............... 10

*Vasquez v. Leprino Foods Co.*,
    No. 117CV00796AWIBAM, 2020 WL 1527922 (E.D. Cal. Mar. 31, 2020) ........... 8

*Vigil v. Muir Med. Grp. IPA, Inc.*,
    84 Cal. App. 5th 197 (2022) ................................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................. 9

*Ward v. United Airlines, Inc.*,
    No. 19-CV-03423-LB, 2021 WL 534364 (N.D. Cal. Feb. 12, 2021) ..................... 14

*Ward v. United Airlines, Inc.*,
    No. C 15-02309 WHA, 2016 WL 1161504 (N.D. Cal. Mar. 23, 2016) ................... 9

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) .................................................................. 14

*Wilson v. Rater8, LLC*,
    No. 20-cv-01515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .............................. 8

**Statutes**

Cal. Pen. Code § 502(a) ................................................................................................. 13

**Other Authorities**

N.Y. DEPT. OF FIN. SERVS., "Report on Investigation of Facebook Inc. Data Privacy
    Concerns," Feb. 18, 2021, *available at*
    https://www.dfs.ny.gov/system/files/documents/2021/02/facebook_report_20210
    218.pdf .................................................................................................................... 5

"Flo for Partners", *available at* https://flo.health/product-tour/flo-for-partners .......... 12

Rule 23 ................................................................................................................... 2, 3, 12

Rule 23(b)(2) ................................................................................................................. 14

1

## **<u>INTRODUCTION</u>**

2      Despite having eight months to tinker with their opposition, Defendants'[1] arguments remain

3   largely unchanged. Faced with the common set of facts concerning Flo's transmission, and Ad

4   Defendants' ("ADs") automatic interception, of millions of women's health information, Defendants

5   strain to create individualized issues where none exist. This begins with the outlandish proposition

6   that the Constitution precludes class certification because it entitles Defendants to try every Class

7   member's claims individually. Building on this fallacy, Defendants identify several areas they claim

8   require individualized inquiries to resolve. None survive basic scrutiny.

9      First, Defendants' sweeping claim that the statute of limitations entitles them to individually

10  assess when each Class member was on inquiry notice of their claims has already been rejected in

11  this Circuit. Hoping to overcome this legal deficiency, Defendants try to prove the Class had notice

12  with a hodgepodge of blog posts and articles. But these are the same ones the Court found insufficient

13  at the motion to dismiss stage. Worse, Defendants ignore the evidence developed since then showing

14  that they actively concealed their misconduct by lying to journalists and misrepresenting to Class

15  members what actually happened to Flo App data to blunt the impact of the *WSJ's* February 2019

16  article. Such deceptions are fatal to Defendants' statute of limitations argument.

17     Their consent arguments are even less persuasive. According to Defendants, whether and what

18  each Class member agreed to regarding their health information requires asking every Class member

19  a litany of questions about what they knew at each point they used the Flo App. This ignores the fact

20  that the policies governing Plaintiffs' use of the Flo App (and their data) are common to all Class

21  members. Consent can be resolved here, as it is in every other case with common promises made in

22  standard polices, by simply looking at these records. No individualized inquiry is required.

23     Defendants' unfounded demand for personalized proof also permeates their arguments

24  regarding Plaintiffs' privacy, CIPA, and CMIA claims. But it fares no better here, as what is "private"

25  is evaluated under common *objective* standards, and common evidence establishes each element of

26  _____

27  [1] Plaintiffs' Motion for Class Certification (ECF No. 477) is referred to herein as "Mot." All terms have the same meaning as in Plaintiffs' Motion unless stated otherwise. Defendant's Opposition to the Motion (ECF No. 490) and Appendix of Evidence in Support of Opposition (ECF No. 491-3) are referred to herein as "Opp." and "Def. App." respectively. All emphasis is added, and citation and quotation marks are omitted unless otherwise stated.

28

1   Plaintiffs' statutory claims. And while Defendants debate whether Custom App Events ("CAEs") can

2   qualify as health information, whether machines can "read" medical data, or whether Flo App users'

3   data, "identifies" them, the Court can ignore these diversions as each presents a common jury question

4   irrelevant to class certification.

5        Even less credible are Defendants' attacks on their own data. Although reliable enough to run

6   multi-billion-dollar advertising businesses, Defendants claim the CAEs cannot be trusted because

7   they might reflect entries by non-Class members or contain inaccurate information. This is simply

8   unfounded. Other than a *de minimis* number of changes or errors in users' age data (i.e., 12 out of 38

9   million users) and anecdotes of users "click[ing] all the buttons," there is no evidence of widespread

10  data fraud. Indeed, that would defy logic as it would defeat the purpose of the Flo App.

11       Just as this data does not need to be individually validated, Class members do not need to be

12  individually questioned about the harm they suffered to prove classwide damages. Harm can be

13  established using common evidence: records of the CAEs the Flo App transmitted and the number of

14  times ADs intercepted that health data. Mot. at 22. Damages can be calculated from these records

15  using basic math. Mot at 21-22. Defendants' argument that Plaintiffs must prove actual damage or

16  out-of-pocket loss to recover statutory damages under CIPA or the CMIA is just wrong. That is not a

17  real legal requirement, and no case has adopted it.

18       Finally, Defendants' invocation of the class action waiver in Flo's Terms of Use ("TOU")

19  must fail. Mot. at 4. This provision violates California public policy and is wholly unenforceable.

20  Proceeding as a class action does not present a constitutional issue (Opp. at 3) but a basic question of

21  contract law the Court can resolve on a classwide basis now.

22                              **ARGUMENT**

23  **I.      There Are No Individualized Issues that Bar Class Certification**

24       Rule 23 does not require complete uniformity among class members. Rather, to the extent

25  individualized issues exist, they only bar certification if the "non-common, aggregation-defeating,

26  individual issues" are more "prevalent or important" than "common, aggregation-enabling issues."

27  *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 445 (9th Cir. 2022); *Olean Wholesale Grocery Cooperative,*

28  *Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022) (same). That is not the case here.

Common questions predominate in this case given the nature of the alleged violations, which arise from the Flo App's standardized transmission of "app events" defined in computer source code to contain the answers to a uniform set of health survey questions. Mot. at 2-4. Defendants' attempt to overwhelm the analysis by manufacturing individualized issues[2] when none exist fails.

### A. The Statute of Limitations is Not an Individualized Issue

Defendants lead with a bold legal proposition: the statute of limitations precludes class certification because the Court must individually determine *when* each class member was on notice of their claims. Opp at. 7. Not only is this absurd (as it would functionally invalidate Rule 23 in most if not all cases), it is devoid of legal support. "The Ninth Circuit has repeatedly held that the existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones." *Siqueiros v. Gen. Motors LLC*, 676 F. Supp. 3d 776, 821 (N.D. Cal. 2023); *see also Baleja v. Northrop Grumman Space & Missions Sys. Corp.*, No. EDCV17235, 2020 WL 3213708, at *6 (C.D. Cal. Mar. 26, 2020) (noting that Ninth Circuit precedent is "nearly unanimous" in holding that the "statute of limitation to individual class members, including the named plaintiffs, does not preclude certification[.]"). In the only Ninth Circuit case Defendants cite, *In re Kia Hyundai Vehicle Theft Litig.*, No. 8:22-ml-03052, 2024 WL 2104571, at *7 (C.D. Cal. Apr. 22, 2024), the plaintiffs *conceded* their claims were "subject to individualized inquiries" as to the statutory of limitations, and that this defense impacted a "substantial number" of the class members. Neither is true here.[3]

Defendants' argument separately fails because common evidence establishes that the statute of limitations remained tolled by fraudulent concealment for all Class members until at least June 2021.[4] *Siqueiros*, 676 F. Supp. 3d at 820-21 (rejecting defendant's argument that individualized proof

---

[2] Despite Defendants' contention (Opp. at 6), these "individualized issues" are unrelated to Article III standing; at best, they present merits questions irrelevant to the Court's jurisdiction over the action.

[3] It is no wonder that Defendants eschew Ninth Circuit law entirely, in favor of cases like *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006), a facially inapposite action filed decades after news broke about widespread discrimination against African Americans seeking insurance prior to 1973. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998), which decertified a class of franchisees suing over the alleged mismanagement of a common advertising account, is even more off-point as it turned on interclass conflicts and notice issues arising from different versions of franchise documents not present here.

[4] Whether Flo's one-year limitation period is even enforceable (Opp. at 7) presents a common legal argument that fails for the reasons stated in Section III.

would be required) (gathering cases). Flo's policies, which are common to all Class members, repeatedly reassured users that "WE WILL NEVER SHARE…ANY DATA RELATED TO YOUR HEALTH WITH ANY THIRD PARTIES." Ex. 106 to Mot. Class members did not learn the truth until June 2021 when the FTC ordered Flo to send corrective notice. Mot. at 12. This eliminates any potential individualized issues because a jury "can conclude, in one stroke" (*Siqueiros,* 676 F. Supp. 3d at 822) that the limitations period remained tolled.[5]

Defendants desperately try to overcome their concealment by identifying other ways Class members "could have learned about" their misconduct sooner. Opp. at 7. Each attempt fails.

***News Articles.*** Defendants reiterate their failed motion to dismiss argument, claiming that the *WSJ* article discussing data sharing with Meta published six days before the end of the Class period, and several blog posts summarizing its contents, put the entire Class on notice of their claims. Opp. at 7-8.  This surface level analysis is fundamentally flawed.

Defendants ignore false and misleading statements from Flo and Meta that dispel any potential for notice. *Freedman v. Louisiana-Pac. Corp.*, 922 F. Supp. 377, 384, 394 (D. Or. 1996) (a published article about the defective siding did not defeat class certification where the defendant "denied [after publication of the article] that the siding was defective, and instead blamed troubles on improper maintenance."). This includes statements within the *WSJ* article itself. Doubling down on the lies in its policies, Flo falsely reassured users in a statement to the WSJ that it "doesn't send 'critical user data'" to Meta, and that any data it did send was "depersonalized." *See* Def. App. 0688-0694. Meta's spokesperson separately claimed that Meta "doesn't use custom events" it receives, including "the ones that can contain sensitive information." *Id.* Both statements were false. Mot. at 4-10.

Defendants also ignore their affirmative acts of concealment after the *WSJ* article's publication. This includes the ensuing PR blitz, where Flo released public statements challenging the *WSJ*, falsely claiming that it "adhere[s] to all legislation around data privacy," used "Facebook Analytics" for "internal purposes only," and never used "sensitive data" for "advertisement[s]." Ex.

---

[5] Even if the WSJ were the date of notice (and it is not), Plaintiffs' CMIA, CDAFA, breach of contract, and intrusion upon seclusion claims are all timely filed within the applicable statute of limitations.

1   132 at 289.[6] Flo emailed similar misrepresentations directly to Class members, assuring them it only

2   used Facebook Analytics "internally" to "improve app functionality" and that it takes "every step to

3   ensure" its users' "privacy rights are protected." Ex. 133 at 363. These claims were false (Mot. at 10-

4   11), and with the statements in the WSJ article, negate any notice.

5       Defendants try to overcome their affirmative concealment by pointing to 250 "email[s]" to

6   Flo "customer support" complaining about its data practices. Opp. at 8. Even assuming these Class

7   members read the *WSJ* article, and that the article can somehow be construed as providing notice (it

8   does not), they at best represent a *de minimis* portion of the 38 million-person class; this is insufficient

9   to deny class certification. *See Siqueiros*, 676 F. Supp. 3d at 824 (finding that even if "some absent

10  class members may have had actual notice of their claims," this statute of limitation issue "does not

11  defeat class certification"); *Baleja,* 2020 WL 3213708 at *6 (explaining that even "a substantial

12  number" of time barred claims does not "preclude certification").

13      ***NYSDFS Investigation.*** Defendants argue that an investigation by the New York Department

14  of Financial Services into Flo's transmission of health data to Facebook also triggered inquiry notice.

15  Opp. at 8. But Defendants misleadingly ***omit*** that the report was not published until February 2021—

16  one month ***after*** Plaintiffs filed this case—and therefore irrelevant to the statute of limitation.[7]

17      ***Articles About Unrelated Apps.*** Defendants cite to three articles completely divorced from

18  this case: (1) a WSJ article about an app called "Glow" that let people who "kn[o]w a user's email

19  address access that person's data" (Def. App. 0730); (2) a *EuroNews* article suggesting Flo may not

20  delete user data when requested (Def. App. 0740); and (3) a 2013 Privacy Rights Clearinghouse article

21  ***predating Flo's existence*** discussing 43 other apps' privacy policies. Def. App. 708-11. None of these

22  even hint at Flo's transmission, or the ADs' interception, of health data through SDKs and cannot

23  trigger notice for these claims. *See Heagney v. John Paul Mitchell Sys.*, No. 23-CV-00687-VC, 2023

24  WL 4947974, at *2 (N.D. Cal. Aug. 2, 2023) (articles discussing different conduct by different

25  companies do not defeat the discovery rule).

26

27  [6] Exhibits 132 through 135 cited in this Reply are attached to the Declaration of Diana J. Zinser.

    [7] *See* N.Y. Dept. of Fin. Servs., "Report on Investigation of Facebook Inc. Data Privacy

28  Concerns," Feb. 18, 2021, *available at*
    https://www.dfs.ny.gov/system/files/documents/2021/02/facebook_report_20210218.pdf.

1    ***Generalized Policies***. Finally, Defendants argue that references to the ADs in Flo's policies,

2    and statements about data generally in the ADs' policies, trigger inquiry notice. Opp. at 8-9.[8] But

3    these common polices are too vague and misleading to start the statute of limitations. The statements

4    in Flo's policies to the ADs, for instance, falsely claim that Flo only shares "personal" data—but not

5    health information—to "help provide, understand and improve [its] application." *See* Def. App. 1510,

6    1519. Flo's May 2018 privacy policy goes even further, promising that "information regarding your

7    marked cycles" "pregnancy" and "other information that is ***entered by you***" will not be shared with

8    anyone. Def. App. 1519. These lies are the opposite of notice.

9         Meta's and Google's policies are even more obtuse, referring to "activity" or "information"

10   collected from undisclosed third-party apps unrelated to Flo. Opp. at 9. Courts routinely find such

11   generalized statements insufficient for inquiry notice. *See Opperman v. Path, Inc.*, 205 F. Supp. 3d

12   1064, 1074 (N.D. Cal. 2016) (finding that "a reasonable jury could find that [defendant's] Privacy

13   Policy provisions do not explicitly address—and thus do not obtain knowing consent for" the specific

14   misconduct that "the Plaintiffs are complaining about in this lawsuit"); *Calhoun v. Google, LLC*, 113

15   F.4th 1141, 1150 (9th Cir. 2024) (finding "a reasonable user would not necessarily understand that"

16   they consented to "the data collection at issue" where defendant's "Privacy Policy" only made

17   "broad[]" disclosures about its practice). This Court should do the same.

18        **B.  Defendants' Implied Consent Defense Does Not Create Individualized Issues**

19        Defendants' implied consent arguments fare no better. Opp. at 10-11. Far from identifying a

20   "full panoply of disclosures," *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL

21   1102660, at *19 (N.D. Cal. Mar. 18, 2024),[9] Defendants argue that any Class member who used the

22   Flo App after the February 2019 *WSJ* article automatically consented to their misconduct. But even

23

24   _____

     [8] These common policies do not create individual issues because they present terms that apply to the
25   whole Class. *See Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 WL 8933624, at *6 (N.D.
     Cal. Aug. 22, 2016) (explaining agreements with the same "material" terms are common evidence).

26   [9] The other cases Defendants cite are similarly distinguishable. In *Hart v. TWC Prod. & Tech. LLC*,
     Case No. 20-cv-03842-JST, 2023 WL 3568078, at *11 (N.D. Cal. Mar. 30, 2023), it was "undisputed"
27   that the defendant's privacy policy "explicitly disclosed the practices at issue;" not so here. And in
     *Brown v. Google, LLC*, No. 20-CV-3664-YGR, 2022 WL 17961497, at *18 (N.D. Cal. Dec. 12,
28   2022), implied consent was supported by media and academic reports, as well as survey evidence,
     which Defendants have not offered here.

1    if the *WSJ* article could somehow provide notice (it does not), a single article, published 6 days before

2    the end of the Class period, is insufficient to imply consent by millions of Flo App users. *See*

3    *Campbell v. Facebook Inc*., 315 F.R.D. 250, 266 (N.D. Cal. 2016) (explaining "one example" source

4    is a "far cry" from *Gmail* and insufficient to establish individualized notice issues predominate).

5    Further undermining Defendants' argument, Flo claims it removed the ADs' SDKs shortly after the

6    *WSJ* article. Ex. 134 at 739. Class members' use of the Flo App after the alleged misconduct ceased

7    cannot retroactively provide consent for Defendants' earlier violations.[10] Finally, as with their express

8    consent argument, Defendants ignore that their post-*WSJ* article misinformation campaign negates

9    any potential for consent, implicit or otherwise. *See* Section I.A.

10            **C.  The Sharing of Health Data is Not an Individualized Issue**

11            Plaintiffs' Motion establishes, through common evidence, that each Class member entered

12    menstruation and/or pregnancy information in the Flo App, triggering the transmission of at least one

13    CAE containing health information. *See* Mot. at 3; Ex. 121 to Mot. at 36-37 (the 12 CAEs qualify as

14    "health information" under multiple definitions).

15            Defendants argue that determining whether CAEs convey health information requires parsing

16    "each user's" specific "responses" to the "onboarding questions." Opp. at 12. This is wrong.

17    Irrefutable evidence establishes that Flo programs the CAEs, defining their names and data

18    parameters in its source code. *See* Ex. 5 to Mot. at ¶¶58, 60, 62-68; Ex. 17 to Mot. at 107:11-13; Ex.

19    20 to Mot. at 46:6-19. As a result, the CAEs at issue *always* contain health information for every

20    Class Member. Mot. at 4-8; Ex. 5 to Mot. at ¶¶68-72, 110; Ex. 121 to Mot. at 36-37. Knowing which

21    buttons each user clicked *in the app* is irrelevant to this analysis. Defendants' contention that some of

22    the 12 CAEs do not convey health information (Opp. at 12-13) presents common fact question for the

23    jury, not a bar to class certification. SJ Order, ECF No. 485 at 2 (explaining whether the 12 CAEs are

24

25

---

26    [10] Retroactive consent is not a defense for CIPA or privacy torts. *See Javier v. Assurance IQ, LLC*,
      No. 21-16351, 2022 WL 1744107, at *1-2 (9th Cir. May 31, 2022). Moreover, the CMIA does not
27    allow for implied consent at all, as it requires written authorization. *Brown v. Mortensen*, 51 Cal. 4th
      1052, 1070-71, 253 P.3d 522, 533 (Cal. 2011) (explaining this requirement is "detailed and
28    demanding").

1    "health information" are "questions of fact").[11]

2        The ADs' destruction of the underlying "raw" data intercepted from the Flo App is also not a

3    bar to class certification. Opp. at 13. The record establishes: (1) that each Class member triggered at

4    least one actionable CAE (Mot. at 6-7); and (2) that the Flo app transmitted these CAEs to ADs (*id.*

5    at 3) who intercepted that information, as reflected by aggregate data they retained. Mot. at 4-5. These

6    facts are sufficient to prove liability and provide a methodology for calculating *aggregate* damages

7    at the class certification stage. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987-88 (9th

8    Cir. 2015) (explaining "plaintiffs must be able to show that their damages stemmed from the

9    defendant's actions that created the legal liability," but need not "rely upon a classwide damages

10   model to demonstrate predominance."). Which "combination" of CAEs (Opp. at 13) each Class

11   member triggered is relevant only to individual damages, i.e., to determine *how much* each Class

12   member should recover, based on the number of violations. Such damages questions do not defeat

13   certification, especially where, as here, they can be easily answered by Class Members through a

14   claims process using the data in their Flo App. *See Vasquez v. Leprino Foods Co.*, No.

15   117CV00796AWIBAM, 2020 WL 1527922, at *18 (E.D. Cal. Mar. 31, 2020) (the need to "assess[]

16   the number of the class members' on-call breaks" for "determining liability and calculating damages"

17   does not defeat predominance where the "common question is whether [defendant's] policies and

18   practices effectively placed the class members on call during meal breaks").[12]

19   _____

20   [11] Defendants' reliance on cases concerning non-actionable data that were dismissed at the pleading
     stage is misplaced as these decisions have no impact on whether the CAEs here contain health
21   information. *See* Opp. at 14 (citing  *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL
     4119153, at *8 (N.D. Ill. Sept. 9, 2024) (general searches for healthcare providers); *Wilson v. Rater8,*
22   *LLC*, No. 20-cv-01515, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (transmittal of appointment
     date)); Opp. at 12 (citing *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017)
23   (vehicle data); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686, at *3 (C.D.
     Cal. Apr. 5, 2023) (activity on a jewelry website)).

24   [12] Defendants' cited cases are inapposite as they involve attempts to certify classes that contained
     uninjured members, or where a statutorily defined harm could not be proven with common evidence.
25   Opp. at 14. *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964, 2024 WL 4308813, at *8 (C.D. Cal. Sept. 9,
     2024) denied certification of a class of users of multiple websites, some of which did not involve
26   sensitive data. The Court in *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 157-58 (3d Cir. 2023)
     remanded certification of a FDCPA class to the district court to decide whether the statutory element
27   of "financial consequences" required an "individualized inquiry." And *Cordoba v. DIRECTV, LLC*,
     942 F.3d 1259, 1276 (11th Cir. 2019) vacated certification because "the bulk of the unnamed
28   members" did not have standing.

### D.  Whether the Data is Private is Not an Individualized Issue

Whether information is "private" is evaluated under an "objective" standard based on the expectations of a "reasonable person." *Opperman v. Path*, Case No. 13-cv-00453-JST, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016); *Rodriguez v. Google* LLC, No. 20-CV-04688-RS, 2024 WL 38302, at *6 (N.D. Cal. Jan. 3, 2024) (same). A jury can answer that question for all CAEs on a common, classwide basis. Undeterred, Defendants claim whether the 12 CAEs are "private" can only be determined through "mini-trials on each user's statements and conduct." Opp. at 15. They are wrong as a matter of law.

Moreover, Defendants are not entitled to demand individual trials on issues—like subjective privacy views—that are legally irrelevant to the Class's claims. *See Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2016 WL 1161504, at *4 (N.D. Cal. Mar. 23, 2016) (finding the "numerous individualized circumstances" that the defendant raised are "irrelevant" because plaintiff's "claims will not rely on" them). This fundamentally differs from cases like *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366-67 (2011), where the relevant statute created a "detailed remedial scheme" entitling employers to individually rebut claims of "adverse" action due to discrimination.[13] There is no analogous, statutorily created, individual right, in this case.

Defendants fail to identify a single case holding otherwise. Their privacy cases merely confirm that consent is a defense. *See* Opp. at 15 (*Hill v. NCAA*, 7 Cal. 4th 1, 26 (1994) (explaining there is no expectation of privacy when there is "voluntary consent")); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 933 n.5 (N.D. Cal. 2015) (same). However, Defendants ignore that this defense will be evaluated on a classwide basis, by considering the terms in Defendants' common policies. *See* Section I.A. There are no individual issues that could require separate trials.

This is also true for Plaintiffs' CIPA or CMIA claims which turn on common, statutory

---

[13] Defendants' attempt to create a need for individual trials based on Plaintiffs' testimony highlights this discrepancy. Opp. at 13, 16. Unlike *Dukes*, where the plaintiffs Title VII claims necessarily involved individualized defenses regarding the specific pattern of discrimination applied to them, Plaintiffs' claims here are involve objective privacy, statutory, and contractual standards that focus on the Defendants' conduct. Mot. at 21-23. The cherry-picked depositions references Defendants cite to focus on facts irrelevant to this analysis, such as whether Plaintiffs read Flo's privacy policies, or (quite normally) mentioned their period or pregnancy to friends, that even if true, have no bearing on any of Plaintiffs' claims. Opp at 16-17. This is not a reason to hold individual trials.

9

elements that can be evaluated on a classwide basis. Mot. at 14-15, 20-21. Defendants' attempt to manufacture individualized privacy defenses (Opp. at 15-17) based on Class members' subjective views about the CAEs fails for the same reasons discussed above. *See* p. 9, *supra*.

Defendants' individualized damages argument is even more off base. Opp. at 15. CIPA and the CMIA both explicitly provide for statutory damages. Mot. at 22. Defendants are, therefore, not entitled to individually litigate whether each Class member suffered actual damages as a defense to either claim. Their attempt to create that right by grafting the statutory factors the *Campbell v. Facebook Inc.* court used to evaluate damages awards under the Federal Wiretap Act onto CIPA, which does not contain similar language, must be rejected. 315 F.R.D. at 268-69.

Defendants' related argument that Plaintiffs cannot prove damages under CIPA unless they show that someone at Defendants read each Class member's individual data is also meritless. Opp. at 22. Neither CIPA nor CMIA imposes a human-reading requirement.[14] Defendants' use of machine learning systems to "read" and "view" *all* Flo App data they encountered is just as unlawful. Mot. at 10-11. Any challenge to this *legal* theory presents a common question that supports class certification.

Defendants' remaining cases address a slew of unrelated issues, such as claims involving First or Fourth Amendment rights not implicated here,[15] or concerning information that unlike this case was clearly not private, and thus not protected. Opp. at 16 (citing *Lyansky v. Coastal Carolina Univ.*, No. 4:21-CV-1879, 2024 WL 3892540, at *15 (D.S.C. May 21, 2024) (CV sent to a college); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (password to a gaming account)).

**E.  Whether Information Was Shared is Not An Individualized Issue**

As discussed in Section I.C, common evidence shows that each Plaintiff and Class member

---

[14] *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 222 (2022) does not create one. There, the plaintiffs asserted CMIA claims arising from data breach caused by a rogue employee who stole certain medical records. Whether this employee's conduct violated the CMIA, and for whom, turned on which records this individual "viewed" or "used." That is not a concern here.

[15] Opp. at 16 (citing *Katz v. U.S.*, 389 U.S. 347, 351 (1967) (ruling on contours of the Fourth Amendment); *Civil Beat L. Ctr. for the Pub. Int., Inc. v. Maile*, 113 F.4th 1168, 1178-79 (9th Cir. 2024), *amended and superseded*, 2024 WL 4295308 (9th Cir. Sept. 26, 2024) (evaluating whether categorical sealing of all medical records violated the First Amendment); *In re Toll Roads Litig.*, No. SACV 16-00262 AG, 2018 WL 4952594, at *7 (C.D. Cal. July 31, 2018) (evaluating constitutional right to privacy); *Hart*, 2023 WL 3568078, at *1 (same)).

1    had their identifiable health information transmitted to ADs. Defendants nonetheless argue that class

2    certification is improper because (1) the information ADs intercepted is not "identifiable", or (2) even

3    if it is, Plaintiffs cannot prove that all of the data Class members entered into the Flo App is "about

4    them" as opposed to someone else. Opp. at 18-19. Both arguments are nonsensical.

5       As this Court recognized in denying Google's summary judgment motion, whether the data

6    Flo transmitted, or that the ADs intercepted, is "identifiable" presents a fact question that will be

7    answered by a jury. SJ Order, ECF No. 485 at 3. Given the common evidence regarding Flo's

8    transmission of CAEs with multiple personal identifiers, and the systems the ADs used to identify

9    users and monetize that data (Mot. at 7-8) this question is answerable on a classwide basis.

10   Defendants' related standing challenge, which assumes users *cannot* be identified, fails for the same

11   reason (Opp at 18-19): this same common evidence will prove harm on a classwide basis.[16]

12      Defendants' speculation that Class members "may share devices or reset their device

13   identifiers" such that they lack standing because the data Flo transmitted was not "about them" (Opp.

14   at 18) lacks support and must be rejected. *See In re Brazilian Blowout Litig.*, No. CV 10-8452, 2011

15   WL 10962891, at *8 n.10 (C.D. Cal. Apr. 12, 2011) (refusing to consider arguments that lack "any

16   evidentiary support" on class certification). There is no evidence, for example, that multiple Flo App

17   users shared accounts, or logged data about other women's menstrual cycle under their profile. This

18   is not surprising as that would defeat the purpose of using the Flo App.

19      Defendants' related attack on the reliability of their own data fails for a similar reason: there

20   is no evidence that "many" Class members "entered fake data or data about someone else," such that

21   individual inquires would be required to determine who was harmed. Opp. at 19. At most,

22   Defendants—despite having all the data—identify 12 out of 38 million users who they contend

---

23   [16] The cases Defendants cite for this proposition are of no moment as they deal with information that

24   was clearly not actionable because it was either public, not private, or aggregate. Opp. at 18-19 (citing
     *Lightoller v. Jetblue Airways Corp.*, No. 23-cv-00361, 2023 WL 3963823, at *4 (S.D. Cal. June 12,

25   2023) (flight pricing information is not personal information); *Cahen*, 717 F. App'x at 724
     (concerning only "aggregate" and "non-individually identifiable" vehicle data); *Dinerstein v. Google,*

26   *LLC*, 73 F.4th 502, 513 (7th Cir. 2023) (actually anonymized and de-identified data); *Mikulsky v.
     Noom, Inc.*, No. 2:23-cv-00285, 2024 WL 251171, at *5 (S.D. Cal. Jan. 22, 2024) (dismissing

27   complaint for lack of allegations that the user was identifiable in any way); *Aspen Dental*, 2024 WL
     4119153, at *8 (searching or booking appointments on a dentist's website is not protected under the

28   CMIA)).

---

1    entered suspicious ages. Opp. at 18 (citing Ex. 1 to Mot. at 20) (**three** Class members changed their

2    age); Def. App. 810, 1209 (**nine** Class members entered ages between 102 and 623). Even if true, this

3    is *de minimis* and plainly insufficient to invalidate *all* Flo App data or create issues for standing or

4    harm. *See Davis v. Lab'y Corp. of Am. Holdings*, No. 22-55873, 2024 WL 489288, at *2 n. 1 (9th

5    Cir. Feb. 8, 2024) ("[Defendants'] allegation that some potential class members may not have been

6    injured does not defeat commonality at this time); *Olean*, 31 F.4th at 669 (Rule 23 permits

7    certification of a class that potentially includes more than a de minimis number of uninjured class

8    members); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) (same)).

9        Defendants' citation to anecdotal accounts of users who "click[] all buttons" (Def. App. 1501),

10    or an isolated instance where Plaintiffs' expert's husband entered information into the App do not

11    move the needle. *Id.* (citing Def. App. 470-71, 508, 512-13). Nor does Flo's claim that roughly 15%

12    of Flo app users are men (Def. App. 1501-02, 1667) as there is no evidence they did anything other

13    than view their partners' data in the App.[17]

14                **F.    The Location of CIPA Violations is Not an Individualized Issue**

15        Defendants argue that Plaintiffs cannot meet CIPA's requirement that the interception

16    "occurred" in California with common evidence. Opp. at 22-23. They are wrong. Plaintiffs put forth

17    common evidence showing (1) all ADs are based in California, where they designed their SDKs and

18    use the data intercepted through that technology; and (2) that Flo's location data shows which users

19    were in California. *See* Mot. at 2, 7. This is sufficient. [18] *See Popa v. Harriet Carter Gifts, Inc.*, 52

20    F.4th 121, 131 (3d Cir. 2022) (explaining interception occurs on the user's "browser" not "where the

21    signals were received" on "servers"); *Doe v. FullStory, Inc.,* 712 F. Supp. 3d 1244, 1260 (N.D. Cal.

22    2024) (finding the "[i]nterception in California" requirement sufficiently pled based on "allegations

23    regarding the practice, the interception, and the use of the data *in California* by [defendant], which is

---

24    [17] The percentage of Flo App users that are men may be explained by Flo's introduction of "partner

25    mode," which allowed women to share their cycle information with their partners, for example, if
       they were trying to conceive. *See* "Flo for Partners", *available at* https://flo.health/product-tour/flo-

26    for-partners.

27    [18] The two cases Defendants cite have nothing to do with CIPA's territorial reach. *See* Opp. at 23
       (citing *Hale v. Emerson Elec. Co.,* 942 F.3d 401, 402, 404 (8th Cir. 2019) (holding fraud on

28    consumers occurs where they are located); *Spence v. Glock*, 227 F.3d 308, 312 (5th Cir. 2000)
       (explaining "economic loss" from "defective goods" occurs where the goods are purchased)).

1    based in California"). Defendants' focus on where they ultimately store the data is irrelevant (Opp. at

2    23), but in any event it is a common question based on common evidence.[19]

3            Separately, Defendants' attempt to manufacture individualized location issues based on the

4    fact that people travel fails. Opp. at 22. There is no evidence that any California Plaintiff or Class

5    member exclusively used the Flo App out-of-state, such that they would not have standing to pursue

6    California claims. Any other generalized, hypothetical travel is, therefore, irrelevant.

7            **G. Harm and Damages Are Not Individualized Issues.**

8            Each Plaintiff and Class member suffered privacy harms that are provable by common

9    evidence. *See* Section I.E. Defendants try to negate this by claiming (1) certain Plaintiffs could not

10   fully articulate the harm they suffered when deposed; and (2) Plaintiffs' expert Professor Hoffman is

11   not an economist. Opp. at 20. The former is not a basis to deny certification, *Alba v. Papa John's*

12   *USA, Inc.*, No. CV 05-7487 GAF (CTX), 2007 WL 953849, at *6 (C.D. Cal. Feb. 7, 2007) (rejecting

13   defendants' interpretation of testimony that is ambiguous and is taken out of context), and the latter

14   is an argument for a *Daubert* motion. Defendants' related claim that they have a "right" to "test"

15   whether Class members were "harmed in a way different from the supposed invasion" of privacy to

16   support this assertion (*id*) is meritless as discussed above. See p. 9-10, *supra*.

17           Defendants' argument that Plaintiffs must show *actual damages* on a classwide basis is also

18   meritless. Opp. at 20. Fundamentally, *none* of Plaintiffs' claims require proof of actual damage or out

19   of pocket loss. *See Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1259 (N.D. Cal.

20   2022) ("Nominal damages may be properly awarded for the violation of a contractual right because

21   failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct from the actual

22   damages."); *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 966, 286 Cal. Rptr. 3d 762,

23   769 (2021) (rejecting Defendants' authority that breach of contract requires actual damages as not the

24   law in California); SJ Order, ECF No. 485 at 4-5 (rejecting Google's argument that CDAFA requires

25   proof of "loss of income" or other "actual" injury beyond privacy violation) (citing Cal. Pen. Code §

26

27

28   [19] Plaintiffs object to Defendants' use of information about the location of their servers, as Plaintiffs
     requested this information during fact discovery and Defendants refused to produce it.

13

1   502(a).[20] Defendants' reliance on cases where plaintiffs' claims required such elements is irrelevant.

2   Likewise, there is no support for Defendants' argument the Court must first ascertain "whether" there

3   were "any actual damage[s]" (Opp. at 20) before awarding statutory damages under CIPA or the

4   CMIA. Mot. at 21-22; p.10, *supra*.

5   **II.    An Injunctive Class Under Rule 23(b)(2) is Appropriate.**

6       Contrary to Defendants' assertions, the injunctive relief Plaintiffs seek is neither moot nor

7   disconnected from Plaintiffs' claims. On the contrary, ADs admit that they still keep data related to

8   the CAEs, and thus Class members' sensitive health data continues to be exploited. *See* Opp. at 24.

9   An injunction ordering the destruction of this data is necessary to halt Defendants' ongoing violations

10  of the law. The same is true of Plaintiffs' demand that Flo implement improved consent protocols and

11  undergo routine audits confirming it does not continue to share health data. Indeed, record evidence

12  suggests that Flo is continuing to do so today, just through different means (i.e., server to server). *See*

13  Ex. 110 to Mot. at '418 (Flo preferring "server-to-server integration" because "nobody can detect s2s

14  activity"); Ex. 135 at 874 (Flo and Google working on the "Server-to-server" solution in March 2020);

15  Ex. 111 to Mot. at '171 (Meta and Flo "[a]ttempted to work through Appsflyer" so that there are "less

16  issues for journalists"); Ex. 126 to Mot. at '145-46 (Flo stating in February 2020 that "we have S2S

17  integration with FB"). Defendants' claim that injunctive relief is improper because "this case is about

18  money" just ignores the law. Opp. at 24. Many cases certify both damages and injunctive relief

19  classes, especially when both are necessary to provide comprehensive relief. *See Doe v. Mindgeek*

20  *USA Inc.*, 702 F. Supp. 3d 937, 954 (C.D. Cal. 2023) (rejecting argument that certification "under

21  both "(b)(3) and (b)(2) would be inappropriate because the case is primarily about money" where

22  "compensating class members" and "protecting them from future harm" would be "well-served by

23  both damages and an injunction"); *see also Rodriguez*, 2024 WL 38302, at *10 (certifying both

24  23(b)(3) and 23(b)(2) classes); *Ward v. United Airlines, Inc.*, No. 19-CV-03423-LB, 2021 WL

25  534364, at *7 (N.D. Cal. Feb. 12, 2021) (same).

26

27  _____

    [20] Defendants cite *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018), but that
    case acknowledged CDAFA's "loss or damage" requirement could potentially be satisfied through
28  allegations that the data "had value."

1  ### III.    Flo's Purported Class Action Waiver is Unconscionable and Unenforceable.

2        Flo's purported class action waiver is not a bar to class certification because it presents a

3  common legal question of enforceability answered through common evidence. The Court can and

4  should invalidate this provision now for at least two reasons.

5        *First*, the waiver provision is unconscionable. Flo's TOU is an obvious contract of adhesion

6  "imposed" on one party without an "opportunity to negotiate." *Shroyer v. New Cingular Wireless*

7  *Servs., Inc.*, 498 F.3d 976, 983 (9th Cir. 2007). The class action waiver is buried at the end of the

8  agreement, under the heading "MISCELLANEOUS" and disguised within the paragraph as plain text.

9  *See Stanfield v. Tawkify, Inc.*, 517 F. Supp. 3d 1002, 1006 (N.D. Cal. 2021) (finding provision that

10  was a "needle in a haystack" in a "single sentence" and not "bolded" unconscionable). The undeniable

11  purpose of this hidden provision is to immunize Flo from potential liability by deterring users, who

12  would have to pay out of pocket to litigate small dollar claims, from pursuing relief. *See Suski v.*

13  *Marden-Kane, Inc.*, No. 21-cv-04539, 2022 WL 3974259, at *4 (N.D. Cal. Aug. 31, 2022) (class

14  action waiver "not coupled with an arbitration" where plaintiffs' claims "predictably involve small

15  amounts of damages" is unconscionable). The availability of statutory damages does not change this

16  analysis. *See*, *e.g.*, *id*. at 1067-68.

17        *Second*, the waiver is unenforceable because Flo cannot show conspicuous notice of these

18  terms. The welcome screen Flo relies on for implied notice could not have been seen by Class

19  members because it did not exist until ***after*** the Class Period. Def. App. 1563. The only other screen

20  Flo cites fails to provide notice under the very Ninth Circuit precedent Flo relies on because it (1)

21  contains hyperlinked terms that are not off set, (2) which are buried within a paragraph of text in the

22  same font (App. 1559), (3) does not provide a check box or text clearly informing users of their

23  agreement, and (4) purports to confirm agreement through button at the bottom of the screen labeled

24  "Next." *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857-58 (9th Cir. 2022) (explaining

25  "underscore[ed]" terms, that are not in all caps, and a large button stating "continue" off-set by

26  "several intervening lines" does not "give rise to constructive notice.").

27                            ### CONCLUSION

28        Plaintiffs' Motion should be granted in its entirety.

---

15

1  Dated: October 24, 2024                 /s/ Diana J. Zinser
2                                          Diana J. Zinser (*pro hac vice*)
                                           Jeffrey L. Kodroff (*pro hac vice*)
3                                          **SPECTOR ROSEMAN & KODROFF, P.C.**
                                           2001 Market Street, Suite 3420
4                                          Philadelphia, PA 19103
                                           Tel: (215) 496-0300
5                                          Fax: (215) 496-6611
                                           dzinser@srkattorneys.com
6                                          jkodroff@srkattorneys.com

7                                          *Interim Co-Lead Counsel*
8                                          *for Plaintiffs and the Proposed Class*

9                                          Carol C. Villegas (*pro hac vice*)
                                           Michael P. Canty (*pro hac vice*)
10                                         Danielle Izzo (*pro hac vice*)
                                           **LABATON KELLER SUCHAROW LLP**
11                                         140 Broadway
                                           New York, NY 10005
12                                         Tel: (212) 907-0700
                                           Fax: (212) 818-0477
13                                         cvillegas@labaton.com
                                           mcanty@labaton.com
14                                         dizzo@labaton.com

15                                         *Interim Co-Lead Counsel*
                                           *for Plaintiffs and the Proposed Class*
16
                                           Christian Levis (*pro hac vice*)
17                                         Amanda Fiorilla (*pro hac vice*)
                                           **LOWEY DANNENBERG, P.C.**
18                                         44 South Broadway, Suite 1100
                                           White Plains, NY 10601
19                                         Tel: (914) 997-0500
                                           Fax: (914) 997-0035
20                                         clevis@lowey.com
                                           afiorilla@lowey.com
21
                                           *Interim Co-Lead Counsel*
22                                         *for Plaintiffs and the Proposed Class*

23                                         Ronald A. Marron (CA Bar 175650)
                                           Kas L. Gallucci (CA Bar 288709)
24                                         Alexis M. Wood (CA Bar 270200)
                                           **LAW OFFICES OF RONALD A. MARRON**
25                                         651 Arroyo Drive
                                           San Diego, CA 92103
26                                         Tel: (619) 696-9006
                                           Fax: (619) 564-6665
27                                         ron@consumersadvocates.com
28

kas@consumersadvocates.com
alexis@consumersadvocates.com

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**WILLIAMS LAW FIRM**
1632 Homestead Trail
Long Lake, MN 55356
Tel: (612) 940-4452
williamslawmn@gmail.com

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, OH 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION          Case No. 3:21-cv-00757-JD