1 | Brenda R. Sharton (*Admitted Pro Hac Vice*)
DECHERT LLP
2 | One International Place, 40th Floor
100 Oliver Street
3 | Boston, MA  02110-2605
Telephone:  (617) 728-7100
4 | Facsimile:  (617) 275-8374
brenda.sharton@dechert.com
5 |
Benjamin M. Sadun (Bar No. 287533)
6 | DECHERT LLP
US Bank Tower
7 | 633 West 5th Street, Suite 4900
Los Angeles, CA  90071-2032
8 | Telephone:  (213) 808-5700
Facsimile:  (213) 808-5760
9 | benjamin.sadun@dechert.com

10 | Theodore E. Yale (*Admitted Pro Hac Vice*)
DECHERT LLP
11 | 2929 Arch Street
Philadelphia, PA 19104
12 | Telephone:     (215) 994-4000
Facsimile:       (215) 655-2455
13 | theodore.yale@dechert.com

14 | *Attorneys for Defendant Flo Health, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ERICA FRASCO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,<br><br>Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**DEFENDANT FLO HEALTH, INC.'S TRIAL BRIEF**<br><br>CONSOLIDATED COMPLAINT FILED: September 2, 2021<br><br>Dept.: Courtroom 11 – 19th Floor<br>Judge: Honorable James Donato |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1
II. PLAINTIFFS' CLAIMS WILL FAIL ...................................................................................2
    A. California Constitutional Invasion of Privacy ...........................................................2
    B. Common Law Invasion of Privacy - Intrusion Upon Seclusion ...........................................3
    C. Breach of Contract ....................................................................................................4
    D. Confidentiality of Medical information Act ("CMIA") .........................................................4
    E. Theories of Damages ................................................................................................8
III. FLO WILL PREVAIL ON ITS AFFIRMATIVE DEFENSES .......................................................8
    A. Statute of Limitations ................................................................................................8
    B. Consent ...................................................................................................................10
IV. CONCLUSION...................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
    223 F.3d 1010 (9th Cir. 2000) ...................................................................................................4

*Blake v. Mosher*,
    54 P.2d 492 (Cal. App. 1936) ..................................................................................................10

*Brown v. Google LLC*,
    525 F. Supp. 3d 1049 (N.D. Cal. 2021) ................................................................................2, 3

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ...................................................................................................7

*Campbell v. Facebook, Inc.*,
    No. 13-cv-5996 (N.D. Cal. May 18, 2016) ............................................................................7, 8

*Carlsen v. GameStop, Inc.*,
    112 F. Supp. 3d 855 (D. Minn. 2015) .......................................................................................2

*Crossley v. California*,
    479 F. Supp. 3d 901 (S.D. Cal. 2020) .......................................................................................2

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) .....................................................................................................6

*Folgelstrom v. Lamps Plus, Inc.*,
    125 Cal. Rptr. 3d 260 (Ct. App. 2011) ......................................................................................3

*Fox v. Ethicon Endo-Surgery, Inc.*,
    110 P.3d 914 (Cal. 2005) .......................................................................................................8, 9

*Gonzales v. Uber Techs., Inc.*,
    305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................................................................................3

*In re Google Location Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019) ......................................................................................2

*In re Google*,
    2013 WL 1283236 (N.D. Cal. 2013) .........................................................................................3

*In re Hulu Priv. Litig.*,
    2014 WL 1724344 (N.D. Cal. 2014) .........................................................................................6

*In re iPhone Application Litigation*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................................................................................3

*Jolly v. Eli Lilly & Co.*,
  751 P.2d 923 (Cal. 1988) ..................................................................................................... 9

*Kent v. Microsoft Corp.*,
  2013 WL 3353875 (C.D. Cal. 2013) ................................................................................ 10

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................... 2, 3, 4

*NYC Topanga, LLC v. Bank of Am.*,
  2015 WL 4075844 (C.D. Cal. July 2, 2015) .................................................................... 10

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017) ......................................................................... 6, 10

*Wilson v. Rater8, LLC*,
  2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ..................................................................... 6

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................................... 10

*Yoon v. Lululemon USA, Inc.*,
  2021 WL 3615907 (C.D. Cal. 2021) .................................................................................. 2

**Constitutions, Statutes, and Rules**

Cal. Civ. Code § 56.05 .............................................................................................................. 5, 6, 7

Cal. Civ. Code § 56.06 .............................................................................................................. 5, 6, 7

Cal. Civ. Code § 56.10 ....................................................................................................................... 7

Cal. Civ. Code § 56.16 ....................................................................................................................... 6

Cal. Civ. Code § 3515 ...................................................................................................................... 10

California Constitution Article 1, § 1 ........................................................................................... 1, 2

Fed. R. Civ. P. 23(b)(3) ..................................................................................................................... 1

**Model Jury Instructions**

CACI 303 ........................................................................................................................................... 4

CACI 360 ........................................................................................................................................... 8

CACI 1800 ......................................................................................................................................... 3

CACI 3945 ......................................................................................................................................... 8

Ninth Circuit Model Civil Jury Instructions § 5.6 ............................................................................. 8

## I. INTRODUCTION

The Flo App (the "App"), developed by Flo Health, Inc. ("Flo"), is the world's leading period and fertility tracker. This is a privacy cause brought by users of the App against Flo and third-party analytics providers ("Analytics Defendants") who developed SDKs Flo used to monitor and improve the App. Plaintiffs allege Flo misrepresented its data-sharing practices and shared purported "health information" with third parties. Importantly, it is undisputed that Flo did not share users' direct inputs with anyone and that Flo did not share personal information such as users' names, emails, or addresses. Rather Plaintiffs allege Flo indirectly revealed information about their periods and/or pregnancy via custom app events and that information is personally identifiable because it is linked to alphanumeric device identifiers.

On May 19, 2025, the Court certified under Fed. R. Civ. P. 23(b)(3) a nationwide class of people who entered menstruation and/or pregnancy information into the App from November 2016 through February 2019 and a similarly defined California subclass. The nationwide class brings three claims against Flo: (1) common law invasion of privacy, (2) breach of contract, and (3) statutory claims under the California Confidentiality of Medical Information Act ("CMIA"). The California subclass also asserts a privacy claim under Article 1, Section 1 of the California Constitution. Plaintiffs seek statutory damages of $1,000 per person in CMIA damages, nominal damages on their contract and invasion of privacy claims, and punitive damages on their invasion of privacy claims. The other claims and theories asserted in Plaintiffs' Complaint have either been dismissed or abandoned by Plaintiffs, including UCL claims, claims under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), unjust enrichment, disgorgement, and injunctive relief.

Plaintiffs will not be able to prove essential elements of *any* of their claims for numerous reasons, but most importantly because every version of the Flo Privacy Policy, which all App users were presented with and *affirmatively* consented to before they could even begin using the App, disclosed that (1) Flo would use user data to perform analytics to monitor and improve the App; (2) Flo would share user data with third-party analytics companies, (including disclosing Meta and Google by name); and (3) Flo could use de-identified or aggregated data for any purpose. Plaintiffs' CMIA claims are also fatally flawed for numerous reasons, most significantly that providing a free app that allows users to track *self-reported* fertility information in no way, shape, or form makes it a "provider of healthcare" under the statute as it existed

1  during the 2016-2019 class period.

2      Even if Plaintiffs could prove the elements of their claims (they cannot), they would still be barred from recovery by two ironclad affirmative defenses. First, Plaintiffs consented to the challenged conduct by agreeing to Flo's Terms of Service ("TOS") and Privacy Policy, which, as just explained, clearly disclosed Flo's use of SDKs and third-party analytics. Second, Plaintiffs' claims are barred by the statute of limitations because every version of the Flo TOS included an explicit one-year limitations period. Yet Plaintiffs did not file suit until <u>two</u> years after the challenged conduct unquestionably ceased and became nationwide news. And, because of that accompanying widespread publicity, Plaintiffs could not possibly meet their burden to toll the statute of limitations via the discovery rule.

## II.     PLAINTIFFS' CLAIMS WILL FAIL

### A.     California Constitutional Invasion of Privacy

    Plaintiffs assert a privacy claim under Article 1, Section 1 of the California Constitution on behalf of a California subclass. As an initial matter, Cal. Const. Art. 1, § 1 "***identifies mere principles and does not create a private right of action.***" *Crossley v. California*, 479 F. Supp. 3d 901, 918 (S.D. Cal. 2020) (emphasis added) (collecting cases). Thus, even if Plaintiffs could prove Flo violated that section, it does not entitle Plaintiffs to recover a money judgment against Flo.

    Where courts have entertained such claims, however, "Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1075 (N.D. Cal. 2021). This is a "high bar," *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), Plaintiffs cannot meet.

    *First*, Plaintiffs do not have a reasonable expectation of privacy that an app will not use third-party analytics to track where they go *within the app. See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 2021 WL 3615907, at *9 (C.D. Cal. 2021); *In re Google Location Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019); *Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855, 865 (D. Minn. 2015) (no reasonable expectation that "disclosure of … PII is not standard practice for sites using a Facebook SDK"), *aff'd,* 833 F.3d 903 (8th Cir. 2016). This is especially so where, as here, Flo explicitly disclosed its use of third-party analytics.

    *Second*, most, if not all, Plaintiffs did not maintain a reasonable expectation of privacy in their

pregnancy and/or period data because they publicly posted such information online, including on Facebook itself. They also continued to use the App after learning of the alleged conduct. Plaintiffs cannot claim an invasion of privacy where they have not acted "consistent[ly] with an actual expectation of privacy." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1091 (N.D. Cal. 2018).

***Third***, using standard SDKs for app analytics is not an egregious breach of social norms. To the contrary, nearly all apps use SDKs, and "routine commercial behavior" cannot provide a basis for an invasion of privacy claim. *Folgelstrom v. Lamps Plus, Inc.*, 125 Cal. Rptr. 3d 260, 265 (Ct. App. 2011). Indeed, this Court has observed: "SDKs are part of our modern life. There is nothing unjust about using an SDK." 5/5/2022 Hrg. Tr. at 10:2-3. Courts have repeatedly concluded that similar behavior is not highly offensive. *E.g.*, *In re Google*, 2013 WL 1283236, at *11 (N.D. Cal. 2013) (dismissing invasion of privacy claim where defendant allowed third parties to obtain plaintiffs' PII, transmit it without encryption, and track PII); *Low*, 900 F. Supp. 2d at 1025 (dismissing claim where LinkedIn disclosed to third parties users' numeric LinkedIn ID and LinkedIn browsing histories that could be de-anonymized by recipients); *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (alleged disclosure of "the unique device identifier number, personal data, and geolocation information from Plaintiffs' [d]evices"). The jury will no doubt find the same.

**B.  Common Law Invasion of Privacy - Intrusion Upon Seclusion**

To prevail on this claim, Plaintiffs must prove (1) that they had "a reasonable expectation of privacy"; (2) that Flo "intentionally intruded" into their zone of privacy; (3) that the "intrusion would be highly offensive to a reasonable person"; (4) that Plaintiffs were "harmed"; and (5) that "[Flo's] conduct was a substantial factor in causing [Plaintiffs'] harm." CACI 1800. The reasonable expectation of privacy and "highly offensive" elements are functionally the same as for constitutional privacy claims, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021), and fail on this claim for the same reasons set out in the preceding section. Plaintiffs will also not be able to prove they suffered any actual "harm"—to the contrary, they have repeatedly disclaimed any physical, emotional, or economic injury. Nor can they prove that Flo's use of common SDKs in line with industry norms was a "substantial factor" in their injuries as opposed to, for example, alleged misuse of the app event data by Meta or Google for machine learning or other purposes.

### C.    Breach of Contract

"Under California law, to state a claim for breach of contract a plaintiff must plead [1] the contract, [2] plaintiffs' performance (or excuse for nonperformance), [3] defendant's breach, and [4] damage to plaintiff therefrom." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012); *accord, e.g.*, CACI 303. Plaintiffs must also prove [5] that Flo's "breach of contract was a substantial factor in causing [Plaintiffs'] harm." CACI 303.

Here, there is no question that Flo's TOS and Privacy Policy constitute a binding contract. The most significant area of disagreement is whether Flo breached that contract. Plaintiffs claim that Flo breached promises not to share information about users' "health." However, as set forth herein (and in more detail in Flo's Motion for Summary Judgment, ECF No. 624-1 at 4-7), every version of the Flo Privacy Policy explicitly permitted Flo to use third-party analytics to monitor and improve the App and permitted Flo to share de-identified information for any purpose. And most versions even identified recipients like Google and Meta *by name*. Presented with these facts, no reasonable jury would find that Flo breached its contract by using SDKs in precisely the manner it said it would.

In addition, contract damages must be "appreciable and actual." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000). "Nominal damages, speculative harm, or threat of future harm do not suffice…." *Low*, 900 F. Supp. 2d at 1028. Here, however, Plaintiffs have explicitly disclaimed any theory of actual damage. Flo recognizes that the Court has rejected this argument based on contrary opinions from the intermediate California Court of Appeal. ECF No. 605. Flo respectfully disagrees and preserves the issue. If the breach were itself a sufficient injury, then the "harm" or "damages" element reflected in CACI 303 and hundreds of cases would be superfluous. Nevertheless, Flo will adhere to the Court's instructions at trial.

### D.    Confidentiality of Medical information Act ("CMIA")

The CMIA has been amended several times since the class cutoff of February 2019, but it is undisputed that those changes are not retroactive. Thus, this case is governed by the version of the statute in effect during the class period. Because it is designed to regulate healthcare providers and target only a specific kind of information, the statute is quite detailed with many interrelated parts. Put simply, however, to prevail on their claims, Plaintiffs need to prove three things, each of which has multiple elements.

*First*, Plaintiffs need to prove that the information at issue (i.e., the custom app events) is "medical information," which is a precisely defined term of art. Cal. Civ. Code § 56.05(j) (2014 version). To be "medical information," the information must be (1) "individually identifiable," meaning it "includes or contains any element of personal identifying information sufficient to" "reveal [an] individual's identity"; (2) "regard[] a patient's medical history, mental or physical condition, or treatment; and (3) be "in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor." The term "provider of healthcare" is also precisely defined:

> "Provider of health care" means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code; any person licensed pursuant to the Osteopathic Initiative Act or the Chiropractic Initiative Act; any person certified pursuant to Division 2.5 (commencing with Section 1797) of the Health and Safety Code; any clinic, health dispensary, or health facility licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. "Provider of health care" does not include insurance institutions as defined in subdivision (k) of Section 791.02 of the Insurance Code.

*Id.* § 56.05(m). In plain English, a provider of healthcare is a licensed doctor, clinic, or hospital.

None of these elements are satisfied. Most importantly, <u>none</u> of the information entered into or generated by the Flo App is "in possession of or derived from a provider of health care" because ***Flo is not a healthcare provider*** and lay users enter the information directly into the App based on their own experience and observation rather than from a provider of healthcare. Indeed, the Flo TOS clearly tells users, front and center in all caps:

> THE COMPANY IS NOT A LICENSED MEDICAL CARE PROVIDER AND THE APP IS NOT INTENDED TO REPLACE PROFESSIONAL MEDICAL ADVICE OR DIAGNOSE, TREAT OR MANAGE ANY ILLNESS OR MEDICAL CONDITION, SERVE AS A BIRTH CONTROL METHOD OR CONTRACEPTION.

*E.g.*, ECF No. 95-1 § 7.

Plaintiffs cannot circumvent this definition by claiming that Flo is "deemed to be a provider of health care subject to the requirements of [the CMIA]" under Cal. Civ. Code § 56.06(a) or (b) and maintains information derived from itself. This argument is both circular and contrary to the plain language of the statute. That provision applies to a business or software provider that "maintain[s] medical information, ***as defined in subdivision (j) of Section 56.05***." Cal. Civ. Code § 56.06(b) (2015 version) (emphasis added). And 56.05(j) only refers to actual healthcare providers, not entities "deemed" healthcare provider subject to the *duties* imposed by the CMIA. Thus, the statute applies to software (such as an insurance app) that

-5-

stores actual medical records generated by doctors, not apps like Flo that collect information from lay users.

That the CMIA did not apply to pregnancy and fertility tracker apps like Flo from 2016 through 2019 (including through § 56.06) is underscored by the fact that *the California legislature amended the statute in 2023 to prospectively add fertility apps to the CMIA*. That amendment expanded the definition of CMIA "medical information" to include "reproductive or sexual health application information," defined as "information about a consumer's reproductive health, menstrual cycle, fertility, pregnancy, pregnancy outcome, plans to conceive, or type of sexual activity collected by a reproductive or sexual health digital service." 2023 Cal. Legis. Serv. Ch. 254 (A.B. 254) (codified at Cal. Civ. Code § 56.05(j), (q), (r). It also added a new provision to § 56.06 extending the CMIA to companies such as Flo that "offer[] a reproductive or sexual health digital service to a consumer for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual." *Id.* § 56.06(e). That the legislature <u>expanded</u> the statute to include Flo and similar apps conclusively proves that the pre-amendment version did not apply to them.

Even leaving that massive gap in Plaintiffs' case aside, custom app events are not individually identifiable because they are linked only to alphanumeric device IDs—not real-world identities. *See, e.g.*, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985-86 (9th Cir. 2017) (holding that device identifiers are not "personally identifiable information" because "an ordinary person could not use the information" to "identify [a particular] individual"); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 949 (N.D. Cal. 2017), *aff'd,* 745 F. App'x 8 (9th Cir. 2018) (similar); *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *7 (N.D. Cal. 2014) (the "ordinary meaning" of the phrase "identifies a person" means "the disclosure must be pegged to an identifiable person (as opposed to an anonymous person)"). Nor do the app events directly regard medical history, treatment, or physical condition. Rather, they are purely navigational browsing data. *Cf. Wilson v. Rater8, LLC*, 2021 WL 4865930, at *1, *5 (S.D. Cal. Oct. 18, 2021) ("[p]laintiff's name, cellular telephone number, treating physician names, medical treatment appointment information, and medical treatment discharge dates and times" are not "medical information under the CMIA"); Cal. Civ. Code § 56.16 (CMIA does not apply to disclosures concerning, *inter alia*, "a general description of the reason for treatment" or "the general condition of the patient").

**Second,** Plaintiffs must prove that the CMIA applied to Flo. To do so, they must prove either that

Flo is either an actual medical provider (as defined above) or that Flo is "deemed" to be a provider of healthcare under Cal. Civ. Code § 56.06(b). There is no question that Flo is not an actual provider of healthcare. Instead, Plaintiffs rely on Cal. Civ. Code § 56.06(b), which requires them to prove Flo is:

> [1] a "business that offers software or hardware to consumers … [2] that is designed to maintain medical information, as defined in subdivision (j) of Section 56.05, [3] in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of [4a] allowing the individual to manage his or her information, or [4b] for the diagnosis, treatment, or management of a medical condition of the individual.

Cal. Civ. Code § 56.06(b). At a minimum, Plaintiffs cannot prove the App is "designed to maintain medical information" because, as explained above, the App does not store medical information *as defined by the CMIA* or that the App's purpose to "manage" information or diagnose, treat, or manage a medical condition.

***Third,*** Plaintiffs must prove Flo violated the CMIA by (1) "disclos[ing] medical information," (2) "regarding a patient of the provider of health care [i.e., Flo]," (3) "without first obtaining an authorization." Cal. Civ. Code § 56.10(a). Plaintiffs cannot prove any of these elements. As just discussed, Flo did not disclose medical information. Plaintiffs are also not Flo's "patients." Under the CMIA, "'[p]atient' means any natural person, … who received health care services from a provider of health care and to whom medical information pertains." Cal. Civ. Code § 56.05(k). Plaintiffs did not receive "health care services" from Flo because Flo does not provide health care services. And Flo's disclosure was not unauthorized because Plaintiffs consented to Flo's sharing of app events. *See infra* Part III.B.

In the unlikely event that the jury concludes Plaintiffs satisfy all these elements, the Court will need to determine which, if any, class members should be awarded statutory damages applying the discretionary *Campbell* factors. As Judge Hamilton observed in *Campbell v. Facebook, Inc.*, No. 13-cv-5996 (N.D. Cal. May 18, 2016), "statutory damages are not to be awarded mechanically." *Id.* at *26. Rather, the court must decide "whether to either award the statutory sum or nothing at all," to prevailing plaintiffs. *Id.* (collecting cases). This approach was endorsed by the Ninth Circuit on appeal in the same case. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1113 (9th Cir. 2020) (discussing court's analysis that discretionary review of statutory damages precluded class certification). In exercising that discretion, the Court should "weigh[] several factors, including: (1) the severity of the violation, (2) whether or not there was actual damage to the plaintiff, (3) the extent of any intrusion into the plaintiff's privacy, (4) the relative financial burdens of

the parties, (5) whether there was a reasonable purpose for the violation, and (6) whether there is any useful purpose to be served by imposing the statutory damages amount." *Campbell* at *26 (collecting cases).

### E. Theories of Damages

In addition to CMIA statutory damages, Plaintiffs also seek nominal and punitive damages. Nominal damages are discretionary, not mandatory. CACI 360 ("If you decide that [name of defendant] breached the contract but also that [name of plaintiff] was not harmed by the breach, you **may** still award [him/her/nonbinary pronoun/it] nominal damages…." (brackets original, emphasis added)). "Nominal damages may not exceed one dollar." Ninth Circuit Model Civil Jury Instructions § 5.6. Thus, the jury can award anywhere from $0.00 to $1.00 per person.

To recover punitive damages, Plaintiffs must prove Flo acted "with malice, oppression, or fraud." CACI 3945. Here, Plaintiffs are not entitled to punitive damages because they can prove none of these. Flo's intention in using SDKs was to improve the App for users; it had neither intent nor knowledge that using these perfectly ordinary tools used by nearly all apps could compromise user privacy. Flo's conduct was not "oppressive" because it was neither "despicable" nor did it impose "cruel and unjust hardship" on Plaintiffs. *See id.* To the contrary, Plaintiffs suffered *no* real-world harm from Flo's conduct and seek only to recover based on violation of their legal rights. *See* ECF No. 605 at 30 n.14. And, because Flo's use of SDKs was anything but hidden, Flo did not act with "fraud" either.

## III. FLO WILL PREVAIL ON ITS AFFIRMATIVE DEFENSES

### A. Statute of Limitations

As noted above, it is undisputed that the TOS is a valid contract between Flo and all users of the Flo App. It is also undisputed that every version of the TOS expressly stated that: "[a]ny cause of action you may have with respect to your use of the App **must be commenced within one (1) year** after the claim or cause of action arises." ECF No. 95-1 § 22 (emphasis added). (The Court has rejected Plaintiffs' argument that this provision is unenforceable. *See* ECF No. 605 at 14).

There can be no dispute that Plaintiffs' claims are facially untimely. The challenged conduct ceased in February 2019— as evidenced by Plaintiffs' own proposed class cutoff date of February 28, 2019—and that the first Complaint against Flo was filed nearly **two** years later on January 29, 2021. ECF No. 1.

Accordingly, ***Plaintiffs bear the burden to prove California's discovery rule applies***. *Fox v.*

*Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920-21 (Cal. 2005). To do so, they must prove "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 110 P. 3d at 920-21. Importantly, "[a] plaintiff need not be aware of the specific 'facts' necessary to establish the claim …. Once the plaintiff has a suspicion of wrongdoing … she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928 (Cal. 1988).

Plaintiffs have mostly testified that they discovered Flo's alleged sharing in early 2021, but they have never explained *how* they discovered it, which means they will not be able to show why they could not have discovered it before. In any event, Plaintiffs' theory will unquestionably fail on the second element because a diligent plaintiff had *ample* opportunity to discover Flo's alleged data sharing well before the limitations clock ran out. These include:

1. Every user was presented with and assented to the Flo Privacy Policy that told them that Flo collected and shared certain kinds of user data with analytics providers and other third parties. A diligent Plaintiff would have had at least a "suspicion" that this would include alleged health information. Critically, this does <u>not</u> require the jury to find the Privacy Policy completely or accurately described the alleged data sharing. The issue of *notice* is distinct from the issue of consent. In other words, the jury could plausibly find that the Privacy Policy did not accurately disclose Flo's conduct (which it did) but still find it put user on notice that conduct was possible.

2. In February 2019, allegations that Flo shared users' information with Facebook became literal front-page nationwide news, first through the *Wall Street Journal*, *see* ECF 95-4, and then through <u>hundreds</u> of other news repeating the allegations. *See* ECF No. 95-5. It would have been impossible for a diligent plaintiff to miss this information.

3. This massive news coverage led to various other kinds of public coverage and awareness as well, including hundreds of user complaints and inquiries to Flo, statements by members of congress and government agencies, app store reviews, social media posts, Wikipedia articles, and more. Again, all of which serve both to demonstrate that diligent members of the public could have (and did) learn of the alleged conduct and to provide further avenues by which Plaintiffs could have learned of it.

4. As a result of all of the foregoing, allegations of Flo's data sharing were readily available on the internet to anyone conducting even a basic search for information about Flo. For example, a two-second Google search for "Flo app" would turn up the Flo Wikipedia page as a top result, which talked about the 2019 *WSJ* allegations. Searches such as "Flo app privacy" would return even more targeted results mentioning those allegations.

The bottom line from all this is that Plaintiffs had a panoply of sources from which they could have learned that Flo was allegedly transmitting health information through SDKs at any time from February 2019 onwards *at the latest*. A diligent plaintiff would have done so. Accordingly, all of Plaintiffs' claims are irrefutably time-barred.

-9-

### B. Consent

It is a black-letter maxim of California law that "[h]e who consents to an act is not wronged by it." Cal. Civ. Code § 3515; *see also Kent v. Microsoft Corp.*, 2013 WL 3353875, at *6 (C.D. Cal. 2013). Here, however, Plaintiffs consented to the very policies and practices they attack. Claims of improper data collection or sharing must fail where users have consented to conduct disclosed in the defendant's terms of service. *E.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028-32 (N.D. Cal. 2014). As explained above, that is precisely the case here. Plaintiffs could not even begin using the Flo App until they first affirmatively consented to the App's TOS and Privacy Policy. And, as discussed above, the Privacy Policy in particular disclosed that (1) personal identifying information and device identifiers would be shared with third parties as part of the App's operation; (2) de-identified information and some Personal Data would be shared with marketing and analytics platforms; and (3) ***all data***, including "personal data," "account data," "health data" could be shared or used for "any business purpose" if it was de-identified, anonymized, or aggregated. *E.g.*, ECF No. 95-2 §§ 1, 4.2. Indeed, Section 4.1 of the Privacy Policy not only disclosed that users' "Personal Data" would be shared with third parties for analytics and other purposes, but specifically ***identified the Analytics Defendants by name as the recipients*** and linked to their privacy policies. *Id.* § 4.1.

Plaintiffs cannot avoid this result by claiming they did not actually read the Privacy Policy. **A "[p]laintiff is presumed to know and to have assented to the terms of the Agreement that it signed."** *NYC Topanga, LLC v. Bank of Am.*, 2015 WL 4075844, at *6 (C.D. Cal. July 2, 2015) (emphasis added). Nor can they claim they assented to certain parts of the contract but not Flo's data sharing. It is bedrock law that assent to a contract is assent to all its terms. *See, e.g.*, *Blake v. Mosher*, 54 P.2d 492, 494 (Cal. App. 1936) ("Until all understand alike, there can be no assent, and therefore no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms."). In light of these crystal clear disclosures, any reasonable jury will conclude that Plaintiffs consented to Flo's use of SDKs.

### IV. CONCLUSION

Plaintiffs cannot prove their claims. And even if they could, Flo has strong affirmative defenses, as well as a counterclaim, that will prevail.

| | | |
|---|---|---|
| DATED: June 12, 2025 | | RESPECTFULLY SUBMITTED, |

*/s/ Brenda R. Sharton*
Brenda R. Sharton (*Admitted* Pro Hac Vice)
DECHERT LLP
One International Place, 40th Floor
100 Oliver Street
Boston, MA 02110-2605
Telephone: (617) 728-7100
Facsimile: (617) 275-8374
brenda.sharton@dechert.com

Benjamin M. Sadun (Bar No. 287533)
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA 90071-2032
Telephone: (213) 808-5700
Facsimile: (213) 808-5760
benjamin.sadun@dechert.com

Theodore E. Yale (*Admitted Pro Hac Vice*)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone:     (215) 994-4000
Facsimile:     (215) 655-2455
theodore.yale@dechert.com

*Attorneys for Defendant Flo Health, Inc.*