**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@willkie.com
TIFFANY LIN (SBN: 321472)
tlin@willkie.com
YUHAN ALICE CHI (SBN: 324072)
ychi@willkie.com
ARGEMIRA FLÓREZ (SBN: 331153)
aflorez@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERICA FRASCO, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FLO HEALTH, INC., et al.,<br><br>Defendants. | Case No. 3:21-CV-00757-JD<br><br>**TRIAL BRIEF OF DEFENDANT GOOGLE LLC**<br><br>Pretrial Conference Date: June 26, 2025<br>Pretrial Conference Time: 1:30 p.m.<br>Judge:  Hon. James Donato<br>Ctrm:   11 – 19th Floor, SF<br><br>Action Filed: September 2, 2021<br>Trial Date: July 21, 2025 |

# TABLE OF CONTENTS

**Page**

I. Introduction..................................................................................................................1

II. Background....................................................................................................................1

III. Legal Standard for Claims and Defenses......................................................................2

IV. Plaintiffs' CIPA 632 Claim Will Fail at Trial...............................................................3

    A. Google Did Not Receive Any Communications Between Plaintiffs and Flo; Google Received A Separate Communication From Flo......................................................3

    B. Any Communications Google Received Were Not Confidential.............................4

    C. Google Did Not Intentionally Receive Any Confidential Communications............4

    D. Flo and Plaintiffs Both Consented To The Transmittal Of De-identified Data To Google......................................................................................................................6

V. Plaintiffs' Claim Is Barred By The Statute of Limitations............................................6

VI. Plaintiffs' Requested Statutory Damages Award is Unconstitutional...........................7

VII. Conclusion ....................................................................................................................8

## I.   Introduction

After four years of litigation, a motion for summary judgment, and a motion for class certification, only one claim will be tried against Google—an alleged violation of CIPA Section 632 on behalf of a California subclass. Plaintiffs allege that Google intentionally eavesdropped on their confidential conversations with the Flo App without their consent. At trial, Plaintiffs' Section 632 claim will fail because: (1) Google did not receive any conversations between Plaintiffs and Flo; (2) any conversations Google may have received were not confidential; (3) if Google inadvertently received confidential conversations, any receipt was against Google policy and not intentional; and (4) any data Google received was transmitted with Plaintiffs' and Flo's consent. In addition, Plaintiffs' claim fails because it was not brought within the requisite 1-year statute of limitations period under CIPA. Finally, Plaintiffs appear to be seeking an unconstitutional statutory penalty in the billions of dollars.

## II.   Background

As this Court is aware, this case involves the Flo App's use of Google's analytics products during the Class Period. Specifically, the Flo App used the Google Analytics for Firebase SDK and the Fabric SDK during the Class Period for analytics purposes.

The data at issue in this case consists of the following 12 custom app events, and any data that was transmitted from the Flo App to Google (and Meta) along with these events:

- R_CHOOSE_GOAL
- R_SELECT_LAST_PERIOD_DATE
- R_SELECT_PERIOD_LENGTH
- R_AGE_CHOSEN_PERIODS
- SESSION_CYCLE_DAY
- R_SELECT_CYCLE_LENGTH
- R_PREGNANCY_METHOD
- R_AGE_CHOSEN_PREGNANCY_METHOD
- R_PREGNANCY_WEEK_CHOSEN_UNKNOWN
- R_PREGNANCY_WEEK_CHOSEN

- R_PREGNANCY_METHOD_DATE
- R_AGE_CHOSEN_PREGNANCY

Plaintiffs claim that these 12 events are associated with the onboarding survey, which users had to complete in order to use the Flo App during the Class Period.

On May 19, 2025, the Court certified only one claim against Google, on behalf of a California subclass: CIPA Section 632. Dkt. 605 at 34. Plaintiffs have since confirmed that they plan to bring only certified claims at trial, and do not intend to pursue any of their remaining individual claims against Google. The Court's certification order also specified that the California subclass would comprise "All Flo App users in California who entered menstruation and/or pregnancy information into the Flo Health App while residing in California between November 1, 2016 through February 28, 2019, inclusive." Dkt. 305 at 34.

Plaintiffs have indicated that they are not seeking actual damages or disgorgement against Google and are seeking only statutory penalties for violation of CIPA Section 632.

### III. Legal Standard for Claims and Defenses

Section 632 of the California Invasion of Privacy Act ("CIPA") specifies that a violation occurs when "[a] person who, intentionally and without consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." CIPA Section 632(c) defines a "confidential communication" as "any communication carried on in circumstances as many reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in . . . any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." To "eavesdrop" means to listen secretly to what is said in private. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (Ct. App. 1975); *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021). "Intentionally" means "an intent to record a confidential communication; rather than simply an intent to turn on a recording apparatus which happened to record a confidential communication." *Estate of Kramme*, 20 Cal. 3d 567 (1978). Under CIPA, "implied consent constitutes 'consent.'" *Rojas v. HSBC Card Services Inc.*,

93 Cal. App. 5th 860, 881 (2023). Consent can be "inferred 'from surrounding circumstances indicating that the [party] knowingly agreed to the surveillance.'" *Id*. at 885 (citation omitted).

Pursuant to CIPA Section 637.2(a), "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000) per violation. (2) Three times the amount of actual damages, if any, sustained by the plaintiff."

"Under the CIPA, the applicable statute of limitations is one year." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020).

### IV. Plaintiffs' CIPA 632 Claim Will Fail at Trial

#### A. Google Did Not Receive Any Communications Between Plaintiffs and Flo; Google Received A Separate Communication From Flo

Plaintiffs allege that Google eavesdropped on communications between Plaintiffs and Flo. Plaintiffs are mistaken; as a technical matter, Plaintiffs misunderstand how the SDKs work. When an app uses the Google SDKs, there are two separate communications that occur: (1) a communication between Plaintiffs and Flo; and (2) a different, separate communication between Flo and Google. Google never receives Communication #1. For example, if Jane Doe navigates to a screen in the app that asks "What was the date of your last period?", Jane might input "June 12, 2025" or "I don't know." Flo would then have a separate and different communication with Google (Communication #2), which would consist of the name of the custom app event associated with the particular screen Jane was using, which in this case would be the event (R_SELECT_LAST_PERIOD_DATE), a de-identified number representing the user, and whether the de-identified user selected a date or not (the parameter "known" or "unknown"). Due to the design of the SDK, Google would never receive Communication #1 ("What was the date of your last period?" "June 6, 2025"). Rather, Google would receive only Communication #2 ("R_SELECT_LAST_PERIOD_DATE" with the parameter "known" or "unknown"). As a result, Google never received (or eavesdropped on) any communications between Plaintiffs and Flo. Google received different communications directly from Flo.

### B. Any Communications Google Received Were Not Confidential

Even assuming that Google received any communications between Plaintiffs and Flo, the communications were not confidential because class members could reasonably expect that their communications would be shared with Google. The Flo App posted a Privacy Policy during the Class Period, to which all class members had to agree in order to use the app. Plaintiffs have alleged that the Flo App used the Google Analytics for Firebase from only September 2018 through February 2019, and all of the Privacy Policies during that time period specifically disclosed the app's use of Google Analytics "to better understand your use of the App," and disclosed that "some Personal Data like device identifiers may be transferred to . . . Google." *See* Flo Privacy Policy (May 25, 2018). Plaintiffs contend that the Privacy Policy specifically stated that third parties would not "have access to our survey results." Indeed, Google did not have access to users' survey results; rather, Google received de-identified app events and parameters that did not identify any particular user. *Infra* Section III(A)(4). And, as disclosed by the Privacy Policy, Flo may use "aggregated or de-identified" information "for any business purpose." *See id*.

### C. Google Did Not Intentionally Receive Any Confidential Communications

CIPA Section 632's intent requirement requires intent to eavesdrop on a *confidential* communication, not just any communication. At all times during the Class Period, Google required the Flo App to disclose its use of Google Analytics to its end users and obtain consent where legally necessary. Google's terms not only prohibited app developers from transmitting personally identifiable information, they also required that app developers post a privacy policy disclosing their use of the Google SDKs. If app developers followed Google's terms in disclosing their use of Google's services, any user communications transmitted to Google could not be confidential, because the user would reasonably expect that their communications would be transmitted to Google. That is, Google *intended* that apps would use its SDK to transmit only *non-confidential* communications to Google. Google did not intend for the transmission of any confidential communications to occur.

Google's conduct here falls squarely within the no-intent line of cases for CIPA Section 632. In *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 728 (Ct. App. 2022), the appellate

court found the Section 632 intent requirement was not met where the allegations showed only that the defendant "understood it was deploying recording devices that *might happen* to record a confidential communication." (emphasis added). Here, Google did not even have reason to expect that they might receive confidential communications because apps explicitly agree *not* to send such information. Moreover, Google implemented safeguards in the event an app developer did not follow Google's policies. For example, Google classified apps by subject matter as sensitive (like the Flo App) to ensure that the data transmitted by those apps did not make its way into Google's systems. Google also provided settings, such as the data sharing setting, that the app developer could choose to disable. Google also provided data deletion services, so that an app developer could request that Google delete data it inadvertently transmitted.

Another example is *People v. Superior Court of Los Angeles Cnty.*, 70 Cal.2d 123 (1969) ("*Smith*"). In *Smith*, the California Supreme Court found no intent under the predecessor to CIPA 632 where the defendant merely intended to activate a recording device, and subsequently "by chance" recorded a confidential conversation. Here, as in *Smith*, Google merely intended that apps—including the Flo App—use the analytics SDK. The Flo App transmitted over 500 different app events to Google, including standard app events like "first_open" and custom app events like "null", "M_1", "event1," and "BATT_POPUP." If Google received a confidential conversation (i.e., according to Plaintiffs, the 12 custom app events at issue), the 12 custom app events would have been included in a package of millions of other, non-controversial app events like "first_open" and "null" transmitted daily, such confidential conversation would have been received only "by chance" and not intentionally. *See also id.* at 133 ("a person might intend to record the calls of wild birds on a game reserve and at the same time accidentally pick up the confidential discussions of two poachers. To hold the birdwatcher punishable under the statute for such a fortuitous recording would be absurd."); *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 434 (2018) ("the mere intent to activate a tape recorder which subsequently 'by chance' records a confidential communication is insufficient to constitute an offense under [Section 632] . . . it is not the purpose of the statute to punish a person who intends to make a recording but only a person who intends to make a recording of a confidential communication.") (cleaned up).

### D. Flo and Plaintiffs Both Consented To The Transmittal Of De-identified Data To Google

In order to prove a violation of CIPA, Plaintiffs must show that Google's alleged eavesdropping on their conversations with Flo was done without their and Flo's consent. Here, because both Flo and Plaintiffs consented to Google's receipt of their communications, the CIPA claim fails. As the Court of Appeal explained in *Rojas v. HSBC*, "implied consent constitutes 'consent' under" CIPA. 93 Cal. App. 5th 860, 881 (2023).

Flo consented to Google's receipt of the data at issue by purposefully incorporating the Google SDKs into their app, creating custom app events, and configuring the SDK to transmit those events to Google. The Google Analytics for Firebase and Fabric SDKs were free, self-serve products that app developers could choose to incorporate into their apps in order to better understand how their app is being used and to improve their apps. The Flo App chose to incorporate both SDKs into its app. App developers could also create custom app events to analyze user interactions that are specific to their app. Flo created the 12 custom app events at issue in this case, and chose to send them to Google. Accordingly, the receipt of data by Google was done with Flo's consent. Plaintiffs also consented. Flo clearly disclosed the use of the Google and Fabric SDKs in its Privacy Policy, to which class members were required to consent in order to use the app. *Supra* Section III(A)(2).

### V. Plaintiffs' Claim Is Barred By The Statute of Limitations

Plaintiffs' CIPA 632 claim will also fail because it is time-barred by the one-year statute of limitations. Plaintiffs sued Google on June 7, 2021. *See Kiss v. Flo Health, Inc.*, No. 3:21-cv-04333-JD, Compl., Dkt. No. 1. Their recovery is therefore limited to any alleged injuries that occurred a year prior to filing of the complaint—that is, between June 7, 2020, and June 7, 2021. But Plaintiffs' Class Period ended more than a year before June 7, 2020. *See* Class Certification Order, Dkt. No. 605, at 34 (applicable class period is between "November 1, 2016, and February 28, 2019"). Their CIPA claim is therefore time-barred. *See Brodsky*, 445 F. Supp. 3d at 134.

Any theory Plaintiffs may try to assert as to tolling or delayed discovery is belied by the face of their complaint. Indeed, Plaintiffs admit that "[t]he truth about Flo Health's and Non-Flo

Defendants' conduct was discussed in a report published by the *Wall Street Journal* in February 2019." Compl. ¶ 21. The reporting was not only public but widespread, resulting in publication of other similar news articles as well as social media posts and app store reviews reacting to this news. *See* Flo Mot. for Summary Judgment, Dkt. Nos. 536-56–62, Exs. 55–61. Accordingly, Plaintiffs had every means—by way of a simple internet search—to discover the supposed harm of which they complain as early as February 2019. *See, e.g.*, *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) ("limitation period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry . . . [s]o long as a suspicion [for wrongdoing] exists, it is clear that the plaintiff must go find the facts"). That they waited almost two years after this purported "bombshell" news to sue is dispositive. Compl. ¶ 124. Plaintiffs' CIPA claim cannot be tolled.

## VI. Plaintiffs' Requested Statutory Damages Award is Unconstitutional

In a case where Plaintiffs have conceded that no class member suffered actual harm, Plaintiffs appear to be seeking an astronomical statutory damages amount in the billions of dollars. Plaintiffs have stipulated that they do not seek actual damages in this case, and are seeking statutory damages in the amount of one violation per class member.

Plaintiffs' proposed calculation of one violation per class member would likely result in statutory penalties in the billions. A statutory damages award of this magnitude would be unprecedented in the history of CIPA and unconstitutional, as explained by recent case law. The Ninth Circuit, in *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1113 (9th Cir. 2022), recently held that aggregate statutory penalties could be so large as to be unconstitutional. Following *Wakefield*, Judge Seeborg assessed the constitutionality of $83 million aggregate statutory class damages (where actual damages were only $1.4 million) and reduced the statutory damages from $83 million to $8.3 million. *Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2025 WL 751542, at *7 (N.D. Cal. Mar. 10, 2025). In its analysis, the Court considered the various *Wakefield* factors and found that the magnitude of the aggregate award was gravely disproportionate to and unreasonably related to the legal violation committed. *Id.* at *5 (holding that the requested award was "so large as to become entirely untethered from the statutory goals").

So too here. In addition, statutory damages must be proportional to actual damages, and Plaintiffs have conceded that no actual damages exist in this case. *See Campbell v. Facebook Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016) (holding "statutory damages award would be a disproportionate penalty" where, *inter alia*, there was no actual damages for many class members including one of the named plaintiffs).

In addition, Google expects that the calculation of any statutory damages in this case will be determined by the Court. *See, e.g.*, *Hermosillo v. Williams*, 2018 WL 3715898 (Cal. Super. 2018) (award of statutory penalty under CIPA Section 637.2(a) assigned by the Court).

**VII.  Conclusion**

For the reasons stated herein, Plaintiffs' one remaining claim—CIPA Section 632—will fail at trial.

Dated:  June 12, 2025

**WILLKIE FARR & GALLAGHER LLP**

By:   */s/ Benedict Y. Hur*
Benedict Y. Hur
Simona Agnolucci
Eduardo E. Santacana
Tiffany Lin
Yuhan Alice Chi
Argemira Flórez

Attorneys for Defendant
GOOGLE LLC