James M. Wagstaffe (95535)
**ADAMSKI MOROSKI MADDEN**
**CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Telephone: (805) 543-0990
Facsimile: (805) 543-0980
wagstaffe@ammcglaaw.com

*Counsel for Plaintiffs Erica Frasco*
*and Sarah Wellman*

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com

*Class Counsel*

*[additional counsel on signature page]*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Class Counsel*

Diana J. Zinser (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
dzinser@srkattorneys.com

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERICA FRASCO, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLO HEALTH, INC., GOOGLE, LLC, META PLATFORMS, INC., and FLURRY, INC.,<br><br>Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**JOINT PRETRIAL STATEMENT REGARDING JUNE 26, 2025 PRETRIAL CONFERENCE**<br><br>Date: June 26, 2025<br>Time: 1:30 p.m.<br>Judge: Hon. James Donato<br>Courtroom: 11 – 19th Floor, SF<br><br>Action Filed: January 29, 2021<br>Trial Date: July 21, 2025 |

Pursuant to the Court's Standing Order for Civil Jury Trials Before Judge James Donato, Plaintiffs Erica Frasco, Sarah Wellman, Jennifer Chen, Tesha Gamino, and Autumn Meigs (collectively, "Plaintiffs") and Defendants Flo Health, Inc., Google LLC, and Meta Platforms, Inc., (collectively, "Defendants" and, together with Plaintiffs, the "Parties") by and through their undersigned counsel, submit this Joint Statement regarding trial planning in advance of the June 26, 2025 pretrial conference.

## I.    Substance of the Action

### Plaintiffs' Statement

This case concerns the systematic collection, disclosure, and commercial exploitation of millions of women's reproductive health information by Defendant Flo Health, Inc. ("Flo"), maker of the Flo Period & Ovulation Tracker mobile app (the "Flo App"), and two of the world's largest advertising companies: Defendants Google, LLC and Meta Platforms, Inc. (collectively, the "Ad Defendants" or "ADs").  Flo promised its users that it would provide a secure platform for privately tracking the intimate details of one's reproductive health, but, in truth, Defendants shared and exploited millions of women's most sensitive menstrual and sexual health information, including whether they were pregnant or ovulating, and the length and duration of their periods, which were obtained through Ad Defendant Software Development Kits ("SDKs") secretly embedded in the Flo App between November 1, 2016 and February 28, 2019 (the "Class Period").

### Flo's Statement

Plaintiffs' lawsuit was not filed within the time set by law, and none of Plaintiffs' claims have merit.  This case concerns Flo's entirely ordinary use of standard analytics tools called software development kits ("SDKs") developed by Google and Meta—a practice as unremarkable as it is widespread.  Like the overwhelming majority of all mobile apps, Flo used these SDKs to send deidentified navigational data to Google and Meta so that Flo could improve the App for its users. Further, Flo expressly told users about its use of SDKs in its Privacy Policy and Terms of Service—contracts to which Plaintiffs agreed to be bound over the course of the entire Class Period.  Having agreed to the Privacy Policy and Terms of Service during the Class Period, then, Plaintiffs' claims have no basis in fact or in law. In other words, because Plaintiffs consented to the very acts that they

1    claim violated their privacy, each of Plaintiffs' claims fail as a matter of law.  Nor do Plaintiffs have

2    a viable breach of contract claim—Flo engaged in practices that were expressly detailed in the terms

3    of the Privacy Policy.  Further, Plaintiffs do not have a viable claim under the Confidentiality of

4    Medical Information Act ("CMIA").  That is because, during the Class Period, the CMIA plainly did

5    not apply to developers of apps like Flo—it only applied to health care providers (physicians,

6    chiropractors, and the like), health care plans (e.g., insurance plans), pharmaceutical companies, and

7    contractors for medical services.  Flo does not fall within any of these enumerated categories.  And

8    in any event, none of the navigational, de-identified data the Flo provided to Google and Meta—with

9    user consent—constitutes "health information" as required under the CMIA.  Moreover, no Plaintiffs

10   were harmed.

11        **<u>Google's Statement</u>**

12        Plaintiffs are not entitled to any relief.  The only claim at issue against Google is for the alleged

13   violation of the California Invasion of Privacy Act ("CIPA") Section 632 on behalf of a California

14   subclass, for which Plaintiffs seek statutory penalties.  Google did not violate CIPA Section 632

15   because it did not intentionally eavesdrop on any confidential conversations between Plaintiffs and

16   the Flo App.

17        Google provides free analytics tools for app developers to measure user interactions on mobile

18   apps using the publicly available Google Analytics for Firebase SDK.  App developers that wish to

19   use GA for Firebase can incorporate the SDK into their apps, and the SDK then helps the app sends

20   information to Google via GA for Firebase code.  Flo incorporated the Google Analytics for Firebase

21   SDK into the Flo App between September 2018 and February 2019.  Flo incorporated the Fabric SDK

22   into the Flo App prior to the deprecation of Fabric in 2020.

23        First, Google did not receive any conversations between Plaintiffs and the Flo App.  The Flo

24   App took the data it received from Plaintiffs and translated that data into an entirely different, separate

25   "event name."  That different, separate event name is sent to Google.  For example, when a user enters

26   the date of her last period in the app, Google does not receive the actual date, i.e., June 2, 2025.

27   Instead, Google receives the event R_SELECT_LAST_PERIOD_DATE with a parameter of

28   "known" (if a date is entered) or "unknown" (if no date is entered).

Second, the Google Analytics Terms of Service, to which Flo Health agreed in order to use the Google Analytics for Firebase SDK, prohibit app developers from transmitting personally identifiable information to Google, and no such information was transmitted to Google. Similarly, Flo Health agreed to the Fabric terms of service when using the Fabric SDK. Google therefore never received any individual user's confidential conversations.

Finally, to the extent Google received any conversations between Plaintiffs and Flo, such conversations were transmitted with both the consent of Flo and Plaintiffs and therefore were not confidential. The Google Analytics Terms of Service and Fabric Answers Agreement required Flo Health to disclose their use of the Google SDKs in their app. The Flo Health Privacy Policy, to which Plaintiffs consented prior to using the Flo App, disclosed the transmittal of data to Google throughout the Class Period. And, to the extent Flo failed to obtain the required consent, Google did not intend to receive any data without user consent. In addition, to the extent Plaintiffs used Google services, all Google users consented to Google's Privacy Policy, which was in effect throughout the Class Period, and disclosed that Google may receive user activity information from apps that use Google Analytics.

**Meta's Statement**

Plaintiffs' lawsuit was not filed within the time set by law, and regardless, Meta did not violate CIPA § 632 because it did not eavesdrop on any confidential communication between Plaintiffs and the Flo App. The Facebook SDK is a software development kit that offers bits of code that app developers can choose to integrate into their apps and customize to fit the unique needs of each app, subject to Meta's terms with app developers, which state that developers will not share health or other sensitive information with Meta, which Flo never did. As is typical for app developers, Flo integrated the SDK into its app's source code and programmed its app code to generate "Custom App Events" that Flo created and named, and then the Flo app code sent those Custom App Events to Meta only after Plaintiffs finished communicating with the app. The Custom App Events were therefore different in time and substance from Plaintiffs' communications with Flo—and, in any event, Flo did not share with Meta a key to the Custom App Events, so Meta did not know the meaning of the data Flo sent. Meta did not receive (and, in fact, did not intend or want to receive) health data through its SDK and contractually obligates app developers to not send Meta health or sensitive data, to provide

3

1    robust notice to their app users about the data their apps will share, and to only send data that they

2    have permission and a lawful basis to share.    Further, Plaintiffs consented to Meta receiving

3    information from apps about their activity on those apps, including through the Facebook SDK, and

4    Plaintiffs were not harmed.

5    **II.    Relief Requested**

6        **Plaintiffs' Position**

7        Plaintiffs seek classwide damages in the form of statutory damages, punitive damages,

8    nominal damages, and injunctive relief.    Plaintiffs seek statutory damages in connection with their

9    CMIA claims against Flo and CIPA claims against the Ad Defendants.    The CMIA awards $1,000

10   per violation. See CMIA § 56.36(b)(1).    CIPA provides for a statutory minimum judgment of $5,000

11   per violation.    Cal. Penal Code § 637.2(a).    Plaintiffs also seek punitive and nominal damages in

12   connection with their privacy claims (i.e., common law invasion of privacy and intrusion upon

13   seclusion) from Flo. With respect to injunctive relief, Plaintiffs seek an order requiring Meta and

14   Google to delete all forms of Flo user data improperly intercepted from the Flo App.    Plaintiffs further

15   seek an order requiring Flo to: (1) provide corrective disclosures to users about its actual data sharing

16   practices; (2) remove all false statements claiming it had not engaged in unlawful data sharing; and

17   (3) stop selling access to women's health information or using it for targeted advertising.

18       **Defendants' Position**

19       Plaintiffs are not seeking actual damages or disgorgement for any of their claims. Plaintiffs

20   seek statutory damages in connection with their CMIA claim against Flo on behalf of a nationwide

21   class and in connection with their CIPA § 632 claims against Google and Meta on behalf of a

22   California subclass.    The CMIA awards $1,000 per alleged victim.    *See* CMIA § 56.36(b)(1).    Flo,

23   Google, and Meta contend any statutory damages award is subject to the Court's discretion, *see*

24   *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016) Plaintiffs also seek punitive and

25   nominal damages in connection with their privacy claims (*i.e.*, common law invasion of privacy and

26   intrusion upon seclusion) from Flo.

27

28

## III.   Undisputed Facts

The Parties stipulate and agree that the facts listed below are true and may be incorporated into the trial record without the necessity of supporting testimony or exhibits, and without preventing any party from referencing them through argument or testimony.

### THE PARTIES

1.      Plaintiff Erica Frasco is a citizen of the State of New Jersey who downloaded the Flo App.

2.      Plaintiff Sarah Wellman is a citizen of the State of California who downloaded the Flo App.

3.      Plaintiff Jennifer Chen is a citizen of the State of California who downloaded the Flo App.

4.      Plaintiff Tesha Gamino is a citizen of the State of California who downloaded the Flo App.

5.      Plaintiff Autumn Meigs is a citizen of the State of Ohio who downloaded the Flo App

6.      Defendant Flo Health, Inc. ("Flo") is the developer of the Flo App.

7.      Defendant Google LLC ("Google") is a Delaware limited liability company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google offers various services and products, including the Google Analytics for Firebase SDK.

8.      Defendant Meta Platforms, Inc., ("Meta") is a technology company that, among other things, offers free tools like the SDK that allow businesses to build unique and customized solutions to serve their clients.

9.      Plaintiffs first filed a lawsuit against Flo based on purported injuries arising from their use of the Flo App on January 29, 2021.

10.     Plaintiffs first filed a lawsuit against Google and Meta based on purported injuries arising from their use of the Flo App on June 7, 2021.

### THE FLO APP

11.     Flo created and launched the Flo App in 2015.

1    12.    During the Class Period, the Flo App was available for download on the iOS and

2  Android app stores.

3    13.    The Flo App is a mobile application that can be used to track periods and pregnancy.

4    14.    Plaintiffs Chen, Frasco, Gamino, and Meigs downloaded the Flo App to track their

5  menstrual cycles.  Plaintiff Wellman downloaded the Flo App to track her menstrual activity and

6  figure out the best day to get pregnant.

7    **THE SDKS**

8    15.    During the Class Period, Google and Meta both offered SDKs to app developers.

9    16.    Flo incorporated the Google Analytics for Firebase SDK ("GA for Firebase SDK")

10  into the Flo App between September 2018 and February 2019.

11    17.    Flo incorporated code from the Facebook SDK into the Flo App throughout the Class

12  Period.

13    18.    Flo incorporated the Fabric SDK into the Flo App prior to the deprecation of Fabric in

14  2020.

15    **CUSTOM APP EVENTS**

16    19.    The custom App Event names at issue in this lawsuit are:

17        • "R_CHOOSE_GOAL";

18        • "R_SELECT_LAST_PERIOD_DATE";

19        • "R_SELECT_CYCLE_LENGTH";

20        • "R_SELECT_PERIOD_LENGTH";

21        • "R_AGE_CHOSEN_PERIODS";

22        • "R_AGE_CHOSEN_PREGNANCY";

23        • "R_AGE_CHOSEN_PREGNANCY_METHOD";

24        • "R_PREGNANCY_METHOD";

25        • "R_PREGNANCY_METHOD_DATE";

26        • "R_PREGNANCY_WEEK_CHOSEN";

27        • "R_PREGNANCY_WEEK_CHOSEN_UNKNOWN"

28        • "SESSION_CYCLE_DAY"

1      20.     Flo shared the Custom App Events listed in Paragraph 19 with Google and Meta.

2  **IV.    Defendants' Additional Statement of Facts**

3      21.     Plaintiff Erica Frasco agreed to Flo Health's Terms of Service and Privacy Policy in

4  September 2017.

5      22.     Plaintiff Erica Frasco is a Facebook user and agreed to Meta's Statement of Rights and

6  Responsibilities (later renamed the Terms of Service) and Data Policy, which were in effect

7  throughout the Class Period (November 1, 2016, to February 28, 2019).

8      23.     Plaintiff Erica Frasco is a Google user and agreed to Google's Privacy Policy, which

9  was in effect throughout the Class Period.

10     24.     Plaintiff Sarah Wellman agreed to Flo Health's Terms of Service and Privacy Policy

11  in July 2018.

12     25.     Plaintiff Sarah Wellman is a Facebook user and agreed to Meta's Statement of Rights

13  and Responsibilities (later renamed the Terms of Service) and Data Policy, which were in effect

14  throughout the Class Period.

15     26.     Plaintiff Sarah Wellman is a Google user and agreed to Google's Privacy Policy,

16  which was in effect throughout the Class Period.

17     27.     Plaintiff Jennifer Chen agreed to Flo Health's Terms of Service and Privacy Policy in

18  March 2017.

19     28.     Plaintiff Jennifer Chen was a Facebook user and agreed to Meta's Statement of Rights

20  and Responsibilities (later renamed the Terms of Service) and Data Policy, which were in effect

21  throughout the Class Period.

22     29.     Plaintiff Jennifer Chen is a Google user and agreed to Google's Privacy Policy, which

23  was in effect throughout the Class Period.

24     30.     Plaintiff Tesha Gamino agreed to Flo Health's Terms of Service and Privacy Policy in

25  December 2016.

26     31.     Plaintiff Tesha Gamino is a Facebook user and agreed to Meta's Statement of Rights

27  and Responsibilities (later renamed the Terms of Service) and Data Policy, which were in effect

28  throughout the Class Period.

32.    Plaintiff Tesha Gamino is a Google user and agreed to Google's Privacy Policy, which was in effect throughout the Class Period.

33.    Plaintiff Autumn Meigs agreed to Flo Health's Terms of Service and Privacy Policy in February 2017.

34.    Plaintiff Autumn Meigs is a Facebook user and agreed to Meta's Statement of Rights and Responsibilities (later renamed the Terms of Service) and Data Policy, which were in effect throughout the Class Period.

35.    Plaintiff Autumn Meigs is a Google user and agreed to Google's Privacy Policy, which was in effect throughout the Class Period.

36.    Before they could use the Flo App, all users of the Flo App, including Plaintiffs Chen, Frasco, Gamino, Meigs, and Wellman, agreed to Flo's Terms of Use and Privacy Policy.

37.    None of the Plaintiffs was pregnant at the time they completed the Flo App's onboarding survey.  None of the Plaintiffs indicated they were pregnant in any answers to the Flo App's onboarding survey.

38.    The Facebook SDK includes free tools that can be used to facilitate an app developer's ability to create and improve its app.  App developers choose whether to use the SDK and can use the SDK to send data that the app developers choose to share about certain actions users take in their apps to Meta, which then returns to the app developer aggregated, anonymous information about how users interact with the developer's app.  Meta makes the Facebook SDK available to the public, and developers decide which actions they want to track using "App Events."

39.    The GA for Firebase and Facebook SDK app events include: (1) "Standard App Events," which are pre-defined by the SDKs and, if an app developer decides to use them, are generated in response to actions that app users take that are common to many apps (e.g., when a person opens the app, or adds an item to cart), and (2) "Custom App Events," which are fully customized by app developers, including naming the event and defining what data accompanies the event.  App developers choose whether to create or send any Custom App Events.

40.    Flo did not provide either Google or Meta with a key to decipher the names of the 12 Custom App Events.

**GOOGLE'S DEVELOPER-FACING POLICIES**

41.    Flo agreed to the Google Analytics Terms of Service when using the Google Analytics for Firebase SDK.

42.    Flo agreed to the Fabric Data Processing and Security Terms when using the Fabric SDK.

**GOOGLE'S USER-FACING POLICIES**

43.    All Google users were required to agree to Google's Privacy Policy, which was in effect throughout the Class Period.

44.    The Google Privacy Policy dated August 29, 2016, March 1, 2017, April 17, 2017, October 2, 2017 and December 18, 2017 contained the following provisions:

- "We and our partners use various technologies to collect and store information when you visit a Google service, and this may include using cookies or similar technologies to identify your browser or device. We also use these technologies to collect and store information when you interact with services we offer to our partners, such as advertising services or Google features that may appear on other sites. Our Google Analytics product helps businesses and site owners analyze the traffic to their websites and apps."

45.    The Google Privacy Policy dated August 29, 2016, March 1, 2017, April 17, 2017, October 2, 2017, December 18, 2017 and May 25, 2018 contained the following provisions:

- "your activity on other sites and apps
  o This activity might come from your use of Google products like Chrome sync or from your visits to sites and apps that partner with Google. Many websites and apps partner with Google to improve their content and services. For example, a website might use our advertising services (like AdSense) or analytics tools (like Google Analytics). These products share information about your activity with Google . . . ."

**META'S DEVELOPER-FACING POLICIES**

46.    Flo also agreed to Meta's Offline Conversions Terms (later renamed the Business Tools Terms) before downloading and integrating the Facebook SDK, which reflected that Flo had

1  user consent to share any data that it shared with Meta and that it would not share sensitive data, such

2  as health information, which Flo never did.

3  **META'S USER-FACING POLICIES**

4  47.     Plaintiffs and any Class Member who was a Facebook user agreed to Meta's Statement

5  of Rights and Responsibilities (later renamed the Terms of Service), which was in effect from the

6  beginning of the Class Period (November 1, 2016) to April 19, 2018.  The Statement of Rights and

7  Responsibilities includes the following provisions:

8  • "Your privacy is very important to us.  We designed our Data Policy to make important

9     disclosures about how you can use Facebook to share with others and how we collect and

10     can use your content and information.  We encourage you to read the Data Policy, and to

11     use it to help you make informed decisions."

12  • "We'll notify you before we make changes to these terms and give you the opportunity to

13     review and comment on the revised terms before continuing to use our Services. . . . Your

14     continued use of the Facebook Services, following notice of the changes to our terms,

15     policies or guidelines, constitutes your acceptance of our amended terms, policies or

16     guidelines."

17  • "When you use an application, the application may ask for your permission to access your

18     content and information as well as content and information that others have shared with

19     you.  We require applications to respect your privacy, and your agreement with that

20     application will control how the application can use, store, and transfer that content and

21     information."

22  48.     Meta's Statement of Rights and Responsibilities links to Meta's Data Policy.

23  49.     Facebook users agreed to Meta's Terms of Service, which were in effect from April

24  19, 2018, through the end of the Class Period (February 28, 2019).  The Terms of Service include the

25  following provisions:

26  • "To provide these services, we must collect and use your personal data.  We detail our

27     practices in the Data Policy, which you must agree to in order to use our Products.  We

28     also encourage you to review the privacy choices you have in your settings."

- "We work constantly to improve our services and develop new features to make our Products better for you and our community. As a result, we may need to update these Terms from time to time to accurately reflect our services and practices. Unless otherwise required by law, we will notify you before we make changes to these Terms and give you an opportunity to review them before they go into effect. Once any updated Terms are in effect, you will be bound by them if you continue to use our Products."

- "We show you ads, offers, and other sponsored content to help you discover content, products, and services that are offered by the many businesses and organizations that use Facebook and other Facebook Products. Our partners pay us to show their content to you, and we design our services so that the sponsored content you see is as relevant and useful to you as everything else you see on our Products."

- "Some of the Products we offer are also governed by supplemental terms. If you use any of those Products, supplemental terms will be made available and will become part of our agreement with you. For instance, if you access or use our Products for commercial or business purposes, such as buying ads . . . or using our measurement services, you must agree to our Commercial Terms."

50.    Facebook users agreed to Meta's Data Policy. The version that was in effect from the beginning of the Class Period (November 1, 2016) to April 19, 2018, includes the following provisions:

- "Information from third-party partners. We receive information about you and your activities on and off Facebook from third-party partners, such as information from a partner when we jointly offer services or from an advertiser about your experiences or interactions with them."

- "Advertising, Measurement and Analytics Services (Non-Personally Identifiable Information Only). We want our advertising to be as relevant and interesting as the other information you find on our Services. With this in mind, we use all of the information we have about you to show you relevant ads. We do not share information that personally identifies you (personally identifiable information is information like name or email

11

address that can by itself be used to contact you or identifies who you are) with advertising, measurement or analytics partners unless you give us permission.  We may provide these partners with information about the reach and effectiveness of their advertising without providing information that personally identifies you, or if we have aggregated the information so that it does not personally identify you . . . but only after the advertiser has agreed to abide by our advertiser guidelines."

51.    The version of Meta's Data Policy that was in effect from April 19, 2018, through the end of the Class Period (February 28, 2019) includes the following provisions:

- "Information from partners.  Advertisers, app developers, and publishers can send us information through Facebook Business Tools, including . . . SDKs or the Facebook Pixel. These partners provide information about your activities off Facebook—including information about your device . . . and how you use their services[.]"

- "Provide measurement, analytics and other business services.  We use the information we have . . . to help advertisers and other partners measure the effectiveness and distribution of their ads and services, and understand the types of people who use their services and how people interact with their websites, apps, and services."

- "We work with third-party partners who help us provide and improve our Products or who use Facebook Business Tools to grow their businesses, which makes it possible to operate our companies and provide free services to people around the world.  We don't sell any of your information to anyone, and we never will.  We also impose strict restrictions on how our partners can use and disclose the data we provide."

- "Advertisers.  We provide advertisers with reports about the kinds of people seeing their ads and how their ads are performing but we don't share information that personally identifies you . . . unless you give us permission."

V.    **Disputed Facts**

The relevant disputed facts that remain to be decided are as follows:

**Plaintiffs' Summary of Disputed Facts**

52.    Whether each Plaintiff completed the Flo App onboarding survey;

53.    Whether the information listed in Paragraphs 25-36 constitute health information;

54.    Whether the information listed in Paragraphs 25-36 constitute sensitive, personal information;

55.    Whether the information listed in Paragraphs 25-36 was, or could be associated with, personally identifying information;

56.    Whether the information listed in Paragraphs 25-36 has value;

57.    Whether Meta, Google, and Flo used the information listed in Paragraphs 25-36;

58.    Whether Flo disclosed that it would share the information listed in Paragraphs 25-36 with Meta and Google; and

59.    Whether Meta and Google disclosed that they would intercept the information listed in Paragraphs 25-36.

**Defendants' Summary of Disputed Facts**

60.    Whether Plaintiffs are parties to Flo's communication of the Custom App Events listed in Paragraph 19 to Google and/or Meta;

61.    Whether the Custom App Events listed in Paragraph 19 are the same as Plaintiffs' conversations with Flo;

62.    Whether the Custom App Events listed in Paragraph 19 are communications sent from Flo to Meta;

63.    Whether Flo sent, and Meta received, the Custom App Events listed in Paragraph 19 while Plaintiffs were communicating with the Flo App or after;

64.    What data, if any, was sent along with the Custom App Event names listed in Paragraph 19;

65.    Whether the Custom App Events listed in Paragraph 19 constitute health information;

66.    Whether the Custom App Events listed in Paragraph 19 constitute confidential conversations;

67.    Whether the Custom App Events listed in Paragraph 19 constitute sensitive, personal information;

68.     Whether the Custom App Events listed in Paragraph 19 were sent with personally identifying information;

69.     Whether the Custom App Events listed in Paragraph 19 have economic value;

70.     Whether Google, Meta, and Flo used the Custom App Events listed in Paragraph 19;

71.     Whether Flo paid any money to Google or Meta for advertising based on the Custom App Events listed in Paragraph 19;

72.     Whether Flo disclosed to Flo App users that it would share the Custom App Events listed in Paragraph 19 with Google and/or Meta;

73.     Whether Google and/or Meta eavesdropped on Plaintiffs' confidential conversations with Flo;

74.     Whether any alleged eavesdropping by Google and/or Meta was done intentionally;

75.     Whether Plaintiffs consented to Google and/or Meta eavesdropping on any conversations;

76.     Whether Plaintiffs suffered any actual injury or damage as a result of Flo's transmitting the Custom App Events listed in Paragraph 19 with Google and Meta;

77.     The extent of any intrusion into Plaintiffs' privacy as a result of Flo's sending of the Custom App Events listed in Paragraph 19 to Google and Meta;

78.     Whether Plaintiffs could reasonably have discovered their claims before June 7, 2020; and

79.     Whether Plaintiffs will be able to prove the foregoing on a classwide basis.

## VI.   Disputed Legal Issues

There are several disputed legal issues related to the claims against each of the Defendants.

### **Plaintiffs' Summary of Disputed Legal Issues**

#### A.     All Defendants

The following disputed legal issues remain as to all Defendants:

(i)     Whether the interception, disclosure, and use of the information listed in Paragraphs 25-36 constitutes injury-in-fact;

(ii)    Whether Defendants obtained consent to intercept, disclose, and use the information listed in Paragraphs 25-36; and

(iii)    Whether Defendants violated Cal. Penal Code § 502 by: (1) knowingly accessing without permission Plaintiff and Class members' devices through the Ad Defendants' SDKs in the Flo App; (2) knowingly accessing without permission the information listed in Paragraphs 25-36 through the Ad Defendants' SDKs in the Flo App; (3) knowingly and without permission introducing a computer contaminant by virtue of the Ad Defendants' SDKs in the Flo App; and/or (4) providing, or assisting in providing, the ability to access the information listed in Paragraphs 25-36 through the Ad Defendants' SDKs in the Flo App.

**B.    Flo**

With respect to Defendant Flo, the disputed legal issues are:

(i)    Whether Plaintiffs had notice of Defendants' disclosure and interception of the information listed in Paragraphs 25-36, and if so, when they had such notice;

(ii)    Whether Plaintiffs are entitled to tolling pursuant to the discovery rule;

(iii)    Whether Flo concealed its disclosure of the information listed in Paragraphs 25-36;

(iv)    Whether Flo is a "provider of health care" pursuant to Cal. Civ. Code §§ 56.06;

(v)    Whether the information listed in Paragraphs 25-36 constitutes "medical information" pursuant to Cal. Civ. Code § 56.05(j);

(vi)    Whether the information listed in Paragraphs 25-36 was disclosed without authorization pursuant to Cal. Civ. Code § 56.10;

(vii)    Whether Flo breached its contract with Flo App users disclosing the information listed in Paragraph 25-36;

(viii)    Whether Flo users had an objective reasonable expectation of privacy in the information listed in Paragraphs 25-36;

(ix)    Whether Flo's disclosure and use of the information listed in Paragraphs 25-36 would be highly offensive to a reasonable person;

(x)     Whether Flo was unjustly enriched by its disclosure and use of the information listed in Paragraphs 25-36;

(xi)    Whether Flo's disclosure and use of the information listed in Paragraphs 25-36 warrants punitive damages;

**C.     Non-Flo Defendants**

(i)     Whether Ad Defendants engaged in "unauthorized recording or eavesdropping on confidential communications." *See In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp.3d 778, 798 (N.D. Cal. Dec. 22, 2022).

**Defendants' Summary of Disputed Legal Issues**

**D.     Flo**

With respect to Defendant Flo, the disputed legal issues are:

(i)     Whether Plaintiffs had notice of the actions giving rise to the allegations in their Complaint, and if so, when they had such notice;

(ii)    Whether Plaintiffs' claims are barred by the pertinent statute of limitations set forth in Flo's Terms of Service;

(iii)   Whether Plaintiffs are entitled to tolling pursuant to the discovery rule;

(iv)    Whether Flo concealed its disclosure of the information listed in Paragraphs 25-36;

(v)     Whether Flo is a "provider of health care" pursuant to Cal. Civ. Code §§ 56.06;

(vi)    Whether the information listed in Paragraphs 25-36 constitutes "medical information" pursuant to Cal. Civ. Code § 56.05(j);

(vii)   Whether the information listed in Paragraphs 25-36 was disclosed without authorization pursuant to Cal. Civ. Code § 56.10;

(viii)  Whether Flo breached its contract with Flo App users disclosing the information listed in Paragraph 25-36;

(ix)    Whether Flo users had an objective reasonable expectation of privacy in the information listed in Paragraphs 25-36;

(x)     Whether Flo's disclosure and use of the information listed in Paragraphs 25-36 would be highly offensive to a reasonable person;

(xi)    Whether Flo's disclosure and use of the information listed in Paragraphs 25-36 warrants punitive damages;

(xii)   Whether Plaintiffs are entitled to statutory or nominal damages;

(xiii)  Whether Plaintiffs will be able to prove the foregoing on a classwide basis;

**E.     Google and Meta**

(i)     Whether Plaintiffs have Article III standing to bring their CIPA § 632 claim;

(ii)    Whether Google and/or Meta intentionally eavesdropped on Plaintiffs' conversations by using an electronic device;

(iii)   Whether Plaintiffs had a reasonable expectation that their conversations with Flo were not being overheard;

(iv)    Whether Google and/or Meta lacked the consent of all relevant parties to receive the challenged Custom App Events;

(v)     Whether Plaintiffs will be able to prove the foregoing on a classwide basis;

(vi)    Whether the Court has discretion when determining whether to award statutory damages under CIPA § 632 and, if so, whether the Court should exercise that discretion and not award any statutory damages (or an amount less than $5,000 per California subclass member);

(vii)   Whether an award of statutory damages under CIPA § 632 on a classwide basis for the California subclass would violate the Due Process Clause of the Fifth Amendment; and

(viii)  Whether Plaintiffs' CIPA § 632 claim is barred by the applicable one-year statute of limitations.

**VII.   Stipulations**

The Parties stipulate that:

1.  Plaintiffs are not seeking actual damages for any of their claims.

2.  Plaintiffs are not seeking disgorgement for any of their claims.

17

3.  Plaintiffs are not pursuing their individual Federal Wiretap, CDAFA, and CIPA Section 631 claims.

4.  Plaintiffs are only pursuing the claims the Court certified on a class-wide basis. Plaintiffs are not pursuing their non-certified claims on an individual basis.

## VIII.    Bifurcation

The parties do not seek a bifurcated trial.  However, it is Defendants' position that individualized issues that relate to unnamed class members may need to be addressed after the class trial, including but not limited to issues related to Article III standing; the applicable contractual and statutory limitations periods; consent; whether the communications at issue are confidential; whether the communications at issue are health information; whether the communications at issue are a given, unnamed class member's communications; and the factors to be considered when deciding whether to award statutory damages (as identified in *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016)).

## IX.    Settlement

The parties have engaged in settlement discussions with Former Ambassador Jeffrey Bleich. To date, the discussions have not been successful.  The parties have continued to have discussions through Former Ambassador Bleich, but no resolution has been reached.

## X.    Estimated Trial Length

The Plaintiffs estimate that this trial will take place over four weeks.  Flo agrees with Plaintiffs that four weeks is appropriate, in particular considering the billions in damages being sought and Flo's need to split time with multiple defendants.  Meta believes that the trial may be completed in three weeks if the parties can work together to further narrow issues that should not be in dispute and streamline the witness list.  Google estimates that this trial will take three weeks, and cannot agree to a four-week (or longer) trial due to a conflicting trial before Judge Seeborg starting on August 18, 2025 in *Rodriguez v. Google LLC*, No. 3:20-cv-04688-RS (N.D. Cal.).

Dated: June 12, 2025              */s/ Carol C. Villegas*
                                  Carol C. Villegas (*pro hac vice*)
                                  Michael P. Canty (*pro hac vice*)

Danielle Izzo (*pro hac vice*)
Gloria J. Medina (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
dizzo@labaton.com
gmedina@labaton.com

*Co-Lead Class Counsel*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Co-Lead Class Counsel*

Diana J. Zinser (*pro hac vice*)
Jeffrey L. Kodroff (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@srkattorneys.com
jkodroff@srkattorneys.com

*Co-Lead Class Counsel*

James M. Wagstaffe (95535)
**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco
and Sarah Wellman*

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (CA Bar 175650)
ron@consumersadvocates.com

19

1

ALEXIS M. WOOD (CA Bar 270200)
alexis@consumersadvocates.com

2

KAS L. GALLUCCI (CA Bar 288709)
kas@consumersadvocates.com

3

651 Arroyo Drive
San Diego, CA 92103

4

Tel: (619) 696-9006
Fax: (619) 564-6665

5

6

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

7

8

Kent Morgan Williams (*pro hac vice*)
**WILLIAMS LAW FIRM**

9

1632 Homestead Trail
Long Lake, MN 55356

10

Tel: (612) 940-4452
williamslawmn@gmail.com

11

12

Michael E. Jacobs (*pro hac vice*)
**HINKLE SHANOR LLP**

13

P.O. Box 2068
Santa Fe, NM 87504

14

Tel: (505) 982-4554
mjacobs@hinklelawfirm.com

15

16

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**

17

3136 Kingsdale Center, Suite 246
Columbus, OH 43221

18

Tel: (614) 504-3350
Fax: (614) 340-1940

19

will@harrislegaladvisors.com

20

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*

21

22

*/s/ Melanie M. Blunschi*

23

**LATHAM & WATKINS LLP**
Melanie M. Blunschi (SBN 234264)
melanie.blunschi@lw.com

24

Kristin Sheffield-Whitehead (SBN 304635)
kristin.whitehead@lw.com

25

505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538

26

Telephone:  415.395.5942

27

28

Andrew B, Clubok (pro hac vice)

JOINT STATEMENT REGARDING JUNE 26, 2025 PRETRIAL CONFERENCE
Case No. 3:21-cv-00757-JD

andrew.clubok@lw.com
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Michele D. Johnson (SBN 198298)
michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone:  714.540.1235

**GIBSON, DUNN & CRUTCHER LLP**
Elizabeth K. McCloskey (SBN 268184)
EMcCloskey@gibsondunn.com
Abigail A. Barrera (SBN 301746)
ABarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200

Christopher Chorba (SBN 216692)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7503
CChorba@gibsondunn.com

*Counsel for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*


/s/ Benedict Y. Hur
**WILLKIE FARR & GALLAGHER LLP**
Benedict Y. Hur (SBN 224018)
BHur@willkie.com
Simona Agnolucci (SBN 246943)
SAgnolucci@wilkie.com
Eduardo E. Santacana (SBN 281668)
ESantacana@wilkie.com
Tiffany Lin (SBN 321472)
TLin@wilkie.com
Yuhan Alice Chi (SBN 324072)
*ychi@willkie.com*
Argemira Flórez (SBN 331153)
*aflorez@willkie.com*
333 Bush Street
San Francisco, CA 94104
Telephone: 415.858.7400
Facsimile: 415.858.7599

*Counsel for Defendant Google LLC*

21

1

2           /s/ Benjamin M. Sadun

3           Benjamin M. Sadun
            **DECHERT LLP**
            633 W 5th Street #4900
4           Los Angeles, CA 90071
            Telephone:    617.728.7100
5           benjamin.sadun@dechert.com

6           Brenda R. Sharton (*pro hac vice*)
            One International Place
7           100 Oliver Street
            Boston, MA 02110
8           Telephone:    617.728.7100
            brenda.sharton@dechert.com

9

10          Theodore E. Yale (*pro hac vice*)
            2929 Arch Street
11          Philadelphia, PA 19104
            Telephone:    215.994.4000
12          theodore.yale@dechert.com

13          *Counsel for Defendant Flo Health, Inc*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28