Brenda R. Sharton (*Admitted Pro Hac Vice*)
DECHERT LLP
One International Place, 40th Floor
100 Oliver Street
Boston, MA 02110-2600
Telephone: (617) 728-7100
Facsimile: (617) 275-8374
brenda.sharton@dechert.com

Benjamin M. Sadun (Bar No. 287533)
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA 90071-2032
Telephone: (213) 808-5700
Facsimile: (213) 808-5760
benjamin.sadun@dechert.com

Theodore E. Yale (*Admitted Pro Hac Vice*)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 655-2455
theodore.yale@dechert.com

*Attorneys for Defendant Flo Health, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ERICA FRASCO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., APPSFLYER, INC., and FLURRY, INC.,<br><br>Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**DEFENDANT FLO HEALTH, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR ORDERS CONCERNING FLO WITNESSES**<br><br>CONSOLIDATED COMPLAINT FILED: September 2, 2021<br><br>Dept.:   Courtroom 11 – 19th Floor<br>Judge:   Honorable James Donato |

Plaintiffs' Motion (ECF No. 704, "Mot.") seeks extraordinary relief expressly prohibited by federal law: compelling four European citizens who live and work outside the United States to appear at trial. Federal Rule of Civil Procedure 45(c) is unequivocal—U.S. courts lack subpoena power over individuals who do not reside, work, or regularly conduct business *in person* within 100 miles of, or in the same state as, the courthouse. This alone mandates the denial of Plaintiffs' motion. Independently, Plaintiffs' insistence on summoning Flo's CEO, Dmitry Gurski, who also lives abroad, solely "to authenticate documents" constitutes harassment. Fed. R. Civ. P. 45(d)(3)(A) says courts "must quash" subpoenas "beyond the geographical limits specified in Rule 45(c)" and subpoenas that "subject[] a person to undue burden." Plaintiffs' Motion attempts both.

Plaintiffs' Motion gets one thing right. One party is being "deceitful." Mot. at 3. But that party is not Flo. Indeed, Plaintiffs' Motion distorts the record at nearly every turn. For example, it was Flo, not Plaintiffs, who reached out to the other party suggesting the parties schedule a call to "work collaboratively" on witness availability. See Ex. A.[1] And it was Plaintiffs, not Flo, who stonewalled in response.

On July 3, 2025, at Flo's initiation, the parties met and conferred to discuss witness availability. Flo opened the call by asking a straightforward question: "Which Flo witnesses do you want to call?" Plaintiffs responded, incredibly, by asking which witnesses Flo had available—as if it were Flo's burden to help Plaintiffs put on their case. Plaintiffs listed 13 Flo employees on their exhibit list but on the call refused to narrow their demands or identify *even one* they wished to call. Instead, Plaintiffs' counsel stated they would simply serve subpoenas to all of them. Flo responded that would not be possible, as all are located overseas.

On July 6, 2025, Plaintiffs, by email, demanded Flo make four witnesses available at trial: Laure Lydon, Roman Bugaev, Eugene Tiunovich, and Max Scrobov. Plaintiffs also threatened to call Flo's CEO, Dmitry Gurski, to appear in person to authenticate documents *if their demands were not met*. *See* Ex. B. This, despite the fact that Mr. Gurski was never deposed and was not a document custodian.

All four individuals Plaintiffs identified had been deposed, though Ms. Lydon was not even on Plaintiffs' witness list. Still, less than 24 hours later, Flo agreed to make Ms. Lydon available and asked for prompt confirmation because Ms. Lydon lives abroad and would have to arrange childcare and international

---

[1] All Exhibits not attached to Plaintiffs' Motion are attached to the accompanying Declaration of Benjamin M. Sadun ("Sadun Decl.").

1  travel. Plaintiffs never responded. Instead, they filed this Motion—changing up the list of who they wanted
2  and conveniently omitting that they requested, and Flo offered, Ms. Lydon as a trial witness. Without any
3  further discussion or attempt to confer, Plaintiffs simply filed the motion.

### RELEVANT FACTUAL BACKGROUND

As the Court is aware, Flo is headquartered in London, England. Most of its employees and officers live and work in the United Kingdom or Lithuania. Despite having no obligation to do so, and in accordance with its representation to the Court several years ago that Flo would not force plaintiffs to go through the Hague Convention for discovery requests, Flo voluntarily made its overseas employees available for depositions, including Roman Bugaev, Max Scrobov, and Eugene Tiunovich, the very witnesses Plaintiffs now seek to compel for trial. Sadun Decl. ¶ 4. (Plaintiffs never noticed a deposition for Mr. Gurski even though he was named in Flo's Initial Disclosures. *Id.*)

At the May 15, 2025 hearing, this Court ordered Flo to produce a current employee as an additional witness on the technical operation of the Flo App during the relevant time period (2016-2019). *See* Mot. Ex. B at 19-20. Recognizing that the technical employees who worked on the App at the time no longer work for Flo, the Court specifically contemplated that this employee would familiarize himself or herself with the App for purposes of the deposition and "there won't be any personal knowledge objections at trial as long as that person is just talking about here's how these things worked in predecessor years." *Id.* at 23:19-24:1. Pursuant to that Order, Flo produced engineer Laure Lydon to testify about the operation of the App during the relevant time period. Plaintiffs deposed Ms. Lydon on June 23, 2025. As ordered by the Court, Ms. Lydon was prepared to talk about the technical operation of the App during the relevant time period, including "identifiers, de-identification of data passed via the Analytics SDKs, the nature of the data that was passed via Analytics SDKs … the Wall Street Journal article, about the FTC investigation, about our privacy policies. Many, many things." Mot. Ex. A at 151:24-152:8.

On June 13, 2025 the Parties filed a Joint Trial Witness list. ECF No. 658. An amended list was filed on June 26, 2025. ECF No. 684. Plaintiffs' list contained 13 current and former Flo employees. *See id.* On June 19, 2025, Plaintiffs asked Flo if it would accept subpoenas for those witnesses. Sadun Decl. ¶ 7. Flo did not agree to do so. *Id*. Plaintiffs never reached out to Flo to discuss bringing any of the witnesses on Plaintiffs' list to testify at trial voluntarily or sought to meet and confer on the issue. *Id*. ¶ 9. Despite this

failure, when asked at the June 26, 2025 pretrial conference "How many depositions do you plan to play [at trial]?" Plaintiffs told the Court: "We're still discussing that with Flo. To the extent that they're not available, we may have to, obviously, play the depositions, but that's another area that we're working collaboratively with the defendants to try to get resolved." Mot. Ex. C at 30:19-31:3. Plaintiffs told Defendants that they would only be seeking the testimony of one witness per Defendant, but they took no action to identify which witness they would request from Flo. Sadun Decl. ¶ 8.

On July 2, 2025, having heard nothing from Plaintiffs about witness appearances, Flo reached out to Plaintiffs' lead counsel as a courtesy given the fact that Flo's witnesses were overseas. Exhibit A. On the ensuing call, counsel for Flo were ambushed by approximately 20 lawyers for Plaintiffs. Sadun Decl. ¶ 11. When Flo asked "who do you want for Flo witnesses," Plaintiffs refused to name a single one. *Id*. Instead, they asked "who do you have available." *Id.* Flo explained that it was not Flo's job to make Plaintiffs' case for them and again asked who they wanted to appear at trial. *Id.* By the end of the discussion, Plaintiffs had still failed to provide a single name, instead threatening that they would just subpoena all 13 Flo employees on their witness list. *Id.* In response, Flo cautioned that strategy would be unsuccessful because the listed individuals are all located overseas. *Id.*

Days later, on July 6, 2025, Plaintiffs finally sent an email that identified, for the first time, of the 13 Flo witnesses they wanted to have come testify. *Id.* ¶ 12. In that email, Plaintiffs identified four Flo employees that they wanted for trial: Laure Lydon, Roman Bugaev, Eugene Tiunovich, and Max Scrobov. Ex. B. (Plaintiffs also threatened to call Flo's CEO Dmitry Gurski "to authenticate Flo records and documents" "if Flo does not agree to stipulate to the authenticity of its documents." *Id.*). **Flo responded the very next day offering to make Ms. Lydon available, even though she was not disclosed on Plaintiffs' witness list**, *see* ECF No. 684, and despite having no legal obligation to make her (or any other foreign witness) available for trial. Ex. B. Moreover, because Plaintiffs had been given an opportunity to depose Ms. Lydon, they could simply play her testimony at trial. Nevertheless, Flo offered to make her available live at trial (helpfully offering to provide her in either their case in chief or Flo's at their choice). Flo also asked Plaintiffs to let it know right away if they would accept Flo's offer so she could make arrangements. *Id.* Ms. Lydon has three minor children at home. Sadun Decl. ¶ 13. As Flo told Plaintiffs, the other three witnesses (Messrs. Bugaev, Scrobov, and Tiunovich) are not available. *See* Ex. B.. For example,

one witness is getting married in the middle of the trial. Sadun Decl. ¶ 16. Flo also stated that, because all four witnesses had been deposed, Plaintiffs could play their recorded depositions at trial (subject to the Federal Rules of Evidence) if they were unavailable at trial—as explicitly contemplated by Fed. R. Evid. 804(b)(1). *See* Ex. B.

Plaintiffs never responded to Flo's offer and filed their Motion without meeting and conferring. Sadun Decl. ¶ 15. Puzzlingly, refusing to take yes for an answer, Plaintiffs' Motion changes the list of witnesses they are seeking. Even though they themselves requested Flo produce Ms. Lydon, once Flo said they would make her available, Plaintiffs now claim—in direct contravention of the Court's May 15, 2025 ruling—that she is inadequate because she did not work at Flo during the relevant timeframe. Mot. at 3. Instead, Plaintiffs ask the Court to compel Messrs. Bugaev, Scrobov, and Tiunovich to appear at trial along with Flo's CEO Dmitry Gurski. ***In other words, the first time this new list of desired witnesses was presented to Flo was in Plaintiffs' Motion filed a week before trial.***

Plaintiffs' Motion fails to explain what evidence it requires from these witnesses that it could not establish through written discovery, produced documents, or the five depositions they have taken already. It does make clear, however, that the *sole* purpose of calling Messrs. Tiunovich and Gurski is to authenticate documents, despite fact discovery having ended twenty-seven months ago. Mot. at 3 n.3

## ARGUMENT

### I. Foreign nationals who live and work in Europe are outside the subpoena power of the United States.

Plaintiffs' Motion buries the lead. Plaintiffs ask the Court to unlawfully compel European citizens who neither live, work, nor regularly visit the United States to appear at trial. This is squarely prohibited by Federal Rule of Civil Procedure 45, which states:

> A subpoena may command a person to attend a trial, hearing, or deposition ***only*** as follows:
>   (A) within 100 miles of where the person resides, is employed, or regularly transacts business ***in person***; or
>   (B) within the state where the person resides, is employed, or regularly transacts business ***in person***, if the person
>     (i) is a party or a party's officer; or
>     (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1) (emphasis added). As the Ninth Circuit has explained, a subpoena is improper unless it satisfies one of these two geographic prongs: "First, a person can be commanded to attend trial

'within 100 miles of where the person resides, is employed, or regularly transacts business in person.' Second, a person can be commanded to attend a trial 'within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) ... would not incur substantial expense.'" *In re Kirkland*, 75 F.4th 1030, 1042 (9th Cir. 2023) (citation omitted). "If a trial subpoena exceeds these geographical limitations, the district court '***must*** quash or modify' the subpoena." *Id.* (emphasis original). Failure to quash such a subpoena is an abuse of discretion. *Id.*

Neither prong of Rule 45(c) is present here. As Plaintiffs are aware, these witnesses all live and work in either London, England or Vilnius, Lithuania—an ocean and over 5,000 miles away from San Francisco. Sadun Decl. ¶ 5 None of them regularly conducts business in person in the United States. *Id.* Plaintiffs present no evidence to the contrary. Accordingly, it is axiomatic that Plaintiffs cannot subpoena them. *See, e.g.*, *In re Kirkland*, 75 F.4th at 1046-47 (reversing refusal to quash subpoena of U.S. Virgin Islands resident); *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *3 (N.D. Cal. Oct. 5, 2015) (quashing subpoena and denying motion to compel appearance of Japanese employee).

Importantly, the Ninth Circuit in *In re Kirkland* made clear that this limitation applies to both in-person and live video testimony. There, the Court of Appeals granted mandamus and reversed a subpoena compelling the remote video testimony of a witness located outside of California. 75 F.4th at 1046-47. So long as the witness is located outside the geographical area set forth in Rule 45(c), the Ninth Circuit held a district court has no power to subpoena him to testify in any format.

Plaintiffs cite *In re Vioxx Prods. Liab. Litig.*, 438 F. Supp. 2d 664 (E.D. La. 2006), for the proposition that the Court "can compel attendance" of Flo's officers "otherwise outside the geographic reach of the Court." Mot. at 4. But Plaintiffs fail to disclose that *Vioxx* and its ilk were <u>explicitly</u> overruled by the 2013 amendment to Rule 45. As the Advisory Committee explained at the time:

> Because [the new] Rule 45(c) directs that compliance may be commanded only as it provides, these amendments resolve a split in interpreting Rule 45's provisions for subpoenaing parties and party officers. *Compare In re Vioxx Products Liability Litigation* , 438 F. Supp. 2d 664 (E.D. La. 2006) (finding authority to compel a party officer from New Jersey to testify at trial in New Orleans), with *Johnson v. Big Lots Stores, Inc.* , 251 F.R.D. 213 (E.D. La. 2008) (holding that Rule 45 did not require attendance of plaintiffs at trial in New Orleans when they would have to travel more than 100 miles from outside the state). Rule 45(c)(1)(A) does not authorize a subpoena for trial to require a party or party officer to travel more than 100 miles unless the party or party officer resides, is employed, or regularly transacts business in person in the state.

Fed. R. Civ. P. 45, 2013 Adv. Comm. Note; *see also Wakefield v. ViSalus, Inc.*, 2019 WL 1309682, at *3 (D. Or. Mar. 22, 2019) (discussing 2013 amendment to Rule 45 and holding "Plaintiff seeks to require an officer of Defendant to travel more than 100 miles to attend trial in Oregon when that person does not reside, is not employed, and does not regularly transact business in person in Oregon. After 2013, that is not allowed under the new Rule 45(c).").[2]

Plaintiffs' argument that the forum selection clause in Flo's Terms of Service magically brings its employees within the Court's subpoena power is equally off base. Mot. at 4. Plaintiffs cite no authority for this novel theory. To the contrary, it is axiomatic that Flo and its employees are distinct persons. Jurisdiction over Flo does not create jurisdiction over Flo's employees. Moreover, it is civil procedure 101 that personal jurisdiction and the subpoena power are distinct concepts. If jurisdiction over a defendant were sufficient to hale its employees into court, most of Rule 45 would be superfluous. Also, the Federal Rules anticipate this exact scenario, and specifically say subpoenas are only proper if the corporate officer "regularly transacts business ***in person***" within the state. Fed. R. Civ. P. 45(c).

The bottom line is straightforward. As courts in this District and around the country have universally recognized: "Courts … have no power to compel aliens living outside the United States to respond to a subpoena." *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12114761, at *2 (C.D. Cal. Sept. 23, 2013) (collecting cases). Because that is *exactly* what Plaintiffs seek, their Motion must be denied.

**II. The Court should reject Plaintiffs' attempt to harass Flo's CEO.**

Plaintiffs' attempt to subpoena Mr. Gurski, Flo's CEO, is also improper because it is unduly burdensome. Plaintiffs freely concede that they do not seek any *substantive* testimony from Mr. Gurski. Mot. at 3 n.3. Nor do Plaintiffs deny that Mr. Gurski was timely disclosed *in 2021* in Flo's Initial Disclosures. Sadun Decl. ¶ 2. Rather, they claim, they need his testimony *solely* to authenticate documents. Mot. at 3 n.3. Even worse, Plaintiffs offer no reason to think Mr. Gurski has the personal knowledge to authenticate any of the (unidentified) documents referenced in Plaintiffs' motion. Nor could they, because Plaintiffs never even deposed Mr. Gurski and Mr. Gurski was not a document custodian in this case. Sadun Decl. ¶ 3. Thus, at best, Plaintiffs seek leave for an eleventh-hour fishing expedition twenty-seven months

---

[2] Moreover, *Vioxx*, and the cases like it, involved subpoenas of United States residents in sister states. Here, the witnesses in question are neither U.S. citizens nor residents. *See also* 28 U.S.C. § 1783(a) (limiting extraterritorial subpoenas to "national[s] or resident[s] of the United States").

after the close of fact discovery. At worst, and more likely, this is a transparent attempt to distract and harass Flo's CEO unless Flo stipulates to the admissibility of additional documents.

The Rules forbid exactly this. Fed. R. Civ. P. 45(d)(3)(A)(iv) ***requires*** courts to quash subpoenas that "subject[] a person to undue burden." Courts around the country have consistently held that this rule bars subpoenas of so-called "apex" employees, such as CEOs, unless the witness "has unique first-hand, non-repetitive knowledge of the facts at issue" and "the party seeking the [testimony] has exhausted other less intrusive discovery methods, such as interrogatories and depositions of lower level employees." *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007); *see also, e.g.*, *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 483 (10th Cir. 1995); *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Here, Plaintiffs have introduced zero evidence suggesting that Mr. Gurski has the personal knowledge to authenticate the documents in question, let alone that his knowledge is unique or that Plaintiffs have exhausted other avenues of obtaining the same evidence.

### III. Plaintiffs had every opportunity to lawfully obtain the testimony they now seek.

Plaintiffs attempt to paint Flo's reliance on the Federal Rules of Civil Procedure as "inequitable" or "obstructionist." Mot. at 1, 4. Nothing could be further from the truth. Despite having no obligation to do so, Flo voluntarily made its foreign employees available for depositions—including ***all four*** of the witnesses Plaintiffs requested from Flo on July 6. Sadun Decl. ¶ 4. Those depositions occurred. Plaintiffs have not explained why that deposition testimony is insufficient. Moreover, to the extent Plaintiffs need additional testimony at trial that they failed to obtain during discovery, that is a problem entirely of their own making.

*First*, Plaintiffs were given every opportunity to depose Flo's officers and employees. During discovery, Flo went above and beyond the requirements of the Federal Rules and international law by facilitating the deposition of Flo employees resident in Europe. *See* ECF No. 66 at 3. Indeed, Plaintiffs *actually deposed* Mr. Bugaev, Mr. Scrobov, Mr. Tiunovich, and Ms. Lydon, and separately Susanne Schumacher, Flo's former Data Protection Officer. Sadun Decl. ¶ 4. Whereas Flo is represented by one firm, Plaintiffs are represented by six firms and an army of attorneys, who collectively have centuries of experience taking depositions. Every trial lawyer knows that one taking a deposition must treat it as the only chance to obtain that person's testimony precisely because the witness may be unavailable at trial, especially where the witness resides overseas.

Flo has further offered to stipulate that these witnesses are unavailable for purposes of establishing the hearsay exception under Federal Rule of Evidence 804(b)(1). Exhibit B at 4. Thus, Plaintiffs are free to play the depositions of Mr. Bugaev, Mr. Scrobov, and Mr. Tiunovich at trial as they see fit provided that testimony is otherwise admissible. If Plaintiffs failed to ask the right questions at those depositions, or failed to use those depositions to lay a proper foundation for trial exhibits, that is entirely their own fault.

Plaintiffs' argument that Flo cannot refuse or object to trial subpoenas because it voluntarily facilitated those depositions is unsupported by law or logic. *See* Mot. at 3, 4 n.4. In the Joint Case Schedule, the parties consented "to service by electronic means ***with respect to discovery***" and to cooperate on "producing witnesses ***for depositions***." ECF No. 66 at 1, 3 (emphasis added). The language could not have been clearer that these stipulations were limited to *discovery*—not trial. Indeed, Flo bent over backwards to facilitate these overseas depositions precisely *because* bringing those witnesses to trial would be improper, impracticable, and unduly burdensome. There is a world of difference between accommodating a remote deposition on a flexible timetable and flying people with jobs and families halfway across the world on less than a week's notice simply because Plaintiffs *might* wish to call them at trial.

***Second*,** Plaintiffs rebuffed Flo's attempt to reach a stipulated witness list and instead raced to the Court without meeting or conferring. Sadun Decl. ¶ 9. As explained above, it was *Flo* that first reached out to Plaintiffs to try to reach an agreement on trial witnesses. Ex. A. And, despite having no obligation to do so, Flo offered to produce Ms. Lydon—one of the witnesses Plaintiffs themselves requested. Ex. B.. Yet Plaintiffs never even responded to that offer.

***Third*,** Plaintiffs admit that they are seeking Mr. Tiunovich and Mr. Gurski *solely* to authenticate documents. Mot. at 3 n.3. But Plaintiffs had (and have) numerous other options available to authenticate documents. They could have presented these documents to Flo witnesses at their depositions. They could have filed Requests for Admission (as is customary to authenticate documents) before the close of discovery twenty-seven months ago. They also could have attempted to resolve these disputes through the normal meet and confer process.[3] Moreover, Plaintiffs' Motion as to Messrs. Gurski and Tiunovich is undercut by

---

[3] As will be set forth more fully in Flo's Opposition to Plaintiffs' Motion to Authenticate Documents, Plaintiffs' counsel's approach to document authentication is marked by the same delay, intransigence, and refusal to meet and confer as their approach to witnesses. Despite repeated requests from Flo, Plaintiffs did not identify the documents at issue until July 8, 2025, less than two weeks from the start of trial. Sadun
(Footnote Cont'd on Following Page)

their own argument that they do not *need* witness testimony to authenticate documents. Mot. at 2. Plaintiffs cannot have it both ways.

Nothing but sloth prevented Plaintiffs from following the proper procedures here. Fact discovery began ***four years ago*** and closed over two years ago on April 17, 2023. *See* ECF No. 267. Even if additional testimony of these four witnesses were necessary (it is not), Plaintiffs had ample time to procure it.

**IV. The Court should reject Plaintiffs' attempt to circumvent the witness list procedure.**

Plaintiffs end their Motion with a throwaway alternative request to compel Flo "to indicate to Plaintiffs which of the remaining witnesses they listed in their witness lists will be available to testify in person." Mot. at 4. Plaintiffs relegate this argument to a single paragraph at the end of their brief without citation to *any* authority. This alone is reason to deny it. *See* Standing Order for Civil Cases before Judge James Donato ¶ 22 (directing that "[a]rguments buried in footnotes or raised with little authority or discussion will generally not be considered by the Court" and noting that important arguments "should not be raised in … a short paragraph at the end of a brief"). This argument also fails on its merits because it attempts to turn the witness list requirement on its head.

The point of the witness list is to avoid "prejudice or surprise" by calling a witness the other side cannot anticipate. *See Price v. Seydel*, 961 F.2d 1470, 1474 (9th Cir. 1992). Flo shared its witness list on time on May 29, 2025, so there can be no surprise. Sadun Decl. ¶ 6. The Rules require Flo to disclose witnesses it "may call if the need arises"; it does not require Flo to state with certainty which witnesses it will call a week before trial—and at least two weeks before Flo presents its defense. Fed. R. Civ. P. 26(a)(3)(A)(i). Indeed, if Flo attempted to do so, Plaintiffs would no doubt cry prejudice if Flo sought to change its plans and call a witness not on that narrowed list. Nor could Flo possibly bind itself to such a list in the first place. Flo is a *Defendant* and, accordingly, the evidence it presents will depend in large part on how Plaintiffs present their case in chief. And, tellingly, Plaintiffs have provided no similar list of definite trial witnesses themselves. Their latest witness list contains 48 witnesses, with an estimated 96 hours of testimony, despite having only 12.5 hours of trial time to present their entire case. *See* ECF No. 684.

Plaintiffs' request also seeks to circumvent this Court's Standing Order that "[a] party must disclose the

---

Decl. ¶ 17. *The very next day* Flo stipulated to the authenticity of 21 out of the 50 documents identified by Plaintiffs. *Id.* The remainder consisted mainly of documents with no clear date or custodian. *Id.* Simply put, the fact that Plaintiffs refused to do the work needed to authenticate their documents is not a reason to put aside the Federal Rules of Civil Procedure.

identity of the witnesses it plans to call—as well as the exhibits to be used during the direct examination of any witness—by 4 p.m. *two calendar days* before calling the witness to the stand." Standing Order for Civil Jury Trials before Judge James Donato ¶ 29 (emphasis added). Plaintiffs seek to quintuple that time to 11 days—while refusing to make the same disclosure themselves. Nevertheless, as a courtesy, Flo went further than required by telling Plaintiffs on July 3 that Roman Bugaev, Eugene Tiunovich, and Max Scrobov are unavailable and "will not be testifying by zoom or in person for us either." Ex. B at 2.

Plaintiffs' attempts to rely on witness lists to compel the production of witnesses are similarly unavailing. First, Plaintiffs claim "Flo's decision to put witnesses on its witness list should be interpreted as a representation that those witnesses will be available." Mot. at 3. That is not the law, and Plaintiffs cite no authority in support. As just explained, the point of the witness list is to avoid the surprise of calling *undisclosed* witnesses. Nothing *compels* a party to produce potential witnesses it discloses but ultimately chooses not to call. To the contrary, Rule 26 specifically states that pretrial disclosures must include witnesses that a party "**may call if the need arises**." Fed. R. Civ. P. 26(a)(3)(A)(i). Likewise, Rule 37 prohibits only calling an undisclosed witness, not disclosing, but failing to produce, a potential one. *See* Fed. R. Civ. P. 37(c)(1).

Finally, Plaintiffs accuse Flo of "deceitful silence" at the pretrial conference that misled Plaintiffs into assuming Plaintiffs' own witnesses would be available. Mot. at 3. But the transcript belies that claim. As Plaintiffs' counsel stated on the record: "We're still discussing that with Flo. To the extent that they're not available, we may have to, obviously, play the depositions, but that's another area that we're working collaboratively with the defendants to try to get resolved." Mot. Ex. C at 30:19-31:3. Thus, Plaintiffs were clearly aware that Flo had not agreed to produce the witnesses on Plaintiffs' list. Indeed, Plaintiffs were well aware that they never even *discussed* the issue with Flo in the first place and never would until Flo—not Plaintiffs—proposed a meet and confer to discuss witness availability. *See* Ex. A.

## CONCLUSION

The bottom line is simple. Plaintiffs have had five years to prepare their case, including two years to conduct fact discovery and an additional two years to marshal those facts for trial. Now, with trial a week away, they claim—without meeting and conferring—that the thousands of documents and hundreds of hours of recorded deposition testimony they have received are insufficient and, therefore, ask the Court for an unlawful order compelling European citizens to fly halfway around the world to help Plaintiffs make their

case. The Motion should be denied.

DATED: July 14, 2025					Respectfully submitted,


							/s/ *Brenda R. Sharton*
							Brenda R. Sharton (*Admitted Pro Hac Vice*)
							DECHERT LLP
							One International Place, 40th Floor
							100 Oliver Street
							Boston, MA 02110-2605
							Telephone: (617) 728-7100
							Facsimile: (617) 275-8374
							brenda.sharton@dechert.com

							Benjamin M. Sadun (Bar No. 287533)
							DECHERT LLP
							US Bank Tower
							633 West 5th Street, Suite 4900
							Los Angeles, CA 90071-2032
							Telephone: (213) 808-5700
							Facsimile: (213) 808-5760
							benjamin.sadun@dechert.com

							Theodore E. Yale (*Admitted Pro Hac Vice*)
							DECHERT LLP
							2929 Arch Street
							Philadelphia, PA 19104
							Telephone:     (215) 994-4000
							Facsimile:      (215) 655-2455
							theodore.yale@dechert.com


							*Attorneys for Defendant Flo Health, Inc.*

FLO'S OPPOSITION TO PLAINTIFFS' MOTION CONCERNING FLO WITNESSES     21-cv-00757-JD