Volume 6

Pages 1108 - 1155

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

ERICA FRASCO, et al.,          )
individually and on behalf of  )
all others similarly situated, )
                               )
            Plaintiffs,        )
                               )
VS.                            )     NO. 3:21-CV-00757 JD
                               )
FLO HEALTH, INC., META         )
PLATFORMS, INC.,               )
                               )
            Defendants.        )
_____)

San Francisco, California
Thursday, July 31, 2025

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**
For Plaintiffs:

LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, New York 10601
BY: **CHRISTIAN LEVIS, ATTORNEY AT LAW**

SPECTOR ROSEMAN & KODROFF, P.C.
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, Pennsylvania 19103
BY: **DIANA J. ZINSER, ATTORNEY AT LAW**

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported by:  Ruth Levine Ekhaus, RDR, RMR, FCRR, CCG
              CSR No. 12219, Official  United States Reporter

**APPEARANCES**:   (CONTINUED)

For Plaintiff:
                        LABATON KELLER SUCHAROW LLP
                        140 Broadway
                        New York, New York 10005
            BY:   **CAROL C. VILLEGAS, ATTORNEY AT LAW**
                  **MICHAEL P. CANTY, ATTORNEY AT LAW**
                  **GLORIA J. MEDINA, ATTORNEY AT LAW**

For Defendant Flo Health, Inc.:
                        DECHERT LLP
                        US Bank Tower
                        633 West 5th Street, Suite 4900
                        Los Angeles, California 90071-2032
            BY:   **BENJAMIN M. SADUN, ATTORNEY AT LAW**
                  **ALLISON OZUROVICH, ATTORNEY AT LAW**

                        DECHERT LLP
                        Cira Centre
                        2929 Arch Street
                        Philadelphia, Pennsylvania 19104-2808
            BY:   **CLARE P. POZOS, ATTORNEY AT LAW**

                        DECHERT, LLP
                        One International Place
                        100 Oliver Street
                        Boston, Massachusetts 02210
            BY:   **BRENDA R. SHARTON, ATTORNEY AT LAW**

For Defendant Meta Platforms, Inc.:
                        LATHAM & WATKINS
                        555 Eleventh Street, NW, Suite 1000
                        Washington, D.C. 20004
            BY:   **ANDREW B. CLUBOK, ATTORNEY AT LAW**

                        LATHAM & WATKINS LLP
                        650 Town Center Drive, 20th Floor
                        Costa Mesa, California 92626
            BY:   **MICHELE D. JOHNSON, ATTORNEY AT LAW**

                        LATHAM & WATKINS LLP
                        505 Montgomery Street, Suite 2000
                        San Francisco, California 94111
            BY:   **MELANIE M. BLUNSCHI, ATTORNEY AT LAW**

            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

1  **APPEARANCES**:  (CONTINUED)

2                          GIBSON, DUNN & CRUTCHER LLP
                        One Embarcadero Center, Suite 2600
3                       San Francisco, California 94111-3715
                BY:  **ELIZABETH K. McCLOSKEY, ATTORNEY AT LAW**
4                    **ABIGAIL A. BARRERA, ATTORNEY AT LAW**

5
   **Also Present:  Anjali Dahiya**
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      **I N D E X**

2      Thursday, July 31, 2025 - Volume 6

3                                                          PAGE   VOL.

4      In camera proceedings                             1112    6
       Defendant Rests                                   1125    6
5      Charging Conference                               1131    6

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    <u>Thursday - July 31, 2025</u>                        <u>9:06 a.m.</u>

2                        P R O C E E D I N G S

3                            ---oOo---

4        (Proceedings were heard out of the presence of the jury.)

5            **THE COURTROOM DEPUTY:**  All rise.  This court is now in

6    session, the Honorable James Donato presiding.

7            **THE COURT:**  Good morning.

8            **ALL:**  Good morning, Your Honor.

9            **THE COURTROOM DEPUTY:**  Please be seated.

10       (The following proceedings were held in camera.)

11           **THE COURTROOM DEPUTY:**  Calling Civil 21-757, Frasco

12   versus Flo Health, Inc.

13   ████████

14       ██████████    ████████████████████████████

15   ██████████████████████████████████████

16       ██████████   ████████████████████████████

17   █████████████

18       ██████████   ████████████████████████

19   ████████████████

20       ██████████   ████████████████████████████

21   ██████████

22       ██████████   ████████████████████████████

23   ██████████

24       ██████████   ████████████████████████████

25   ██████████

# PROCEEDINGS IN CAMERA



# PROCEEDINGS IN CAMERA



# PROCEEDINGS IN CAMERA



# PROCEEDINGS IN CAMERA



**PROCEEDINGS**

1 ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮ ▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮ ▮▮▮▮▮

4            (Recess taken at 9:11 a.m.)

5     (Proceedings were heard out of the presence of the jury.)

6         (Proceedings resumed at 9:34 a.m.)

7      (The following proceedings were heard in open court:)

8     **THE COURTROOM DEPUTY:**  All rise.

9   You may be seated.  We're back on the record in Civil

10 21-757.

11     **THE COURT:**  Okay.  What's the plan for the day?

12     **MR. CLUBOK:**  Your Honor, the only open witness is this

13 video deposition designation that we're considering playing,

14 but plaintiffs have an objection.

15     **THE COURT:**  That's it?

16     **MR. CLUBOK:**  That's the only thing on the table for

17 today in terms of further evidence before defense rests.

18     **THE COURT:**  Are we finished with the other person?  Is

19 she done?

20     **MR. LEVIS:**  Yeah.

21     **MR. CLUBOK:**  Ms. Golbeck?  Yes.  They rested.

22 Remember?  They rested.

23     **THE COURT:**  Yeah, we're done, okay.  All right.  That

24 sounds fine.

25   Now, what's the issue with this witness?

1    **MR. LEVIS:** Sure. The issue is defendants intend to

2 play a video by Madeline Kiss, who was originally one of

3 plaintiffs in the case but was not proposed as a class

4 representative and we do not believe is a member of the class.

5 Subsequently, we were unable to confirm data that she actually

6 used the app.

7    That's why we did not advance her as a class

8 representative. We're not actually sure she could file a claim

9 in this case, so we do not think her testimony is relevant at

10 all since she's not a class member and no longer part of the

11 case.

12    **THE COURT:** Oh. Not a class member. Okay.

13    Defendant?

14    **MR. CLUBOK:** Well, Your Honor, in Your Honor's order

15 on class certification, Footnote 4, Your Honor says,

16 "Plaintiffs did not say why named plaintiffs Pietrzyk,

17 Ridgeway, and Kiss are not seeking appointment as class

18 representatives under Rule 23. The Court construes this to

19 mean that they remain in the class as class members only."

20    That class definition seems to squarely cover Ms. Kiss.

21 Her interrogatory response says that the approximate date that

22 she signed up for the Flo Health app was sometime in the fall

23 of 2016 to spring of 2017, or early 2018, and then she deleted

24 the app January 13, 2021, and she last used the app likely in

25 the week before January 13, 2021. That's Ms. Kiss' response

1    to --

2            THE COURT:  Why don't you hand that to Ms. Clark,

3    please.

4            MR. CLUBOK:  Sure, Your Honor.

5            THE COURT:  Well, you have an interrogatory response

6    saying she signed up.

7            MR. LEVIS:  Yeah, I don't think the issue is whether

8    she signed up.  I think the issue is when she signed up, and

9    early -- signing up in the fall of 2016 would put her before

10   the start of the class period.  We think that's why there's no

11   data showing that she used the app, which is why we didn't

12   advance her in the class.

13           THE COURT:  She said sometime between fall of 2016 to

14   spring of early 2018.

15           MR. LEVIS:  Correct.  That's what she remembers.  And

16   when we subsequently looked for data from Flo, there was not a

17   record that she had a Flo account or data for Flo, so --

18           THE COURT:  She's not here, so I can't -- I can't ask

19   her any questions.

20           MR. LEVIS:  I understand.

21           THE COURT:  It's three minutes of testimony.  I mean,

22   does it really matter?

23           MR. LEVIS:  The only thing I'd say is if Your Honor is

24   going to allow the testimony to be played, we received this

25   late after the disclosure deadline.  We had some counters we'd

1    play.  I understand if you're going to allow it to go

2    forward --

3         **THE COURT:**  You have some counters?  Yeah, that's

4    fine, of course.

5         **MR. CLUBOK:**  Yes, but just for the record, we

6    disclosed this and designated this testimony weeks ago when it

7    was -- the deadline for -- original deadline for designations.

8    We had disclosed more of her testimony.  Given the way the case

9    has progressed and given that this response to Mr. Canty's

10   argument to our client that there couldn't be a woman that

11   would make her period public, two days ago we disclosed that

12   shortened version, not additional testimony -- this shortened

13   version.  So I just want to put on the record we absolutely

14   disclosed this way in advance, the whole amount.  We disclosed

15   a small portion --

16        **THE COURT:**  I didn't say you didn't.  You keep saying

17   you're putting things on the record I didn't ask about.  Just

18   stop.  All right?  We don't need it.  Okay?  When I have a

19   question that matters, I'll ask.

20      So go ahead.  Play your designations -- your counters,

21   whatever they are.

22        **MR. LEVIS:**  Okay.

23        **MR. CLUBOK:**  By contrast --

24        **THE COURT:**  Let's bring them out.

25        **MR. CLUBOK:**  Can I just say one thing, Your Honor?  We

1  have not yet seen their designations because they're just doing

2  them now, apparently, so --

3       **THE COURT:**  Did you not share them?

4       **MR. LEVIS:**  We sent them.

5       **MR. CLUBOK:**  Like 10 minutes ago.  So now we need to

6  see their counter-designations, take a look at, and maybe

7  respond.  We did --

8       **THE COURT:**  From what I've seen here, this women's

9  testimony is like a big nothing, so what are the designations?

10  I mean, how long are they?

11       **MS. VILLEGAS:**  They're not long.

12       **THE COURT:**  How long are the designations?

13       **MR. LEVIS:**  Yeah, I don't know.  I assume they're

14  short.

15       **THE COURT:**  Well, you put them together, didn't you?

16       **MR. LEVIS:**  Yes.  I personally didn't put them

17  together.  I just don't know the time.  I'm just checking.

18       **THE COURT:**  Just give me an estimate.  You looked at

19  them last night.

20                   (Counsel conferring.)

21       **THE COURT:**  Two minutes?  I mean, they're

22  three minutes, 48 seconds --

23       **MR. LEVIS:**  I'm being told they're approximately

24  five minutes, maybe less.

25       **THE COURT:**  Odd comments about the red demon.  I mean,

1    really?  Okay.  Is that what you want to counter?

2         **MR. LEVIS:**  Yeah.  I mean, we don't think the

3    testimony is relevant, which is why we thought it should be

4    excluded.

5         **THE COURT:**  Just tell me how long is it?

6              (Discussion held off the record.)

7         **THE COURT:**  Are you sure you want to end with this?

8    Is this really worth it?  This testimony looks like nothing to

9    me.  It's up to you.

10        **MR. CLUBOK:**  Your Honor, I'm going to take your

11   advice.  If it looks like a nothing to you, that's fine.  We

12   will --

13        **THE COURT:**  You want to skip it?

14        **MR. CLUBOK:**  We will skip it and take your advice, and

15   we appreciate it.

16        **THE COURT:**  You can't afford my advice, so...

17                   (Laughter.)

18        **THE COURT:**  I'm not giving advice for free.

19        **MR. CLUBOK:**  We'll take Mr. Levis' advice, Your Honor.

20        **THE COURT:**  I want to be clear:  It's totally your

21   call.

22        **MR. CLUBOK:**  Of course.  No, I understand.  I was

23   obviously joking.  We'll take Mr. Levis' advice and we'll

24   just --

25        **THE COURT:**  Okay.  So that's it?

1          MR. CLUBOK:  We'll rest.

2          THE COURT:  We're to call them in and you're going to

3     say "defendant rests"?

4          MR. CLUBOK:  I'm sorry.  One quick question, Your

5     Honor.

6          THE COURT:  All right.  Yes.

7          MR. CLUBOK:  Okay.  So I think that is the final

8     answer.

9          THE COURT:  I'm going to call them in, tell them it's

10    just Meta, and then you're going to say "defendants rest."

11    Okay?

12         MR. CLUBOK:  Yes, Your Honor.  The matter rests;

13    right?

14         THE COURT:  Well, you're the defendant.

15         MR. CLUBOK:  Defendant.

16         THE COURT:  However you want to say it.

17         MR. CLUBOK:  I apologize.  I thought you said

18    "defendants."

19         THE COURT:  No, defendant.

20       All right.  Here we go.

21         THE COURTROOM DEPUTY:  All rise.

22                   (The jury enters the courtroom.)

23      (Proceedings were heard in the presence of the jury.)

24         THE COURTROOM DEPUTY:  Please be seated.  We're back

25    on the record in Civil 21-757.

1    **THE COURT:** All right. Members of the jury, you will

2  remember on our very first day, jury selection, I told you this

3  is a live show. There are developments that happen.

4    I'm going to apprise you of some developments. The first

5  development is you do not have to answer any questions about

6  Flo in your jury deliberations. All right?

7    You're only going to answer questions with respect to the

8  remaining defendant. That's Meta.

9    Do not speculate. Don't spend a minute or a second of time

10  trying to figure out why this is so. These things just happen.

11   There's nothing to engage your attention in any way, so just

12  put it out of your mind and focus on what you're going to be

13  called to do tomorrow, which is when the case will be in your

14  hands, and that is to answer the questions pursuant to the jury

15  instructions that I give you at that point and the verdict form

16  that you'll have. All right?

17    Now, we will close tomorrow, so that means the party -- the

18  plaintiff and the remaining defendant, Meta, will both make

19  their closing arguments. They both get up to 45 minutes each,

20  so just be prepared to settle in. We'll have a little stretch

21  break in between because it's very important for you to

22  maintain your, you know, attention, as you have throughout this

23  trial. I've been watching closely and you've all been very

24  attentive, and I know the parties appreciate that.

25    Then your deliberations will start. So tomorrow is

1  definitely a 9:00-to-5:00 p.m. day, and that will be the case

2  starting on Monday until you reach a verdict.  All right?  So

3  just from now on, it's a full-time gig.  Okay?  9:00 to 5:00.

4      All right.  Now, the plaintiff has rested, which means it's

5  Meta's opportunity if they wish to do whatever they'd like to

6  do.

7      Meta, what would you like to do?

8          **MS. JOHNSON:**  Your Honor, Meta rests its case.

9          **THE COURT:**  Okay.  So that is it for your day today.

10  There are no -- the evidence is closed.  So you're going to

11  get -- I would think of it as a bonus day to attend to your

12  affairs before you settle in for jury deliberations from

13  9:00 a.m. to 5:00 p.m., so take advantage of it.

14     And although I just said this to you I think less than

15  18 hours ago, let me tell you again:

16     Don't think about anything, including anything I've said

17  today.  Put it all out of your mind.  Go and attend to

18  everything else that you have to do or would like to do, and

19  I'll see you tomorrow morning at 9:00 a.m.

20          **THE COURTROOM DEPUTY:**  All rise.

21             (The jury leaves the courtroom.)

22     (Proceedings were heard out of the presence of the jury.)

23          **THE COURTROOM DEPUTY:**  You may be seated.  All right

24  I'll have those posted soon.  I'll probably have you back at

25  1:30 or 2:00 and I'll say it in the cover.

1    **MR. CLUBOK:**  Your Honor, we would like to make a

2  Rule 50(a) motion.

3    **THE COURT:**  Oh, yes.  Go ahead.

4    **MR. CLUBOK:**  Thank you.

5    Your Honor, plaintiffs' CIPA claim against Meta fails for

6  multiple independent reasons.  Meta did not eavesdrop upon or

7  record plaintiffs' conversations.  The secondhand repetition of

8  the contents of the conversation does not amount to

9  eavesdropping or recording.  That's *Smith versus LoanMe* and

10  *Flanagan versus Flanagan*, holding there's a critical

11  distinction between eavesdropping upon or recording a

12  conversation and later disseminating its contents.

13    There's been no evidence presented that suggests that Meta

14  recorded -- received anything approaching a live transmission

15  or verbatim recording of plaintiffs' communications with Flo.

16    Rather, as both experts testified and the documentary

17  evidence confirmed, as well as the fact witnesses like

18  Mr. Wooldridge, the custom app events at issue and the

19  corresponding parameters that Flo transmitted or attempted to

20  transmit to Meta which were chosen and compiled by Flo into its

21  code were distinct from the communications between plaintiffs

22  and Flo.  So under both *Smith* and *Flanagan*, Meta and plaintiffs

23  have no cause of action to sue based on the separate

24  communication between Flo and Meta because plaintiffs were not

25  a party to that communication.

1    See the *Smith* case, 11 Cal.5th at 200, *Noel versus Hall* --

2  in *Noel versus Hall*.  And additionally, even if Meta received

3  any recording or so-called recording of plaintiffs'

4  conversation with Flo, the evidence showed that it was not Meta

5  who recorded those conversations, but entirely at the

6  discretion of Flo.

7    **THE COURT:**  Okay.

8    **MR. CLUBOK:**  Furthermore, Your Honor, the SDK is not

9  an electronic amplifying or recording device.  The word

10  "device" means a piece of equipment or a mechanism designed to

11  serve a special purpose or perform a specific function.  It's

12  the *Moreno* case.  Software is not a tangible piece of equipment

13  and thus does not qualify as a device under 632, and even if a

14  software application could be seen as a virtual device, the SDK

15  still would not qualify because it's just a collection of open

16  source code, lines of code that become fully integrated into a

17  broader software application.  As the expert testimony on both

18  sides confirmed, even if the SDK were considered to be or

19  treated as a device, the evidence shows it's not a recording

20  device, evidence on both sides, because it's used to transmit

21  data that's created or selected by Flo but not to record users'

22  actual conversations with Flo.

23    Third, Meta did not intentionally obtain any of the

24  at-issue relevant data.  The plaintiffs failed to prove that

25  Meta intentionally eavesdropped upon or recorded the kinds of

1    communications at issue in this lawsuit according to *Doe I*

2    *versus Google* case.  Meta did not act consciously and

3    deliberately with that goal in mind, under *U.S. versus*

4    *Christensen*, the Ninth Circuit, Meta, in fact, specifically

5    tried to avoid obtaining confidential information by requiring

6    them to obtain or contracting with them to obtain notice and

7    consent from their users as to all data sharing and

8    specifically prohibiting them in their contractual agreements

9    from sharing health or other categories of sensitive

10   information.  See the *BK versus Desert Care Network*.  The

11   evidence shows that Meta --

12          **THE COURT:**  You know, it's an oral motion.  It's not

13   an opportunity to read a canned brief.  I got it.  Okay?

14       Plaintiff, go ahead.

15          **MR. CLUBOK:**  May I briefly give three bullet points of

16   the remaining bases --

17          **THE COURT:**  I'm just not doing that.

18          **MR. CLUBOK:**  Okay.

19          **THE COURT:**  It's not appropriate for an oral Rule 50

20   motion.

21       Plaintiffs?

22          **MR. CANTY:**  Yes, Your Honor.  Plaintiffs believe that

23   if you take the evidence in the light most favorable to the

24   plaintiffs that we've made out each and every element of the

25   California Invasion of Privacy Act, that Meta intentionally

1    eavesdropped by the use of a recording device of the private

2    conversations of the women.

3        We heard the testimony from the women.  They considered it

4    private.  We heard the testimony of Dr. Egelman that the SDK is

5    a recording device.  And we have testimony from the women that

6    they did not consent to have their private communications with

7    Flo recorded by Meta.

8        As such, we believe this is a question for the jury to

9    decide.

10        **THE COURT:**  Okay.  The motion is denied, subject to

11    renewal as warranted after the verdict.

12        **MR. CANTY:**  Thank you, Your Honor.

13        **THE COURT:**  Okay.  I'll see you later.

14        **MR. CLUBOK:**  I'm sorry.  Your Honor, may we please be

15    permitted to file this brief in the next hour?

16        **THE COURT:**  No.

17        **MR. CLUBOK:**  There's points on the record that the

18    Ninth Circuit says --

19        **THE COURT:**  You've got plenty.  Don't worry about it.

20    You're fine.  Most of the rule -- people who do Rule 50 motions

21    speak for about 90 seconds.  Okay?  It's not an impediment to

22    appeal if you need to get there.

23        All right.  Thank you.

24        **MS. McCLOSKEY:**  Your Honor, may I put one objection on

25    the record?

**PROCEEDINGS**

1     **THE COURT:**  What?

2     **MS. McCLOSKEY:**  We've raised this issue with you

3  before.  During the testimony --

4     **THE COURT:**  Let me tell you something.  If you're

5  asking for the fourth time to do a retroactive objection to

6  that person, I'm going to sanction you.  I have told you four

7  times in a row now not to do that.  You missed your boat.

8  Don't keep doing this or I'm going start to question your

9  suitability to practice in this district.  You are not hearing

10  me, and I do not have any more time for this.

11    What is your name?

12    **MS. McCLOSKEY:**  My name is Elizabeth McCloskey.

13    **THE COURT:**  That's it, Ms. McCloskey.  You are

14  crossing the line now to the point where you're going to start

15  facing some sanctions -- personal, professional conduct

16  sanctions.  Now sit down.

17    **MS. McCLOSKEY:**  Thank you, Your Honor.

18    **THE COURT:**  That is a terrible way to end your case.

19    **THE COURTROOM DEPUTY:**  All rise.

20    You may be seated.

21             (Recess taken at 9:50 a.m.)

22          (Proceedings resumed at 1:41 p.m.)

23    (Proceedings were heard out of the presence of the jury.)

24    **THE COURTROOM DEPUTY:**  All rise.  This Court is now in

25  session.  The Honorable James Donato presiding.

1    Please be seated.

2         THE COURTROOM DEPUTY:  We're back on the record in

3    Civil 21-757, Frasco versus Flo Health.

4         THE COURT:  Okay.  On the fast track to Judgment Day.

5    We all set?

6    I posted the proposed final instructions at Docket 741.

7    Let's do that first.

8         MR. CANTY:  Yes, Your Honor.  With respect to the

9    instructions --

10        THE COURT:  Yes.

11        MR. CANTY:  -- we had some proposed edits for the

12   Court.

13        THE COURT:  Proposed edits.  All right.

14        MR. CANTY:  Turning to page 3.

15        THE COURT:  Instruction 2.  Let's do the instruction

16   number.  How about that?

17        MR. CANTY:  Yes, sure.  This is Instruction Number 2.

18   It lists the plaintiffs are Erica Frasco --

19        THE COURT:  Oh, yes.  Okay.  Who should I take out?

20        MR. CANTY:  Erica Frasco and Autumn Meigs.

21        THE COURT:  All right.  So we're going to keep

22   Wellman, Chen, and Gamino.

23        MR. CANTY:  Yes, Your Honor.

24        THE COURT:  Okay.  Done.

25        MR. CANTY:  On Instruction Number 14.

1        **THE COURT:** Okay. Which one?

2        **MR. CANTY:** This is Instruction Number 14, Your Honor.

3  We ask to delete --

4        **THE COURT:** 14.

5        **MR. CANTY:** Yes. Stipulations of fact.

6        **THE COURT:** You want to take that out?

7        **MR. CANTY:** No, no.

8        **THE COURT:** Yeah.

9        **MR. CANTY:** Just some of it.

10        **THE COURT:** Frasco?

11        **MR. CANTY:** Yes. Number 1.

12        **THE COURT:** Number 5?

13        **MR. CANTY:** Number 5.

14        **THE COURT:** That's good.

15        **MR. CANTY:** Number 6, if we could remove the word

16  "defendant." They're no longer a defendant in the case.

17        **THE COURT:** Take "defendant" out. Well, they were a

18  defendant. Well, let's see.

19  Do you want me to take "defendant" out? They were a

20  defendant.

21        **MR. CANTY:** Okay.

22        **THE COURT:** Defendant, what do you think? You want to

23  take it out or leave it in?

24        **MR. CLUBOK:** I would leave it in since we stipulated

25  and they were a defendant.

1          **THE COURT:**  Okay.

2          **MR. CANTY:**  And Number 8, Your Honor.

3          **THE COURT:**  Plaintiffs first -- what do you want to

4    change?

5          **MR. CANTY:**  Just take it out.  It's not relevant.

6    When they filed their case against Flo, they're no longer a

7    defendant.

8          **THE COURT:**  Oh, Flo.  Okay, yes.  Wait a minute.

9    Isn't that the -- oh.  What happened?  I didn't realize that

10   you sued Meta and Flo on different dates.

11         **MR. CANTY:**  Yes, Your Honor.

12         **THE COURT:**  Oh, okay.  8?  Take 8 out?

13         **MR. CLUBOK:**  Well, we think it should stay in, Your

14   Honor.  It may well go to the statute of limitations and the

15   fact that they waited an additional six months to sue Meta.

16         **THE COURT:**  Why don't we leave it in.

17         **MR. CLUBOK:**  Okay.

18         **THE COURT:**  We'll leave that one in.  All right.

19      So take out 1 and 5.

20         **MR. CANTY:**  Your Honor, Instruction Number 19.

21         **THE COURT:**  One second.

22      Defendant, why don't you come up here.

23         **MR. CLUBOK:**  Yes, Your Honor.

24         **THE COURT:**  Which one?  19?  What about Number 13?

25   Shouldn't I take Meigs out of that?

1    **MR. CANTY:**  Yes.  I'm sorry, Your Honor.  I thought I

2  had mentioned that.  Ms. Meigs, that was Number 5.

3    **THE COURT:**  We'll just do a universal remove of Frasco

4  and Meigs.  Okay?

5    Okay.  Now, which one do you have?

6    **MR. CANTY:**  Your Honor, I have a typographical edit on

7  19, but I did want to talk generally about 18 and 19, the

8  affirmative defense.

9    **THE COURT:**  Wait.  19?

10   **MR. CANTY:**  This is 18 and 19, the affirmative defense

11  statute of limitations.

12   **THE COURT:**  You agreed to this.

13   **MR. CANTY:**  I understand.  That was with the

14  understanding that Meta was going to present evidence that

15  individuals were on notice or they had information to consider

16  that put them on notice that -- that there was a claim.

17   **THE COURT:**  Good argument.  Good argument.  I'm not

18  going to take it out, though.

19   **MR. CANTY:**  Okay.

20   **THE COURT:**  But you can -- let me put it this way:  I

21  understand what you're saying, but you're going to -- you can

22  argue it.

23   **MR. CANTY:**  Your Honor, we would ask, then, that there

24  be no mention of the Wall Street Journal article in the closing

25  arguments, since it's not in evidence and no witness was asked

1    specifically --

2            THE COURT:  It came up.

3            MR. CANTY:  We searched the record, Your Honor.  With

4    respect to the witness --

5            THE COURT:  "Bombshell."  Wasn't that it?

6            MR. CANTY:  It came up -- that question was sustained.

7    It came up whether Sarah Wellman had seen the article, and she

8    said the first time she saw the article was after this

9    litigation was filed.  There's no evidence in the record that

10   any of the plaintiffs saw that article.

11           THE COURT:  It's good for argument, but I'm not going

12   to take it out.

13           MR. CANTY:  I understand, but to argue that it put

14   plaintiffs on notice when no plaintiff said they saw it.

15           THE COURT:  You can tell them that.  And then there's

16   always post-trial if anything comes up.

17           MR. CANTY:  Yes, Your Honor.

18      So with respect to --

19           THE COURT:  I agree with you.  I was surprised, but --

20   you know, whatever.  Okay.

21      So that takes care of 18.  Now which one?  19?

22           MR. CANTY:  19, the third line down.

23           THE COURT:  Third line down.

24           MR. CANTY:  Yes.

25           THE COURT:  Line Number 6?

1    MR. CANTY:  This is line 5.

2    THE COURT:  Chen, Gamino.  Okay.  Go ahead.

3    MR. CANTY:  Proved that before that date, they did not

4  discover --

5    THE COURT:  Oh, discover, yes.  Okay.

6  Good.

7  Okay.  That's it?

8    MR. CANTY:  That's it, Your Honor.

9    THE COURT:  Excellent.  Okay.

10  Defendant?

11    MR. CLUBOK:  Yes, Your Honor.

12    THE COURT:  So, Plaintiff, all the other jury

13  instructions are okay from your perspective; right?

14    MR. CANTY:  Yes, Your Honor.

15    THE COURT:  Okay.  Good.

16  Okay.  Defendant.

17    MR. CANTY:  Your Honor, the only issue that defendants

18  want to raise is the instruction for intentionally.

19    THE COURT:  Oh, yes.  What number is that?

20    MR. CLUBOK:  That's Instruction Number 17.

21    THE COURT:  Yes.  I am not going to use your proposed

22  extract from the federal wiretap statute because this is a

23  state statute, and I took the definition of "intentionally"

24  directly out of a state California Court of Appeal case that

25  was construing that very portion, that very word, in CIPA.  So

 1    that's why I'm doing that.

 2              MR. CLUBOK:  May I be heard, Your Honor?

 3              THE COURT:  Yes, very briefly, please.

 4              MR. CLUBOK:  The Ninth Circuit has said that CIPA is

 5    modeled after the Federal Wiretap Act, and that case, the *Rojas*

 6    case that they cited, even that case goes on to explain the

 7    distinction between how plaintiffs are trying to use it here

 8    versus how it was used in *Rojas*.  The fundamental difference is

 9    between a first-party use case or a third-party misuse case,

10    and *Rojas* -- the entirety of *Rojas* explains why it was

11    appropriate there, because HSBC in that case was recording

12    themselves, every single employee's or many employees'

13    confidential like phone conversations.

14        So that's why that expanse of definition was given.

15    Basically, the second clause that Your Honor has added -- or

16    Your Honor's -- beginning with "or with the knowledge to a

17    substantial certainty" that the plaintiffs asked for and

18    Your Honor added.

19        It is very different in *Rojas* where it was the first party,

20    you know, recording their employees' conversations, and that's

21    why that standard was given.

22        This is a criminal statute.  The intent standard, the

23    Ninth Circuit has said -- as I said in other cases -- really

24    has to track what it would be, even though this is a civil --

25    obviously a civil cause of action under that standard.

1    **THE COURT:**  This is a state cause of action.

2        **MR. CLUBOK:**  I'm sorry.  I agree.

3    But it's a state cause of action that the Ninth Circuit has

4 said is modeled after the Federal Wiretap Act.

5        **THE COURT:**  Yes.  We don't need to do that because I

6 have a state statute construed by a state court of appeal.  So

7 I'm going to use that.

8        **MR. CLUBOK:**  Understood.  And I just for the -- may

9 I ask if we could file a short brief?

10       **THE COURT:**  No, no briefs.  Past the stage of briefs.

11 You can raise it in your JMOL if you need to.  Okay?  That's

12 what the JMOL is for.  Just do all that later.

13    I've never seen people so eager to spend client money on

14 briefs.

15    Okay.  That's it?  Good.  17?

16       **MR. CLUBOK:**  With that exception noted --

17       **THE COURT:**  I have noted --

18                    (Simultaneous speakers.)

19       **MR. CLUBOK:**  No other objections to the instructions.

20       **THE COURT:**  No other objections to the jury

21 instructions?

22       **MR. CLUBOK:**  No, not from --

23       **THE COURT:**  Okay.  Let's look at the verdict form.

24       **MR. CANTY:**  Your Honor, we have no objection to the

25 verdict form with one exception.

1    On Question 2, we would suggest that the --

2        THE COURT:  Can I just jump in?  So here's what I did.

3    I just want to be clear on the verdict form.  It turned out

4    that CACI had model instructions on the CIPA, the statute we

5    were just discussing, that broke down the elements like this.

6    So that's why I've adopted that presentation of the California

7    Invasion of Privacy Act in Questions 3, 4, and 5.

8        And Questions 1 and 2, with respect to the statute of

9    limitations, are also drawn directly from a CACI-proposed

10   instruction as well as the instructions on limitations that you

11   just referred to.

12       Now, you were saying -- what do you want me to look at?

13       MR. CANTY:  Yes.  For Question 2 --

14       THE COURT:  Question 2, yes.

15       MR. CANTY:  -- what we would suggest is that the

16   language track the jury instruction that you're giving.  So,

17   for example, the question would read:  Did Chen, Gamino, or

18   Wellman discover or know of facts that would have caused a

19   reasonable person to suspect that they had suffered harm that

20   was caused by Meta's wrongful conduct prior to June 7, 2020?

21       THE COURT:  What instruction was that?

22       MR. CANTY:  This would be for Question 2.

23       THE COURT:  No, I know.  What --

24       MR. CANTY:  This is the statute of limitations, the

25   second question under the statute of limitations.

1    **THE COURT:**  No, I know that, but what is the jury

2  instruction?

3    **MR. CANTY:**  19, Your Honor.

4    **THE COURT:**  19.

5    All right.  So instruction 19 states:  If plaintiffs Chen,

6  Gamino, and Wellman prove that before the date -- before that

7  date that they did not discover and did not know of facts that

8  would have caused --

9    Oh.  So what do you want to do?  You want to put that in

10  Question 2?

11    **MR. CANTY:**  Yeah.  The question would track that

12  language, so it would read:  Did Chen, Gamino, and Wellman

13  discover or know of facts that would have caused a reasonable

14  person to suspect that they had suffered harm that was caused

15  by Meta's wrongful conduct?

16    **THE COURT:**  All right.

17    **MR. CANTY:**  Prior to June 7, 2020.

18    **OTHER ATTY:**  Okay.  Defendant?

19    **MR. CLUBOK:**  Your Honor, if there's a change to be

20  made, then this -- and this goes to an issue I wanted to raise

21  generally -- it has to -- they're turning it into an individual

22  issue as opposed to a classwide inquiry.  And the question, the

23  specific question whether Ms. Chen, Ms. Gamino, and Ms. Wellman

24  had facts to -- that would have caused a reasonable person to

25  suspect they had suffered harm -- that is the heart of why this

1   is an individual issue.  It can't --

2       **THE COURT:**  Wait.  What are you talking about?  I just

3   want to know -- he just wants to know if he wants to change

4   this language.  You already said we're done on the jury

5   instructions.  We're just looking at the verdict form now.

6       **MR. CLUBOK:**  We don't agree the verdict form can be

7   changed without having individual line items for each of the

8   three plaintiffs and making it clear that is an individual

9   question for each of the three plaintiffs.

10      It also says -- so that -- that's -- yeah, that's the

11  issue.

12      **THE COURT:**  None of the plaintiffs were asked

13  individual questions about when they saw the Wall Street

14  Journal article.

15      **MR. CLUBOK:**  I believe they each were, Your Honor.

16  That's what Mr. Canty just said.

17      **THE COURT:**  He said that the Wall Street Journal

18  article didn't come up.

19      **MR. CANTY:**  Correct.

20      **THE COURT:**  Exactly the opposite.

21      **MR. CLUBOK:**  I'm sorry, Your Honor.  Each of the

22  plaintiffs had testified in their depositions that they'd never

23  seen it.

24      **THE COURT:**  Deposition doesn't matter.  You're in

25  court now.  What matters is what happened and was admitted at

1  trial, not at deposition.  That doesn't matter, what happened

2  in deposition.  That's not evidence that this jury has seen.

3       **MR. CLUBOK:**  Understood.

4       **THE COURT:**  You can only go -- only go by what they

5  asked and answered -- what they were asked and what they

6  answered here in court.

7       **MR. CLUBOK:**  Right, but the inquiry, if it's going to

8  be applied to individuals, is fine.  The jury instruction -- or

9  the verdict form, I should say, is -- is -- is okay if it --

10 the current -- without identifying individuals, the verdict

11 form is basically saying the whole class is determined whether

12 these three --

13      **THE COURT:**  It identifies three individuals.  It says

14 Chen, Gamino, and Wellman.  So if the jury decides that Chen

15 saw it and Gamino and Wellman didn't, they would answer no.

16 It's a conjunctive statement.

17      **MR. CLUBOK:**  So they have to decide that all three saw

18 it in order to --

19      **THE COURT:**  That's what "and" means.

20      **MR. CLUBOK:**  Right, and --

21      **THE COURT:**  What's wrong with that?

22      **MR. CLUBOK:**  Because the statute of limitations is an

23 individual issue, and if one of them did see it --

24      **THE COURT:**  They're going to decide it.  They're

25 doing to say did Chen, Gamino, and Wellman, all three, see it.

1       **MR. CLUBOK:** Oh, I see. But the fact that those three

2    didn't see it -- that -- again, we -- this is part of our class

3    decertification motion that we'd like to make.

4       **THE COURT:** Let's just stop for a moment. We're not

5    doing that now. We're just doing the verdict form. Okay?

6    Just wait and see what happens. You can do whatever you want

7    in the JMOL motion, not now.

8    **A.** And also, when you say we have no other concerns about the

9    jury instructions, you can't pop up later and say: Oh, well,

10    actually, you can't do it this way.

11    You can't do that.

12    Now, the way you formulated it is an alternative way than

13    the CACI formulates it, so it would say before what date?

14    "Before June 7, 2020, did Chen, Gamino, and Wellman discover or

15    know of facts that would have caused a reasonable person to

16    suspect that they had suffered harm that was caused by

17    someone's wrongful conduct?"

18    Is that what you want to say?

19       **MR. CANTY:** Meta's wrongful conduct.

20       **THE COURT:** That's what you want to say?

21       **MR. CANTY:** Yeah.

22       **THE COURT:** That isn't CACI. That is an alternative

23    formulation. I'm happy to -- I don't care. It doesn't make

24    any difference. I think they're both the same. I just like

25    the other one. It's a little shorter.

1    **MR. CLUBOK:**  But, Judge -- Your Honor, I'm sorry.

2    Your Honor, now you'll be asking the jury that they have to

3    include that all three of these people knew of facts or should

4    have been -- should have known of facts or did know of facts,

5    and that's a standard that can't possibly be the case for the

6    whole class.  Obviously, the whole class didn't read the

7    Wall Street Journal, but for anyone in the class who read the

8    Wall Street Journal or could have -- or other reasons to be on

9    notice, and we go beyond the Wall Street Journal in this

10   argument -- it's inherently an individual issue, not by --

11        **THE COURT:**  Let me jump in.  I'm not sure -- I seem to

12   have problems getting through to you and your trial team about

13   what I say.

14   So here's the issue:  We're not taking up class cert.  Now,

15   I'm going to footnote that just because I don't think you're

16   remembering my order clearly.

17   I said in class cert you had no evidence about the

18   penetration of the Wall Street Journal article among the

19   members of the class.  You didn't present any evidence that one

20   person read it or a million people read it.  You didn't do that

21   at trial either.  You presented zero evidence at trial that

22   one, five, 50, or 500 million people saw the Wall Street

23   Journal article.

24   You're not going to be very well situated to come and tell

25   me, oh, we don't know and so you can't certify a class, because

1  you did not put on any evidence that suggested there was any

2  uncertainty about that.  You could have had someone come in and

3  say something and you didn't, so --

4  You can save that for another day, but I don't think you're

5  recalling my order clearly.

6  But the only question now -- CACI offers two versions of

7  the knowledge or discovery point.  The one I have here is

8  Version 2 and then the one your colleague here would like is

9  Version 1.

10  Do you have a preference between Version 1 and Version 2?

11  Version 1, as your colleague suggests, takes the exact

12  language out of the jury instruction.  Version 2 is just, in my

13  view, more elegant and simple.  But I'm agnostic on the --

14  Which one do you prefer?  Just pick one.

15  MR. CLUBOK:  I'd prefer 1 if the three individuals are

16  named on the verdict form.

17  And I do remember your order on class cert.

18  THE COURT:  Just pick Version 1 or Version 2.  Which

19  one do you want from CACI?

20  MR. CLUBOK:  Is Version 2 the one you have --

21  THE COURT:  Version 2 is the one here on the verdict

22  form and Docket Number 742.  Version 1 is the one that takes

23  the language directly out of Instruction 19.

24  MR. CLUBOK:  Your Honor, I guess, then, we would say

25  Version 1, but only with individual line items.  And I

1    understand that's not on option you're giving me.

2            THE COURT:  Only with what?

3            MR. CLUBOK:  We would go with Version 1, which I think

4    is what Mr. Canty is saying, but only with individual lines for

5    each plaintiff.  That would be what we are requesting.  I

6    understand you've rejected that, but I just want to be clear.

7    That's --

8            THE COURT:  I don't actually care.  It doesn't make

9    any difference to me.  Do you want --

10           MR. CANTY:  They should be together, consistent with

11   CACI 1.  And I believe defendants have agreed that we should

12   use that.

13           THE COURT:  I don't really think it makes any

14   difference.  It literally makes no difference if it resolves --

15           MR. CANTY:  Your Honor, I understand.  It's not

16   tactical.  I just think it tracks the language more closely to

17   the instruction --

18           THE COURT:  I will use the before -- I'll use that

19   formulation that follows the language in Instruction 19.  I'm

20   going to do that.

21      But you're -- the defense lawyer is suggesting that you

22   just have a little box for each of those people.

23      It doesn't matter.  I mean, it makes no difference.  As

24   long as one person falls within the class is good.  You just

25   need one person who's within the limitations period.

1          MR. CANTY:  I agree.  I just think it overly

2     complicates it for the jury.

3          THE COURT:  I don't know if complicates it any more

4     than saying all three together in one sentence.

5          MR. CANTY:  We'll certainly defer to the Court.

6          THE COURT:  All right.  I'll put all three.  It makes

7     no difference.  I'll put a box for all three.

8        Okay.  Anything else on the verdict form?

9        Take the path of the least resistance.  That's always

10    better.

11         MR. CANTY:  Your Honor, we had a discussion, and

12    certainly I think we're -- this is one time I'm in agreement

13    with defense counsel.  We're pleading slight ignorance.

14       My understanding was that the substantive charge goes

15    before any affirmative defenses in a verdict sheet.  I'm not

16    100 percent sure of that.

17         THE COURT:  In what?

18         MR. CANTY:  That the substantive charge would go

19    before any affirmative defense on a verdict sheet.

20         THE COURT:  Well, no, because if they find that

21    they're barred, you wouldn't take up the -- that's my --

22         MR. CANTY:  Okay.

23         THE COURT:  If they answer no, if they're outside the

24    period, there's no reason for them to answer the CIPA.

25         MR. CANTY:  Understood.

1      **THE COURT:**  Do you see what I'm saying?

2      **MR. CANTY:**  Yes, Your Honor.

3      **THE COURT:**  I think analytically, that's the way it

4  works.

5      **MR. CANTY:**  Yeah.

6      **THE COURT:**  Let's say you win.  I don't know.  Who

7  knows?  Let's say you win.  What are we going to do about

8  damages?  I'm just curious.  I'm not going to tie your hands.

9  We're just talking among friends.

10      **MR. CANTY:**  I think what we would do is we would have

11  the claims-made process where individuals could file for

12  damages --

13      **THE COURT:**  That's it?

14      **MR. CANTY:**  -- under the statute.

15      Well, we also have a -- we have a -- presumably we'll have

16  a class -- although we wouldn't have a California class.  We

17  would do a traditional claims-made process post-verdict.

18      **THE COURT:**  So just whoever files, files, and that's

19  the ultimate judgment amount?

20      **MR. CANTY:**  The defendants would have to set up a fund

21  to fund the statutory amount that each eligible class member is

22  entitled to.

23      **THE COURT:**  If it's a thousand dollars; right?

24      **MR. CLUBOK:**  I believe it's $5,000.

25      **MR. CANTY:**  $5,000.  Excuse me.  $5,000 for

1   California.

2         **THE COURT:**  Oh, is that the 5,000 one?

3         **MR. CLUBOK:**  I believe so.

4         **THE COURT:**  So it's 5,000.  All right.  And then

5   whoever comes, comes, and that's it?

6         **MR. CANTY:**  That's my understanding.

7         **THE COURT:**  And how are you calculating -- it's just

8   one 5,000 payment per plaintiff; right?

9         **MR. CANTY:**  Correct.

10         **THE COURT:**  And you agree with that?

11         **MR. CANTY:**  Yes, Your Honor.

12         **THE COURT:**  So we just wait and see?  Is that the

13   idea?

14         **MR. CANTY:**  That is my understanding on how the

15   claims-made process works; yes, Your Honor.

16         **THE COURT:**  Okay.

17         **MR. CANTY:**  I have to confess, Your Honor, I've never

18   had a verdict where there's been a claims-made process made.

19   These cases often settle, so I'm -- I'm -- it's my

20   understanding, but I can do further research if the Court wants

21   additional information.

22         **THE COURT:**  So -- so we just have to wait and see.

23         **MR. CANTY:**  Yes, Your Honor.

24         **THE COURT:**  Okay.

25         **MR. CLUBOK:**  Your Honor, may I be heard?

 1          THE COURT:  Yes.  Please.

 2          MR. CLUBOK:  We think that the damages, if any, would

 3   be decided pursuant to the *Campbell* test, *Campbell v. Facebook*,

 4   315 FRD 250, Northern District of California 2016.

 5      There's a multifactor test even when there is a statutory

 6   damage award like this that on its face just says a number like

 7   5,000.  We may have a Seventh Amendment -- Sixth Amendment --

 8   one of the amendments.  Seventh Amendment -- sorry, Your

 9   Honor -- right to a jury on those issues or at least a judicial

10   determination, and it would be an individual determination.

11      That's our position.  Also --

12          THE COURT:  That's not the -- that's some brother

13   judge talking.  That's not California state law.

14      We'll deal with it when we have to deal with it.  I just

15   didn't -- I mean, normally a verdict has a punchline, but

16   there's not going to be a punchline --

17          MR. CANTY:  Correct.

18          THE COURT:  -- for dollars.

19          MR. CANTY:  Correct.

20          MR. CLUBOK:  And if I may, Your Honor, are we entitled

21   to tell the jury the consequence of the decision?

22          THE COURT:  Of course not.  Absolutely not, yeah.

23          MR. CLUBOK:  If I could just -- on the verdict form --

24          THE COURT:  That would be equivalent of telling a

25   verdict a jury in an antitrust case, "And, by the way, every

1    dollar you award is going to get tripled."  You don't do that.

2         MR. CLUBOK:  Thank you.

3      On the verdict form, with the individual questions for each

4    of the three, we also think that it's required for Questions 4

5    and 5, Your Honor.

6         THE COURT:  No, that is not required for Questions 4

7    and 5.  I'm only doing it as a slight accommodation on

8    limitation because it's already sort of phrased that way as all

9    three.

10        MR. CLUBOK:  We appreciate it.

11        THE COURT:  And I'm not going to do on 4 and 5.

12        MR. CLUBOK:  Well, Your Honor, this, again, goes to

13   my -- what I would like to make at least an oral motion to

14   decertify --

15        THE COURT:  It takes one person, just one named

16   plaintiff, to have a claim for the class.  That's it.  It just

17   takes one.

18        MR. CLUBOK:  But there's very different -- the

19   evidence showed in this case -- the evidence did show very

20   different arguments about reasonable expectation of privacy,

21   different issues with consent.

22        THE COURT:  It doesn't matter what their reasonable

23   expectations were subjectively.  It's an objective standard.

24     We've talked about this before.  I know you on the defense

25   side like to keep saying, "Oh, it depends what every woman

1   thinks."  It doesn't.  Every consumer case, and I've cited case

2   law expressly on this point, it is an objective standard of

3   reasonable expectation of privacy.  It does not matter.  All

4   three of them could have -- all four of them could have come in

5   here and said -- which they didn't, I want to be clear -- but

6   they could have said, "I personally didn't know one way or the

7   other" or "I didn't have any expectation."  It doesn't matter.

8      Now, it may not have been great for the jury to hear that,

9   but as a matter of law, it is an objective standard --

10        **MR. CLUBOK:**  Right --

11        **THE COURT:**  -- and I think it is reasonably objective

12   that the jury could decide one way or the other whether

13   somebody would -- a reasonably objective person would feel

14   invaded by this.  That's what they're going to decide.

15        **MR. CLUBOK:**  Except, Your Honor, for some women,

16   literally the only information that was conveyed was that they

17   were using a period tracker app.  That is a very different

18   test.  Even Your Honor asked people openly in court, "Do you

19   have a period tracker app on your phone?"  And Your Honor said,

20   if you have any concerns about that, you can come talk

21   privately.

22      Everyone opened up and said, "We have a period tracker app

23   on our phone.  No problem."  That's one issue.

24      There was one -- one of the three plaintiffs --

25        **THE COURT:**  Everyone did not open their phone up and

1 say, "I have a period tracker; it's no problem."  Nobody said

2 that.  Not a single person said that.

3      **MR. CLUBOK:**  Your Honor --

4      **THE COURT:**  Okay.  It's an option.  You can save it

5 for closing argument or JMOL motion.

6     I'll see you in the morning.

7      **MR. CLUBOK:**  Your Honor, may I make an oral motion on

8 the decertification very quickly?

9      **THE COURT:**  No, no, no.  You can do that post-trial.

10 JMOL is not a decertification option.  You can ask after --

11     See what the verdict is.  Maybe you don't have to do it.

12 Okay?  Why waste the time?  Just do it on an as-needed basis.

13      **MR. CLUBOK:**  I think that the -- I think we're

14 required to before we agree to let this go to the jury, but --

15      **THE COURT:**  Certification?  No, you ask to decertify

16 after a verdict.

17     Listen, I'm not going to say no if you want to do it.

18 Okay?  So don't worry about it.

19     You all set on demonstratives?  I really, really do not

20 like any interruptions during closing.  It's your last chance

21 to talk.  Okay?  So make sure you've got everything worked out,

22 please, unless -- I really -- just, you know, this is a

23 professional courtesy.  It is our tradition.  Let each other

24 speak.  You can say "he's lying" or "he's doing this," whatever

25 you want to say, but don't pop up during the thing.  Okay?

1    **MR. CANTY:**  Yes, Your Honor.  Got it.

2    **THE COURT:**  Got it all worked out?

3    **MR. CANTY:**  May I ask a question?

4    **THE COURT:**  Yes.

5    **MR. CANTY:**  With respect to the order, it's my

6    understanding that the plaintiffs will go first, and we're --

7    we have the opportunity to reserve rebuttal time?

8    **THE COURT:**  Yes.  You get the last word.  You're the

9    plaintiff.  You've got the burden of proof.

10   **MR. CANTY:**  Thank you.

11   **THE COURT:**  What do you want to do?  40 and 5?

12   **MR. CANTY:**  35 and 10.

13   **THE COURT:**  35 and 10?

14   It's not up to me.  Do you want to decide in the morning?

15   **MR. CANTY:**  Yes, Your Honor.  Thank you.

16   **THE COURT:**  Okay.

17   There's a late-breaking note coming in.

18   **MR. CANTY:**  Yes.

19   Ms. Clark has a request.

20   **THE COURTROOM DEPUTY:**  You're going to need to upload

21   all of the exhibits on a thumb drive to load onto the jury PC

22   tomorrow morning before we start court.

23   **MR. CLUBOK:**  How many copies of that do you need?

24   **THE COURTROOM DEPUTY:**  Just one for the jury PC.

25   **MR. CANTY:**  We'll coordinate with defense.

1      **MR. CLUBOK:**  We'll work together on that.

2      **THE COURT:**  Yes.

3      **MR. CANTY:**  One issue with respect to the initial

4  issue brought up about the statute of limitations.

5      In the event the jury finds that the statute of limitations

6  was in effect, we'd like to reserve the right to move to make a

7  motion pursuant to Rule 50(a).  Obviously we don't want to make

8  that motion now.  We would make it after.

9      **THE COURT:**  Post-trial.

10      **MR. CANTY:**  Thank you, Your Honor.

11      **THE COURT:**  Yeah.

12      **MR. CANTY:**  We just want to reserve that.  Thank you.

13      **THE COURT:**  Do all the cleanup you want, or you

14  can ask for all the cleanup you want post-trial.

15      Okay.  See you in the morning.

16      **MR. CANTY:**  Thank you, Your Honor.  See you tomorrow.

17      **THE COURTROOM DEPUTY:**  All rise.  Court's in recess.

18                (Proceedings adjourned at 2:09 p.m.)

19                        ---o0o---

20

21

22

23

24

25

<u>**CERTIFICATE OF REPORTER**</u>

      I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Thursday, July 31, 2025

_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG, CSR No. 12219
Official Reporter, U.S. District Court