**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Michele D. Johnson (Bar No. 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: +1.714.540.1235

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

**GIBSON, DUNN & CRUTCHER LLP**
Christopher Chorba (Bar No. 216692)
*cchorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1.213.229.7503

Elizabeth K. McCloskey (Bar No. 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera  (Bar No.  301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: +1.415.393.8200

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ERICA FRASCO et al.,<br><br>Plaintiff,<br><br>v.<br><br>FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., and FLURRY, INC.,<br><br>Defendants. | CASE NO. 3:21-CV-00757-JD (consolidated)<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**<br><br>Judge:  Hon. James Donato<br>Court:  Courtroom 11 – 19th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, at a time convenient for the Court, the undersigned will appear before the Honorable James Donato of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and shall then and there present this renewed motion for judgment as a matter of law, or in the alternative for a new trial, on behalf of Defendant Meta Platforms, Inc.

Meta brings this motion under Rules 50 and 59 of the Federal Rules of Civil Procedure. Meta will, and hereby does, move for an order granting judgment as a matter of law or in the alternative a new trial. The motion is based on this notice of motion, the following memorandum of points and authorities the pleadings and other papers filed in this action, any oral argument, and any other evidence that the Court may consider in hearing this motion.

**ISSUES PRESENTED**

Whether Meta is entitled to judgment as a matter of law under Federal Rule of Civil Procedure 50 or a new trial under Federal Rule of Civil Procedure 59.

Dated: August 11, 2025                **LATHAM & WATKINS LLP**

*/s/ Andrew B. Clubok*
Andrew B. Clubok (*pro hac vice*)
andrew.clubok@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Counsel for Defendant Meta Platforms, Inc.*
*(formerly known as Defendant Facebook, Inc.)*

1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.    LEGAL STANDARD.......................................................................................... 1

III.   ARGUMENT ...................................................................................................... 2

    A.    Meta Is Entitled To Judgment As A Matter Of Law Under Rule 50(b). ...................... 2

        1.    Meta did not "eavesdrop upon" or "record" plaintiffs' communications. ......... 2

        2.    Meta's SDK code is not "an electronic amplifying or recording device."......... 3

        3.    Meta did not "use" any device to unlawfully eavesdrop or record. .................. 4

        4.    No evidence suggested Meta acted "intentionally." ........................................ 5

        5.    Plaintiffs consented to Meta's receipt of data from Flo. .................................. 6

        6.    Communications with Flo were not "confidential" under Section 632(c)......... 8

        7.    No evidence shows plaintiffs completed Flo's onboarding in California. ......... 9

        8.    Plaintiffs are not entitled to relief under Section 637.2. ................................. 10

    B.    At Minimum, The Court Should Order A New Trial Under Rule 59(a)...................... 11

        1.    A critical error in the intent instruction warrants a new trial. .......................... 11

        2.    Erroneous evidentiary rulings independently warrant a new trial. .................. 13

        3.    The seating of an admittedly biased juror likewise warrants a new trial. ........ 15

IV.   CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)...................................................... 6

*Bailey v. United States*,
516 U.S. 137 (1995)............................................................................................ 5

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) (Koh, J.) ............................................. 12

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........................................................................ 7

*Campbell v. Facebook Inc.*,
315 F.R.D. 250 (N.D. Cal. 2016) ..................................................................... 11

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................................... 9

*Claiborne v. Blauser*,
934 F.3d 885 (9th Cir. 2019)............................................................................. 2

*Coulter v. Bank of Am.*,
28 Cal. App. 4th 923 (1994) ............................................................................. 2

*Davis v. Fresno Unified Sch. Dist.*,
14 Cal. 5th 671 (2023) ...................................................................................... 4

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) .................................................... 6

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ................................................. 10

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)............................................... 4

*Dyer v. Calderon*,
151 F.3d 970 (9th Cir. 1998)........................................................................... 15

*E.E.O.C. v. Go Daddy Software, Inc.*,
581 F.3d 951 (9th Cir. 2009)............................................................................. 2

*Est. of Kramme*, 20 Cal. 3d 567 (1978) ................................................................ 12

ii

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND
RENEWED MOTION FOR JMOL OR IN ALTERNATIVE NEW TRIAL
CASE NO. 3:21-CV-00757-JD

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
762 F.3d 829 (9th Cir. 2014) ................................................................................ 11

*F.B.T. Prods., LLC v. Aftermath Recs.*,
621 F.3d 958 (9th Cir. 2010) .............................................................................. 7, 8

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ....................................................................................... 2, 8

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) (Donato, J.) .................................. 5

*Freeman v. Ocwen Loan Serv., LLC*,
113 F.4th 701 (7th Cir. 2024) ............................................................................... 10

*Frio v. Super. Ct.*,
203 Cal. App. 3d 1480 (1988) ................................................................................ 2

*Garren v. CVS RX Servs., Inc.*,
2021 WL 781677 (E.D. Tenn. Mar. 1, 2021) ....................................................... 14

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) ................................................................................... 2

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ........................................................... 7, 8

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1995) .............................................................................. 15

*In re Google Play Store Antitrust Litig.*,
2024 WL 3302068 (N.D. Cal. July 3, 2024) (Donato, J.) ....................................... 2

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .................................................................... 8

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ....................................................................................... 9, 10

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011) ............................................................................... 2

*Knights v. Experian Info. Sols., Inc.*,
2025 WL 21944 (E.D.N.Y. Jan. 3, 2025) ............................................................. 10

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ................................................................................. 12

*MGA Ent. Inc. v. Harris*,
2023 WL 6194387 (C.D. Cal. Sept. 15, 2023) ...................................................... 11

iii

*Mockler v. Multnomah Cnty.*,
    140 F.3d 808 (9th Cir. 1998) ............................................................................................... 11

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
    2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ...................................................................... 4

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) .................................................................................... 9

*Pau v. Yosemite Park & Curry Co.*,
    928 F.2d 880 (9th Cir. 1991) ............................................................................................... 13

*People v. Super. Ct.*,
    70 Cal. 2d 123 (1969) ......................................................................................................... 12

*Ribas v. Clark*,
    38 Cal. 3d 355 (1985) ........................................................................................................... 2

*Rodriguez v. Google*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) ...................................................................... 9

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975) ................................................................................................... 2

*Rojas v. HSBC*,
    20 Cal. App. 5th 427 (2018) ............................................................................................... 12

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) .......................................................................................................... 2

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) ......................................................................................... 7, 8

*Smith v. LoanMe, Inc.*,
    11 Cal. 5th 183 (2021) .......................................................................................................... 2

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ........................................................................................................ 9

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
    2022 WL 10489059 (D. Mass. Oct. 17, 2022) .................................................................. 14

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) .............................................................................................................. 5

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ............................................................................................... 12

*United States v. Davis*,
    2024 WL 222271 (9th Cir. Jan. 22, 2024) ......................................................................... 13

*United States v. Hitt*,
  981 F.2d 422 (9th Cir. 1992)............................................................................ 13, 14

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (1979)................................................................................ 2

**STATUTES**

18 U.S.C. § 3127(4) ............................................................................................. 4

Cal. Penal Code
  § 631(a) ............................................................................................................ 4, 5
  § 632(a) ................................................................................................... 2, 4, 5, 8
  § 637.2(a) .......................................................................................................... 10

**TREATISES**

Restatement (3d) of Torts: Phys. & Emot. Harm § 1, cmt. e (2010) ........................... 12

**OTHER AUTHORITIES**

*Device*, Black's Law Dictionary (12th ed. 2024).......................................................... 4

*Record*, Merriam-Webster Dictionary, https://www.merriam-
  webster.com/dictionary/record (last visited Aug. 11, 2025)..................................... 2

v

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND
RENEWED MOTION FOR JMOL OR IN ALTERNATIVE NEW TRIAL
CASE NO. 3:21-CV-00757-JD

## I.    INTRODUCTION

The evidence at trial does not fit plaintiffs' legal claim.  Plaintiffs seek to hold Meta liable for receiving data connected to twelve "custom app events" defined and created by Flo and sent to Meta by Flo's own app, which incorporated publicly available, open-source code from a software development kit ("SDK").  At trial, plaintiffs pursued several claims against Flo for impermissibly sending this information.  But they had just one claim against Meta under Section 632 of the California Penal Code, a criminal statute that prohibits "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication."

That provision—limited to intentional *eavesdropping* and *recording*—does not apply here. Whether *Flo's* decision to create and send certain data to Meta is actionable under other laws, it is not "eavesdropping" or "recording"—and certainly not by Meta.  Rather, as both sides' experts testified and documentary evidence confirmed, the data that Flo generated and sent to Meta is a different, separate communication from what users input in the Flo App.  As Plaintiff Chen put it, this situation is akin to "tell[ing] your best friend" something and "trust[ing]" them "to never tell anybody," only for them to "turn around and do it" anyway.  Tr. 238:17-19.  Those undisputed facts cannot support a Section 632 claim against Meta under settled California law.  The trial evidence also revealed other problems—on intent, consent, extraterritoriality, and more—compelling the same result.

Alternatively, a new trial is warranted on several independent grounds.  First, the jury instruction on Section 632's intent standard incorrectly stated that Meta could be held liable merely for acting "with the knowledge to a substantial certainty that [its] use of the equipment will result in the recordation of a confidential conversation."  Dkt. 744 at 19.  But under settled California law, that standard does not apply in cases, like this one, involving third-party misuse of a generally available product or service.  In addition, the jury was exposed to highly inflammatory material, and a juror with admitted anti-defendant bias was incorrectly seated.

## II.    LEGAL STANDARD

Under Rule 50(b), "[j]udgment as a matter of law is appropriate when 'the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion.'"  *In re*

1

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND
RENEWED MOTION FOR JMOL OR IN ALTERNATIVE NEW TRIAL
CASE NO. 3:21-CV-00757-JD

*Google Play Store Antitrust Litig.*, 2024 WL 3302068, at *3 (N.D. Cal. July 3, 2024) (Donato, J.).  A "proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion."  *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).[1]  Under Rule 59(a), a new trial is warranted "where 'the verdict is against the weight of the evidence'" or "the trial was not fair to the [moving] party.'"  *Claiborne v. Blauser*, 934 F.3d 885, 894 (9th Cir. 2019).

## III.    ARGUMENT

### A.    Meta Is Entitled To Judgment As A Matter Of Law Under Rule 50(b).

#### 1.    Meta did not "eavesdrop upon" or "record" plaintiffs' communications.

Section 632 does not forbid the receipt of all confidential communications.  Rather, it forbids obtaining them in a particular way: by intentionally using a device to "eavesdrop upon or record" them.  Cal. Penal Code § 632(a).  Eavesdropping means "to listen secretly to what is said in private," *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975), while recording requires a conversation to be "registered on something (such as a disc or magnetic tape) in reproducible form," *Record*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/record (last visited Aug. 11, 2025).  California law draws "a critical distinction between eavesdropping upon or recording a conversation," on the one hand, and "the secondhand repetition of the contents of a conversation," on the other—with the latter *not* covered by Section 632.  *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002).  That makes sense, as someone "who imparts private information risks the betrayal of this confidence by the other party," *id.*—who may disclose a secondhand version to a third party.  Even if that betrayal violates other laws, it does not make the third party liable under Section 632's ban on eavesdropping and recording.  Numerous cases, old and new, have reiterated that disclosing (to say nothing of merely receiving) a "secondhand repetition" of a conversation's substance is not eavesdropping or recording.  *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021).[2]

---

[1]  In presenting its Rule 50(a) motion at trial, Meta attempted to walk through each of its asserted grounds for judgment as a matter of law and offered to file a written brief, but the Court declined and told Meta not to "worry" and that there would be no "impediment to appeal."  Tr. 1126:1-1129:11.

[2]  *E.g.*, *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 234-35 (1998); *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985); *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 608-09 (2020); *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1389-90 (2011); *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923, 929 (1994); *Frio v. Super. Ct.*, 203 Cal. App. 3d 1480, 1488 (1988); *Warden v. Kahn*, 99 Cal. App. 3d 805, 813 (1979).

2

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND
RENEWED MOTION FOR JMOL OR IN ALTERNATIVE NEW TRIAL
CASE NO. 3:21-CV-00757-JD

The undisputed evidence showed that the data in the twelve custom app events at issue was, at most, a secondhand repetition to Meta of plaintiffs' communications with Flo.  Sometimes, the parameter values associated with a custom app event resembled the information plaintiffs input in the app (*e.g.*, "get pregnant" after a user tapped "I want to get pregnant"), Tr. 420:3-421:8, 436:4-12 (Egelman), just as a secondhand repetition of a conversation would resemble the original.  Other times, the data did not resemble the information plaintiffs input at all (*e.g.*, "known" or "unknown" after a user selected her last period date).  *Id.* at 433:5-435:17, 436:4-17 (Egelman).  And sometimes, it was somewhere in between (*e.g.*, an approximate calculation of a user's age after a user input their birth year).  *Id.* at 436:4-24, 529:7-530:11 (Egelman).  But *all* this event data was sent as separate communications that were different from plaintiffs' communications with Flo.  That is true regardless of whether Meta theoretically could have reverse-engineered the Flo App to figure out what questions the app asked Flo users (and there was no evidence Meta ever attempted to do so).  In short, no matter what this data *revealed*, it was not a *recording* or *eavesdropping* as California law defines those terms.

The same goes for Flo's "predictions" about a user's place in her menstrual cycle, which plaintiffs' expert characterized as "the other half of the conversation."  *Id.* at 553:2-17 (Egelman).  That testimony pertained to the "SESSION_CYCLE_DAY_FIRST_LAUNCH" event, and as with the other events, the communication between Flo and users was distinct from the data Flo sent to Meta.  As plaintiffs' expert admitted, users would have seen in their app that they were (for example) "six days to ovulation," *id.* at 553:15-16, while Flo would have separately "communicat[ed] to Facebook that this user is 16 days into her cycle," *id.* at 437:15-17.  Those are two different communications with two different pieces of information, not an original and a copy.

Because Section 632 is a prohibition on eavesdropping and recording—not an all-purpose privacy provision—it does not apply to Flo's transmission of custom app event data here.

### 2.    Meta's SDK code is not "an electronic amplifying or recording device."

Section 632 applies only if a defendant uses "an electronic amplifying or recording device" to unlawfully eavesdrop or record.  Plaintiffs claim that the portions of Meta's SDK code used by Flo qualify as such a device.  *Id.* at 1188:10-15 (closing).  That is wrong as a matter of law.

*First*, statutory text and context demonstrate that a "device" under Section 632 must be a piece

of *physical* equipment. "A common meaning of 'device' is 'a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment.'" *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) (holding that software is not a "device" under neighboring provision); *see Device*, Black's Law Dictionary (12th ed. 2024). Statutory context confirms this limitation: Section 632 situates the word "device" alongside other tangible objects—"telegraph, telephone, or other device, except a radio," Cal. Penal Code § 632(a)—and under the *noscitur a sociis* canon, "a specific item in a statutory list of items is qualified by the overall type or subject matter characterizing the list," *Davis v. Fresno Unified Sch. Dist.*, 14 Cal. 5th 671, 689 (2023). Plus, when other provisions cover non-tangible processes, they do so expressly—including Section 632's next-door neighbor, Section 631. Cal. Penal Code § 631(a) ("by means of any machine, instrument, or contrivance, *or in any other manner*") (emphasis added); *see, e.g.*, 18 U.S.C. § 3127(4). The SDK is intangible computer code, not a tangible device. It thus falls outside of Section 632. *See Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023).

*Second*, even if a software application—such as the fully compiled Flo App—could qualify as a "device," lines of code that do not stand alone and can do nothing on their own (like the excerpts of code Flo used from the SDK) do not. As both sides' experts agreed, the open-source SDK code can function only if a developer integrates the code into an app, at which point the code meshes with the developer's other code to become "a single cohesive set of instructions." Tr. 743:5-6 (Zervas); *see id.* at 384:24-385:3 (Egelman) (describing SDKs as a "component" of apps). Whatever might be said of a software application as a whole, excerpted lines of SDK code are not a standalone device.

*Third*, even if SDK code is a device, it is not an "amplifying or recording" device. Cal. Penal Code § 632(a). An amplifying or recording device would pick up *users' conversations*. *Supra* 2-3. But the data Flo sent to Meta reflects custom event names and parameters defined and created *by Flo*, not by users. Tr. 754:23-755:7 (Zervas); *see id.* at 513:2-16, 514:25-515:8 (Egelman).

### 3. Meta did not "use" any device to unlawfully eavesdrop or record.

Section 632 punishes a person who intentionally and without consent "uses" an electronic amplifying or recording device to eavesdrop or record. Meta's SDK code is "open source," meaning it is publicly available for any app developer to download and use. *Id.* at 548:11-14 (Egelman); *see id.*

4

at 722:9-723:13 (Zervas). But the undisputed evidence confirmed that *Flo*, not Meta, incorporated portions of the SDK code into the Flo App, controlled and customized that code, and chose what (if any) data to send. *Id.* at 754:23-755:7 (Zervas); *see id.* at 513:2-16, 514:25-515:8 (Egelman). It is thus app developers, not Meta, that "use" the SDK. *Cf. Bailey v. United States*, 516 U.S. 137, 144 (1995) (statute criminalizing "use" of a firearm required showing "active employment of the firearm"). Nor does it matter that Meta allegedly used the data that Flo sent; as other CIPA provisions confirm, there is a difference between using a device and using data sent by it. *Compare* Cal. Penal Code § 631(a) (separately punishing wiretapping and "us[ing] … any information so obtained"), *with id.* § 632(a) (punishing eavesdropping and recording, but not the use of information so obtained).[3]

### 4.    No evidence suggested Meta acted "intentionally."

Section 632, a criminal statute, requires proof that a defendant "intentionally" used a device to eavesdrop upon or record a confidential communication. Meta respectfully submits that the jury was instructed incorrectly on this element. *Infra* 11-13. But even under the as-given instruction (and *a fortiori* under Meta's proposed instruction), the trial evidence cannot support a finding of intent.

The jury was instructed that intent under Section 632 requires that "the person using the recording equipment does so with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation." Dkt. 744 at 19. Meta presented evidence that it contractually forbade Flo from sending any "health" or "sensitive" information, and that it required Flo to "provide[] robust and sufficiently prominent notice to and obtain[] the necessary consent from [its] users" to share data with Meta. Ex. 1223 at 4. Plaintiffs focused at trial broadly on Meta's use of data *in general* but presented no evidence showing that, contrary to these contractual provisions, Meta secretly *wanted* Flo

---

[3] Plaintiffs' attempt to hold Meta liable for Flo's use of the SDK amounts to a *de facto* aiding-and-abetting theory. But this Court already rejected that theory in granting summary judgment on plaintiffs' claim against Meta for aiding and abetting Flo's intrusion-upon-seclusion. Dkt. 608 at 2; *see, e.g.*, *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023) (requiring "conscious, voluntary, and culpable participation in another's wrongdoing" for aiding-and-abetting under federal statute). No such theory was presented to the jury, which would fail as a matter of law anyway—as the trial record is "devoid" of evidence showing that Meta "had actual knowledge of Flo's deceptive disclosure practices with respect to plaintiffs' private health information." *Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *3 (N.D. Cal. Sept. 23, 2024) (Donato, J.).

to send sensitive or unconsented data.  No evidence suggests that Meta intentionally obtained the "confidential communications" at issue.  *See, e.g.*, *Doe I v. Google LLC*, 2025 WL 1616720, at *2 (N.D. Cal. June 6, 2025) ("[T]he question is not whether Google intended to collect any old communication.  The question is whether Google intended to collect the kinds of communications at issue in this lawsuit."); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024).

Nor can the "substantial certainty" prong rescue plaintiffs.  For one thing, even under the as-given instruction, that prong applies only when a party knows that "*his use* of the equipment will result in the recordation of a confidential conversation," Dkt. 744 at 19 (emphasis added), and as explained, Flo—not Meta—was the party who "used" the SDK code.  Regardless, no evidence supports a finding that Meta "kn[ew] to a substantial certainty" that Flo would use the open-source SDK code to transmit the data at issue in this case—much less (1) that such data would qualify as confidential under Section 632(c), *infra* 8-9, or (2) that Flo would fail to properly notify its users and obtain consent (as this Court already concluded in granting summary judgment on plaintiffs' aiding-and-abetting claim, *supra* n.2).  The evidence showed only that Meta knew of a *risk* that somebody, somewhere could misuse the code by sending prohibited data, and that Meta undertook steps to address that risk.  *See, e.g.*, Tr. at 893:20-24 (Satterfield); *id.* at 959:15-22, 961:10-19 (Wooldridge).  At the same time, unrebutted testimony established that Meta did not know Flo (or any other developer) might *actually* be sending potentially sensitive health information until February 2019, when the Wall Street Journal published allegations to that effect.  *Id.* at 959:8-14, 961:10-19, 963:8-14, 997:2-11 (Wooldridge).[4] Furthermore, purported knowledge that developers might use SDK code to define, create, and send custom event data to Meta is not the same thing as knowledge that developers would use the SDK code to "record" users' confidential communications without proper consent (even assuming that is what happened here).  Dkt. 744 at 19.  So under any standard, the trial evidence is insufficient to prove intent.

### 5.    Plaintiffs consented to Meta's receipt of data from Flo.

---

[4] In an apparent attempt to plug this evidentiary hole, plaintiffs submitted two exhibits showing automated email notifications from Meta to Flo in December 2018 and January 2019 indicating that some of the data Flo sent "may violate [Meta's] Business Tools Terms."  Exs. 383, 536.  But it is undisputed that these emails were triggered by Meta's PII filter, not its later-enacted health filter.  *See* Tr. 872:8-11, 874:4-7 (Satterfield); *id.* at 968:13-19 (Wooldridge).

6

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND
RENEWED MOTION FOR JMOL OR IN ALTERNATIVE NEW TRIAL
CASE NO. 3:21-CV-00757-JD

1    Section 632 prohibits eavesdropping and recording only if done "without the consent of all

2    parties."  And where a plaintiff agrees to "disclosures [that] 'explicitly notify' users of the conduct at

3    issue," that establishes consent.  *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024).

4        There is no question that Flo consented.  *See, e.g.*, Ex. 1223; Dkt. 608 at 1 (holding at summary

5    judgment that "the undisputed record shows that Flo consented to Meta's data collection practices").

6    And all three named plaintiffs testified that they used Facebook, which required them to agree to Meta's

7    Terms of Service and Data Policy.  *See* Tr. 216:7-12, 216:15-218:21 (Wellman); *id.* at 259:11-15

8    (Chen); *id.* at 314:18-23, 315:13-14 (Gamino); *id.* at 898:6-15, 929:5-12 (Satterfield).  Meta's policies

9    clearly and broadly disclosed that Meta could receive data from third-party apps reflecting users'

10   activity on those apps—and use that data for advertising.  *See, e.g.*, Ex. 70 at 3-4; Ex. 1224 at 2, 4, 7,

11   10; Ex. 1226 at 2-3, 7-8, 13-15.  As the Ninth Circuit has recognized, "[a] reasonable person viewing

12   those disclosures would understand that Facebook maintains the practices of (a) collecting its users'

13   data from third-party sites and (b) later using the data for advertising purposes."  *Smith v. Facebook,*

14   *Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018).  That establishes consent as a matter of law.  *See id.*

15       Plaintiffs argued that the breadth of Meta's policies was "crazy."  Tr. 1200:17 (closing).  But

16   Meta's policies are valid and enforceable, and a "contractual term is not ambiguous just because it is

17   broad."  *F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 964 (9th Cir. 2010).  The Ninth Circuit

18   recently reiterated that principle in assessing Google's privacy policy, rejecting a district court's narrow

19   reading where the policy broadly "disclose[d] Google's collection of user activity in third-party apps."

20   *Hammerling v. Google, LLC*, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024).  The court emphasized

21   that "where a contract expressly defines a term, we cannot reject that definition simply because it may

22   deviate from our expectations."  *Id.*  So too here.  Indeed, Plaintiff Wellman herself acknowledged that

23   Meta's terms were "pretty broad" in disclosing websites' sending data to Meta.  Tr. 217:10-218:4.

24       Nor can plaintiffs carve out exceptions to Meta's disclosures by demanding hyper-specific

25   language about every app that might use SDK code and every type of data that might be sent.  Plaintiffs

26   argued, for example, that Meta's policies did not establish consent because they did not specifically

27   mention "fertility apps," "private health information," or "the Flo Health app."  Tr. 1200:21-1201:10

28   (closing); *see id.* at 935:22-936:14 (questions to Satterfield).  Plaintiffs' demand for a catalogue of apps

and data types conflicts with their critique that Meta's "nine-page data policy" was too long, *id.* at 942:18-943:21 (Satterfield)—hundreds of thousands of apps incorporate Meta's pre-written code and are programmed to send the data (if any) that their developers choose to send, consistent with their contractual commitments to Meta, *see id.* at 514:25-515:8, 548:11-14 (Egelman); *id.* at 717:8-19, 725:19-727:9 (Zervas).  But more fundamentally, a broad disclosure covering a particular issue need not list every example to be effective.  *See Hammerling*, 2024 WL 937247, at *2; *Smith*, 745 F. App'x at 8-9; *F.B.T. Prods.*, 621 F.3d at 964.  Here, Meta's policies clearly disclosed that third-party apps could use the SDK to send data reflecting user activity on those apps, and that Meta could then use the data for advertising.  *See, e.g.*, Ex. 70 at 3-4; Ex. 1224 at 2, 4, 7, 10; Ex. 1226 at 2-3, 7-8, 13-15.  That is precisely the conduct at issue here, and Meta's policies were not required to (and could not reasonably) identify every app that uses Meta's tools or every type of data that might be sent.[5]

In addition, plaintiffs' consent to *Flo's* policies independently established consent by disclosing that Flo used "Facebook Analytics."  *E.g.*, Tr. 200:3-5 (Wellman).  Plaintiff Wellman testified that she "would have known that Flo was using Facebook Analytics" if she had read this policy.  *Id.*

### 6.    Communications with Flo were not "confidential" under Section 632(c)

Section 632 is limited to "confidential communication[s]."  Cal. Penal Code § 632(a).  That does not simply mean "private" or "sensitive."  Rather, "confidential communication" is a defined term that explicitly "*excludes* a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in *any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.*"  *Id.* § 632(c) (emphases added); *see, e.g.*, *Flanagan*, 27 Cal. 4th at 774-77.  Importantly, that definition is agnostic as to *who* is recording—so long as a party reasonably expects that *someone* is recording the communication, the communication by definition is not "confidential."  Here, because plaintiffs reasonably expected that (at least) Flo was recording their responses in the app, their

---

[5] For the same reasons, district court decisions that have carved out exceptions to Meta's policies at the motion-to-dismiss stage for "protected health information from a medical provider," *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022), are inconsistent with how the Ninth Circuit interprets contractual disclosures—and Flo is not a "provider of healthcare," as this Court recognized in addressing Flo's Rule 50(a) motion on plaintiffs' CMIA claim.  Tr. 1095:18-23.

communications are not "confidential" as Section 632 defines that term.

This very problem doomed a Section 632 claim in *Rodriguez v. Google*, 2021 WL 2026726 (N.D. Cal. May 21, 2021). The plaintiffs there had "plausibly demonstrate[d] an 'objectively reasonable expectation' that their communications with third party apps would not be 'recorded' by Google," but that "expectation, fair as it [wa]s, [did] not reasonably give rise to the expectation that *nobody* (including the apps' developers) would record the communication," as required by Section 632(c). *Id.* at *7. Plaintiffs' Section 632 claim here fails for the same reason: Because they indisputably expected *Flo* to record their conversations—the period-tracking app could not function otherwise—those conversations were not "confidential" under Section 632, regardless of whether or not plaintiffs expected Flo to share that information with Meta. *See id.*; *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (observing that "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications").

### 7. No evidence shows plaintiffs completed Flo's onboarding in California.

"Under California law, a presumption exists against the extraterritorial application [of] state law." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014). Courts must "presume the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.'" *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). Nothing in Section 632 rebuts that presumption—and in fact, the statute's "principal purpose" is "to protect the privacy of confidential communications of California residents *while they are in California.*" *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119-20 (2006).

Here, undisputed evidence at trial showed that the twelve custom app events at issue would have been triggered only when a user first completed the Flo App's initial onboarding process. *See* Tr. 498:18-499:10 (Egelman); *id.* at 667:18-668:4 (Karkanias); *id.* at 748:20-749:14 (Zervas). And there is no evidence in the trial record—none—that any named plaintiff completed that onboarding process while in California. True enough, they testified that they *lived* in California. *See* Tr. 146:12-15 (Wellman); *id.* at 229:12-13 (Chen); *id.* at 289:14-17 (Gamino). But merely being a California resident

9

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND
RENEWED MOTION FOR JMOL OR IN ALTERNATIVE NEW TRIAL
CASE NO. 3:21-CV-00757-JD

does "not create a reasonable inference that [plaintiffs were] in California" when they completed Flo's onboarding process. *Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *6 (S.D. Cal. June 13, 2025); *cf.* Dkt. 605 at 32-33 (denying class certification for Section 631 claim given that individualized inquiries are needed to show that a California resident "completed the onboarding process in California").[6]  Plaintiffs therefore cannot press a Section 632 claim.

### 8.    Plaintiffs are not entitled to relief under Section 637.2.

Even if plaintiffs had proved any violation of Section 632—a criminal statute—they lack a private cause of action under Section 637.2 for two independent reasons.

*First*, the private cause of action is limited to "[a]ny person *who has been injured* by a violation." Cal. Penal Code § 637.2(a) (emphasis added).  Plaintiffs introduced no evidence of injury. They never claimed they received targeted ads based on data shared by Flo, and they introduced no evidence that any data Meta received was ever viewed (let alone understood) by any human before it was automatically deleted.  To the contrary, plaintiffs' own expert admitted that Meta's systems need not and did not understand the "semantic meaning" of the event data—*i.e.*, what event names like R_CHOOSE_GOAL or parameter values like "get_pregnant" actually meant.  *See* Tr. 1088:13-1091:16 (Golbeck).  Plaintiffs instead focused on Meta's purported ability to improve its ad-targeting and content-delivery systems by using data from third-party apps like Flo.  But that does not show any *injury* suffered by plaintiffs—particularly since plaintiffs' expert admitted that Meta's systems did not rely on the "semantic meaning" of the event data.  *Id.*  That is presumably why plaintiffs testified they were never even aware that anything had happened until they were contacted by lawyers.  *See* Tr. 184:14-17 (Wellman); *id.* at 232:13-15 (Chen); *id.* at 318:24-319:2 (Gamino).  And conclusory claims of embarrassment are insufficient.  *See, e.g., Freeman v. Ocwen Loan Serv., LLC*, 113 F.4th 701, 711 (7th Cir. 2024) ("psychological harm" insufficient); *Knights v. Experian Info. Sols., Inc.*, 2025 WL 21944, at *1 (E.D.N.Y. Jan. 3, 2025).

---

[6] In the class certification order, this Court relied on Section 631's express geographical limitation and observed that "[d]efendants do not explain why this might be relevant to the § 632 claim as nothing in the plain text of that section suggests such a geographic limitation." Dkt. 605 at 32.  But as cases like *O'Connor*, *Sullivan*, and *Kearney* confirm, the presumption against extraterritoriality fills that statutory silence.  *Supra* 9-10; *Kearney*, 39 Cal. 4th at 119.

*Second*, plaintiffs are not entitled to any relief authorized by Section 637.2.  They have disclaimed any actual damages.  Dkt. 656 at 17.  They do not claim any ongoing harm that could justify an injunction,  and in fact Flo has ceased sending the at-issue data and Meta already deleted all relevant Flo data pursuant to existing retention policies.  Tr. 1029:18-25 (Woolridge); 715:2-8 (Zervas); And statutory damages would be inappropriate under *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016), because: (1) any violation was not "sever[e]," given Meta's role as a mere recipient of data Flo chose to send and the lack of any actual harm to plaintiffs; (2) plaintiffs have disclaimed any "actual damage"; (3) "the extent of any intrusion" into plaintiffs' "privacy" was minimal, particularly where there was no evidence anyone at Meta—human or machine—ever understood the meaning of the data Flo sent or that Meta ever shared any data it received; (4) there was no "financial burden[]" on plaintiffs; (5) SDKs serve a ubiquitous, helpful, and "reasonable purpose" in allowing app developers to understand and improve their apps and deliver targeted ads; and (6) no "useful purpose" would be served "by imposing [a] statutory damages amount" that would far outpace any actual harm.  *Id.* at 268.

**B.    At Minimum, The Court Should Order A New Trial Under Rule 59(a).**

In the alternative, a new trial is warranted.  For the above reasons, even if the Court concluded that the evidence was technically sufficient, the verdict is at a minimum "contrary to the clear weight of the evidence."  *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842, 846-47 (9th Cir. 2014) (trial evidence "is not required" to be viewed "in the light most favorable to the verdict" under Rule 59(a)).  Additionally, three more sets of errors each independently require a new trial.

**1.    A critical error in the intent instruction warrants a new trial.**

"Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading."  *Mockler v. Multnomah Cnty.*, 140 F.3d 808, 812 (9th Cir. 1998).  "Erroneous jury instructions are a sufficient basis for a new trial."  *MGA Ent. Inc. v. Harris*, 2023 WL 6194387, at *5 (C.D. Cal. Sept. 15, 2023).  The intent instruction given at trial was incorrect, misleading, and highly prejudicial to Meta.

As Meta explained in objecting to Instruction No. 17, *see* Tr. 1136:17-1138:16; Dkt. 699 at 45-47, the standard for intent under Section 632 tracks the federal Wiretap Act's standard, which requires a defendant to have obtained confidential communications "purposefully and deliberately,"

and "not as a result of accident or mistake," *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015); *see Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 126 (N.D. Cal. 2020) (Koh, J.).  The jury should have been instructed that Meta must have acted with the "conscious objective" of obtaining the kinds of confidential communications at issue here.  *Id.* at 791.  But the jury was instead told that it could find intent based merely on "knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation."  Dkt. 744 at 19.  On the facts of this case, where plaintiffs sought to hold Meta liable for *Flo's* misuse of the SDK, that instruction was incorrect as a matter of California law and highly confusing.

The California Supreme Court has made clear that a defendant accused of unauthorized eavesdropping or recording must act with the "intent to bring about the proscribed result rather than an intent merely to do an act which unintentionally brought about that result."  *Est. of Kramme*, 20 Cal. 3d 567, 572 n.5 (1978).  It is not enough for a defendant to have "understood it was deploying recording devices that might happen to record a confidential communication."  *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727-28 (2022).  But the instruction given at trial invited the jury to find just that.

In justifying this erroneous instruction, the Court invoked cases holding that a defendant can be liable under Section 632 for knowing "to a substantial certainty" that *its own use* will result in the recording of a confidential conversation.  In *Rojas v. HSBC*, for example, a jury could find that HSBC intended to record confidential communications when HSBC *itself* "purposefully was recording [] *all* of the calls, having previously told its employees that they were authorized to use HSBC telephones for personal use."  20 Cal. App. 5th 427, 435 (2018); *see People v. Super. Ct.*, 70 Cal. 2d 123, 126 (1969) (detective's own use of a recording device). But the same reasoning does not apply when a defendant merely makes a product generally available for third parties to use.  For instance, even though a "manufacturer of knives can easily predict that a certain number of persons using its knives will inadvertently cut themselves," a knife manufacturer "do[es] not intentionally cause the injuries that result."  Restatement (3d) of Torts: Phys. & Emot. Harm § 1, cmt. e (2010).  With hundreds of thousands of app developers incorporating the SDK code into their apps, Meta is in an analogous position to a knife manufacturer—with the notable exception that knives obviously pose dangers that open-source SDK code does not, and Meta contractually required app developers *not* to send sensitive

data. So contrary to the intent instruction given at trial, Meta could not be liable under Section 632 merely for knowing that someone, somewhere could misuse the SDK.

This erroneous intent instruction was highly prejudicial. Intent was a heavily disputed issue throughout trial. The evidence showed that Meta required developers to agree to a "binding contract" promising they would "not share information that includes health" or other "information they did not have consent to send." Tr. 1216:24-1218:3 (closing). Evidence at trial also detailed Meta's significant "efforts taken to protect against receiving this data," including educating developers and creating filters. *Id.* at 1223:5-22; *see id.* at 843:16-19, 892:21-893:2 (Satterfield); 968:14-969:3, 988:20-991:25 (Woolridge). Despite that evidence, the instruction's watered-down intent standard let plaintiffs argue—and the jury find—that Meta acted with the requisite intent merely for having "identified the risk that apps could send potentially sensitive health information." Tr. 960:9-961:22 (Wooldridge); *see, e.g.*, *id.* at 1196:9-19 (closing). That violates California law and warrants a new trial.

### 2.      Erroneous evidentiary rulings independently warrant a new trial.

A new trial is warranted where "the jury's verdict is more probably than not tainted" by evidentiary error. *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991). Four evidentiary errors exposed the jury to inflammatory and irrelevant evidence. Each warrants a new trial.

*First*, the Court let plaintiffs—over Meta's contemporaneous objection—read into the record jokes made by Meta employees claiming to be "the keeper of everyone's ovulation and menstruation data" and quipping "may the flow be with you." Ex. 652; Tr. 877:3-15 (Satterfield); *see id.* 877:20-878:21.[7] This questioning was improper. For starters, it lacked foundation, as Mr. Satterfield was not listed on the chat log and had never even seen it until his deposition on the eve of trial. *Id.* at 877:22-878:2. It was also "highly prejudicial and at most marginally probative" under Rule 403. *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). The messages were irrelevant, "inherently inflammatory," and clearly intended to prejudice the jury against Meta. *United States v. Davis*, 2024 WL 222271, at *2 (9th Cir. Jan. 22, 2024). Plaintiffs' counsel deployed them to great effect, asking Mr. Satterfield

---

[7]  Meta objected to this line of questioning when it occurred. Tr. 878:10-11. Meta also repeatedly attempted to follow up to preclude similar testimony going forward. *Id.* at 921:12-17, 1107:4-7, 1129:24-1130:3. This was not a retroactive objection.

13

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND
RENEWED MOTION FOR JMOL OR IN ALTERNATIVE NEW TRIAL
CASE NO. 3:21-CV-00757-JD

whether he found the jokes "funny" and had disciplined the employees involved (who did not report to him) six years after the fact.  Tr. 877:20-879:4.

*Second*, the Court overruled Meta's objection to inflammatory questions posed to Mr. Satterfield about "opioid manufacturers" and "opioid distributors," purportedly arguing that they followed industry standards.  Tr. 845:15-24.  Arguments made (or not) by opioid manufacturers or distributors in other litigation have no relevance to this case.  And even in cases *involving opioid manufacturers or distributors*, courts have excluded evidence about the "opioid epidemic," given "the danger of unfair prejudice."  *Garren v. CVS RX Servs., Inc.*, 2021 WL 781677, at \*16 (E.D. Tenn. Mar. 1, 2021); *accord Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 2022 WL 10489059, at \*5 (D. Mass. Oct. 17, 2022).  The questioning was purely inflammatory and should not have been permitted.

*Third*, the Court denied Meta's motion in limine to exclude other sensitive information users may have entered into the Flo App that was *not* at issue, *i.e.*, information other than the 12 custom app events plaintiffs claimed Flo improperly sent to Meta.  Dkt. 629 at 5.  Pursuant to that order, the Court permitted a raft of testimony and evidence related to the Flo App's "very sensitive question[s]" about things like "symptoms," "body fluids," and "sex."  Tr. 94:10-16, 1179:19-20; *see id.* at 158:14-161:16 (Wellman), *id.* at 325:13-18 (Frasco); *id.* 293:24-294:8 (Gamino).  This testimony improperly raised the specter of information that plaintiffs did *not* show was ever sent to Meta, and which they conceded was not the basis for liability.  *See* Dkt. 364 at 12; Dkt. 477 at 3-4.  And it was "fraught with the twin dangers of unfairly prejudicing the defendant and misleading the jury."  *Hitt*, 981 F.3d at 424.

*Fourth*, the Court permitted plaintiffs to emphasize the possibility of pregnancy-related information being disclosed, even though no class representative was pregnant when they filled out the Flo App's onboarding survey.  Plaintiffs elicited testimony that "Meta is also recording when a woman is pregnant, how far into her pregnancy she is, and what day or week of her pregnancy she's in … and who she is."  Tr. 451:15-23 (Egelman).  They repeatedly stated that Meta got "period and pregnancy information."  Tr. 99:12-25; *see, e.g.*, *id.* at 97:21-23, 590:8-22 (Egelman); *id.* at 695:14-20 (Karkanias); *id.* at 970:16 (Woolridge).  And they claimed to represent the purportedly "millions of women who did answer [the pregnancy] questions"—even though *none* of the class representatives did so.  *Id.* at 590:8-14.  This evidence was improper because no named plaintiff suffered that alleged injury

14

1    (i.e., transmission of pregnancy information) and thus cannot represent a class with that injury.

2    Plaintiffs' repeated references to pregnancy information improperly invited the jury to find Meta liable

3    for obtaining *that* type of information without consent.

4                    **3.    The seating of an admittedly biased juror likewise warrants a new trial.**

5            Finally, the Court erred in seating a juror who should have been struck for cause.  Juror #4

6    indicated a belief on his questionnaire that "if you're on trial, you're guilty" and "[i]f you're in a civil

7    case, you should get money."  Tr. 66:23-67:2.  Meta argued that this "evidence[d] a bias."  *Id.*  After

8    Juror #4 testified that he "just sp[oke] for [him]self" in answering that he believed civil plaintiffs should

9    get money, the Court said it was "not doing a for-cause challenge[]."  *Id.* at 67:13-68:20.  Juror #4 also

10   stated that he was friends with Brian Acton, who founded WhatsApp and had public disagreements

11   with Meta after his company was acquired.  *Id.* at 64:21-66:4.  But because Meta was "out" of

12   peremptory strikes, Juror #4 was seated on the jury despite his professed—and never coherently

13   disclaimed—bias.  Rejecting a for-cause challenge was an abuse of discretion.  *See Image Tech. Servs.,*

14   *Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220-21 (9th Cir. 1995).  And because "[t]he presence of

15   a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice."

16   *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998).

17   **IV.    CONCLUSION**

18           The Court should grant judgment for Meta as a matter of law or, alternatively, order a new trial.

19

20

21

22

23

24

25

26

27

28

1    Dated:  August 11, 2025

**LATHAM & WATKINS LLP**

2
/s/ *Andrew B. Clubok*

3    Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*

4    555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004

5    Telephone: +1.202.637.2200

6    Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*

7    Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*

8    505 Montgomery St., Suite 2000
San Francisco, CA 94111

9    Telephone: +1.415.391.0600

10

11    Michele D. Johnson (Bar No. 198298)
*michele.johnson@lw.com*

12    650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626

13    Telephone: +1.714.540.1235

14

15    **GIBSON, DUNN & CRUTCHER LLP**

16    Christopher Chorba (Bar No. 216692)
*cchorba@gibsondunn.com*

17    333 South Grand Avenue
Los Angeles, CA 90071

18    Telephone: +1.213.229.7503

19    Elizabeth K. McCloskey (Bar No. 268184)
*emccloskey@gibsondunn.com*

20    Abigail A. Barrera  (Bar No. 301746)
*abarrera@gibsondunn.com*

21    One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715

22    Telephone: +1.415.393.8200

23    *Counsel for Defendant Meta Platforms, Inc.*
*(formerly known as Defendant Facebook, Inc.)*

24

25

26

27

28