**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Michele D. Johnson (Bar No. 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: +1.714.540.1235

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

**GIBSON, DUNN & CRUTCHER LLP**
Christopher Chorba (Bar No. 216692)
*cchorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1.213.229.7503

Elizabeth K. McCloskey (Bar No. 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera  (Bar No.  301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: +1.415.393.8200

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

ERICA FRASCO, et al., individually and on
behalf of all others similarly situated,

              Plaintiffs,

     v.

FLO HEALTH, INC., et al.,

              Defendants.

Case No. 3:21-CV-00757-JD

**DEFENDANT META PLATFORMS, INC.'S
NOTICE OF MOTION AND MOTION FOR
CLASS DECERTIFICATION OR, IN THE
ALTERNATIVE, TO MODIFY THE CLASS
DEFINITION**

Judge: Hon. James Donato
Court: Courtroom 11 – 19th Floor

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, at a time convenient for the Court., the undersigned will appear before the Honorable James Donato of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and shall then and there present this renewed motion for judgment as a matter of law, or in the alternative for a new trial, on behalf of Defendant Meta Platforms, Inc.

Meta brings this motion to decertify the class.  Meta will, and hereby does, move for an order decertifying the class or in the alternative modifying the class definition.  The motion is based on this notice of motion, the following memorandum of points and authorities the pleadings and other papers filed in this action, any oral argument, and any other evidence that the Court may consider in hearing this motion.

**ISSUES PRESENTED**

Whether, under Federal Rule of Civil Procedure 23, the class should be decertified under or, in the alternative, whether the class definition should be modified.

Dated:  August 11, 2025                **LATHAM & WATKINS LLP**

*/s/ Andrew B. Clubok*
Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Counsel for Defendant Meta Platforms, Inc.*
*(formerly known as Defendant Facebook, Inc.)*

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ................................................................................................ 1

4    II.    LEGAL STANDARDS .................................................................................... 3

5    III.    ARGUMENT ....................................................................................................... 3

6
        A.    The Class Should Be Decertified Under Rule 23(b)(3) Because
7              Individualized Issues Predominate Over Common Issues. ................... 3

8              1.    Whether a Flo App user completed the onboarding survey
                    during the class period is an individualized issue. ..................... 3
9
10             2.    Whether a Flo App user completed the onboarding survey
                    in California is an individualized issue. ..................................... 5
11
             3.    Confidentiality and consent likewise pose individualized
12                  issues. .......................................................................................... 6

13             4.    The factors bearing on whether and to what extent to award
                    discretionary statutory damages are individualized. ................. 8
14
             5.    Other issues raised at class certification remain
15                  individualized. ............................................................................. 9

16
        B.    The Class Should Be Modified Because Plaintiffs Are Not Typical
17             Of, And Cannot Adequately Represent, Then-Pregnant Class
               Members. .................................................................................................. 10

18    IV.    CONCLUSION ................................................................................................... 11

19

20

21

22

23

24

25

26

27

28

META PLATFORMS, INC'S MOTION FOR CLASS DECERTIFICATION
Case No. 3:21-CV-00757-JD

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*Bliss v. CoreCivic, Inc.*,
5
    711 F. Supp. 3d 1233 (D. Nev. 2024) ............................................................................9

6

*Bouissey v. Swift Transportation Co.*,
    2024 WL 649246 (C.D. Cal. Jan. 30, 2024) ...............................................................11
7

*Campbell v. Facebook Inc.*,
8
    315 F.R.D. 250 (N.D. Cal. 2016) ...................................................................................9

9
*Comcast Corp. v. Behrend*,
10
    569 U.S. 27 (2013)..........................................................................................................9

11
*Conant v. McCaffrey*,
    172 F.R.D. 681 (N.D. Cal. 1997)...................................................................................3
12

*Eastman v. Quest Diagnostics Inc.*,
13
    108 F. Supp. 3d 827 (N.D. Cal. 2015) .........................................................................10

14
*Freeman v. Ocwen Loan Serv., LLC*,
15
    113 F.4th 701 (7th Cir. 2024) ........................................................................................8

16
*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)........................................................................................................3
17

*Griffith v. TikTok, Inc.*,
18
    2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ...............................................................8

19
*Hahn v. Massage Envy Franchising, LLC*,
20
    2016 WL 11620608 (S.D. Cal. Mar. 30, 2016) ...........................................................11

21
*Hammerling v. Google, LLC*,
    2024 WL 937247 (9th Cir. 2024) ..................................................................................7
22

*Hendricks v. Aetna Life Ins.*,
23
    344 F.R.D. 237 (C.D. Cal. 2023) ..................................................................................3

24
*In re Asacol Antitrust Litig.*,
25
    907 F.3d 42 (1st Cir. 2018)..........................................................................................4, 6

26
*In re Meta Pixel Tax Filing Cases*,
    724 F. Supp. 3d 987 (N.D. Cal. 2024) ...........................................................................7
27

*Kearney v. Salomon Smith Barney, Inc.*,
28
    39 Cal. 4th 95 (2006) .....................................................................................................5

*Knights v. Experian Info. Sols., Inc.*,
  2025 WL 21944 (E.D.N.Y. Jan. 3, 2025) ........................................................................8

*Lara v. First Nat'l Ins. Co. of Am.*,
  25 F.4th 1134 (9th Cir. 2022) ..........................................................................................4

*Lloyd v. Facebook, Inc.*,
  2024 WL 3325389 (9th Cir. 2024) ...................................................................................7

*Marlo v. United Parcel Serv.*,
  639 F.3d 942 (9th Cir. 2011) ...........................................................................................3

*Melendres v. Arpaio*,
  784 F.3d 1254 (9th Cir. 2015) .......................................................................................11

*Rodriguez v. Google LLC*,
  2021 WL 2026726 (N.D. Cal. May 21, 2021) .................................................................6

*Smith v. Facebook, Inc.*,
  745 F. App'x 8 (9th Cir. 2018) ........................................................................................7

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ...............................................................................................5, 6

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ...........................................................................................8

*Tschudy v. J.C. Penney Corp., Inc.*,
  2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) ..................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................................................4, 6

*Wood v. Marathon Ref. Logistics Servs. LLC*,
  2024 WL 4868181 (N.D. Cal. Oct. 28, 2024) ..................................................................3

**STATUTES**

Cal. Penal Code
  § 631(a) .............................................................................................................................6
  § 632(a) .............................................................................................................................6
  § 632(c) .............................................................................................................................6
  § 637.2(a) .......................................................................................................................2, 8

**RULES**

Fed. R. Civ. P. 23(a)(3)-(4) ................................................................................................10

Fed. R. Civ. P. 23(c)(1)(C) ..................................................................................................3

## I.    INTRODUCTION

Trial evidence confirmed that several key liability and damages issues cannot be resolved on a classwide basis—thereby defeating predominance under Rule 23(b)(3).  This case should not proceed as a class action.

First, there is no classwide method of determining whether Flo App users completed their onboarding surveys during the class period.  That became obvious when class counsel opposed playing the deposition video of their own client, former plaintiff Madeline Kiss, because they could not be sure when she completed her onboarding survey and thus whether she was a class member.  If no one knows *during trial* whether a Flo App user who filed a complaint, completed sworn discovery responses, and was deposed at length is eligible to be part of the class and potentially recover damages, that determination cannot be made on a classwide basis as to absent class members.

Second, there is also no classwide method of determining *where* Flo App users completed their surveys.  California statutes presumptively don't apply extraterritorially, and nothing in California Penal Code Section 632—the sole statute at issue—creates an exception to that rule.  There can be no predominance absent a classwide method for determining which potential class members completed their onboarding surveys outside of California and therefore have no claim.

Third, there is no way to determine which class members had an objectively reasonable expectation of privacy in their answers to the onboarding survey—and, thus, which class members consented to the sharing of data regarding those answers.  This Court found that Meta's privacy policy did not cover the disclosure of information deemed sensitive.  But whether or not a particular class member's answers to the onboarding survey questions were "sensitive" is not an inquiry suitable to class treatment.  Some class members' onboarding surveys would have revealed to Meta, at most, that they had downloaded and used a period-tracking app—which is not the sort of communication in which anyone who used such an app (and consented to that app sharing data) could expect would not be shared.  And because, in keeping with longstanding retention policies, no data remains to show how users answered the Flo onboarding questions, the only way to determine who gave answers that arguably might be private is to ask them one by one.

1

1    Fourth, although the jury rendered a verdict as to the three named plaintiffs, individualized

2    questions about injury and damages remain.  For starters, Section 632's private cause of action is

3    limited to "[a]ny person who has been *injured* by a violation," requiring a determination of whether

4    a particular class member was actually injured by Flo's transmission of their particular data to

5    Meta.  Cal. Penal Code § 637.2(a) (emphasis added).  And even if that injury requirement were

6    met as to a particular named plaintiff or absent class member, there remains a discretionary

7    determination under Section 632 of whether statutory damages are appropriate.  The factors

8    bearing on that determination, including the extent of any intrusion into each Flo App user's

9    privacy, will vary by user.  And again, because there is no data, the only way to do this analysis is

10    through user-specific inquiries.

11    Taken individually or together, these four points mean that, because there are no records

12    of users' data, the only way for a class member to demonstrate their entitlement to relief is through

13    an individualized adjudication.  That individualized inquiry will amount to a miniature trial, where

14    the Flo App user must demonstrate: (1) when she onboarded; (2) where that onboarding took place;

15    (3) whether she shared any sensitive information during that onboarding; and (4) how much, if

16    any, compensable injury resulted from Flo's sharing information with Meta.  Under settled law,

17    Meta cannot be deprived of its right to litigate its defenses on each issue for each potential class

18    member.  And under Ninth Circuit precedent, the need for these kinds of mini-trials defeats

19    predominance.

20    In opposing plaintiffs' class-certification motion, Meta raised numerous other reasons why

21    this case should not proceed as a class action, and Meta preserves those arguments for appeal if

22    necessary.  But even if the Court is not inclined to decertify the class, it should still modify the

23    class definition.  The certified class includes Flo App users "who entered menstruation and/or

24    pregnancy information."  Dkt. 605 at 34.  But no named plaintiff was pregnant when she completed

25    her onboarding survey, and so no plaintiff entered any pregnancy information.  Accordingly, no

26    named plaintiff is in a position to represent the interests of class members who did enter pregnancy

27    information and may have a different set of privacy interests.  The Court should modify the class

28    definition to be limited to class members who entered only menstruation information.

## II.    LEGAL STANDARDS

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C).  Such an order "is inherently tentative." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Accordingly, "[i]f at any time before, during, or after trial it appears that the class definition is inappropriate, the Court may modify it, expand it, further narrow it, or withdraw certification altogether." *Conant v. McCaffrey*, 172 F.R.D. 681, 694 (N.D. Cal. 1997).  "In considering the appropriateness of modification or decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Hendricks v. Aetna Life Ins.*, 344 F.R.D. 237, 241 (C.D. Cal. 2023).  "On class decertification, as with class certification, the party seeking certification 'bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met.'" *Wood v. Marathon Ref. Logistics Servs. LLC*, 2024 WL 4868181, at *1 (N.D. Cal. Oct. 28, 2024) (quoting *Marlo v. United Parcel Serv.*, 639 F.3d 942, 947 (9th Cir. 2011)).

## III.    ARGUMENT

### A.    The Class Should Be Decertified Under Rule 23(b)(3) Because Individualized Issues Predominate Over Common Issues.

Trial evidence confirms that this case should not proceed as a class action because there is no classwide method of determining, among other things, whether Flo App users completed the onboarding survey during the class period, whether they did so in California, whether they had an objectively reasonable expectation of privacy in the information they shared, and whether and to what extent they should be awarded discretionary statutory damages for their claimed injuries.

#### 1.    Whether a Flo App user completed the onboarding survey during the class period is an individualized issue.

The class consists of "[a]ll Flo App users in California who entered menstruation and/or pregnancy information into the Flo Health App while residing in California between November 1, 2016, and February 28, 2019, inclusive."  Dkt. 605 at 34.  Trial revealed that determining when a Flo App user entered such information can be done only on an individualized basis.  Consider Madeline Kiss, one of the first plaintiffs who sued Meta.  Dkt. 64 ¶¶ 84-90.  When it came time to

1   move for class certification, plaintiffs' counsel did not propose her as a class representative,

2   without explanation.  Dkt. 330.  The Court assumed that Ms. Kiss and other plaintiffs dropped as

3   proposed class representatives would "remain in the case as class members only."  Dkt. 604 at 5

4   n.4.

5           At trial, after Meta stated that it intended to play a portion of Ms. Kiss's deposition for the

6   jury, Tr. 1117:12-14, plaintiffs objected—revealing for the first time that they "do not believe [she]

7   is a member of the class," so they were "not actually sure she could file a claim in this case."  *Id.*

8   at 1118:1-11.  Plaintiffs added that "the issue is *when* she signed up," which may have been "before

9   the start of the class period."  Dkt. 1119 at 7-12 (emphasis added).  The Court observed that

10  "[s]he's not here, so I can't … ask her any questions."  *Id.* at 1119:18-19.  Exactly.  Even after

11  years of litigation and voluminous discovery, the only way to verify whether Ms. Kiss used the

12  Flo App during the class period, and thus whether she is potentially eligible to recover damages,

13  is to ask her when she used the Flo App.  To the extent she claims that she did so and is entitled to

14  statutory damages, Meta has due process and Seventh Amendment rights to contest that account

15  through cross-examination and other discovery tools.  *See Wal-Mart Stores, Inc. v. Dukes*, 564

16  U.S. 338, 367 (2011); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018).

17          The same holds for the rest of the class.  If no one in the courtroom knew for sure when

18  Ms. Kiss first used the Flo App—neither the lawyers who deposed her for several hours nor even

19  her own attorneys—there is no way to pinpoint the timing, on a classwide basis, for the countless

20  absent class members who were not deposed.  Individualized inquiries—including cross-

21  examination—will be required to determine that central liability issue.  In other words, unlike a

22  normal case where class membership can be established through objectively verifiable, classwide

23  documentation, the lack of records here means the *only* way to determine whether a claimant is

24  entitled to relief is through mini-trials.  This is not mere claims processing; rather, it requires an

25  adjudication of credibility, testimony, and claimant-specific documents.  The need for such mini-

26  trials defeats predominance.  *See Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir.

27  2022).

28

## 2. Whether a Flo App user completed the onboarding survey in California is an individualized issue.

For plaintiffs or any other class members to recover under Section 632, they must prove that they fall within the reach of the statute, which is limited to conduct that occurred in California. California laws presumptively don't apply to occurrences outside the state. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). Nothing in Section 632 suggests that the California Legislature intended to rebut that presumption. In fact, the California Supreme Court has made clear that "the principal purpose of [S]ection 632 is to protect the privacy of confidential communications of California residents *while they are in California*." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119-20 (2006).

Trial demonstrated that determining whether a Flo App user downloaded the app and completed the onboarding survey in California can be done only on an individualized basis. Ms. Kiss again illustrates the point. Because no one knows *when* she downloaded and used the app, and because she moved in and out of California during the class period, *where* she used the app is also a mystery. The complaint described her as a resident of California "[f]rom approximately February 2017 until June 2018." Dkt. 64 ¶ 84. Her lawyer hazarded the guess that she downloaded the app and completed the onboarding survey in 2016, before the class period started—and therefore before she moved to California. Tr. 1119:7-12. But once again, the only way to know for sure—to verify whether Ms. Kiss has a viable Section 632 claim and can potentially recover damages—would be to ask her where she downloaded the Flo App and completed the onboarding survey. And it would be the same for all other absent class members.

That this presents an individualized issue is a consequence of how plaintiffs chose to litigate this case. Presumably in an effort to limit variation across the proposed class, plaintiffs focused exclusively on custom app events that are triggered when a user first completes the Flo App's onboarding survey. But that narrow focus means that the viability of each user's claim hinges not on whether she *ever* used the app in California, but instead on whether she was in California when she *initially* onboarded with the app. That question can be answered only on an individualized basis. People move. They travel. And witnesses may, understandably, have

META PLATFORMS, INC'S MOTION FOR CLASS DECERTIFICATION
Case No. 3:21-CV-00757-JD

difficulty remembering where and when—or even whether—they signed up for apps several years and three phones ago.

This Court held that a similar problem foreclosed certification of plaintiffs' claim under Section 631.  Dkt. 605 at 32-33.  That statute requires plaintiffs to demonstrate that communications were "sent from, or received at any place within" California."  Cal. Pen. Code § 631(a).  The Court declined to certify a Section 631 class because plaintiffs fell "short of showing which users completed the onboarding process in California."  Dkt. 605 at 32.  Although Section 632 does not contain the same *express* geographical limitation as Section 631, the settled California *presumption* against extraterritoriality has the same effect.  *See Sullivan*, 51 Cal. 4th at 1207.  The Legislature gave no indication that it meant for the statute to apply to communications outside of California.

In short, no Flo user has a claim unless she completed the onboarding survey in California, and Meta has a right to test the evidence on that score for all class members to ensure that those outside the statute' protection do not stand to recover damages.  *See Wal-Mart*, 564 U.S. at 367; *Asacol*, 907 F.3d at 53 (decertifying class based on defendant's individualized "challenge to a plaintiff's ability to prove an element of liability").  Because there is no way to do that on a classwide basis, this case should not remain a class action.

### 3.    Confidentiality and consent likewise pose individualized issues.

Section 632 creates liability for eavesdropping on or recording only "confidential communication[s]."  Cal. Penal Code § 632(a).  It does not cover any communication made "in any … circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded"—by anyone.  *Id.* § 632(c).  As explained in Meta's Rule 50(b) motion, that definition of "confidential" information precludes relief across the class because every reasonable Flo user understood that at least *Flo* was recording their conversations.  *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021).  But if this Court disagrees, at the very least, *some* class members would "reasonably expect" as much given their individual "circumstance."  Cal. Penal Code. § 632(c).  It necessarily follows that the confidentiality inquiry will devolve into individualized issues that defeat predominance.

1    The same is true of consent.  Although Meta's policies disclose that it receives data

2    reflecting users' activity on third-party apps that use the Meta Business Tools (like the SDK), this

3    Court found that Meta's policies do not necessarily cover the collection or transmission of *sensitive*

4    information.  Dkt. 608 at 1; *but see Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018)

5    ("A reasonable person viewing those disclosures would understand that Facebook maintains the

6    practices of (a) collecting its users' data from third-party sites and (b) later using the data for

7    advertising purposes."); *Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. 2024) ("We

8    agree with the district court that because Facebook's data policy gives clear notice that third party

9    partners may share data with Facebook, Lloyd did not have a reasonable expectation of privacy in

10   this information."); *Hammerling v. Google, LLC*, 2024 WL 937247, at *2 (9th Cir. 2024) (policy

11   "unambiguously discloses Google's collection of user activity data in third-party apps").  Even so,

12   Meta has a valid consent defense to any class member who has *not* transmitted "sensitive"

13   information.  *E.g.*, *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003-04 (N.D. Cal.

14   2024).

15        The evidence presented at trial made clear that there are many such class members.  *See*

16   Exs. 70 at 3-4, 1224 at 2, 4, 10 (policies).  For example, if a class member chose the innocuous

17   goal of tracking her cycle and could not remember any information about her last period, then all

18   Meta could possibly have learned from her selections is that she downloaded a period-tracking

19   app.  More specifically, someone using a period-tracking app and entering accurate personal

20   information necessarily has the goal of tracking her cycle, rendering the sharing of the custom app

21   event "R_CHOOSE_GOAL" and the parameter "track_cycle" innocuous (as compared to

22   "get_pregnant").  And for such users who did not recall their last period date, the custom app event

23   "SESSION_CYCLE_DAY_FIRST_LAUNCH" would have been accompanied by the innocuous

24   parameters "0" and "unknown" (as compared to an integer estimate of her cycle day and a

25   descriptor of where she was in her cycle).  Tr. 758:1-759:1, 789:9-791:1 (Zervas); *see id.* at 558:2-

26   559:10 (Egelman).

27        When a person consents to share data regarding an app, they must, at a minimum, be

28   consenting to reveal that they used that app.  As to certain class members, that is *all* their

onboarding responses revealed.  Those class members' claims are therefore barred by Meta's consent defense.  And given the lack of records, determining which class members transmitted only non-sensitive information will require individualized inquiries into what particular information they submitted.

This reality means this case should not continue as a class action.  There is no classwide method of determining *which* users entered the kind of information that led to nothing even arguably sensitive being shared.  Both sides' experts agreed that the only way to determine what absent class members entered into the Flo App is to ask them one by one; the underlying data was deleted long ago, in keeping with longstanding retention policies.  *See* Tr. 558:16-19, 596:19-25 (Egelman); *id.* at 715:19-716:1 (Zervas).  Where the only method of sorting the injured from the uninjured—or those with a viable claim from those without—is through time-consuming and class member-specific inquiries into their communications, a case cannot be litigated as a class action. *See, e.g.*, *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) ("variation in … communications … is enough to support denial of class certification under Rule 23(b)(3)"); *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *8 (C.D. Cal. Sept. 9, 2024) ("variation in information gathered … as to different class members" was "fatal to certification").

### 4.    The factors bearing on whether and to what extent to award discretionary statutory damages are individualized.

The Section 632 claims of the named plaintiffs and the absent class members also cannot be adjudicated on a classwide basis given individualized issues as to their entitlement to statutory damages (plaintiffs do not seek actual damages).  For starters, the private cause of action is limited to "[a]ny person who has been *injured* by a violation."  Cal. Penal Code § 637.2(a) (emphasis added).   The named plaintiffs' sole basis for claiming injury was a conclusory claim of embarrassment.  That itself is insufficient, but other class members may not claim even that much, given (among other things) the undisputed fact that no human being ever saw the data Flo shared with Meta, which was deleted within a few months.  Tr. 715:4-8 (Zervas); *id.* at 1015:2-9, 1024:12-15, 1040:5-21 (Woolridge); *see, e.g.*, *Freeman v. Ocwen Loan Serv., LLC*, 113 F.4th 701, 711 (7th

1    Cir. 2024) ("psychological harm" insufficient); *Knights v. Experian Info. Sols., Inc.*, 2025 WL

2    21944, at *1 (E.D.N.Y. Jan. 3, 2025).

3          Furthermore, because statutory damages under CIPA are discretionary, whether to award

4    damages to any particular Flo user will require this Court to consider individualized factors,

5    including the "severity of the violation," the existence or not of "actual damage to the plaintiff,"

6    and "extent of any intrusion into the plaintiff's privacy." *Campbell v. Facebook Inc.*, 315 F.R.D.

7    250, 268-69 (N.D. Cal. 2016). Those factors require "individualized analyses" because—as just

8    explained—they will "vary between class members, and would be answered in the negative for

9    many class members." *Id.* at 268. That is especially true given the raft of evidence produced

10   throughout this litigation indicating that different people—class representatives as well as others—

11   have different views about the importance of keeping private their menstruation and/or pregnancy

12   information. *See, e.g.*, Kiss Dep. Tr. 233:16-234:20, 239:19-240:18, 249:3-10, 256:18-257:10,

13   287:17-292:23; 293:5-11 (social media posts discussion menstruation); Gamino Dep. Tr. at 193:6-

14   194:8, 195:2-196:17 (social media posts discussing pregnancy); Wellman Dep. Tr. 289:21-25;

15   291:1-11 (similar). Likewise, any future "decision about whether or not to reduce an excessive

16   damages award would necessarily involve individual questions about whether each class member's

17   award was excessive." *Campbell*, 315 F.R.D. at 269; *see Bliss v. CoreCivic, Inc.*, 711 F. Supp. 3d

18   1233, 1245 (D. Nev. 2024) (applying *Campbell*'s logic to deny certification); *cf. Comcast Corp.

19   v. Behrend*, 569 U.S. 27, 34 (2013) (decertifying class for failure to show "that damages are

20   capable of measurement on a classwide basis").

21                    **5.    Other issues raised at class certification remain individualized.**

22         Meta raised various other arguments in opposing class certification, and it may assert those

23   arguments if an appeal is necessary. Meta will not repeat its arguments here and instead will note

24   only that those arguments may be informed by the trial evidence. Consider, for example, Meta's

25   argument that individualized inquiries on the question of implied consent foreclose proceeding on

26   a classwide basis. One ground for Meta's implied-consent argument is that some class members

27   read a Wall Street Journal article disclosing the challenged data-sharing practices and continued

28   using the Flo App anyway. Dkt. 605 at 12. The three named plaintiffs all testified that they did

not find out about the data sharing from that article.  *See* Tr. 224:3-9 (Wellman); 233:5-6 (Chen); 291:16-292:15 (Gamino).  But they still had to be asked that question.  Surely *some* members of this class saw the article—or one of the many other outlets that picked up the story after the Journal did.  Indeed, plaintiffs alleged that "several hundred" Flo App users submitted complaints to Flo Health in response to the article.  Dkt. 64 ¶ 184.  Plaintiffs offered no way to identify those class members and ensure that they do not recover despite their implied consent.

### B.    The Class Should Be Modified Because Plaintiffs Are Not Typical Of, And Cannot Adequately Represent, Then-Pregnant Class Members.

Even if the Court does not decertify the class outright, it should narrow the class definition because the named plaintiffs are not typical or adequate representatives of class members who shared pregnancy (as opposed to only menstruation) information.  *See* Fed. R. Civ. P. 23(a)(3)-(4). The current class definition consists of Flo App users "who entered menstruation and/or pregnancy information."  Dkt. 605 at 34.  But no class representative was pregnant when they completed the Flo App's onboarding survey.  *See* Tr. 202:22-24 (Wellman); *id.* at 230:1-5 (Chen); *id.* at 290:8-10 (Gamino).  So as plaintiffs' expert Dr. Egelman admitted, no class representative was "asked the pregnancy questions," *id.* at 534:21-535:2—the ones that generated six contested custom app events containing the word "pregnancy."  In fact, some plaintiffs who used an early version of the Flo App had no opportunity to answer those questions because they never saw an "I'm pregnant" option on the initial "How can we help you?" screen that greeted all new Flo users.  *See id.* at 755:23-756:3 (Dr. Zervas).  Only some subset of absent class members—and there is no classwide means of determining which ones—answered the pregnancy-related questions.

Because plaintiffs entered only menstruation-related information, they can represent the interests of those who entered pregnancy-related information only if the two groups are in a "substantially similar" position.  *Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d 827, 832 (N.D. Cal. 2015).  They are not.  The privacy interests implicated by information about menstruation—a fact of life for nearly every woman in a certain age range—are different from those for the much narrower segment of women who are pregnant.  The fact that a 25-year-old relative, friend, or coworker is menstruating would come as no surprise to many.  But the fact that

1    someone is pregnant very well might.  Because the non-pregnant class representatives' claims

2    "'implicate a significantly different set of concerns' than [pregnant] unnamed plaintiffs' claims,"

3    they cannot satisfy Rule 23(a)(3)-(4)'s typicality and adequacy requirements.  *Melendres v.*

4    *Arpaio*, 784 F.3d 1254, 1263 (9th Cir. 2015).

5            Courts routinely decertify classes or modify class definitions in similar circumstances.  For

6    example, in *Bouissey v. Swift Transportation Co.*, 2024 WL 649246 (C.D. Cal. Jan. 30, 2024), the

7    court decertified a subclass of "high value load" truck drivers because the class representatives

8    had "never driven a high value load during the relevant period of employment."  *Id.* at *4-5.

9    Likewise, in *Hahn v. Massage Envy Franchising, LLC*, 2016 WL 11620608 (S.D. Cal. Mar. 30,

10   2016), the court declined to certify a class of those who had joined a "membership-based massage

11   franchise" because the "class representatives" were "*former* members" of the franchise and thus

12   could not "adequately represent" the "*current* members."  *Id.* at *6 (emphasis added).  And in

13   *Tschudy v. J.C. Penney Corp., Inc.*, 2015 WL 8484530 (S.D. Cal. Dec. 9, 2015), the district court

14   decertified a class of employees suing over vacation benefits because the class representatives

15   "participate[d] in a different vacation benefits plan" from many absent class members.  *Id.* at *3.

16   This case calls for the same result:  Because the class representatives were not pregnant when they

17   completed the Flo App's onboarding survey, they cannot litigate this case on behalf of absent class

18   members who *were* pregnant during onboarding.  Instead, the class definition should be limited to

19   Flo App users "who entered menstruation … information" into the Flo App, as no class

20   representative "entered … pregnancy information" in response to the pregnancy questions.  *Id.*

21   **IV.    CONCLUSION**

22           Meta respectfully requests that the California subclass be decertified or, in the alternative,

23   that the class definition be modified to exclude those who entered pregnancy information into the

24   Flo App during onboarding.

25

26

27

28

1   DATED: August 11, 2025                    **LATHAM & WATKINS LLP**

2                                             /s/ *Andrew B. Clubok*
                                              Andrew B. Clubok (*pro hac vice*)
3                                             *andrew.clubok@lw.com*
                                              555 Eleventh Street, NW, Suite 1000
4                                             Washington, D.C. 20004
                                              Telephone: +1.202.637.2200
5
                                              Melanie M. Blunschi (Bar No. 234264)
6                                             *melanie.blunschi@lw.com*
                                              Kristin Sheffield-Whitehead (Bar No. 304635)
7                                             *kristin.whitehead@lw.com*
                                              505 Montgomery St., Suite 2000
8                                             San Francisco, CA 94111
                                              Telephone: +1.415.391.0600
9
                                              Michele D. Johnson (Bar No. 198298)
10                                            *michele.johnson@lw.com*
                                              650 Town Center Drive, 20th Floor
11                                            Costa Mesa, CA 92626
                                              Telephone: +1.714.540.1235
12

13                                            **GIBSON, DUNN & CRUTCHER LLP**

14                                            Christopher Chorba (Bar No. 216692)
                                              *cchorba@gibsondunn.com*
15                                            333 South Grand Avenue
                                              Los Angeles, CA 90071
16                                            Telephone: +1.213.229.7503

17                                            Elizabeth K. McCloskey (Bar No. 268184)
                                              *emccloskey@gibsondunn.com*
18                                            Abigail A. Barrera (Bar No. 301746)
                                              *abarrera@gibsondunn.com*
19                                            One Embarcadero Center, Suite 2600
                                              San Francisco, CA 94111-3715
20                                            Telephone: +1.415.393.8200

21                                            *Counsel for Defendant Meta Platforms, Inc.*
                                              *(formerly known as Facebook, Inc.)*
22

23

24

25

26

27

28