James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Telephone: 805-543-0990
Facsimile: 805-543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com

*Co-Lead Counsel for Plaintiffs and the Class*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Co-Lead Counsel for Plaintiffs and the Class*

Diana J. Zinser (*pro hac vice*)
Jeffrey L. Kodroff (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
dzinser@srkattorneys.com
jkodroff@srkattorneys.com

*Co-Lead Counsel for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA FRASCO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLO HEALTH, INC., GOOGLE, LLC, META PLATFORMS, INC., and FLURRY, INC.,<br><br>Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**<br><br>Judge: Hon. James Donato<br>Court: Courtroom 11 – 19th Floor |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD ........................................................................................... 2

III.    ARGUMENT ........................................................................................................ 2

        A.    The Jury Permissibly Found That Meta Eavesdropped and/or Recorded
              Confidential Communications ....................................................................... 2

        B.    The Jury Permissibly Found That Meta's SDK Is an Electronic Amplifying or
              Recording Device .......................................................................................... 4

        C.    The Jury Permissibly Found That Meta "Used" an Electronic Amplifying or
              Recording Device .......................................................................................... 5

        D.    The Jury Permissibly Found Meta Acted With Intent ................................... 6

        E.    The Jury Permissibly Found Meta Did Not Have Consent ........................... 8

        F.    Plaintiffs' and Class Members' Communications Were Confidential ............ 9

        G.    Plaintiffs Indisputably Can Bring CIPA § 632 Claims ............................... 10

        H.    Plaintiffs Have a Private Right of Action ................................................... 11

        I.    The Jury Instructions Were Proper .............................................................. 12

        J.    There Were No Erroneous Evidentiary Rulings .......................................... 13

        K.    No Jurors Were Bias ................................................................................... 15

IV.     CONCLUSION ................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ades v. Omni Hotels Mgmt. Corp.*,

5
    46 F. Supp. 3d 999 (C.D. Cal. 2014) ................................................................................. 10, 11

6

*B.K. v. Desert Care Network*,
    No. 2:23-cv-05021, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........................................ 8

7

*Bailey v. United States*,

8
    516 U.S. 137 (1995) .............................................................................................................. 6

9

*Campbell v. Facebook Inc.*,

10
    77 F. Supp. 3d 836 (N.D. Cal. 2014) .................................................................................. 10

11

*Campbell v. Facebook Inc.*,
    315 F.R.D. 250 (N.D. Cal. 2016) ........................................................................................ 12

12

*Castillo v. Costco Wholesale Corp.*,

13
    No. 2:23-CV-01548, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .................................. 9

14

*Cotton ex rel. McClure v. City of Eureka*, Cal.,

15
    860 F. Supp. 2d 999 (N.D. Cal. 2012) ............................................................................. 2, 13

16

*Coulter v. Bank of Am.*,
    28 Cal. App. 4th 923 (1994) ................................................................................................. 4

17

*Davis v. Fresno Unified Sch. Dist.*,

18
    14 Cal. 5th 671 (2023) .......................................................................................................... 5

19

*Doe I v. Google LLC*,

20
    No. 23-cv-02431, 2025 WL 1616720 (N.D. Cal. June 6, 2025) .......................................... 8

21

*Doe v. Call-On DOC, Inc.*,
    No. 24cv2095, 2025 WL 1677632 (S.D. Cal. June 13, 2025) ............................................ 11

22

*Doe v. GoodRx Holdings, Inc.*,

23
    No. 23-CV-00501, 2025 WL 2052302 (N.D. Cal. July 22, 2025) ..................................... 7, 9

24

*Doe v. Meta Platforms, Inc.*,

25
    690 F. Supp. 3d 1064 (N.D. Cal. 2023) ............................................................................ 5, 7

26

*Doe v. Microsoft Corp.*,
    No. C23-0718, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........................................ 5

27

*Doe v. Regents of Univ. of Cal.*,

28
    No. 3:23-cv-00598, 2023 WL 3316766 (N.D. Cal. May 8, 2023) ....................................... 9

ii

*Droplets, Inc. v. Yahoo! Inc.*,
  658 F. Supp. 3d 754 (N.D. Cal. 2023) ...................................................................................... 12

*Dyer v. Calderon*,
  151 F.3d 970 (9th Cir. 1998)..................................................................................................... 15

*F.B.T. Prods., LLC v. Aftermath,
  Recs.*, 621 F.3d 958 (9th Cir. 2010) ........................................................................................... 9

*Fields v. Brown*,
  503 F.3d 755 (9th Cir. 2007)..................................................................................................... 15

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002) .............................................................................................................. 10

*Frasco v. Flo Health, Inc.*,
  No. 21-CV-00757, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ............................................ 8

*Freeman v. Ocwen Loan Serv., LLC*,
  113 F.4th 701 (7th Cir. 2024)..................................................................................................... 12

*Frio v. Super. Ct.*,
  203 Cal. App. 3d 1480 (1988).................................................................................................... 4

*Gershzon v. Meta Platforms, Inc.*,
  No. 23-CV-00083, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ............................................ 9

*Gladstone v. Amazon Web Servs., Inc.*,
  739 F. Supp. 3d 846 (W.D. Wash. 2024) ................................................................................... 6

*Gruber v. Yelp Inc.*,
  55 Cal. App. 5th 591 (2020)....................................................................................................... 4

*Hammerling v. Google, LLC*,
  No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024).......................................................... 9

*Harper v. City of Los Angeles*,
  533 F.3d 1010 (9th Cir. 2008).................................................................................................... 13

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1995).................................................................................................... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020)...................................................................................................... 3

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................................... 8, 9

iii

*In re Meta Pixel Tax Filing Cases*,
  724 F. Supp. 3d 987 (N.D. Cal. 2024) ................................................................. 9

*In re Pac. Fertility Ctr. Litig.*,
  No. 18-CV-01586, 2021 WL 5161926 (N.D. Cal. Nov. 5, 2021) ........................... 14

*Kang v. Credit Bureau Connection, Inc.*,
  No. 118CV01359, 2022 WL 658105 n.2 (E.D. Cal. Mar. 4, 2022) ......................... 12

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ......................................................................................... 11

*Kight v. CashCall, Inc.*,
  200 Cal. App. 4th 1377 (2011) .......................................................................... 2, 4

*Knights v. Experian Info. Sols., Inc.*,
  2025 WL 21944 (E.D.N.Y. Jan. 3, 2025) .............................................................. 12

*Lozano v. City of L.A.*,
  73 Cal. App. 5th 711 (2022) ................................................................................ 12

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
  No. 17-cv-02911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ............................ 4

*Neurovision Med. Prods., Inc. v. NuVasive, Inc.*,
  No. CV096988, 2014 WL 12544830 (C.D. Cal. Aug. 5, 2014) ............................... 14

*Nw. Mut. Life Ins. Co. v. Koch*,
  424 F. App'x 621 (9th Cir. 2011) ......................................................................... 13

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) .................................................................... 11

*Omnitracs, LLC v. Motive Technologies, Inc.*,
  No. 23-CV-05261, 2025 WL 2217593 (N.D. Cal. Aug. 5, 2025) ........................... 13

*People v. Nakai*,
  183 Cal. App. 4th 499 (2010) ................................................................................ 4

*People v. Super. Ct. of L.A. Cnty.*,
  70 Cal. 2d 123 (1969) ......................................................................................... 12

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) ........................................................................................... 4

*Rodriguez v. Google*,
  No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ...................... 10

iv

*Rojas v. HSBC*,
  20 Cal. App. 5th 427 (2018) ........................................................................... 6, 7, 12

*Shulman v. Grp. W Prods., Inc.*,
  18 Cal. 4th 200 (1998) ............................................................................................. 4

*Smith v. Facebook Inc.*,
  745 F. App'x 8 (9th Cir. 2018) ............................................................................... 8

*St. Aubin v. Carbon Health Techs., Inc.*,
  No. 24-CV-00667, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ............................. 9

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ........................................................................................ 11

*Tate v. VITAS Healthcare Corp.*,
  762 F. Supp. 3d 949 (E.D. Cal. 2025) ..................................................................... 4

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) ........................................................................... 6, 7, 8

*United States v. Davis*,
  No. 22-50058, 2024 WL 222271 (9th Cir. Jan. 22, 2024) ................................ 13, 14

*United States v. Hitt*,
  981 F.2d 422 (9th Cir. 1992) ................................................................................. 13

*United States v. Hui Hsiung*,
  778 F.3d 738 (9th Cir. 2015) ................................................................................. 10

*United States v. Kizzee*,
  159 F. App'x 805 (9th Cir. 2005) ............................................................................ 8

*United States v. Ojeda*,
  52 F.3d 335 (9th Cir. 1995) ................................................................................... 15

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (1979) ..................................................................................... 4

*Yockey v. Salesforce, Inc.*,
  745 F. Supp. 3d 945 (N.D. Cal. 2024) ..................................................................... 4

1    **I.    INTRODUCTION**

2         This case is not a close call. The evidence presented over six trial days was more than

3    sufficient for the jury to find that Meta violated the California Invasion of Privacy Act ("CIPA") §

4    632. At the outset, each Plaintiff took the stand to testify about how they answered detailed

5    questions from Flo about their menstrual cycle in the Flo onboarding survey, information the jury

6    could reasonably conclude was confidential and expected to remain private. Expert testimony

7    exposing the innerworkings of the Flo App then demonstrated that Meta's Facebook SDK was a

8    recording device that sat listening in the background as Plaintiffs and other users answered these

9    highly personal health questions. Transmission logs admitted into evidence, with no objection from

10   Meta, showed that when users responded to Flo, the Facebook SDK monitored and recorded Flo

11   App Users' answers, as well as Flo's responses, and independently transmitted that information

12   back to Meta's servers. This was all intentional. Evidence introduced at trial further proved Meta

13   was not just aware that it recorded "sensitive" information through its SDK, including from the Flo

14   App specifically, but also that Meta chose not to take any action to stop recording that information

15   and affirmatively used it—matching women's answers to Flo's health questions with millions of

16   individual Facebook user profiles—to improve its machine learning advertising system. To even

17   suggest that a verdict for Meta is the only reasonable conclusion here is meritless.

18        Unable to meet Rule 50's high burden, Meta argues that undefined terms in § 632—like

19   "record," "eavesdrop," or "recording device"—*must* be interpreted using self-serving definitions it

20   strategically crafted post-trial to exclude its misconduct from the statute. This is not the law.

21   Regardless, even under Meta's own terms, the evidence easily permitted the jury to find for

22   Plaintiffs. While Meta may not like the jury's verdict, it cannot come close to establishing that the

23   *only* possible outcome the evidence supports is a verdict in its favor.

24        Meta's request for a new trial fails for the same reason. Contrary to Meta's claims, the Court

25   correctly articulated the intent standard under CIPA § 632 in the jury instructions by adopting

26   language from California state appellate court decisions applying that statute. Meta's contention

27   that the Court erred by refusing to adopt the intent standard from a *different statute*, is meritless.

28        Finally, Meta's complaints about its own witnesses' testimony, and mismanagement of

peremptory challenges, reflect its own strategic choices and cannot justify a new trial.  Moreover, any error was harmless. The Court should deny Meta's Motion for Judgment as a Matter of Law ("Mot." or "Motion"), ECF No. 765, and enter judgment for the Plaintiffs.

## II.    LEGAL STANDARD

Judgment as a matter of law can only be granted "when the evidence permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *See Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1008 (N.D. Cal. 2012). All evidence must be viewed "in the light most favorable to the nonmoving party." *Id.*

## III.   ARGUMENT

### A. The Jury Permissibly Found That Meta Eavesdropped and/or Recorded Confidential Communications

CIPA § 632 prevents "eavesdropping"—by either "listen[ing]" to or "monitoring" a confidential communication (*Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1393 (2011))—as well as the "recording" of a confidential communication, regardless of whether the recording is performed "by a machine or . . . a human being." *Id.*

The evidence at trial was more than sufficient for the jury to conclude that Meta eavesdropped or recorded Plaintiffs' communications with Flo. For example, Plaintiffs' expert, Dr. Egelman, testified in detail about testing he conducted on multiple versions of the Flo App "[t]hroughout the class period." *See* Trial Tr. ("Tr.") 391:16-23. This testing confirmed that the Flo App incorporated Meta's Facebook SDK (*id*. at 428:23-430:2) and that this SDK functioned as a "listener" (*id*. at 421:20-422:22) waiting until women answered health questions in the Flo App to record their answers. *Id*. at 422:23-424:17 (describing the "moment that the Facebook SDK is invited to start recording the events"); *id*. at 433:5-436:24 (describing how the Meta SDK records the users' answers). Dr. Egelman further dissected network transmission logs capturing data the Facebook SDK sent to Meta to show that: (1) the Facebook SDK, not the Flo App, recorded and transmitted these answers to Meta (*id*. at 428:23-430:2 ("[t]his is what proves that it's Facebook's code that's doing the transmission and not the Flo app code"); *id.* at 438:19-439:7 (same); Ex. 628-A (log file)); (2) the recording contained the contents of women's answers to Flo's questions about

2

PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION FOR JUDGMENT AS A
MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL
CASE NO. 3:21-CV-00757-JD

their menstrual cycle or pregnancy, as well as Flo's responses to them (Tr. 433:5-437:24 (confirming the Facebook SDK records and transmits survey answers); *id*. at 451:24-453:2 (same)); and (3) that this occurred for the Custom App Events ("CAEs") at issue in this case. *Id*. at 420:13-421:14 (R_CHOOSE_GOAL); *id*. at 433:5-437:24 (R_SELECT_LAST_PERIOD_DATE, R_SELECT_PERIOD_LENGTH, R_SELECT_CYCLE_LENGTH, R_AGE_CHOSEN_ PERIODS, and SESSION_CYCLE_DAY_FIRST_LAUNCH); *id*. at 450:3-21 (R_AGE_ CHOSEN_PREGNANCY and R_PREGNANCY_WEEK_CHOSEN). A jury could easily find based on this evidence that Meta "recorded" or "eavesdropped" on Plaintiffs' communications with Flo in violation of CIPA § 632.

Meta's argument simply ignores the jury's evaluation of the evidence. According to Meta, no one could find that it recorded or eavesdropped on any communications because "the data in the twelve custom app events at issue was, at most, a secondhand repetition to Meta of [P]laintiffs' communications with Flo." Mot. at 3. But the jury was not required to accept Meta's argument that its recording was a "secondhand repetition" over the evidence above that it directly recorded women's answers to Flo's questions. The jury was well within its right to resolve this hotly contested factual question in Plaintiffs' favor.

Meta relatedly contends that its conduct does not qualify as "recording or eavesdropping as California law defines those terms" because the information it received did not exactly match the text displayed in the buttons women tapped on their screens. Mot. at 3. Meta's argument is meritless. Whether the information Meta recorded matches what Flo displayed in the app identically is irrelevant to this analysis.[1] The Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) is controlling on this point. There, plaintiffs alleged that when they entered a "search term" or "clicked on a link" in a search engine, Meta collected "GET requests" "generate[d]" by their activity that revealed the web pages they viewed. *Id*. at 605-07. The Ninth Circuit found plaintiffs plausibly alleged a violation of CIPA § 632 even though what

---

[1] The Court should disregard Meta's attempt to create a mismatch between what Flo showed users on the screen ("six days to ovulation") and what Meta records ("16 days into her cycle") (Mot. at 3) as this compares separate pieces of evidence that are not related. *See* Ex. 618-A (log file reflecting cycle day 16); Ex. 604-G (screen predicting user's "[o]vulation [occurs] in 6 days").

Meta received (i.e., generated "GET requests") did not match exactly the communications between the plaintiffs and the website (i.e., links clicked or search terms). *Id*. at 607-08. Meta's reliance on the same reasoning to argue its recordings of Flo App Users' answers to health questions are separate and distinct communications is as unavailing today as it was five years ago. Indeed, decisions since *Facebook Tracking*—including those Meta cites—continue to reinforce this principle today. *See* Mot. at 2 n.2 (citing *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 608-09 (2020) (finding CIPA § 632 protects communications "in whole or part")); *see also People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (explaining "screen shots of [a] computer monitor" taken by an interloper that ultimately contain the underlying "web cam images" communicated by a party fall under CIPA § 632). Accordingly, the jury was entitled to find, as it did, in Plaintiffs' favor.

Meta's other cases (*see* Mot. at 2 n.2) are inapplicable because they involve factual scenarios where a party to a communication *later* "betray[s] [the] confidence" of another. *Warden v. Kahn*, 99 Cal. App. 3d 805, 813 (1979).[2] Here, the jury has already determined that Meta recorded Plaintiffs' communications with the Flo App *directly*. *See* Section III.A at 2-3, above. These cases provide no basis to second-guess the jury's resolution of this factual question.

## B. The Jury Permissibly Found That Meta's SDK Is an Electronic Amplifying or Recording Device

There is no serious question that software—like Meta's Facebook SDK—qualifies as an amplifying or recording "device" under CIPA § 632. *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024) (concluding that "software" qualifies as a "device" under CIPA § 632, citing case law and CIPA's legislative history); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 958 (E.D. Cal. 2025) (same).

Ignoring this case law, Meta argues that the jury's verdict must be overturned because only "physical equipment" can qualify as a device under CIPA § 632. Mot. at 4.[3] This is wrong. *Moreno v. S.F. Bay Area Rapid Transit Dist.*, No.17-cv-02911, 2017 WL 6387764 (N.D. Cal. Dec. 14,

---

[2] Meta also relies on the following cases on the same page for the same proposition: *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 234-35 (1998); *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985); *Gruber*, 55 Cal. App. 5th at 608-09; *Kight*, 200 Cal. App. 4th at 1389-90; *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923, 929 (1994); *Frio v. Super. Ct.*, 203 Cal. App. 3d 1480, 1488 (1988).

[3] Meta's failure to propose a jury instruction defining "device" based on CIPA § 637.7, or object to the Court's final jury instructions on this basis also requires rejecting this argument.

2017) which Meta relies on for this proposition, does not discuss CIPA § 632. Rather it deals with CIPA § 637.7, an unrelated provision covering "electronic tracking device[s]" that are "attached to a vehicle or other movable thing that reveals its location or movement." CIPA § 637.7 is not at issue here and has no bearing on the jury's finding that Meta's SDK is a "device" under § 632.[4] *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) (rejecting Meta's argument that CIPA § 637.7 is relevant for interpreting § 632's "device" requirement).

Meta's plea that general principles of statutory interpretation for ambiguous terms support a "physical" device requirement for § 632 should also be rejected. Mot. at 4 (citing *Davis v. Fresno Unified Sch. Dist.*, 14 Cal. 5th 671, 687 (2023) (evaluating the word "contracts" in Government Code § 53511 because it was "ambiguous")). As explained above, there is no ambiguity here: software is a device. *See, e.g.*, *Yockey*, 745 F. Supp. 3d at 955; *Meta Platforms, Inc.*, 690 F. Supp. 3d at 1080 (finding Meta's analogous "Pixel software is a device" under CIPA § 632). Meta also ignores that its SDK code runs on a "physical device"—i.e., a phone or tablet—that would meet its own criteria. Thus, the jury's finding was justified even if Meta's (incorrect) standard is applied.

Meta's unsupported contention that its SDK is not a recording device as a matter of law because it is just "lines of code" that "do nothing on their own" (Mot. at 4) is even more absurd. If this were the standard, "physical equipment"—like tape recorders—that Meta concedes fall within § 632 would not qualify as recording devices because they, too, do not do anything on their own.

Meta's final (unsupported) argument that its SDK is not an amplifying or recording device because the CAEs it monitored and recorded are—in some instances—different from the text of the buttons in the Flo App (Mot. at 4) is wrong for the same reasons in Section III.A, above.

## C. The Jury Permissibly Found That Meta "Used" an Electronic Amplifying or Recording Device

At trial, the jury was presented with evidence confirming that Meta: (1) created the Facebook SDK, (2) controlled who could access it, (3) recorded the CAEs containing women's answers to Flo's health question, (4) sent those answers through its SDK to its own servers, (5) was

---

[4] *Doe v. Microsoft Corp.*, No. C23-0718, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023), actually supports Plaintiffs as the Court there found that a defendant's "SDK[] and receiving servers" were a device for CIPA § 632 claims against that defendant, but not others.

1   able to limit what CAEs it received, and (6) ultimately used the CAEs for their own benefit. *See*

2   Sections III.A, III.D; *see also* Tr. 1078:6-12. The jury was entirely justified in finding Meta used

3   an electronic amplifying or recording device based on this evidence. *See Gladstone v. Amazon Web*

4   *Servs., Inc.*, 739 F. Supp. 3d 846, 858 (W.D. Wash. 2024) (finding tracking software creator "uses"

5   the software under § 632 because "itself is collecting" the data); *United States v. Christensen*, 828

6   F.3d 763, 792 (9th Cir. 2015) (sustaining wiretap conviction where "[t]he crime lies in intentionally

7   manufacturing the device, knowing that it could be primarily used for wiretapping").[5]

8       Meta simply ignores the copious evidence supporting the jury's verdict and cites no case

9   evaluating the use of SDKs or CIPA to support its position that it did not "use" a recording device

10  *as a matter of law*. Meta's reliance on *Bailey v. United States*, 516 U.S. 137, 144 (1995)), which

11  deals with an unrelated federal statute about "us[ing] or carr[ying] a firearm" (*see* Mot. at 5) only

12  highlights the weakness of its argument.

13      Meta's other claim that finding it liable for "use" of the Facebook SDK would endorse an

14  impermissible "aiding-and-abetting" theory of liability is a red herring. Mot. at 5 n.3. The evidence

15  at trial showed that Meta violated CIPA *by its own conduct*. *See, e.g.*, Ex. 628-A; Tr. 429:16-19

16  ("[I]t says 'FB Android SDK 4.24.0,' and that indicates that it is, in fact, the Facebook Android

17  SDK Version 4.24.0 that's doing the actual transmission here, not the Flo App."); Section III.A.

18  The jury permissibly found Meta liable based on this evidence, not because it aided or abetted Flo.

19  **D. The Jury Permissibly Found Meta Acted With Intent**

20      CIPA § 632 requires a defendant act "with the purpose or desire of recording a confidential

21  conversation" or with "knowledge to a substantial certainty that his use of the equipment will result

22  in the recordation of a confidential conversation." *Rojas v. HSBC*, 20 Cal. App. 5th 427, 435 (2018).

23  The evidence at trial was more than sufficient for the jury to resolve this quintessential fact question

24  in Plaintiffs' favor. *See Gladstone*, 739 F. Supp. 3d at 859 ("[w]hether a person possesses the

25  requisite intent under CIPA is generally a question of fact"). Documents and testimony from Meta

26  employees showed that Meta (1) knew it received sensitive data "for years" (Ex. 1264

27

28  ───────────────────
[5] That Flo named the CAEs is undisputed and irrelevant. Mot. at 4. The jury clearly found, as it is
    entitled, that this was insignificant given the evidence it reviewed. *See* Sections III.A., III.D.

1   (acknowledging Meta received questions about sensitive data collection before 2019); Tr. 838:2-

2   14 (Satterfield testifying he was aware of the risk of app developers sending sensitive data to Meta

3   before 2016); *id.* at 962:17-963:7 (Wooldridge testifying he was aware of Meta's ability to received

4   sensitive data in 2018)); (2) alerted Flo at least twice that the Facebook SDK was sending sensitive

5   data that violated Meta's own terms (Exs. 383-R, 536) yet did nothing about it (Tr. 971:4-25

6   (testifying that Meta "could have" but "did not disable Flo's app from sending app events during,

7   you know, the class period.")); and (3) chose not to take any action to stop recording

8   communications with the Flo App while simultaneously using the information it recorded to

9   improve its machine learning and advertising systems. *Id.* at 822:17-823:19 (Satterfield testifying

10  CAEs are used to train the machine learning system and "can improve the ad system overall"); *id.*

11  at 951:7-12 (Wooldridge testifying to same). A reasonable jury could certainly conclude that Meta

12  acted both "with the purpose or desire" and with "knowledge to a substantial certainty."

13       Meta argues that no reasonable jury could find that it intended to record Flo App Users'

14  answers to health questions because its generic policies "contractually forbade Flo from sending

15  any 'health' or 'sensitive' information." Mot. at 5. But the jury was not required to credit these

16  boilerplate terms as evidence of Meta's actual intent. Indeed, several courts have acknowledged

17  that such terms are meaningless because intent is a question of fact that turns on conduct. *See, e.g.*,

18  *Meta Platforms, Inc.*, 690 F. Supp. 3d at 1076 (explaining what "Meta's true intent. . . turn[s] on

19  disputed questions of fact"); *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501, 2025 WL 2052302,

20  at *8 (N.D. Cal. July 22, 2025) (same). It was well within the jury's discretion to credit the evidence

21  of Meta's conduct over this generic policy language and reject Meta's argument in its verdict.

22       Meta's legal argument that intent requires proof that "Meta secretly wanted Flo to send

23  sensitive or unconsented data" is wrong. Mot. at 5-6. Under controlling precedent, this is not

24  required. *See Christensen*, 828 F.3d at 791 (rejecting argument that intent requires "evil purpose"

25  or knowledge that the interception was "unlawful"); *Rojas*, 20 Cal. App. 5th at 435 (finding "intent"

26  satisfied because defendant "knew that it was recording . . . calls" regardless of whether the

27

28

1    defendant knew what was intercepted was "personal").[6] The evidence cited above regarding Meta's

2    own intentional conduct is more than adequate to support the jury's verdict.

3         Meta's other challenges, including that the jury should have believed that Flo was the one

4    using a recording device, or that Meta did not learn it was "actually" recording confidential

5    communications from Flo App Users until February 2019, are fact-based arguments the jury was

6    free to reject. *United States v. Kizzee*, 159 F. App'x 805, 806 (9th Cir. 2005) ("The jury was 'free

7    to disbelieve' [defendants'] theories of the case and testimony[.]").

8        **E.  The Jury Permissibly Found Meta Did Not Have Consent**

9         Consent "can be explicit or implied, but any consent must be actual," i.e., "the disclosures"

10   at issue "must 'explicitly notify' users of the practice at issue." *In re Meta Pixel Healthcare Litig.*,

11   647 F. Supp. 3d 778, 793 (N.D. Cal. 2022). This is factual question that is evaluated under a

12   "reasonable user" standard. *See Frasco v. Flo Health, Inc.*, No. 21-CV-00757, 2024 WL 4280933,

13   at *2 (N.D. Cal. Sept. 23, 2024). Having been presented with privacy policies from both Meta and

14   Flo (Exs. 29, 66, 70, 93) the jury was well within its right to evaluate those disclosures and find

15   that Meta did not have consent to record women's communications with Flo, given Flo's promises

16   to women that their answers to health survey questions and information about their "marked cycles"

17   and "pregnancy" would not be shared with anyone and that "third parties" (like Meta) would not

18   have access to their "personal data" under any circumstances. *See e.g.*, Ex. 29 at 4 (Flo's May 25,

19   2018 Privacy Policy); Ex. 66 at 4 (Flo's July 16, 2018 Privacy Policy).

20        Meta is wrong that *Smith v. Facebook Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (Mot. at 7)

21   requires that the Court enter judgment in its favor because generalized statements that it "could

22   receive data from third-party apps reflecting users' activity on those apps" establish consent as a

23   matter of law. Not only have multiple courts post-*Smith* rejected this precise argument,[7] but as this

---

[6] Meta cites only two cases for this proposition, neither of which is relevant. *Doe I v. Google LLC*, No. 23-cv-02431, 2025 WL 1616720, at *2 (N.D. Cal. June 6, 2025) cited no authority and is inconsistent with *Christensen*, 828 F.3d at 791. *B.K. v. Desert Care Network*, No. 2:23-cv-05021, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024), found that on the pleadings plaintiff failed to allege Meta—a non-party in that action—acted with intent to support an aiding and abetting claim, which is not at issue here.

[7] *See, e.g.*, *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024) (rejecting that "Facebook's policies" establish, as a matter of law, consent to collect sensitive data through

8

PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION FOR JUDGMENT AS A
MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL
CASE NO. 3:21-CV-00757-JD

1    Court recognized in denying Meta's motion for summary judgment, whether Meta obtained consent

2    was a fact question for jurors to resolve at trial. ECF No. 608 at 1.

3         *Hammerling v. Google, LLC*, (Mot. at 8.) is distinguishable because, unlike here, the data

4    collection practice at issue in that case was disclosed. *See* No. 22-17024, 2024 WL 937247, at *2

5    (9th Cir. Mar. 5, 2024) (affirming dismissal of claim by Android where Google's terms of services

6    stated that it may collect data about "third-party . . . apps" that "use" the "Android Operating

7    System").[8] Meta's attempt to fit this case into *Hammerling* by arguing Flo's policies

8    "independently" mention "Facebook Analytics" (Mot. at 8) ignores the evidence above that Flo

9    promised users their health data would never be disclosed and that the jury has already concluded

10   that Meta's own policies were inadequate to independently establish consent. Meta's separate claim

11   that Flo consented to Meta's conduct is irrelevant (Mot. at 7); CIPA is a two-party consent statute,

12   and, as explained above, Plaintiffs never consented to Meta's recording. *See* CIPA § 632.

### F. Plaintiffs' and Class Members' Communications Were Confidential

14        A "confidential communication" is "any communication carried on in circumstances as may

15   reasonably indicate that any party to the communication desires it to be confined to the parties

16   thereto[.]" CIPA § 632(c). Health information—like the CAEs here—"is understood to be among

17   the most sensitive information that could be collected about a person" and undoubtedly

18   confidential. *Doe v. Regents of Univ. of Cal.*, No. 3:23-cv-00598, 2023 WL 3316766, *6 (N.D. Cal.

19   May 8, 2023). Plaintiffs proved at trial that they reasonably expected their conversations with Flo,

20   within a password protected app, concerning sensitive health information, were private and not

21   being recorded by Meta or anyone else. *See* Tr. 190:4-191:15, 233:11-23, 269:21-270:5, 291:6-15,

22   293:24-294:8, 325:25-327:22 (Plaintiffs testifying their answers are private); Section III.E.

23

---

24   Meta's tracking technology); *GoodRx Holdings, Inc.*, 2025 WL 2052302, at *9 (same); *In re Meta
     Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793–94 (same); *Gershzon v. Meta Platforms, Inc.*, No.

25   23-CV-00083, 2023 WL 5420234, at *11 (N.D. Cal. Aug. 22, 2023) (same); *St. Aubin v. Carbon
     Health Techs., Inc.*, No. 24-CV-00667, 2024 WL 4369675, at *9 (N.D. Cal. Oct. 1, 2024) (same);

26   *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548, 2024 WL 4785136, at *12 (W.D. Wash.
     Nov. 14, 2024) (same). Meta's related argument that these cases only apply if the app developer is

27   a "provider of healthcare" sharing "protected health information" under HIPAA is devoid of legal
     support. Mot. at 8 n.5.

28   [8] *F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 964 (9th Cir. 2010), which involves a
     recording contract royalty provision, is completely off-point. Mot. at 8.

1    Meta's argument that Plaintiffs' communications with Flo are not

2    confidential because they could reasonably expect *Flo* to "record[] their responses in the app" is

3    nonsense. Mot. at 8-9. Were that the standard, no conversation among two people would ever

4    qualify for CIPA's protection. Meta's cited cases do not support this tortured reading of

5    confidentiality either. Mot. at 8-9. *Rodriguez v. Google*, No. 20-cv-04688-RS, 2021 WL 2026726

6    (N.D. Cal. May 21, 2021) and *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014)

7    both found that the plaintiffs' claims failed because they did not allege facts to support a plausible

8    inference that the specific communications claimed to be confidential (e.g., all app activity across

9    all different types of apps in *Rodriguez* and all messages on Facebook Messenger in *Campbell*)

10   were not also being recorded by or shared with others.[9] The opposite is true here, where the

11   evidence at trial has *proven* the reasonableness of Plaintiffs' expectation of privacy in their

12   communications with Flo. *See* Section III.E.

13   **G.  Plaintiffs Can Bring CIPA § 632 Claims**

14   CIPA § 632 is designed to protect California residents. *Ades v. Omni Hotels Mgmt. Corp.*,

15   46 F. Supp. 3d 999, 1009 (C.D. Cal. 2014) (protecting California residents is "one of the principal

16   purposes" underlying CIPA). Plaintiffs each testified that they were California residents when they

17   used the Flo App. Tr. 146:12-14, 148:16-19 (Wellman); *id.* at 229:12-13 (Chen); 289:14-17

18   (Gamino). Meta has presented no evidence showing Plaintiffs were outside of California at any

19   relevant point in time. *See* ECF No. 656 at 5. As a result, the only evidence in the record supports

20   finding that Plaintiffs were in California at the time CIPA was violated.

21   Meta has separately waived this argument by failing to raise it sooner. *See United States v.*

22   *Hui Hsiung*, 778 F.3d 738, 748 (9th Cir. 2015) (finding waiver of argument where defendant did

23   not object to the jury instructions on that ground). Critically, Meta did not request or object to any

24   of the jury instructions, or the verdict form, on extraterritoriality or residency grounds. It cannot

25   claim the jury incorrectly found for Plaintiffs on a question that was never asked.

26   But even if Meta did not waive this argument, California's bar on extraterritorial application

27

28   _____

[9] *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774-77 (2002), does not create a presumption *against* confidentiality. Mot. at 8. Rather, it confirms that "confidential" communications include those where there is an objectively reasonable expectation of privacy, as Plaintiffs have proven here.

does not apply to Plaintiffs' and the Class's CIPA § 632 claims here. It is undisputed that Plaintiffs Wellman, Chen, and Gamino are California residents (*see* ECF No. 656 at 5), Meta is a California company (whose terms, notably, contain an express California choice-of-law clause) (*see* Ex. 1224 at 15; ECF No. 605 at 11), and that the CAEs Meta recorded were sent to and from California (i.e., from Plaintiffs' devices in California to Meta in California). *See* Tr. 954:3-6. These California-centric facts distinguish this case from those cited by Meta. Mot. at 9-10 (citing *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014) (noting portions of California's Labor Code do not apply to non-California residents who do not work in California); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (finding the UCL does not apply to "work performed outside California" by a non-resident).[10] *Doe v. Call-On DOC, Inc.*, No. 24cv2095, 2025 WL 1677632, at *6 (S.D. Cal. June 13, 2025) is even further off-point, as that decision evaluated personal jurisdiction over an out-of-state defendant. There simply is no extraterritoriality issue in this case.

## H. Plaintiffs Have a Private Right of Action

CIPA allows any "[a]ny person who has been injured" to seek relief. CIPA § 637.2. Because a "violation of the privacy rights protected by CIPA" is itself sufficient injury to bring a CIPA claim, proof of a separate harm is not required. *Ades*, 46 F. Supp. 3d at 1018. Plaintiffs' testimony regarding their use of the Flo App (Tr. 146:9-162:20 (Wellman), 229:12-233:23 (Chen), 289:14-294:8 (Gamino)), and the overwhelming evidence of Meta's recording of Flo App Users during the same period (*see* Section III.A), proves Plaintiffs' and the Class's injury. Meta's argument that "injury" requires proof of specific enumerated harms (e.g., "targeted ads based on the data shared with Flo" or the recordings were "viewed . . . by a human" (Mot. at 10)) is contrary to the law.

Meta's related argument that Plaintiffs cannot obtain relief under § 632 because they "disclaimed" and failed to prove "any actual damage" (Mot. at 11) is equally unavailing. Unlike Meta's cases under the Fair Credit Reporting Act, which requires actual loss, CIPA imposes no such requirement. *See* Mot. at 10 (citing *Freeman v. Ocwen Loan Serv., LLC*, 113 F.4th 701, 711

---

[10] *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119-20 (2006) does not support Meta's argument either. Mot. at 9. This case merely confirms that CIPA § 632 is designed to protect California residents, so it can be applied to non-California companies that secretly record California residents' communications within the state.

1    (7th Cir. 2024) ("psychological harm" cannot establish Article III standing for FCRA); *Knights v.*

2    *Experian Info. Sols., Inc.*, 24-CV-08769, 2025 WL 21944, at *1 (E.D.N.Y. Jan. 3, 2025) (similar)).

3         Finally, Meta's contention that statutory damages are unavailable pursuant to *Campbell v.*

4    *Facebook Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016) is wrong. As this Court has repeatedly

5    recognized, *Campbell* is "not California state law" (Tr. 1150:2-13) but involved a different federal

6    statute, which unlike CIPA, has a discretionary statutory damage provision. *Compare Campbell*,

7    315 F.R.D. at 268 (analyzing ECPA's language that "the court *may* assess [] damages") (emphasis

8    added) *with* CIPA § 637.2 (no such language); *see also Kang v. Credit Bureau Connection, Inc.*,

9    No. 118CV01359, 2022 WL 658105, at *7 n.2 (E.D. Cal. Mar. 4, 2022) (explaining *Campbell*

10   focused on ECPA). ECPA's multifactor balancing test simply does not apply here.

11   **I.  The Jury Instructions Were Proper**

12        To obtain a new trial based on an erroneous jury instruction, Meta must show both that the

13   instructions were "legally erroneous" and that "the error had prejudicial effect." *Droplets, Inc. v.*

14   *Yahoo! Inc.*, 658 F. Supp. 3d 754, 771 (N.D. Cal. 2023). Meta cannot carry this burden because the

15   sole jury instruction it challenges on intent was clearly correct—the Court took the language

16   directly from California state appellate decisions interpreting CIPA § 632. *See Rojas*, 20 Cal. App.

17   5th at 435; *see also People v. Super. Ct. of L.A. Cnty.*, 70 Cal. 2d 123, 134 (1969).[11] While Meta

18   argues that the Court should have "track[ed] the federal Wiretap Act's standard" instead (Mot. at

19   11-12), the Court's decision to follow the California courts' interpretations of CIPA § 632 over

20   interpretations of a *different statute* is not an "error," let alone one that justifies a new trial.

21        Meta's contention that the intent standard in these California state cases does not apply to

22   it as someone that "merely makes a product generally available for third parties to use" (Mot. at

23   12) is meritless. Not only does the law not distinguish between actors in this way, but Meta's factual

24   contention that it was a passive provider of software akin to "a knife manufacturer" (Mot. at 12)

25   contradicts the evidence at trial. *See* Section III.D, above.

26        Even if this jury instruction was legally erroneous (it was not), it certainly was not

27

28   ───────────────
     [11] Meta's own case, *Lozano v. City of L.A.*, 73 Cal. App. 5th 711, 727-28 (2022), holds that intent
     under CIPA § 632 includes "knowledge to a substantial certainty."

1   prejudicial because the evidence Plaintiffs introduced regarding Meta's intent (*see* Section III.D,

2   above) was sufficient to find that Meta violated CIPA under either standard. *See Nw. Mut. Life Ins.*

3   *Co. v. Koch*, 424 F. App'x 621, 624 (9th Cir. 2011) (any purported error on the intent instruction

4   would be "harmless" because jury's finding on the "intent inquiry" would have been "substantially

5   the same"). The jury's decision to credit that evidence over Meta's claims about its "binding

6   contract" with developers or "efforts" to "protect against receiving this data" post-Class Period

7   (Mot. at 13) is not indicative of prejudice and thus cannot support a new trial.

8       **J.   There Were No Erroneous Evidentiary Rulings**

9       Evidentiary rulings are only a basis for a new trial if they "substantially prejudiced" a party.

10  *Cotton*, 860 F. Supp. 2d at 1015; *see also Harper v. City of L.A.*, 533 F.3d 1010, 1030 (9th Cir.

11  2008) (same). Meta does not come close to meeting this standard.

12      *First*, Meta complains about "jokes" being "read into the record" during cross examination

13  of Mr. Satterfield, its Vice President and Associate General Counsel for AI and Privacy. Mot. at

14  13. But Meta *did not object* to this line of questioning or the Exhibit presented to the witness

15  contemporaneously at trial and thus cannot challenge it now. *See Omnitracs, LLC v. Motive*

16  *Technologies, Inc*., No. 23-CV-05261, 2025 WL 2217593, at *7 (N.D. Cal. Aug. 5, 2025)

17  ("[F]ailure to object to [the party's] questioning during trial constitutes waiver."). The Court

18  properly rejected counsel's belated attempt to lodge "retroactive objections" no fewer than three

19  times. Tr. 921:16-17, 1107:8-10, 1130:4-7. Waiver aside, Meta ignores that the "jokes" in question

20  were properly used for impeachment purposes after the same witness repeatedly testified that Meta

21  took these same privacy issues "extremely seriously." Tr. 875:24-25. Plaintiffs were entitled to

22  rebut those claims and challenge the witness's credibility with these "jokes" on cross-examination.

23      The extreme cases Meta cites, if anything, highlight the absence of prejudice here. Mot. at

24  14 (citing *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) (finding admission of a

25  photograph of "a dozen nasty-looking weapons" alongside other evidence that "misleading[ly]"

26  suggested the weapons belonged to the criminal defendant without a "limiting instruction" was

27  prejudicial); *United States v. Davis*, No. 22-50058, 2024 WL 222271, at *2 (9th Cir. Jan. 22, 2024)

28  (reversal where court allowed an "unsettling, emotional and inherently inflammatory" video

13

PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION FOR JUDGMENT AS A
MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL
CASE NO. 3:21-CV-00757-JD

1  showing the actual death of the victim)). Meta's decision not to object confirms a lack of prejudice.

2  *See In re Pac. Fertility Ctr. Litig.*, No. 18-CV-01586, 2021 WL 5161926, at *7 (N.D. Cal. Nov. 5,

3  2021) (finding that "counsel did not object . . . strongly suggests that counsel made a strategic

4  decision . . . the comments would not sway the jury").

5      *Second*, Meta complains that questions about "opioid manufacture" posed to the same

6  witness on cross examination were "purely inflammatory and should not have been permitted."

7  Mot. at 14. That is not true. The questions at issue followed Mr. Satterfield's attempt to defend

8  Meta's recording of women's conversations with the Flo App as in "line with the rest of the

9  industry." Tr. 845:5-17. Undermining Mr. Satterfield's claim by asking if he was aware of *other*

10  *industries*—including Big Pharma—that have made a similar standards-based arguments is

11  permissible challenge to his credibility. In any event, Meta cannot show this brief line of

12  questions—to which the witness responded, "I'm not aware of that" (*id.* at 845:22)—was so

13  prejudicial as to warrant a new trial. *See Neurovision Med. Prods., Inc. v. NuVasive, Inc.*, No.

14  CV096988, 2014 WL 12544830, at *7 (C.D. Cal. Aug. 5, 2014) (finding witness's "brief

15  testimony" did not substantially prejudice the defendant "in the context of the entire trial").

16      Next, Meta argues that it was prejudiced by allowing the jury to hear information about the

17  functionality of the Flo App after the onboarding survey, including questions about "other sensitive

18  information" information like period "symptoms," "body fluids," or "sex." Mot. at 14. Not so. The

19  Court allowed Plaintiffs to introduce evidence about the Flo App's functions only so long as it was

20  "relevant." ECF No. 692 at 5. This specific evidence was relevant to, among other things, show the

21  type of information Flo App Users entered is objectively private. Meta's claim that this misled the

22  jury is unfounded (Mot. at 14 citing *Hitt*, 981 F.3d at 424)) as jurors were repeatedly told that *only*

23  12 CAEs were at issue. *See, e.g.*, Tr. 79:11-22, 103:22-104:6, 137:9-11, 667:18-22. No one could

24  be misled or prejudiced by this evidence based on the clear instructions at trial.

25      Finally, Meta's claim that it was prejudiced by evidence showing it recorded information

26  about women's pregnancy, in addition to their period, because "no class representative was

27  pregnant" (Mot. at 14) misses mark. For one, Meta waived this argument by failing to object to the

28  questions it now claims are prejudicial. Tr. 451:15-18, 97:21-23, 99:12-25, 590:8-22, 695:14-20,

14

PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION FOR JUDGMENT AS A
MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL
CASE NO. 3:21-CV-00757-JD

970:16. But even if Meta had objected, this evidence would have been admissible as Plaintiffs'
claims encompassed the entire onboarding survey, which asked overlapping questions regardless
of whether a woman was pregnant. *See, e.g.*, Ex. 604-B; Ex. 604-F, 611-V, 611-Y. There was no
prejudice in allowing the jury to consider these common facts.

### K. No Jurors Were Biased

Whether a juror is biased is a question of fact left to the discretion of the district court.
*Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007).

Meta argues that Juror #4, who is not a native English speaker, was biased in Plaintiffs'
favor[12] because he stated on his jury questionnaire that people in civil cases "get money." Mot. at
15. Follow up questioning during *voir dire* disposes of this argument. Asked by the Court to clarify
his answer, Juror #4 explained that he was referring to his own experience in a civil case where he
got "some money" (Tr. 67:23-68:3) and that he understood both that this case was different and
that not all civil cases result in monetary damages. Tr. 68:2-10. The Court's decision not to strike
this juror based on these answers was well within its discretion. *See United States v. Ojeda*, 52 F.3d
335, 335 (9th Cir. 1995) (finding the court properly exercised discretion refusing to strike a juror
for cause where its *voir dire* was "reasonably sufficient to test the juror for bias or partiality").

The cases Meta cites only confirm the absence of actual bias here. For instance, in *Image
Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220-21 (9th Cir. 1995), the juror had a
direct relationship with the defendant and even raised concerns during trial that he could not put
aside their prior "adversary dealings" and his "resentment" for the defendant. Meanwhile, in *Dyer
v. Calderon*, 151 F.3d 970, 973-75 (9th Cir. 1998), a juror in a murder trial repeatedly lied about
how her brother was recently murdered. Nothing close to that happened with Juror #4.

### IV.   CONCLUSION

For the reasons stated herein, Meta's Motion should be denied.

---

[12] Meta's claim that Juror #4 was also tainted because he was friends with one of the co-founders
of WhatsApp, who had "public disagreements with Meta" is even less persuasive. There is no
indication Juror #4 knew of these "disagreements," of if he did, that this affected him in anyway.

15

Dated: August 21, 2025

/s/ Christian Levis
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com

Diana J. Zinser (*pro hac vice*)
Jeffrey L. Kodroff (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@srkattorneys.com
jkodroff@srkattorneys.com

*Class Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Telephone: 805-543-0990
Facsimile: 805-543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco
and Sarah Wellman*

Ronald A. Marron (CA Bar 175650)
ron@consumersadvocates.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Alexis M. Wood (CA Bar 270200)
alexis@consumersadvocates.com
Kas L. Gallucci (CA Bar 288709)
kas@consumersadvocates.com
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665

*Counsel for Plaintiffs Jennifer Chen
and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (929) 220-2759
kent.williams@sirillp.com

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, OH 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway
and Autumn Meigs*