James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN**
**CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Telephone: 805-543-0990
Facsimile: 805-543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco*
*and Sarah Wellman*

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com

*Co-Lead Counsel for*
*Plaintiffs and the Class*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Co-Lead Counsel for Plaintiffs and the Class*

Diana J. Zinser (*pro hac vice*)
Jeffrey L. Kodroff (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF,**
**P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
dzinser@srkattorneys.com
jkodroff@srkattorneys.com

*Co-Lead Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERICA FRASCO, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>FLO HEALTH, INC., GOOGLE, LLC, META PLATFORMS, INC., and FLURRY, INC.,<br><br>            Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION FOR CLASS DECERTIFICATION**<br><br>Judge: Hon. James Donato<br>Court: Courtroom 11 – 19th Floor |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 1

II.   LEGAL STANDARD ......................................................................................................... 2

III.  ARGUMENT ...................................................................................................................... 2

    A.   The Evidence at Trial Confirms that Common Questions Predominate .................. 2

        1.   Who Used the Flo App During the Class Period and Where They Used It Are Unrelated to Predominance ...................................................... 3

        2.   Meta Is Not Entitled to "Mini-Trials" on Class Membership ...................... 5

    B.   Confidentiality Was Proven on a Classwide Basis .................................................. 6

    C.   Meta's Consent Defense Failed on a Classwide Basis Based on Common Evidence ................................................................................................................................... 9

    D.   Injury and Damages Are Not Individualized Issues ............................................. 10

    E.   Meta's Non-Descript Claim of "Other" Individualized Issues Fails ..................... 12

    F.   Meta's Motion to Modify the Class Definition is Meritless ................................... 13

IV.   CONCLUSION ................................................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Bally v. State Farm Life Ins. Co.*,
4
   No. 18-CV-04954, 2022 WL 594798 (N.D. Cal. Feb. 24, 2022) ................................................ 2

5

*Bateman v. Am. Multi-Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010)..................................................................................................... 12
6

*Bazarganfard v. Club 360 LLC*,
7
   344 F.R.D. 411 (C.D. Cal. 2023) ............................................................................................... 5

8

*Bliss v. CoreCivic, Inc.*,
9
   711 F. Supp. 3d 1233 (D. Nev. 2024) ...................................................................................... 12

10

*Bouissey v. Swift Transp. Co.*,
   No. CV 19-03203, 2024 WL 649246 (C.D. Cal. Jan. 30, 2024)............................................... 14

11

*Brice v. Haynes Invs., LLC*,
12
   No. 18-CV-01200, 2021 WL 1916466 (N.D. Cal. Apr. 23, 2021) ............................................. 4

13

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017)............................................................................................. 1, 4, 6
14

15

*Brown v. DirecTV, LLC*,
   562 F. Supp. 3d 590 (C.D. Cal. 2021)........................................................................................ 6

16

*Brown v. Google LLC*,
17
   685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................................................................................... 8

18

*Calhoun v. Google, LLC*,
19
   113 F.4th 1141 (9th Cir. 2024).................................................................................................... 9

20

*Campbell v. Facebook Inc.*,
   315 F.R.D. 250 (N.D. Cal. 2016)........................................................................................ 2, 12

21

*Comcast Corp.v. Behrend*,
22
   569 U.S. 27 (2013).................................................................................................................... 12

23

*Doe v. FullStory, Inc.*,
   712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..................................................................................... 8
24

25

*Doe v. Regents of Univ. of Cal.*,
   No. 3:23-cv-00598, 2023 WL 3316766 (N.D. Cal. May 8, 2023)............................................. 8

26

*Frasco v. Flo Health, Inc.*,
27
   No. 21-CV-00757, 2025 WL 1433825 (N.D. Cal. May 19, 2025) ............................................. 7

28

*Griffith v. TikTok, Inc.*,
   No. 5:23-cv-00964, 2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ........................................... 10

*Guido v. L'Oreal, USA, Inc.*,
   No. CV 11-1067, 2013 WL 3353857 (C.D. Cal. July 1, 2013) ................................................ 11

*Hahn v. Massage Envy Franchising, LLC*,
   No. 12cv153, 2016 WL 11620608 (S.D. Cal. Mar. 30, 2016) ......................................... 14, 15

*Howell v. Advantage RN, LLC*,
   401 F. Supp. 3d 1078 (S.D. Cal. 2019) ...................................................................................... 2

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................................. 13

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018) ........................................................................................................ 6

*In re Facebook Biometric Info. Priv. Litig.*,
   326 F.R.D. 535 (N.D. Cal. ) ...................................................................................................... 2

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................................................................................... 7

*Javier v. Assurance IQ, LLC*,
   No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) .................................................... 13

*Kearney v. Salomon Smith Barney, Inc.*,
   137 P.3d 914 (Cal. 2006) ......................................................................................................... 13

*Kellman v. Spokeo, Inc.*,
   No. 21-cv-08976, 2024 WL 2788418 (N.D. Cal. May 29, 2024) ............................................ 11

*Krueger v. Wyeth, Inc.*,
   310 F.R.D. 468 (S.D. Cal. 2015) ............................................................................................... 5

*Lao v. H&M Hennes & Mauritz, L.P.*,
   No. 5:16-CV-00333, 2019 WL 7312623 (N.D. Cal. Dec. 30, 2019) ......................................... 2

*Lara v. First Nat'l Ins. Co. of Am.*,
   25 F.4th 1134 (9th Cir. 2022) .................................................................................................... 6

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014) ............................................................................................... 5

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) .................................................................................................. 14

*Moore v. Ulta Salon, Cosms. & Fragrance, Inc.*,
   311 F.R.D. 590 (C.D. Cal. 2015) ............................................................................................. 13

iii

*Opperman v. Path, Inc,*
  No. 13-cv-00453, 2016 WL 3844326 (N.D. Cal. July 15, 201 ................................................ 11

*Parkinson v. Hyundai Motor Am.*,
  258 F.R.D. 580 (C.D. Cal. 2008) .......................................................................................... 5

*PFA Ins. Mktg. Litig.*,
  696 F. Supp. 3d 788 (N.D. Cal. 2021) ................................................................................. 5

*Raffin v. Medicredit, Inc.*,
  No. CV154912, 2017 WL 131745 (C.D. Cal. Jan. 3, 2017) .................................................. 12

*Rodriguez v. Google LLC*,
  No. 20-CV-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ........................................ 7

*Rodriguez v. Google LLC*,
  No. 20-CV-04688, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ............................................... 7

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) .............................................................................................. 3

*Sihler v. Fulfillment Lab, Inc.*,
  No. 20CV1528, 2023 WL 4335735 (S.D. Cal. June 23, 2023) ............................................. 7

*Smith v. Google, LLC*,
  735 F. Supp. 3d 1188 (N.D. Cal. 2024) ................................................................................ 8

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
  No. 2:13-CV-02468, 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) ........................... 10, 11, 12

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ............................................................................................... 10

*Tschudy v. J.C. Penney Corp., Inc.*,
  No. 11cv1011, 2015 WL 8484530 ........................................................................................ 15

*United States v. Hui Hsiung*,
  778 F.3d 738 (9th Cir. 2015) ................................................................................................ 5

*Utne v. Home Depot U.S.A., Inc.*,
  No. 16-CV-01854, 2022 WL 1443338 (N.D. Cal. May 6, 2022) ........................................... 2

*Victorino v. FCA US LLC*,
  No. 16CV1617, 2020 WL 2306609 (S.D. Cal. May 8, 2020) ................................................ 6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................................. 6

*Whalen v. Ford Motor Co.*,
  No. 13-CV-03072, 2018 WL 6069812 (N.D. Cal. Nov. 20, 2018) ........................................ 13

iv

*Yoon v. Meta Platforms, Inc.*,
     No. 24-CV-02612, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........................................... 6, 7

**Statutes**

18 U.S.C. § 2520(c)(2) ................................................................................................................... 11

1    **I.    INTRODUCTION**

2          Two weeks of trial have now proven the validity of the certified Class. Documents, data,

3    and expert testimony consistently confirmed that Meta's Facebook SDK uniformly recorded

4    women's conversations with the Flo App without consent. There was not a single piece of evidence

5    introduced at trial (and Meta identifies none) that showed Meta recorded, processed, or used the

6    data it received from the Facebook SDK differently for any Flo App user, in any State, at any point

7    in the Class Period. Common questions clearly predominate on this record. All that remains is for

8    California Class Members to come forward and claim the money Meta owes them.

9          Meta struggles against the weight of the evidence to create individual issues where none

10   exist. But these efforts fall well short of carrying its burden to show a material change in the facts

11   or law underlying the Court's prior ruling, as required for decertification.

12         For instance, Meta's quibbles about *who* completed Flo's onboarding survey, or *where* they

13   were at the time, are both unrelated to predominance. Identifying who used the Flo App or where

14   they were are objective questions that can be determined through a claims process. Meta's focus

15   on questions about Madeline Kiss's status as a Class Member demonstrates that its argument has

16   nothing to do with predominance at all (Mot. at 4), but with her Class membership—the

17   quintessential claims processing question. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121,

18   1131 (9th Cir. 2017).

19         Meta's renewed confidentiality and consent arguments are even less persuasive. The

20   evidence at trial unequivocally showed that Flo and Meta made uniform representations to all Class

21   Members about how their data would be handled. Flo's repeated promise that it would not share

22   women's marked cycles, pregnancy information, or onboarding survey answers with anyone proves

23   the objective reasonableness of Plaintiffs' and Class Members' expectation of privacy. The same

24   evidence also confirms a lack of consent, as neither Flo nor Meta obtained permission for the

25   Facebook SDK to record this specific data. Meta's insistence that mini trials are required to ask

26   women about their answers and if they believed those conversations with Flo were "sensitive"

27   ignores the objective standard applied under California law and these uniform promises made.

28         Finally, Meta's claim that determining who was injured and awarding damages requires

---

1

individualized adjudication is meritless. Plaintiffs proved through common evidence at trial that all Class Members were injured when Meta recorded their conversations with Flo without consent. Because CIPA automatically awards damages for this violation to each Class Member, there is no further analysis required. Meta's contention that CIPA damages are "discretionary" misstates the law. Indeed, Meta's sole authority for this proposition, *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 268-69 (N.D. Cal. 2016) applied an entirely *different statute*.

Meta's separate attempt to modify the Class to exclude Flo App users who entered pregnancy information because no Named Plaintiff was pregnant at the time they completed Flo's onboarding survey also fails. Meta simply ignores the evidence that, pregnant or not, all Class Members completed Flo's onboarding survey and had their private communications with Flo recorded by Meta. Plaintiffs are therefore typical and adequate Class representatives because they have the same claims as all Class Members that stem from the same common course of conduct.

## II.    LEGAL STANDARD

A "motion for decertification will generally only succeed where there has been some change in the law or facts that justifies reversing the initial certification decision." *See Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854, 2022 WL 1443338, at *5 (N.D. Cal. May 6, 2022). The party seeking decertification bears the burden of meeting this standard. *See, e.g., Bally v. State Farm Life Ins. Co.*, No. 18-CV-04954, 2022 WL 594798, at *2 (N.D. Cal. Feb. 24, 2022); *Lao v. H&M Hennes & Mauritz, L.P.*, No. 5:16-CV-00333, 2019 WL 7312623, at *2 (N.D. Cal. Dec. 30, 2019).

Modification of a class definition under Rule 23(c)(1)(C) is only appropriate where there are "subsequent developments in the litigation" that warrant doing so. *Howell v. Advantage RN, LLC*, 401 F. Supp. 3d 1078, 1085 (S.D. Cal. 2019).

## III.    ARGUMENT

### A.    The Evidence at Trial Confirms that Common Questions Predominate

Rule 23(b)(3) "permits certification when 'one or more of the central issues in the action are common to the class and can be said to predominate[.]'" *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 544 (N.D. Cal. 2018) (Donato, J.), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019). Predominance is satisfied even when there are "some individualized

1    issues" so long as these issues do not "overwhelm" those common to the Class. *See Ruiz Torres v.*

2    *Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016).

3        The evidence adduced at trial proves that common questions predominate. The certified

4    Class includes "[a]ll Flo App users in California who entered menstruation and/or pregnancy

5    information into the Flo Health App while residing in California between November 1, 2016, and

6    February 28, 2019, inclusive." ECF No. 605 at 34. Although the Flo App asks many questions

7    about menstruation and pregnancy, Plaintiffs focused their claims on the questions Flo asked users

8    during the onboarding survey, and the 12 Custom App Events ("CAEs") Meta's Facebook SDK

9    recorded as a result. *Id.* at 8 (noting Plaintiffs "gave specific attention" to this data and the 12

10   CAEs). The onboarding survey and its questions—e.g., "When did your last period start?", "On

11   average, how long is your period?", or "On average, how long is your cycle?"—were discussed at

12   length during the trial. *See, e.g.*, Exs. 604-C, 604-D, 604-E, 611-W, 611-Y. The evidence admitted

13   unequivocally established: (1) that the onboarding survey consists entirely of questions about

14   "menstruation and/or pregnancy information" (*see id.*; *see also* Trial Transcript ("Tr.") 397:22-

15   399:2); (2) these questions were "consistent throughout" the Class Period, regardless of when Class

16   Members used the Flo App (*id.* at 391:16-23, 399:3-6); (3) the survey was "mandatory" for all Flo

17   App users (*id.* at 398:8-10); and (4) that Meta's Facebook SDK indiscriminately recorded women's

18   answers to these questions, as well as Flo's responses, during the period it was incorporated in the

19   Flo App, i.e., November 1, 2016, and February 28, 2019. *Id.* at 428:23-437:18.

20       The uniformity of both the onboarding survey and operation of Meta's Facebook SDK, as

21   proven at trial, eliminates any predominance concerns. Because the onboarding survey itself

22   consists entirely of questions about "menstruation and/or pregnancy information" that all Class

23   Members were required to answer before using the app, everyone who used the Flo App during the

24   Class Period was unlawfully recorded by Meta's Facebook SDK in violation of CIPA § 632.

25       **1.    Who Used the Flo App During the Class Period and Where They Used It Are Unrelated to Predominance**

26       Ignoring the evidence, Meta argues that identifying which individuals "completed the [Flo]

27   onboarding survey during the class period" requires an individualized inquiry that defeats

28   predominance. Meta's Motion for Class Decertification ("Mot." or "Motion"), ECF No. 766 at 3.

3

1   But *who* completed the onboarding survey has nothing to do with the merits of Plaintiffs' claims,

2   whether common issues predominate over individual ones, or the requirements of Rule 23(b)(3).

3      Meta's focus on questions about Madeline Kiss's status as a Class Member demonstrates

4   that its argument has nothing to do with predominance. Mot. at 3-4. Meta argues that determining

5   Ms. Kiss's *Class membership* would require "ask[ing] her" when she used the Flo App. *Id.* at 4.

6   This is precisely the kind of question that can be resolved through the claims process. *See Briseno*,

7   844 F.3d at 1131 (explaining the "claims administration stage" is sufficient to protect a defendant's

8   right to "validate claims"). It is not, however, a question relating to Meta's "central liability"[1] (Mot.

9   at 4) or whether common merits issues predominate. All merits issues were determined at trial on

10  a classwide basis using common evidence as described above. *See* Tr.  428:23-431:17 (Egelman

11  explaining the Flo App had Meta's SDK consistently "across different versions" during the Class

12  Period); *id*. at 428:4-6 (users are not able to stop Facebook SDK from recording their information);

13  *id.* at 533:22-23 ("[T]he software functions the same for everyone."). Meta's exaggerated Class

14  membership concerns, disguised as predominance issues, are not a basis to decertify the Class.

15     Meta's related argument that determining *who* was physically present in California when

16  they answered Flo's onboarding survey fails for the same reason. Mot. at 5. Whether someone

17  resided in California when they completed the onboarding survey is an objective question that goes

18  to Class membership and does not affect whether any of the factual occurrences or legal issues

19  underlying Plaintiffs' CIPA § 632 claim predominate. Not surprisingly, several courts have

20  recognized class members' residence or location as something that can be determined through a

21  claims process, and does not require separate "mini trials" like Meta contends. *See Brice v. Haynes*

22  *Invs., LLC*, No. 18-CV-01200, 2021 WL 1916466, at *4 (N.D. Cal. Apr. 23, 2021) (finding whether

23  someone is "a California resident" can be determined by defendant's data and addressed "in the

24  claims administration process"); *see also Briseno*, 844 F.3d at 1131-32 (explaining parties have

25  "long relied" on the "claims administration stage" to "validate claims" and "identify all class

26

27

---

28  [1] While Meta claims that "when" Class Members completed the onboarding survey is a "central
    liability issue," it does not even attempt to explain how this has anything to do with the merits.

members"). The same kind of process can be applied here to identify Flo App users who completed the onboarding survey while present in California.[2]

Meta's attempt to manufacture a merits issue by raising the specter of violating the presumption against the extraterritorial application of California state statutes fails. *See* Mot. at 5-6. By definition, the Class does not violate this presumption because it is expressly limited to *California residents in California*. *See Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008) (certifying class and rejecting extraterritoriality argument where "alleged wrongful conduct occurred in California"); *In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 788, 801-02 (N.D. Cal. 2021) (rejecting extraterritoriality argument because subclass was limited to California residents).[3] There can be no extraterritorial application of law to this Class.

Meta's related speculation that *some* California residents may have been traveling or left California's borders at *some* point (Mot. at 5-6.) is devoid of support and thus cannot create a predominance issue. *See Bazarganfard v. Club 360 LLC*, 344 F.R.D. 411, 427 (C.D. Cal. 2023) (claims that individualized issues predominate without sufficient evidence of those issues cannot defeat predominance). In any event, this is a question that will be addressed through the claims process as Class Members can simply be asked to certify that they were in California at the time they answered the onboarding survey.

## 2.    Meta Is Not Entitled to "Mini-Trials" on Class Membership

Meta's position that due process entitles it to millions of individual trials on Class membership is wrong. *See Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 476 (S.D. Cal. 2015) (finding "inability to absolutely confirm" each individual's class membership is not a bar to class certification and does not create due process issues); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 239 (N.D. Cal. 2014) (explaining that having class members "respond to a general notice and then assert

---

[2] To the extent there are concerns about potential Class Members' responses, Plaintiffs are already aware of several data sources that can be used to evaluate those answers. For instance, Flo maintains records of who used the app, as demonstrated by the Class Notice program. *See* ECF No. 619 (ordering direct notice by email and push notification). Plaintiffs also identified at class certification geolocation data in Flo's records confirming that Plaintiffs used the app within California. *See* ECF No. 478-3 at 2 n.2; ECF No. 478-43 at '005 (Chen); 478-45 at '005 (Gamino); 478-49 at '004 (Wellman). This is in addition to public records and other readily available identity services.
[3] Meta has separately waived any extraterritoriality argument by failing to raise it at any point during trial. *See United States v. Hui Hsiung*, 778 F.3d 738, 747 (9th Cir. 2015) (finding waiver where defendant's objection in "post-trial motions" was "so untimely").

1    their class membership by attesting to the fact that they [used] the challenged product" does not

2    create due process issues). Rather, as multiple courts have recognized, due process is satisfied so

3    long as Meta can raise legitimate questions about who is a member of the Class through the claims

4    process. *See Briseno*, 844 F.3d at 1132 ("[I]t is not clear why requiring an administratively feasible

5    way to identify all class members at the certification stage is necessary to protect [defendant's] due

6    process rights" when defendant can challenge individual claims during the claims process);

7    *Victorino v. FCA US LLC*, No. 16CV1617, 2020 WL 2306609, at *3 (S.D. Cal. May 8, 2020)

8    ("[D]istrict courts are in agreement that the determination of class membership and protecting the

9    defendant's due process rights can be done during the claims administration process."); *Brown v.*

10   *DirecTV, LLC*, 562 F. Supp. 3d 590, 604 (C.D. Cal. 2021) ("[S]o long as the defendant is given a

11   fair opportunity to challenge the claim to class membership and to contest the amount owed each

12   claimant during the claims administration process, its due process rights have been protected.").

13        Even Meta's own cases do not support its argument, as they deal with individualized ***merits***

14   issues rather than concerns over who is in the Class. *See* Mot. at 4 (citing *Lara v. First Nat'l Ins.*

15   *Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022) (denying class certification because "merits" issues

16   like contractual "breach" and "injury" required individualized inquiry into the "pre-accident value"

17   of each individual's car); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (denying class

18   certification because determining whether the employer took adverse action against each employee

19   for reasons other than discrimination were overwhelmingly individualized issues); *In re Asacol*

20   *Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (reversing class certification where Article III injury

21   in an antitrust action could not be determined on a classwide basis)).

22        **B. Confidentiality Was Proven on a Classwide Basis**

23        Meta's argument that confidentiality under CIPA § 632 is an individualized issue also fails.

24   A "confidential communication" is "any communication carried on in circumstances as may

25   reasonably indicate that any party to the communication desires it to be confined to the parties

26   thereto[.]" CIPA § 632(c). Courts find any communication for which there is an *objective*

27   *expectation* of privacy satisfies the "confidential" requirement. *See Yoon v. Meta Platforms, Inc.*,

28   No. 24-CV-02612, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024) ("Under CIPA § 632, a

6

communication is confidential if 'a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.'"). Because the standard is objective, Courts consistently find this inquiry can be resolved on a classwide basis using common evidence. *Rodriguez v. Google LLC*, No. 20-CV-04688, 2024 WL 38302, at *5 (N.D. Cal. Jan. 3, 2024) (whether the class members "had an objective, reasonable expectation of privacy . . . is a question capable of resolution class-wide"); *Frasco v. Flo Health, Inc.*, No. 21-CV-00757, 2025 WL 1433825, at *14, 19 (N.D. Cal. May 19, 2025) (finding uses' expectation of privacy is capable of classwide analysis where it is an "objective entitlement"); *Sihler v. Fulfillment Lab, Inc.*, No. 20CV1528, 2023 WL 4335735, at *9 (S.D. Cal. June 23, 2023) (holding where the inquiry is objective, it is capable of being established through classwide evidence).

Consistent with these cases, Plaintiffs proved at trial that Meta uniformly recorded and monitored CAEs reflecting Flo App users' health information using common evidence. Tr. 423:6-18-424:17 (explaining logs showing Facebook SDK recording and transmitting survey answers); *id*. at 431:11-13 (this recording is "consistent" "across different versions of the Flo app"); *id*. at 433:5-437:24 (confirming the Facebook SDK records and transmits survey answers); *id*. at 451:24-453:2 (same); *id*. at 421:18-423:18 (R_CHOOSE_GOAL recorded by Meta); *id*. at 433:5-434:16 (R_SELECT_LAST_PERIOD_DATE recorded by Meta); *id*. at 436:4-437:24 (R_AGE_CHOSEN_PERIODS, R_SELECT_CYCLE_LENGTH, and SESSION_CYCLE_DAY_FIRST_LAUNCH recorded by Meta); *id*. at 450:2-21 (R_AGE_CHOSEN_PREGNANCY and R_PREGNANCY_WEEK_CHOSEN recorded by Meta). This satisfies CIPA 632's confidentiality requirement. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (acknowledging health information is confidential under CIPA § 632).

Meta's argument that these communications were not confidential as a matter of law because they were shared with Flo—*the intended recipient*—is illogical and lacks legal support. Mot. at 6. *Rodriguez v. Google LLC*, No. 20-CV-04688, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) does not support this proposition. There, the court dismissed the plaintiffs' claims at the motion to dismiss stage because they failed to allege facts supporting a plausible inference that

every form of app activity data from every type of app is objectively private. *Id.*[4] Unlike *Rodriguez*, this case concerns a singular app and a singular type of data (i.e., health information) that objectively is "among the most sensitive information that could be collected about a person" and certainly confidential. *See Doe v. Regents of Univ. of Cal.*, No. 3:23-cv-00598, 2023 WL 3316766, *6 (N.D. Cal. May 8, 2023); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1261 (N.D. Cal. 2024) (finding data on a telehealth platform relating to "securing prescriptions and birth control products" is "confidential"); *see also* ECF No. 422 at 20:21("Everybody knows health data is . . . secret."). Plaintiffs also proved at trial that Flo's privacy polices further confirmed this expectation because they stated users' conversations with Flo about their "marked cycles," "pregnancy," and "survey results" would not be shared with anyone. *See* Ex. 29 at 4; Ex. 66 at 4.

Meta's speculative claim that "some" unidentified Class Members may have "reasonably expect[ed]" that these communications were not confidential (Mot. at 6) is a red herring. Class Members' subjective expectations of privacy are irrelevant because whether a given communication is confidential under CIPA § 632 is based on an objective standard. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("The standard of confidentiality is an objective one defined in terms of reasonableness."). And even if the standard were subjective (and it is not), no evidence admitted at trial showed that *any* Plaintiff or Class Member expected their private communications with Flo to be recorded by Meta. *See* Tr. 190:4-191:15 (Wellman testifying she did not expect "Facebook could record [her] health data" because it is "the most private information" she has); *id.* at 233:11-23 (Chen testifying she expected the information would be "kept private" and not sent to Meta); *id.* at 269:21-270:5 (same for Meigs); *id.* at 291:6-15, 293:24-294:8 (same for Gamino); *id.* at 325:25-327:22 (same for Frasco). Indeed, Flo's privacy policies stated the opposite, promising that "[w]e will not transmit any of your personal data to third parties, except if it is required to provide the service to you . . . unless we have asked for your explicit consent." *See* Ex. 29 at 2, Ex. 66 at 2. There is no reason to assume post-trial, without any evidence, that unnamed Class Members believed otherwise even if this were consistent with the law.

---

[4] Separately, several Courts have rejected *Rodriguez* and its claim that there is a presumption that certain online communications are not confidential. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (rejecting this presumption) (citing cases).

### C. Meta's Consent Defense Failed on a Classwide Basis Based on Common Evidence

Meta's contention that its express consent defense poses individualized issues fails for the same reason. Mot. at 7-8. The evidence showed that Class Members answered the same mandatory set of onboarding survey questions when they used the Flo App, and Meta recorded those answers each time. *See* Section III.A, above. Whether Class Members agreed to Meta's recording is a common question answered by Meta's and Flo's privacy policies, which the Court previously determined are "common" evidence that "permit[s] a jury to conclude in one fell swoop whether a reasonable person . . . consent[ed] to, 'the particular conduct, or to substantially the same conduct.'" *See* ECF No. 605 at 13 (citing *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024)). Here, Meta relied exclusively on these polices to support its consent defense (*see* Mot. at 7 (citing Exs. 70, 1224)), and Plaintiffs, in turn, directed the jury to specific provisions in Flo's policies promising not to disclose any "personal data" that included information about "marked cycles" and "pregnancy." *See* Exs. 29 at 4 (Flo's May 25, 2018 Privacy Policy); Ex. 66 at 66 at 4 (Flo's July 16, 2018 Privacy Policy). The jury correctly relied on this common evidence in rejecting Meta's argument and finding that Meta did not have the consent of all parties when it recorded Plaintiffs' and Class Members' conversations with the Flo App. *See* ECF No. 756. Thus, there are no individual issues to resolve on consent that could create a predominance issue.

Meta's citation to cases that have decided consent as a matter of law (Mot. at 7)[5] is irrelevant as it ignores that *this Court* already rejected that argument on summary judgment, finding instead that "[d]isputes of fact abound with respect to the scope of consent" and remained for the jury. *See* ECF No. 608 at 1. Now that the jury has spoken, Meta's disagreement with the outcome is not a basis to revisit this prior ruling (of which it did not seek reconsideration) or decertify the Class.

Meta's separate contention that there are individualized issues because *some* Class Members did not enter "sensitive" information into the Flo App and therefore fall within Meta's privacy policies is frivolous. Mot. at 7. There is zero evidence to support this claim. In fact, the evidence at trial proved the exact opposite: that Meta uniformly recorded women's answers to

---

[5] As described in Plaintiffs' Opposition to Meta's Motion for Judgment as a Matter of Law ("JMOL Opp."), these cases are also distinguishable because the data collection there was specifically disclosed. *See* JMOL Opp. at 8-9.

onboarding survey questions reflecting the granular details of their menstrual cycle, whether they were pregnant, and if they wanted to get pregnant, among other things. *See, e.g.*, Ex. 628-A; *see also* Section III.A. Meta' self-serving insistence that some of this information only revealed whether women "used" the Flo App (Mot. at 7), or that some women's answers were not sensitive, merely reiterates the same argument the jury already rejected. *See* Tr. 125:6-25 (arguing "Facebook never even received plaintiffs' confidential communication"); Tr. 1215:8-19 (arguing the CAEs send "'known' or 'unknown,' not the answer"). The jury's resolution of this factual question against Meta disposes of its attempt to decertify the Class on the same grounds now.

The cases Meta cites finding actual, individualized issues in other case-specific contexts bear no resemblance to evidence presented at trial in this case. *See* Mot. at 8 (citing *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) (denying class certification because TCPA defense turned on specific "personal relationships" with each class member); *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964, 2024 WL 4308813, at *8 (C.D. Cal. Sept. 9, 2024) (denying certification of a broad class of all internet users because of wide variation in the types of websites used, some of which were innocuous, like Build-a-Bear.com). Unlike in *True Health Chiropractic*, there are no individualized agreements relevant to consent, which instead turned on a limited set of common privacy policies that were admitted into evidence without objection. *See* Exs. 29, 66, 70, 93, 132, 147, 1226. And unlike in *Griffith*, there were no substantive variations in the data Meta's Facebook SDK recorded because the case is about a limited set of 12 Custom App Events from a singular app, rather than the TikTok Pixel's alleged collection of general browsing data from thousands of websites across the entire internet.

### D. Injury and Damages Are Not Individualized Issues

CIPA § 632's injury requirement is satisfied whenever there is an "unauthorized recording" because that itself is an invasion of one's objective privacy interests. *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13-CV-02468, 2014 WL 4627271, at *10 (C.D. Cal. Sept. 8, 2014) (finding CIPA's injury requirement is satisfied whenever there is an "unauthorized recording").

Here, the jury concluded from common evidence that Meta "violated" Plaintiffs' objective "right to privacy"—as protected by CIPA § 632—because they had a "*reasonable* expectation that their conversations were not being overheard or recorded" and Meta intentionally eavesdropped on or recorded these conversations. *See* ECF No. 744 at 17 (emphasis added); *see* Sections III.C, above (listing privacy policies), & III.A, above (listing expert evidence of recording). Class Members' objective expectation of privacy and injury resulting from Meta's violation of it is common to all Class Members. *See Opperman v. Path, Inc.*, No. 13-cv-00453, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016) (explaining whether there is an invasion of privacy is an issue common to the class); *Ades*, 2014 WL 4627271, at *10 (finding common issues as to CIPA injury predominate because "the only 'harm' required by [CIPA] 'is the unauthorized recording'"). Meta's claim that Plaintiffs' injury at trial was merely a "conclusory claim of embarrassment" that other Class Members may not share because "no human being ever saw the data Flo shared with Meta" (Mot. at 8) contradicts the evidence and CIPA's injury requirement.

Meta's separate claim that statutory damages under CIPA are discretionary and turn on individualized factors is also wrong. Mot. at 9. Unlike the Federal Wiretap Act, which expressly states that statutory damages are discretionary, CIPA damages are *not* discretionary and therefore do not require any individualized factual inquiry. *Compare* 18 U.S.C. § 2520(c)(2) (stating "the court *may* assess [] damages") (emphasis added), *with* CIPA § 637.2 (allowing any injured person to bring action for $5,000 of statutory damages); *see also Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067, 2013 WL 3353857, at *16 (C.D. Cal. July 1, 2013) (finding predominance satisfied where statute provides for a "fixed amount of statutory damages" and plaintiff elects to pursue these damages "in lieu of actual damage"); *Kellman v. Spokeo, Inc.*, No. 21-cv-08976, 2024 WL 2788418, at *1 (N.D. Cal. May 29, 2024) ("Statutory damages are calculated as prescribed by the statutes. What the statute provides is a common question of law, so common questions predominate for the damages analysis, too.").

Indeed, courts have *expressly held* that applying the type of balancing Meta advocates for here (i.e., comparing the statutory damages to the "severity" or "actual damages" suffered by any one class member) when statutory damages are mandated by the legislature is an abuse of

discretion. *See Ades*, 2014 WL 4627271, at *14 (certifying CIPA class seeking statutory damages and finding that weighing the "proportionality of the potential liability to the actual harm" would be an abuse of discretion under Ninth Circuit precedent); *Raffin v. Medicredit, Inc.*, No. CV154912, 2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017) (same); *see also Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 721 (9th Cir. 2010) (same under Fair and Accurate Credit Transactions Act). Meta's reliance on *Campbell*, 315 F.R.D. at 268-69, which concerned the Federal Wiretap Act's purely discretionary damages, is therefore misplaced and not a basis to certify the class.

Meta's claim that a potential "future" decision to reduce an "excessive damages award" also necessitates individual questions that warrant decertification (Mot. at 9) fails for the same reason. *See Bateman*, 623 F.3d at 723 (9th Cir. 2010) (concluding that it is "not appropriate to evaluate the excessiveness" of statutory damages at class certification); *see also Ades*, 2014 WL 4627271, at *14 (declining to consider defendant's "excessive damages" argument when certifying CIPA class is consistent with its legislative intent); *Raffin*, 2017 WL 131745, at *9 (same). Meta's reliance on inapposite cases involving the Federal Wiretap Act and actual damages—neither of which are at issue here—cannot overcome this clear precedent. Mot. at 9 (citing *Bliss v. CoreCivic, Inc.*, 711 F. Supp. 3d 1233, 1245 (D. Nev. 2024) (evaluating Federal Wiretap Act's discretionary damages); *Comcast Corp.v. Behrend*, 569 U.S. 27, 34 (2013) (failure to produce a methodology to calculate actual damages).

### E. Meta's Non-Descript Claim of "Other" Individualized Issues Fails

Meta's kitchen-sink argument that there were "other" non-descript arguments it made at class certification that the Court should reconsider is equally baseless. Mot. at 9. Its sole example—an implied consent argument based on the *Wall Street Journal* article—failed at class certification because Meta presented no evidence to support this defense. *See* ECF No. 605 at 12 (holding "the Court's predominance analysis is limited to the 'defenses [a defendant] has actually advanced and for which it has presented evidence'"). Meta's attempt to revive this argument now is even weaker as, despite having had the opportunity, it presented *zero* evidence at trial that anyone saw this article. *See* Tr. 1144:21-1145:3 ("You presented zero evidence at trial that one, five, 50, or 500 million people saw the Wall Street Journal article. You're not going to be very well situated to

1    come and tell me, oh, we don't know and so you can't certify a class, because you did not put on

2    any evidence that suggested there was any uncertainty about that. You could have had someone

3    come in and say something and you didn't[.]"). Meta's demand that the Court assume without

4    evidence that "some members of [the] class saw the article" must be rejected. Mot. at 10.

5        Even if Meta had actual evidence that "some" Class Members actually saw the article, this

6    would be at best a *de minimis* number of Class Members given that it was published *just six days*

7    before the Class Period ended and consent, of course, does not apply retroactively. *Javier v.*

8    *Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at \*2 (9th Cir. May 31, 2022) (finding

9    consent for CIPA cannot be retroactive and reversing district court's dismissal); *id.* (citing *Kearney*

10   *v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 930 (Cal. 2006)) (holding CIPA § 632 requires

11   consent "prior" to the recording)). Such a small number would be insufficient to show

12   predominance is lacking. *Whalen v. Ford Motor Co.*, No. 13-CV-03072, 2018 WL 6069812, at \*2

13   (N.D. Cal. Nov. 20, 2018) (finding that even if there were "an individualized fact-based issue for a

14   small number of class members, that does not defeat predominance.").

15   **F. Meta's Motion to Modify the Class Definition Is Meritless**

16       Finally, Meta argues the Class definition should be narrowed because Named Plaintiffs

17   somehow are not typical or adequate to represent Class Members who entered pregnancy

18   information in the Flo App. Mot. at 10-11. This argument fails for multiple reasons.

19       Fundamentally, the evidence at trial proved that *all* Class Members were required to

20   complete Flo's onboarding survey and, as a result, *all* Class Members had their communications

21   with Flo eavesdropped on and recorded by Meta in violation of CIPA § 632. Because Plaintiffs and

22   all Class Members bring the same claims based on the same "course of conduct," Plaintiffs are

23   typical. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 309 (N.D. Cal. 2018). Meta

24   does not identify any new evidence adduced at trial to suggest Plaintiffs have antagonistic interests

25   or a material conflict that would otherwise prevent them from representing the Class. *See Moore v.*

26   *Ulta Salon, Cosms. & Fragrance, Inc.*, 311 F.R.D. 590, 606 (C.D. Cal. 2015) (finding an "absence

27   of antagonism between representatives and absentees" where they were subject to the same

28   conduct). Its failure to identify any "subsequent development" post-certification dooms its Motion.

Meta's argument that the "menstruation-related information" and "pregnancy-related information" the Facebook SDK recorded during the onboarding survey are not "substantially similar" enough for Named Plaintiffs to represent Class Members who were pregnant lacks both factual and legal support. Mot. at 10. Factually, these categories of information are two sides of the same coin: doctors calculate a pregnant woman's due date based on the date of her last period, and a woman who has her period cannot also be pregnant. Pregnancy information is menstruation information, and vice versa. Not surprisingly, within the Flo App, women who are pregnant and those who are not answer overlapping questions. *Compare* Exs. 610-U, 610-AC *with* Exs. 611-V, 611-Y. Moreover, the evidence at trial proved that Meta's Facebook SDK does not distinguish between pregnant women and non-pregnant women when recording their conversations with Flo. Tr. 433:5-9 (Facebook SDK functions the same for all onboarding survey questions). This Court should not do so either.

Legally, Meta's own authority—*Melendres v. Arpaio*, 784 F.3d 1254, 1263 (9th Cir. 2015)—confirms its argument lacks support. There, the Ninth Circuit held that plaintiffs who were unlawfully stopped during "saturation patrols" could represent class members who were stopped during "non-saturation patrols" because the stops in both instances arose from the "same practices" and raised the same "constitutional concerns." *Id.* Like *Melendres*, Plaintiffs who are not pregnant can represent Class Members who were pregnant because they were subject to the "same practice" (i.e., unlawful recording and eavesdropping by Meta while they used the Flo App) that implicate the same "concerns" (i.e., violations of their privacy rights).[6]

The cases Meta relies on that decertified certain classes concern instances where named plaintiffs were subjected to *different conduct* than other class members, such that they did not have the same interests or claims. *See* Mot. at 11 (citing *Bouissey v. Swift Transp. Co.*, No. CV 19-03203, 2024 WL 649246, at *4-5 (C.D. Cal. Jan. 30, 2024) (named plaintiffs were not subject to the "high value load" policy that was fundamental to the class's claims for unpaid wages); *Hahn v. Massage Envy Franchising, LLC*, No. 12cv153, 2016 WL 11620608 (S.D. Cal. Mar. 30, 2016) (finding

---

[6] Meta's claim that some pregnant women may view their health data as private, whereas some non-pregnant women may not (Mot. at 10), is a repeat of its losing argument that subjective, individualized expectations of privacy are somehow relevant to CIPA § 632. *See* Section III.B.

14

plaintiffs' interest as former customers were adverse to current customers because settlement agreement gave former customers preferential treatment and current customers "unfavorable" terms); *Tschudy v. J.C. Penney Corp., Inc*., No. 11cv1011, 2015 WL 8484530, at * (S.D. Cal. Dec. 9, 2015) (named plaintiffs were a different type of employee with "different vacation benefits plan with a different waiting period and additional terms" than other class members such that they did not have the same overtime claims)). Unlike these cases, there are no material differences—either in fact or law—between Plaintiffs' and Class Members' claims warranting decertification or narrowing the Class definition here.

## IV.    CONCLUSION

Meta's Motion should be denied.


Dated: August 21, 2025                         */s/Christian Levis*

                                              Christian Levis (*pro hac vice*)
                                              Amanda Fiorilla (*pro hac vice*)
                                              **LOWEY DANNENBERG, P.C.**
                                              44 South Broadway, Suite 1100
                                              White Plains, NY 10601
                                              Tel: (914) 997-0500
                                              Fax: (914) 997-0035
                                              clevis@lowey.com
                                              afiorilla@lowey.com

                                              *Co-Lead Counsel*

                                              Carol C. Villegas (*pro hac vice*)
                                              Michael P. Canty (*pro hac vice*)
                                              Jake Bissell-Linsk (*pro hac vice*)
                                              **LABATON KELLER SUCHAROW LLP**
                                              140 Broadway
                                              New York, NY 10005
                                              Tel: (212) 907-0700
                                              Fax: (212) 818-0477
                                              cvillegas@labaton.com
                                              mcanty@labaton.com
                                              jbissell-linsk@labaton.com

                                              *Co-Lead Counsel*

                                              Diana J. Zinser (*pro hac vice*)
                                              Jeffrey L. Kodroff (*pro hac vice*)
                                              **SPECTOR ROSEMAN & KODROFF, P.C.**
                                              2001 Market Street, Suite 3420
                                              Philadelphia, PA 19103

Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@srkattorneys.com
jkodroff@srkattorneys.com

*Co-Lead Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Telephone: 805-543-0990
Facsimile: 805-543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco
and Sarah Wellman*

Ronald A. Marron (CA Bar 175650)
ron@consumersadvocates.com
Alexis M. Wood (CA Bar 270200)
alexis@consumersadvocates.com
Kas L. Gallucci (CA Bar 288709)
kas@consumersadvocates.com
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665

*Counsel for Plaintiffs Jennifer Chen and Tesha
Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (929) 220-2759
kent.williams@sirillp.com

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, OH 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*