

January 14, 2026

Hon. James Donato
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

RE:   *Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757-JD

Dear Judge Donato:

We write on behalf of Plaintiffs to provide a brief status update concerning the status of Class data enrichment as relevant to preliminary approval of the proposed settlements with Flurry, Google, and Flo in this Action.

As discussed at the December 4, 2025 hearing, Defendant Flo Health, Inc. provided A.B. Data, Ltd. ("A.B. Data") and, through them, ClaimScore LLC now known as Covalynt ("Covalynt"), with certain data concerning Class Members (the "Flo Data"). We explained to the Court that Covalynt would continue its work of processing this data to assist in developing a comprehensive notice program. The Court also instructed Defendant Meta Platforms, Inc. ("Meta") to assist in matching this data to known users of Meta platforms.

I.   **Update On Covalynt's Analysis of the Flo Data and Benefits of Enhancement**

Through its initial analysis of the Flo Data, Covalynt has reached several preliminary determinations regarding the features of the data, and the ways that the Flo Data may be enhanced for direct notice, *e.g.*, by using Meta's data.[1] The Flo Data contains a total of 15,289,309 rows containing the data of individuals who used the Flo App within the United States during the Class Period.[2] These data fields include: names, IP addresses, email addresses, device types, and advertising identifiers. However, not every row contains an entry for every data type; for example, because Flo did not require users to enter certain data fields, like name, to use the app, a limited number of rows contain a user's name.

Other data fields are more prevalent. For instance, the Flo Data includes 4,276,239 rows that contain unique email addresses. Using this data, Covalynt is able to both validate data fields, like email addresses, useful for direct notice, and to enhance the Flo Data by filling in gaps through an enhancement process. This process is likely to improve the notice program. Specifically,

---

[1] The information provided is based on the attached declaration by Bryan Heller of Covalynt (attached hereto as Exhibit A). At this stage, Covalynt's analysis is focused on the use of the Flo Data in a delivering direct notice, not on Covalynt's ability to review claims when they are eventually submitted in this Action.

[2] Covalynt identified 5,327,314 rows that contain duplicative values at the individual data-field level, leaving 9,961,995 rows with no field-level duplication. However, additional enrichment and identity-resolution analysis is required to determine the true number of unique individuals represented in the data.

Covalynt estimates that 3,506,515 (or 82%) of the 4,276,239 email addresses Flo provided are valid and active—*i.e.*, useful for direct notice. Covalynt estimates that enriching this data with commercially available data sources will increase the number of valid email addresses to 4,105,000 (or 96%) of the email addresses in the Flo Data. This leaves 4%, or approximately 171,050 email addresses in the Flo Data that are unlikely to assist in direct notice without further enrichment, such as by using Meta's data.

Covalynt also undertook a similar enhancement process for other combinations of data fields. For example, 44,405 rows within the Flo Data contained an individual's name and their IP address, but no email address. Using these two data fields, Covalynt estimates they will be able to locate valid and active email addresses for approximately 9,000 people (*i.e.*, 20% of these 44,405 rows). After Covalynt completes its enhancement process, it is likely that approximately 35,435 of these rows could benefit from further enhancement using Meta's data.

There are also just over 5.6 million rows of data that contain data points for IP addresses, device identifiers, and/or advertising identifiers, but do not contain email addresses or names. The Class will benefit greatly from Meta enhancing these 5.6 million rows with its data. For example, 3,732,280 rows in the Flo Data include a unique static residential IP address—*e.g.*, a consistent internet connection at a residential location. While Covalynt is not able to uniquely determine individual identities based on static residential IP addresses during the Class Period, due to data limitations, Meta can. Indeed, the data that Meta produced for Plaintiffs in this case shows that Meta stores individual IP addresses for users of Meta's products and maps them to an "inferred" location represented as specific latitude and longitude coordinates.[3] Furthermore, Meta can associate some portion of the IP addresses in the Flo Data with specific users because users log into their Meta accounts from the same IP addresses on a persistent basis. In some instances, this association can be made using the IP address alone. In other instances, Meta can combine IP address data with additional data points—such as advertising identifiers or device characteristics—to distinguish and resolve unique individuals who share the same location. Thus, Meta can use its data to identify individuals and their locations based on their IP addresses.

Likewise, while Covalynt cannot determine individual identities based on advertising identifiers through its enhancement process, Plaintiffs have proven at trial that Meta can. Meta's "tech lead," Tobias Wooldridge, confirmed, and the evidence at trial showed, that Meta matches device and advertising identifiers recorded from the Flo App to individual Facebook users' profiles.[4] Meta can, therefore, undertake the same analysis using the Flo Data to identify additional Class Members.

While these are only examples, Plaintiffs expect Meta to use the full power of its data to match all available combinations in identifying users, as outlined in Plaintiffs' Proposed Order regarding Meta's Enhancement of the Flo Data. ECF No. 815. Meta's ability to potentially locate

---

[3] *See, e.g.*, CTRL00455110 (showing data, like IP Addresses, Meta collected from a named plaintiff); CTRL00462778 (same); CTRL00478816 (same); CTRL00481748 (same); CTRL00499032 (same); CTRL00506889 (same).

[4] *See* Trial Tr. 974:10-15; *see id.* 950:2-5; 952:4-21; 1009:17-1010:8; 1011:13-17; Trial Exhibit 1046 at 2 ("Facebook also uses this [individually-identifying] data to match the individuals in the developers' data to Facebook users."); Trial Exhibit 226-A at 11 ("When the Flo App sent App Events Data to Meta, it also sent Meta information corresponding to the App Events for the sole purpose of matching the individuals associated with the Flo App's App Events Data to individual Facebook users.").

direct contact information for several million additional people based on IP addresses, advertising identifiers, and/or device identifiers will substantially assist in the notice process.

## II. Notice Is Stalled Pending Entry of Plaintiffs' Proposed Order

While Plaintiffs could proceed with notice now, given the substantial benefit to the Class that would result from enriching the Flo Data with information in Meta's possession, Plaintiffs believe that this enrichment process with Meta's data is an important step that should be completed before Plaintiffs propose a revised notice plan. Meta and Plaintiffs (with Flo's support) have proposed orders permitting Meta to begin this work. In Plaintiffs' view, Meta's proposal provides insufficient transparency and protections for Class Members' data. *See* ECF No. 816. Accordingly, the parties are awaiting the Court's entry of one of the proposed orders before this process can move forward.

Once the enrichment process is completed with Meta's data, Plaintiffs intend to promptly file a renewed motion for preliminary approval of the proposed settlements, in which the proposed notice program will fully reflect the use of the Flo Data described herein.

That proposal will include: (a) direct notice to the fullest extent possible given the available data at that time; (b) a robust indirect notice campaign through print and digital advertising, social media, and other channels; (c) notices delivered through Flo's website, the Flo App, and Flo's social media accounts; and (d) in light of the available data at that time, jewel notices directed to Meta users. We will include a detailed explanation within that filing detailing the expected reach of this campaign. Plaintiffs will ensure that the proposal is consistent with the goal of providing robust notice to all class members and securing the highest possible claim rate among class members for the settlement.

Additionally, shortly after submitting that proposal, Plaintiffs intend to submit a proposed notice and claims administration plan for the remaining action against Defendant Meta. That program will similarly use the available data to the fullest extent possible.


Respectfully submitted,


*/s/ Michael P. Canty*