1   Christian Levis (*pro hac vice*)          Diana J. Zinser (*pro hac vice*)
    **LOWEY DANNENBERG, P.C.**              **SPECTOR ROSEMAN & KODROFF, P.C.**
2   44 South Broadway, Suite 1100            2001 Market Street, Suite 3420
    White Plains, NY 10601                   Philadelphia, PA 19103
3   Tel: (914) 997-0500                      Tel: (215) 496-0300
    Fax: (914) 997-0035                      Fax: (215) 496-6611
    clevis@lowey.com                         dzinser@srkattorneys.com
4
5   *Co-Lead Class Counsel for Plaintiffs*    *Co-Lead Class Counsel for Plaintiffs*
    *and the Class*                           *and the Class*
6
    Carol C. Villegas (*pro hac vice*)
7   **LABATON KELLER SUCHAROW LLP**
    140 Broadway
8   New York, NY 10005
    Tel.: (212) 907-0700
9   Fax: (212) 818-0477
    cvillegas@labaton.com
10
11  *Co-Lead Class Counsel for Plaintiffs*
    *and the Class*
12
    *[additional counsel listed on signature page]*

13

14                **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
15                    **SAN FRANCISCO DIVISION**

16                                           Case No.: 3:21-cv-00757-JD

17  ERICA FRASCO, et al., individually and on
    behalf of all others similarly situated,  **PLAINTIFFS' RENEWED NOTICE OF**
18                                           **MOTION AND MOTION FOR**
                      Plaintiffs,            **PRELIMINARY APPROVAL OF CLASS**
19                                           **SETTLEMENTS WITH DEFENDANT**
              v.                             **GOOGLE LLC AND DEFENDANT FLO**
20                                           **HEALTH, INC.**
    FLO HEALTH, INC., META PLATFORMS,
21  INC., GOOGLE, LLC, and FLURRY, INC.,     Judge:    Hon. James Donato
                      Defendants.            Date:     April 16, 2026
22                                           Time:     11:00 AM
                                             Courtrm.: 11 – 19th Floor
23                                                     San Francisco Courthouse

24

25

26

27

28

---

RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS - CASE NO. 3:21-cv-00757-JD

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on April 16, 2026, at 11:00 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 11 on the 19th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable James Donato presiding, Plaintiffs Jennifer Chen ("Chen"), Erica Frasco ("Frasco"), Tesha Gamino ("Gamino"), Madeline Kiss ("Kiss"), Autumn Meigs ("Meigs"), Justine Pietrzyk ("Pietrzyk"), Leah Ridgway ("Ridgway"), and Sarah Wellman ("Wellman") (collectively, "Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move the Court, pursuant to Fed. R. Civ. P. 23(e), for entry of an order:

(i)      preliminarily approving the Class Action Settlement and Release Agreement as to Google LLC ("Google Settlement Agreement" or "Google Settlement") and the Stipulation and Agreement of Settlement as to Flo Health, Inc. ("Flo Settlement Agreement" or "Flo Settlement") submitted herewith;

(ii)      approving and ordering the implementation of the proposed notice plan ("Notice Plan");

(iii)      preliminarily approving the proposed plan of allocation for the distribution of the proceeds of the Settlements;

(iv)      appointing A.B. Data, Ltd. ("A.B. Data") as the Settlement Administrator; and

(v)      setting a schedule for final approval of the Google and Flo Settlements, and the previously preliminarily approved settlement with Flurry LLC ("Flurry"), including setting a date for the final approval hearing.

This Motion is made on the grounds that the terms of the proposed Google and Flo Settlements are fair, reasonable, and adequate, and that preliminary approval of the Settlements is therefore proper because each requirement of Rule 23(e) has been met. Accordingly, Plaintiffs request that the Court preliminarily approve the Settlements, approve and order the implementation of the proposed notice plan, and schedule a final approval hearing.

The Motion is based on the Declaration of Christian Levis ("Levis Decl." or "Levis Declaration") and the exhibits attached thereto, including the Google and Flo Settlement Agreements; the Declaration of Justin Parks of A.B. Data ("Parks Decl." or "Parks Declaration"); the Declaration of Bryan Heller of

Covalynt ("Heller Decl." or "Heller Declaration"); the Memorandum of Law filed herewith; the pleadings and papers on file in this Action; and such other evidence and argument as may subsequently be presented to the Court.

Dated: February 27, 2026

/s/ Christian Levis
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Co-Lead Class Counsel*

Diana J. Zinser (*pro hac vice*)
Jeffrey L. Kodroff (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@srkattorneys.com
jkodroff@srkattorneys.com

*Co-Lead Class Counsel*

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Danielle Izzo (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
dizzo@labaton.com

*Co-Lead Class Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. vi

I.    INTRODUCTION .................................................................................................... 1

II.   INFORMATION ABOUT THE PROPOSED SETTLEMENTS ................................. 3

    A.    PG 1(a): Class Definition ................................................................................ 3

    B.    PG 1(b), (d): The Claims to Be Released and Other Impacted Cases ............. 4

    C.    PG 1(e), 1(g), 6, 7, 8: Allocations and Payments from the Settlement Funds ... 4

        1.    The Settlement Funds ......................................................................... 4

        2.    Service Awards .................................................................................. 5

        3.    Attorneys' Fees and Expense Awards ................................................ 5

    D.    PG 1(f), 2, & 11: Settlement Administration, Estimate of Claim Rate, and Comparable Outcomes ................................................................................... 5

III.  THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE ............. 6

    A.    The *Hanlon* Factors Support Approval ............................................................ 7

        1.    Factors 1-3: the Strength of Plaintiffs' Case vs. Risks of Continuing Litigation ............................................................................................ 7

        2.    PG 1(c): The Amount Offered in Each Settlement .............................. 8

        3.    The Extent of Discovery ..................................................................... 8

        4.    Experience and Views of Counsel ...................................................... 9

    B.    Rule 23(e)(2) Factors Further Support Approval ............................................. 9

        1.    The Class Has Been Adequately Represented ..................................... 9

        2.    The Settlements Were Negotiated at Arm's Length ............................. 9

        3.    The Settlements Provide Substantively Fair Relief to the Settlement Class ........ 10

        4.    The Settlements Treat All Class Members Equitably ......................... 11

IV.   THIS COURT HAS ALREADY CERTIFIED THE CLASS ...................................... 11

V.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ........................ 12

    A.    The Initial Notice Phase ................................................................................. 12

    B.    Supplemental Notice Phase ............................................................................ 13

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:21-cv-00757-JD

VI.     CONCLUSION ................................................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Sirius XM Radio Inc.*,
  No. CV 18-8605, 2020 WL 7314793 (C.D. Cal. July 15, 2020) ..........................................10

*Carlin v. Dairy America, Inc.*,
  380 F. Supp. 3d 998, 1006 (E.D. Ca. 2019)..........................................................................11

*Carlotti v. ASUS Computer Int'l*,
  No. 18-cv-03369, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ..........................................6

*Evans v. Linden Rsch., Inc.*,
  No. C-11-01078, 2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) ...........................................12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir.1998) ..................................................................................................7

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  No. 3:17-CV-2335, 2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ............................................9

*In re Extreme Networks, Inc. Sec. Litig.*,
  No. 15-CV-04883, 2019 WL 3290770 (N.D. Cal. July 22, 2019) .........................................12

*In re Facebook Biometric Info. Priv. Litig.*,
  No. 15-CV-03747, 2020 WL 4818608 (N.D. Cal. Aug. 19, 2020) ..........................................7

*In re Google Location History Litig.*,
  No. 5:18-cv-05062, 2024 WL 1975462 (N.D. Cal. May 3, 2024) ...........................................9

*In re Heritage Bond Litig.*,
  No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...........................................11

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...................................................................................................8

*In re Pacific Enterprise Sec. Litig.*,
  47 F.3d 373, 379 (9th Cir. 1995) ...........................................................................................11

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................................6

*In re TikTok, Inc., Consumer Priv. Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021)…………………………………………………...12

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) .....................................................................................8

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) .................................................................................................11

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................7

*Opperman v. Kong Techs., Inc.*,
    No. 13-CV-00453, 2017 WL 11676126 (N.D. Cal. July 6, 2017) ........................................13

*Pena v. Taylor Farms Pac., Inc.*,
    No. 2:13-CV-01282, 2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ........................................7

*Perks v. Activehours, Inc.*,
    No. 5:19-CV-05543, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ........................10, 11, 12

*Pipich v. O'Reilly Auto Enterprises, LLC*,
    No. 3:21-CV-01120, 2024 WL 2885342 (S.D. Cal. June 7, 2024) ........................................7

*Reid v. I.C. Sys. Inc.*,
    No. CV-12-02661, 2018 WL 11352039 (D. Ariz. July 27, 2018) ........................................12

*Scholl v. Mnuchin*,
    489 F. Supp. 3d 1008 (N.D. Cal. 2020) ..................................................................................9

*Shahar v. Hotwire, Inc.*,
    No. 12-CV-06027, 2014 WL 12647737 (N.D. Cal. July 25, 2014) ......................................13

*State of California v. eBay, Inc.*,
    No. 5:12-CV-05874, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ....................................11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..................................................................................................9

*Stewart v. Apple Inc.*,
    No. 19-CV-04700-LB, 2022 WL 3013122 (N.D. Cal. Feb. 17, 2022) ..................................13

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... passim

I.    **INTRODUCTION**

On September 29, 2025, Plaintiffs filed their initial Motion for Preliminary Approval of Settlement with Defendants Google and Flo (the "Initial Motion").[1] ECF No. 784. The Court held a hearing on December 4, 2025 (the "December Hearing") and denied preliminary approval without prejudice subject to Plaintiffs addressing specific questions about the Class and Notice Plan. These are addressed below.

**Settlement Class Size & Average Recovery**. The Court requested clarification as to the total number of Settlement Class Members. *See* Transcript of the December Hearing ("Hr'g Tr.") 4:16-18. Plaintiffs had previously estimated the Class to contain "about . . . 12 to 13 million nationwide class members" based on data Flo provided, and expected that data analysis by Covalynt and/or Meta would confirm the total Class size. *See id.* at 4:20-21, 6:3-23. Based on Covalynt's analysis of the Flo data to date, Plaintiffs estimate there are 9,961,995 unique individuals in the Class. *See* Parks Decl. ¶ 31. Plaintiffs and A.B. Data estimate that, using a 10% claims rate, the average recovery per Class Member will be $31.94, whereas, if Plaintiffs obtain an extraordinary claims rate of 25% through the multiple methods of notice described herein, the average recovery per Class Member will be $12.69. Parks Decl. ¶ 58.

**Total Number of Email Addresses for Direct Notice**. The Court asked the Parties to provide additional information about: (a) the total number of known email addresses available for direct notice, and (b) how that total number could be increased through data enrichment by Covalynt and/or Meta. *See* Hr'g Tr. 7:3-4; 12:18-23; 17:11-13; 17:20-22. Based on information available as of the December Hearing, Plaintiffs estimated that Flo's data contained "close to 3 million email addresses." *Id.* at 6:6-7. Since this hearing, Covalynt has estimated following a sampling analysis, that enrichment will increase the total number of unique email addresses available for direct notice to **4,114,159** or about 41.3% of the Class.

**Assistance from Meta in Providing Direct Notice**. As described herein, notice can be supplemented using information in Meta's possession to identify contact information for the 58.7% of Class Members currently not associated with a valid email. *See* Parks Decl. ¶¶ 34-37. Plaintiffs hoped this process would be completed by now given the Court's instruction at the December Hearing that Meta

---

[1] The Court has already preliminarily approved Plaintiffs' settlement with Defendant Flurry, subject to additional proceedings with respect to the provision of notice. ECF Nos. 597, 776 at 2-3. The settlement with Flurry will be jointly administered with the settlements addressed herein.

RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS - CASE NO. 3:21-cv-00757-JD

should assist in identifying contact information for Class Members using its own data. *See* Hr'g Tr. 6:24-7:23. However, Meta resisted providing assistance and ultimately reached an impasse with Plaintiffs and Flo when it refused to agree to reasonable commitments on how it would identify users and what protection it would apply to Flo's data. *See* ECF Nos. 815, 816. As a result, Meta has *not* provided any enriched data and, will not even start this process until the Court enters an order requiring it to do so. Plaintiffs have built into the Proposed Order submitted with this Motion a schedule that accounts for Meta's completion of the data enrichment process Plaintiffs outlined in ECF No. 815, which will directly contribute to the number of Class Members who receive direct notice. The Court should immediately compel Meta to provide this contact information to avoid any further delay. *See* ECF No. 815; Hr'g Tr. 12:24-13:4 ("You two work together, come up with a plan, okay? . . . So just pitch in. This is not an opportunity to say 'we're not going to do it.' Something is going to happen on Meta's end, so put your hand on the tiller and guide the ship . . . or I'll just drive it for you.").

**Reach of the Notice Plan and Expanded Indirect Notice**. Plaintiffs have also adjusted the Notice Plan since the December Hearing to address the Court's comments about reach and encouraging Class Members to file Claims. Hr'g Tr. 8:12-17; 12:13-17; 23:17-19. In addition to materially expanding the reach of the direct notice email campaign with Covalynt's assistance, Plaintiffs in collaboration with the Settlement Administrator have also made several enhancements to the indirect notice component of the plan, including the adoption of a two-phase approach designed to drive broader engagement of potential Class Members. The first phase expands on the prior proposed print, digital and social media advertisements, and Flo App and web banner notices, by targeting more platforms, including TikTok, and adding streaming radio advertisements. The second phase contemplates supplemental notice, which will be guided by the results of, and analytics from, the initial notice phase to maximize additional outreach. This data-driven approach provides multiple opportunities to reach potential Class Members while reducing overall costs. Plaintiffs and the Settlement Administrator estimate that indirect notice will reach an additional **4,861,598** Class Members, approximately 48.8% of the total Class. Parks Decl. ¶ 31.

**Assistance from Meta in Providing Indirect Notice**. Indirect notice can also be enhanced by Meta's involvement. This includes adopting the Court's recommendation at the December Hearing that Notice include jewel notices on Meta's platforms. Hr'g Tr. 8:18-9:2; 12:21-23. Jewel notice on Meta's

platforms, will be a powerful driver of claims here, just as it was in the *Facebook BIPA* litigation. *See In re Facebook Biometric Privacy Litig.*, No. 3:15-cv-03747 (N.D. Cal.), ECF No. 492 at 3 (reporting jewel notices alone provided a 22% click-through rate to the settlement website). The proposed Notice Plan accordingly calls for jewel notices with substantially similar language to that in *Facebook BIPA*.

**Schedule**. This Renewed Preliminary Approval Motion also addresses the Court's request that Plaintiffs set a schedule with fixed dates as opposed to the prior proposal, which set deadlines based on the number of days between events.

## II.    INFORMATION ABOUT THE PROPOSED SETTLEMENTS

Plaintiffs renew their motion for preliminary approval of their $48,000,000 Settlement with Defendant Google and $8,000,000 settlement with Defendant Flo.[2] *See* Google Settlement Agreement § 2(C); Flo Settlement Agreement ¶ 3. Plaintiffs reached these significant Settlements just prior to trial (with respect to Google) and during trial (with respect to Flo), after months of negotiations assisted by Magistrate Judge Thomas S. Hixson and Ambassador Jeffrey Bleich.

Accordingly, Plaintiffs respectfully request the Court: (i) grant preliminary approval of the proposed Google and Flo Settlements; (ii) approve and order implementation of the proposed settlement Notice Plan; (iii) preliminarily approve the proposed plan of allocation for the distribution of the proceeds of the Settlements; (iv) appoint A.B. Data as the Settlement Administrator; and (v) set a schedule for settlement-related events and the Final Approval Hearing.

The key terms of both Settlements are summarized below, in accordance with the Northern District of California's Procedural Guidance for Class Action Settlements ("Procedural Guidance" or "PG").[3]

### A.    PG 1(a): Class Definition

The proposed Class is the same as the litigation class certified by this Court for purposes of trial: "all Flo App users in the United States who entered menstruation and/or pregnancy information into the

---

[2] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Google Settlement Agreement and/or the Flo Health Settlement Agreement, attached as Exhibits 1 and 2, respectively, to the Levis Declaration. ECF cites are to the docket in this Action, and all internal citations and quotations are omitted.

[3] As PG 1(c) overlaps with the evaluation of the Settlements pursuant to the factors in *Hanlon*, this factor is addressed below, *see* Section III.A. The considerations for PG 3 through 5, relating to notice, opt-outs, and objections, are addressed in Section V.

Flo Health mobile application between November 1, 2016 and February 28, 2019, inclusive." *See* ECF No. 605; Google Settlement Agreement § 1(J); Flo Settlement Agreement § 1(J).

### B.    PG 1(b), (d): The Claims to Be Released and Other Impacted Cases

The Settlement Agreements release the Released Google Parties and the Released Flo Parties, respectively, from the "Released Plaintiffs' Claims," *i.e.*, all claims, liabilities, damages, etc. that have been, could have been, or could be brought through the Execution Date of the Settlement Agreements, that are based on, arise out of or relate to the allegations in the Action, or allegations that could have been made in the Action relating to the same factual predicates and theories of liability in the Action. *See* Google Settlement Agreement § 1(SS); Flo Settlement Agreement § 1(SS). Class Counsel is not aware of any other cases that will be affected by these Settlements and their releases. Levis Decl. ¶ 68.

### C.    PG 1(e), 1(g), 6, 7, 8: Allocations and Payments from the Settlement Funds

#### 1.    <u>The Settlement Funds</u>

Google will pay $48,000,000 and Flo will pay $8,000,000, respectively, into the Google and Flo Settlement Fund Escrow Accounts, which will be used to pay for Notice and Settlement Administration Costs, Taxes and Tax Expenses, banking costs, Court-approved Attorneys' Fees and Expenses Awards, Service Awards to Plaintiffs, any other fees and costs approved by the Court, and payments to Authorized Claimants. *See* Google Settlement Agreement § 2(C); Flo Settlement Agreement ¶ 3. These are both non-reversionary settlements. No money returns to Google or Flo unless their respective Settlement does not become effective. Google Settlement Agreement § 15(A); Flo Settlement Agreement ¶¶ 69-70.

The Net Settlement Funds will be distributed *pro rata* to Authorized Claimants who submit valid Claim Forms. Google Settlement Agreement § 9(I); Flo Settlement Agreement ¶ 48. To account for the increased legal value of claims under California's data protection laws, which provide statutory damages, Authorized Claimants who provide reasonably available information (*e.g.*, a California address) showing they were residents of California during the Class Period will receive twice the *pro rata* share of those from other states. *Id.*; *see* Parks Decl. ¶ 58. If after paying Authorized Claimants, there are residual funds that are no longer feasible or economical to distribute, any unclaimed balance that remains in the Google and Flo Net Settlement Funds shall be contributed to a non-profit, non-sectarian 501(c) organization. Google Settlement Agreement § 9(I)(viii); Flo Settlement Agreement ¶ 48(h).

Plaintiffs and A.B. Data estimate that, assuming a 10% claims rate, the average recovery per Class Member on a pro rata basis will be $31.94, whereas, if Plaintiffs obtain an extraordinary claims rate of 25% through the multiple methods of notice described herein, the average recovery per Class Member will be $12.69. Parks Decl. ¶ 58.

### 2.    Service Awards

In recognition of their efforts on behalf of the Class, Plaintiffs may apply to the Court for up to a total of $155,000 in Service Awards, as appropriate compensation for their time and effort serving as Plaintiffs and Class Representatives. Levis Decl. ¶ 69. Each of the Plaintiffs have expended substantial time and energy, particularly those who testified at trial, assisting with the prosecution of this Action. *Id*.

### 3.    Attorneys' Fees and Expense Awards

The Google Settlement Fund and Flo Settlement Fund may each be used to pay Court-approved Attorneys' Fees and Expenses Awards. *See* Google Settlement Agreement § 2(C); Flo Settlement Agreement ¶ 3. Class Counsel will petition the Court for an award of no more than 33.3% of the $48,000,000 Google Settlement Fund, and 33.3% of the $8,000,000 Flo Settlement Fund in attorneys' fees, plus Litigation Expenses of no more than $3,600,000 (inclusive of any Service Awards). Levis Decl. ¶ 70. There is no "clear sailing" agreement between Plaintiffs, Class Counsel, Google, or Flo.

### D.    PG 1(f), 2, & 11: Settlement Administration, Estimate of Claim Rate, and Comparable Outcomes

A.B. Data is the proposed Settlement Administrator. *Id.* ¶ 73. Class Counsel has utilized A.B. Data as an administrator for several recent settlements. This is Labaton's eighth engagement with A.B. Data in the last two years, Lowey's seventh, and SRK's first. *Id.*

The control systems and procedures A.B. Data maintains to securely handle class member data are described in the Parks Declaration. *See* Levis Decl. Ex. 11. A.B. Data believes these systems and procedures meet or exceed industry standards and/or court guidelines on data handling and accepts responsibility for the security of Class Members' information and compliance with this District's Procedural Guidance. *See* Parks Decl. ¶¶ 59-60.

Plaintiffs revisited the expected claims rate with A.B. Data following the December Hearing (Hr'g Tr. 5:17-25) and include an updated chart of claims rates in similar consumer privacy cases as Exhibit 7.

Comparable settlements provide helpful context and show a claims rate range between 3% and 10% is common.[4] However, Plaintiffs and A.B. Data have designed the Notice Plan to stimulate the highest number of claims possible and aim to exceed a 10% claims rate. While this Notice Plan is itself sufficient, Plaintiffs and A.B. Data expect that Meta's cooperation, including providing jewel notice, will directly contribute to the success of the Notice Plan. For instance, in *In re Facebook Biometric Privacy Litig.*, No. 3:15-cv-03747 (N.D. Cal.), the notice plan, which included jewel notice, led to a claims rate in excess of 20%. *See In re Facebook Biometric Privacy Litig.*, No. 3:15-cv-03747 (N.D. Cal.), ECF No. 492 at 3. Thus, the additional data from Meta will increase the possibility of obtaining a claims rate in the "high double digits" (Hr'g Tr. 5:24-25), which would be an extraordinary result compared to the typical claims rates in consumer privacy cases.

As described in the Parks Declaration, A.B. Data proposes utilizing a combination of direct email notice and push notifications to current Flo App users, paid print publication, digital and social media ads, streaming radio banner ads, and banner ads on the Flo App and Flo's website to notify the Class about the Settlements. Parks Decl. ¶¶ 10-30. A.B. Data will use the same website, www.periodtrackerdataprivacylitigation.com, previously created for Class notice and update it with information regarding the Google, Flo, and Flurry Settlements. Claimants can file claims online or by mail, and may ask questions via a dedicated toll-free telephone number or email address. *Id.* ¶¶ 39-43, 45. A.B. Data estimates Notice and Settlement Administration Costs will be between $741,000 and $1,490,000. *Id.* ¶¶ 63-64. This amount accounts for less than 2.6% of the total Settlement value.

## III.    THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE

Preliminary approval should be granted and notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. *See Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19, 2019).

---

[4] A chart of comparable cases can be found in Exhibit 7 to the Levis Declaration.

This determination balances several factors: (1) "the strength of the plaintiffs' case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings;" and (6) "the experience and views of counsel."[5] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Courts also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), and any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2); *accord Pena v. Taylor Farms Pac., Inc.*, No. 2:13-CV-01282, 2021 WL 916257, at *2-3 (E.D. Cal. Mar. 10, 2021). There is a significant overlap between the *Hanlon* factors and the Rule 23(e)(2) factors, and both support approval of the Google and Flo Settlements.

### A.    The *Hanlon* Factors Support Approval

#### 1.    Factors 1-3: the Strength of Plaintiffs' Case vs. Risks of Continuing Litigation

The first three *Hanlon* factors present a cost-benefit analysis of the strength of Plaintiffs' case against the risk of continued litigation. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 A Conte & H. Newberg, NEWBERG ON CLASS ACTIONS, § 11:50 at 155 (4th ed. 2002)).

The balance in this case favors approval. The Settlements with Google and Flo provide a favorable recovery when balanced against the risks and costs associated with litigating through trial and post-trial proceedings against both Google and Flo. *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747, 2020 WL 4818608, at *3 (N.D. Cal. Aug. 19, 2020) (finding risk of continued litigation weighs in favor of approval where some "factual disputes" remain after summary judgment). For instance, after Plaintiffs rested their case, Flo moved for judgment as a matter of law on the CMIA claim, the only claim against Flo with statutory damages. ECF No. 751 at 1094:15-1095:3. The Court allowed briefing on the matter but noted it was inclined to grant Flo's motion because, in its view, the evidence did not show that Plaintiffs were "patients" or that Flo was a "provider of healthcare" under the statute. *Id.* at 1104:3-7; *see*

---

[5] While "the reaction of the class members to the proposed settlement" may also be relevant (*Hanlon*, 150 F.3d at 1026), this is more appropriately considered at final approval. *See Pipich v. O'Reilly Auto Enterprises, LLC*, No. 3:21-CV-01120, 2024 WL 2885342, at *10 (S.D. Cal. June 7, 2024).

Cal Civ. Code §§ 56.05(j), (m), (p). Plaintiffs and Flo settled shortly thereafter. Had Flo's motion been granted, the Class would have been limited to nominal damages for contract and/or privacy claims.

Factual disputes remained for Google as well. Notably, Google maintained it did not use or intend to record Flo users' data, a highly technical issue turning on the operation of its SDK. Google also supplemented its interrogatory responses just prior to trial, asserting that it only possessed data from roughly 1.3 million unique Flo App users nationwide. Since the Court certified only the California Subclass's claims against Google, this new evidence increased the risk the jury would award significantly less in damages than Plaintiffs expected if the case proceeded through trial.

These ongoing risks support settling with Google and Flo, rather than proceeding to trial.

### 2. PG 1(c): The Amount Offered in Each Settlement

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a particular formula." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017). In assessing the consideration available to class members in a proposed settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527.

Here, the cash value of the proposed Google Settlement and Flo Settlement is $48,000,000 and $8,000,000, respectively. *See* Google Settlement Agreement §1(BB); Flo Settlement Agreement ¶ 1(CC). These amounts represent a favorable recovery for the Class in light of the risks above, and substantially increase the funds available to Class Members from the $3,500,000 settlement with Flurry. Flo has also agreed to enhanced notice about its data collection practices, displaying on the landing page of its website a prominent notice about Flo's commitment to privacy, along with a prominent link to its Privacy Policy, in large font, for one year from the date the settlement becomes final. *See* Flo Settlement Agreement ¶ 6.

### 3. The Extent of Discovery

Courts also evaluate whether class counsel had sufficient information to make an "informed decision" about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). After litigating this case for over four years through motions to dismiss, fact and expert discovery, class certification, summary judgment, and a two week-long trial, Plaintiffs and Class Counsel were fully informed about the strengths and weaknesses of the claims. Levis Decl. ¶¶ 62-66.

8

#### 4.     Experience and Views of Counsel

The judgment of experienced counsel regarding the Google and Flo Settlements "should be given a presumption of reasonableness." *In re Google Location History Litig.*, No. 5:18-cv-05062, 2024 WL 1975462, at *8 (N.D. Cal. May 3, 2024). Class Counsel have extensive experience in prosecuting and litigating complex class action cases. Levis Decl. ¶ 66; *see id.*, Exs. 8-10. The fact that qualified and well-informed counsel, after four years of litigation and two weeks of trial, endorse the Google and Flo Settlements as being fair, reasonable, and adequate under the applicable factors weighs heavily in favor of this Court's approval of both Settlements.

#### B.     Rule 23(e)(2) Factors Further Support Approval

#### 1.     The Class Has Been Adequately Represented

The Google and Flo Settlements are procedurally fair under Rule 23(e)(2). The Court appointed Plaintiffs Chen, Frasco, Gamino, Meigs, and Wellman as Class Representatives when certifying the class, previously finding them to be adequate representatives. Their interests are aligned with other Class Members' because they allegedly suffered the same injuries when Flo shared and Google allegedly recorded their data. *See* Levis Decl. ¶ 32; *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) (adequacy under Rule 23(a)(4) also satisfies the adequacy factor under Rule 23(e)(2)(A)). Nothing has occurred to alter the propriety of the Court's determination. Indeed, the Class Representatives have continued to vigorously and tenaciously pursue the claims of the Class, including through highly personal testimony at trial, and have no conflicts or positions antagonistic to other Class Members.

Further, as determined at class certification and apparent during the course of this litigation, Class Counsel have vigorously and adequately represented the Class. *See* Levis Decl. ¶ 32; *id.*, Exs. 8-10; *see also Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1045 (N.D. Cal. 2020) ("a court may consider the proposed counsel's professional qualifications, skill, and experience, as well as such counsel's performance in the action itself"). This factor favors preliminary approval of the Settlements.

#### 2.     The Settlements Were Negotiated at Arm's Length

The proposed Google and Flo Settlements are the result of multiple rounds of extensive negotiations assisted by two separate mediators: Magistrate Judge Thomas S. Hixson and, most recently

Ambassador Jeffrey Bleich. Levis Decl. ¶¶ 44-48. Plaintiffs and Google reached an agreement in principle to settle the Action just prior to trial on July 3, 2025 and executed the Google Settlement Agreement on August 8, 2025. Levis Decl. ¶¶ 39, 52. Plaintiffs and Flo reached an agreement in principle to settle the Action on July 30, 2025, near the close of the trial, and executed the Settlement Agreement on September 22, 2025. Levis Decl. ¶¶ 53-54. The difficult negotiations leading to the resolution of the claims against Google and Flo demonstrate that the Settlements are fair and reasonable, and without any doubt at arm's length. *See Perks v. Activehours, Inc.*, No. 5:19-CV-05543, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (approving settlement achieved following "arm's-length negotiations . . . supervised by [an experienced neutral]" and involving experienced class counsel that had performed sufficient investigation "to make an informed decision about the Settlement and about the legal and factual risks of the case").

### 3.    The Settlements Provide Substantively Fair Relief to the Settlement Class

Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv). These factors subsume several *Hanlon* factors addressed above. *See* Section III.A.

Regarding "the effectiveness of any proposed method of distributing relief to the class," "[a] claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605, 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). Under the Settlements, Class Members who submit valid claims will be issued *pro rata* payments (primarily through digital payment platforms) from the Net Settlement Fund. Google Settlement Agreement § 9(I); Flo Settlement Agreement ¶ 48. The claims process requires the minimal effort of submitting a claim form (*Alvarez*, 2020 WL 7314793, at *6; *see* Parks Decl. ¶ 45) which is streamlined, and designed to collect information needed to distribute funds. Levis Decl., Ex. 3 (Claim Form).

With respect to attorneys' fees and expenses, Class Counsel will apply for a fee award of no more than 33.3% of the Google Settlement Fund, 33.3% of the Flo Settlement Fund, and Litigation Expenses of no more than $3.6 million (inclusive of Service Awards for the Plaintiffs). Levis Decl. ¶ 70. There is

10

no "clear sailing" agreement with Google or Flo. Class Counsel will file detailed information with the Court in support of the Fee and Expense Application, 35 days before the Objection Deadline. This fee is fair and reasonable here based on Plaintiffs' Counsel's efforts litigating this highly complex case on a contingency fee basis through trial. It is also on par with attorney fee awards made in cases of similar size in this Circuit. *See, e.g.*, *Carlin v. Dairy America, Inc.*, 380 F. Supp. 3d 998, 1006 (E.D. Cal. 2019) (approving 33% of $40 million settlement fund in attorneys' fees); *In re Heritage Bond Litig.*, No. 02-ml-1475, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) (approving 33 1/3% of $27,783,000 common fund in attorneys' fees); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding award of 33% in fees from $12 million settlement was not an abuse of discretion).

There are no other agreements to disclose pursuant to Rule 23(e)(3).

### 4.    The Settlements Treat All Class Members Equitably

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). Here, Class Members may claim for a *pro rata* share of the Settlements, which may be increased if they provide reasonable information showing they were residents of California during the Class Period. *See* Section II.C.1. Courts in this district have found that allocating settlement benefits *pro rata* among class members is equitable. *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *State of California v. eBay, Inc.*, No. 5:12-CV-05874, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (explaining a proposed settlement is appropriate where it "does not improperly grant preferential treatment to class representatives or segments of the class").

To the extent feasible, unclaimed funds will be redistributed to Class Members who have submitted valid claims. Otherwise, the Settling Parties will jointly propose a *cy pres* recipient consistent with the Ninth Circuit guidelines in *Lane v. Facebook, Inc.*, 696 F.3d 811, 819–22 (9th Cir. 2012). *See* Google Settlement Agreement § 9(I)(vii)-(viii); Flo Settlement Agreement ¶ 48(g)-(h); Levis Decl. ¶ 61.

## IV.    THIS COURT HAS ALREADY CERTIFIED THE CLASS

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). The Court has already certified the same exact class for trial. *See* ECF No. 605. Accordingly, Settlement notices may be issued, to inform Class Members of the terms of the

11

proposed Settlements, their right to be heard on their fairness, their right to object, and the date, time, and place of the Final Approval Hearing. *See* MANUAL for COMPLEX LITIG., § 21.633 (4th ed. 2004).

## V.    **THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED**

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the notice program must provide "the best notice that is practicable under the circumstances." *Evans v. Linden Rsch., Inc.*, No. C-11-01078, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013). Courts routinely approve notice plans where the estimated reach of the plan exceeds 70%. *See, e.g.*, *Reid v. I.C. Sys. Inc.*, No. CV-12-02661, 2018 WL 11352039, at *3 & n.2 (D. Ariz. July 27, 2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019) (approving a notice plan "estimated to reach at least 70% of the class"); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076 (N.D. Ill. 2021) ("The Federal Judicial Center has found that a notice plan calculated to reach between 70% and 95% of the class in total is reasonable[.]"); *Perks*, 2021 WL 1146038, at *2 ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.").

At the December Hearing, the Court emphasized the importance of reaching Class Members to drive a high claims rate. *See generally,* Hr'g Tr. 5:17-25. In light of these comments, Plaintiffs propose an updated and expanded Settlement Notice Plan designed to reach as many of the **9,961,995** estimated Class Members as possible. *See* Parks Decl. ¶ 31. Notice of the Settlements will be provided to these Flo App users in several forms, through emails, print publications, digital media/advertising, streaming radio, mobile app/jewel notices. *See id.* ¶¶ 10-30; Levis Decl. Exs. 4-6. Notice delivered through other channels (*e.g.*, digital ads) will include the same substantive information formatted to fit each channel. Each of these forms of notice will direct Class Members to the Settlement Website, which will include the Long Form Notice, Claims Form, and additional pertinent information. *See* Levis Decl. Exs. 4-6; Parks Decl. ¶11, 21. Plaintiffs and the Settlement Administrator estimate that the initial phase of the Notice Plan will reach approximately 90.1% of the class members *without* assistance from Meta. This exceeds the 70% threshold courts considered as preliminary approval and will only increase if Meta is ordered to cooperate. The different phases and components of the Notice Plan are described in more detail below.

### A.    Initial Notice Phase

The Initial Notice phase includes a combination of direct and indirect notice.

**Direct Notice.** Emails will be sent to an estimated **4,114,159 Class Members** using data from Flo enriched by Covalynt.[6] *See* Parks Decl. ¶¶ 10, 17. This reflects the number of active, deliverable email addresses Covalynt was able to identify from (a) the total population of approximately 3,506,516 valid and active email addresses that Flo provided, and (b) approximately 600,000 individuals associated with either no email addresses or an inactive one that Covalynt anticipates identifying a valid email address for through the enrichment process. *See* Heller Decl. ¶¶ 4-7. These enrichment efforts allow direct email notice to reach approximately 41.3% of the Class. *See* Parks Decl. ¶ 35.

**Indirect Notice.** The Settlement Administrator will also provide indirect notice through numerous channels, which is expected to reach an additional **4,861,598** Class Members (**48.8% of the Class**). This includes: (1) Press Release(s) and Print Publications in *The New York Times* and *The L.A. Times*, (2) Digital Networks/Websites and Social Media Ads using data-driven targeting strategies, like look-alike audience optimization, and demographic targeting to reach groups most likely to contain Class Members across TikTok, Google Display Network, YouTube, Facebook, Instagram, SnapChat, and Pinterest; (3) Banner ads in the Flo App and website, (4) Streaming Radio ads and/or display banners on platforms such as Spotify, iHeartRadio, Pandora, or Apple Podcasts. Together, the indirect notice methods outlined above will achieve an estimated 91,325,000 impressions. *See* Parks Decl. ¶¶ 22-28.

### B.    Supplemental Notice Phase

The Settlement Administrator will actively evaluate the most appropriate avenues for supplemental notice beyond that called for by the Initial Notice phase. In the Supplemental Notice phase, the Settlement Administrator will have flexibility to select adequate means for supplemental notice if additional notice would be useful (*i.e.*, would not have diminishing returns). Supplemental Notice may include: (1) Media Tours including interviews with Class Counsel across a range of regional and/or nationally media outlets; (2) Print Ads in Additional Publications like People Magazine, Women's Health Magazine, Teen Vogue,

---

[6] Several courts have approved similar email notice plans, recognizing that email is a reliable means of notification for class members. *See Opperman v. Kong Techs., Inc.*, No. 13-CV-00453, 2017 WL 11676126, at *5 (N.D. Cal. July 6, 2017) (approving the notice plan which will provide "email notice to every user who downloaded and registered for the app during the relevant time period"); *Shahar v. Hotwire, Inc.*, No. 12-CV-06027, 2014 WL 12647737, at *2 (N.D. Cal. July 25, 2014) (recognizing the "direct e-mail notice" plan was "the best notice practicable under the circumstances"); *Stewart v. Apple Inc.*, No. 19-CV-04700, 2022 WL 3013122, at *5 (N.D. Cal. Feb. 17, 2022) (same).

Vogue; and (3) Outreach in Digital Networks/Websites and Social Media through re-targeting individuals or audiences based on the analytics and results identified during the Initial Notice phase. This may rely on different types of media depending on what the Initial Notice phase indicates is most likely to succeed, including (a) television advertisements, (b) influencer marketing, (c) college/university speaking engagements, or (d) other media/marketing efforts, aimed at driving engagement and claims.

In addition to these paid channels, the Supplemental Notice phase will include jewel notices and additional emails sent directly to Class Members. While the Notice Plan calls for these forms of notice to occur, they are scheduled to occur during the Supplemental Notice phase because (a) as to the jewel notices on Meta's Platforms, this will allow Plaintiffs and Meta to tailor the approach in light of the results of the Initial Notice phase; (b) as to the additional emails, this will allow time for Meta to engage in the task of identifying additional email addresses for Class Members.

**Meta's Assistance Will Improve Class Notice.** As discussed at the December Hearing, and explained in further detail in Plaintiffs' January 24, 2026 Letter to the Court (ECF No. 815), Meta has a trove of data that can be used to identify contact information for Class Members to assist with notice. For example, as noted in Plaintiffs' January 24, 2026 Letter, Meta may be able to identify Facebook users in its own system using several disparate data points, including IP addresses. *See* ECF No. 815. Here, the data Flo provided contains 3,732,280 rows containing unique static IP addresses not associated with email addresses or names. *See* ECF No. 818-1 ¶ 8. As described by Covalynt, other companies using static IP addresses and mobile advertising IDs to identify contact information (e.g., emails, names, etc.) have had success with an approximate 40% match rate. *See* Heller Decl. ¶¶ 9-10. While these are historical examples, if Meta is able to obtain even *half* as much success, Plaintiffs can increase the amount of direct notice.

The Court previously instructed Meta to work with Plaintiffs in supplementing the data available for notice purposes. *See* Hr'g Tr. 12:19-13:4. However, after Meta insisted on removing terms from a protective order governing the transfer and use of the data provided by Flo, the Parties reached impasse and filed competing Proposed Orders. ECF Nos. 815-16. The Notice Plan calls for Meta to provide this assistance and sets a specific date for the completion of that work. Upon receiving these results, the Settlement Administrator will distribute a second round of notice by email.

14

1    Further, at the December Hearing, the Court recommended that Plaintiffs incorporate jewel notices

2   on Meta's platforms into the proposed Notice Plan. Jewel notices are an especially potent tool in reaching

3   Class Members as reflected in the *Facebook BIPA* litigation where jewel notices alone provided a 22%

4   click-through rate. *See In re Facebook Biometric Privacy Litig.*, No. 3:15-cv-03747 (N.D. Cal.), ECF No.

5   492 at 3. The proposed Notice Plan includes the use of jewel notices with substantially similar language

6   to that used in *Facebook BIPA* and calls for Plaintiffs and Meta to agree on the details of that notice shortly

7   after the Initial Notice phase is completed.

8    While Plaintiffs believe that notice can proceed with Meta's assistance, given the high percentage

9   of Class members already reached by the Notice Plan, these two items will enhance the ability to reach

10   Class Members by providing more data and indirect notice likely to drive the filing of claims.

11   **VI.    CONCLUSION**

12    For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion

13   and preliminarily approve the Settlements with Google and Flo, approve the proposed forms and methods

14   of notice to the Class, approve A.B. Data's selection as Settlement Administrator, order implementation

15   of the Settlement Notice Plan, and schedule a hearing for final approval of the Google, Flo, and Flurry

16   Settlements.

17   Dated: February 27, 2026                    Respectfully submitted,

18
                                              */s/ Christian Levis*
19                                             Christian Levis (*pro hac vice*)
                                              Amanda Fiorilla (*pro hac vice*)
20                                             Margaret MacLean (*pro hac vice*)
                                              **LOWEY DANNENBERG, P.C.**
21                                             44 South Broadway, Suite 1100
                                              White Plains, NY 10601
22                                             Tele: (914) 997-0500
                                              Fax: (914) 997-0035
23                                             clevis@lowey.com
                                              afiorilla@lowey.com
24                                             mmaclean@lowey.com

25                                             *Co-Lead Class Counsel*

26                                             Carol C. Villegas (*pro hac vice*)
                                              Michael P. Canty (*pro hac vice*)
27                                             Jake Bissell-Linsk (*pro hac vice*)
                                              Danielle Izzo (*pro hac vice*)
28                                             Gloria J. Medina (*pro hac vice*)

15

**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com
dizzo@labaton.com
gmedina@labaton.com

*Co-Lead Class Counsel*

Diana J. Zinser (*pro hac vice*)
Jeffrey L. Kodroff (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@srkattorneys.com
jkodroff@srkattorneys.com

*Co-Lead Class Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@wvbrlaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Ronald A. Marron (SBN 175650)
Alexis M. Wood (SBN 270200)
Kas L. Gallucci (SBN 288709)
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (772) 783-8436
kent.williams@sirillp.com

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, Ohio 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*