**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
andrew.clubok@lw.com
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone:   202.637.2200

Michele D. Johnson (SBN 198298)
michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone:   714.540.1235

Melanie M. Blunschi (SBN 234264)
melanie.blunschi@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone:   415.395.5942

**GIBSON, DUNN & CRUTCHER LLP**
Christopher Chorba (SBN 216692)
cchorba@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7396

Elizabeth K. McCloskey (SBN 268184)
EMcCloskey@gibsondunn.com
Abigail A. Barrera (SBN 301746)
ABarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:   415.393.8200

*Attorneys for Defendant Meta Platforms, Inc.
(formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ERICA FRASCO, et al.,<br><br>       Plaintiffs,<br><br>v.<br><br>FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., and FLURRY, INC.,<br><br>       Defendants. | CASE NO. 3:21-cv-00757-JD (consolidated)<br><br>**META PLATFORMS, INC.'S RESPONSE TO PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH DEFENDANT GOOGLE LLC AND DEFENDANT FLO HEALTH, INC.**<br><br>Judge:      Hon. James Donato<br>Date:       April 16, 2026<br>Time:      11:00 AM<br>Courtroom: 11 – 19th Floor<br>                 San Francisco Courthouse |

Defendant Meta Platforms, Inc. ("Meta") submits this response to Plaintiffs' Renewed Motion for Preliminary Approval of Class Settlements with Defendant Google LLC and Defendant Flo Health, Inc. in order to address (1) Plaintiffs' proposal to include "jewel notices on Meta's platforms," and (2) their mischaracterizations of Meta's conduct. Dkt. 820 at 2.

**I.      Jewel Notice By Meta Is Inappropriate**

Plaintiffs request that the Court order Meta to provide jewel notice to *all* of Meta's "current users who are women" across Facebook and Instagram. Dkt. 820-12 ¶ 16. Such overbroad jewel notice by Meta in connection with Plaintiffs' settlement—a settlement not with Meta, but with Flo and Google—is inappropriate and risks confusing settlement class members.

*First*, Plaintiffs' proposed use of jewel notice is inappropriate because it is incredibly overbroad. Courts reject overinclusive notice like the jewel notice that Plaintiffs now propose. *See Schneider v. Chipotle Mexican Grill, Inc.*, 2019 WL 1512265, at *3–4 (N.D. Cal. Apr. 8, 2019) (rejecting use of direct email notice given comprehensive indirect notice plan where email list provided by defendant could not distinguish between class members and non-class members and was therefore overinclusive); *Yeoman v. Ikea U.S. W., Inc.*, 2013 WL 5944245, at *5–6 (S.D. Cal. Nov. 5, 2013) (rejecting individual notice to notice list that could not distinguish between class members and non-class members).

Specifically, Plaintiffs propose serving jewel notice to all "current users [of Meta's services] who are women" to "ensure that *each current user account* will receive in-app notice on Meta's social media platforms." Dkt. 820-12 ¶ 16 (emphasis added). But the number of Meta users who used the Flo app between November 2016 and February 2019, more than seven years ago, is only a tiny fraction of the hundreds of millions of users who are active across Meta's services. Providing jewel notice to hundreds of millions of people who are not class members is, by definition, overinclusive. Plaintiffs' misplaced reliance on comparisons to *In re Facebook Biometric Privacy Litigation* further underscores that jewel notice is not appropriate here. Plaintiffs tout that jewel notice in that case had "a 22% click-through rate." Dkt. 820 at 15; *In re Facebook Biometric Privacy Litig.*, No. 3:15-cv-03747 (N.D. Cal.), Dkt. 492 at 3. But in that case, all class members were Facebook users and could be individually identified, allowing jewel notice to be "tailored to notify only those Facebook users who are, in fact,

Class members." *Id.*, Dkt. 370 at 2. Here, on the other hand, Plaintiffs' proposed jewel notice would reach hundreds of millions of people who are *not* class members.

*Second*, jewel notice on Meta's services would be duplicative of the expansive notice efforts contemplated by the settling parties. Dkt. 820 at 12–15. Notwithstanding that Plaintiffs misstate Meta's ability to use Flo's data to identify class members, to the extent Meta can do so, Plaintiffs have requested that Meta provide any contact information it can connect to those potential class members to A.B. Data. *Id.* at 14–15. A.B. Data can then use that information to provide direct notice to those potential class members in the same manner as it provides direct notice to potential class members for whom Flo provided contact information. For example, if Meta is able to identify an email address for a potential class member based on Flo's data, A.B. Data can provide direct notice to that individual by email. There is no reason why the same user should receive both jewel and email notice, and the settling parties have proposed using email notice to begin with. This is particularly true given that the parties and the Court have already agreed that e-mail notice, as set forth in the pre-trial class notice plan, is sufficient to provide the "best reasonable practica[ble] notice" to all potential class members. June 2, 2025 Hr'g. Tr. at 5:9–11; Dkt. 612 (Joint Proposed Pretrial Class Notice Plan) at 1 ("All parties agree that this is the appropriate form of notice in this case, as email notice is the best practicable way to ensure that Class Members are aware that they are part of the class in this certified class in this case and apprised of their rights."). Here, Plaintiffs contemplate serving direct email notice on approximately 0.4 million *more* class members than what was accomplished with the pre-trial class notice plan. Dkt. 820 at 1. While Meta's efforts to compare Flo's data to Meta's data may be able to identify additional contact information that can be used to provide direct notice to even more putative class members, jewel notice under these circumstances would be duplicative and unnecessary. *See Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) ("[I]t is not necessary to send individual notice [] to an overinclusive group of people simply because that group contains some additional class members whose identities are unknown.").

*Third*, to the extent jewel notice would not be duplicative of email notice, Plaintiffs fail to explain why jewel notice would be incrementally useful given the multitude of other indirect forms of notice already contemplated by the settling parties. Dkts. 679 at 1–2; 820 at 12–13 (proposing notice

by radio, in major publications, and through targeted ads on social media and web platforms). Notably, Plaintiffs' notice plan already contemplates serving targeted ads on Facebook and Instagram. Dkt. 820 at 13–14. There is no reason to think jewel notice on Facebook and Instagram would be more likely to reach putative class members than targeted ads on those services. Indeed, while Plaintiffs now insist jewel notice is essential to their plan, no party objected to the sufficiency or effectiveness of the previous class notice campaign, which did not include jewel notice. Dkt. 612 at 1. And that notice plan successfully disseminated notice to millions of people: email notice was delivered with a 94% success rate; the class website was viewed over 113,000 times; and social-media banner ads were delivered over 8.5 million times, generating thousands of clicks. *See* Dkt. 679. Plaintiffs implicitly concede that jewel notice is inessential when they tout that the "initial phase of the Notice Plan" *alone* will "reach approximately 90.1% of the class" and generate over 91 million impressions—all "*without* assistance from Meta." Dkt. 820 at 12–13 (emphasis in original). As Plaintiffs note, that rate of estimated engagement far exceeds what is required for approval of a notice plan. *See id.* at 12; *see also, e.g., Reid v. I.C. Sys. Inc.*, No. CV-12-02661, 2018 WL 11352039, at *3 & n.2 (D. Ariz. July 27, 2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019) (approving a notice plan "estimated to reach at least 70% of the class"); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076 (N.D. Ill. 2021) ("The Federal Judicial Center has found that a notice plan calculated to reach between 70% and 95% of the class in total is reasonable[.]").

*Fourth*, jewel notice on Meta's services regarding settlements to which Meta is not a party will likely create confusion among potential class members. Unlike targeted ads, which are often displayed on Facebook and Instagram on behalf of third parties, jewel notice is reserved for messages sent by Meta to its own users about its own services. But the notices Plaintiffs want Meta to send here are not from or even about Meta—they are from Plaintiffs about settlements with Flo and Google. To require Meta to issue jewel notice on its services regarding a settlement to which it is not a party would be unprecedented.

Given the foregoing, jewel notice is an inappropriate method for providing notice of Plaintiffs' settlements with Flo and Google.

## II. Plaintiffs Misrepresent Meta's Conduct

Plaintiffs continue to falsely portray Meta's actions regarding class data. As previously explained, *Meta* first approached Plaintiffs and Flo with a simple, one-page proposed order directing A.B. Data to share Flo's data with Meta. Dkt. 816 at 1. *Plaintiffs* then added numerous onerous and technically infeasible provisions and unilaterally declared an impasse, filing their proposed order without any notice to Meta and without responding to Meta's offer to confer further. *See* Dkt. 816; Dkt. 819. Plaintiffs' statements that Meta "resisted providing assistance" to them, "insisted on removing terms" from the proposed order, and "ultimately reached an impasse" are false and misleading. Dkt. 820 at 2, 14.

Plaintiffs also continue to overstate Meta's abilities, including as it relates to improving class notice. For example, they once again misleadingly state that Meta has a "trove of data that can be used to identify contact information for Class Members to assist with notice," including "IP addresses." Dkt. 820 at 14. But as Meta previously explained, given that the class period in this case is from November 1, 2016 through February 28, 2019, Plaintiffs' expectations exceed what can be done here. Meta needs Flo's data to determine what is possible, and Meta's ability to compare Flo's data to Meta's data will depend on several factors, including but not limited to the quality of the data and whether the data is recent or stale. Dkt. 819 at 2. In addition, IP addresses are often associated with multiple accounts, such as when multiple devices are connected to the same network, and often cannot be used to accurately and precisely identify an account holder's location for various reasons, including the use of VPN services. *Id.* Plaintiffs' motion ignores these points.

Dated: March 13, 2026

*/s/ Christopher Chorba*

**GIBSON, DUNN & CRUTCHER LLP**
Christopher Chorba (SBN 216692)
*cchorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7396

Elizabeth K. McCloskey (SBN 268184)
*EMcCloskey@gibsondunn.com*

Abigail A. Barrera (SBN 301746)
*ABarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:     415.393.8200

**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone:     202.637.2200

Michele D. Johnson (SBN 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone:     714.540.1235

Melanie M. Blunschi (SBN 234264)
*melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone:     415.395.5942

*Counsel for Defendant Meta Platforms, Inc.*