Christian Levis (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com

*Co-Lead Class Counsel for Plaintiffs*
*and the Class*

Carol C. Villegas (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com

*Co-Lead Class Counsel for Plaintiffs*
*and the Class*

[additional counsel listed on signature page]

Diana J. Zinser (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@srkattorneys.com

*Co-Lead Class Counsel for Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ERICA FRASCO, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLO HEALTH, INC., META PLATFORMS, INC., GOOGLE, LLC, and FLURRY, INC.,<br>Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF RENEWED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH DEFENDANT GOOGLE LLC AND DEFENDANT FLO HEALTH, INC.**<br><br>Judge:    Hon. James Donato<br>Date:     April 16, 2026<br>Time:     10:00 AM<br>Courtrm.: 11 – 19th Floor<br>             San Francisco Courthouse |

Plaintiffs submit this reply in support of their Renewed Motion for Preliminary Approval of Class Settlements with Defendant Google LLC and Defendant Flo Health, Inc. (ECF No. 820, the "Motion"), and in response to Meta's opposition to the Motion (ECF No. 821, the "Response").

## I.        INTRODUCTION

Meta's Opposition does not raise any concerns with the settlement itself.  Rather, it attempts to relitigate two issues the Court has already decided concerning Meta's participation in providing notice to the Class: (a) the dissemination of jewel notices on Meta's platforms, and (b) the enrichment of Flo's user data. Meta's strategy on both topics is the same: unable to deny that it can complete the Court-ordered tasks, Meta raises irrelevant roadblocks, like its purported concerns about whether enriching Flo's user data will be fruitful, or whether jewel notice will reach too many people, or provide enough "incremental" value to warrant implementing.  These tactics mirror Meta's general unwillingness to work cooperatively, as required by the Court, to ensure Notice reaches as many Class Members as possible.  The Court should disregard Meta's rant and grant Plaintiffs' Motion.

## II.       META SHOULD DELIVER JEWEL NOTICE

The Court should require Meta to move forward with jewel notice as directed at the December Hearing. *See* Transcript of the December 4, 2025 Hearing ("Hr'g Tr.") at 12:24-25 (with respect to including jewel notice in the notice plan, "work together, come up with a plan . . . and it's going to happen, Meta, so just pitch in."); *id*. at 14:25-15:1 ("This is . . . not an opportunity to say no" to jewel notice); *id*. at 14:23 ("Don't say, 'We're not going to do it.'"). It is undisputed that notice on Meta's platforms is a powerful claim stimulator. *See In re Facebook Biometric Privacy Litig*., No. 3:15-cv-03747 (N.D. Cal.), ECF No. 492 at 3 (reporting jewel notices alone provided a 22% click-through rate to the settlement website). Meta does not contest the feasibility of distributing jewel notice. Nor does it claim that it would be overly burdensome or costly to do so.  Instead, Meta's opposition raises a series of misguided arguments that both misunderstand the purpose of jewel notice and misrepresent Plaintiffs' proposal.

First, Meta grossly exaggerates the proposal, asserting Plaintiffs' Notice Plan requires it to send jewel notices to "all 'current users [of Meta's services] who are women'" in the United States. Response at 1.  But that was not what Plaintiffs proposed. To be clear, Plaintiffs intend to work with Meta to "tailor"

1

REPLY IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS - CASE NO. 3:21-cv-00757-JD

jewel notice "in light of the results of the Initial Notice phase[.]" Motion at 14; *see also* ECF No. 818 at 3. This is a reasonable proposal, consistent with the Court's guidance, that should be ordered.

Second, Meta claims such notice would be overbroad because it would reach some non-Class Members. Response at 1. This is wrong. Just like banner ads or social media advertising, jewel notice is a form of *indirect* notice, and so, by design, it will reach some individuals who are not Class Members. *See Johns v. Bayer Corp.,* No. 09CV1935, 2013 WL 435201, at *1-2 (S.D. Cal. Feb. 1, 2013) (approving banner advertisements among "many widely read" sources designed to reach individuals of certain demographics even though the individuals who would receive the "advertisements" were not confirmed class members). Indeed, the Court recognized this when it rejected Meta's identical argument at the December Hearing. *See* Hr'g Tr. 10:2-7 (Meta's counsel stating, "It would be overinclusive because it would go to too many users . . . ." To which the Court responded, "[W]hat's the harm in that? People get bombarded with things that they don't want all day."). Nothing has changed since then to warrant revisiting this issue.

Meta's overbreadth argument is further belied by its consent to other forms of indirect notice here. Critically, Meta does not oppose the use of social media ads, website banner ads, publication in print and digital media, streaming radio, or jewel notice on the Flo app and website,[1] even though each of these other forms of indirect notice would also reach some non-Class Members. Meta's failure to identify a single case supporting its position that jewel notice on its platform should be treated differently, or evaluated under a different standard from the other forms of indirect notice here is dispositive.

Meta's insinuation that jewel notice is only appropriate if it can be designed to "notify only those Facebook users who are, in fact, Class members," is meritless, as it would convert jewel notice into a form of direct notice. *See* Response at 1-2. None of Meta's cited cases support its position as each merely dealt with deficient *direct* notice plans. For example, *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200, 2019 WL 1512265, at *3–4 (N.D. Cal. Apr. 8, 2019) addressed sending "direct notice" to individuals who were "expressly excluded from the class"—something that is not at issue here.

---

[1] *See* ECF No. 635 (parties agreeing to social media notice, including on Facebook and Instagram); ECF No. 661 (parties agreeing to banner/social media ads, social media notice, and notice on the Flo app).

2

REPLY IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS - CASE NO. 3:21-cv-00757-JD

Meanwhile, *Yeoman v. Ikea U.S. W., Inc.*, No. 11cv701, 2013 WL 5944245, at *5–6 (S.D. Cal. Nov. 5, 2013) addressed whether it was proper to send "direct" email notice to individuals who fell outside the class period, and where there was no "link" between those individuals and the types of claims at hand, i.e., providing zip codes at physical Ikea stores to complete credit card purchases. And *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) likewise involved "direct" email notice despite "no evidence" the "random" list included even "a single class member." None of these issues apply to the jewel notice—a form of indirect notice—that Plaintiffs propose here.

Finally, Meta's remaining arguments suggesting jewel notice would be "duplicative" or cause confusion are meritless because a robust notice program should *by design* include multiple overlapping means of notice, distributed over time, to increase the likelihood of reaching class members.[2] That is precisely what Plaintiffs have done here. Parks Decl. ¶ 31 ("The proposed Settlement Notice Plan provides Class (and California Subclass) Members with multiple exposure opportunities to vehicles carrying the notice. . . . Advertising to this larger group increases the likelihood that members of the (smaller) Class will see the notice."). Jewel notice is one part of that plan and not "duplicative" by any means.

As for Meta's half-hearted concerns that Class Members would be confused by receiving jewel notice in addition to notice through other means, the Court already rejected this argument correctly recognizing that Class Members are capable of understanding and distinguishing between the notices they receive. *See* Hr'g Tr. 12:4-14 ("I wouldn't underestimate users so much . . . I wouldn't underestimate users so much. You can very plainly say, 'this is part one of a settlement, and then part two related to a verdict may be coming.' You can spell all of this out. I don't think anyone is going to be completely flummoxed by getting two notices."). No further consideration is warranted.

---

[2] *In re Facebook Internet Tracking Litig.*, No. 5:12-MD-02314, 2022 WL 16902426, at *5 (N.D. Cal. Nov. 10, 2022), *aff'd sub nom. In re Facebook, Inc. Internet Tracking Litig.*, No. 22-16903, 2024 WL 700985 (9th Cir. Feb. 21, 2024) (explaining notice procedures should provide "the best notice practicable" and approving a notice program that combined media campaigns, direct notice, and social media); Northern District of California Guidelines § 3 (explaining the parties should aim to "achieve the best notice that is practicable under the circumstances" and listing multiple methods of possible notice).

REPLY IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS - CASE NO. 3:21-cv-00757-JD

### III.    META SHOULD PROCEED WITH PLAINTIFFS' DATA ENRICHMENT PLAN

Meta's hypothetical concerns about its "ability" to enrich Flo's data and identify Class Members (Response at 3) are irrelevant to this Motion.[3] The Court has already indicated this enrichment should occur, and Meta's premature speculation concerning the *results* has no bearing on any issue before the Court.  Plaintiffs' Motion is not predicated on any specific view of how successful that enrichment will be.  However, Meta's repeated naysaying foreshadows that it does not intend to approach the enrichment task with good faith or the appropriate cooperative and productive spirit. Moreover, it ignores the strong evidence that Meta *does* have the ability to productively enrich the Flo data, including the following:

Meta Retained Class Member Data: Although Meta attempts to sow doubt around whether it still has Class Member records before a certain date (Response at 3), Meta's produced documents demonstrate that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Exhibit 1 at '407211 ███████████████████████████████████). Indeed, Meta's ███████████████████████████ explicitly stated that Meta ████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.*; *see also id*. at '407216 ███████████████████). This is consistent with the written answers Meta provided to Congress in 2019, where it confirmed that it "store[s] data until it is no longer necessary to provide our services and Facebook Products" or until a person's account is deleted. Exhibit 2 at '27541.

---

[3] Meta's quibbles that *Plaintiffs* have "misrepresent[ed]" its "actions regarding class data" (Response at 4) are plainly untrue and, more importantly, irrelevant to preliminary approval itself. *See* ECF No. 815 (describing how Meta "drastically redesign[ed]" the process for sharing and using Flo data during the Parties' negotiations); ECF No. 815-1 (Plaintiffs' proposed order containing sensible, objective provisions).

REPLY IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS - CASE NO. 3:21-cv-00757-JD

Given that Meta did not adopt a retention period for third-party data until the middle of this litigation, Plaintiffs expect that all their data and that of Class Members is still within Meta's systems. Otherwise, Meta deleted this data during the pendency of this litigation.[4]

Meta Uses IP Addresses to Identify User Locations: Data Meta produced shows that Meta not only stores and retains location information but that it uses IP addresses, like those in the Flo user data, to identify and track a user's location continuously over time. For example, the data Meta produced about Plaintiffs confirms that Meta uses their IP address to determine their city and state of residence. *See, e.g.*, Exhibit 3 (primary_location.html listing Plaintiff Pietrzyk's "primary location" by city and state, with an acknowledgment that location can be "determined by . . . IP address"); Exhibit 4 (same for Plaintiff Meigs); Exhibit 5 (same for Plaintiff Ridgeway); Exhibit 6 (same for Plaintiff Frasco); Exhibit 7 (same for Plaintiff Kiss); Exhibit 8 (same for Plaintiff Gamino). Not only does the data show that Meta records and tracks "primary location," it also shows Meta collected and retained *historical* IP addresses, as well as other data, including browser information, cookie information, and the time these values were updated. This is reflected in Plaintiff Frasco's data, among other Plaintiffs. *See* Exhibit 6 at 3 (record_details.html showing Plaintiff Frasco's data reflecting her email addresses, IP addresses, cookies, as well as updates and changes, from as early as 2011); *id.* at 21 (account_activity.html showing Plaintiff Frasco's data associating IP address, browser, cookie, and location with her profile as early as 2017); *id.* at 60 (login_protection_data.html listing Plaintiff Frasco's "inferred" location from IP address); *id.* at 66 (ip_address_activity.html tracking Plaintiff Frasco's IP addresses, device and browser information, and activity from May 2011, as recorded in a Unix timestamp). Based on this data alone, Meta should be able to identify Class Members based not only on (at least) current IP addresses, but also historic IP addresses it recorded about them and timestamped in its systems. Plaintiffs expect Meta to complete the enrichment process and produce the results.

---

[4] While Meta has previously stated—without any support—that nondescript "device-level data" was deleted under its "standard data-retention policies," the documents above make clear *there was no* standard retention policy for this type of data. *See* ECF No. 627-2 at 2. The data should be there.

5

REPLY IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS - CASE NO. 3:21-cv-00757-JD

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and preliminarily approve the Settlements with Google and Flo, approve the proposed forms and methods of notice to the Class, approve A.B. Data's selection as Settlement Administrator, order implementation of the Settlement Notice Plan, and schedule a hearing for final approval of the Google, Flo, and Flurry Settlements.

Dated: March 20, 2026                    Respectfully submitted,

*/s/ Christian Levis*
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
mmaclean@lowey.com

*Co-Lead Class Counsel*

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
Danielle Izzo (*pro hac vice*)
Gloria J. Medina (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com
dizzo@labaton.com
gmedina@labaton.com

*Co-Lead Class Counsel*

Diana J. Zinser (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300

6

REPLY IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS - CASE NO. 3:21-cv-00757-JD

Fax: (215) 496-6611
dzinser@srkattorneys.com


*Co-Lead Class Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@wvbrlaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Ronald A. Marron (SBN 175650)
Alexis M. Wood (SBN 270200)
Kas L. Gallucci (SBN 288709)
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (772) 783-8436
kent.williams@sirillp.com


William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, Ohio 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgeway and Autumn Meigs*

7

REPLY IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS - CASE NO.
3:21-cv-00757-JD