Christian Levis (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com

*Co-Lead Class Counsel for Plaintiffs and the Class*

Diana J. Zinser (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, PC**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law

*Co-Lead Class Counsel for Plaintiffs and the Class*

Carol C. Villegas (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com

*Co-Lead Class Counsel for Plaintiffs and the Class*

*[additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ERICA FRASCO, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLO HEALTH, INC., META PLATFORMS, INC., GOOGLE, LLC, and FLURRY, INC.,<br>Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS WITH DEFENDANTS FLURRY LLC, GOOGLE LLC AND FLO HEALTH, INC.**<br><br>Judge: Hon. James Donato<br>Date: October 29, 2026<br>Time: 11:00 AM<br>Courtrm.: 11 – 19th Floor<br>San Francisco Courthouse |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on October 29, 2026, at 11:00 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 11 on the 19th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable James Donato presiding, Plaintiffs Jennifer Chen ("Chen"), Erica Frasco ("Frasco"), Tesha Gamino ("Gamino"), Madeline Kiss ("Kiss"), Autumn Meigs ("Meigs"), Justine Pietrzyk ("Pietrzyk"), Leah Ridgway ("Ridgway"), and Sarah Wellman ("Wellman") (collectively, "Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move the Court, pursuant to Fed. R. Civ. P. 23(e), for entry of an order:

(i) finally approving the Class Action Settlement and Release Agreement as to Google LLC ("Google Settlement Agreement" or "Google Settlement") (ECF No. 820-2), the Stipulation and Agreement of Settlement as to Flo Health, Inc. ("Flo Settlement Agreement" or "Flo Settlement") (ECF No. 820-3), and the Stipulation and Agreement of Settlement as to Flurry LLC ("Flurry Settlement Agreement" or "Flurry Settlement") (ECF No. 589-2);

(ii) finally approving the proposed Distribution Plan for the distribution of the proceeds of the Settlements;

(iii) finding that the Court-approved notice plan ("Notice Plan") has been implemented and satisfies due process; and

(iv) dismissing with prejudice Plaintiffs' and Class Members' claims against Google, Flo, and Flurry.

This Motion is made on the grounds that the terms of the proposed Google, Flo, and Flurry Settlements are fair, reasonable, and adequate and, now that Class Members have been issued the Settlement Notice and provided an opportunity to object, final approval of the Settlements is therefore proper because the requirements of Rule 23(e) have been met. Accordingly, Plaintiffs request that the Court finally approve the Settlements and enter final judgment dismissing with prejudice Google, Flo, and Flurry from the Action, pursuant to the proposed Final Approval Orders and Final Judgments to be

submitted to the Court.

The Motion is based on the Joint Declaration of Christian Levis, Carol C. Villegas, and Diana J. Zinser ("Joint Decl." or "Joint Declaration") and the exhibits attached thereto; the Declaration of Heather Littrell of A.B. Data ("Littrell Decl." or "Littrell Declaration"); the Memorandum of Law filed herewith; the pleadings and papers on file in this Action, including the Google Settlement, Flo Settlement and Flurry Settlement (collectively, the "Settlements"); and such other evidence and argument as may subsequently be presented to the Court.

Dated: August 20, 2026

*/s/ Christian Levis*
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com

Diana J. Zinser (*pro hac vice*)
Jeffrey J. Corrigan (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, PC**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law
jcorrigan@scc.law

*Co-Lead Class Counsel*

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should grant final approval of the Settlements and Distribution Plan under Federal Rule of Civil Procedure 23(e)(2);

2. Whether the Court-approved notice plan was implemented and satisfies due process; and

3. Whether the Court should enter judgment of dismissal of Plaintiffs' and Class Members' claims against Google, Flo, and Flurry.

**TABLE OF CONTENTS**


Page

STATEMENT OF ISSUES TO BE DECIDED .......... iv

TABLE OF AUTHORITIES .......... vi

I. INTRODUCTION .......... 1

II. THE NOTICE PLAN HAS BEEN SUCCESSFULLY IMPLEMENTED .......... 1

III. THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE .......... 3

A. Rule 23(e)(2) Factors Support Approval .......... 3

1. The Class Has Been Adequately Represented .......... 3

2. The Settlements Were Negotiated at Arm's Length .......... 4

3. The Settlements Provide Substantively Fair, Reasonable, and Adequate Relief to the Class .......... 4

a. Costs, Risks, and Delay of Trial and Appeal Support Approval of the Settlements .......... 5

b. The Proposed Distribution Plan and Distribution Process Further Confirm the Adequacy of the Settlements .......... 7

c. The Proposed Attorneys' Fee Award Is Consistent with Similar Settlements in this Circuit .......... 8

d. No Other Agreements Impact the Adequacy of the Settlements .......... 9

e. Application of the Remaining *Hanlon* Factors Further Bolsters the Case for Approval of the Settlements .......... 9

4. The Settlements Treat All Class Members Equitably .......... 10

IV. CONCLUSION .......... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Sirius XM Radio Inc.*,
No. CV 18-8605 JVS (SSx), 2020 WL 7314793 (C.D. Cal. July 15, 2020) ........................................ 7

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ........................................................................................ 2

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ........................................................................................ 8

*California v. eBay, Inc.*,
No. 5:12-CV-05874-EJD, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014)........................................ 10

*Carlin v. Dairy Am., Inc.*,
380 F. Supp. 3d 998 (E.D. Cal. 2019)............................................................................... 9

*Churchill Vill., LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ......................................................................................... 9

*Evans v. Linden Rsch., Inc.*,
No. C-11-01078, 2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) .................................................. 2

*Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*,
No. CV 16-03157 PSG(JEMx), 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) ................................. 9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 3

*Hilsley v. Ocean Spray Cranberries, Inc.*,
No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616 (S.D. Cal. Jan. 31, 2020)....................................... 3

*In re Apple Inc. Device Performance Litig.*,
No. 5:18-md-2827-EJD, 2023 WL 2090981 ...................................................................... 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ......................................................................................... 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. M-02-1486-PJH, 2013 WL 12387371 (N.D. Cal. Oct. 30, 2013) ............................................ 8

*In re Extreme Networks, Inc. Sec. Litig.*,
No. 15-CV-04883, 2019 WL 3290770 (N.D. Cal. July 22, 2019)................................................. 10

*In re Facebook Biometric Info. Privacy Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) .......... 4, 5

*In re Google LLC St. View Elec. Commc'ns Litig.*,
611 F. Supp. 3d 872 (N.D. Cal. 2020) .......... 8

*In re Google Location Hist. Litig.*,
No. 5:18-cv-05062-EJD, 2024 WL 1975462 (N.D. Cal. May 3, 2024) .......... 10

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .......... 9

*In re Lenovo Adware Litig.*,
No. 15-MD-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) .......... 5

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .......... 9

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) .......... 7

*In re MacBook Keyboard Litig.*,
No. 5:18-cv-02813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023) .......... 10

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .......... 10

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .......... 9

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) .......... 8

*Lane v. Facebook, Inc.*,
No. C 08-3845 RS, 2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) .......... 6

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......... 6, 9

*Perks v. Activehours, Inc.*,
No. 5:19-CV-05543-BLF, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) .......... 4, 10

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......... 3, 5, 6

*Scholl v. Mnuchin*,
489 F. Supp. 3d 1008 (N.D. Cal. 2020) .......... 3

*Villegas v. J.P. Morgan Chase & Co.*,
No. CV 09-00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .................................. 4

*Waldbuesser v. Northrop Grumman Corp.*,
No. CV 06-6213-AB (JCx), 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) .......................................... 9

**Statutes**

Cal. Civ. Code §§ 56.05(j), (m), (p)................................................................................................ 6

**Rules**

Federal Rule of Civil Procedure 23(c)(2)(B) ........................................................................................ 2

Federal Rule of Civil Procedure 23(e) ............................................................................................ ii, 7

Federal Rule of Civil Procedure 23(e)(1) ............................................................................................ 2

Federal Rule of Civil Procedure 23(e)(2)(C)(i)-(iv) .............................................................................. 4

Federal Rule of Civil Procedure 23(e)(2)(D)..................................................................................... 10

Federal Rule of Civil Procedure 23(e)(2) ...................................................................................... passim

Federal Rule of Civil Procedure 23 ................................................................................................ 2, 11

Federal Rule of Civil Procedure 23(a)(4) ............................................................................................. 3

Federal Rule of Civil Procedure 23(c) .................................................................................................. 2

Federal Rule of Civil Procedure 23(e)(2)(A).......................................................................................... 3

Federal Rule of Civil Procedure 23(e)(2)(C) ................................................................................ 4, 5, 9

Federal Rule of Civil Procedure 23(e)(3); and (D) ....................................................................... 3, 4, 9

**Other Authorities**

4 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS, § 11:50 at 155 (4th ed. 2002)....................... 6

## I. INTRODUCTION

Plaintiffs seek final approval of Settlements[1] with Google, Flo, and Flurry. The Court previously granted preliminary approval of all three Settlements on May 15, 2025, and April 22, 2026. ECF Nos. 597 (approving the Flurry Settlement), 834 (approving the Google and Flo Settlements). The Settlements were the product of extensive, arm's-length negotiations, and years of concurrent litigation. Class Members received the Settlement Notice through direct and indirect means in accordance with the Notice Plan starting June 12, 2026. The Class's response to date supports approval: although the claims process remains ongoing, there have been no objections. Accordingly, Plaintiffs respectfully request that the Court grant final approval of each of the proposed Settlements and the Distribution Plan, find that the approved Notice Plan was implemented and satisfied due process, and dismiss with prejudice all of the Released Plaintiffs' Claims against the Released Google Parties, Released Flo Parties, and the Released Flurry Parties.

## II. THE NOTICE PLAN HAS BEEN SUCCESSFULLY IMPLEMENTED

Court-appointed administrator A.B. Data implemented the Notice Plan by disseminating notice in three phases. *See* Littrell Decl.¶ ¶ 18-19 The first phase commenced with direct email notice to 3,393,698 Class Members identified in Flo's customer records following enrichment by Covalynt (formerly known as ClaimScore). *Id.* ¶¶ 5-7. Direct notice was also provided by mail via postcards to Class Members identified in Flo's customer records following enrichment by Covalynt. *Id.* ¶ 20. Through these efforts, at least one form of direct notice was sent to over three million Class Members, reaching approximately 33% of the Class. This direct email and physical mail notice was supplemented with concurrent indirect notice across various channels: (1) print notices in *The New York Times* and *The Los Angeles Times*; (2) digital ads targeted at groups most likely to contain Class Members across Google Display Network, TikTok, YouTube, Facebook, Instagram, and Pinterest; (3) banner ads on the Flo website and push notifications in the Flo App; (4) streaming radio ads and/or display banners on platforms such as Spotify, iHeartRadio, Pandora, or Apple Podcasts; and (5) search ads on platforms such as Google Search. *Id.* ¶¶ 9-15. The

[1] Except as otherwise defined herein, all defined terms have the same meanings as used in the Google Settlement Agreement (ECF No. 820-2), Flo Settlement Agreement (ECF No. 820-3), and Flurry Settlement Agreement (ECF No. 589-2).

second phase is built on the results of the first, using data regarding the performance of digital ads from the initial phase to more specifically target users likely to file claims. *Id.* ¶ 19. This has included and continues to include targeted digital advertisements, radio promotion in the top local markets, and television promotion on high-visibility programming. *Id.* In addition to these notice efforts, other outreach has been and will continue to be implemented. To reach as many potential class members as possible, A.B. Data sent a reminder email notice to all available email addresses identified in Flo's customer records. As of the date of this submission, A.B. Data sent reminder email notices to 4,135,798 email addresses identified in Flo's customer records. *Id.* ¶ 7. Text messages were sent to some users identified in Flo's customer records. *Id.* ¶ 21. These efforts will continue through the claims filing deadline to encourage Class Member participation in the Settlements. *Id.* ¶¶ 18-19. In each phase, the content of the Settlement Notice itself "clearly and concisely state[d] in plain, easily understood language" the nature of the action, the class definition, and the class members' right to object to the Settlements, as required by the Court-approved Notice Plan. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017). This campaign has delivered more than 113,851,927 gross impressions to date and is expected to create additional impressions by completion. Littrell Decl. ¶ 11. This has resulted in website visits from approximately 3,675,481 unique users to the Settlement Website, periodtrackerdataprivacylitigation.com. *Id.* ¶ 23. Even with this broad exposure, there have been no objections to the Settlements to date. *Id.* ¶ 30.

These results confirm that the Notice Plan meets Rule 23(c)'s requirement to provide "the best notice that is practicable under the circumstances." *Evans v. Linden Rsch., Inc.*, No. C-11-01078, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013); Fed. R. Civ. P. 23(c)(2)(B). Under this standard, notice does not need to actually reach each class member, but rather it must be provided in "a reasonable manner to all class members who would be bound" by the Settlements. Fed. R. Civ. P. 23(e)(1); *Briseno*, 844 F.3d at 1128 ("neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member"). Under the Notice Plan, A.B. Data has provided direct notice in the form of emails or reminder emails to over 4 million email addresses identified in Flo's customer records and is in the process of providing indirect notice estimated to reach 4,861,598 class members (consisting of 113,851,927 impressions). Littrell Decl. ¶¶ 5-7,10-11. Accordingly, the Court should find the Notice Plan, as

implemented, satisfied due process.

## III. THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE

Final approval of the Settlements is warranted for the same reasons that the Court previously granted preliminary approval. Under Rule 23(e)(2), courts at final approval consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts in the Ninth Circuit also consider some or all of these additional factors:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[2] Each of these factors has been satisfied; accordingly, the Court should finally approve the Settlements.

### A. Rule 23(e)(2) Factors Support Approval

#### 1. The Class Has Been Adequately Represented

The Court found Plaintiffs Chen, Frasco, Gamino, Meigs, and Wellman to be adequate Class Representatives when it certified the class. ECF No. 605; *see also Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) (adequacy under Rule 23(a)(4) also satisfies the adequacy factor under Rule 23(e)(2)(A)). This was confirmed throughout the litigation, including when each Class Representative delivered highly personal testimony at trial against Flo and Meta. ECF No. 747 at 146:6-162:20 (Wellman's testimony); ECF No. 748 at 178:14-227:24 (Wellman's continued testimony); *id.* at 228:20-264:11 (Chen's testimony); *id.* at 265:23-288:13

---

[2] For convenience, these factors are referred to herein as the "*Hanlon* factors."

(Meigs' testimony); *id.* at 289:14-321:17 (Gamino's testimony); *id.* at 322:15-381:21 (Frasco's testimony).

Class Counsel have vigorously and adequately represented the Class; they obtained three significant Settlements and litigated a first-of-its-kind case to verdict against one of the largest companies in the world. *See* Joint Decl. ¶¶ 32-56; *see also Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1045 (N.D. Cal. 2020) ("a court may consider the proposed counsel's professional qualifications, skill, and experience, as well as such counsel's performance in the action itself"). This factor favors final approval of the Settlements.

**2. The Settlements Were Negotiated at Arm's Length**

The Settlements are the result of multiple rounds of negotiations assisted by two separate neutral mediators, Magistrate Judge Thomas S. Hixson and Ambassador Jeffrey Bleich. Joint Decl. ¶¶ 5, 43-50; *see Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (approving settlement achieved following "arm's-length negotiations . . . supervised by [an experienced neutral]" and involving experienced class counsel that had performed sufficient investigation "to make an informed decision about the Settlement and about the legal and factual risks of the case"); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (finding use of a neutral "tends to support the conclusion that the settlement process was not collusive"). Plaintiffs and Flurry reached an agreement in principle to settle the Action on October 30, 2024, after a full-day mediation with Ambassador Bleich. Joint Decl. ¶ 50. Plaintiffs and Google reached an agreement in principle to settle the Action on July 3, 2025, just prior to trial, and executed the Google Settlement Agreement a month later in August 2025. Joint Decl. ¶¶ 39, 54. Plaintiffs and Flo reached an agreement in principle to settle the Action on July 30, 2025, just prior to closing arguments, and executed the Flo Settlement Agreement on September 22, 2025. Joint Decl. ¶ 56. The use of multiple neutral mediators and the time it took to ultimately reach these Settlements provide evidence that these negotiations were difficult, hotly contested, and conducted at arm's length.

**3. The Settlements Provide Substantively Fair, Reasonable, and Adequate Relief to the Class**

The relief provided by the three Settlements is fair, reasonable, and adequate. This evaluation

balances four factors: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). Several *Hanlon* factors are considered alongside the Rule 23(e)(2)(C) considerations. *See In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 626 (N.D. Cal. 2021) ("Several [*Hanlon* factors] overlap with the Rule 23(e)(2)(C) subfactors . . . . These include the strength of the plaintiff's case; the risks, expense, complexity, and likely duration of further litigation, the risks of maintaining class action status throughout the trial, the amount offered in settlement; the extent of discovery completed and stage of proceedings; and the presence or nonpresence of a governmental participant."). There is no bright-line rule as to what makes a settlement fair, reasonable, and adequate; rather "judging the adequacy of the payout to the class is 'an amalgam of delicate balancing, gross approximations, and rough justice.'" *Id.* at 626 (quoting *Rodriguez*, 563 F.3d at 965). Ultimately, the goal is to make "a realistic assessment of the overall risks and rewards of a trial in the context of each specific case." *Id.* at 626-27. As the Court found at preliminary approval, that balance tilts heavily toward finally approving the Settlements.

**a. Costs, Risks, and Delay of Trial and Appeal Support Approval of the Settlements**

The types of risks involved with prosecuting claims against Flurry, Flo, and Google weigh in favor of approving the Settlements. With respect to Flurry, prosecuting the claims to trial could have yielded potentially negative results given Flurry's financial condition. *See* ECF No. 589-1 ¶¶ 28, 40. At the time of the Settlement, Flurry had dissolved and had limited resources at its disposal. *See In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at *6 (N.D. Cal. Apr. 24, 2019) ("[H]ad Plaintiffs not reached a settlement with [dissolved defendant] in 2016, there was a significant risk of [defendant] declaring bankruptcy and Plaintiffs receiving nothing from [defendant]."). The Settlement secures all remaining cash-on-hand available from Flurry following its dissolution, which represents the best outcome under the circumstances. Joint Decl. ¶ 49. If Plaintiffs had brought Flurry to trial and achieved a favorable verdict, it is unlikely that Flurry would have been able to pay the resulting judgment. *Id.*

The risks relating to Google were different, but no less significant, by the time Plaintiffs and

Google settled just prior to the start of trial. Google maintained it did not use or intend to record Flo users' data, a highly technical issue turning on the operation of its SDK. Joint Decl. ¶ 52. Google also supplemented its interrogatory responses just prior to trial, asserting that it only possessed data from roughly 1.3 million unique Flo App users nationwide. Because the Court certified only the California Subclass's claims against Google, this new evidence increased the risk that damages could have been significantly reduced from their theoretical maximum. Joint Decl. ¶ 52. The Settlement with Google took this risk off the table and allowed Plaintiffs to focus on trying claims against Flo and Meta.

The Settlement with Flo occurred toward the end of trial and was influenced by the evidence and rulings during the proceedings. After Plaintiffs rested their case, Flo moved for judgment as a matter of law on California's Confidentiality of Medical Information Act ("CMIA") claim, the only claim against Flo with statutory damages. ECF No. 751 at 1094:15-1095:3. The Court allowed briefing on the matter but noted it was inclined to grant Flo's motion because, in its view, the evidence did not show that Plaintiffs were "patients" or that Flo was a "provider of healthcare" under the statute. *Id*. at 1104:3-7; *see* Cal. Civ. Code §§ 56.05(j), (m), (p). Had Flo's motion been granted, the Class would have been limited to nominal damages for contract and/or privacy claims. Joint Decl. ¶ 55. The Settlement with Flo removed that risk and ensured that Plaintiffs and the Class obtained a significant recovery, while also allowing the jury to focus its deliberations solely on the case against Meta. The jury's deliberations ultimately resulted in a verdict against Meta for violations of the California Invasion of Privacy Act ("CIPA").

Although Plaintiffs were justifiably confident in their ability to prosecute the Action to verdicts against all Defendants, the risks were ever-present. In addition to those risks raised above, Plaintiffs were aware that even after class certification and trial, there remained a risk of the Class being decertified prior to final judgment entered against Flo. *See Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 WL 9013059, at *4 (N.D. Cal. Mar. 17, 2010), *aff'd*, 696 F.3d 811 (9th Cir. 2012) (citing *Rodriguez*, 563 F.3d at 966) ("The risk that a class action may be decertified at any time generally weighs in favor of approving a settlement").

Plaintiffs also recognized that success at trial was not certain. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive

litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS, § 11:50 at 155 (4th ed. 2002)). The Settlements each solidified a recovery for the Class, reducing the amount of outstanding risk, while preserving the ability to achieve greater recoveries from defendants that remained in the case.

#### b. The Proposed Distribution Plan and Distribution Process Further Confirm the Adequacy of the Settlements

Ideally, "[a] claims processing method should deter or defeat unjustified claims" while avoiding becoming "unduly demanding" on class members who choose to participate. *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605 JVS (SSx), 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). Under the Settlements, Class Members who submit valid claims will be issued *pro rata* payments (primarily through digital means) from the Net Settlement Fund. Flurry Settlement Agreement § 9(F); Google Settlement Agreement § 9(I); Flo Settlement Agreement ¶ 48. To account for the increased legal value of claims under California's data protection laws, which provide statutory damages, Authorized Claimants who can demonstrate they are California Subclass Members (*e.g.*, by providing a valid California address) will receive twice the *pro rata* share of those from other states. *See* Google Settlement Agreement § 9(I)(ii); Flo Settlement Agreement ¶ 48(b); Flurry Settlement Agreement § 9F(ii). The claims process itself requires the minimal effort of submitting a claim form which is streamlined and designed to collect information needed to distribute funds. *See* ECF No. 820-4; *see also Alvarez*, 2020 WL 7314793, at *6. While the process of filing a claim form has been made simple, numerous safeguards are in place to ensure that the relief goes to eligible Class Members. *See* ECF No. 820-12 (Declaration of Justin Parks of A.B. Data Regarding the Proposed Notice Plan and in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlements with Defendants Flo Health, Inc. and Google LLC) ¶ 47. This includes using Covalynt's proprietary software and processes to identify fraud, duplication, and otherwise validate claims. ECF No. 820-12 ¶ 48; Littrell Decl. ¶ 27; *see* ECF No. 792, Sept. 30, 2025 Hr'g Tr. 12:15-14:10, 32:8-35:25 (discussion of Covalynt's fraud and validation capabilities).

Assuming a 10% claims rate at the conclusion of the claims period, the average recovery per Class Member on a *pro rata* basis will be $31.94. If Plaintiffs obtain a claims rate of 25%, the average recovery

per Class Member will be $12.69. *See* ECF No. 820-12 ¶ 58. The recovery is in line with payouts made in other similar cases. *See*, *e.g.*, *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015) (approving settlement of $14.81 per claimant); *see also* ECF No. 820-8 (Plaintiffs' Chart of Selected Comparable Case Outcomes).

#### c. The Proposed Attorneys' Fee Award Is Consistent with Similar Settlements in this Circuit

With respect to attorneys' fees and expenses, Class Counsel seek a fee award of $19,366,666.67, representing a one-third award from the Google and Flo Settlement Funds and 20% from the Flurry Settlement Fund, which translates to a blended rate of 32.5%. *See* Class Counsel's Motion for Award of Attorneys' Fees and Expenses, and Plaintiffs' Application for Service Awards ("Fee and Expense Application"), filed herewith. There is no "clear sailing" agreement with any of the settling Defendants, nor does any part of the Settlements revert to Google, Flo, or Flurry. Google Settlement Agreement §§ 2(B), 11(F); Flo Settlement Agreement ¶¶ 2, 65; Flurry Settlement Agreement §§ 3, 12; *see Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (holding that the heightened inquiry under *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) to "smoke out potential collusion" applies to post-certification settlements). Plaintiffs' Counsel have provided detailed information in support of their application in their motion for attorneys' fees and expenses and attorney declarations. Based on the total aggregate lodestar of $42,595,383.00 as reported in the Fee and Expense Application, if the Court were to award the 32.5% fee request, the fee award would reflect a lodestar multiplier of 0.45 (Joint Decl. ¶ 68). While the fee request is above the benchmark percentage typically used in the Northern District of California, it is a reasonable award under these circumstances because the award reflects a negative multiplier. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2013 WL 12387371, at *12 (N.D. Cal. Oct. 30, 2013) (approving fee request yielding "negative multipliers of approximately .82 and .71" because a negative multiplier suggests the requested fee "is fair and reasonable"); *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 888 (N.D. Cal. 2020), *aff'd sub nom. In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102 (9th Cir. 2021) (granting fee request with .59 negative multiplier because "[a] negative lodestar multiplier 'strongly suggests the reasonableness' of the requested fee.") (citations omitted). The requested fee is fair in light

of this significant recovery and the substantial time Plaintiffs' Counsel have devoted to this case on a contingency fee basis, with the threat of no recovery at all, absent successful resolution. Further, the award would be consistent with awards made in similar cases in this District and others. *See*, *e.g.*, *In re TikTok*, *Inc., Consumer Priv. Litig.,* 617 F. Supp. 3d 904, 942 (N.D. Ill. 2022) (awarding 33% of $92 million settlement after three years of litigation, recognizing "[t]he need to provide financial incentives for zealous and effective representation of consumers in legally and technologically complex data privacy cases such as this[]"); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (awarding one-third of $104.75 million settlement); *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, No. CV 16-03157 PSG(JEMx), 2024 WL 4267431, at *3 (C.D. Cal. Sept. 17, 2024) (awarding 33% of the $70 million settlement as attorney fees); *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCx), 2017 WL 9614818, at *3 (C.D. Cal. Oct. 24, 2017) (explaining "[s]everal courts have awarded attorney fees of one-third of a common fund" when counsel has "expended significant effort . . . in prosecuting the action"); *Carlin v. Dairy Am., Inc.*, 380 F. Supp. 3d 998, 1006 (E.D. Cal. 2019) (approving 33% of $40 million settlement fund in attorneys' fees); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) (approving 33 1/3% of $27,783,000 common fund in attorneys' fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding award of 33% in fees from $12 million settlement was not an abuse of discretion).

#### d. No Other Agreements Impact the Adequacy of the Settlements

There are no other agreements to disclose pursuant to Rule 23(e)(3). The Settlements detail the full extent of the resolution struck between Plaintiffs and the Settling Defendants. The absence of any other agreements that could impair Class Members' ability to recover from the Settlements is yet another indicator that the Settlements are fair, reasonable, and adequate.

#### e. Application of the Remaining *Hanlon* Factors Further Bolsters the Case for Approval of the Settlements

The remaining *Hanlon* factors not expressly analyzed under Rule 23(e)(2)(C) also confirm that these Settlements should be approved. The reaction of class members is an important consideration in assessing a settlement's fairness. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "It is established that the absence of a large number of objections to a proposed class action settlement

raises a strong presumption that the terms of a proposed [class action settlement] are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529 (collecting cases). Here, while there is still time before the objection deadline, the fact that there are no objections as of the date of this filing is notable. That no Class Member has objected to the Settlements, the relief they provide, and the awards sought by Class Counsel and Plaintiffs is an indication that the Class views the Settlements favorably. To the extent there are any objections, Plaintiffs will respond and address such objections in their reply in support of this Motion.

Courts also evaluate whether class counsel had sufficient information to make an "informed decision" about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). After litigating this case for over four years through trial, Plaintiffs and Class Counsel were fully informed about the strengths and weaknesses of the claims while negotiating each of the Settlements. Joint Decl. ¶¶ 5, 48, 55.

The judgment of experienced counsel regarding the Settlements is also a consideration for the Court and "should be given a presumption of reasonableness." *In re Google Location Hist. Litig.*, No. 5:18-cv-05062-EJD, 2024 WL 1975462, at *8 (N.D. Cal. May 3, 2024). Class Counsel have extensive experience in prosecuting and litigating complex class action cases. ECF Nos. 820-9 – 820-11 (Class Counsel Firm Resumes). That qualified and well-informed counsel endorse the Flurry, Google and Flo Settlements as being fair, reasonable, and adequate under the applicable factors should weigh in favor of this Court's approval of the Settlements. *See, e.g.*, *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023) (finding that four years of extensive discovery and litigation supported final approval); *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-2827-EJD, 2023 WL 2090981, at *7 (extensive discovery, including party and non-party depositions and multi-million page document production, supported final approval).

#### 4. <u>The Settlements Treat All Class Members Equitably</u>

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). Here, Class Members may claim a *pro rata* share of the Settlements, which may be increased if they provide reasonable information showing they are California Subclass Members. Courts in this district have found that

allocating settlement benefits *pro rata* among class members is equitable. *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (explaining a proposed settlement is appropriate where it "does not improperly grant preferential treatment to class representatives or segments of the class").

To the extent feasible, unclaimed funds will be redistributed to Class Members who have submitted valid claims. Otherwise, the Parties will jointly propose a *cy pres* recipient consistent with the Ninth Circuit's guidelines. *See* Flurry Settlement Agreement § 9(F)(vii); Google Settlement Agreement § 9(I)(vii)-(viii); Flo Settlement Agreement ¶ 48(g)-(h).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and finally approve the Settlements with Google, Flo, and Flurry as well as the Distribution Plan, find that the Notice Plan has been implemented consistent with Rule 23 and due process, and enter judgment of dismissal of the Released Plaintiffs' Claims against the Released Google Parties, Released Flo Parties, and the Released Flurry Parties with prejudice.

Dated: August 20, 2026

Respectfully submitted,

*<u>/s/ Christian Levis</u>*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
mmaclean@lowey.com

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
Danielle Mazzeo (*pro hac vice*)
Gloria J. Medina (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**

140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com
dimazzeo@labaton.com
gmedina@labaton.com

Diana J. Zinser (*pro hac vice*)
Jeffrey J. Corrigan (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, PC**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law
jcorrigan@scc.law

*Co-Lead Class Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@wvbrlaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Ronald A. Marron (SBN 175650)
Alexis M. Wood (SBN 270200)
Kas L. Gallucci (SBN 288709)
**MARRON PC**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (772) 783-8436
kent.williams@sirillp.com

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, OH 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*