Christian Levis (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com

*Co-Lead Class Counsel for Plaintiffs and the Class*

Diana J. Zinser (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, PC**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law

*Co-Lead Class Counsel for Plaintiffs and the Class*

Carol C. Villegas (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com

*Co-Lead Class Counsel for Plaintiffs and the Class*

*[additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ERICA FRASCO, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLO HEALTH, INC., META PLATFORMS, INC., GOOGLE, LLC, and FLURRY, INC.,<br>Defendants. | Case No.: 3:21-cv-00757-JD<br><br>**CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS**<br><br>Judge: Hon. James Donato<br>Date: October 29, 2026<br>Time: 11:00 AM<br>Courtrm.: 11 – 19th Floor<br>San Francisco Courthouse |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on October 29, 2026, at 11:00 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 11 on the 19th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable James Donato presiding, Plaintiffs Jennifer Chen ("Chen"), Erica Frasco ("Frasco"), Tesha Gamino ("Gamino"), Madeline Kiss ("Kiss"), Autumn Meigs ("Meigs"), Justine Pietrzyk ("Pietrzyk"), Leah Ridgway ("Ridgway"), and Sarah Wellman ("Wellman") (collectively, "Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move the Court, pursuant to Fed. R. Civ. P. 23(h), for entry of an order: (1) awarding Class Counsel attorneys' fees of $19,366,666.67, plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; (2) awarding reimbursement of litigation expenses of $2,091,517.74, plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; and (3) approving Service Awards totaling $155,000 to Plaintiffs.

The Motion is based on the Memorandum of Law set forth below, the Joint Declaration of Christian Levis, Carol C. Villegas and Diana J. Zinser ("Joint Decl." or "Joint Declaration"); the declarations of Plaintiffs' Counsel (Christian Levis, Carol C. Villegas, Diana J. Zinser, Kent M. Williams, William D. Harris II, and Kas L. Gallucci); Plaintiffs' declarations; the Declaration of Heather Littrell of A.B. Data, the pleadings and papers on file in this Action, including the Google Settlement, Flo Settlement and Flurry Settlement (collectively, the "Settlements");[1] and such other evidence and argument as may subsequently be presented to the Court.

Plaintiffs respectfully request that the Court grant the Motion and enter the forthcoming proposed Order granting this Motion.

[1] Unless otherwise defined herein, capitalized terms have the same meaning as in the Class Action Settlement and Release Agreement as to Flurry LLC (the "Flurry Settlement Agreement") (ECF No. 589-2), Class Action Settlement and Release Agreement as to Google LLC (the "Google Settlement Agreement") (ECF No. 820-2), and the Stipulation and Agreement of Settlement as to Flo Health, Inc. (the "Flo Settlement Agreement") (ECF No. 820-3). Unless otherwise noted, all ECF citations are to the docket in this Action.

Dated: August 20, 2026

*/s/ Christian Levis*
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com

Diana J. Zinser (*pro hac vice*)
Jeffrey J. Corrigan (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, PC**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law
jcorrigan@scc.law

*Co-Lead Class Counsel*

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should award Class Counsel attorneys' fees of $19,366,666.67 (approximately 32.5% of the $59,500,000 in Settlements achieved);

2. Whether the Court should award a payment of $2,091,517.74 as reimbursement for Litigation Expenses incurred by Plaintiffs' Counsel in prosecuting the Action; and

3. Whether the Court should grant $155,000 in Service Awards to Plaintiffs for their efforts in prosecuting the case and representing the interests of the Class.

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES TO BE DECIDED ........ iii

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Class Counsel's Fee Request Is Fair and Reasonable ........ 2

1. The Percentage-of-the-Recovery Method Supports the Requested Award ........ 3

a. Plaintiffs' Counsel achieved an excellent result for the Class ........ 4

b. The risks Plaintiffs' Counsel encountered at the outset and during the case support the requested fee ........ 5

c. Plaintiffs' Counsel's work created precedent-setting benefits that further justify the requested fee ........ 6

d. Fee awards in similar cases confirm that the requested fee is reasonable ........ 7

e. The burdens Plaintiffs' Counsel experienced in litigating this Action combined with the contingent nature of the representation weigh in favor of the proposed fee. ........ 8

2. Applying the Lodestar Cross-Check Further Bolsters the Reasonableness of the Proposed Fee Award ........ 9

B. The Litigation Expenses Incurred by Plaintiffs' Counsel Are Reasonable and Appropriate for Reimbursement from the Common Fund ........ 11

C. Plaintiffs' Efforts in This Action Merit Granting the Proposed Service Awards ........ 12

III. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnold v. DMG Mori USA, Inc.*,
No. 18-cv-02373-JD, 2022 WL 18027883 (N.D. Cal. Dec. 30, 2022) ........ 13

*Baker v. Save Mart Supermarkets*,
No. 1:22-cv-4645-RMI, 2025 WL 4692691 (N.D. Cal. Sept. 16, 2025) ........ 13

*Barrett v. Apple Inc.*,
No. 5:20-cv-04812-EDJ, 2025 WL 1002786 (N.D. Cal. Apr. 3, 2025) ........ 7, 11

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ........ 4

*Cancilla v. Ecolab, Inc.*,
No. 12-cv-03001-JD, 2016 WL 54113 (N.D. Cal. Jan. 5, 2016) ........ 15

*Destefano v. Zynga, Inc.*,
No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........ 6

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........ 7

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
307 F.3d 997 (9th Cir. 2002) ........ 5

*Grace v. Apple, Inc.*,
No. 17-CV-00551-LHK, 2021 WL 1222193 (N.D. Cal. Mar. 31, 2021) ........ 11

*Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*,
No. CV 16-03157 PSG (JEMx), 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) ........ 8

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) ........ 2, 3

*In re Apple Inc. Device Performance Litig.*,
No. 5:18-md-02827-EJD, 2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ........ 5

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........ 3, 4, 9

*In re Cal. Pizza Kitchen Data Breach Litig.*,
129 F.4th 667 (9th Cir. 2025) ........ 3

*In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal. 1977) .......... 5

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) .......... 11

*In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617 (N.D. Cal. 2021) .......... 3, 10

*In re Facebook Internet Tracking Litig.*, No. 5:12-MD-02314-EJD, 2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) .......... 8

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-MD-02843-VC, 2023 WL 8445812 (N.D. Cal. Oct. 10, 2023) .......... 10

*In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 5

*In re Google Play Dev. Antitrust Litig.*, No. 20-cv-05792-JD, 2024 WL 150585 (N.D. Cal. Jan. 11, 2024) .......... 3

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .......... 4

*In re JUUL Labs*, *Inc.*, *Mktg.*, *Sales Prac. & Prod. Liab. Litig.*, No. 19-md-02913-WHO, 2023 WL 11820531 (N.D. Cal. Dec. 18, 2023) .......... 11

*In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .......... 7, 11, 12

*In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) .......... 4

*In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023) .......... 3

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .......... 9, 13, 14

*In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904 (N.D. Ill. 2022) .......... 5, 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prods.* Liab. Litig., No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .......... 11

*In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508 (N.D. Cal. 2020) .......... 13

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 3:22-cv-04792-RS, 2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ........ 5

*Lowery v. Rhapsody Int'l*,
75 F.4th 985 (9th Cir. 2023) ........ 4

*Norcia v. Samsung Telecomm. Am., LLC*,
No. 14-cv-00582-JD, 2021 WL 3053018 (N.D. Cal. July 20, 2021) ........ 14

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
No. 22-CV-03023-TLT, 2025 WL 3546227 (N.D. Cal. Dec. 4, 2025) ........ 11

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) ........ 11

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........ 15

*Stetson v. Grissom*,
821 F.3d 1157 (9th Cir. 2016) ........ 11

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ........ 13

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........ passim

*Waldbuesser v. Northrop Grumman Corp.*,
No. CV 06-6213-AB (JCx), 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) ........ 3

**Statutes**

Cal. Penal Code § 637.2(a) ........ 7

**Rules**

Federal Rules Civil Proceedure 23(h) ........ i

Class Counsel respectfully submit this memorandum of law in support of their Motion for Attorneys' Fees and Expense Awards and Plaintiffs' Application for Service Awards ("Fee and Expense Application") and request: (1) an award of attorneys' fees of $19,366,666.67 (approximately 32.5% of the $59,500,000 common fund created by Plaintiffs' settlements ("Settlements") with Defendants Google, Flo, and Flurry), plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; (2) reimbursement of Litigation Expenses totaling $2,091,517.74, plus interest; and (3) Service Awards to Plaintiffs totaling $155,000.

## I. <u>INTRODUCTION</u>

This has been (and continues to be) an extraordinary case. Class Counsel overcame Google, Flo, Flurry and Meta's motions to dismiss. Joint Decl. ¶ 13. They succeeded in certifying a nationwide Class and a California Subclass on most of Plaintiffs' claims after Defendants had not one, but two opportunities to refine their arguments against certification. Joint Decl. ¶¶ 20-23, 26. Google, Flo and Meta moved for summary judgment, which Class Counsel opposed and largely defeated. Joint Decl. ¶¶ 27-31. Between the entry of the class certification and summary judgment orders in May 2025 and the scheduled start of trial in July 2025, Class Counsel successfully coordinated the issuance of Notice to the Class, prepared a multitude of pretrial submissions, motions, and briefs, and prepared themselves and Plaintiffs for trial. Joint Decl. ¶¶ 32-40. While Google ultimately settled on the eve of trial (Joint Decl. ¶ 53), this was one of the rare class actions that went to trial, and Meta and Flo mounted a spirited defense. Class Representatives Wellman, Chen, Gamino, Frasco, and Meigs, publicly testified about their private health information and about the impact of Defendants' alleged breach of their data privacy rights. Just prior to jury deliberations, Flo settled, leaving Meta as the lone non-settling Defendant; but the risk that the jury could issue a defense verdict still remained. Due to Class Counsel's efforts, supported by additional Plaintiffs' Counsel, the jury found Meta violated the California Invasion of Privacy Act ("CIPA"), and the company is now subject to immense liability. Joint Decl. ¶ 42. To Class Counsel's knowledge, this verdict is one of the first of its kind.

Against this backdrop and in connection with the final approval of the Google, Flo, and Flurry Settlements, Class Counsel now seek awards for attorneys' fees and Litigation Expenses incurred through

July 31, 2025. Measured against Plaintiffs' Counsel's lodestar of $42,595,383.00 through July 31, 2025, the requested fee of $19,366,666.67 yields a multiplier of 0.45—below the 1.0 multiplier that courts in this Circuit treat as presumptively reasonable. Joint Decl. ¶¶ 66, 68. The fee request is approximately 32.5% of the Settlements, corresponding to a blended rate reflecting different percentages for different Settlements: 20% of the earlier and smaller Flurry Settlement, and one-third of the Google and Flo Settlements. Joint Decl. ¶ 66. While above the Ninth Circuit's benchmark of 25%, the request is well-supported under the factors courts apply to decide fee awards. As for the Litigation Expenses, they reflect the costs associated with litigating a case of this complexity and magnitude—expert and consultant fees, litigation support and document hosting costs, travel expenses, and deposition costs, and trial costs, among others—that were reasonably necessary to advance the interests of Plaintiffs and the Class. Joint Decl. ¶¶ 72-75.

This Motion also requests awards totaling $155,000 (0.26% of the common fund) for Plaintiffs' remarkable service to the Class. Joint Decl. ¶ 76. Each of the certified Class Representatives would receive $25,000 and the remaining named Plaintiffs would receive $10,000. Joint Decl. ¶ 77. All Plaintiffs agreed to participate in the Action. Without their willingness to expose themselves to scrutiny to protect what should have been private health information, the success of this Action and the resulting impact it will have on future data privacy rights enforcement would not have been possible. Five Plaintiffs testified at trial, placing on the permanent public record the details of their menstrual cycles, pregnancies, and reproductive health. Every absent Class Member will share in this recovery without ever having to do the same. That is a service of a different character than a named plaintiff typically provides, and it warrants the enhanced Service Awards requested. Joint Decl. ¶ 78.

For the reasons set forth below, Class Counsel respectfully request that the Court grant the Motion.

## II. <u>ARGUMENT</u>

### A. Class Counsel's Fee Request Is Fair and Reasonable

The Ninth Circuit recognizes two ways of assessing requests for attorneys' fees in common fund cases: the percentage-of-the-recovery method and the lodestar method. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047

(9th Cir. 2002). District courts have discretion concerning which method to apply in a particular case. *Apple Device*, 50 F.4th at 784. As the benefit of the Settlement to the Class is easily quantifiable, the percentage-of-recovery method is appropriate here. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Regardless of which method is used, the central inquiry revolves around the reasonableness of the fee considering the result achieved. *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025). The Notice to the Class advised that Plaintiffs' Counsel would seek 20% of the Flurry Settlement, and 33.3% of the Settlements with Flo and Google as attorneys' fees. *See* Littrell Decl., Ex. I at 11. While there are several more weeks until the objection deadline, the lack of objections to date is a positive indication that Class Members find the request to be reasonable. *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCx), 2017 WL 9614818, at *5 (C.D. Cal. Oct. 24, 2017).[2] As described below, the other factors considered by Courts also support the approval.

**1. <u>The Percentage-of-the-Recovery Method Supports the Requested Award</u>**

The Ninth Circuit recognizes that the "benchmark award [in common fund cases] is 25 percent of the recovery obtained" and that such a fee may be presumptively reasonable. *Vizcaino,* 290 F.3d at 1047. But the benchmark is a "non-binding and informal guideline," and need not be applied. *In re Google Play Dev. Antitrust Litig.*, No. 20-cv-05792-JD, 2024 WL 150585, at *3 (N.D. Cal. Jan. 11, 2024); *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 WL 3688452, at *13 (N.D. Cal. May 25, 2023) (describing the 25% benchmark as "a starting point" that "should be adjusted when the percentage recovery would be 'either too small or too large in light of the . . . relevant factors.'"). Courts consider several factors when determining the appropriate fee percentage to award, including: (1) the result achieved; (2) the risk Plaintiffs' Counsel experienced; (3) "whether counsel's performance generated benefits beyond the cash settlement fund;" (4) the "market rate," *i.e.*, awards made in similar cases; (5) the "burdens class counsel experienced while litigating the case;" and (6) the contingent nature of the representation. *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 631 (N.D. Cal. 2021); accord *Vizcaino*, 290 F.3d at 1048-50. Each factor weighs in favor of a fee award of approximately 32.5%.

---

[2] Should any objections be filed, Class Counsel will address them in their reply memorandum.

**a. Plaintiffs' Counsel achieved an excellent result for the Class**

"The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class." *Lowery v. Rhapsody Int'l*, 75 F.4th 985, 988 (9th Cir. 2023). Plaintiffs' Counsel recovered a total of $59,500,000 from Google, Flo, and Flurry in Settlements. After accounting for expenses and court-approved awards, Class Counsel and A.B. Data estimate that, assuming a 10% claims rate, the average recovery per Class Member on a *pro rata* basis will be $31.94; if Plaintiffs obtain a claims rate of 25%, the average recovery per Class Member is estimated to be $12.69. ECF No. 820-12 ¶ 58. The payment Class Members can expect to receive is in line with, if not better than, individual payments made in other consumer privacy and health-related settlements. *See*, *e.g.*, *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015) (approving settlement of $14.81 per claimant); *see also* ECF No. 820-8 (Plaintiffs' Chart of Selected Comparable Case Outcomes). Should the claims rate go below 10%, the per claimant recovery will rise. Further, any uncashed payments after 60 days will be reallocated *pro rata* among Authorized Claimants who negotiated their Claim Payments, so long as the reallocated *pro rata* share to each eligible Authorized Claimant is at least $5.00. *See* Google Settlement Agreement § 9(I)(vii); Flo Settlement Agreement ¶ 48(g); Flurry Settlement Agreement § 9(F)(vi). Class Counsel's work also laid the groundwork for their success at trial, enabling California Subclass Members to obtain a substantially larger recovery when judgment is entered on the verdict against Meta.

Moreover, the Settlements lack any evidence of collusion that could lead the Court to doubt the Settlements' fairness, reasonableness, and adequacy. *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (holding that the heightened inquiry of pre-certification settlements described in *In re Bluetooth*, 654 F.3d at 947 similarly applies to post-certification settlements). Here, the Court will ultimately determine the fee awarded to Plaintiffs' Counsel, but Class Counsel have committed that such fees will not exceed approximately 32.5% of the total Settlements (Joint Decl. ¶ 66), which is within the range of court-awarded attorneys' fees. *See infra*. Further, the Settlement Agreements do not contain "clear sailing" provisions and are non-reversionary. Google Settlement Agreement §§ 2(B), 11(F); Flo Settlement Agreement ¶¶ 2, 65; Flurry Settlement Agreement §§ 3, 12.

The results also must be viewed in relation to the strength and skill of the opponent and their counsel. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *20 (C.D. Cal. June

10, 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly"). Google, Flo, and Flurry have been represented by top-tier counsel. Joint Decl. ¶ 64. They left no stone unturned in defense of their clients on every procedural and substantive issue. That Plaintiffs' Counsel obtained the three Settlements despite the skill and experience of Google, Flo, and Flurry's Counsel further highlights the excellent resolution.

**b. The risks Plaintiffs' Counsel encountered at the outset and during the case support the requested fee**

Courts evaluate "the strength, both legal and factual, of the case . . . from the 'outset' of litigation" to assess the risks faced by counsel in deciding to pursue the action. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1009 (9th Cir. 2002). Additional courts consider whether the action raises a novel theory or is supported by precedent, the impact of court decisions on the viability of the case, and the level of opposition from defendants. *Vizcaino*, 290 F.3d at 1048 (considering in its risk analysis the absence of supporting precedents, negative district court rulings, and defendant's vigorous opposition).

The risks involved with bringing this case were considerable. Pursuing claims of alleged violations of the Confidentiality of Medical Information Act ("CMIA"), CIPA, the California Computer Data Access and Fraud and Abuse Act ("CDAFA"), the Federal Wiretap Act, and the California Unfair Competition Law ("UCL") on behalf of the Class was always going to be a challenging endeavor, particularly given the developing nature of the case law in the data privacy context. *See, e.g.*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) (granting motion to dismiss, among others, Federal Wiretap Act, CIPA, UCL claims); *Katz-Lacabe v. Oracle Am., Inc.*, No. 3:22-cv-04792-RS, 2024 WL 4804974, at *3 (N.D. Cal. Nov. 15, 2024) ("Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel." ) (quoting *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022)).

Ninth Circuit courts have concluded there are considerable risks related to obtaining class certification, surviving summary judgment, prevailing at trial, and withstanding a potential appeal. *See In re Apple Inc. Device Performance Litig.,* No. 5:18-md-02827-EJD, 2023 WL 2090981, at *14 (N.D. Cal.

Feb. 17, 2023) (substantial risks found where plaintiffs "faced risks attendant to prosecuting a case with relatively unique subject matter involving application of statutory computer intrusion and common law trespass to chattels to iPhone devices"); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (noting the class certification risk).

Defendants presented formidable arguments at class certification, vigorously contesting every argument Class Counsel presented in support of certifying the Class, and presented robust arguments that summary judgment was warranted. ECF Nos. 491; 528; 536. As trial approached, both Flo and Google raised issues that, if credited, would have significantly limited the damages available in the case. Flo moved for judgment as a matter of law at trial on the CMIA claim, the only claim against Flo with statutory damages. ECF No. 751 at 1094:15-1095:3. The Court allowed briefing on the matter but noted it was inclined to grant Flo's motion. *Id*. at 1104:3-7. An adverse ruling would likely have limited the Class to claims against Flo that allowed only for nominal damages. Joint Decl. ¶ 55. In a similar vein, Google argued that it did not use or intend to record Flo users' data (*id.* ¶ 27); it also supplemented its interrogatory responses prior to trial and claimed that it had data for only 1.3 million unique Flo App users nationwide. Joint Decl. ¶ 52. If Google's count was accurate, the number of California Subclass Members would have been smaller. *Id.* As the remaining certified claims against Google involved only California Subclass Members, the damages attributable to Google at trial would have been significantly less. *Id.* ¶¶ 26, 52.

Notwithstanding the risks, Class Counsel implemented a comprehensive strategy, pressing advantages when possible, and tactically reacting to challenges presented by Defendants. Their willingness to overcome the risks led to achieving the Settlements before the Court and the verdict against Meta. Plaintiffs' Counsel's efforts in spite of these risks amply support awarding the requested fee.

**c. Plaintiffs' Counsel's work created precedent-setting benefits that further justify the requested fee**

As noted above, depending on the claims rate, Class Members are estimated to receive between $12.69 and $31.94. ECF No. 820-12 ¶ 58. On top of this, Class Counsel won a jury verdict against Meta at the conclusion of trial, which is expected to culminate in a judgment against Meta that, if entered and affirmed, would provide $5,000 to each California Subclass Member that files a valid claim. *See* Cal. Penal Code § 637.2(a). However, the impact of Plaintiffs' Counsel's efforts is not simply limited to the

money that will be recovered in this case. Class Counsel's jury verdict is historic and has reset the expectations for data privacy prosecutions.

To Class Counsel's knowledge, this case is one of the first times that a major tech company has been found liable at trial for violating wiretapping laws. This has had major implications regarding the protection of communications online. After two years of debate, and concerns from courts in this District about the application of CIPA to the Internet (*see, e.g., Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1111 (N.D. Cal. 2025), the Assembly Committee on Privacy and Consumer Protection of the California State Legislature passed an updated version of S.B. 690, a bill initially introduced by Big Tech-backed lobbying groups to "reform" CIPA by exempting any data collected for a commercial purpose (i.e., online tracking) from its protection. Drawing on the long tradition of privacy rights in California, the committee's legislative analysis rejected this broad exemption for commercial surveillance and reaffirmed the statute's protection of the Internet citing *this case* as an example of why such protections are not just wanted but necessary. S.B. 690, 2025-2026 Sess., at 22 (Cal. 2026) ("Like the wiretapping statute, this statute has long been understood to apply to illicit recordings of online communications, which can entail egregious privacy violations – as was the case in the recent litigation in which Meta collected sensitive reproductive information from the Flo app.").

**d. Fee awards in similar cases confirm that the requested fee is reasonable**

Class Counsel is requesting a 20% fee from the Flurry Settlement and a one-third fee from the Google and Flo Settlements. Joint Decl. ¶ 66. The Flurry percentage is smaller because, at the time of the Flurry Settlement, there were no other settlements, and the Settlement Fund would have been modest. A review of similarly sized settlements in data privacy cases supports Class Counsel's view that the requested fee award is within the range of reasonable market rates. *See, e.g.*, *In re TikTok*, 617 F. Supp. 3d at 942 (awarding 33% of $92 million settlement after three years of litigation, recognizing that "[t]he need to provide financial incentives for zealous and effective representation of consumers in legally and technologically complex data privacy cases such as this…"); *Barrett v. Apple Inc.*, No. 5:20-cv-04812-EDJ, 2025 WL 1002786, at *2 (N.D. Cal. Apr. 3, 2025) (awarding 33.33% of $35 million settlement in consumer data privacy class action); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL

4620695, at *1 (N.D. Cal. Sept. 20, 2018) (awarding one-third of $104.75 million settlement); *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, No. CV 16-03157 PSG (JEMx), 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) (awarding 33% of the $70 million settlement as attorney fees, noting that the litigation had extensive discovery and counsel faced significant risks litigating unprecedented issues); *In re Facebook Internet Tracking Litig.*, No. 5:12-MD-02314-EJD, 2022 WL 16902426, at *10-13 (N.D. Cal. Nov. 10, 2022) (awarding fees totaling 29% of $90 million settlement).

**e. The burdens Plaintiffs' Counsel experienced in litigating this Action combined with the contingent nature of the representation weigh in favor of the proposed fee.**

Plaintiffs' Counsel invested substantial time and resources to achieve the Settlements (and the jury verdict). Their efforts included extensive research and investigation that led to drafting the initial complaints and the Consolidated Class Action Complaint, and were significant factors in the Court largely denying Defendants' motions to dismiss the Amended Complaint. Joint Decl. ¶¶ 10-13.

From there, Plaintiffs' Counsel pivoted to an extensive discovery process, which included serving on Defendants more than 400 requests for production of documents, 45 interrogatories, and 240 requests for admission and issuing six third-party subpoenas. Joint Decl. ¶ 14. In turn, Plaintiffs' Counsel received and responded to 119 requests for production, 37 interrogatories, and 138 requests for admission *for each Plaintiff*. Joint Decl. ¶ 15. Class Counsel deposed 13 current and former employees of Defendants and took five Rule 30(b)(6) depositions, spending significant time preparing for each deposition and reviewing transcripts after the fact. Joint Decl. ¶ 18. Plaintiffs' Counsel also prepared and defended each of the eight Plaintiffs at her deposition. Joint Decl. ¶ 18.

Expert discovery and class certification work was even more extensive as Class Counsel performed that work not once, but twice, after the Court terminated the initial class certification and *Daubert* motions. Joint Decl. ¶¶ 21-24. Google, Meta, and Flo each filed summary judgment motions, which Class Counsel opposed with comprehensive arguments that largely prevailed in front of the Court. Joint Decl. ¶¶ 27-31. After the Court certified the Class and largely rejected Meta and Flo's motions for summary judgment at the end of May 2025, Class Counsel quickly prepared for trial on an expedited schedule under which trial began just two months later. Class Counsel negotiated with Google, Meta, and Flo over the parameters of

the Notice issued to the Class. Joint Decl. ¶ 32. Meanwhile, Class Counsel prepared for trial, identifying relevant exhibits, designating deposition testimony, preparing motions in limine, voir dire, jury instructions, verdict forms, the trial brief, and other pretrial submissions, and preparing for direct and cross-examination of witnesses. Joint Decl. ¶ 33. Trial lasted two weeks and required tremendous energy and focus not just from the trial lawyers in the courtroom, but from the team of attorneys and staff supporting the case. Class Counsel simultaneously negotiated and reached a settlement with Google right before trial began and with Flo as trial was ongoing. Joint Decl. ¶¶ 39, 42.

This work is quantitatively reflected in the hours, lodestar and expenses incurred by Plaintiffs' Counsel. *See infra*; *see also* Joint Decl. ¶¶ 68-71; Levis Decl.; Villegas Decl.; Zinser Decl.; Williams Decl.; Harris Decl.; and Gallucci Decl. Plaintiffs' Counsel pooled their resources to vigorously prosecute Plaintiffs' and the Class's claims. Class Counsel coordinated their efforts and the efforts of other Plaintiffs' Counsel to ensure there was an efficient and effective allocation of resources to the appropriate tasks. But the efforts to properly litigate this case meant that Plaintiffs' Counsel could not expend those resources elsewhere during the years the case was ongoing. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015) ("the burdens class counsel experienced while litigating the case" include the cost of "foregoing other work"). Further, there was no guarantee that Plaintiffs' Counsel would receive compensation for any of their work. Class Counsel took this case on a contingent basis, knowing the risks and uncertainties associated with the claims they pursued. But for Class Counsel's ability to expertly pursue this case and achieve favorable Settlements (along with an extraordinary jury verdict), the investment by Plaintiffs' Counsel of their time and resources could have been a total loss. Accordingly, the litigation burdens and contingency risk weigh in favor of the proposed fee award.

#### 2. **Applying the Lodestar Cross-Check Further Bolsters the Reasonableness of the Proposed Fee Award**

Ninth Circuit courts may consider plaintiffs' counsel's lodestar to "provide[] a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "There is a strong presumption that the lodestar is a reasonable fee." *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016). The lodestar is calculated by multiplying the hours reasonably spent by reasonable hourly rates. *In re Bluetooth*, 654 F.3d at 941; *Stetson*, 821 F.3d at 1165–67. In this context, the lodestar cross-check strongly supports awarding

an above-benchmark blended fee of ~32.5%.

Collectively, Plaintiffs' Counsel have devoted a total of 50,164.10 hours on this Action from its inception through July 31, 2025. Joint Decl. ¶ 71. The total hours spent in this litigation compare favorably to the hours approved in other large-scale class action cases, some of which concluded without ever reaching day one of trial, much less completing a full trial. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-MD-02843-VC, 2023 WL 8445812, at *1-2 (N.D. Cal. Oct. 10, 2023) (performing lodestar analysis and characterizing counsel's 149,928 hours of work over 4.5 years of litigation as "reasonable [ ] because this litigation has been unusually prolonged and contentious"); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d at 631 (finding that counsel reasonably spent 30,103.80 hours over six years to litigate the case through class certification and a related appeal and negotiate the settlement)*, aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022). Many of the hours worked in this case are attributable to discovery, class certification, motion practice, and trial work,[3] which efforts were extremely contentious and/or resource intensive, as the Court personally observed. *See* ECF No. 246 (the Court's order re discovery dispute process). In addition, thousands of hours also had to be spent researching and refining the legal claims, propounding and responding to numerous sets of discovery, reviewing documents, briefing arguments, preparing for and taking depositions, working with experts, certifying the litigation class and taking the case to trial. This investment resulted in favorable Settlements and the verdict reached by the jury against Meta. Under any analysis, the Court should find that the reported hours were reasonably spent.

Further, the hourly rates used to determine the lodestar for Plaintiffs' Counsel are reasonable as well. The lodestar has been calculated using current rates. *See Stetson*, 821 F.3d at 1166 (lodestar is calculated "either using an hourly rate that reflects the prevailing rate as of the date of the fee request, to compensate class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime-rate enhancement."). And the rates themselves are consistent with rates Plaintiffs' Counsel have used in other similar cases. *See* Levis Decl. ¶ 7; Villegas Decl. ¶ 7;

[3] These hours are reflected under categories 3, 4, 5, 7, 10, and 11 of the Cumulative Lodestar by Task Code chart, attached to the declaration of each Plaintiffs' Counsel.

Zinser Decl. ¶ 7; Williams Decl. ¶ 6; Harris Decl. ¶ 7; and Gallucci Decl. ¶ 7. Courts in this District have approved similar rates in complex class actions. *See In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates of $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals); *Barrett*, 2025 WL 1002786, at *3 (granting motion for attorneys' fees where hourly rates charged by attorneys range from $500 to $1,545); *In re JUUL Labs, Inc., Mktg., Sales Prac. & Prod. Liab. Litig.,* No. 19-md-02913-WHO, 2023 WL 11820531, at *2 (N.D. Cal. Dec. 18, 2023). Accordingly, the Court should conclude that the lodestar is reasonable.

When the requested fee of $19,366,666.67 is divided by the total lodestar of $42,595,383.00, the resulting lodestar multiplier is 0.45. Courts have found that negative lodestar multipliers are "presumptively reasonable in the Ninth Circuit." *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, No. 22-CV-03023-TLT, 2025 WL 3546227, at *11 (N.D. Cal. Dec. 4, 2025); *Grace v. Apple, Inc.*, No. 17-CV-00551-LHK, 2021 WL 1222193, at *5 (N.D. Cal. Mar. 31, 2021) (multiplier of 0.72 "confirms that the 28 percent award to Class Counsel under the percentage-of-the-fund method is not excessive"); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *11 (N.D. Cal. July 22, 2019) ("'[m]ultipliers of 1 to 4 are commonly found to be appropriate in common fund cases. . . .' Thus, a multiplier below 1.0 is below the range typically awarded by courts . . . ."). The same rationale applies here and supports granting Class Counsel's requested fee award.

### B. The Litigation Expenses Incurred by Plaintiffs' Counsel Are Reasonable and Appropriate for Reimbursement from the Common Fund

Class Counsel request a total of $2,091,517.74 for expenses incurred to prosecute this action from inception through July 31, 2025, the date on which the presentation of evidence at the jury trial concluded. Joint Decl. ¶¶ 72-75. Descriptions of the expenditures by category are provided in the accompanying declarations. *See* Levis Decl. ¶ 18; Villegas Decl. ¶ 12; Zinser Decl. ¶ 12; Williams Decl. ¶ 12; Harris Decl. ¶ 13; and Gallucci Decl. ¶ 12. This reimbursement request is less than the $3,600,000 indicated in the Long-Form Notice of the Settlements to the Class. *See* Littrell Decl., Ex. I at 11. In common fund cases "[c]lass counsel is entitled to reimbursement of reasonable expenses." *In re Lidoderm*, 2018 WL 4620695, at *4 (quotation omitted); *see also Schneider v. Chipotle Mexican Grill, Inc.,* 336 F.R.D. 588

(N.D. Cal. 2020) ("Class Counsel is entitled to recover those out-of-pocket expenses that would normally be charged to a fee-paying client").

Plaintiffs' Counsel incurred approximately 45.49% of their costs ($951,491.11) in connection with retaining experts and consultants to address class and merits issues. Litigation support and document hosting costs, which include expenses associated with document discovery, represented 10.76% of total Litigation Expenses. Joint Decl. ¶ 75. Travel costs (both for local and out-of-town work), including those related to the trial team relocating to San Francisco and litigating out of a temporary "War Room," represent 16.96% of the total. Mediation fees, witness, service, and filing fees, computer research, deposition and transcript costs, and duplicating costs (for in-house and outside copying) represent the remainder of the expenses incurred. *Id.* Additional details for certain expenses are provided in the declarations from each Plaintiffs' Counsel. Such expenses are typically and regularly reimbursed in complex class action cases. *See In re Lidoderm*, 2018 WL 4620695, at *4 (awarding expenses for filing fees, computerized research, copies, postage and messenger services, document hosting services, experts, sales data purchased from third parties, transcripts, translations of documents, case-related travel, and distributing notice of the court's certification order). Class Counsel request that the Court similarly grant the requested reimbursement of Litigation Expenses.

### C. Plaintiffs' Efforts in This Action Merit Granting the Proposed Service Awards

The outstanding Settlements recovered from Google, Flo, and Flurry, and the extraordinary trial verdict obtained by Plaintiffs' Counsel in the Action against Meta would not have been possible without the efforts and dedication of all eight named Plaintiffs. Perhaps more than in most class actions, serving as a named plaintiff in this data privacy case came with highly personal risks and potentially daunting obligations, including having to publicly discuss personal pregnancy and menstruation information to prevail on the various claims. Despite this, all eight Plaintiffs agreed to be named in the Action, and Plaintiffs Wellman, Chen, Gamino, Frasco, and Meigs were appointed Class Representatives. They welcomed the opportunity to help ensure that Defendants were taken to task for their alleged disclosure of women's personal health information. Their efforts and the risks they endured provide an ample basis for granting their requests for Service Awards. Joint Decl. ¶ 78. Accordingly, Plaintiffs Wellman, Chen,

Gamino, Frasco, and Meigs seek awards of $25,000 each and Plaintiffs Pietrzyk, Ridgway, and Kiss seek awards of $10,000. The total Service Awards request is $155,000, consistent with the information provided in the Notice to the Class. *See* Joint Decl. ¶ 79; Littrell Decl., Ex. I at 11. To date, no Class Member has objected to the proposed Service Awards.

"Service awards 'are fairly typical in class action cases' and are 'intended to compensate class representatives for work undertaken on behalf of the class.'" *Baker v. Save Mart Supermarkets*, No. 1:22-cv-4645-RMI, 2025 WL 4692691, at *5 (N.D. Cal. Sept. 16, 2025) (quoting *In re Online DVD-Rental*, 779 F.3d at 943). "Courts have discretion to approve service awards and consider such factors as: '1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.'" *Id.* (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)). In granting such awards, courts remain concerned with ensuring that "there needs to be a good reason" to grant an award to a named plaintiff that will be greater than what absent class members may receive. *Arnold v. DMG Mori USA, Inc.*, No. 18-cv-02373-JD, 2022 WL 18027883, at *6 (N.D. Cal. Dec. 30, 2022).

While the service awards Plaintiffs seek may be greater than what is normally awarded, "a higher award may be appropriate where class representatives expend significant time and effort on the litigation and face the risk of retaliation or other personal risks; where the class overall has greatly benefitted from the class representatives' efforts; and where the incentive awards represent an insignificant percentage of the overall recovery." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020).

As reflected in Plaintiffs' accompanying declarations (*see* Chen Decl. ¶¶ 6-12; Frasco Decl. ¶¶ 6-12; Gamino Decl. ¶¶ 6-12; Kiss Decl. ¶¶ 6-12; Meigs Decl. ¶¶ 6-12; Pietrzyk Decl. ¶¶ 6-12; Ridgway Decl. ¶¶ 6-12; and Wellman Decl. ¶¶ 6-12), such reasons are present here. As a baseline, all Plaintiffs fulfilled their obligations as named plaintiffs by providing detailed facts and information concerning their use of and the information stored on the Flo App. They each regularly communicated with Plaintiffs'

Counsel throughout the litigation, searched for and produced responsive documents, responded to interrogatories, and sat for depositions that required them to discuss private and personal health information. For more than five years, each Plaintiff stayed informed about case developments and routinely reviewed the various pleadings filed in this Action. The certified Class Representatives of the nationwide class, Plaintiffs Wellman, Chen, Gamino, Frasco, and Meigs, invested more time and effort and experienced even greater risks; they each testified at trial and were involved in extensive preparation to ensure they could tell their stories to the jury. Joint Decl. ¶ 76.

Accordingly, the proposed Service Awards have been calibrated based on the extent of each Plaintiffs involvement in the case and the impact of that work. Class Counsel request a $25,000 service award for each certified Class Representative. These five Plaintiffs (Wellman, Chen, Gamino, Frasco, and Meigs) invested the greatest amount of time and effort in the Action and accepted the most significant personal risk by standing up in front of a jury and placing on the public record the private and potentially intimate details of their personal health information to assist Class Counsel in prosecuting the case.

As for Plaintiffs Pietrzyk, Ridgway, and Kiss, while they were exposed to fewer personal risks and less public scrutiny than the five Class Representatives, their involvement and efforts were nonetheless critical to advancing the case up to and through class certification, and helped lay the groundwork for the Settlements and the successful trial outcome. Accordingly, Class Counsel request an award of $10,000 for these three Plaintiffs.

Courts are concerned with awarding "oversized payments" because those payments far outstrip what absent class members will recover. *See, e.g., Norcia v. Samsung Telecomm. Am., LLC*, No. 14-cv-00582-JD, 2021 WL 3053018, at *5 (N.D. Cal. July 20, 2021) ("Still, [a service award of] $7,500 is too high, especially in comparison to the $10 that each of the other class members will be receiving. The Court awards $3,000 . . . ."). This concern is less of a factor here because Plaintiffs' service was substantially different in scope and in character than a traditional named plaintiff role in a case that settles early or never reaches trial. The Ninth Circuit directs that courts conduct a holistic analysis and has been critical of approaches that look primarily to the proportionality between a service award and what individual class members receive. *See In re Online DVD-Rental*, 779 F.3d at 948 ("While it is true that a $5,000 incentive

award is roughly 417 times larger than the $12 individual award, we focused less on that fact in [*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)] and more on the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards."). Here, there are eight Plaintiffs and the requested Service Awards, totaling $155,000, represent only 0.26% of the Settlements. *Id.* at 948 (awarding a total of $45,000 to nine class representatives finding that the awards made up a "mere .17% of the total settlement fund"). Further, none of the Plaintiffs intend to seek further Service Awards in connection with any judgment entered in connection with the Meta verdict.

Plaintiffs' efforts were an invaluable contribution to the Action and directly enabled Class Counsel to obtain these Settlements, as well as the precedent-setting verdict against Meta, and the expected judgment in favor of California Subclass Members. Absent class members will reap the fruits of their labor without having had to expose any of their personal pregnancy and/or menstruation information, and without having to endure the intrusion and personal embarrassment that could arise while being questioned on such private information. Plaintiffs provided a tremendous service to the Class in taking that difficult and potentially uncomfortable burden off Class Members' shoulders. It is this context, combined with all of Plaintiffs' efforts, that supports granting the awards. Plaintiffs should be compensated not just for their efforts but for the nature of those efforts, willingly discussing their health information to vindicate the rights of the entire Class. *See Cancilla v. Ecolab, Inc.*, No. 12-cv-03001-JD, 2016 WL 54113, at *4 (N.D. Cal. Jan. 5, 2016) ("In rare circumstances, there can be factors that warrant the award of additional money to the named representatives above and beyond what the rank-and-file class members get.").

## III. **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court enter an order: (1) awarding attorneys' fees of $19,366,666.67 (approximately 32.5% of the $59,500,000 Settlement Fund), plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; (2) awarding reimbursement of litigation expenses of $2,091,517.74, plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; and (3) approving service awards for Plaintiffs Wellman, Chen, Gamino, Frasco, and Meigs of $25,000 and for Plaintiffs Pietrzyk, Ridgway, and Kiss of $10,000, for a total of $155,000.

Dated: August 20, 2026

Respectfully submitted,

/s/ Christian Levis
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tele: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
mmaclean@lowey.com

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
Danielle Mazzeo (*pro hac vice*)
Gloria J. Medina (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com
dimazzeo@labaton.com
gmedina@labaton.com

Diana J. Zinser (*pro hac vice*)
Jeffrey J. Corrigan (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, PC**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law
jcorrigan@scc.law

*Co-Lead Class Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835

San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@wvbrlaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Ronald A. Marron (SBN 175650)
Alexis M. Wood (SBN 270200)
Kas L. Gallucci (SBN 288709)
**MARRON PC**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (772) 783-8436
kent.williams@sirillp.com

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, Ohio 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*