**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Michele D. Johnson (SBN 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235

Melanie M. Blunschi (SBN 234264)
*melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.395.5942

**GIBSON, DUNN & CRUTCHER LLP**
Christopher Chorba (SBN 216692)
*cchorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7396

Elizabeth K. McCloskey (SBN 268184)
*EMcCloskey@gibsondunn.com*
Abigail A. Barrera (SBN 301746)
*ABarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200

*Attorneys for Defendant Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ERICA FRASCO, et al.,

Plaintiffs,

v.

FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., and FLURRY, INC.,

Defendants.

CASE NO. 3:21-cv-00757-JD (consolidated)

**META PLATFORMS, INC.'S EMERGENCY MOTION TO TERMINATE AND RETRACT UNAUTHORIZED CLASS NOTICE UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(d)(1) AND FOR ADDITIONAL RELIEF**

Judge: Hon. James Donato
Courtroom: 11 – 19th Floor
San Francisco Courthouse
Date: October 29, 2026
Time: 11:00 a.m.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on October 29, 2026, at 11:00 a.m., the undersigned will appear before the Honorable James Donato of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and shall then and there present this motion for relief under Federal Rule of Civil Procedure 23(d)(1) on behalf of Defendant Meta Platforms, Inc.

Meta brings this motion under Rule 23(d)(1) for an order:

(1) directing plaintiffs, the Court-appointed claims administrator (A.B. Data, Ltd.), and ClaimScore LLC d/b/a Covalynt to include Meta in their communications about efforts to enrich the Flo data, class notice, and the post-trial process, consistent with the Court's instructions;

(2) directing Covalynt to provide Meta with the methodology, results, analysis, underlying data, and communications with plaintiffs and A.B. Data about its efforts to enrich the Flo data;

(3) directing that A.B. Data and Covalynt act as neutral and independent entities not at the unilateral direction of any party;

(4) prohibiting plaintiffs, A.B. Data, and any other person or entity acting on their behalf from sending text message or other class notice to actual or potential class members (or any further notice communications) without this Court's approval;

(5) directing plaintiffs to issue a written retraction to the same recipients who received the unauthorized and inaccurate text message notice (and to all recipients who received any other unapproved notices), all at plaintiffs' counsel's own expense, and not to be reimbursed by any of the defendants; and

(6) directing plaintiffs to disclose (a) how many notices have been issued to potential class members that included language referencing Meta that differed from the language the Court approved; (b) all versions of such language that were included in any notice; (c) a list of all individuals who received such notices, as well as whether the notices were directed to potential California class members or to all potential nationwide class members; (d) the specific individuals who drafted, reviewed, and/or approved such notices; (e) whether the individuals to whom such notices were directed were identified from the results of A.B. Data's and Covalynt's

enrichment efforts, the results of Meta's analysis of the Flo data provided to A.B. Data on July 16, 2026, or a combination of both and/or some other source of data; (f) the different forms of notice (e.g., text message, email) that were sent including this language; and (g) the timing of when the notices containing this language were sent.

This motion is based on this notice of motion, the following memorandum of points and authorities and the exhibits attached thereto, the pleadings and other papers filed in this action, any oral argument, and any other evidence that the Court may consider in deciding this motion.

**ISSUES PRESENTED**

- Whether plaintiffs have compromised the integrity of the post-trial process by separately retaining Covalynt and directing A.B. Data to send unauthorized text message notices to potential class members.
- Whether plaintiffs have violated the Court's orders by refusing to work cooperatively with Meta regarding analysis of the Flo data and the post-trial process.
- Whether plaintiffs and A.B. Data have violated the Court's orders by sending unauthorized text message notice to potential class members containing false and misleading information about the jury verdict against Meta.

Dated: September 8, 2026

*/s/ Christopher Chorba*
**GIBSON, DUNN & CRUTCHER LLP**
Christopher Chorba (SBN 216692)
*cchorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7396

Elizabeth K. McCloskey (SBN 268184)
*EMcCloskey@gibsondunn.com*
Abigail A. Barrera (SBN 301746)
*ABarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200

LATHAM & WATKINS LLP
Andrew B. Clubok (pro hac vice)
*andrew.clubok@lw.com*

555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Michele D. Johnson (SBN 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235

Melanie M. Blunschi (SBN 234264)
*melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.395.5942

*Counsel for Defendant Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. Plaintiffs Have Excluded Meta From the Post-trial Process ..... 3

B. Plaintiffs Conscripted A.B. Data To Send Unauthorized and Inaccurate Class Notice ..... 6

1. The Court Approved Detailed Notice Plans That Do Not Include Text Messages ..... 6

2. Plaintiffs Directed A.B. Data To Send Unauthorized, Inaccurate Text Messages ..... 7

III. LEGAL STANDARD ..... 9

IV. ARGUMENT ..... 9

A. Plaintiffs' Engagement of Covalynt Has Compromised Its Neutrality, Undermined Transparency, and Hindered Cooperation Between the Parties ..... 9

B. The Unauthorized and False Text Notice Also Warrants Immediate Court Intervention ..... 11

1. Plaintiffs and A.B. Data Violated Court Order(s) by Sending the Text Messages ..... 11

2. The Representation About the Meta Verdict Is False and Misleading ..... 12

3. Relief Is Needed to Stop Ongoing Harm to Potential Class Members and Meta ..... 14

C. The Requested Relief Is Consistent with Prior Orders and Will Advance the Litigation ..... 15

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred v. Pepperidge Farm, Inc.*,
2020 WL 13587900 (C.D. Cal. Apr. 14, 2020) ....................13

*Erhardt v. Prudential Grp., Inc.*,
629 F.2d 843 (2d Cir. 1980)....................9

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981)....................9

*Livingston v. MiTAC Digital Corp.*,
2019 WL 8504695 (N.D. Cal. Dec. 4, 2019)....................12

*McHorney v. GameStop Corp.*,
2010 WL 11549399 (C.D. Cal. June 17, 2010) ....................12

*Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*,
2016 WL 4080294 (N.D. Cal. July 29, 2016)....................12, 14

*Yow v. Nat'l Enquirer, Inc.*,
550 F. Supp. 2d 1179 (E.D. Cal. 2008)....................14

**Rules**

Federal Rule of Civil Procedure 23....................9, 11, 12

# I. INTRODUCTION

After months of stonewalling and obfuscation from plaintiffs—and, it turns out, their paid consultant, Covalynt (a/k/a ClaimScore)—it has become clear that Meta has no choice but to seek relief from this Court. Meta has done everything in its power to comply with this Court's express orders directing the parties to "work cooperatively" to move the post-trial process forward. Dkt. 791. But plaintiffs have done the opposite, including by co-opting the Court-appointed claims administrator (A.B. Data) and the third party meant to assist the administrator with fraud detection and claims validation (Covalynt) to do plaintiffs' bidding, conceal data from Meta, and send misleading and unauthorized text messages to untold numbers of people in the guise of notice. This Court should intercede and end plaintiffs' disingenuous and counterproductive conduct.

In violation of this Court's orders, plaintiffs have refused to collaborate with Meta for months on the Flo data, class notice, and post-trial process. Instead, plaintiffs have been working to undermine the post-trial process by separately retaining Covalynt—a firm plaintiffs previously told the Court that A.B. Data, not plaintiffs, had retained to "assist with fraud detection" (Dkt. 785 ¶ 40)—and instructing Covalynt not to provide information to Meta. *See* Declaration of Christopher Chorba ("Chorba Decl.") ¶¶ 4, 14, 18–22. That separate retention agreement has created an obvious conflict of interest that compromises Covalynt's neutrality and the integrity of the entire post-trial process. It has also emboldened plaintiffs' counsel to resist Meta's legitimate requests for transparency by purporting to cloak Covalynt's data analysis in "work-product" protection—despite Covalynt previously representing to the Court and Meta that it would "provide the backup data, *so anyone, everyone*, can get comfortable with [its] determinations" about fraudulent claims. Dkt. 792 at 33:15-17 (emphasis added). Consistent with its prior orders, the Court should require plaintiffs, A.B. Data, and Covalynt to include Meta in discussions about the Flo data and post-trial process, require full disclosure of Covalynt's methodology, analysis, results, data, and communications with plaintiffs and A.B. Data about its enrichment efforts, and prohibit Covalynt from acting at the unilateral direction of any party.

A.B. Data, too, has failed to act as a neutral arbiter. At some point after A.B. Data received data about potential class members from Flo and further data and analysis from Meta, plaintiffs' counsel caused A.B. Data to send—on plaintiffs' behalf—text messages directly to an unknown

number of people with the following inaccurate message:



**Message from Labaton Keller Sucharow LLP**
Flo Health App users may be eligible for a share of $59.5 million in settlements. Check your eligibility and file a claim at: https://www.periodtrackerdataprivacylitigation.com/processlink?uniqueid=NMXHXPFL&pin=7F4VQT&utm_source=purple_gator

Also, if you lived in California, you may soon be entitled to claim $5,000, minus fees, from a jury verdict against Meta for wiretapping Flo users.
Reply STOP to cancel msg&data rates may apply

Meta learned about this purported class notice when an attorney at Latham & Watkins LLP received this text message and alerted Meta's counsel to the issue. As Flo and Google agree, this notice was sent without authorization and any advance warning—even though the text purports to be notice of their settlements. Indeed, the notice violated this Court's order limiting use of the Flo data and Meta's results in connection with A.B. Data's "Court-approved role in this Action." Dkt. 827 ¶ 6 (order). The notice is also false and misleading, as there was no "wiretapping" verdict against Meta. To the contrary, Meta prevailed at summary judgment on plaintiffs' federal wiretapping claim and at class certification on their CIPA Section 631 wiretapping claim. *See* Dkt. 605 at 32–33; Dkt. 608 at 1. And the Court approved very specific language regarding the Meta verdict to include in the Flo and Google notices, noting that class members would be contacted "later" about that.

Meta immediately raised these issues with plaintiffs' counsel, asking plaintiffs (1) to stop sending unauthorized and inaccurate notice communications to potential class members and (2) for information about the scope of the issue, such as how many texts were sent. Plaintiffs' counsel refused, insisting that they are "free to communicate" with anyone they deem to be purported members of the certified class. But plaintiffs' own contemporaneous representations to this Court belie that unsupported position. Just hours after Meta raised this issue, plaintiffs submitted a declaration from A.B. Data representing that these messages were sent by A.B. Data (not by plaintiffs) and

characterizing the messages as part of a "second notice phase" related to the Flo, Google, and Flurry settlements. In their motion, plaintiffs themselves characterized the text message as part of the "successful[] implement[ation]" of the Court-approved "notice plan." Dkt. 842 at 1–2. And plaintiffs have represented to the Court that they intend to continue such unauthorized class notice—presumably with A.B. Data's help—"through the [October 15, 2026] claims filing deadline." *Id.* at 2.

This issue, too, warrants this Court's immediate intervention. The Court never authorized the form (text message) or content (false and misleading characterization of the jury's verdict) of notice that plaintiffs evidently directed A.B. Data to send on their behalf. To the contrary, the Court directed plaintiffs and A.B. Data to seek Court approval for material changes to the Court-approved notice plan, and restricted A.B. Data's ability to use the Flo data and Meta's results of analyzing that data for only its "Court-approved role in this action." Plaintiffs and A.B. Data have disregarded those orders. The Court should instruct plaintiffs' counsel, A.B. Data, and any other person or entity acting on their behalf to immediately cease from sending further unauthorized and false notice communications, direct plaintiffs' counsel to issue an immediate retraction (at their expense), disclose basic information about the scope of the unauthorized notice communications (including how many notices were sent), and remind A.B. Data of its duty to act as a neutral and independent Court-appointed administrator.

In short, Meta and plaintiffs should be working together, not at loggerheads over basic requests to share critical information. A.B. Data and Covalynt should be acting as neutral arbiters, not plaintiffs' agents. And class notice should be accurate and judicially authorized, to avoid misleading recipients and inviting fraud. Meta respectfully asks this Court to intercede and put this process back on track.

## II. BACKGROUND

### A. Plaintiffs Have Excluded Meta From the Post-trial Process

After plaintiffs settled their claims against defendants Flo, Google, and Flurry, a jury entered a trial verdict against Meta solely on plaintiffs' eavesdropping or recording claim under CIPA Section 632. *See* Dkt. 597; Dkt. 756; Dkt. 834. The Court then ordered plaintiffs and Meta to jointly propose a post-verdict procedure for class members to submit claims. Dkt. 770. The Court appointed A.B. Data to serve as the claims administrator. *See* Dkt. 785; Dkt. 834 ¶ 9. In that role, A.B. Data acts as a neutral agent of the Court, responsible for implementing notification plans in connection with the Flo,

Google, and Flurry settlements and the jury verdict, as well as managing the claims process for those settlements and post-trial process in the case against Meta. *See* Dkt. 785; Dkt. 834 ¶ 9. As part of that process, plaintiffs notified the Court and Meta that A.B. Data (not plaintiffs) had "retained" Covalynt for fraud and claim validation purposes. Dkt. 781-5 ¶ 5; *see also* Dkt. 785 ¶ 40 (similar). Plaintiffs also made clear their agreement that Meta is entitled to "a full and fair opportunity to challenge claims," including by "raising evidence-based challenges" to submitted claim forms. Dkt. 783 at 6.

At the September 30, 2025, hearing, plaintiffs reported that Flo had agreed to provide them with nationwide Flo App user data with fields for: name, email address, device model, device identifiers, and the date that the Flo user completed at least one Flo App onboarding question (the "Flo data"). *See* Dkt. 792 at 6:16–7:10. The Court questioned Bryan Heller of Covalynt directly during that hearing and confirmed with plaintiffs that Covalynt's fees for the settlements would be included in A.B. Data's fees (consistent with A.B. Data's representation to the Court that it had retained Covalynt). *Id.* at 12:15–14:4, 21:6-11. The Court directed plaintiffs and Meta to "meet and confer regarding the data and possible cross-checks and sampling to be conducted by Meta to confirm class membership," and made clear its expectation "that the parties will work cooperatively on these issues" (Dkt. 791) and its desire to "see as many cross-checks as we can possibly have" (Dkt. 792 at 11:25–12:1). The Court directed plaintiffs to "revise the claim form and discuss the notice plan further with Meta." Dkt. 791.

Consistent with the Court's direction at the September 2025 hearing, counsel for Meta repeatedly asked that plaintiffs, A.B. Data, and Covalynt include Meta in their discussions about enriching the Flo data and the post-trial process. For example, during a call nearly a year ago, in November 2025, Meta's counsel asked plaintiffs' counsel to include Meta in plaintiffs' discussions about the Flo data with A.B. Data and Covalynt. Chorba Decl. ¶ 6. Plaintiffs' counsel said the parties should wait to confer on the post-trial process until after plaintiffs had received and processed the Flo data, and plaintiffs agreed to stay in touch with Meta's counsel and work together on that process. *Id.*

On December 5, 2025, the Court approved A.B. Data's sharing of the Flo data with Meta "for the purpose of enriching the user data and improving the proposed notice plan." Dkt. 811. On April 16, 2026, the Court again directed plaintiffs and Meta "to work together and to file expeditiously a proposed order regarding the notice plan and claims procedure to be utilized and relief to be awarded

on the jury verdict." Dkt. 828 at 1. That same day, the Court entered an order providing that Meta would share the results of its analysis of the Flo data with A.B. Data, including providing phone number information and certain other types of data from Meta's systems where available. Dkt. 827 ¶ 6. The Court also directed that A.B. Data "shall not use such data [e.g., the results of Meta's analysis] for purposes other than its Court-approved role in this Action." Dkt. 827 ¶ 7. In accordance with (and reliance on) that order, Meta transmitted its results to A.B. Data on July 16, 2026, which included, among other things, phone number information (which the Flo data did not have). Chorba Decl. ¶ 26 & Ex. F at 3; Dkt. 827 ¶ 6.

All told, Meta completed and shared the results of its analysis of the Flo data in just three months. Chorba Decl. ¶ 23. By contrast, A.B. Data and Covalynt have purportedly been working on the Flo data for nine months and counting. *Id.* ¶¶ 6, 9. Yet they and plaintiffs have largely refused to answer Meta's repeated requests for updates on those efforts. *Id.* ¶¶ 14, 19–22. And contrary to the Court's orders, plaintiffs have also excluded Meta from their discussions with A.B. Data and Covalynt about the Flo data and post-trial process. *Id.* By way of example, Meta's counsel emailed Covalynt, A.B. Data, and plaintiffs' counsel three times in early May 2026, asking for updates on Covalynt's efforts to enrich the Flo data. *Id.* ¶ 14. Meta never received any response to those emails. *Id.* Then, during a call on May 15, 2026, with Meta's counsel, plaintiffs' counsel claimed for the first time that *plaintiffs* had retained Covalynt, such that the results of Covalynt's enrichment work were plaintiffs' "work product" that could not be shared with Meta. *Id.* Meta's counsel expressed confusion about plaintiffs' position and explained that position was inconsistent with plaintiffs' representations to the Court and Meta that the Court-appointed claims administrator, A.B. Data, had retained Covalynt (and not plaintiffs). *Id.* Plaintiffs nevertheless continued to insist that Covalynt's work with the Flo data was their "work product" that would not be shared until after the post-trial process had begun. *Id.*

On July 2, 2026, plaintiffs filed a Motion to Enter Claims Administration and Notice Program. Dkt. 839. That motion was subsequently withdrawn, but it bears mention that, in that filing, plaintiffs falsely claimed that, among other things, "Meta has so far refused to participate in [the Court-ordered enrichment process] in any meaningful way." Dkt. 839 at 3. Plaintiffs also admitted that, unbeknownst to Meta or the Court, plaintiffs had "separately retained" Covalynt "in March 2026 to perform identity

resolution on customer records." Dkt. 839-8 ¶ 3. Plaintiffs withdrew their motion on July 15, 2026. Dkt. 840.

Plaintiffs' stonewalling has continued. Plaintiffs have made clear their position that Meta is not entitled to any of "Covalynt's or A.B. Data's analyses" or "work product," both of which entities plaintiffs now characterize as "Plaintiffs' consultants." Chorba Decl. ¶ 20 & Ex. A at 2–4. And neither Covalynt nor A.B. Data has answered Meta's questions about the results of their enrichment efforts, with Covalynt making clear it could not do so due to its "ret[ention] by plaintiffs' counsel." Chorba Decl. ¶¶ 21–22, Ex. B at 1, Ex. C at 1.

### B. Plaintiffs Conscripted A.B. Data To Send Unauthorized and Inaccurate Class Notice

#### 1. The Court Approved Detailed Notice Plans That Do Not Include Text Messages

The Court preliminarily approved the Flurry settlement on May 15, 2025, and the Google and Flo settlements on April 22, 2026. *See* Dkt. 597; Dkt. 834.

***Flurry notice plan.*** Plaintiffs' proposed notice plan for the Flurry settlement sought approval of only the following forms of notice: email, news release, an "optional paid media campaign," and "digital and/or social media advertising." Dkt. 589-11 at 3–5. Plaintiffs' proposal did not mention text message notice, and the proposed notice language did not refer to any claims or trial against Meta. *See* Dkt. 589. The Court's preliminary approval of the Flurry settlement likewise did not mention text message notice or contain notice language referring to any claims or trial against Meta. *See* Dkt. 597.

***Flo and Google notice plan.*** Plaintiffs' proposed notice plan for the Flo and Google settlements sought approval of only the following forms of notice: email, in-app push notifications, Jewel notice, banner advertising, social media, streaming audio, and print notification. Dkt. 820-12. Again, plaintiffs' proposed notice plan never mentioned text message notice. *See* Dkt. 820. And the proposed notice language contained the following specific language regarding the jury verdict:

> Separate from the allegations against Flurry, Google, and Flo, plaintiffs also alleged that Meta (formerly known as Facebook) unlawfully intercepted Flo App communications in violation of Section 632 of CIPA. A trial between plaintiffs and Meta concluded on August 1, 2025, and the jury returned a verdict in favor of plaintiffs. If you are eligible to receive money from that verdict, you will be contacted at a later time. Your election in response to this Notice will not impact your right to receive money from the Meta verdict.

Dkt. 820-5 at 7; *see also* Dkt. 820-6 at 1 (Short Form Notice stating, in relevant part: "A trial between Plaintiffs and Meta concluded on August 1, 2025, and the jury returned a verdict in favor of Plaintiffs.

If you are eligible to receive money from that verdict, you will be contacted at a later time. Your election in response to this Notice will not impact your right to receive money from the Meta verdict."); Dkt. 820-7 at 1 (same for Email Notice); Dkt. 820-12, Ex. A (banner ads with no mention of Meta).

The Court largely approved plaintiffs' proposed notice plan, "subject to modifications that Plaintiffs and A.B. Data may seek from the Court." Dkt. 834 ¶ 10. The Court also approved "[t]he proposed Long Form Notice, Short Form Notice, Email Notice, and banner ads attached as exhibits to the [Parks Declaration]." *Id.* The Court went on to state that only "[n]on-material modifications," such as "formatting," could be made to the "forms of notice . . . without further order of the Court." Dkt. 834 ¶ 10. The Court directed A.B. Data to "serve and file a sworn statement attesting to compliance with the notice provisions of this Order." *Id.* ¶ 13.

**2. Plaintiffs Directed A.B. Data To Send Unauthorized, Inaccurate Text Messages**

On August 18, 2026, an attorney at Latham & Watkins LLP received the following text message notice, claiming recipients of the text "may soon be entitled to claim $5,000, minus fees, from a jury verdict against Meta for wiretapping Flo users." Chorba Decl. ¶ 27.




The Latham & Watkins attorney shared the text with counsel of record for Meta in this action. *Id.*

This Court never approved this text message class notice. Nor did it approve the language used to describe the jury verdict against Meta, the amount class members may recover as a result of that verdict, or the timing of any such recovery. And there is no "jury verdict against Meta for wiretapping."

In fact, Meta prevailed at summary judgment on plaintiffs' federal wiretapping claim, and the Court denied class certification on plaintiffs' state wiretapping claim (which plaintiffs then abandoned). *See* Dkt. 605 at 32–33; Dkt. 608 at 1; Dkt. 637 at 3–4. The jury verdict pertained only to a separate claim for eavesdropping or recording under CIPA Section 632. *See* Dkt. 756.

On August 20, 2026, shortly after learning of the unauthorized text notice, Meta sent a cease-and-desist letter to plaintiffs. The letter demanded that plaintiffs' counsel stop sending "unauthorized text notices and all other communications with the unapproved" and false language about Meta to potential class members, and asked questions to assess the scope of the issue and protect Meta's rights. Chorba Decl. Ex. D. Later that evening, plaintiffs filed their motion for final approval of the Flo, Google, and Flurry settlements, representing to the Court that the text messages had been sent by A.B. Data (not plaintiffs) as part of a "successful[] implement[ation]" of the Court-approved "notice plan." Dkt. 842 at 1–2; *see also* Dkt. 842-2 ¶ 21 ("On August 18, 2026, A.B. Data sent a text message to some of the individuals in the Flo User List."). Plaintiffs' motion states that they intend to continue sending such text messages "through the claims filing deadline," i.e., October 15, 2026. Dkt. 842 at 2; Dkt. 834 ¶ 17(a). Plaintiffs' August 20 submission included copies of the other notices sent, but failed to include any copy of the text message. *See* Dkt. 842-2, Exs. A–H.

On August 21, 2026, plaintiffs' counsel responded to Meta's cease-and-desist letter, characterizing the text message notice as "our [plaintiffs' counsel's] communications with the class" (rather than class notice communications sent by A.B. Data, per their representation to this Court), and claiming that plaintiffs' counsel are "free to communicate with [purported class members]" without input from any defendant or "pre-approval" from the Court. Chorba Decl. Ex. E at 3. Plaintiffs' counsel stated they "will continue to use all means available . . . to inform Class members and vindicate their rights." *Id.* And while they acknowledged that communications with "false and misleading information . . . clearly raise cause for concern," they disagreed that the text messages contained such information. *Id.* Plaintiffs' counsel did not answer Meta's questions about the text campaign, instead offering only to "resend the texts . . . after changing the word 'wiretapping' to 'recording.'" *Id.*

Meta sent plaintiffs another letter on August 23, 2026. That letter (1) reiterated that the text message notice contained false and misleading information; (2) explained that plaintiffs compounded

the problem by representing the text was part of the Court-approved notice plan in their motion for final settlement approval; (3) explained that A.B. Data appeared to have violated the Court's prior order providing that A.B. Data "shall not use such data [e.g., the results of Meta's analysis of the Flo data] for purposes other than its Court-approved role in this Action"; (4) described the resulting damage to Meta; and (5) requested that plaintiffs let Meta know whether they would agree to issue a retraction, answer Meta's questions about the notice, and stop sending unauthorized notices. Chorba Decl. Ex. F. Counsel for Flo and Google agreed that the text message notice was unauthorized. Chorba Decl. Ex. E at 1. On September 3, 2026, plaintiffs responded, stating they disagreed the text notice was "false, misleading or contrary to any Court order," or that a retraction is warranted. Chorba Decl. Ex. A at 3.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 23(d)(1) provides that a court "may issue orders that," among other things, "impose conditions on the representative parties" and "deal with other similar procedural matters." Fed. R. Civ. P. 23(d)(1). "Because of the potential for abuse [of the class action process], a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). That duty includes the "responsibility . . . to safeguard [class members] from unauthorized, misleading communications from the parties or their counsel." *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980).

## IV. ARGUMENT

### A. Plaintiffs' Engagement of Covalynt Has Compromised Its Neutrality, Undermined Transparency, and Hindered Cooperation Between the Parties

Plaintiffs' separate retention of Covalynt has compromised Covalynt's ability to serve as a neutral fraud detection and claim validation entity charged with assisting the Court-appointed (and purportedly neutral) claims administrator. Plaintiffs' motivation for this subterfuge is not hard to deduce: not only does this side retention incentivize Covalynt to slant towards plaintiffs' interests, it has given plaintiffs their purported basis for asserting "work-product" protection over the methodology, data sources, results, and validation protocols that will ultimately determine Meta's overall damages liability. Plaintiffs have used their retention of Covalynt to repeatedly resist Meta's ongoing requests

for transparency while hypocritically accusing Meta of failing to cooperate. *See supra* at pp. 5–6. As described more fully in the accompanying Chorba declaration, the facts tell a different story:

- Since the September 2025 hearing, when the Court directed Meta's counsel to "take the lead" on discussions with plaintiffs about the Flo data and a notice plan, Meta's counsel has repeatedly sought to engage with plaintiffs, including making numerous requests that plaintiffs share Covalynt's analysis of the Flo data. Chorba Decl. ¶¶ 5–6, 14, 19–22.
- Plaintiffs have consistently rebuffed Meta's requests, excluding Meta from the relevant discussions and refusing to answer Meta's questions about Covalynt's work. *Id.*
- Plaintiffs have also asserted that Covalynt's work was privileged "work product" that could not be shared with Meta, even though Meta repeatedly explained that was contrary to plaintiffs' own prior representations to the Court that A.B. Data (and not plaintiffs) had retained Covalynt. *Id.* ¶ 14.

Simply put, plaintiffs have transformed what was supposed to be a neutral arbiter acting in service of the Court into a biased consultant serving at their direction. That is unacceptable. Covalynt cannot serve as a neutral fraud detection and claims validation mechanism while simultaneously working for—and being paid by—plaintiffs' counsel. As plaintiffs' counsel has represented to the Court, their fees will depend on the total recovery: the more claims that Covalynt deems valid, the larger plaintiffs' counsel's fee award. *See* Dkt. 833 at 26:11-23. Plaintiffs' counsel thus has every incentive to maximize the number of approved claims.

Plaintiffs' retention of Covalynt has also left Meta with no way of testing Covalynt's claims about, for example, its efforts to enhance the Flo data for notice purposes, identify purported class members, and validate submitted claims. But as this Court has already explained, Meta "is entitled 'to receive a fair opportunity to present its defenses when putative class members actually come forward'" and submit claims for damages. Dkt. 776 at 16. Plaintiffs themselves have agreed. *See* Dkt. 783 at 6 (plaintiffs acknowledging Meta is entitled to "a full and fair opportunity to challenge claims," including by "raising evidence-based challenges" to submitted claims). Part of that "fair opportunity" requires equal access to the same information about purported class members that plaintiffs have from Covalynt to evaluate plaintiffs' proposed notice plan and test the validity of any submitted claims. The Court has agreed as much, as evidenced by its orders directing plaintiffs to "work cooperatively" with Meta on the Flo data "and possible cross-checks and sampling to be conducted by Meta to confirm class membership" (Dkt. 791); directing the parties to collectively implement "as many cross-checks [against fraud] as we can possibly have" (Dkt. 792 at 11:25–12:1); directing the parties to "work together and

to file expeditiously a proposed order regarding the notice plan and claims procedure" (Dkt. 828); and directing that "Meta may use the Flo Data and the Results [of Meta's analysis] to challenge or appeal claims" (Dkt. 827 ¶ 9). Indeed, Covalynt itself represented to the Court and Meta during the September 2025 hearing that it would "provide the backup data, *so anyone, everyone*, can get comfortable with [its] [fraud] determinations." Dkt. 792 at 33:15-17 (emphasis added). This Court's intervention is necessary to resolve this conflict of interest, ensure the safeguard Covalynt is meant to provide is not illusory, and ensure that Meta receives the data and information to which it is entitled.

**B. The Unauthorized and False Text Notice Also Warrants Immediate Court Intervention**

This Court's intervention under Rule 23(d)(1) is also necessary to address the unauthorized and inaccurate text message notice that A.B. Data improperly sent on plaintiffs' behalf.

**1. Plaintiffs and A.B. Data Violated Court Order(s) by Sending the Text Messages**

Plaintiffs violated a Court order by directing A.B. Data to send the unauthorized text message notice to potential class members. The Court never authorized the form or content of that notice, and the parties whose settlements the text purports to announce were not even aware of it until Meta's counsel brought it to their attention. This flies in the face of the Court's directive that plaintiffs and A.B. Data seek approval for changes to the Court-approved notice plan, other than non-material changes (which these changes were not). Plaintiffs and A.B. Data have disregarded that clear order.

Again, the Court's order preliminarily approving the notice plans for the Google and Flo settlements approved the "proposed revised Notice Plan set forth in the Parks Declaration," Dkt. 834 ¶ 10, which *did not* provide for text message notice. *See generally* Dkt. 589; Dkt. 820. And plaintiffs proposed very specific language about the jury verdict, which did not falsely describe the claim against Meta as involving "wiretapping," mention any dollar amount of recovery, or characterize the timing of recovery. *See supra* at pp. 6–7. The Court made it very clear that the notice plan was approved "subject to modifications that Plaintiffs and A.B. Data *may seek from the Court* after review of any data provided to them by Flo." Dkt. 834 ¶ 10 (emphasis added). Indeed, the Court further directed that only "[n]on-material modifications, including formatting, to the forms of notice and the Claim Form may be made without further order of the Court." *Id.* Neither plaintiffs nor A.B. Data sought approval from this Court to modify the approved notice plan. Sending direct text messages to an untold number of

recipients is plainly not a "non-material" modification to the notice plan.

A.B. Data's agreement to send out the unauthorized text message notice at plaintiffs' unilateral direction is even more problematic. As explained, the Court appointed A.B. Data to administer the settlement and jury verdict notice and post-trial process. *See supra* at pp. 3–4. That Court-appointed role requires A.B. Data to remain "independent" and neutral, with "no interest in either increasing or decreasing the class's recovery." *Livingston v. MiTAC Digital Corp.*, 2019 WL 8504695, at *7 (N.D. Cal. Dec. 4, 2019); *see also, e.g.*, *McHorney v. GameStop Corp.*, 2010 WL 11549399, at *7 (C.D. Cal. June 17, 2010) (cautioning settling parties that "a prospective claims administrator should be independent and neutral, without any ongoing business relations with either side"). Sending unauthorized (and inaccurate) notice at plaintiffs' unilateral direction—without Court approval or advance notice to defendants—contravenes A.B. Data's purportedly neutral and independent role.

In addition, it appears A.B. Data violated the Court's Order Regarding Class Information. That order governed the process by which Meta was to "enrich[] the [Flo] user data" and provide its results to A.B. Data. Dkt. 827 at 3. And it directed that A.B. Data "shall not use such data [e.g., Meta's results] for purposes other than its Court-approved role in this Action." *Id.* ¶ 7. Because the Court-approved notice plan does not contemplate text message notice, and because the text message notice contained false language regarding the jury verdict that materially differed from the Court-approved notice language, this text campaign could not have been part of A.B. Data's Court-approved role. And given that the Flo data did not contain phone numbers (*see supra* at p. 4), it appears A.B. Data may have used phone numbers that Meta provided to send the unauthorized notice—apparently, again, at plaintiffs' unilateral direction, in violation of the Court's order, and without notice to defendants.

**2. The Representation About the Meta Verdict Is False and Misleading**

This Court's intervention is also necessary because plaintiffs and A.B. Data conveyed false and misleading information to potential class members. "There is little dispute that the Court possesses the authority, under Rule 23, to regulate the parties' communications to class members when those communications are false and misleading." *Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*, 2016 WL 4080294, at *3 (N.D. Cal. July 29, 2016). "Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths

will surely result in confusion and adversely affect the administration of justice." *Alfred v. Pepperidge Farm, Inc.*, 2020 WL 13587900, at *8 (C.D. Cal. Apr. 14, 2020). For this reason, courts routinely regulate communications with potential and actual class members when false or misleading communications have been sent to them. *See, e.g.*, *id.* (corrective notice "warranted" given nonparty's "misstatements" to class). The text sent here is precisely the type of false and misleading communication that warrants Court action.

The text message notice told recipients they "may soon be entitled to claim $5,000, minus fees, from a jury verdict against Meta for wiretapping Flo users." *Supra* at p. 7. That is false. There was no jury verdict against Meta for "wiretapping." Plaintiffs lost at summary judgment on their federal wiretapping claim, and they failed to certify a class as to (and then abandoned) their state wiretapping claim. *See id.* at pp. 7–8. The only claim tried to verdict in this case concerned alleged "eavesdropping" or "recording" under CIPA Section 632. *See id.* The text message notice thus contains a false statement of fact that is inherently misleading.

The unauthorized text notice is also sure to cause confusion about the timeline. Plaintiffs' counsel recently went on a press tour to tell class members that they would be "eligible for $5,000 each under CIPA" in connection with the jury verdict, and that they "have a bit of a long road ahead of us before we're going to be able to get our clients their money."[1] But plaintiffs have now directed A.B. Data to tell potential class members via text message that they may "be entitled to claim $5,000, minus fees" "soon." *Supra* at p. 7. The text message's statement that claimants could get money "soon" thus contradicts plaintiffs' counsel's recent representations to the media about the timeline—and rings hollow given their stonewalling on sharing the data necessary to design an appropriate notice process. And plaintiffs' counsel's public statements omitting that attorney's fees will be paid out of the $5,000 per claimant recovery compound the risk of confusion. Court intervention is warranted to correct all of this misleading information that has been shared with potential class members.

Plaintiffs' counsel's insistence that they are "free" to send unauthorized text messages about Meta to their clients (*supra* at p. 8) is unavailing for several reasons. First, plaintiffs' own filings confirm that the messages were sent by A.B. Data—the purportedly neutral and independent claims

[1] *Meta's litigation bill mounts; next legal hit could reach $6 billion*, MLex (Aug. 3, 2026), accessible at https://tinyurl.com/3ndfkp8p.

administrator—and not plaintiffs' counsel. *See supra* at p. 8. Second, A.B. Data sent the text message to individuals who appear to fall outside the class definition (like a Latham & Watkins attorney)—and therefore are not plaintiffs' counsel's clients. *See supra* at p. 7; Dkt. 834 ¶ 2 (class excludes "Defendants' counsel"). And third, the Court has the authority to "regulate the parties' communications to class members when those communications are false and misleading," as the texts were here. *Retiree Support Grp.*, 2016 WL 4080294, at *3; *see also supra* at pp. 9, 12–13.

**3. Relief Is Needed to Stop Ongoing Harm to Potential Class Members and Meta**

Meta requests relief to help mitigate the potential harm to people who may (or may not) be class members as a result of plaintiffs' and A.B. Data's misconduct, as well as the ongoing harm Meta has suffered. To start, the unauthorized text message notice is likely to confuse and mislead class members into thinking a post-trial process has been finalized and approved by the Court, when in fact plaintiffs' refusal to cooperate with Meta on that process as ordered by the Court has hindered any such progress. Plaintiffs' counsel also recently told the media different information about the amount and timing of recovery. *Supra* at p. 13. And those who received the text but appear to be ineligible to recover any money may now mistakenly believe they may receive thousands of dollars "soon."

Meta has also suffered harm. A.B. Data and plaintiffs have falsely told potential class members that a jury found Meta liable for "wiretapping"—a term that carries a specific and negative connotation. In the defamation context, "[s]tatements which falsely impute the commission of a crime are libelous on their face." *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008). That same reasoning applies here. And if plaintiffs argue that Meta has not suffered harm because it was found liable under Section 632 in any event, that argument misses the mark. "Wiretapping" conveys something very different from "eavesdropping" or "recording," and the law does not treat those terms interchangeably. Plaintiffs—who brought separate claims against Meta, and either lost or abandoned the wiretapping claims—cannot now claim "wiretapping" is essentially the same thing.

The text campaign may also further undermine the integrity of the post-trial process by encouraging fraudulent claims. The unauthorized texts alerted recipients that, "if [they] lived in California," they may "soon" be entitled to "$5,000, minus fees." *Supra* at p. 7. That misleadingly suggests that, as long as recipients "lived in California" at some point in time, they may be able to

claim a significant amount of money. That information increases the likelihood of fraud, and plaintiffs have compounded this issue by compromising the neutrality of both A.B. Data and Covalynt and refusing to provide Meta with basic information about the text notice (like who received the texts) to allow Meta to assess the scope of the issue and protect its rights during the post-trial process.

All of this harm is ongoing and likely to get worse. Absent this Court's intervention, plaintiffs intend to continue sending unauthorized messages like the ones A.B. Data already sent "through the [October 15, 2026] claims filing deadline." Dkt. 842 at 2. Recipients, too, may disseminate these false messages more broadly, a risk that becomes harder to mitigate as time passes without a clear retraction.

### C. The Requested Relief Is Consistent with Prior Orders and Will Advance the Litigation

The relief that Meta seeks, as set forth in the concurrently filed proposed order, is consistent with what this Court has been asking the parties to do for months. The Court directed plaintiffs to "work cooperatively" with Meta on the Flo data and the post-trial process (Dkt. 791); to "work together to file expeditiously a proposed order regarding the notice plan and claims procedure to be utilized and relief to be awarded on the jury verdict" (Dkt. 828); and to build in "as many cross-checks [against fraud] as we can possibly have" (Dkt. 792 at 11:25–12:1). Each request here serves those instructions. For example, requiring that Meta be included in discussions about the Flo data and post-trial process and requiring Covalynt to share its enrichment methodology, results, and underlying data lets both parties test class membership against the same record, rather than litigating over analysis and data that one side cannot see—and it is the predicate for the joint proposal the Court has been waiting to receive. Directing that A.B. Data and Covalynt act as the neutral, independent entities that they are meant to be, and not at the unilateral direction of any one party, restores the safeguards on which the entire post-trial process depends. And correcting the record with those who received any unauthorized notice communications helps ensure that, among other things, actual class members decide whether to object, opt out, or claim based on what this Court and the jury actually did. Meta's requests for relief are thus intended to ensure that this case proceeds in a manner consistent with the Court's prior orders.

## V. CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court enter the concurrently filed proposed order.

Dated: September 8, 2026

*/s/ Christopher Chorba*

**GIBSON, DUNN & CRUTCHER LLP**
Christopher Chorba (SBN 216692)
*cchorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7396

Elizabeth K. McCloskey (SBN 268184)
*EMcCloskey@gibsondunn.com*
Abigail A. Barrera (SBN 301746)
*ABarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200

**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Michele D. Johnson (SBN 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235

Melanie M. Blunschi (SBN 234264)
*melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.395.5942

*Counsel for Defendant Meta Platforms, Inc.*