Christian Levis (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com

*Co-Lead Class Counsel*

Diana J. Zinser (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
dzinser@scc.com

*Co-Lead Class Counsel*

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com

*Co-Lead Class Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Telephone: 805-543-0990
Facsimile: 805-543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

[additional counsel listed below]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

ERICA FRASCO, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FLO HEALTH, INC., META PLATFORMS, INC., GOOGLE, LLC, and FLURRY, INC.,

Defendants.

Case No.: 3:21-cv-00757-JD

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ENTER CLAIMS ADMINISTRATION AND NOTICE PROGRAMS**

Date: October 29, 2026
Time: 10:00AM
Location: Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Judge: Hon. James Donato

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 29, 2026, at 10:00 a.m., before the Honorable Judge James Donato in Courtroom 11 of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Sarah Wellman, Tesha Gamino, and Jennifer Chen (collectively "Plaintiffs"), by and through their attorneys undersigned, will move the Court to enter an order implementing Plaintiffs' proposed claim program (the "Claims Program")[1] and proposed notice program (the "Notice Program").[2] Plaintiffs' motion is based on the accompanying Memorandum of Points and Authorities, the concurrently filed Villegas Declaration and supporting exhibits, the pleadings and papers on file in this Action; and such other evidence and argument as may subsequently be presented to the Court.

## ISSUES PRESENTED

1. Whether the Court should enter Plaintiffs' proposed Claims Program and order that the claims process begin in accordance with the process stated therein.
2. Whether the Court should enter Plaintiffs' proposed Notice Program and order that the notice process begin in accordance with the process set forth herein and in the Parks Declaration.

Dated: September 9, 2026

*/s/ Carol C. Villegas*
Carol C. Villegas

[1] **Exhibit A** to the Declaration of Carol C. Villegas ("Villegas Declaration").

[2] Discussed in the Declaration of Justin Parks of A.B. Data Regarding the Proposed Meta Notice Program ("Parks Declaration," **Exhibit F** to the Villegas Declaration).

## INTRODUCTION

Plaintiffs seek approval of a process for handling claims arising from the August 1, 2025 jury verdict entered against Defendant Meta Platforms, Inc. ("Meta"). *See* ECF No. 756 (the "Meta Verdict"). Consistent with the Court's instructions, this motion contains both (i) a notice program designed to reach members of the California Class (the "Notice Program"); and (ii) a claims administration program (the "Claims Program") which sets forth the procedures for California Class Members to submit claims, how those claims will be reviewed for validity, how deficiencies and disputes will be handled, and how accepted claims will be paid.[3]

Now is the appropriate time to initiate both processes. Last year, Plaintiffs and Meta litigated their claims through trial. Following the trial, on August 1, 2025, a jury entered a verdict against Meta finding Meta liable for violating the California Invasion of Privacy Act, California Penal Code ("CIPA") §§ 630, *et seq*. Meta subsequently filed a series of post-trial motions that the Court rejected in orders dated September 15 and 17, 2025. ECF Nos. 775, 776. On September 30, 2025, the Court held a remedies hearing to initiate discussions of the process for administering and paying Class Members' claims. Since then, Plaintiffs have undertaken efforts to identify the Class Members within Flo's customer records, including by incorporating information provided by Meta. Plaintiffs retained Covalynt to assist with these efforts and, through Covalynt, have identified at least 1,246,866 Class Members. Within this group, Plaintiffs have identified approximately 373,874 individuals with an active, deliverable email address, 228,998 of which also have physical addresses in California for purposes of providing direct notice. *See* Declaration of Bryan Heller (the "Heller Decl.").[4]

Plaintiffs' proposed Notice Program meets and surpasses the requirements set forth in Rule 23 by providing the "best practicable" notice under the circumstances. This proposal, which includes many components similar to the notice plan the Court approved for the Flo, Google, and Flurry settlements (the "Settlements"), is designed to reach as many California Class Members as reasonably possible so that they may submit claims for payment distribution by A.B. Data, Ltd. ("A.B. Data").

---

[3] On April 16, 2026, the Court instructed the parties to "file expeditiously a proposed order regarding the notice plan and claims procedure to be utilized and relief to be awarded on the jury verdict." ECF No. 828.

[4] The "Heller Declaration," **Exhibit G** to the Villegas Declaration.

As with the Settlements, Plaintiffs' proposal employs a combination of direct notice and a broad indirect notice campaign across multiple mediums, including print and digital publications, social media, the Flo app and website, streaming audio platforms, and Meta's platforms.

Plaintiffs' proposed Claims Program is designed to efficiently process claims and payments to Class Members while providing a meaningful opportunity for the parties to be heard on any disputes. Plaintiffs propose a clear, straightforward Claim Form[5] that mirrors the claim form the Court previously approved in connection with the Settlements (ECF 834 No. ¶ 10). A.B. Data will collect and review claim forms, contact claimants where additional information is needed, and, ultimately, validate claims. A.B. Data will also employ robust anti-fraud measures throughout this process, including working with Covalynt directly to apply its ClaimScore technology. Consistent with the Court's instructions during the September 30, 2025 remedies hearing (ECF No. 792), Meta will have an opportunity to challenge A.B. Data's claim determinations by identifying factual reasons for why a claim should not be accepted. *Id.* at 18-20. A.B. Data will resolve any disputes among the parties and determine the claims to be paid. *Id.* at 19. For these reasons and the reasons stated herein, Plaintiffs ask the Court to approve the proposed Notice Program and Claims Program so the administration process for claims arising from the Meta Verdict can begin.

## ARGUMENT

It has been more than one year since the jury entered a verdict against Meta, and nearly one year since the Court denied Meta's post-trial motions. *See* ECF Nos. 775, 776. The time has come to move this case to the next step in the process: providing notice to Class Members and processing claims for compensation. *See* April 16, 2026 Hearing Transcript (ECF No. 833) at 20:7-21:20; *Siqueiros v. Gen. Motors LLC*, No. 3:16-cv-07244-EMC (N.D. Cal. 2023), ECF No. 653 (accepting Plaintiffs' arguments and ordering parties to proceed to post-trial claims and judgment administration process); ORDER Preliminarily Approving Settlement and Providing for Notice; *Lawrence E. Jaffe Pension Plan v. Household Intl' Inc.* (N.D. Ill.), ECF No. 2215 (approving proposed claims administration protocol).

---

[5] **Exhibit B** to the Villegas Declaration.

**A. The Court Should Order the Proposed Notice Program**

Pursuant to Federal Rule 23(c)(2), a class notice program must provide "the best notice that is practicable under the circumstances." *Evans v. Linden Rsch., Inc.*, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013) (citation omitted). This standard applies irrespective of whether the notice concerns a settlement or judgment class. *See* Fed. R. Civ. P. 23(c)(3).

Plaintiffs' proposed Notice Program satisfies this standard. This proposal adopts many of the same means of notice used at class certification and for the Settlements with enhancements (such as jewel notice on Meta's platforms as described below) commensurate with the size of the California Class and claimants' $5,000 recovery and Meta's duty to assist in paying Class Members. *See* ECF No. 834 ¶ 10 (approving "The Notice Program, Claim Form, and forms of notice to the [Settlement] Class").

**Direct Notice.** The Notice Program incorporates "individual notice to all members who can be identified through reasonable effort." *See Chinitz v. Intero Real Est. Servs.*, 2020 WL 7042871, at *1 (N.D. Cal. Dec. 1, 2020). Plaintiffs will utilize at least three means of direct notice to reach Class Members: (1) email notice to the 373,874 individuals with active, deliverable email addresses, (2) direct mail to 207,565 individuals with mailing addresses, and (3) text messages to individuals with valid mobile phone numbers. *See* Heller Decl. ¶¶ 12-19. These numbers may increase to the extent additional information becomes available, but, as it stands, reflect the minimum number of Class Members who will receive direct notice under the Plan. Plaintiffs may also utilize other forms of direct notice, such as phone communications or direct physical mailings, to the extent they are reasonably likely to reach Class Members.

**Indirect Notice.** In addition to direct notice, "notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Schneider v. Chipotle Mexican Grill, Inc.*, 2019 WL 1512265, at *2 (N.D. Cal. Apr. 8, 2019). Indirect notice is aimed at both notifying class members of their rights where they may not be reached through direct notice and providing class members with additional information regarding the claims administration process, including reminders of key deadlines, how to file a claim, and how the process may affect their rights.

Here, the Notice Program provides for indirect notice similar to what the Court previously

approved in connection with the Settlements. *See* ECF No. 834 ¶ 10 (approving the Settlements' notice plan and finding it satisfies the requirements of Rule 23 and due process); ECF No. 813 at 15:11-14 (indicating that the notice plan for the Settlements would be a "template" for notice of the Meta verdict). Notably, this Notice Program delivers a higher number of impressions per Class Member in California to account for the higher value of these Class Members' claims. The proposed channels targeted will also be similar to those used in the Settlements, and include at least the following: (i) press release(s); (ii) print publications such as *The L.A. Times*, *The New York Times*, People Magazine, Women's Health Magazine, Teen Vogue, Vogue, and additional California lifestyle publications; (iii) digital and social media ads using data-driven targeting strategies to reach groups most likely to contain Class Members in California across TikTok, Google Display Network, YouTube, Facebook, Instagram, Snapchat, and Pinterest; (iv) streaming radio ads and/or display banners on platforms such as Spotify, iHeartRadio, Pandora, or Apple Podcasts; (v) public relations, including interviews or speaking engagements with Class Counsel across a range of regional and/or nationally media outlets; (vi) influencer marketing, or other media/marketing efforts, aimed at driving engagement and claims; (vii) jewel notice on (a) Flo's app and website, and (b) Meta's platforms (i.e., Facebook, Instagram) targeting the estimated 1.2 million California Class Members using the emails, IP addresses, device information and any other data in Meta's possession, to alert them that they may be entitled to receive $5,000 from Meta.

While the Court rejected Plaintiffs' request to use jewel notice on Meta's platforms in connection with the Settlements, the Court deferred the issue as to the notice process for the verdict against Meta. The circumstances are different here because (i) the forthcoming judgment is against Meta, who should be required to use every tool possible to notify its *own users* that they are entitled to collect money from it, and (ii) notice can be targeted at individual Class Members based on (a) Flo's user data, (b) the information Covalynt found in its identity resolution processes, or (c) data in Meta's possession to narrowly tailor notice to women between the ages of 20 and 60 who Meta identifies as located in California. *See* Third Joint Report Regarding Progress of Notice, *In re Facebook Biometric Priv. Litig.*, No. 3:15-cv-03747-JD (N.D. Cal.), ECF No. 492 at 2.

The Claims Administrator estimates that these indirect forms of notice will reach

approximately 1,088,815 Class Members. *See* Parks Decl. ¶ 32.

**B. Proposed Claims Program**

Claims administration processes are appropriate where the processes provide the parties with adequate opportunity to submit, validate, dispute, and process claims. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d, 1121, 1132 (2017) ("it is not clear why requiring an administratively feasible way to identify all class members at the certification stage is necessary to protect [defendant's] due process rights" when defendant can challenge individual claims during the claims process); *Victorino v. FCA US LLC*, 2020 WL 2306609, at *4 (S.D. Cal. May 8, 2020) ("[D]istrict courts are in agreement that the determination of class membership and protecting the defendant's due process rights can be done during the claims administration process."); *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 604 (C.D. Cal. 2021) ("[S]o long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process, its due process rights have been protected."); *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 476 (S.D. Cal. 2015) (finding "inability to absolutely confirm" each individual's class membership is not a bar to class certification and does not create due process issues); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 239 (N.D. Cal. 2014) (explaining that having class members "respond to a general notice and then assert their class membership by attesting to the fact that they [used] the challenged product" does not create due process issues). The proposed Claims Program sets forth the specific procedures for processing claims for compensation from the verdict against Meta. *See* Ex. A. Pursuant to this process, the proposed Claims Administrator, A.B. Data, will be responsible for reviewing all claims received and determining whether such claims are presumptively valid, pursuant to the Court's instructions at the September 30 hearing.[6] Parks Decl. ¶¶ 40-50; ECF No. 792 at 18-20.

The Claims Program starts with the **Claim Form** (Exhibit B). "[C]laim forms must be informative and accurate." *See Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *11 (C.D. Cal. June 15, 2010). Here, Plaintiffs designed the Claim Form, consistent with those used in the Settlements and other cases in this District, to be easy to use and understood by Class Members

[6] To assist with the Notice Program or Claim Program, A.B. Data may, in its discretion, retain vendors or consultants and share information with those entities subject to appropriate security or confidentiality protocols.

while collecting information, such as name, home address, and use of the Flo app. In connection with the filing of a claim, the Claims Administrator may request additional information from the claimant that may assist in expediting the review and validation of the claim. Parks Decl. ¶¶ 40-50; *see Jackson v. Fastenal Co.*, 2021 WL 5755583, at *11 (E.D. Cal. Dec. 3, 2021) (assessing effectiveness of notice based, in part, on whether claim form was "clear, concise, and easy to understand"). The Claim Form includes the same bold, and underlined language the Court required for the Settlements' claim forms alerting Class Members that they are swearing to the contents under penalty of perjury. *Compare* Ex. B *to* ECF No. 820-4. Courts have consistently approved clear claim forms, like the proposed Claim Form here. *See Barr v. Drizly, LLC*, No. 1:20-cv-11492 (D. Mass.), ECF No. 79; *Hubbard v. Google LLC*, No. 19-cv-07016 (N.D. Cal.), ECF No. 341; *In re Facebook Biometric Priv. Litig.*, No. 3:15-cv-03747-JD (N.D. Cal.), ECF No. 474.

Once Class Members submit their Claim Forms, the Administrator will begin **Claim Review.** Courts routinely appoint third-party claims administrators to review and process claims. ECF No. 792 at 10:10-24 ("typically, the settlement administrator resolves disputes"). Here, Plaintiffs propose that A.B. Data, the claims administrator for the Settlements also process claims in the Meta Verdict Claims Program here. *See* ECF No. 834. Using an administrator that is already familiar with the case and nature of the claims will help to increase efficiency, reduce duplication and ultimately the cost of administration for the Class.

A.B. Data will review each claim in the order it is received and such review will be completed no later than 30 days after the deadline for filing claims. Parks Decl. ¶¶ 40-50; Ex. A ¶¶ 34-37. If a Claim Form contains all requested information, is properly executed, and is not determined to be fraudulent, A.B. Data will deem the claim "Presumptively Valid." Parks Decl. ¶¶ 40-50; Ex. A ¶¶ 34-37. If A.B. Data is unable to validate a Claim Form, it will initiate a deficiency process and attempt to contact the proposed claimant to confirm their intentions and seek the information needed to validate the claim. Parks Decl. ¶¶ 40-50; Ex. A ¶¶ 34-37. Each Claim will also be processed through Covalynt's proprietary anti-fraud technology to identify and remove fraudulent claims, protecting Meta and the Class from potentially losing money by paying unauthorized claimants. *See* Parks Decl. ¶¶ 40-50; Heller Decl. ¶¶ 20-22.

A.B. Data will issue a **Notice of Presumptive Validity** each month to Plaintiffs and Meta. *See* Villegas Decl. Ex A. This report will provide Meta with reasonable notice of the claims A.B. Data classifies as Presumptively Valid, allowing it to challenge those claims if warranted.

**Claim Challenges** must be filed within 30 days of receiving each **Notice of Presumptive Validity** from the Claims Administrator. To prevent frivolous challenges, the challenges must be fact-based and reflect either: (i) an error in the claims processing, such as where it is apparent the Claims Administrator incorrectly deemed a claim Presumptively Valid despite failing to meet the necessary criteria; or (ii) evidence that the Claim was filed by someone who is not a Class Member, such as a person other than the one listed on the Claim Form; or (iii) evidence that the information in the Claim Form is incorrect, such as if Claimant misrepresented information in the claim form.

Within 45 days of a Claim Challenge, the Claimant or Class Counsel may submit a written response of up to three pages. A.B. Data will reach a final determination regarding the claim subject to dispute within 75 days of receiving any dispute from Meta. Upon receiving any determination from the Claims Administrator pursuant to a Claim Challenge, the parties will have 30 days to appeal to the Court.

Plaintiffs' proposed Claims Program is reasonable and consistent with the Court's prior approaches in this case; it provides adequate notice and a meaningful opportunity for all parties to be heard. For these reasons, Plaintiffs respectfully request that the Court approve the proposed Claims Program.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court approve, order, and implement their proposed Notice Program and Claim Program.

Dated: September 9, 2026

*/s/ Carol C. Villegas*

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477

cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com

*Co-Lead Counsel*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Co-Lead Counsel*

Diana J. Zinser (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.com

*Co-Lead Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Telephone: 805-543-0990
Facsimile: 805-543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Ronald A. Marron (CA Bar 175650)
ron@consumersadvocates.com
Alexis M. Wood (CA Bar 270200)
alexis@consumersadvocates.com
Kas L. Gallucci (CA Bar 288709)
kas@consumersadvocates.com
**MARRON PC**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (929) 220-2759
kent.williams@sirillp.com

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, OH 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Carol C. Villegas, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: September 9, 2026

*_/s/ Carol C. Villegas_*
Carol C. Villegas