James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Carol C. Villegas (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com

*Co-Lead Counsel for Plaintiffs and the Class*

Christian Levis (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com

*Co-Lead Counsel for Plaintiffs and the Class*

Diana J. Zinser (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law

*Co-Lead Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ERICA FRASCO, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FLO HEALTH, INC., META PLATFORMS, INC., GOOGLE, LLC, and FLURRY, INC.,

Defendants.

Case No.: 3:21-cv-00757-JD

**PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC.'S EMERGENCY MOTION TO TERMINATE AND RETRACT UNAUTHORIZED CLASS NOTICE UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(d)(1) AND FOR ADDITIONAL RELIEF**

Judge: Hon. James Donato
Date: October 29, 2026
Time: 11:00 AM
Courtrm.: 11 - 19th Floor
San Francisco Courthouse

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
A. The Court Ordered Meta to Cooperate in Identifying its Victims ..... 2
B. Class Counsel Properly Retained Covalynt Separate from A.B. Data to Process Flo's User Data, Integrate Meta's Results, and Quantify Deficiencies ..... 4
C. Meta Refused to Provide Plaintiffs with the Same Materials and Access It Demands ..... 6
D. Class Counsel Properly Notified Settlement Class Members of the Potential for Additional Recovery From Meta ..... 7
III. ARGUMENT ..... 8
A. Class Counsel Properly Alerted Settlement Class Members of Their Rights by Text ..... 8
1. The Notice Plan Sets the Floor, Not the Ceiling, for Class Communications ..... 8
2. The Texts are Not False and Misleading & Do Not Support Meta's Request ..... 10
B. Meta's Request for Control Over the Notice Program Should Be Denied ..... 12
IV. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alfred v. Pepperidge Farm, Inc.*,
No. LA CV14-07086, 2020 WL 13587900 (C.D. Cal. Apr. 14, 2020) .... 11

*Camp v. Alexander*,
300 F.R.D. 617 (N.D. Cal. 2014) .... 13

*Domingo v. New England Fish Co.*,
727 F.2d 1429 (9th Cir. 1984) .... 10

*Erhardt v. Prudential Group, Inc.*,
629 F.2d 843 (2d Cir. 1980) .... 9, 11

*Gordon v. Kaleida Health*,
737 F. Supp. 2d 91 (W.D.N.Y. 2010) .... 9

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) .... 10

*In re California Pizza Kitchen Data Breach Litig.*,
129 F.4th 667 (9th Cir. 2025) .... 13

*In re Grand Jury Subpoena (Mark Torf/Torf Environmental Mgmt.)*,
357 F.3d 900 (9th Cir. 2004) .... 14

*Livingston v. MiTAC Digital Corp.*,
No. 18-cv-05993, 2019 WL 8504695 (N.D. Cal. Dec. 4, 2019) .... 14

*McHorney v. GameStop Corp.*,
No. CV 09–2879, 2010 WL 11549399 (C.D. Cal. June 17, 2010) .... 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) .... 12

*Retiree Support Group of Contra Costa County v. Contra Costa County*,
No. 12-cv-00944, 2016 WL 4080294 (N.D. Cal. July 29, 2016) .... 11

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) .... passim

*Stewart v. USA Tank Sales & Erection Co.*,
No. 12-05136-CV-SW-DGK, 2014 WL 836212 (W.D. Mo. Mar. 4, 2014) .... 13

*United States v. Nobles*,
422 U.S. 225 (1975) .... 14

**STATUTES**

Cal. Penal Code § 632 .... 1

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) .......... 8

Fed. R. Civ. P. 23 (d) .......... 10, 11

Fed. R. Civ. P. 23 (d)(1).......... 1

## I. INTRODUCTION

It has been over a year since the jury's verdict finding Meta liable for recording Class Members' confidential communications in violation of Cal. Penal Code § 632, and yet no Class Member has received a dollar. This is because Meta—from the moment this Court issued its post-trial orders—has sought to obstruct the process of compensating the Class Members it harmed. These efforts have caused substantial delay in providing both notice and compensation—with Meta failing to provide results of its Court-ordered data enrichment until July 2026, nearly a year after the verdict and more than nine months after the Court first directed Meta to assist in this process. And even then, Meta has continued to frustrate Class Counsel's efforts to identify and provide notice to as many Class Members as possible by arbitrarily applying undisclosed filters to exclude potential Class Members, in addition to omitting historical data.

Against this backdrop, Meta's revisionist history and claims that it has "done everything in its power" to "work cooperatively" fall flat, as does its claim that this Motion is driven by altruistic aims to correct "false or misleading" statements that may cause "confusion" and "harm" to Class Members. Meta Platforms, Inc.'s Emergency Motion to Terminate and Retract Unauthorized Class Notice Under Federal Rule of Civil Procedure 23(d)(1) and for Additional Relief, ECF No. 844 ("Motion" or "Mot.") at 1, 12-13. Meta is not interested in providing Class Members with accurate notice or even *any* notice of the verdict against it. Rather, consistent with Meta's prior behavior, it seeks to insert itself into the notice program to suppress awareness, limit the number of claims, and hopefully reduce its ultimate liability.

Meta has no right (due process or otherwise) to control Class notice or how Class Counsel communicates with Class Members. Nor is Meta entitled to participate in Class Counsel's efforts to identify Class Members to ensure they receive compensation. Indeed, courts routinely recognize the danger in letting defendants invade these processes when they stand to benefit from fewer claims—the very incentive Meta's conduct highlights here. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058-59 (9th Cir. 2019) (where they stand to benefit, defendants may "negotiate for a subpar notice process, a more tedious claims process, or restrictive claim eligibility conditions"). Given this clear conflict of interest, each of Meta's demands—from its request to audit Class Counsel's work product and the Class notice data, to its request for a sweeping order barring further notice communications without prior

approval—should be denied outright. *See* ECF No. 844-8 ¶¶ 1-6.

Equally meritless are Meta's efforts to sow doubt about the validity of the claims process before it has even begun by contesting Covalynt and A.B. Data's neutrality. While repeatedly criticizing Covalynt and A.B. Data for failing to "act as a neutral arbiter," Meta acknowledges in its own Motion that A.B. Data and Class Counsel ***separately retained*** Covalynt for ***different purposes*** (Mot. at 1), each at ***different stages*** of the process. A.B. Data retained Covalynt for its ClaimScore technology to validate claims and prevent fraud during the claims process. Class Counsel, on the other hand, contracted with Covalynt to enrich Flo's customer data with updated contact information so that, even absent cooperation from Meta, Class Counsel could identify as many Class Members as possible to ensure they each are provided an opportunity to receive the funds Meta has owed them for more than a year. Consistent with Meta's limited remaining due process rights, it will have a full and fair opportunity to raise objections and challenge potentially fraudulent claims as part of the yet-to-take-place claim process, but it does not get to use this right to appoint itself as supervisor of Class Counsel's work or to interfere with efforts to identify Class Members that are the subject of an entirely separate Covalynt engagement.

The two motions filed by Plaintiffs on September 9 and 14, 2026 show these efforts have benefitted—not harmed—Class Members. Together, Class Counsel and Covalynt have identified 222,115 Class Members within Flo's customer records ("Flo Data") for whom Plaintiffs seek immediate entry of judgment, along with 987,970 additional user records of California Class Members to be addressed through the proposed claims process. ECF No. 846 at 1-4; ECF No. 845-8 ¶¶ 12-19. This is despite Meta's attempts to sabotage that process: first, by failing to provide any "Results" until July 2026, and then by (a) unilaterally filtering that data to exclude potential Class Members, and (b) omitting historical data.

The Court should deny Meta's Motion, enter judgment as requested in ECF No. 846, and order the claims process for the remaining Class Members to proceed as requested in ECF No. 845, so that injured Class Members can finally receive compensation from Meta, more than a year after the jury verdict.

## II. <u>BACKGROUND</u>

### A. The Court Ordered Meta to Cooperate in Identifying its Victims

Meta's Motion fundamentally misstates the parties' roles in identifying and compensating Class

Members. At the September 30, 2025 hearing, the Court directed the parties to work towards getting "the checks in the hands of the victims" while also ensuring they were valid Class Members. ECF No. 792 at 37:3-14. The Court told Meta that its papers—which sought to erect unnecessary procedural barriers—had been "purely obstructionist" and that Meta should want to use its own data to assist in this process. *Id.* at 25:6-20. Class Counsel explained precisely how Meta's data would be used to identify Class Members as the first step in this process: e.g., identifiers in Flo's records could be matched against Meta's records to obtain names and email addresses for direct notice. *Id.* at 14:19-15:2. The Court endorsed this procedure (ECF No. 792 at 25:6-20, 37:3-14; ECF No. 791 at 1), directing Meta to help identify Class Members. However, two months later at the December 4, 2025 hearing, Meta instead insisted on a further written order, promising it would supply this written proposal "tomorrow, very, very quickly." ECF No. 813 at 15:15-16:16. That did not happen. Instead, Meta took this opportunity to conduct weeks of protracted negotiations over the use of Flo's data, with Plaintiffs and Meta ultimately submitting competing proposed orders on December 23, 2025 (ECF Nos. 815, 816), which would not be resolved until April 16, 2026. ECF No. 826 at 2; ECF No. 827. This delay was entirely of Meta's own making.

The resulting April 16, 2026 Order—more than four months after Meta promised a proposal and six months after the Court directed the parties to work to get "the checks in the hands of the victims"—required a "reasonable search" of data in Meta's possession, custody, and control to identify possible Flo users, and reasonable efforts to return useful identifying information. ECF No. 827 ¶¶ 5-6. More specifically, it required searching current information and historical information created since November 1, 2016, to the extent it existed. *Id.* ¶ 6. And where more than ten Meta users could be associated with the same value in the Flo Data (such as an IP address) without other corroborating data, the April 16, 2026 Order required Meta to confer with Class Counsel about a reasonable process for addressing those situations. ECF No. 827 ¶ 6 n.2. Certainly, nothing in the Court's April 16, 2026 Order authorized Meta to apply filters or exclude individuals from the Results based on its own unexplained decision-making.

Meta's Motion seizes on a series of cherry-picked statements from these hearings to argue that its cooperation came with strings attached, through which Meta could supervise and direct Class Counsel's work product, the Class notice list, and communications with Covalynt and A.B. Data. But that is not the

case. The cooperation the Court directed—which Plaintiffs welcomed—concerned (1) providing data to enhance notice, and (2) developing a claims procedure for the Meta verdict that will provide compensation to Class Members while weeding out fraudulent and invalid claims. ECF No. 791 at 1; ECF No. 827 at 3. Meta's unilateral application of filters to exclude Class Members from the data (*see* Section II.B) shows it failed to comply with Part 1. And as for Part 2, the claims process proposed already incorporates the very "cross checks" the Court envisioned to deter and limit fraud (ECF No. 792 at 11:25-12:1, 25:6-20), while preserving Meta's due process rights by providing a claim challenge process (ECF No. 827 ¶ 9) that allows Meta to identify specific defects or contrary evidence, as well as access to Court review of disputed determinations. ECF No. 845-2 ¶¶ 38-50. Covalynt will also assist in the claims process to detect fraud, as described at the September 30, 2025 hearing, by using data from a variety of sources to cross-check whether a claim is valid or fraudulent. ECF No. 792 at 32:24-33:17, 34:15-21. Those are strong protections against paying invalid claims. So strong, that even Meta endorsed this approach. *See id*. at 32:10 ("Mr. Chorba is giving [Covalynt] a good endorsement.").

**B. Class Counsel Properly Retained Covalynt Separate from A.B. Data to Process Flo's User Data, Integrate Meta's Results, and Quantify Deficiencies**

Despite the Court's instructions to cooperate, after months of delay, Class Counsel were skeptical that Meta would cooperate in identifying Class Members and providing notice to the Class. To account for this risk, Class Counsel separately retained Covalynt—apart from the fraud detection measures described above—on their own in March 2026 to begin locating individuals within the data Flo had produced in November 2025. ECF No. 845-8 ¶ 4. The goal of this process was to remove the Class's dependency on Meta to locate Class Members by updating the contact information in the Flo Data, including email addresses and phone numbers and, where possible, tracing those back to each person's current physical address. *See* ECF No. 845-8 ¶¶ 4, 6-15. This process had largely succeeded before Meta produced its so-called "Results." Covalynt's efforts identified 373,874 deliverable, active email addresses associated with Class Members, and it associated 207,565 of those email addresses with names and physical mailing addresses in California without any of Meta's data. ECF No. 845-8 ¶¶ 12-15.

Thankfully, Class Counsel did not wait for Meta's data to decide whether Class Members could be found. As described above, it took Meta until July 2026 to produce *any* Class data. And even then,

what Meta produced was a voluminous but largely useless selection of self-serving information. ECF No. 845-8 ¶¶ 16-19. Incorporating Meta's data increased the name-and-address group from 207,565 to 228,998; after removing persons Meta's data identified as male, or Covalynt identified as deceased, this produced the 222,115 individuals now subject to Plaintiffs' motion for judgment. *Id.* ¶ 18. The active-email group increased from 373,874 to 379,492, before the same exclusions reduced it to 368,648 (*id.* ¶ 19), demonstrating that Meta's email data overlapped almost perfectly with the Flo Data.

While the near unity of email addresses was enough to raise questions about the integrity of Meta's search process, subsequent discussions confirmed it was designed to fail from the start. In calls leading up to the production of the "Results," Meta's counsel admitted that it had excluded information about any individual that was associated with an IP address also used at some point in time by 10 or more other Meta users. ECF No. 844-2 at 4-5; Declaration of Christian Levis in Support of Plaintiffs' Opposition to Meta's Motion ("Levis Decl.") ¶ 9. This hard cap resulted in individuals being dropped from the "Results," including anyone who, for instance, shared WiFi such as in an office, a college dorm, or even a large household. This was improper. The April 16, 2026 Order, which the parties agreed to, anticipated that the parties would meet and confer on ambiguous matches, not that Meta would unilaterally delete potential Class Members associated with a single IP address value. ECF No. 827 at 4 n.2.

Meta also failed to search data sources containing historical IP addresses and device identifiers as the April 16, 2026 Order required. Levis Decl. ¶¶ 9-15. On September 18, 2026, Meta revealed for the first time in a letter to Class Counsel it had constructed the "Results" [redacted] *Id.* ¶ 9. This was a deliberate choice by Meta. Indeed, the data Meta produced for the Named Plaintiffs in this case showed that it retained historical IP address information ***back to 2010*** (*id.* ¶ 10; Levis Decl., Ex. 4) and historical device IDs for the Named Plaintiffs from as early as 2014 (*id.* ¶ 12; Levis Decl., Ex. 10), directly contradicting the purported limits on the "Results." *Id.* ¶ 13.

Meta's manipulation of data sources to try to obtain an advantage is further demonstrated by the [redacted] field it created. *Id.* ¶¶ 14-15. According to Meta, this field indicates whether a Meta user's [redacted] contained in the Flo Data. *Id.* ¶

14. As with the device ID and IP address data, the record shows Meta cherry-picked these results. Documents Meta produced for Named Plaintiffs show their predicted location *along with IP addresses* going back to 2013. *Id*. ¶ 15; Levis Decl., Exs. 18, 20. Meta chose to provide only location values, *i.e.*, those it wanted to use to challenge Class Member claims, while excluding IP address data that would be helpful in locating Class Members who registered for the Flo App years ago.

**C. Meta Refused to Provide Plaintiffs with the Same Materials and Access It Demands**

Meta's Motion also ignores that Class Counsel voluntarily offered to provide the level of transparency it claims to seek now, so long as Meta would agree to do the same, and allow Class Counsel, Covalynt, and A.B. Data to participate in the processes by which it generated and refined the "Results." For instance, during a June 2026 conference concerning the status of Meta's "Results," Meta insisted on these same supervisory and auditing powers described in its Motion. *Id*. ¶ 17. And although Class Counsel disagreed with that premise, they nevertheless asked whether Meta would agree to comparable access on Plaintiffs' side—including, for example, whether Class Counsel and Covalynt could speak with Meta engineers concerning the methodology used to generate the "Results," examine the processes and filters used to exclude individuals from those data, and assess whether available historical information had been incorporated as required by the April 16, 2026 Order. Meta declined. *Id.* ¶¶ 17-20. Meta's proposed one-sided transparency confirms that it does not truly want cooperation, but only to stymie Plaintiffs' efforts to identify Class Members, while hiding the truth about its own processes.

So too do the events immediately preceding Meta's Motion. On September 3, 2026, Plaintiffs inquired about Meta's own filtering methodology and use of historical information, but Meta would not share this information, claiming (oddly) that it needed more time to investigate its own processes. *Id*. ¶ 8. On September 8, 2026, Class Counsel offered to confer the following afternoon about the issues raised in Meta's Motion, and specifically asked Meta to come prepared to address Class Counsel's questions about Meta's own methodology and filtering. *Id*. ¶¶ 21-22. Meta instead filed its Motion that evening without attempting to resolve its issues with Plaintiffs. *Id*. ¶ 22. Its rush to file further shows Meta is not interested in actual compromise or identifying Class Members, but in attempting to limit Class Counsel's efforts to enter judgment for, identify, and notice the Class Members to whom it owes compensation.

### D. Class Counsel Properly Notified Settlement Class Members of the Potential for Additional Recovery From Meta

On April 22, 2026, the Court preliminarily approved the Google and Flo settlements, appointed A.B. Data to administer notice and claims, and approved the revised Notice Plan. ECF No. 834 ¶¶ 9-10. The formal notice program began June 12, 2026. By August 20, 2026, Plaintiffs reported direct emails to 3,393,698 people identified in the Flo Data, as well as postcards and indirect outreach. ECF No. 842 at 1-2. These efforts were properly disclosed to the Court.

On August 18, 2026, A.B. Data supplemented that program with a text beginning, "Message from Labaton Keller Sucharow LLP." The text directed recipients to the settlement website to check eligibility and file a claim, then separately explained that California recipients "may soon be entitled to claim $5,000, minus fees, from a jury verdict against Meta for wiretapping Flo users." ECF No. 844-5 at 3; ECF No. 844-1 ¶ 27. Plaintiffs also referenced the text outreach in their August 20, 2026 final approval filing. ECF No. 842 at 2; ECF No. 842-2 ¶ 21. The telephone numbers used for the transmission did not come from Meta's "Results" but from other independent sources. Levis Decl. ¶ 23. Moreover, because these messages were part of a test, only one round of text messages was sent. Having validated this means of notice, Plaintiffs intend to send further outreach to potential Class Members through this channel as they work to maximize the number of claims. ECF No. 842-2 ¶ 19.

Meta sent a cease-and-desist letter August 20, 2026, arguing text message notice was unauthorized and that the messages improperly used the word "wiretap". Levis Decl. ¶ 24. Class Counsel disagreed with Meta's position, but nonetheless offered the very next day to resolve the alleged issue by resending the message at their own expense after replacing the word "wiretapping" with "recording." *Id.* ¶ 25.

However, Meta rejected that proposed clarification and instead demanded an express retraction. ECF No. 844-7 at 3. That unjustified demand goes well beyond correcting any supposed ambiguity and runs the risk of undermining Class Members' trust in the legitimacy of the notice process, the claims administrator, and the claims process itself. That may cause recipients to disregard future communications, view the notice as illegitimate or fraudulent, or decline to submit claims altogether. That, of course, is Meta's goal. If removing confusion was Meta's concern, the clarification Class Counsel offered is more than adequate. Meta's insistence on inappropriate relief is only more evidence of its true intentions.

## III. ARGUMENT

### A. Class Counsel Properly Alerted Settlement Class Members of Their Rights by Text

#### 1. The Notice Plan Sets the Floor, Not the Ceiling, for Class Communications

Rule 23 requires the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B). This includes, where possible, direct notice to class members identifiable through reasonable effort. *Roes, 1-2*, 944 F.3d at 1045-47. The point is to provide class members meaningful opportunity to act on their rights, not restrict the avenues or means to provide notice, which would have the opposite effect.

Consistent with these principles, the Court directed Class Counsel to reach as many Class Members as possible at the December 4, 2025 hearing, criticizing the potential of a 6% claims rate as a product of an inadequate notice plan. *See* ECF No. 813 at 5:17-19 ("Now, notice. You know, the 6 percent claims rate was rolled out as if it were a statement of triumph. It's not. It's a statement of failure."); *id*. at 5:24-25 ("So 6 percent, not going to -- you've got to get that up to double digits, high double digits."). Moreover, the Court encouraged Class Counsel's data enrichment efforts, noting they were a "gold mine" and a "gold paved highway of reaching these people," prompting Class Counsel to come up with ways to use this information to provide the best notice possible under the circumstances. *Id.* at 7:2-4.

To achieve this goal, Class Counsel retained Covalynt to enrich the Flo Data, to alert as many potential Class Members as possible of the compensation Meta owed. ECF No. 845-8 ¶¶ 2, 4, 6-10. Class Counsel then used the results of Covalynt's efforts to text California Class Members reminding them to file claims in the existing Settlements and to alert them of the potential for further compensation down the line. This falls within the scope of the April 22, 2026 Notice Plan, which was purposefully flexible and contemplates additional forms of notice at Class Counsel and A.B. Data's discretion, after reviewing the results of the first notice round. ECF No. 834 ¶ 10. While Meta claims the Order implicitly prohibits any communication with Class Members that is not expressly identified (Mot. at 11), nothing in the Notice Plan or the Court's April 22, 2026 Order limits the means of reaching the Class. Nor does the Order impose a general preclearance requirement on all further notice-related communications, as Meta suggests. *Id*. The absence of such restrictions dooms Meta's self-serving reading of the April 22, 2026 Order. *See Gordon v. Kaleida Health*, 737 F. Supp. 2d 91, 97-100 (W.D.N.Y. 2010) (declining to read in similar

restrictions in a notice plan and rejecting assertion that plaintiffs' counsel's phone contact with prospective class members to remind them of key dates was improper or warranted prohibitions on speaking with potential claimants); *Roes, 1-2*, 944 F.3d at 1046 (criticizing notice efforts where counsel relied exclusively on authorized mailed notice, and did not supplement notice efforts, despite low claims rate). Indeed, Meta's own authority confirms that it is incorrect. In *Erhardt v. Prudential Group, Inc.*, which Meta cites, the Second Circuit vacated a contempt finding because the purportedly unauthorized communications (like those here) did not violate an explicit prohibition in the notice order. 629 F.2d 843, 844-47 (2d Cir. 1980) (declining to treat approval of one form of notice as an unstated prohibition on every other communication).

The reasoning applies here, where the August 18, 2026 text messages merely supplemented rather than displaced the approved notice. As the text makes clear, they identified Class Counsel, sent recipients to the same settlement website, and distinguished the settlements from a possible recovery on the verdict. ECF No. 844-5 at 3. They did not change or misrepresent the settlement consideration, the Class definition, the Claim Form, or anyone's right to seek exclusion. These are simply not material changes to the Notice Plan, as Meta contends (Mot. at 11-12) and thus do not violate the Order.

Nor was the Meta verdict a new addition to the Notice. While Meta complains that referencing the Meta verdict was improper (Mot. at 2), the Court-approved notices similarly informed recipients that the jury had returned a verdict for Plaintiffs, that eligible Class Members would be contacted later, and that their settlement election would not affect their right to recover from the Meta verdict. ECF No. 844-5 at 3 (quoting ECF Nos. 820-5, 820-6, and 820-7). Meta's present claim of confusion rests on the premise that Class Members would not understand that the settlements and the Meta verdict are separate sources of relief. The Court already rejected a similar argument at the December 4, 2025 hearing, where Meta claimed that having settlement notice followed by a separate notice concerning the verdict would be "very confusing" because both arose from the same case. The Court's response: "I wouldn't underestimate users so much." ECF No. 813 at 11:22-12:8. As the Court explained, notice could plainly distinguish "part one

of a settlement" from "part two related to a verdict" (*id.*), just as the text messages did here.[1]

Meta's allegations that Plaintiffs and A.B. Data overstepped by using the "Flo data" and "Meta's results" to send text message notice are also without merit. Mot. at 2, 12. At the outset, the order Meta points to concerns only how the "Results" of Meta's purported matching process would be used—not the Flo Data. *See* Mot. at 2 (citing ECF No. 827). And with respect to Meta's "Results," they were not relied on, or used to send the text messages Meta complains about. Levis Decl. ¶ 23. Rather, Covalynt independently located individuals' contact information, and their phone numbers, well before Meta's delayed data production. *Id.* Thus, Meta's claimed violation of the Court's April 16, 2026 Order—like its claim that Plaintiffs violated the Court's preliminary approval order—is meritless.

**2. The Texts are Not False and Misleading & Do Not Support Meta's Request**

Rule 23(d) authorizes the Court to supervise class communications and to limit communications when they are so misleading, likely to create confusion, or indicative of other abuses, that the potential harm to Class Members outweighs the sending party's constitutional right to free speech. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-04 (1981) (explaining restrictions on class communications impose serious restraints on expression, reinforcing the need for a specific showing of abuse and narrowly tailored relief to correct such issues); *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1439-41 (9th Cir. 1984) (reversing restrictions on counsel's ability to contact class members imposed without the specific findings required by *Gulf Oil*). This high threshold is not met here. Nothing in the text messages Meta challenges is confusing or misleading (*see* Section III.A.1 above) and even if it was, it would not rise to the level of clearly causing confusion or misleading class members to warrant Court intervention.

Meta's own authorities are instructive on this point. For instance, in *Erhardt* the President and CEO of the defendant sent letters to class members encouraging them to opt out of the case or else face personal liability for legal fees, a factually inaccurate threat. *See* 629 F.2d at 845-46. The court found that these intentionally misleading statements designed by the defendant to confuse and mislead class members

[1] Meta separately points to the fact that a Latham & Watkins attorney received the text, arguing that the recipient, as defense counsel, fell outside the Class. Mot. at 14; ECF No. 844-1 ¶ 27; ECF No. 834 ¶ 2. But Meta does not identify whether the attorney is a Flo user. If they are, there's no basis to challenge notice, and they just would not file a claim.

did not warrant Rule 23(d) restrictions. If this kind of malicious letter is not enough, then A.B. Data sending text messages to Class Members with notice of the settlement and an added reminder about the Meta verdict is not even close. Meta's other examples follow a similar pattern, involving extreme conduct that objectively harmed class members: the opposite of the text messages sent here. *See* Mot. at 12-14 (citing *Retiree Support Group of Contra Costa County v. Contra Costa County*, No. 12-cv-00944, 2016 WL 4080294, at *8, 11 (N.D. Cal. July 29, 2016) (requiring corrective notice to elderly class members, who evidence showed were actually misled, by communication that claimed in bold and capitalized letters they would receive "**NOTHING**" if they joined the settlement); *Alfred v. Pepperidge Farm, Inc.*, No. LA CV14-07086, 2020 WL 13587900, at *7-8 (C.D. Cal. Apr. 14, 2020) (communications were inconsistent in describing the effects of opting out and called into question class counsel's motives)).

Meta's complaints about the use of the word "wiretapping" versus "recording" do not create the type of Class Member confusion warranting relief either. First, wiretapping is not a term defined in CIPA and is generally understood to broadly cover means of acquiring communications. The word wiretap is not categorically distinct from what Meta was found liable for under CIPA § 632, which prohibits both eavesdropping and recording confidential communications by any means. ECF No. 776 at 26. Second, as a practical matter, Class Members and most lay people are not so steeped in the distinction between CIPA sections such that using "wiretapping" versus "recording" would not confuse them or impact the decision to file a claim. Thus, there is no harm or confusion to the Class to rectify here.

Meta's separate assertion that the use of the word "wiretapping" is "libelous" because it implies Meta broke the law ignores the fact that Meta was *already found liable* for violating CIPA § 632, which is a criminal statute. Mot. at 14. Meanwhile, its separate assertion that wiretapping carries a "specific and negative connotation" is equally unsupported, and Meta does not explain how this broad technical term would carry any more of a negative connotation than using the words "recording" a "confidential communication"—which arguably carries a *far worse* connotation. Nevertheless, Class Counsel offered to resend the message at their own expense to use the precise term "recording" Meta demanded. That is all that is warranted to address Meta's purported claims of confusion. There is no basis for a broad retraction like Meta suggests as this *would* harm the Class, by undermining confidence in the claims

process and deterring Class Members from submitting claims, just as Meta hopes. If Meta's concern were truly confusion over terminology, then Class Counsel's proposed clarification would fully address it.

Finally, Meta's claim that informing recipients that if they "lived in California" the Meta verdict will be addressed "soon" caused "confusion" and misled Class Members is also baseless. Mot. at 13. There is nothing confusing about the text on its face: it gave no payment date, promised no immediate distribution, and described a potential opportunity to file a claim. The separate discussion of the verdict and the link to the settlement website gave recipients a way to learn which process applied and when. ECF No. 844-5 at 3. Meta never explains how merely referencing the verdict, the claims process for that verdict (which will start "soon"), or the State of California rises to the level of warranting action under Rule 23(d).

Meta's real complaint is that it lost at trial and does not want Class Members to be reminded of that verdict, which is now more than a year old. Class Counsel's clear goal, as furthered by the texts, was to help more people learn they may recover $5,000 as a consequence. That is entirely permissible.

**B. Meta's Request for Control Over the Notice Program Should Be Denied**

The same basic problem runs through Meta's demands for Class data, access to Covalynt, and all enrichment communications. All of these requests contravene the long-standing goal of notice, which is to inform people of their rights so that they can exercise them. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950) (requiring notice reasonably calculated to apprise interested parties and afford them an opportunity to be heard, using means one desirous of actually informing them would reasonably adopt); *Roes*, 944 F.3d at 1047-49 (requiring the "best notice practicable").

A party, like Meta, whose ultimate monetary exposure falls when fewer people claim relief has an obvious reason to prefer less effective notice. The Ninth Circuit has expressly identified the incentive to seek subpar notice, burdensome claims procedures, and restrictive eligibility conditions in the context of claims-made and reversionary settlements. *See Roes*, 944 F.3d at 1058-59; *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 677-79 (9th Cir. 2025) (holding that concerns over collusion "apply[] equally" to claims-made and common fund reversion settlements). The incentives Meta has in the context of a verdict are no different: less claims equal a lower payout. Courts faced with this same conflict consistently reject or restrict defendants' attempts to insert themselves into the notice and claims process.

*See Camp v. Alexander*, 300 F.R.D. 617, 622, 625-27 (N.D. Cal. 2014) (recognizing the defendant's incentive to reduce class size, potential liability, and invalidate opt-outs obtained through the challenged employer outreach); *Stewart v. USA Tank Sales & Erection Co.*, No. 12-05136-CV-SW-DGK, 2014 WL 836212, at *9 (W.D. Mo. Mar. 4, 2014) (rejecting settlement where defendant would administer claims and simultaneously receive unclaimed funds given a "patent conflict of interest"). As in these examples, Meta's limited right to challenge fraudulent claims is not a right to control the machinery that generates claims in the first instance.

Meta's demands also misstate the Court's orders. ECF Nos. 791 and 828 require cooperation on notice and claims, and the April 16, 2026 Order requires Meta to produce "Results" for those purposes; nothing gives Meta approval authority over Class Counsel's outreach or entitles it to copies of every attorney-consultant communication. And Meta's refusal to offer reciprocal access to its own engineers and data confirms the point: what Meta wants is one-way access to frustrate notice and deter claims, not transparency. Levis Decl. ¶¶ 16-18; ECF No. 844-2 at 4-5; ECF No. 846 at 1 n.1.

The level of control that Meta is entitled to—*i.e.*, defending against fraudulent and unverified claims—is already embedded in this Court's rulings and Plaintiffs' proposed claims process. ECF No. 845. The post-trial Order rejected speculative ascertainability attacks while preserving Meta's opportunity to present defenses when putative Class Members come forward, ECF No. 776 at 16, and the April 16, 2026 Order permits Meta to use the Flo Data and its "Results" to challenge or appeal claims, ECF No. 827 ¶ 9. Plaintiffs' proposed program goes further still, giving Meta complete electronic Claim Forms and supporting documentation, monthly affidavits of presumptive validity, evidence-based disputes, and *de novo* review of preserved appeals. ECF No. 845-2 ¶¶ 38-50. Those protections test whether a claimant should be paid. Meta has not explained why it also needs every potential recipient's contact information or Class Counsel's internal discussions about reaching that person before any claim is even submitted.

Meta's argument in favor of this unprecedented level of oversight (Mot. at 11), and wild suggestion that Covalynt or Class Counsel agreed to it, rest on (1) inaccurate quotations from hearings or meet-and-confers, and (2) conflating two separate Covalynt engagements by different parties, for different purposes: (a) its fraud detection work for A.B. Data (*see* Declaration of Justin Parks ¶ 3 ("A.B. Data has engaged

Covalynt to assist with fraud detection by analyzing submitted claims for evidence of fraud and . . . did not engage Covalynt for any other services[.]")); and (b) its identity verification and enrichment work for Class Counsel. *See* Declaration of Bryan Heller ¶ 2 (Describing the "two separate and independent engagements in this Action" for A.B. Data and Class Counsel).

Meta simply has no right to access any of the work Covalynt prepared for Class Counsel. Rule 26(b)(3) expressly protects qualifying litigation materials prepared by a party's consultant, not just by a lawyer. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). Under Ninth Circuit law, the question is whether the materials were prepared "because of" litigation and "would not have been created in substantially similar form" without it. *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Mgmt.)*, 357 F.3d 900, 907-10 (9th Cir. 2004). Here, Class Counsel commissioned Covalynt after trial to identify people within the adjudicated Class, develop the factual basis for a judgment request, and communicate about recovery. ECF No. 845-8 ¶¶ 4, 6-19; ECF No. 846 at 1-4. That is litigation work, not ordinary business data processing merely relabeled as privileged.

Meta's attempt to end-run these protections by claiming the parties promised more at hearings is meritless. Covalynt never promised to share its data, generally, with Meta. Rather, at the September 30, 2025 hearing, Mr. Heller offered to share the "backup data" for "deduction codes" that ClaimScore produced for each individual claim so that all parties could assess those claim-specific determinations. ECF No. 792 at 32:8-33:17. That discussion concerned ***claim validation decisions*** in the Meta claims process. It was not a commitment—by Covalynt or Class Counsel—to disclose every analysis, data source, or attorney communication arising from Class Counsel's later, separate retention of Covalynt for ***notice enrichment***. Meta's attempts to treat Class Counsel's separately commissioned investigative work and Covalynt's role in fraud prevention the same should be rejected. ECF No. 844-8 ¶ 3.[2]

Meta's criticisms of A.B. Data are equally meritless and do not warrant any of Meta's requested relief. No one disputes, consistent with Meta's authorities, that claims administrators should be neutral

[2] Likewise, Plaintiffs never agreed to "include Meta in plaintiffs' discussions about the Flo data with A.B. Data and Covalynt." Mot. at 4. And while the parties did "confer on the post-trial process . . . after plaintiffs had received and processed the Flo data" (*id.*) their *disagreement* is reflected in the December 2025 orders. *See* ECF Nos. 815, 816.

(*see* Mot. at 12 (citing *Livingston v. MiTAC Digital Corp.*, No. 18-cv-05993, 2019 WL 8504695, at *7 (N.D. Cal. Dec. 4, 2019), and *McHorney v. GameStop Corp.*, No. CV 09–2879, 2010 WL 11549399, at *7 (C.D. Cal. June 17, 2010)), but A.B. Data simply has done nothing to put its neutrality in question, especially because *no claims concerning Meta have been filed*. Meta cites no authority that sending text message notice—the only A.B.-related conduct it complains of—makes it unneutral, rather than simply an effective claims administrator doing its job to get notice out to as many Class Members as possible.

The Court should also reject Meta's request for every notice recipient's identity, the identity of the people who drafted or approved the notice, its sources, versions, and transmission dates. ECF No. 844-8 ¶ 6. The actual text, date, and existence of the transmission are already before the Court. ECF No. 844-5 at 3; ECF No. 844-1 ¶ 27; ECF No. 842-2 ¶ 21. And to the extent the Court requires, the source and scope of that batch can be established without opening the entire notice list and every internal approval discussion to Meta. The Court should reject Meta's wholesale unjustified demand for more information.

## IV. CONCLUSION

Plaintiffs are not disputing that once the claims process starts, Meta is free to raise legitimate issues through the procedures the Court approves. But Meta has not shown why it is now entitled to corrective notice, control over future notice, access to every attorney communication, or an end to Class Counsel's independent effort to identify and obtain relief for its clients. The Court should reject this attempt to turn cooperation into unilateral control. Meta may test whether a claim is valid. It does not get to decide whether the person with that claim ever learns how to make it.

To the extent the Court identifies a specific concern about the August 18, 2026 text (and it should not), any relief should be confined to that specific concern, not the sweeping retraction, prospective restraint, and disclosure regime in Meta's proposed order. The Court should instead move forward on Plaintiffs' motions for judgment and claims administration, ECF Nos. 846 and 845, so that the Class can receive the relief the verdict, the real source of Meta's complaints, makes possible.

Dated: September 22, 2026

Respectfully submitted,

*/s/ Christian Levis*
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)

**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tele: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
Danielle Izzo (*pro hac vice*)
Gloria J. Medina (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com
dizzo@labaton.com
gmedina@labaton.com

Diana J. Zinser (*pro hac vice*)
Jeffrey J. Corrigan (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law
jcorrigan@scc.law

*Co-Lead Class Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Ronald A. Marron (SBN 175650)
Alexis M. Wood (SBN 270200)
Kas L. Gallucci (SBN 288709)
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665

ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (772) 783-8436
kent.williams@sirillp.com

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, OH 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*