**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Michele D. Johnson (Bar No. 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: +1.714.540.1235

**GIBSON, DUNN & CRUTCHER LLP**
Christopher Chorba (Bar No. 216692)
*cchorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1.213.229.7503

Elizabeth K. McCloskey (Bar No. 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera (Bar No. 301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: +1.415.393.8200

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

ERICA FRASCO, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FLO HEALTH, INC., et al.,

Defendants.

Case No. 3:21-CV-00757-JD

**DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A FINAL JUDGMENT**

Date: October 29, 2026
Time: 11:00 a.m.
Judge: Hon. James Donato
Court: Courtroom 11 – 19th Floor

## TABLE OF CONTENTS

Page

I. INTRODUCTION .... 1

II. LEGAL STANDARD .... 3

III. ARGUMENT .... 3

A. The Court Already Rebuffed Plaintiffs' Prior Proposal For A Premature And Legally Unsupported Final Judgment .... 4

B. Plaintiffs' Renewed Request For A Premature And Legally Unsupported Final Judgment Should Also Be Denied .... 5

1. Plaintiffs' Proposed Entry Of Partial Final Judgment Based On Undisclosed And Untested Analysis Violates Due Process .... 5

2. Partial Final Judgment Cannot Be Entered Without First Establishing A Mechanism For Disposing Of Unclaimed Funds .... 9

3. Important Discretionary Considerations Counsel Further Against Plaintiffs' Unlawful Entry Of Partial Final Judgment .... 10

IV. CONCLUSION .... 12

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allapattah Servs., Inc. v. Exxon Corp.*,
157 F. Supp. 2d 1291 (S.D. Fla. 2001) .......... 5, 7, 9, 10

*Bultemeyer v. CenturyLink Incorporated*,
2025 WL 2337097 (D. Ariz. Aug. 13, 2025) .......... 6

*Curtiss-Wright Corp. v. General Electric Co.*,
446 U.S. 1 (1980) .......... 3

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 8

*Evans v. Synopsys, Inc.*,
34 F.4th 762 (9th Cir. 2022) .......... 10

*In re Hotel Tel. Charges*,
500 F.2d 86 (9th Cir. 1974) .......... 5

*Krakauer v. Dish Network*,
2017 WL 3206324 (M.D.N.C. July 27, 2017) .......... 5, 8

*Lyngaas v. Curaden AG*,
436 F. Supp. 3d 1019 (E.D. Mich. 2020), *aff'd*, 992 F.3d 412 (6th Cir. 2021) .......... 5

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008) .......... 5

*Morrison-Knudsen Co. v. Archer*,
655 F.2d 962 (9th Cir. 1981) .......... 3, 12

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) .......... 5

*Nolen v. PeopleConnect, Inc.*,
2026 WL 2871735 (9th Cir. 2026) .......... 1, 5, 12

*Physicians Healthsource, Inc. v. A-S Medication Solutions LLC*,
2018 WL 6179094 (N.D. Ill. Nov. 27, 2018) .......... 6

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir. 2010) .......... 1, 8

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) .......... 1, 5

*Strey v. Hunt Int'l Res. Corp.*,
696 F.2d 87 (10th Cir. 1982) .......... 2, 9, 10

*Wood v. GCC Bend, LLC*,
422 F.3d 873 (9th Cir. 2005) .......... 3, 12

**RULES**

Fed. R. Civ. P. 54(b) .......... 3, 9

## I. INTRODUCTION

Last time plaintiffs proposed entering a final judgment encompassing absent class members before the post-trial process concludes, this Court told them, "we're not going to do that." Dkt. 833 at 26:5–7. Nothing in plaintiffs' renewed request warrants reconsideration of that position.

Plaintiffs now propose entering a *partial* final judgment of more than $1.1 billion for 222,115 unidentified people who they assert Covalynt has—unilaterally and without explanation—determined are class members. Dkt. 846 at 1. But as this Court has consistently observed, "Meta is entitled to 'receive a fair opportunity to present its defenses when putative class members actually come forward.'" Dkt. 776 at 16. Plaintiffs' proposal bypasses that opportunity altogether, because no class members would have to "come forward" before a ten-figure judgment is entered. Indeed, Meta does not know—and has no way to find out—the identities of those 222,115 people, in clear violation of Meta's due process right to "challenge the claim to class membership" by "each claimant during the claims administration process" and to weed out any illegitimate claimants. *Nolen v. PeopleConnect, Inc.*, 2026 WL 2871735, at *15 (9th Cir. 2026). Plaintiffs cannot obtain a final judgment without "showing that each person awarded damages" is "a member of the class" and then giving Meta a meaningful chance to "rebut[]" that showing. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 n.3 (9th Cir. 1990).

At a more basic level, Meta does not know whether plaintiffs' 222,115 number is remotely correct—and can only assume it is significantly (and intentionally) "inflated" given plaintiffs' steadfast refusal to disclose the basis for "how [they] calculated" it. *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) (vacating entry of "aggregate class-wide judgment[]"); *see* Dkt. 850 at 6-7. As discussed in Meta's emergency motion (Dkt. 844), Covalynt has been acting as plaintiffs' own private, paid consultant for months, compromising any role it might have had as a neutral arbiter. *See* Dkt. 847-3 (admitting that plaintiffs' counsel "separately" hired Covalynt "to perform identity resolution and data enrichment on [Flo] user records"); *see also* Dkt. 850 at 3-7. Plaintiffs have refused to share the analysis and data underlying Covalynt's purported findings, claiming immunity from any "request to audit" Covalynt's work. Dkt. 847 at 1. Entering judgment under these circumstances would open the floodgates for class action lawyers to covertly

analyze data with a privately retained expert, come up with some undisclosed list of purported class members, and—presto—demand a massive judgment based on the number that comes out of their black box, with no disclosure of analysis, no need for replicability, and no adversarial testing whatsoever. That is not how due process works.

Furthermore, entry of a final judgment as to a class (or any portion thereof) is improper under Rule 54(b) unless this Court first establishes "the principles that will guide the disposition of any unclaimed funds." *Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87, 88 (10th Cir. 1982). Plaintiffs offer no proposal for what will happen to the portion of their proposed billion-dollar partial final judgment that will likely go unclaimed. And given the complications posed by any substantial pool of unclaimed damages, this Court has already directed that there will be "no cy-près" and "no undistributed corpus" in this matter. Dkt. 833 at 24:17–20. That deficiency independently warrants denial of plaintiffs' motion.

Powerful discretionary considerations counsel further against plaintiffs' proposal. Unlike the partial final judgment that Meta originally suggested entering as to the named plaintiffs' individual claims, the partial final judgment plaintiffs seek would resemble nothing so much as Frankenstein's monster. It would spawn confusion, duplicative proceedings, and extra work for the Ninth Circuit. If plaintiffs' proposed judgment were entered, Meta would be forced to take an immediate appeal and raise not just its merits arguments against the jury's verdict finding a violation of California Penal Code § 632, but also its challenges to class certification, the post-trial process, the damages award, and the partial final judgment itself. *See, e.g.*, Dkt. 766 at 3-11; Dkt. 783 at 12-22, 25-27. The claims of the remaining class members, which implicate many of those same issues, would remain before this Court while the post-trial process plays out as to them. Then, after the post-trial process concludes, the Court would presumably enter a second judgment as to the claimants not included in the first judgment—and Meta would have to take a second appeal to raise all the arguments that apply to that subset. These complications are a recipe for confusion. Worse still, separate appeals regarding different subsets of purported class members could lead to inconsistent rulings about the propriety of the applicable post-trial process: the Ninth

Circuit could find reversible error in the truncated post-trial process plaintiffs propose for 222,115 people but not the rest (or vice versa).

Plaintiffs, in short, seek final judgment on behalf of unidentified class members based on undisclosed data and untested analysis. No part of that unprecedented proposal comports with the law, and all of it threatens confusion and waste of judicial resources. This Court should deny plaintiffs' request for a premature final judgment, just as it did before.

## II. LEGAL STANDARD

A district court "may direct entry of a final judgment" as to some plaintiffs "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). This determination is within "the sound judicial discretion of the district court." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005) (quoting *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980)). "Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981). A district court may not "direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order." *Id.* If such a judgment would require the appellate court "to address legal or factual issues that are similar to those contained in the claims still pending before the trial court," that "weigh[s] heavily against entry of judgment under the rule" and requires "specific findings" as to why the judgment is nevertheless necessary. *Id.*

## III. ARGUMENT

Plaintiffs' proposed entry of partial final judgment on behalf of a purported 222,115-person subset of the class is blatantly unlawful. No final judgment can be entered until Meta is made aware of who those claimed class members are and then had a full and fair opportunity to rebut their assertion of class membership. Yet plaintiffs have kept the identities of these 222,115 people a secret, while steadfastly refusing to disclose the data and analysis on which plaintiffs' request purports to rely. Plaintiffs' deliberate subversion of the adversarial process cannot support

entering their proposed billion-dollar judgment. For that and many other reasons, plaintiffs' motion for entry of partial final judgment as to a purported subset of the class should be denied.

**A. The Court Already Rebuffed Plaintiffs' Prior Proposal For A Premature And Legally Unsupported Final Judgment**

This is plaintiffs' second request for entry of a final judgment before there has been any notice program and post-trial process for absent class members. This Court rejected their similarly unlawful and unsupported proposal last Spring.

Specifically, at the April 2026 hearing, plaintiffs proposed that "judgment could be entered before the claims are filed" for "the total number of estimated class members times 5,000"—i.e., the per-claimant statutory damages amount. Dkt. 833 at 24:21–25:24. The Court rejected that suggestion out of hand: "I don't want to do that." *Id.* at 25:25. The Court then told the parties that there was no need to "meet and confer" on this matter because "we're not going to do that." *Id.* at 26:5–7. Instead, the Court ordered that "the dollar number in the judgment will be purely the product of the number of claims" submitted during the post-trial process "that are valid multiplied by 5,000." *Id.* at 25:8–10. Accordingly, the Court continued, "every dollar in [the judgment] will be a dollar allocated to a claimant," and there will be "no cy-près" or "unpaid balance that needs to be handled." *Id.* at 25:12–15; *see also id.* at 24:17–20 ("There's no cy-près. There's no undistributed corpus. Nothing. It's just going to be literally the number of people who filed a claim multiplied by 5,000."). Plaintiffs' motion once again seeking entry of final judgment before *any* claims have been submitted disregards the Court's ruling.

Now, plaintiffs contemplate entry of a *partial* final judgment for 222,115 purported class members who they claim to have identified with "their full name and current physical address," while deferring all remaining potential claimants to the post-trial process. Dkt. 846 at 1. This proposal is equally inconsistent with this Court's prior guidance. Back in September 2025, Meta proposed entering a partial final judgment as to the named plaintiffs only—which would have allowed an immediate appeal of Meta's merits challenges to the jury's verdict, while reserving class certification and post-trial issues for a subsequent appeal, if needed (thus expediting, in Meta's view, the process towards a final resolution of this matter one way or another). *See* Dkt. 783 at 11-12. This Court denied that request, making clear that "[t]here will be one judgment" in

this case "when the time for judgment comes," and "[w]e're [not] doing anything in between." Dkt. 792 at 22:5–7. Plaintiffs' proposal for a more complicated partial final judgment—which, as discussed below, is riddled with legal flaws and practical headaches—cannot be squared with this Court's firm rejection of any kind of two-track proceeding.

### B. Plaintiffs' Renewed Request For A Premature And Legally Unsupported Final Judgment Should Also Be Denied

Nothing warrants revisiting the Court's prior orders directing that there will be no final judgment before the post-trial process concludes. Plaintiffs' latest proposal for an early final judgment is legally improper and entirely impractical.

#### 1. Plaintiffs' Proposed Entry Of Partial Final Judgment Based On Undisclosed And Untested Analysis Violates Due Process

In any class action that proceeds to final judgment, there "must be a showing that each person awarded damages was" in fact "a member of the class." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 n.3 (9th Cir. 1990). Accordingly, "[a]s a matter of fairness and 'basic due process'"—to say nothing of the Seventh Amendment—a defendant "in a class action not resolved by settlement" who "will ultimately pay damages to class members has a right to participate in claims administration and 'to object and oppose any unfounded or incorrect claim.'" *Krakauer v. Dish Network*, 2017 WL 3206324, at *6 (M.D.N.C. July 27, 2017) (quoting *Allapattah Servs., Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1324 (S.D. Fla. 2001); *see, e.g.*, *Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1023 (E.D. Mich. 2020), *aff'd*, 992 F.3d 412 (6th Cir. 2021); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658, 671 (7th Cir. 2015). Otherwise said, a defendant must be "given a fair opportunity to challenge the claim to class membership" by "*each claimant* during the claims administration process," as the Ninth Circuit recently reiterated. *Nolen v. PeopleConnect, Inc.*, 2026 WL 2871735, at *15 (9th Cir. 2026) (Berzon, J., joined by Friedland and Mendoza, JJ.) (emphasis added). Bypassing such a process and entering a "gross damages" judgment for "unsubstantiated" claims of unidentified class members is impermissible because it "significantly alters substantive rights." *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974); *see McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008).

In line with these principles, this Court has rightfully recognized that "Meta is entitled to 'receive a fair opportunity to present its defenses when putative class members actually come forward,'" most notably to demonstrate that a claimant does not meet the criteria for class membership. Dkt. 776 at 16; *see* Dkt. 792 at 5:10-12 (this Court emphasizing need to "make sure that we do not have a due process problem"). Plaintiffs' request for an immediate final judgment—before any claimant has come forward—for 222,115 purported class members based solely on secret "work product" that plaintiffs refuse to share with Meta or this Court directly contravenes these basic due process safeguards. Dkt. 847 at 1.

Courts have entered early gross damages judgments in class actions only when the defendant (and the Court) have complete information about the class—and where class size and composition are undisputed and beyond doubt. Specifically, such a judgment is permissible if the defendant's own records directly and indisputably identify the class members. Plaintiffs' own cases illustrate the point. In *Physicians Healthsource, Inc. v. A-S Medication Solutions LLC*, 2018 WL 6179094 (N.D. Ill. Nov. 27, 2018), the defendant violated the Telephone Consumer Protection Act by faxing unsolicited advertisements to 11,422 fax numbers. *Id.* at *1. There was no "legitimate dispute" as to "the names and fax numbers of those to whom the fax at issue" was sent, because the defendant itself disclosed those records. *Id.* at *2 & n.1. There was thus "no mystery regarding the identity of the fax recipients/class members" and "[n]o further process . . . needed prior to entry of judgment." *Id.* With the class size and composition firmly established and uncontroverted, the court concluded it could enter judgment. *Id.* at *3.

*Bultemeyer v. CenturyLink Incorporated*, 2025 WL 2337097 (D. Ariz. Aug. 13, 2025), reflects the same reasoning. There, a jury determined that the defendant violated the Fair Credit Reporting Act by obtaining class members' credit reports without a permissible purpose. *Id.* at *1. The court entered judgment in favor of 56,075 class members. *Id.* In doing so, the court noted "that Defendant is the party that identified these 56,075 individuals as those on whom it obtained a consumer credit report during the class period and whom they could not confirm had signed a class waiver or arbitration provision." *Id.* at *4. Moreover, even after identifying this comprehensive list of class members, the defendant "had multiple chances" to further cull and

pressure test the list, including by "manually search[ing]" it and identifying one more individual who had signed a class waiver. *Id.* at *3.

This case is totally different. Plaintiffs are not seeking a judgment for people specifically identified in Meta's own records. They want a judgment for people who *Plaintiffs' counsel*—with the help of their own paid consultant, Covalynt—purport to have identified by combining and analyzing customer records belonging to a third party, Flo, and other undisclosed sources of data (in addition to certain Meta data, though Meta does not know which data or how it was used). *See* Dkt. 846 at 1. So unlike in the foregoing cases, neither Meta nor the Court can confidently determine whether the 222,115 individuals for whom plaintiffs seek judgment are proper class members. Plaintiffs have refused to disclose who is on their secret list, let alone provide sufficient information to enable proper adversarial testing and verification. Without that essential information, Meta cannot exercise its "basic due process" right "to object and oppose" any illegitimate claimants. *Allapattah Servs.*, 157 F. Supp. 2d at 1324.

Meta has repeatedly raised these issues with plaintiffs, but they have steadfastly refused to disclose Covalynt's analysis and data—thereby making it impossible for Meta (or the Court) to determine whether the 222,115 individuals for whom plaintiffs claim to "now have precise contact information, including their full name and current physical address" are actually proper claimants. Dkt. 846 at 1; *see* Dkt. 844 at 9-11; Dkt. 850 at 3-7. Instead, plaintiffs offer two bought-and-paid-for declarations from Bryan Heller of Covalynt, the supposedly neutral third party that plaintiffs surreptitiously retained, compromising Covalynt's integrity in the process. *See* Dkt. 844 at 9-11; Dkt. 850 at 3-7. Even with minimal information, Meta has demonstrated the numerous problems in Covalynt's analysis evident on the face of the two Heller Declarations. Dkt. 850 at 3-7 (describing, among other things, problems with relying on bare IP address information related to a user's most recent activity on the Flo app).

Importantly for present purposes, the Heller Declarations say nothing concrete about how Covalynt claims to have "completely identified" the 222,115 individuals. Dkt. 846 at 3. The first Heller Declaration says only that "[a]fter incorporating Meta's data, Covalynt reran the ClassResolution and DeepValidation processes on the Flo Data" and somehow reached that

number, without providing any specifics as to how those processes were applied here. Dkt. 845-8 at 4-5. And the second Heller Declaration says even less about Covalynt's actual work in this case: it merely describes Covalynt's "proprietary" ClassResolution and DeepValidation processes in the abstract before baldly asserting that "none of the 222,115 identities" purportedly identified by Covalynt here "were ambiguous or unresolved." Dkt. 847-3 at 6-7. None of these statements gives Meta or this Court any meaningful information as to the 222,115 people for whom plaintiffs seek immediate entry of final judgment.

The Heller Declarations are akin to a scientist explaining how to run a double-blinded randomized controlled trial and then touting study results, while simultaneously refusing to disclose any specifics about how that methodology was applied in that particular study, or why the study's conclusions as to the relevant dataset are reliable and replicable. In science (as in litigation) that is not how things are supposed to work. After conducting a study and reaching conclusions about the results, any good scientist (or expert witness) invites and enables others to replicate her experiment and test her findings. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993) (observing that "submission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected"). Plaintiffs and Covalynt should be doing the same, rather than disparaging the normal adversarial process as an unnecessary and unwanted "audit," Dkt. 847 at 1, of Covalynt's concededly "auditable" work, Dkt. 847-3 ¶ 12. It is absurd for plaintiffs to insist they can obtain a billion-dollar judgment without subjecting the data and analysis underlying it to adversarial testing—or even showing their work as to "how [they] calculated" their 222,115 figure. *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).

Once again, the cases plaintiffs cite prove the point. Take *Krakauer*, where the court refused to enter judgment despite a far more robust basis for the proposed class list than plaintiffs have offered here. There, the plaintiffs sought a judgment based on the business records maintained by a software company of the defendant's agent. 2017 WL 3206324, at *1. Those records identified the phone numbers the defendant's agent had called in violation of the Telephone Consumer Protection Act, but they did not identify all the names and addresses associated with

those numbers. *Id.* So plaintiffs retained an expert to locate the missing class member information. *Id.* The court *declined* to enter judgment based on plaintiffs' analysis of the phone number data, reasoning that the defendant "had no opportunity to challenge the attribution of names and addresses to particular individual phone numbers." *Id.* at *6. And while the court gave plaintiffs the option to later "move for judgment in favor of" those "persons whose membership in the class . . . cannot reasonably be disputed," the court ordered the plaintiffs to "provide [the defendant] with a full list of any such class members' names, addresses, phone numbers, and the source(s) of that information." *Id.* at *8-9. At that point, the court continued, the defendant would "communicate in writing any general objections it has about the list, along with any specific objections to the status of any individual on the list." *Id.*

Meta has received nothing close to even that rudimentary process here. Meta does not know—and given plaintiffs' stonewalling, has no way to learn—the identities of the people for whom plaintiffs seek final judgment, let alone whether they are in fact women who meet the criteria for class membership. Entering the final judgment plaintiffs seek under these circumstances would plainly violate Meta's "basic due process" right to "object and oppose any unfounded or incorrect claim." *Allapattah Servs.*, 157 F. Supp. 2d at 1324.

### 2. Partial Final Judgment Cannot Be Entered Without First Establishing A Mechanism For Disposing Of Unclaimed Funds

Plaintiffs' proposal has yet another independently dispositive problem: The claims of their asserted 222,115-person subset of the class "will not be the subject of a final decision"—and thus not subject to entry of judgment under Rule 54(b)—until this Court establishes "the principles that will guide the disposition of any unclaimed funds." *Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87, 88 (10th Cir. 1982). If history is any guide, a meaningful portion of the proposed $1.1 billion judgment will go unclaimed during the post-trial process. The Court therefore must decide what will happen with unclaimed funds before any partial final judgment could be entered. But a well-founded desire to avoid that situation was a key reason this Court rejected plaintiffs' original proposal for a premature final judgment. It ordered that there will be "no cy-près" and "no undistributed corpus"—and that, instead, "every dollar in [the judgment] will be a dollar allocated to a claimant" who submitted a valid, non-fraudulent claim. Dkt. 833 at 24:17–20, 25:8–15.

Because there can be no final judgment under Rule 54(b) if and until a *cy pres* mechanism is established, *Strey*, 696 F.2d at 88, and because (as this Court recognized) "the *cy pres* distribution of unclaimed funds is disfavored" regardless, *Allapattah Servs.*, 157 F. Supp. 2d at 1305, plaintiffs' request for entry of partial final judgment is entirely improper, even putting aside their inexplicable failure to disclose the basis for their request.

### 3. Important Discretionary Considerations Counsel Further Against Plaintiffs' Unlawful Entry Of Partial Final Judgment

Plaintiffs' motion for entry of a partial final judgment as to a subset of the class is worse than just legally unsupported. It makes no sense as a practical matter. Entering final judgment as to some purported class members but not others would cause confusion, waste judicial resources, and risk conflicting rulings on the post-trial process(es) for different portions of the class.

If a partial final judgment were entered, Meta would have no choice but to appeal immediately. *See Evans v. Synopsys, Inc.*, 34 F.4th 762, 770-71 (9th Cir. 2022) (holding that "deadline to file a notice of appeal" is "jurisdictional" and "runs from the entry of [final] judgment" (alteration in original)). When Meta originally proposed a partial final judgment as to the named plaintiffs, that approach would have led to a clear division of issues on appeal: Meta's initial appeal as to the named plaintiffs would have involved only merits arguments regarding the jury's verdict on their individual claims, while Meta's remaining challenges (including to class certification, the post-trial process, and remedies) would not have gone before the Ninth Circuit until later. *See* Dkt. 783 at 11-12. Meta had proposed to stay the post-trial process pending appeal to reduce the risk of duplicative proceedings and wasted judicial resources. *Id.* But even if the post-trial process had continued alongside that appeal, this Court would not have been thrust into the untenable position of having the post-trial process evaluated on appeal while it was ongoing. Either way, the appellate process would have started (and likely ended) much sooner. Even so, the Court rejected that proposal in the interest of avoiding piecemeal appeals. Dkt. 792 at 22:5–7.

Plaintiffs' proposal has none of the virtues—and far more flaws—than Meta's original proposal. An appeal from a partial final judgment as to some purported class members would involve no clear division between merits and non-merits issues. Instead, that initial appeal would involve not only the merits of plaintiffs' claims, but also Meta's challenges to class certification,

the post-trial process used to identify this subset of purported class members, the constitutionality of a billion-dollar damages award on these facts, and the propriety of the partial final judgment itself. Meanwhile, plaintiffs would presumably ask that the post-trial process move forward in this Court—though they are conspicuously silent on exactly what they want to happen after entry of the partial final judgment they seek.

Plaintiffs do not say whether the 222,115 people for whom they seek a partial final judgment would still have to participate in the rest of the post-trial process. Presumably, those 222,115 people would need to come forward to claim their monetary award in some way. One option would be for them to do so in the same post-trial process as the remaining class members. If that is what plaintiffs envision, Meta's initial appeal would involve the Ninth Circuit evaluating the post-trial process while it unfolds in this Court, which is untenable. Alternatively, plaintiffs might think they can simply dole out checks to the "current address[es]" they claim to possess for those 222,115 people, with no further process of any kind. Dkt. 846 at 3. If plaintiffs' request really is that bold, Meta's initial appeal would raise challenges to that unprecedented (lack of) process, injecting entirely new issues into the case—with especially strong chances of reversal given the obvious problems with tossing a billion dollars' worth of checks into the mail with no verification mechanisms whatsoever. Put simply, plaintiffs' proposed judgment would either (1) thrust this Court into the untenable position of overseeing an ongoing post-trial process that is simultaneously being litigated before the Ninth Circuit, or (2) require the Ninth Circuit to decide additional issues that might lead to disparate outcomes about the propriety of the post-trial process for different sets of purported class members.

On top of all this, granting plaintiffs' motion would create an upside down world where claimants seeking mere *tens* of dollars in the Flurry, Flo, and Google settlements must submit more proof of their claim than claimants seeking *thousands* of dollars from Meta. In those settlements, claimants are required to "provide reasonable documentation showing they were residents of California during the Class Period" to be eligible to recover far less significant sums than $5,000. Dkt. 589 at 2 (Flurry); Dkt. 780-1 at 30 (Flo); Dkt. 780-2 at 29 (Google). Plaintiffs never suggested doing there what they suggest doing here—i.e., building a secret list of purportedly proper

claimants and requiring nothing more of them. The Flurry, Flo, and Google claimants are undergoing a far more robust process than what would be afforded to Meta under plaintiffs' proposal. That is backwards. The significantly higher monetary recovery here—and correspondingly higher risk of fraud—demands more, not fewer, safeguards. Plus, unlike for settlement defendants paying a fixed amount regardless of the number of claims, the total "amount of damages that [Meta] will be ordered to pay depends on the number of class members," necessitating an especially rigorous "mechanism" to "determine whether a claimant is a member of the class." *Nolen*, 2026 WL 2871735, at *14.

Plaintiffs do not address any of these problems with their proposal. The only rationale they offer for why this case is supposedly the "unusual" one that warrants immediate entry of a partial final judgment, *Morrison-Knudsen*, 655 F.2d at 965, is that entering judgment as to a claimed portion of the class now will "start the accrual of post-judgment interest if Meta delays payment," Dkt. 846 at 3. But the prospect of additional compensation for plaintiffs (and their counsel) cannot justify crowding the Ninth Circuit's docket with an appeal that will neither "materially advance disposition of the claims before the trial court," *Morrison-Knudsen*, 655 F.2d at 966, nor abide by "the historic federal policy against piecemeal appeals," *Wood*, 422 F.3d at 878 (citation omitted). Instead, it will cause chaos and confusion.

## IV. CONCLUSION

Meta respectfully requests that plaintiffs' motion for entry of partial final judgment as to the purported subset of the class be denied.

DATED: September 28, 2026

**LATHAM & WATKINS LLP**

/s/ *Melanie M. Blunschi*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Michele D. Johnson (Bar No. 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: +1.714.540.1235

**GIBSON, DUNN & CRUTCHER LLP**

Christopher Chorba (Bar No. 216692)
*cchorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1.213.229.7503

Elizabeth K. McCloskey (Bar No. 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera (Bar No. 301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: +1.415.393.8200

*Counsel for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*