James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Carol C. Villegas (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com

*Co-Lead Counsel for Plaintiffs and the Class*

Christian Levis (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com

*Co-Lead Counsel for Plaintiffs and the Class*

Diana J. Zinser (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law

*Co-Lead Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ERICA FRASCO, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FLO HEALTH, INC., META PLATFORMS, INC., GOOGLE, LLC, and FLURRY, INC.,

Defendants.

Case No.: 3:21-cv-00757-JD

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF A FINAL JUDGMENT**

Judge: Hon. James Donato
Date: October 29, 2026
Time: 11:00 AM
Courtrm.: 11 - 19th Floor
San Francisco Courthouse

## INTRODUCTION

Nearly six months ago, the Court raised concerns that the then-ripe August 2025 judgment had been "rotting on the vine" and that the "beautiful wine" was "becoming vinegar" given that no Class Members had "gotten paid." *See* Apr. 16, 2026 Hr'g Tr. at 8:23–24, 20:21–22. The Court made clear that it "need[ed] to enter a judgment . . . [w]ith the amount of money involved" and asked Counsel what they needed, if anything, to "get this thing bottled and out the door." *Id.* at 20:7–11, 20:25–21:1. Plaintiffs' recent motions address these concerns by establishing a clear (and long-awaited) path toward paying Class Members. With Flo's customer records as the source of truth, the Court can enter judgment for the 222,115 individuals who are indisputably Class Members by having registered for the Flo App in California during the Class Period. The approximately 988,000 remaining Class Members who are *also* identified in Flo's records, but for whom Plaintiffs lack a mailing address and, for most, an email address as well, can identify themselves through the proposed claims process.

Meta's primary complaint is that a judgment cannot be entered, even for the 222,115 individuals fully identified in Flo's records, because due process entitles it to a "full and fair opportunity to rebut their assertion of class membership" through a claims process. Opp. at 3. This is incorrect. Due process does not entitle Meta to delay entry of judgment where, as here, the amount it owes the 222,115 individuals is a "self-evident" $1.110 billion. *Allapattah Servs., Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1299 (S.D. Fla. 2001). In fact, as Meta's own authorities recognize, entering judgment for these individuals does not implicate its due process rights at all because, "[w]here the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members" waiting for payment. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990).

Meta's related contention that due process entitles it to additional data from Covalynt to further "test" the fully identified Class Members should also be rejected. Meta has already had the Flo Data for six months pursuant to the Court's April 16, 2026 Order. To the extent there was a legitimate issue with the Flo Data, Meta would have raised that in its opposition. *That* is due process. The absence of any such challenge confirms that Meta's demands are a sideshow. Meta also cannot demand more process and then abuse it by hiding data in violation of the Court's April 16 Order to manufacture illegitimate claim

challenges. As reported in Plaintiffs' recent filings, Meta intentionally excluded historical data sources containing information about Flo App users during the Class Period from the "Results" of the Court-ordered matching process. See ECF No. 847 at 5–6; ECF No. 847-1 ¶¶ 9–15 & Exs. 2, 4, 10, 16–20. These strategic omissions, if anything, violate Class Members' due process rights, as Meta cannot hide information in its possession to avoid paying its victims. *See Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959) ("[N]o man may take advantage of his own wrong."). Any gaps resulting from the limits Meta imposed on its own search only serve to limit its ability to challenge claims.

Meta's cy pres argument fares no better, as Plaintiffs' proposed process does not advocate for one. Plaintiffs have the full name and current physical address and email address for every one of the 222,115 confirmed Class Members. Because payment will be made directly to them, there is no "undistributed corpus" and no occasion for cy pres. *See* Apr. 16, 2026 Hr'g Tr. at 25:12–18 ("[E]very dollar in will be a dollar allocated to a claimant . . . . There's no common fund . . . ."). In the rare event that payment cannot be made—for reasons Meta does not identify—Ninth Circuit law is clear that unclaimed funds can be handled at that time. Meta's out-of-circuit case law does not alter this analysis.

Finally, the parade of horribles Meta predicts is equally unpersuasive. Unlike Meta's proposal for judgment on behalf of only the Named Plaintiffs, a judgment for the 222,115 individuals in the Class would allow an efficient appellate process where Meta can challenge all class and merits issues at the same time. Because the remaining 987,970 individuals filing claims are part of the same Class, any ruling will also bind them, avoiding the need (or ability) to challenge those issues a second time. The only thing left (if anything) would be challenges to the claims process itself, which Meta can raise later once the process is completed as to those individuals. Meta's suggestion that this is too unwieldly for the Ninth Circuit discredits the Court's experience, suggesting it is somehow ill-equipped to manage an appeal from a complex class action. As the Court put it, Meta "can appeal until the cows come home" (Apr. 16, 2026 Hr'g Tr. at 22:20–21), but that is no reason to keep Class Members waiting.

## I. The Court Should Enter Judgment for the 222,115 Fully Identified Class Members and Order Plaintiffs' Proposed Claims Process for the Remaining Flo Users

With liability and the measure of damages established a year ago, "the only question is how to distribute the damages" to injured class members. *See Mexican Workers*, 904 F.2d at 1307. The answer to

that question is straightforward: enter judgment for the individuals identified in Flo's customer records, while allowing those Class Members for whom gaps in Flo's data make immediate payment impractical to submit claims pursuant to the claims process. *See Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 WL 3206324, at *7 (M.D.N.C. July 27, 2017) (contemplating judgment for class members "identified fully and without contradiction in the existing data," "regardless of whether those individuals complete claim forms"); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 641 F. Supp. 259 (D. Ariz. 1986) (post-verdict distribution based on records, without detailed proof of claim); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715 (2004) (upholding post-verdict hybrid distribution plan over due process objection); *see also In re Coll. Athlete NIL Litig.*, 803 F. Supp. 3d 959 (N.D. Cal. 2025) (approving automatic payment to class members identified in third party records, with claim forms required only for others). This process correctly addresses Class Members' due process rights while affording Meta an ability to protect its "interest in not paying damages to persons who are not proper class members," when they file claims. *Krakauer*, 2017 WL 3206324, at *6.

*Krakauer*, which Meta relies on (Opp. at 5), supports Plaintiffs' approach. In *Krakauer*, the plaintiffs sought a single aggregate judgment on behalf of a mixed group of individuals, some of whom were "fully identified by the various sources of name and address information" and others "that the plaintiffs have not yet linked to any particular name or address." 2017 WL 3206324, at *6. The court denied the motion to enter judgment for this mixed group, given the uncertain identity of some class members, but stated that "as to any group of class members who are identified fully and without contradiction in the existing data, the Court will consider entry of judgment in favor of such class members *regardless of whether those individuals complete claim forms*." *Id.* at *7 (emphasis added). Individual claim forms would only be required of those individuals "not part of a group judgment" (i.e., those who could not be identified). *Id.* Plaintiffs' proposal to enter judgment for the "fully identified" group of Class Members while requiring those less-identified Class Members to submit claims tracks Meta's own authority exactly.

Meta's argument that entering judgment for any Class Members is premature and inappropriate because due process entitles it to challenge "each claimant during the claims administration process" goes

too far. Opp. at 5. The Ninth Circuit has been clear that where all issues regarding liability and damages have been resolved, the only due process "interests affected are not the defendant's but rather those of the silent class members" who are entitled to relief. *Mexican Workers*, 904 F.2d at 1307; *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 481–82 (1980) (once judgment "quantified [defendant's] liability," defendant "presently has no interest in any part of the fund," and class members are "the equitable owners" of their "shares"). Although this is true for all Class Members, the impact is particularly acute on the rights of those 222,115 individuals "fully identified" within the Flo Data "for whom there can be no legitimate dispute about their membership in the class." *Krakauer*, 2017 WL 3206324, at *6. Indeed, this group of individuals meets all the Class requirements, as they are women who registered for the Flo App by entering menstruation or pregnancy information from within California during the Class Period. *See* ECF No. 846 at 1; ECF No. 847-3 ¶¶ 17, 22–23; ECF No. 845-8 ¶¶ 12–19. Having already had an opportunity to oppose class certification, seek summary judgment, test the validity of Plaintiffs' claims at trial, and seek decertification and judgment as a matter of law, Meta has exhausted all of the process it is due. It is not entitled to an opportunity to concoct illegitimate challenges or further delay in violation of these Class Members' rights.

Meta's cases only help Plaintiffs. In each, the court declined to enter judgment for a fixed amount because of ambiguities that do not exist for these 222,115 individuals. Opp. at 5. For instance, in *Allapattah Servs., Inc.*, 157 F. Supp. 2d at 1297, 1324, the jury found Exxon liable for "tak[ing] back" price adjustments that caused oil dealers to pay higher prices, determining a set of "factor[s] or guideline[s]" that could be applied to each oil dealer's specific purchases to calculate their damages. The court rejected plaintiffs' request for entry of judgment because calculating the amount of damages pursuant to that formula was far from "self-evident" and required "adjustments" based on information solely in each dealer's specific contract. *Id.* at 1298-99. No such "adjustments" are required here, where the Court has already found Meta owes $5,000 to each Class Member and the 222,115 individuals subject to Plaintiffs' request for judgment are fully identified without any ambiguity. Similarly, in *Lyngaas v. Curaden A.G.*, 436 F. Supp. 3d 1019, 1022 (E.D. Mich. 2020), the plaintiff there established at trial that he had received two unsolicited fax advertisements in violation of the TCPA but did not "establish the

total number of faxes sent class-wide," a key requirement for calculating damages that the court determined had to be answered through a claims process. No such factual gap exists for the 222,115 here.

Nor do Meta's comments about due process in the context of Rule 23(f) appeals change the analysis regarding entry of judgment for the 222,115 fully identified individuals. *Nolen v. PeopleConnect, Inc.*, No. 24-3894, 2026 WL 2871735 (9th Cir. Sept. 24, 2026)[1] addressed certification of right-of-publicity claims against a yearbook-scanning website where the class allegedly contained individuals who consented to the conduct or were not injured because they could not be found using the search feature. The defendant argued that certifying this class without adopting a "winnowing plan" to weed out these class members violated its due process rights. *Id.*, at *10. The Ninth Circuit disagreed, finding that these questions were better answered through a claims process where individuals could "self-certify" facts supporting their claims. Although the decision noted that a defendant's due process rights are implicated when damages depend on the "number of class members *who file claims*" (*id.*, at *14), it did not mandate the use of a claims process in all cases, as Meta claims. Nor would these concerns apply to the 222,115 fully identified individuals who need not file claims. *See Krakauer*, 2017 WL 3206324, at *7.

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) is similarly off point. There, the Seventh Circuit rejected adopting a heightened ascertainably standard, noting that—so long as the class was objectively defined—class members could later identify themselves through affidavits or a claims process if needed. *Id.* at 665-67. The court did not, as Meta suggests, reject entry of a judgment without a claims process, or require a claims process where, as here, individuals are already fully identified.

Meta's contention that judgment for the 222,115 fully identified individuals is inappropriate because the data identifying them does not come from "Meta's own records" should also be rejected. Opp. at. 6. The relevant source of information here is the ***Flo Data*** because this contains all individuals that registered for the ***Flo App*** during the Class Period. The fact that the 222,115 individuals are fully identified there is dispositive. Whether Meta separately has records is irrelevant because the Class Definition does not require a Class Member to have a Meta account. *See* Order re Class Certification, ECF No. 605 at 34.

[1] *Nolen* also rejected Meta's argument that it is entitled to more than "self-certification" by a claimant because this would purportedly deprive it of its right to "put all elements" before a "jury" along with "a meaningful opportunity for discovery" as to each individual class member. *Id.*, at *14.

Neither *Physicians Healthsource, Inc. v. A-S Medication Solutions LLC*, No. 12 C 5105, 2018 WL 6179094, at *2 (N.D. Ill. Nov. 27, 2018) nor *Bultemeyer v. CenturyLink Inc.*, No. CV-14-02530-PHX-SPL, 2025 WL 2337097, at *4 (D. Ariz. Aug. 13, 2025) supports Meta's contention that identifying information must come from the defendant against whom judgment is being entered, as opposed to another defendant in the action. In both cases the relevant fact was not that the data came from the defendant but that it was the correct source of information for identifying Class Members, i.e., the "names and fax numbers of those to whom [the defendant sent] the fax at issue" (*Physicians Healthsource*, 2018 WL 6179094, at *2) or the individuals "on whom [the defendant] obtained a consumer credit report during the class period." *Bultemeyer*, 2025 WL 2337097, at *4. Under these cases, the Flo Data is the correct source of information here because it contains the identity of everyone in the Class whom Meta unlawfully recorded.

Meta's complaints that it has not had an opportunity to determine whether these individuals are "proper claimants" (Opp. at 7) are similarly overstated. Meta has been in possession of the Flo Data for six months. Given all the resources at its disposal, including historical information covering individuals' entire Meta account history (ECF No. 847-1 ¶¶ 10, 12, 15), Meta's inability to identify a single discrepancy in the Flo Data that would exclude a Class Member is telling. And any gap in Meta's information is of its own making. Instead, Meta tries to manufacture issues with Covalynt, whom its own counsel previously retained and lauded before this Court. *See* Sept. 30, 2025 Hr'g Tr. at 28:7-29:4 (Mr. Chorba explaining Covalynt was "instrumental" and "[t]he judge lauded them for the work they did" in identifying fraudulent claims). But Meta's trumped-up claims about Covalynt's inadequacies, like "relying on bare IP address information" to identify individuals (Opp. at 7), are simply false. Much like looking individuals up in a modern phone book, Covalynt's deterministic system matched the information in the Flo Data to individuals' most recent contact information. *See* ECF No. 845-8 ¶¶ 6-19. There is nothing abnormal about this process, which occurs all the time in class actions (including those that don't settle) to distribute money to Class Members. *See, e.g., In re Zuckerman*, 613 B.R. 707, 719 (B.A.P. 9th Cir. 2020) ("[d]ue process demands only that litigants have the opportunity to be heard, not that they avail themselves of that opportunity."); *United States v. Alisal Water Corp.*, 431 F.3d 643, 658–59 (9th Cir. 2005) (rejecting due

process challenge where party's complaints were "the direct result of their own failure" to raise or address them).

Meta fundamentally misunderstands this process in analogizing it to an expert opinion subject to *Daubert* review. Opp. at 8. Again, much like a phone book does not offer an expert opinion on someone's name or address, the exercise of looking up contact information for Flo App users based on the email, phone number, or device identifiers in the Flo Data is not opinion testimony, but an observation of the reality of who is associated with those values. *See United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1267–68 (9th Cir. 2024) (finding "lay witness" was capable of reading extracted data); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 304 n.11 (N.D. Cal. 2017) (expert testimony not necessary to tabulate call records and reverse-lookup results). Here, each of the 222,115 individuals matched to a single identity—i.e., there was one person with that information—confirming the lack of any legitimate challenge to those Class Members' identities. This disposes of Meta's baseless claim that the number of Class Members is somehow "significantly (and intentionally) 'inflated.'" Opp. at 1. Not only is there nothing to inflate because Flo's records contain a fixed set of data, but just the opposite—Covalynt's process *reduced* the number of records in the raw Flo Data by removing individuals that were deceased or that Meta's data identified as "male," and confirming that there were no duplicates such as records counting the same individual with different devices more than once. ECF No. 845-8 ¶¶ 9, 19. *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) is completely inapposite. There, the Second Circuit considered whether it was appropriate to enter an aggregate judgment based on an economist's admittedly overinflated approximation of the amount of money Argentinian bondholders lost when the country's economy collapsed in 2001. This case involves nothing of that sort, merely the ministerial multiplication of 222,115 by $5,000.[2]

## II. Meta's Unclaimed Funds Argument Misrepresents the Law

Rule 54(b) allows the Court to enter final judgment "as to one or more, but fewer than all" claims if the Court determines there is "no just reason for delay." The rule imposes no requirement that the Court determine how to handle unclaimed funds *prior* to entering judgment. Indeed, under Ninth Circuit law, *cy*

[2] If necessary, the Court may hold an evidentiary hearing to address Metas speculative and unsupported concerns over entering judgment. *See* Fed. R. Civ. P. 43(c).

*pres* may "be considered only after a valid judgment for damages" and not before. *Mexican Workers*, 904 F.2d at 1307; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (holding the "trigger point" for addressing distribution of unclaimed funds is when a "*cy pres* disbursement is imminent"). In any event, there is no issue with unclaimed funds here because there is no indication that any funds will remain if Plaintiffs' plan is adopted. Once judgment is entered, Class Counsel will work directly with the administrator to distribute the funds directly to Class Members. Given that each individual Class Member is identified down to their current name and address, there will be little to no difficulty making sure money gets into the right hands and Class Counsel do not expect any funds to remain. For the 987,970 Class Members that will submit claims, these individuals will be asked to submit contact information that will allow for timely distribution of funds to them as well. ECF No. 845-3 (Proposed Claim Form); ECF No. 845-7 ¶ 50. Thus, Class Counsel fully expect that "every dollar in [the judgment] will be a dollar allocated" and there will be "no cy pres" as the Court has instructed. Apr. 16, 2026 Hr'g Tr. at 25:12–15; *see also id.* at 24:17–20.

Meta misleadingly relies on a single out-of-circuit case, *Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87, 88 (10th Cir. 1982), to argue that Plaintiffs' motion fails because it does not specify how to deal with unclaimed funds. Opp. at. 9-10. But as shown above, this is not the law. And while *Strey* appears to mistakenly cite the Supreme Court's decision in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) for this proposition, the actual *Boeing* case does not stand for this at all.

**III. There is No Just Reason to Delay Judgment While Class Members File Claims**

Plaintiffs' plan to enter judgment for the fully identified 222,115 individuals in the Flo Data now while the remaining 987,970 Class Members file claims properly balances Class Members' due process right to relief with Rule 54(b)'s concerns of unduly delaying relief. *Krakauer*, 2017 WL 3206324, at *11 (because "[t]he claims process is likely to take some months . . . there is no just reason to delay final judgment"). This is precisely why partial judgments are allowed and the efficiencies gained are manifest. For example, if Meta files an immediate appeal as it suggests it will (Opp. at 10), a partial judgment for the 222,115 members of the Class already fully identified will allow it to raise all merits and class issues in a single appeal. Because these issues are common across all class members, an order from the Ninth

Circuit resolving these issues in Plaintiffs' favor will bind everyone in the Class, including those who file claims. *See Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984) ("a judgment in a properly entertained class action is binding on class members"); *In re Rainbow Mag., Inc.*, 77 F.3d 278, 281 (9th Cir. 1996) ("[T]he decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case."). The only issues remaining after that appeal will be those unique to the claims process, which Meta can separately appeal, if appropriate, at that time. These issues will only affect those Class Members who submitted claims through the claims process, not the 222,115 individuals who are fully identified and thus do not need to submit claims, avoiding delay by expediting resolution of merits and class issues while the claims process proceeds.

Meta's concerns about duplicate or conflicting rulings, or confusion, are simply unfounded. Although Meta may want to file serial appeals to relitigate the same losing arguments, *res judicata* precludes this if the Court enters judgment for the 222,115 Class Members now. *See Cooper*, 467 U.S. at 874; *Disimone v. Browner*, 121 F.3d 1262, 1266 (9th Cir. 1997) (one appellate panel "will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case"). In fact, all of the "flaws" Meta complains of only exist under its original proposal to enter individual judgment for just the Named Plaintiffs (Opp. at 10), as this would require the Ninth Circuit to address individual claims first, and only then (years later) class issues. This is not only a waste of judicial resources, but also will manufacture delay that runs afoul of Rule 54(b) concerns about prompt resolution of the action. *See Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015) (Rule 54(b) was adopted "to avoid the possible injustice of delay[ing] judgment o[n] a distinctly separate claim [pending] adjudication of the entire case"); *Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 628 (9th Cir. 2015) (same). The Court was right to reject Meta's approach the first time and should not re-entertain it now.

Meta's position that granting Plaintiffs' motion creates an "upside down world" where it is easier to obtain $5,000 than it is to file a claim in the Flurry, Flo, and Google settlements is also clearly wrong. Opp. at 11. Putting aside that the conditions for filing a claim in each of these settlements are negotiated, Meta's argument ignores that the claims process proposed here is just as (if not more) robust, requiring the Claimant's name, home address, affirmation of their use of the Flo App, and includes a right for Meta

to dispute any claim. ECF No. 845-3; ECF No. 845-7 ¶¶ 42-43; ECF No. 845-2. Class Members submitting claims will also have the ability to provide even more information about themselves to speed up processing and validation of their claims, and the process here contemplates an increased security check being applied given the amount of potential recovery. ECF No. 845-7 ¶¶ 44-50; ECF No. 845-8 ¶¶ 20-22. For the 222,115 individuals who are already fully identified, no claims are needed because there is nothing left for them to prove. *See Krakauer*, 2017 WL 3206324, at *8. This is not a shortcoming, it is the result of the very adversarial process that Meta, who lost at trial, demands.

Nor is there any legitimate concern that granting Plaintiffs' motion would seriously "open the floodgates for class action lawyers to . . . demand a massive judgment" (Opp. at 1) in other cases in the future. As far as Plaintiffs are aware, this is the only Section 632 case to succeed at trial. And while Meta's exposure may be large, it is entirely of its own making, both in terms of its choice to violate the law as proven at trial and to try this case in the first place. That is no reason to continue to delay Class Members' recovery, which, after all, is *their* due process right.

**IV. Plaintiffs' Motion is Consistent with the Court's Prior Statements**

Finally, Meta is wrong that the Court "already rebuffed" Plaintiffs' request and that this Motion "disregards the Court's ruling." Opp. at 4. The Court has never considered, much less denied, partial judgment on behalf of the 222,115 indisputable Class Members. To the contrary, the Court has pressed the Parties to move this case to judgment sooner rather than later. *See* Apr. 16, 2026 Hr'g Tr. at 20:7–8 ("I need to enter a judgment. Just -- what do I have to do to get you to a judgment?"). What the Court previously denied was a judgment on behalf of the "total number of *estimated* class members" (*id.* at 25:19–26:7) (emphasis added) or for the Named Plaintiffs alone. *See* Opp. at 4–5 (citing ECF No. 783 at 11–12; Sept. 30, 2026 Hr'g Tr. at 22:5–7). This Motion seeks neither, requesting judgment on behalf of the actual, confirmed Class Members who can (and should) be immediately paid the money they are owed now.

Dated: October 5, 2026

Respectfully submitted,

*<u>/s/ Christian Levis</u>*
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)

**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tele: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
Danielle Izzo (*pro hac vice*)
Gloria J. Medina (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com
dizzo@labaton.com
gmedina@labaton.com

Diana J. Zinser (*pro hac vice*)
Jeffrey J. Corrigan (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law
jcorrigan@scc.law

*Co-Lead Class Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Ronald A. Marron (SBN 175650)
Alexis M. Wood (SBN 270200)
Kas L. Gallucci (SBN 288709)
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665

ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (772) 783-8436
kent.williams@sirillp.com

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, OH 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*