James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Carol C. Villegas (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com

*Co-Lead Counsel for Plaintiffs and the Class*

Christian Levis (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com

*Co-Lead Counsel for Plaintiffs and the Class*

Diana J. Zinser (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law

*Co-Lead Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ERICA FRASCO, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLO HEALTH, INC., META PLATFORMS, INC., GOOGLE, LLC, and FLURRY, INC.,<br>Defendants. | Case No.: 3:21-cv-00757-JD (consolidated)<br><br>**PLAINTIFFS' ADMINISTRATIVE MOTION TO ENFORCE THE APRIL 16, 2026 ORDER REGARDING CLASS INFORMATION** |

Pursuant to Civil Local Rule 7-11, Plaintiffs respectfully submit this Administrative Motion to Enforce the April 16, 2026 Order Regarding Class Information (the "Order").

The trial record established that Meta collected six of the seven Flo Data fields from Class Members to "match the identifier and the accompanying data to a particular individual's Facebook profile." ECF No. 776 at 13:1-3; ECF No. 749 at 430 at 6-431:2, 443:20-444:14, 514:5-9; Trial Ex. 226-A at 11. After trial, the Court made clear that "culpable defendants" like Meta must get "knee-deep" and "use their resources to provide notice to the victims that pass through their system." ECF No. 792 at 17:4-7. Meta agreed, representing that it would "do the best that it can to enhance" the data, working "cooperatively" and "expeditiously." ECF No. 833 at 5:18-19, 22:3-5. The Order memorialized this agreement, requiring Meta to conduct a "reasonable search for data within Meta's possession, custody and control" including "both current. . . and historical information created since November 1, 2016," the start of the Class Period, and match those results against Flo's customer records to identify Class Members. ECF No. 827 ¶¶ 5-6 (emphasis added). As set out below in the parties' correspondence, Levis Decl. Exs. A-E, Meta has not complied with the Order or its representations to the Court. Therefore, Plaintiffs request that the Court (i) order Meta to conduct the reasonable search the Order requires; and (ii) preclude Meta from challenging Class Members' claims based on data outside its Results.

## I. BACKGROUND

### A. Meta's Unreasonable Search Excluded Historical Information in Its Possession

Meta's disregard for the Order emerged in the parties' correspondence and meet-and-confers in September and October 2026. *Id.* ¶¶ 3-9. Although Flo's customer records cover individuals who registered for the Flo App during the Class Period (November 2016 to February 2019), [redacted] Despite producing IP addresses and device identifiers for Plaintiffs' Meta accounts from as early as 2010 in this litigation, ECF No. 847-1 ¶¶ 10, 12, it searched only: [redacted], years after the Class Period ended. Not surprisingly, there was minimal overlap between the Flo's Class Period records and Meta's self-selected search pool: although more than 95% of the nearly 10 million unique rows in the Flo Data included an IP address, device model, creation date, and an advertising identifier, ECF No. 845-8 ¶ 6; ECF No. 820-13 ¶ 4, [redacted]

[redacted] With these restrictions a low match rate is expected. IDFA and AAID values change when a user replaces or resets her device, so comparing Class Period records to [redacted] identifiers finds only the rare Class Member still using the same device. *See* ECF No. 820-13 ¶ 11. IP addresses are worse: they do not simply expire, but are reassigned to new users over time, [redacted] Levis Decl. Ex. E at 3-4 (IP addresses [redacted]; ECF No. 820-13 ¶ 11. Matching Class Period IP addresses [redacted] therefore does more than miss Class Members—it matches their IP addresses to whoever happens to hold them today. Meta's Results are not just under-inclusive, they purposefully contain false matches that introduce error into the very process the Order created to identify Class Members and verify their claims. The solution is not to discard IP matches, as Meta did, but to use the historical IP data from the Class Period that Meta has. *See* ECF No. 847-1 ¶ 10.

Meta selected these sources intentionally, excluding historical information, in violation of the Order's requirement that Meta "search for both current information in the aforementioned categories and historical information created since November 1, 2016, to the extent it exists." Order ¶ 6. Meta produced this historical information about Plaintiffs IDFA/AAID and IP Addresses in discovery back to 2010. ECF No. 847-1 ¶¶ 10, 12, 15 & Exs. 1-20. [redacted] Levis Decl. ¶ 7(b); *id*. Ex. E at 4.[1] Meta's search methodology is patently unreasonable.[2]

**B. Meta's Unreasonable Matching Process is Designed to Exclude Users**

Meta explained during meet-and-confers that it matched data to users in a three-step process that compounds these temporal limits. Levis Decl. Ex. C at 2; id. Ex. E at 5. First, it compared Flo's email

---

[1] Meta's statement to A.B. Data in July 2026 that it [redacted] is false in light of this information. Levis Decl. Ex. A at 2.

[2] Meta also arbitrarily excluded WhatsApp from its search, another source of IDFA/AAID information, phone numbers, and other data that can be used to locate individuals. Levis Decl. ¶ 7(c); *id*. Ex. D at 3; *id*. Ex. E at 5 [redacted].

addresses to [redacted].[4] This process is unreasonable and violates the provisions of the Order for three reasons:

*First*, the Order prohibits Meta from unilaterally excluding users, requiring that it "meet and confer with Class Counsel about a reasonable process for addressing these situations" where "more than 10 users of Meta services may be associated with the same value (e.g., an IP address) . . . without other corroborating data values." Order ¶ 6 n.2. This never happened.

*Second*, by matching three fields, one at a time, Meta's "waterfall" identifies as few individuals as possible. Any user without a matching email address is compared only to data collected [redacted], so millions of individuals either match nothing, or fall to Meta's IP address exclusion filter.[5] If Meta were serious about "enhanc[ing]" the Flo Data, as its counsel claimed, it would have searched historical IDFA/AAID values, or used the account IDs for every account it filtered out to pull historical email addresses, device identifiers, and IP addresses from DYI/DYD (or the sources behind it) and match them to the Flo Data. *See* Order ¶ 6 n.1; *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006) (need to write new code to extract data from existing systems did not excuse compliance).

*Finally*, by matching one field at a time using "information solely in a single location such as a table, database, or system" Meta ignores the Order's directive that "to the extent it is reasonable to identify an individual by joining information across multiple locations, these individuals will also be included." ECF No. 827 ¶ 6 n.1. This improperly limits the scope of each match.

---

[3] [redacted]

[4] Meta also [redacted] Both are improper given footnote 2 of the Order.

[5] While Meta has claimed that without this IP exclusion, [redacted] Levis Decl. Ex. A at 2, it is still reasonable for a defendant with Meta's resources to match these individuals' historical records to the Flo Data and identify its victims.

### C. Meta Amazingly Refuses to Confirm It Did Not Destroy Flo Data

Given gaps in the Results, Class Counsel asked Meta to confirm (1) whether it searched the data received from the Flo App,[6] and if not, (2) whether it deleted that data after the case was filed. Meta instead blamed Plaintiffs, asserting that [redacted] (Levis Decl. Ex. E at 5) and dismissing Plaintiffs' questions as a demand that Meta [redacted] *Id*. at 6. [redacted] is troubling (Ex. E at 5), particularly given its record of data destruction in this District. *See Forrest v. Meta Platforms, Inc*., 2026 WL 2296683, at *8 (N.D. Cal. Aug. 10, 2026) (noting "other courts' recent determinations that Meta has 'consciously disregarded' its preservation duties"); *In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-03580-WHO (N.D. Cal. 2025) (finding that Meta failed to preserve pixel data subject to short retention periods after case was filed). Plaintiffs have a right to know if Meta destroyed the Flo App data, especially since Meta intends to use such data to challenge Class Members' claims. The glaring holes in Meta's search and its refusal to confirm proper retention raise legitimate concerns given Meta's and Gibson Dunn's history of improperly hiding data from Plaintiffs. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-md-02843 (N.D. Cal. 2023) (sanctioning Facebook and Gibson Dunn, jointly, for discovery misconduct). There is no reason to assume anyone will behave differently given the strong incentive to stiff Class Members here.

## II. ARGUMENT

The Court has the inherent power to interpret and enforce its orders, including stipulated orders. *See Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008); *Nehmer v. U.S. Dep't of Veterans Affs.*, 494 F.3d 846 at 856, 860 (9th Cir. 2007). It should do so here.

The Order clearly specifies what would constitute a "reasonable search" for class information. Order ¶¶ 5, 6. Meta violated the Order by failing to conduct a "reasonable search" in multiple ways,

[6] Data from the Flo App, like data from all apps, is associated with a unique identifier for that app's Meta account. Flo's SDK identifier was produced in discovery and admitted into evidence at trial. *See* Trial Ex. 110-A (ECF No. 762-2). Meta should confirm exactly what happened and why it cannot find this data.

including by (i) ignoring historical data; (ii) intentionally omitting a search of known data repositories and platforms in its possession, custody, and control; and (iii) improperly and unilaterally excluding individuals without first meeting and conferring with Class Counsel.

Meta's disregard of known data sources—DYI/DYD, WhatsApp, and Flo App data—that would likely identify Flo users violates its obligation to take "reasonable steps to identify information . . . that may be associated with one or more values in the Flo Data." Order ¶ 6. *See Dawson v. Great Lakes Educ. Loan Servs, Inc.*, No. 15-cv-475, 2019 WL 6619325, at *2-3 (W.D. Wis. Dec. 5, 2019) ("exclu[sion] of individuals" based on "defendants' own judgment" "clearly violated an unambiguous court order").

And Meta's decision to filter its search results without conferring with counsel on a "reasonable process" also violates the Order, excluding potentially hundreds of thousands of Class Members from the Results. *Dawson*, 2019 WL 6619325 at *3 (holding defendants in contempt for omitting "more than 7,000" class members from court-ordered contact data, because the omission "prevented thousands of class members from receiving notice"). Meta's belated offer to meet and confer after excluding individuals from the Results does not correct its noncompliance with the Order or justify violation of the Order. *See In re Valsartan*, 337 F.R.D. 610 (D.N.J. 2020) (party violated court-ordered cooperation provisions by implementing its own approach without input from opposing side).

The Court should address Meta's noncompliance in two ways. First, it should order Meta to conduct a "reasonable search" by requiring it to search the historical data admittedly is in its possession, including DYI/DYD and the underlying data stores that produced the historical data in this ligation, for every Class Member. Second, the Court should prohibit Meta from relying on the absence of data returned from its rigged search and exclusion process, or data outside the Results it produced, to challenge Class Members' claims or entry of judgment. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) (affirming entry of judgment for the class after the defendant failed to participate in the post-verdict claims process in good faith). Meta's refusal to account for gaps in its data, given legitimate preservation concerns further warrants this relief. Simply put, Meta should not benefit from the destruction of data.

## III. <u>CONCLUSION</u>

The Court should grant the Motion and enter the accompanying proposed order.

Dated: October 20, 2026

*/s/ Christian Levis*
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tele: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
Danielle Izzo (*pro hac vice*)
Gloria J. Medina (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com
dizzo@labaton.com
gmedina@labaton.com

Diana J. Zinser (*pro hac vice*)
Jeffrey J. Corrigan (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law
jcorrigan@scc.law

*Co-Lead Class Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@ammcglaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Ronald A. Marron (SBN 175650)
Alexis M. Wood (SBN 270200)
Kas L. Gallucci (SBN 288709)

**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (772) 783-8436
kent.williams@sirillp.com

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246
Columbus, OH 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*