Christian Levis (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com

*Co-Lead Class Counsel for Plaintiffs and the Class*

Diana J. Zinser (*pro hac vice*)
**SPECTOR CALDES & CORRIGAN, PC**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law

*Co-Lead Class Counsel for Plaintiffs and the Class*

Carol C. Villegas (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com

*Co-Lead Class Counsel for Plaintiffs and the Class*

*[additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ERICA FRASCO, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FLO HEALTH, INC., META PLATFORMS, INC., GOOGLE, LLC, and FLURRY, INC.,

Defendants.

Case No.: 3:21-cv-00757-JD

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS WITH DEFENDANTS FLURRY LLC, GOOGLE LLC, AND FLO HEALTH, INC. AND CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS**

Judge: Hon. James Donato
Date: October 29, 2026
Time: 11:00 AM
Courtrm.: 11 – 19th Floor
San Francisco Courthouse

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. SUMMARY OF FURTHER NOTICE AND ADMINISTRATION EFFORTS TO DATE ..... 1

III. SUMMARY OF CLASS MEMBER'S OBJECTION ..... 3

IV. ARGUMENT ..... 3

A. The Volume of Claims and Near Absence of Objections Demonstrate Class Members' Overwhelming Support of the Settlements, Proposed Fee and Expense Awards, and Service Awards ..... 3

B. The Sole Objection Should Be Overruled ..... 5

V. CONCLUSION ..... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chalian v. CVS Pharmacy, Inc.*,
No. 2:16-cv-08979-AB-AGR, 2021 WL 3015407 (C.D. Cal. July 16, 2021) ....... 5

*Does 1-5 v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2026 WL 2031771 (N.D. Cal. July 14, 2026) ....... 4

*Gascho v. Glob. Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) ....... 7

*Globus v. L. Rsch. Serv., Inc.*,
418 F.2d 1276 (2d Cir. 1969) ....... 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....... 8

*In re Coll. Athlete NIL Litig.*,
803 F. Supp. 3d 959 (N.D. Cal. 2025) ....... 5

*In re Facebook, Inc.*,
No. 22-16903, 2024 WL 700985 (9th Cir. Feb. 21, 2024) ....... 4

*In re Facebook Biometric Info. Priv. Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) ....... 6

*In re Facebook Internet Tracking Litig.*,
No. 5:12-md-02314-EJD, 2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) ....... 3, 4

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ....... 4, 5, 8

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....... 3

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ....... 4

*In re Vizio, Inc., Consumer Priv. Litig.*,
No. 8:16-ml-02693-JLS-KES, 2019 WL 12966638 (C.D. Cal. July 31, 2019) ....... 4

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. 2020) ........ 8
*In re Zoom Video Commc'ns., Inc. Priv. Litig.*,
No. 20-cv-02155-LB, 2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) ........ 6

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 24-7648, 2026 WL 413182 (9th Cir. Feb. 13, 2026) ........ 6

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 3:22-cv-04792-RS, 2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ........ 8

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 3:22-cv-04792-RS, 2024 WL 7002057 (N.D. Cal. Nov. 15, 2024) ........ 6

*Ko v. Natura Pet Prods., Inc.*,
No. C 09-02619 SBA, 2012 WL 3945541 (N.D. Cal. Sept. 10, 2012) ........ 5

*Moore v. Verizon Commc'ns Inc.*,
No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ........ 5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........ 3

*Norcia v. Samsung Telecomms Am., LLC*,
No. 14-cv-00582-JD, 2021 WL 3053018 (N.D. Cal. July 20, 2021) ........ 4

*Stark v. Patreon, Inc.*,
No. 22-CV-03131-JCS, 2025 WL 1592736 (N.D. Cal. June 5, 2025) ........ 4

*United States v. Oregon*,
913 F.2d 576 (9th Cir. 1990) ........ 5

*Vianu v. AT&T Mobility LLC*,
No. 19-cv-03602-LB, 2022 WL 16823044 (N.D. Cal. Nov. 8, 2022) ........ 6

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........ 8

*Zakikhani v. Hyundai Motor Co.*,
No. 8:20-cv-01584-SB-JDE, 2023 WL 4544774 (C.D. Cal. May 5, 2023) ........ 6

**Rules**

Fed. R. Civ. P. 23(h) ........ 8

**Other Authorities**

1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 1:8 (6th ed. 2022) .................................................... 7

## I. INTRODUCTION

Plaintiffs respectfully submit this reply in further support of (a) their motion for final approval of the Settlements with Google, Flo and Flurry (ECF No. 842) and (b) Class Counsel's motion for attorneys' fees and expense awards and Plaintiffs' application for Service Awards (ECF No. 843) (the "Fee and Expense Application").[1] The deadlines for Class Members to object to the Settlements and/or file a Claim Form have passed and the results of the claims administration to date provide substantial evidence of the Class's enthusiasm for the Settlements. The Settlement Administrator, A.B. Data, Ltd. ("A.B. Data") has validated over 460,000 claims from eligible Class Members; at least an additional 78,654 claims that show indicia of fraud may be cured provided the associated Class Members provide information validating their identities. In stark contrast, *only one Class Member* objected, and her objection fails to raise any substantive concerns that this Court does not already consider when deciding whether to finally approve the Settlements and grant the Fee and Expense Application. The Class's favorable reaction is yet another factor supporting approval of the Settlements and the Fee and Expense Application. Accordingly, the Court should overrule the objection, finally approve the Settlements, and grant Class Counsel's request for: (1) an award of attorneys' fees of $19,366,666.67 (approximately 32.5% of the $59,500,000 common fund created by the Settlements with Defendants Google, Flo, and Flurry), plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; (2) reimbursement of Litigation Expenses totaling $2,091,517.74, plus interest; and (3) Service Awards to Plaintiffs totaling $155,000.

## II. SUMMARY OF FURTHER NOTICE AND ADMINISTRATION EFFORTS TO DATE

In September 2026, A.B. Data began a third notice phase designed as a final effort to encourage Class Members to file a claim. Between September 29 and October 13, 2026, A.B. Data sent 3,874,492 Reminder Email Notices (88.67% successfully delivered) and 1,793,686 Reminder Text Messages (81.70% successfully delivered). Decl. of Heather Littrell of A.B. Data on Implementation of Notice Plan dated October 22, 2026 ("Littrell Notice Decl.") ¶¶ 19-20. Coupled with these direct notice efforts, A.B.

---

[1] Except as otherwise defined herein, all defined terms have the same meanings as used in the Google Settlement Agreement (ECF No. 820-2), Flo Settlement Agreement (ECF No. 820-3), and Flurry Settlement Agreement (ECF No. 589-2) (collectively, the "Settlements").

Data implemented another media campaign—using digital sites such as TikTok, Google Display Network, YouTube, Facebook, and Pinterest; banner ads on electronic newsletters; television spots; audio advertisements; and a print advertisement in *People* magazine—intended to reach the target audience of adult women from 18 to 49 years of age ("Adult Women 18-49"), which includes members of the Class. Littrell Notice Decl. ¶¶ 21-26. As a result of the three-phase notice efforts, the indirect media notice reached over 90.1% of the 4,861,598 Class Members that A.B. Data expected to reach when designing the Notice Plan. Littrell Notice Decl. ¶ 29. In addition, direct notice was delivered to 3,419,358, or 83.1% of the 4,114,159 Class Members expected under the Notice Plan. Littrell Notice Decl. ¶ 29.

Prior to the October 15, 2026 Claims Deadline, A.B. Data received a total of 22,238,137 claims; the Class size has been estimated to be 9,961,995 individuals. Littrell Notice Decl. ¶¶ 4, 35. To date, through their screening processes, A.B. Data and data science consultant Covalynt have determined that 21,697,461 of these claims are fraudulent and subject to a final audit by Covalynt. Littrell Notice Decl. ¶ 35. Of the remaining claims, at least 461,766 have been found to be valid and eligible for payment, translating to a current claims rate of 4.6% based on the estimated Class size. Littrell Notice Decl. ¶¶ 35, 40. Another 78,654 claims have shown indicia of fraud, but that may be cured if the claimant provides documentation or information sufficient to establish the claimant's identity. Littrell Notice Decl. ¶ 36. Claimants in this category will receive a deficiency notice and an opportunity to provide the requested information. Littrell Notice Decl. ¶ 36. Additionally, any claims that are currently designated as failed, but then moved to the cure designation as a result of Covalynt's ongoing review will also be subject to additional verification through A.B. Data's deficiency process. Littrell Notice Decl. ¶¶ 35-36. Based on its experience, A.B. Data expects that 3% of the claims will ultimately be cured and permitted to participate in the Settlements. Littrell Notice Decl. ¶ 36. If this administration has a similar result, based on the available data, a total of 2,359 additional claims will be accepted, increasing the claims rate to 4.65%. Littrell Notice Decl. ¶¶ 36, 40. The expected payment for eligible Class Members from the Net Settlement Fund will range between $63.00 (assuming no cured claims are valid) and $60.00 (if 3% of the cured claims are valid). Littrell Notice Decl. ¶ 40. The payment range for California Subclass Members

would be $120.00 to $126.00. Littrell Notice Decl. ¶ 40.

Further, since the October 15, 2026 Claims Deadline, A.B. Data has received 72,843 late Claims. Class Counsel and A.B. Data propose accepting late-submitted Claims so long as the distribution of the Net Settlement Fund is not materially delayed. Littrell Notice Decl. ¶ 37.

To date, A.B. Data has incurred a total of $3,556,087.39 for its notice and claims administration efforts. Littrell Notice Decl. ¶ 39. Based on the volume to date, A.B. Data estimates that the additional cost to complete this administration will be $325,000.00. Littrell Notice Decl. ¶ 39.

## III. SUMMARY OF CLASS MEMBER'S OBJECTION

Melanie May Apostol timely filed her objection raising three principal arguments. ECF No. 857. First, she claims that the Settlements provide inadequate compensation in light of the alleged disclosure of personal pregnancy and/or menstruation information. *Id.* at 1. Second, Ms. Apostol argues that the Settlements do not serve as meaningful deterrence for future misconduct in light of the funds that may be available for distribution to the Class. *Id.* at 2. Third, she also objects to any allocation of the Settlement Fund to attorneys' fees, Litigation Expenses, administrative expenses or other costs. *Id.* As discussed below, Ms. Apostol's objection is without merit and should be overruled.

## IV. ARGUMENT

### A. The Volume of Claims and Near Absence of Objections Demonstrate Class Members' Overwhelming Support of the Settlements, Proposed Fee and Expense Awards, and Service Awards

"'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)). Only one Class Member objected. ECF No. 857. The dearth of objections is particularly noteworthy when compared to the number of Class Members who received notice and the number of valid claims filed. A.B. Data delivered Email Notice to 3,419,358 valid email addresses, and the media component of the Notice Plan generated more than 165 million gross impressions and reached more than 90.1% of the 4,861,598 Class

Members that A.B. Data expected to reach via indirect notice. Littrell Notice Decl. ¶¶ 5, 7, 9, 16-17, 21-22, 24-25, 28-29. Together, the various notice efforts resulted in at least 461,766 valid claims being submitted. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, No. 5:12-md-02314-EJD, 2022 WL 16902426, at *5–6 (N.D. Cal. Nov. 10, 2022) (granting final approval where 9 objectors and 1,374 opt-outs "constitute[d] a small fraction of the approximately 1,558,805 total Class Members who submitted valid claims" in a class of approximately 124 million members), *aff'd*, No. 22-16903, 2024 WL 700985 (9th Cir. Feb. 21, 2024); *Norcia v. Samsung Telecomms Am., LLC*, No. 14-cv-00582-JD, 2021 WL 3053018, at *3 (N.D. Cal. July 20, 2021) ("The reaction of class members favors final approval. While the claims rate of approximately 2.035% (7,468 claims received from approximately 367,000 class members) is not necessarily something to write home about, it is on par with similar cases. In addition, . . . only a single objection was filed . . . ."); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 921, 937 (N.D. Ill. 2022) (granting final approval where 4 objectors and 4,068 opt-outs constituted small fraction of 1.2 million claims and 89 million class members).

Further, the present claims rate in this Action of 4.6% is consistent with claims rates in comparable data privacy settlements. *See In re Facebook Internet Tracking*, 2022 WL 16902426, at *2, *6 (approving settlement for 124 million class members with 1.26% claims rate); *In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS-KES, 2019 WL 12966638, at *2, *4 (C.D. Cal. July 31, 2019) (approving settlement for 16 million class members with 4.1% claims rate); *In re TikTok*, 617 F. Supp. 3d at 921 (approving settlement for 89 million class members with a 1.4% claims rate); *Does 1-5 v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2026 WL 2031771, at *3 (N.D. Cal. July 14, 2026) (approving settlement for approximately 13.1 million class members with a 5.7% claims rate, which was consistent with "the rates obtained by plaintiffs in similar cases"); *Stark v. Patreon, Inc.*, No. 22-CV-03131-JCS, 2025 WL 1592736, at *10 (N.D. Cal. June 5, 2025) (approving settlement for an estimated 1.6 million class members with an approximately 6% claims rate, which was "relatively high compared to other

similar cases"). And that rate may increase as A.B. Data and Covalynt complete claims processing. However the Court chooses to analyze the issue, the available evidence demonstrates the Class's positive reaction to the Settlements.

**B. The Sole Objection Should Be Overruled**

"In determining whether to finally approve a class action settlement, the Court considers whether there are any objections to the proposed settlement and, if so, the nature of those objections." *Ko v. Natura Pet Prods., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *6 (N.D. Cal. Sept. 10, 2012). "The fact that there is some opposition does not necessitate disapproval of the settlement; rather, the Court must evaluate the substance of the objections to determine whether they suggest serious reasons why the proposal might be unfair." *Id.*

Importantly, an objector "bears the burden of proving any assertions they raise challenging the reasonableness of a class action settlement." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. at 583 (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)). Mere complaints that aspects of the settlement should be better are not sufficient to challenge the settlement's fairness, reasonableness, and adequacy. *Id.* at 592 (overruling objections that simply "assert[ed] that the requested fees are excessive, however, without offering any reasons"); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *10 (N.D. Cal. Aug. 28, 2013) (overruling objection "to Class Counsel's request for attorneys' fees and expenses and Class Representative incentive awards" where objector "offers no specific reason as to why the Settlement should not be approved based on Class Counsel's request").

Ms. Apostol's first complaint, that the Settlements are inadequate in light of the nature of the privacy violation, fails to provide any specifics as to the Settlements' deficiencies. At its core, her concern is that individual Class Members will not receive "meaningful" compensation. ECF No. 857 at 1. However, "the standard for whether a settlement can be approved is not whether the settlement could have been better, but rather whether it is fair and adequate." *In re Coll. Athlete NIL Litig.*, 803 F. Supp. 3d 959, 998 (N.D. Cal. 2025). A settlement need not be the "ideal or the best outcome." *Chalian v. CVS Pharmacy, Inc.*, No. 2:16-cv-08979-AB-AGR, 2021 WL 3015407, at *3 (C.D. Cal. July 16, 2021) (internal quotation

marks omitted). Rather, a court must simply decide "whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class." *Id.* (internal quotation marks omitted).

Courts routinely overrule objections that simply assert that a settlement could have been better or that class members should each recover more. This is because "[a]n objection that merely argues that the settlement terms for Class Members could have been better does not mean the settlement is not fair, reasonable or adequate." *Zakikhani v. Hyundai Motor Co.*, No. 8:20-cv-01584-SB-JDE, 2023 WL 4544774, at *6 (C.D. Cal. May 5, 2023) (internal quotation marks omitted); *Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 WL 16823044, at *8 (N.D. Cal. Nov. 8, 2022) (overruling assertion of insufficient recovery and holding that "even if the settlement could have been better, it can still be fair, reasonable and adequate, because settlement is the offspring of compromise.") (internal quotation marks omitted); *In re Zoom Video Commc'ns., Inc. Priv. Litig.*, No. 20-cv-02155-LB, 2022 WL 1593389, at *8 (N.D. Cal. Apr. 21, 2022) (same); *see also Katz-Lacabe v. Oracle Am., Inc.*, No. 3:22-cv-04792-RS, 2024 WL 7002057, at *4 (N.D. Cal. Nov. 15, 2024) ("Most objections . . . express that the $115 million monetary relief is too low . . . . These objections do not adequately account for the risks and delays involved in further litigation, making 'no effort to tie [their comments] to the disputes that would actually go to trial.' [ ] Moreover, these objections make no effort to assess the risks of class certification, summary judgment, or trial for CIPA claims that this Court found 'barely' survived dismissal.") (quoting *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 627 (N.D. Cal. 2021)), *aff'd* No. 24-7648, 2026 WL 413182 (9th Cir. Feb. 13, 2026). Ms. Apostol's objection fails to account for the challenges Plaintiffs and Class Counsel faced and overcame in prosecuting this Action (*see* ECF No. 842 at 5-7; ECF No. 843 at 5-6), including the timing of the Flo and Google Settlements, risks that the Settlements eliminate and that themselves support approval of the Settlements.

Ms. Apostol's second criticism is that the Settlements do not provide a meaningful deterrence. In making this argument, she seems to rely on the fact that less than the entire Settlement Fund will be distributed to Class Members. ECF No. 857 at 2 ("After attorneys' fees, litigation expenses, administrative expenses, and other approved deductions, the amount ultimately available for direct distribution may be

substantially less than the $59.5 million aggregate settlement amount. *I am concerned that the resulting financial consequence may not provide an adequate deterrent against similar conduct in the future.*") (emphasis added). But a settlement's deterrent effect turns on what defendants must pay. Google, Flo, and Flurry have collectively paid $59.5 million to resolve the claims against them, and that amount is the same regardless of the fees, expenses and costs the Court approves.

More fundamentally, Ms. Apostol fails to recognize that bringing these privacy claims as a class action *creates* a deterrent effect:

> In addition to their compensatory function, class actions deter misconduct by harnessing private attorneys general to assist in the enforcement of important public policies. As discussed in the previous section, where harms are small and dispersed, the defendants can avoid liability because no individual has sufficient incentive to sue. By avoiding liability, the defendants place the social costs of their actions on others. In enabling small-claim suits, class actions expose the defendants to the risk of liability and thereby deter them from engaging in wrongdoing in the first place. The class action's compensatory mechanism thereby serves a deterrent function.

1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 1:8 (6th ed. 2022) (internal citations omitted); *accord Globus v. L. Rsch. Serv., Inc.*, 418 F.2d 1276, 1285 (2d Cir. 1969) ("Compensatory damages, especially when multiplied in a class action, have a potent deterrent effect. And there always lurks the psychological deterrent of being branded a knowing violator of the law."); *see Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016) ("Consumer class actions . . . have value to society more broadly, . . . as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation. . . ."). As described in Class Counsel's Motion for Award of Attorneys' Fees and Expenses, and Plaintiffs' Application for Service Awards, this Action renewed awareness in the California Legislature of the need for statutory protections for its citizens in the face of industry efforts to "reform" CIPA to allow for commercial purpose exemptions. ECF No. 843 at 7 (discussing California bill S.B. 690). The bill amending CIPA was signed into law on September 30, 2026, preserving the right of private action under CIPA's wiretapping and eavesdropping provisions. *See* S.B. 690, 2026 Cal. Legis. Serv. ch. 976, available at https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202520260SB690. Plaintiffs' and

Class Counsel's substantial efforts during this Action, as well as the resulting Settlements, have created a deterrent effect that warrants approving the Settlements and the Fee and Expense Application.

Finally, Ms. Apostol "object[s] to any allocation of the Settlement Fund in which attorneys' fees, litigation expenses, administrative expenses, or other costs materially reduce the relief available to" the Class. ECF No. 857 at 2. She does not suggest what (if any) compensation would not be material and leaves it to the Court to determine if any requested awards are "excessive" or "unreasonable." *Id*. Where an objector "simply assert[s] that the requested fees are excessive . . . without offering any reasons," such an objector "[has] not satisfied [her] burden" to prove that the proposed fee award is unreasonable. *In re LinkedIn User Priv. Litig.*, 309 F.R.D. at 592; *see In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 533 (N.D. Cal. 2020) (rejecting objection to attorneys' fee where the objector described that request as "bloated," but made no specific complaint about it), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). Fundamentally, Ms. Apostol does not engage with the well-settled principles governing fee awards in common fund cases, under which counsel are entitled to a reasonable percentage of the fund, assessed in light of the results achieved, the risks undertaken, the skill required, and awards in comparable cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *see Katz-Lacabe v. Oracle Am., Inc.*, No. 3:22-cv-04792-RS, 2024 WL 4804974, at *5 (N.D. Cal. Nov. 15, 2024) ("The Objections lack appreciation for the jurisprudence that governs the economics of representative actions, which allow for the vindication of aggregated interests that would otherwise go unaddressed. The fee request is supported by well-established Ninth Circuit principles."). Moreover, the relief she seeks, that the Court scrutinize the awards, is already required under Rule 23. *See, e.g.*, Fed. R. Civ. P. 23(h); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable").

Accordingly, Ms. Apostol's objection should be overruled in its entirety.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court enter the proposed orders and judgments filed herewith: (1) finally approving the Settlements; (2) awarding

attorneys' fees of $19,366,666.67 (approximately 32.5% of the $59,500,000 Settlement Fund), plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; (3) awarding reimbursement of Litigation Expenses of $2,091,517.74, plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; (4) approving Service Awards for Plaintiffs Wellman, Chen, Gamino, Frasco, and Meigs of $25,000 and for Plaintiffs Pietrzyk, Ridgway, and Kiss of $10,000, for a total of $155,000; and (5) dismissing with prejudice the Action as to Google, Flo, and Flurry.

Dated: October 22, 2026

Respectfully submitted,

*<u>/s/ Christian Levis</u>*
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
mmaclean@lowey.com

Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Jake Bissell-Linsk (*pro hac vice*)
Danielle Mazzeo (*pro hac vice*)
Gloria J. Medina (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
jbissell-linsk@labaton.com
dimazzeo@labaton.com
gmedina@labaton.com

Diana J. Zinser (*pro hac vice*)
Jeffrey J. Corrigan (*pro hac vice*)

**SPECTOR CALDES & CORRIGAN, PC**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
dzinser@scc.law
jcorrigan@scc.law

*Co-Lead Class Counsel*

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@wvbrlaw.com

*Counsel for Plaintiffs Erica Frasco and Sarah Wellman*

Ronald A. Marron (SBN 175650)
Alexis M. Wood (SBN 270200)
Kas L. Gallucci (SBN 288709)
**MARRON PC**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Counsel for Plaintiffs Jennifer Chen and Tesha Gamino*

Kent Morgan Williams (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (772) 783-8436
kent.williams@sirillp.com

William Darryl Harris, II (*pro hac vice*)
**HARRIS LEGAL ADVISORS LLC**
3136 Kingsdale Center, Suite 246

Columbus, Ohio 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com

*Counsel for Plaintiffs Leah Ridgway and Autumn Meigs*