**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Michele D. Johnson (SBN 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235

Melanie M. Blunschi (SBN 234264)
*melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.395.5942

**GIBSON, DUNN & CRUTCHER LLP**
Christopher Chorba (SBN 216692)
*cchorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7396

Elizabeth K. McCloskey (SBN 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera (SBN 301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200

*Attorneys for Defendant Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ERICA FRASCO, et al.,

Plaintiffs,

v.

FLO HEALTH, INC., GOOGLE, LLC, FACEBOOK, INC., and FLURRY, INC.,

Defendants.

CASE NO. 3:21-cv-00757-JD (consolidated)

**META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' "NOTICE OF VIOLATION OF OCTOBER 30, 2026 ORDER"**

Judge: Hon. James Donato
Courtroom: 11 – 19th Floor
San Francisco Courthouse

Without even downloading (let alone reviewing) the data that Meta produced on November 13, Plaintiffs' counsel falsely accused Meta of "violat[ing]" the Court's October 30 order governing Meta's production. Plaintiffs' counsel's allegation is flat wrong, and their Notice (Dkt. 877) is just their latest effort to create meritless, counterproductive sideshows that prevent the parties from moving the post-trial process forward. Just as the October 30 order required, Meta "produce[d] to plaintiffs user data resulting from a search of IDFA and AAID values for the class period." (Dkt. 870 at 2.) It is not clear what more Plaintiffs believe Meta should have done.

As Meta has repeatedly explained to Plaintiffs' counsel, Meta does not have any data source with IDFAs and AAIDs covering the class period (November 1, 2016 through February 28, 2019) that can be searched by IDFA or AAID. The data sources that Meta identified that *can* be searched by IDFA or AAID go back only to 2024. (*See* Dkt. 862-2 ¶ 15.) In other words, there is no place where Meta can simply enter an IDFA or AAID and search for user accounts associated with those advertising IDs during the class period. Meta nevertheless did what it could. It searched the data sources it identified that *can* be searched by IDFA or AAID using the IDFAs and AAIDs in the Flo Data and included the over 110,000 resulting Meta user accounts in its July production. (*Id.* ¶¶ 14–16.)[1] Meta's recent enrichment efforts in connection with the October 30 order subsequently uncovered a technical issue with its July production, so Meta included in its November 13 production *additional* potential IDFA and AAID matches that had been inadvertently omitted from its July production and is continuing to investigate in advance of the November 23 conference. Meta explained all of this to Plaintiffs' counsel. But they continue to ignore the technical limitations constraining Meta's enrichment efforts, seemingly imagining that all of Meta's data is essentially behind an easy Google search screen. That could not be further from the truth—particularly when it comes to data that is roughly a decade old and almost certainly supplanted by more recent advertising IDs for those accounts, as few people are still using the same phones they were using in 2016 to 2019.

In September, Plaintiffs' counsel claimed that Meta's DYI/DYD tool has historical IDFA and

[1] Notably, the Flo Data also does not include a comprehensive list of IDFAs and AAIDs from the class period—instead, Flo produced the most recent IDFA or AAID associated with a Flo App user, so some IDFAs and AAIDs could be recent, and others could be old, depending on when the Flo App user last used the app. (*See* Dkt. 862 at 3.)

AAID information that can be used to enrich the Flo Data, citing the historical "device ID" information in the named plaintiffs' DYI/DYD files that were produced during this litigation. (*See* Dkt. 862 at 4; *see also, e.g.*, Dkt. 849-10.) As Meta has explained, however, DYI/DYD and the data stores it pulls from cannot be searched by IDFAs or AAIDs; instead, they can be searched by Facebook or Instagram account IDs. (*See, e.g.*, Dkt. 862 at 4; Dkt. 862-1 ¶ 4.) But there are no Facebook and Instagram account IDs in the Flo Data. So, Meta used the roughly 5.3 million account IDs that it identified and produced in July to search the data stores the DYI/DYD tool pulls from, and produced an updated set of results based on those efforts on November 13. The set of approximately 5.3 million account IDs that Meta used is vastly overbroad: it is more than *4 times* the size of even Plaintiffs' estimate of the California subclass (*see* Dkt. 845 at 2) and reflects Meta's overinclusive approach to identifying Meta user accounts *nationwide* that potentially matched the IP addresses, emails, and IDFAs/AAIDs in the Flo Data.[2] These additional IDFA and AAID comparison efforts helped refine some of the previously identified potential matches based on just IP address and/or email address in the Flo Data, because now some of those potential matches *also* match to IDFAs or AAIDs in the Flo Data.

Contrary to Plaintiffs' counsel's assertion, Meta did not "design[]" its searches to "*not* . . . identify additional Flo users." (Dkt. 877 at 1.) Nor was Meta's July production a "flawed" starting point. (*Id.*) Meta had already queried its data sources that could be searched based on AAIDs and IDFAs and included the results of those efforts in its July production, and starting with the account IDs in Meta's July production was necessary to conduct the additional searches of the historical AAIDs and IDFAs that Plaintiffs' counsel requested. Plaintiffs ignore the established record and do not explain what more they believe Meta can do. And Meta's enrichment efforts have gone above and beyond the "reasonable search" efforts that the Court has ordered. (*See, e.g.*, Dkt. 827 ¶ 5 (requiring Meta to "conduct a *reasonable* search for data within Meta's possession, custody and control that may be used to compare the Flo Data to Meta user data" (emphasis added)).)

At 6:17 a.m. on Saturday, November 14, before Plaintiffs, A.B. Data, or Covalynt even

---

[2] As explained, Meta's July production included potential IP address matches if an IP address was associated with 10 or fewer Meta user accounts, because including all potential IP address results would have resulted in over *160 million* unique "matched" Facebook and Instagram accounts, including tens of millions of people who never used the Flo App. (Dkt. 862 at 3.)

*accessed* Meta's November 13 production, Plaintiffs' counsel Christian Levis sent the following e-mail: "Based on your letter this does not comply with the court's order. Please confirm when you will be producing the ordered data set or if you will be standing on this violation and deficient production." This accusation is false, and it unfortunately demonstrates their refusal to work cooperatively or constructively with Meta. Plaintiffs' counsel then filed the Notice the morning of the first business day after sending their weekend e-mail (on Monday, November 16)—without any warning to Meta, without providing Meta with any opportunity to respond, and without having even accessed Meta's November 13 production.[3] On that same day, Meta explained, once again, the efforts that Meta undertook and the limitations that exist, making clear that Meta "remain[s] open to working with Plaintiffs" and is "open to discussing" any "suggestions [Plaintiffs may have] for how else Meta can search for historical device ID information." But again, rather than providing constructive suggestions or any details whatsoever regarding what Plaintiffs believe Meta should do, Mr. Levis responded with the following: "Thank you for the very detailed confirmation of how what you all did violates the October 30 Order. We are happy to talk whenever you are done acting in bad faith. Let us know if that happens this week."

Meta remains committed to working cooperatively with Plaintiffs' counsel in advance of the November 23 meeting and is ready and willing to hear any constructive suggestions that they may have to further utilize IDFA and AAID data, subject to the limitations that Meta has explained repeatedly. And, even if Plaintiffs' counsel refuse to engage, Meta will continue investigating ways to enrich the Flo Data before that meeting, just as Meta said it would do when it transmitted its November 13 results to Plaintiffs' counsel and A.B. Data.

Dated: November 18, 2026

*/s/ Christopher Chorba*

**GIBSON, DUNN & CRUTCHER LLP**
Christopher Chorba (SBN 216692)
*cchorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7396

---

[3] Only A.B. Data had accessed Meta's November 13 production as of the time of Plaintiffs' filing, and A.B. Data did so on November 15—more than 24 hours ***after*** Mr. Levis sent his Saturday morning e-mail accusing Meta's production of being "deficient" and in "violation" of the Court's order.

Elizabeth K. McCloskey (SBN 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera (SBN 301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200

**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Michele D. Johnson (SBN 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235

Melanie M. Blunschi (SBN 234264)
*melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.395.5942

*Counsel for Defendant Meta Platforms, Inc.*